

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

11 CIV 6201

___ CIV. ___ (___)

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

        Plaintiff,

    -against-

NOMURA HOLDING AMERICA INC.,
NOMURA ASSET ACCEPTANCE
CORPORATION, NOMURA HOME
EQUITY LOAN, INC., NOMURA CREDIT
& CAPITAL, INC., NOMURA SECURITIES
INTERNATIONAL, INC., RBS
SECURITIES INC. (f/k/a GREENWICH
CAPITAL MARKETS, INC.), DAVID
FINDLAY, JOHN MCCARTHY, JOHN P.
GRAHAM, NATHAN GORIN, and N.
DANTE LAROCCA,

        Defendants.

---

**APPENDIX A**



## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     The NAA 2005-AR6 Securitization....................................................................1

II.    The NHELI 2006-FM1 Securitization ...............................................................2

III.   The NHELI 2006-FM2 Securitization ...............................................................6

IV.    The NHELI 2006-HE3 Securitization ..............................................................10

V.     The NHELI 2007-1 Securitization....................................................................14

VI.    The NHELI 2007-2 Securitization....................................................................17

VII.   The NHELI 2007-3 Securitization....................................................................21

## APPENDIX A

I.     <u>The NAA 2005-AR6 Securitization</u>

**Representations in the prospectus supplement filed November 30, 2005 for the NAA 2005-AR6 Securitization with respect to the underwriting standards of Silver State Mortgage, Alliance Bancorp, Aegis Mortgage, and various originators (originating 10% of the loans or fewer), which originated or acquired loans in the Securitization**

    **A.**    **Collateral**

        **1.**    "[C]onventional, one-to-four family adjustable-rate mortgage loans secured by first liens on residential real properties." [S-2]

    **B.**    **Statements about conformity with underwriting guidelines**

        **1.**    "The Mortgage Loans have been purchased by the seller from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section." [S-88]

    **C.**    **Statements concerning borrower's ability to repay the loan**

        **1.**    "The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts.  In the case of investment properties and two- to four-unit dwellings, income derived from the mortgaged property may have been considered for underwriting purposes, in addition to the income of the borrower from other sources." [S-88]

        **2.**    "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses." [S-88]

    **D.**    **Statements concerning information evaluated in the loan application**

        **1.**    "Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower.  As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report

which summarizes the borrower's credit history with local merchants and
lenders and any record of bankruptcy." [S-88]

E.    **Statements concerning appraisal of the subject property**

   1.    "The adequacy of the Mortgaged Property as security for repayment of the
related Mortgage Loan will generally have been determined by an
appraisal in accordance with pre-established appraisal procedure standards
for appraisals established by or acceptable to the originator.  All appraisals
conform to the Uniform Standards of Professional Appraisal Practice
adopted by the Appraisal Standards Board of the Appraisal Foundation
and must be on forms acceptable to Fannie Mae and/or Freddie Mac." [S-89]

   2.    "The appraisal generally will have been based upon a market data analysis
of recent sales of comparable properties and, when deemed applicable, an
analysis based on the current cost of constructing or purchasing a similar
property." [S-89]

F.    **Additional representations and warranties**

   1.    "The seller will make certain representations and warranties as to the
accuracy in all material respects of certain information furnished to the
trustee with respect to each Mortgage Loan.  In addition, the seller will
represent and warrant, as of the Closing Date, that, among other things: (i)
at the time of transfer to the depositor, the seller has transferred or
assigned all of its right, title and interest in each Mortgage Loan and the
Related Documents, free of any lien; (ii) each Mortgage Loan complied, at
the time of origination, in all material respects with applicable local, state
and federal laws including, but not limited to all applicable predatory and
abusive lending laws . . ." [S-143]

II.    **The NHELI 2006-FM1 Securitization**

**Representations in the prospectus supplement filed January 31, 2006 for the NHELI
2006-FM1 Securitization with respect to the underwriting standards of Fremont
Investment & Loan, which originated or acquired loans in the Securitization**

A.    **Collateral**

   1.    "[C]onventional, one-to-four family fixed-rate and adjustable-rate
mortgage loans secured by first or second liens on residential real
properties."

B.    **Statements about conformity with underwriting guidelines**

   1.    "All of the mortgage loans were originated or acquired by Fremont,
generally in accordance with the underwriting criteria described in this

section.  The following is a summary of the underwriting guidelines believed by the Depositor to have been applied, with some variation, by Fremont."

2.      "Mortgage loans are underwritten in accordance with Fremont's current underwriting programs, referred to as the Scored Programs ('Scored Programs'), subject to various exceptions as described in this section. Fremont began originating mortgage loans pursuant to Scored Programs in 2001 and the Scored Programs have been the exclusive type of origination programs beginning in 2004."

C.      **Statements about underwriting guidelines of originator Fremont Investment & Loan**

1.      **Statements concerning borrower's ability to repay the loan**

(a)     "Programs have been the exclusive type of origination programs beginning in 2004.  Fremont's underwriting guidelines are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan."

2.      **Statements concerning information evaluated in the loan application**

(a)     "Substantially all of the mortgage loans originated by Fremont are based on loan application packages submitted through licensed mortgage brokers.  These brokers must meet minimum standards set by Fremont based on an analysis of the following information submitted with an application for approval: applicable state lending license (in good standing), signed broker agreement, and signed broker authorization.  Once approved, licensed mortgage brokers are eligible to submit loan application packages in compliance with the terms of a signed broker agreement."

(b)     "The Scored Programs assess the risk of default by using Credit Scores obtained from third party credit repositories along with, but not limited to, past mortgage payment history, seasoning on bankruptcy and/or foreclosure and loan-to-value ratios as an aid to, not a substitute for, the underwriter's judgment."

(c)     "Under the Scored Programs, Fremont requires credit reports for each borrower, using the Credit Score of the primary borrower (the borrower with the highest percentage of total income) to determine program eligibility.  Credit Scores must be requested from each national credit repository."

(d)     "Generally, the minimum applicable Credit Score allowed is 500, however borrowers with no Credit Scores are not automatically

rejected and may be eligible for certain loan programs in appropriate circumstances."

**3.    Statements concerning evaluation of exceptions and compensating factors**

(a)    "On a case by case basis, Fremont may determine that, based upon compensating factors, a prospective mortgagor not strictly qualifying under the underwriting risk category guidelines described below is nonetheless qualified to receive a loan, i.e., an underwriting exception.  Compensating factors may include, but are not limited to, low loan-to-value ratio, low debt to income ratio, substantial liquid assets, good credit history, stable employment and time in residence at the applicant's current address."

**4.    Statements concerning appraisal of the subject property**

(a)    "Fremont's underwriting guidelines are applied in accordance with a procedure which complies with applicable federal and state laws and regulations and require an appraisal of the mortgaged property, and if appropriate, a review appraisal."

(b)    "Generally, initial appraisals are provided by qualified independent appraisers licensed in their respective states.  Review appraisals may only be provided by appraisers approved by Fremont.  In some cases, Fremont relies on a statistical appraisal methodology provided by a third-party.  Qualified independent appraisers must meet minimum standards of licensing and provide errors and omissions insurance in states where it is required to become approved to do business with Fremont."

(c)    "Each uniform residential appraisal report includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home.  The review appraisal may be a desk review, field review or an automated valuation report that confirms or supports the original appraiser's value of the mortgaged premises."

**5.    Other statements concerning quality control procedures of the originator**

(a)    "The Scored Programs were developed to simplify the origination process.  In contrast to assignment of credit grades according to traditional non-agency credit assessment methods, i.e., mortgage and other credit delinquencies, the Scored Programs rely upon a borrower's Credit Score, mortgage payment history and seasoning

on any bankruptcy/foreclosure initially to determine a borrower's likely future credit performance.  Licensed mortgage brokers are able to access Credit Scores at the initial phases of the loan application process and use the Credit Score to determine the interest rates a borrower may qualify for based upon Fremont's Scored Programs risk-based pricing matrices.  Final loan terms are subject to approval by Fremont."

(b)     "Fremont conducts a number of quality control procedures, including a cost-funding review as well as a full re-underwriting of a random selection of loans to assure asset quality.  Under the funding review, all loans are reviewed to verify credit grading, documentation compliance and data accuracy.  Under the asset quality procedure, a random selection of each month's originations is reviewed.  The loan review confirms the existence and accuracy of legal documents, credit documentation, appraisal analysis and underwriting decision.  A report detailing review findings and level of error is sent monthly to each loan production office for response.  The review findings and branch responses are then reviewed by Fremont's senior management.  Adverse findings are tracked monthly.  This review procedure allows Fremont to assess programs for potential guideline changes, program enhancements, appraisal policies, areas of risk to be reduced or eliminated and the need for additional staff training."

## D.    Additional representations and warranties

1.     "The seller will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan.  In addition, the seller will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the seller has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."

**III.**     **The NHELI 2006-FM2 Securitization**

**Representations in the prospectus supplement filed October 31, 2006 for the NHELI 2006-FM2 Securitization with respect to the underwriting standards of Fremont Investment & Loan and of Nomura Credit & Capital, Inc., which originated or acquired loans in the Securitization**

**A.**     **Collateral**

    **1.**     "[C]onventional, one-to-four family fixed-rate and adjustable-rate mortgage loans secured by first or second liens on residential real properties."

**B.**     **Statements about conformity with underwriting guidelines**

    **1.**     "All of the mortgage loans were originated or acquired by Fremont, generally in accordance with the underwriting criteria described in this section."

    **2.**     "All of the Mortgage Loans have been purchased by the sponsor from the Originator and were originated generally in accordance with the underwriting criteria described in this section."

    **3.**     "In comparison to the 'general' underwriting standards described above, the underwriting standards applicable to mortgage loans under an 'alternative' mortgage loan underwriting program permit different underwriting criteria, additional types of mortgaged properties or categories of borrowers such as 'foreign nationals' without a credit score who hold certain types of visas and have acceptable credit references (such Mortgage Loans, 'Foreign National Loans'), and include certain other less restrictive parameters.  Generally, relative to the 'general' underwriting standards, these standards include higher loan amounts, higher maximum loan-to-value ratios, higher maximum 'combined' loan-to-value ratios (in each case, relative to mortgage loans with otherwise similar characteristics) in cases of simultaneous primary and secondary financings, less restrictive requirements for 'equity take out' refinancings, the removal of limitations on the number of permissible mortgage loans that may be extended to one borrower and the ability to originate mortgage loans with loan-to-value ratios in excess of 80% without the requirement to obtain mortgage insurance if such loans are secured by investment properties."

**C.** **Statements about underwriting guidelines of originator Fremont Investment & Loan**

   **1.** **Statements concerning borrower's ability to repay the loan**

   (a) "Fremont's underwriting guidelines are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan."

   (b) "The Scored Programs assess the risk of default by using Credit Scores obtained from third party credit repositories along with, but not limited to, past mortgage payment history, seasoning on bankruptcy and/or foreclosure and loan-to-value ratios as an aid to, not a substitute for, the underwriter's judgment. All of the mortgage loans in the mortgage pool were underwritten with a view toward the resale of the mortgage loans in the secondary mortgage market."

   **2.** **Statements concerning information evaluated in the loan application**

   (a) "In contrast to assignment of credit grades according to traditional non-agency credit assessment methods, i.e., mortgage and other credit delinquencies, the Scored Programs rely upon a borrower's Credit Score, mortgage payment history and seasoning on any bankruptcy/foreclosure initially to determine a borrower's likely future credit performance. Licensed mortgage brokers are able to access Credit Scores at the initial phases of the loan application process and use the Credit Score to determine the interest rates a borrower may qualify for based upon Fremont's Scored Programs risk-based pricing matrices. Final loan terms are subject to approval by Fremont."

   (b) "Under the Scored Programs, Fremont requires credit reports for each borrower, using the Credit Score of the primary borrower (the borrower with the highest percentage of total income) to determine program eligibility. Credit Scores must be requested from each national credit repository."

   **3.** **Statements concerning evaluation of exceptions and compensating factors**

   (a) "On a case by case basis, Fremont may determine that, based upon compensating factors, a prospective mortgagor not strictly qualifying under the underwriting risk category guidelines described below is nonetheless qualified to receive a loan, i.e., an underwriting exception. Compensating factors may include, but are not limited to, low loan-to-value ratio, low debt to income

ratio, substantial liquid assets, good credit history, stable employment and time in residence at the applicant's current address. It is expected that a substantial portion of the mortgage loans may represent such underwriting exceptions."

**4.    Statements concerning appraisal of the subject property**

(a)    "Fremont's underwriting guidelines are applied in accordance with a procedure which complies with applicable federal and state laws and regulations and require an appraisal of the mortgaged property, and if appropriate, a review appraisal. Generally, initial appraisals are provided by qualified independent appraisers licensed in their respective states. Review appraisals may only be provided by appraisers approved by Fremont. In some cases, Fremont relies on a statistical appraisal methodology provided by a third-party. Qualified independent appraisers must meet minimum standards of licensing and provide errors and omissions insurance in states where it is required to become approved to do business with Fremont. Each uniform residential appraisal report includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home. The review appraisal may be a desk review, field review or an automated valuation report that confirms or supports the original appraiser's value of the mortgaged premises."

**5.    Other statements concerning quality control procedures of the originator**

(a)    "Generally, the minimum applicable Credit Score allowed is 500, however borrowers with no Credit Scores are not automatically rejected and may be eligible for certain loan programs in appropriate circumstances."

(b)    "Fremont conducts a number of quality control procedures, including a post-funding review as well as a full re-underwriting of a random selection of loans to assure asset quality. Under the funding review, all loans are reviewed to verify credit grading, documentation compliance and data accuracy. Under the asset quality procedure, a random selection of each month's originations is reviewed. The loan review confirms the existence and accuracy of legal documents, credit documentation, appraisal analysis and underwriting decision. A report detailing review findings and level of error is sent monthly to each loan production office for response. The review findings and branch responses are then reviewed by Fremont's senior management. Adverse findings are tracked monthly. This review procedure allows Fremont to assess

programs for potential guideline changes, program enhancements, appraisal policies, areas of risk to be reduced or eliminated and the need for additional staff training."

**D.      Statements about underwriting guidelines of sponsor Nomura Credit & Capital, Inc.**

    **1.      Statements concerning information evaluated in the loan application**

        (a)      "Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower.  As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy.  The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts."

        (b)      "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses."

    **2.      Statements concerning appraisal of the subject property**

        (a)      "The adequacy of the Mortgaged Property as security for repayment of the related Mortgage Loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure standards for appraisals established by or acceptable to the originator.  All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac.  Appraisers may be staff appraisers employed by the originator or independent appraisers selected in accordance with pre-established appraisal procedure standards established by the originator.  The appraisal procedure standards generally will have required the appraiser or an agent on its behalf to personally inspect the

Mortgaged Property and to verify whether the Mortgaged Property was in good condition and that construction, if new, had been substantially completed.  The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on the current cost of constructing or purchasing a similar property."

**E.    Additional representations and warranties**

1.    "The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan.  In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."

**IV.    <u>The NHELI 2006-HE3 Securitization</u>**

**Representations in the prospectus supplement filed August 30, 2006 for the NHELI 2006-HE3 Securitization with respect to the underwriting standards of People's Choice Home Loan, Inc. ("People's Choice"), First NLC Financial Services, LLC, Equifirst Corporation, and various originators (originating 10% of the loans or fewer) and of Nomura Credit & Capital, Inc., which originated or acquired loans in the Securitization**

**A.    Collateral**

1.    "[C]onventional, one-to-four family adjustable-rate mortgage loans secured by first liens on residential real properties."

**B.    Statements about conformity with underwriting guidelines**

1.    <u>People's Choice:</u> "The Mortgage Loans were generally originated by People's Choice Home Loan, Inc., a Wyoming corporation ('PCHLI'), in accordance with the underwriting criteria described in this section and detailed in the print and on-line manuals that our underwriters use in making their credit decisions ('Underwriting Guidelines')."

2.    <u>General:</u> "The Mortgage Loans have been purchased by the seller from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section."

C.      **Statements about underwriting guidelines of originator People's Choice**

1.      **Statements concerning borrower's ability to repay the loan**

(a)     "Under each program, PCHLI reviews the applicant's source of income, calculates the amount of income from sources indicated on the loan application or similar documentation, reviews the credit history of the applicant, calculates the debt service-to-income ratio ('DTI') to determine the applicant's ability to repay the loan, reviews the type and use of the property being financed, and reviews the property appraisal."

2.      **Statements concerning information evaluated in the loan application**

(a)     "The Underwriting Guidelines specify which applicants may qualify for 'full documentation,' 'lite documentation,' and 'stated income documentation' programs. The specific income documentation required for PCHLI's various programs varies as follows: Under the full documentation program, applicants usually are required to submit one year's IRS Form W-2 and Form 1040 and a year-to-date paystub or 12 or 24 months personal or business bank statements. Under the lite documentation program, applicants usually are required to submit verification of stable income for at least 6 months, such as 6 consecutive months of complete personal or business checking account bank statements or a current paycheck stub with at least 6 months' year-to-date information. Under the stated income documentation program, an applicant will be qualified based upon monthly income as stated on the mortgage loan application, if the applicant meets certain criteria. The income stated must be reasonable for the job and credit profile."

(b)     "All of these programs require, for salaried employees, a telephone verification of the applicant's employment. For a self-employed borrower, there is a telephone verification, as well as additional documentation to verify the existence of the business owned by the borrower. In evaluating the credit quality of borrowers, PCHLI utilizes Credit Scores (as defined below), mortgage or rent-payment history, job stability and income. The Underwriting Guidelines require all borrowers to have demonstrated a willingness to pay."

3.      **Statements concerning evaluation of exceptions and compensating factors**

(a)     "On a case-by-case basis, exceptions to the Underwriting Guidelines may be made where compensating factors exist. It is

expected that some portion of the PCHLI loans will represent those exceptions. In addition, PCHLI documents all exceptions in its loan files."

**4.    Statements concerning appraisal of the subject property**

    (a)    "The Underwriting Guidelines require that mortgage loans be underwritten in a standardized procedure and require the underwriters to be satisfied that the value of the property being financed, as reflected by an appraisal and a review of the appraisal, supports the outstanding loan balance at time of funding of the PCHLI loan."

**5.    Other statements concerning quality control procedures of the originator**

    (a)    "PCHLI thoroughly reviews all credit, income, character and collateral information provided by the broker for completeness, accuracy and authenticity."

    (b)    "PCHLI thoroughly reviews all credit, income, character and collateral information provided by the PCHLI loan officer and makes a credit decision based on the borrower's application for a mortgage loan using the same processes and guidelines used in wholesale transactions. PCHLI typically conducts a final pre-funding check of the underwriting packages prior to wiring money to fund a mortgage loan."

**D.    Statements about underwriting guidelines of sponsor Nomura Credit & Capital, Inc.**

**1.    Statements concerning borrower's ability to repay the loan**

    (a)    "The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts. In the case of investment properties and two- to four-unit dwellings, income derived from the mortgaged property may have been considered for underwriting purposes, in addition to the income of the borrower from other sources."

    (b)    "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard

insurance and other fixed obligations other than housing expenses."

**2. Statements concerning information evaluated in the loan application**

(a) "Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower. As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy."

**3. Statements concerning appraisal of the subject property**

(a) "The adequacy of the Mortgaged Property as security for repayment of the related Mortgage Loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure standards for appraisals established by or acceptable to the originator. All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac."

(b) "The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on the current cost of constructing or purchasing a similar property."

**E. Additional representations and warranties**

**1.** "The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan. In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."

**V.**    **The NHELI 2007-1 Securitization**

**Representations in the prospectus supplement filed January 31, 2007 for the NHELI 2007-1 Securitization with respect to the underwriting standards of Silver State Financial Services, Inc., d/b/a Silver State Mortgage, and various originators (originating 10% of the loans or fewer) and of Nomura Credit & Capital, Inc., which originated or acquired loans in the Securitization**

**A.**    **Collateral**

  **1.**    "[C]onventional, one-to-four family, fixed-rate and adjustable-rate mortgage loans secured by first liens on residential real properties."

**B.**    **Statements about conformity with underwriting guidelines**

  **1.**    "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section."

**C.**    **Statements about underwriting guidelines of originator Silver State Financial Services, Inc., d/b/a Silver State Mortgage**

  **1.**    **Statements concerning borrower's ability to repay the loan**

    (a)    "Silver State Mortgage's underwriting guidelines are primarily intended to evaluate the prospective borrower's credit standing and ability to repay the loan, as well as the value and adequacy of the proposed Mortgaged Property as collateral."

    (b)    "Based on the data provided in the application and certain verifications (if required), a determination will have been made that the borrower's monthly income (if required to be stated or verified) should be sufficient to enable the borrower to meet its monthly obligations on the mortgage loan and other expenses related to the Mortgaged Property (such as property taxes, standard hazard insurance and other fixed obligations other than housing expenses)."

  **2.**    **Statements concerning information evaluated in the loan application**

    (a)    "A prospective borrower applying for a mortgage loan is required to complete an application, which elicits pertinent information about the prospective borrower including, depending upon the loan program, the prospective borrower's financial condition (assets, liabilities, income and expenses), the property being financed and the type of loan desired."

(b)    "With respect to every prospective borrower, a credit report summarizing the prospective borrower's credit history or non-traditional credit history is obtained."

**3.    Statements concerning appraisal of the subject property**

(a)    "The adequacy of the Mortgaged Property as security for repayment of the related mortgage loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure guidelines for appraisals established by or acceptable to the originator.  All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac. Appraisers may be staff appraisers employed by the originator or independent appraisers selected in accordance with pre-established appraisal procedure guidelines established by or acceptable to the Originator."

(b)    "The appraisal procedure guidelines generally will have required the appraiser or an agent on its behalf to personally inspect the property and to verify whether the property was in good condition and that construction, if new, had been substantially completed. The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on income generated from the property or a replacement cost analysis based on the current cost of constructing or purchasing a similar property."

**4.    Other statements concerning quality control procedures of the originator**

(a)    "If required by the underwriting guidelines, employment verification is obtained either from the prospective borrower's employer or through analysis of copies of borrower's federal withholding (IRS W-2) forms and/or current payroll earnings statements."

(b)    "In the case of investment properties and two- to four-unit dwellings, income derived from the Mortgaged Property may have been considered for underwriting purposes, in addition to the income of the borrower from other sources, if applicable.  With respect to Mortgaged Property consisting of vacation or second homes, no income derived from the property generally will have been considered for underwriting purposes."

(c)　　"Silver State Mortgage outsources the quality control function to The Stone Hill Group based out of Atlanta, Georgia. While Silver State Mortgage maintains quality control policies that are in compliance with FNMA and FHLMC requirements, the actual loan selections and loan reviews are completed by The Stone Hill Group."

**D.　　Statements about underwriting guidelines of sponsor Nomura Credit & Capital, Inc.**

**1.　　Statements concerning borrower's ability to repay the loan**

(a)　　"Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses."

**2.　　Statements concerning information evaluated in the loan application**

(a)　　"Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower. As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy. The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts."

**3.　　Statements concerning appraisal of the subject property**

(a)　　"The adequacy of the Mortgaged Property as security for repayment of the related Mortgage Loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure standards for appraisals established by or acceptable to the originator. All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac.

A-16

Appraisers may be staff appraisers employed by the originator or independent appraisers selected in accordance with pre-established appraisal procedure standards established by the originator.  The appraisal procedure standards generally will have required the appraiser or an agent on its behalf to personally inspect the Mortgaged Property and to verify whether the Mortgaged Property was in good condition and that construction, if new, had been substantially completed.  The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on the current cost of constructing or purchasing a similar property."

E.    **Additional representations and warranties**

1.    "The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan.  In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."

VI.    **The NHELI 2007-2 Securitization**

**Representations in the prospectus supplement filed February 1, 2007 for the NHELI 2007-2 Securitization with respect to the underwriting standards of Ownit Mortgage Solutions, Inc., First NLC Financial Services, LLC, and various originators (originating 10% of the loans or fewer) and of Nomura Credit & Capital, Inc., which originated or acquired loans in the Securitization**

A.    **Collateral**

1.    "[C]onventional, one-to-four family fixed-rate and adjustable-rate mortgage loans secured by first or second liens on residential real properties."

B.    **Statements about conformity with underwriting guidelines**

1.    "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section."

**C.    Statements about underwriting guidelines of originator Ownit Mortgage Solutions, Inc.**

    **1.    Statements concerning borrower's ability to repay the loan**

        (a)    "The Underwriting Guidelines and Credit Matrices of the RightLoan are designed to be used as a guide in determining the credit worthiness of the borrower and his/her ability to repay."

    **2.    Statements concerning information evaluated in the loan application**

        (a)    "Using the three components, capacity, credit and collateral, the underwriter analyzes the loan profile. Capacity, which is the borrower's ability to repay, is determined by cash flow. It must be clearly shown that the borrower has a proven, historical cash flow, which will support the requested loan amount. This approach anticipates that the loan is going to be repaid from the borrower's recurring cash inflows, not from the sale of the collateral. Job stability and length of time in current residence are also strong factors in determining a borrower's capacity. Continuity of employment is a strong factor in establishing the income used as a basis for repayment. Credit is the borrower's willingness to repay his or her debts according to the contractual agreements. The most valuable resource in determining the borrower's ability to repay is the credit report. Ownit underwriters will use the credit report and credit explanation letter when supplied in determining willingness. Ownit uses the credit score as a primary factor in determining the borrower's willingness to repay his or her debts. Collateral is defined as the asset pledged by the borrower to the lender. Collateral is a secondary source of repayment; cash flow is the primary source of repayment. Ownit will evaluate the property by reviewing uniform residential real estate appraisal reports, along with other data sources, to determine whether the collateral is sufficient to secure the mortgage."

        (b)    "The underwriter's objective is to analyze an application individually with the understanding that no single characteristic will approve or deny a loan. The underwriter must utilize the credit report, loan application, asset verifications, appraisal and all other supporting documents in determining credit worthiness and risk. Credit risk can be defined as, but is not restricted to, limited liquid assets or reserves, and derogatory credit history. The overall situation and profile of a borrower, including compensating factors, which may offset negative characteristics, must be taken into consideration in determining if the borrower is creditworthy. Credit worthiness is determined by the borrower's ability and willingness to repay his or her contractual debt and the value of the

property securing the loan.  A sufficient property value gives Ownit the ability to recover its investment if the loan defaults."

3. **Statements concerning evaluation of exceptions and compensating factors**

    (a)    "Exceptions to the guidelines will be made if the loan meets the primary criteria of the RightLoan and offers supported compensating factors when a deviation occurs.  In all cases, the exception(s) and compensating factor(s) are clearly documented in the file and require branch manager approval and a second signature from the corporate underwriter."

4. **Statements concerning appraisal of the subject property**

    (a)    "All appraisals should conform to the Uniform Standards of Professional Appraisal Practices.  Ownit requires the underwriter to review all appraisals for content and accuracy, pulling additional data if available or warranted.  Certain types of transactions require an enhanced desk or field review.  Loan amounts in excess of $650,000 require a second full appraisal.  The minimum square footage is 700 and deferred maintenance must be cosmetic in nature, not resulting in a health or safety hazard and should not exceed $3,500 cost to cure."

5. **Other statements concerning quality control procedures of the originator**

    (a)    "Ownit relies on the scoring models developed by the national credit bureaus: Experian, TransUnion and Equifax for much of that decision process.  Using a credit score methodology that requires a 2 repository merged in file score, the Brokers' credit report and score is used for qualification purposes.  Ownit will run a back up report to audit the Brokers' report for material variances such as social security number, fingerprint or depth.  The score used for qualification purposes is the middle of three or lower of two scores provided by the national bureaus for the primary wage earner.  The primary wage earner is defined as the borrower earning 51% of the total income.  A minimum trade history is required for all loan documentation types with certain accounts not considered valid trade lines.  The minimum credit score for all programs is 540."

    (b)    "Certain events may restrict LTV and loan amount options available to a borrower.  Bankruptcy and Foreclosure history is considered, as well as charge off, collections, judgments and liens.  Liens that affect title must be paid off or subordinated.  Other delinquent accounts must be paid off depending on the aggregate

balance or seasoning; credit events that occurred over 24 months or have a balance less than $4,000 are not required to be paid. The mortgage history is viewed with respect to the payoff/demand statement. A prior mortgage history may not be greater than 59 days delinquent at closing or contractually 30 days late at closing."

**D.   Statements about underwriting guidelines of sponsor Nomura Credit & Capital, Inc.**

    **1.   Statements concerning borrower's ability to repay the loan**

       (a)   "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses."

    **2.   Statements concerning information evaluated in the loan application**

       (a)   "Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower. As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy. The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts."

    **3.   Statements concerning appraisal of the subject property**

       (a)   "The adequacy of the Mortgaged Property as security for repayment of the related Mortgage Loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure standards for appraisals established by or acceptable to the originator. All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac. Appraisers may be staff appraisers employed by the originator or

independent appraisers selected in accordance with pre-established appraisal procedure standards established by the originator.  The appraisal procedure standards generally will have required the appraiser or an agent on its behalf to personally inspect the Mortgaged Property and to verify whether the Mortgaged Property was in good condition and that construction, if new, had been substantially completed.  The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on the current cost of constructing or purchasing a similar property."

**E.      Additional representations and warranties**

1.      "The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan.  In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."

**VII.      The NHELI 2007-3 Securitization**

**Representations in the prospectus supplement filed May 1, 2007 for the NHELI 2007-3 Securitization with respect to the underwriting standards of ResMAE Mortgage Corporation and various originators (originating 10% of the loans or fewer) and of Nomura Credit & Capital, Inc., which originated or acquired loans in the Securitization**

**A.      Collateral**

1.      "[C]onventional, one- to four-family, fixed-rate and adjustable-rate mortgage loans (the 'Mortgage Loans') secured by first liens and second liens on residential real properties."

**B.      Statements about conformity with underwriting guidelines**

1.      "All of the mortgage loans were underwritten by ResMAE's underwriters having the appropriate signature authority."

2.      "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section."

A-21

C.    **Statements about underwriting guidelines of originator ResMAE Mortgage Corporation**

1.    **Statements concerning borrower's ability to repay the loan**

(a)    "The underwriting standards of ResMAE are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan. ResMAE considers, among other things, a mortgagor's credit history, repayment ability and debt service-to income ratio (referred to herein as the Debt Ratio), as well as the value, type and use of the mortgaged property."

2.    **Statements concerning information evaluated in the loan application**

(a)    "ResMAE has one underwriting program called the 'TotalScore Program.' Within this underwriting program, there are three documentation types, the 'Full Documentation,' the 'Limited Documentation' and the 'Stated Income.' While each underwriting program is intended to assess the risk of default, the TotalScore Program makes greater use of credit bureau risk scores (referred to herein as the Credit Bureau Risk Score). The Credit Bureau Risk Score is used in conjunction with, among other factors, mortgage payment history and seasoning on bankruptcy and/or foreclosure and as an aid to, not a substitute for, the underwriter's judgment. The underwriting staff fully reviews each loan to determine whether ResMAE's guidelines for income, assets, employment and collateral are met."

(b)    "The TotalScore Program was developed to simplify the origination process for the licensed mortgage brokers approved by ResMAE. In contrast to assignment of credit grades according to traditional non-agency credit assessment methods (i.e., mortgage and other credit delinquencies), the TotalScore Program relies upon a borrower's Credit Bureau Risk Score, mortgage ratings and seasoning on bankruptcy and/or foreclosure initially to determine a borrower's likely future credit performance."

3.    **Statements concerning evaluation of exceptions and compensating factors**

(a)    "On a case by case basis, ResMAE may determine that, based upon compensating factors, a prospective mortgagor not strictly qualifying under the underwriting risk category guidelines described below warrants an underwriting exception. Compensating factors may include, but are not limited to, low loan-to-value ratio, low Debt Ratio, substantial liquid assets, good

A-22

credit history, stable employment and time in residence at the applicant's current address.  A substantial portion of the Mortgage Loans represent such underwriting exceptions."

**4.      Statements concerning appraisal of the subject property**

(a)      "ResMAE originates loans secured by 1-4 unit residential properties made to eligible borrowers with a vested fee simple (or in some cases a leasehold) interest in the property.  The underwriting guidelines of ResMAE are applied in accordance with a procedure which complies with applicable federal and state laws and regulations and generally require an appraisal of the mortgaged property which conforms to Freddie Mac and/or Fannie Mae standards, and if appropriate, a review appraisal.  Generally, appraisals are provided by qualified independent appraisers licensed in their respective states.  Review appraisals may only be provided by appraisers approved by the Originator.  In most cases, ResMAE relies on a statistical appraisal methodology provided by a third-party.  Qualified independent appraisers must meet minimum standards of licensing and provide errors and omissions insurance in states where it is required in order to become approved to do business with ResMAE.  Each Uniform Residential Appraisal Report includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home.  The review appraisal may be a desk review, field review or an automated valuation report that confirms or supports the original appraiser's value of the mortgaged premises."

**5.      Other statements concerning quality control procedures of the originator**

(a)      "In all cases, a borrower's complete credit history must be detailed in the credit report that produces a given Credit Bureau Risk Score.  Generally, the minimum Credit Bureau Risk Score allowed under the TotalScore Program is 500."

(b)      "ResMAE's underwriters verify the income of each applicant under the Full Documentation and Limited Documentation programs.  Under Full Documentation, applicants are generally required to submit verification of stable year to date income and the preceding year's income; under Limited Documentation, the borrower is qualified based on verification of adequate cash flow by means of personal or business bank statements.  Under Stated Income, applicants are qualified based on monthly income as stated on the mortgage application.  Under all programs, the

A-23

income stated must be reasonable and customary for the applicant's line of work; also, a pre-closing audit is conducted to confirm that the borrower is employed as stated on the mortgage application.  Verification may be made through phone contact to the place of business, obtaining a valid business license or through Nexis On-Line Services."

(c)     "ResMAE conducts a number of quality control procedures, including a post funding compliance audit as well as a full re-underwriting of a random selection of mortgage loans to assure asset quality.  Under the compliance audit, all mortgage loans are reviewed to verify credit grading, documentation compliance and data accuracy.  Under the post- funding quality procedure, a random selection of each month's originations is reviewed.  The loan review confirms the existence and accuracy of legal documents, credit documentation, appraisal analysis and underwriting decision.  A report detailing audit findings and level of error is provided quarterly to loan production for response.  The audit findings and responses are then reviewed by ResMAE's senior management.  Adverse findings are tracked monthly and reported quarterly.  This review procedure allows ResMAE to assess programs for potential guideline changes, program enhancements, appraisal policies, areas of risk to be reduced or eliminated and the need for additional staff training."

**D.     Statements about underwriting guidelines of sponsor Nomura Credit & Capital, Inc.**

   **1.     Statements concerning borrower's ability to repay the loan**

(a)     "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses."

   **2.     Statements concerning information evaluated in the loan application**

(a)     "Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower.  As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit

history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy.  The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts."

3.    **Statements concerning appraisal of the subject property**

(a)    "The adequacy of the Mortgaged Property as security for repayment of the related Mortgage Loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure standards for appraisals established by or acceptable to the originator.  All appraisals conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation and must be on forms acceptable to Fannie Mae and/or Freddie Mac.  Appraisers may be staff appraisers employed by the originator or independent appraisers selected in accordance with pre-established appraisal procedure standards established by the originator.  The appraisal procedure standards generally will have required the appraiser or an agent on its behalf to personally inspect the Mortgaged Property and to verify whether the Mortgaged Property was in good condition and that construction, if new, had been substantially completed.  The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on the current cost of constructing or purchasing a similar property."

E.    **Additional representations and warranties**

1.    "The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan.  In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws . . ."