**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

August 27, 2014

**VIA ELECTRONIC MAIL**
The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:     *FHFA v. Nomura Holding Am., Inc.*, No. 11 Civ. 6201 (DLC) (S.D.N.Y.)

Dear Judge Cote:

      We write on behalf of the Federal Housing Finance Agency ("FHFA") to respond to the recent letters by RBS and Nomura opposing FHFA's request for an adjustment to the briefing and expert rebuttal schedule in the *Nomura* Action. Neither submission refutes the fact that, without such an adjustment, FHFA will be deprived of the opportunity all parties have had in every other coordinated action before this Court—namely, to move for summary judgment on a complete discovery record, including depositions of Defendants' current and former personnel. The coordination of this Action with the *RBS* Action was not meant to provide RBS with the opportunity to insulate itself from such submissions by delaying its document production in Connecticut, and FHFA's proposed adjustment to the current schedule will serve merely to ensure that the Court is able to narrow the disputed issues in this Action in advance of trial.

      RBS opposes FHFA's request primarily on the basis that RBS completed its document production in the *Nomura* Action "almost ***two years*** ago." Letter from Thomas Rice to Judge Cote (the "RBS Letter") at 1 (emphasis in original). But this misses the point; FHFA has been unable to depose RBS witnesses until now because it is only permitted to do so once across all coordinated actions, *see Nomura* Action, Dkt. 123, at 5, and therefore could not proceed before RBS completed its production in the *RBS* Action—**which RBS has still not done**. Moreover, contrary to RBS's odd suggestion that its own delays are somehow FHFA's fault, the reality is that FHFA has diligently sought to secure a complete and timely production in Connecticut, but RBS has consistently stalled and frustrated those efforts.

      FHFA's efforts to secure prompt discovery from RBS in the Connecticut Action started with its motion, on December 1, 2011, opposing RBS's refusal to commence its production based on the stay provision of the PSLRA. (*RBS* Action, Dkt. 25). Judge Thompson granted FHFA's motion on August 17, 2012 (*RBS* Action, Dkt. 61). FHFA then moved, on October 5, 2012, for coordinated discovery between the *RBS* Action and the actions before this Court, relief both courts granted in November 2012. After learning in August 2013 that RBS was refusing to include post-closing discovery in its production, FHFA promptly moved for relief on October 4, 2013. (*RBS* Action, Dkt. 206). Judge Thompson granted that application on May 13, 2014 (*RBS* Action, Dkt. 372), but FHFA is still waiting for RBS to produce those documents. FHFA has had to make at least three additional applications seeking discovery that RBS has unreasonably withheld. *See RBS* Action, Dkts. 301 (motion to compel RBS to add custodians and cease limiting its searches to arbitrary four-month "bubbles"); 364 (motion to compel discovery after RBS improperly redacted over 130,000 documents for non-responsiveness); 385 (motion to

1

compel production of RBS deposition testimony from other litigations). In short, document discovery in the *RBS* Action has been marked by RBS's refusal to meet its obligations, and FHFA's diligent efforts to secure relief. Just last week, RBS wrote to FHFA announcing that it would not honor Judge Thompson's August 22 deadline for the substantial completion of its document production (a deadline that had already been advanced by ***seventeen months*** because of RBS's prior delays), and reporting that it would produce a substantial portion of its due diligence materials on an unspecified date after September 5.[1]  *See* Letter from Craig Waldman to Jordan Goldstein (Aug. 20, 2014) (Ex. A). This additional delay itself appears calculated by RBS to prevent FHFA from taking meaningful depositions, and pursuing full motion practice before this Court, ahead of trial in the *Nomura* Action.[2]

For its part, Nomura does not object to FHFA's proposed five week extension to the current trial date, but does object to FHFA's proposed briefing schedule. This makes little sense—the only reason to extend the current trial date is to ensure time for party submissions on a full record. Nomura nevertheless attempts to justify its position on the basis that it needs adequate time to prepare for trial after Rule 56 practice is complete—but the trial extension it consents to addresses that concern. Nomura next argues that FHFA "made no attempt" to conduct its RBS depositions on the prior schedule, and therefore cannot demonstrate "excusable neglect." Letter from Amanda Davidoff to Judge Cote (Aug. 25, 2014) (the "Nomura Letter") at 1-2. As discussed above, however, FHFA could not conduct its depositions across the coordinated actions until RBS completed its document production here and in Connecticut, and it is simply unreasonable for Nomura to suggest that FHFA should have deposed RBS witnesses while still awaiting substantial document discovery.[3]

It is also not accurate that FHFA's inability to depose RBS witnesses has prevented FHFA from advancing its motions only against RBS. Nomura concedes its diligence expert relied on documents produced by RBS. (Nomura Letter at 2). Moreover, while Nomura downplays this point on the basis that it was "only" seven such documents, *Id.*, Mr. Grice, in his expert report on behalf of Nomura, cross-references his own expert report on behalf of RBS (July

---

[1]  It is especially misguided for RBS to insist that its production of transcripts from other actions provides FHFA with sufficient deposition discovery for its motions (RBS Letter at 2). In fact, this stands as another example of RBS's obstructionist tactics in Connecticut. After agreeing to produce, and beginning to produce, relevant transcripts as part of discovery in the *RBS* Action, RBS unilaterally cut off its production, forcing FHFA to file a motion, now pending, seeking the remaining transcripts to which it is entitled. Dkt. 385.

[2]  RBS has also taken up valuable time that it should have been devoting to collecting and producing documents in the *RBS* Action, to reviewing FHFA's production of Single Family documents in the *Countrywide* Action in California. It has done so, moreover, in violation of the confidentiality order governing that action. RBS was required to destroy or return FHFA's production in the *Countrywide* Action by June 2, 2014, which is 60 days after the action was dismissed. *See* Apr. 2, 2014, Order of Dismissal with Prejudice, *FHFA v. Countrywide Fin. Corp.*, No. 12 Civ. 1059 (Dkt. 527); Protective Order, *FHFA v. Countrywide Fin. Corp.*, No. 12 Civ. 1059 (Dkt. 281) ¶ 20 ("within sixty (60) days after the final termination of the [*Countrywide*] Action … each Receiving Person must take commercially reasonable efforts to either return all Confidential Discovery Material to the Producing Person, or, at its option, destroy it."). RBS has nevertheless apparently spent recent months reviewing that production and, indeed, filed a motion in the *RBS* Action earlier this week—its third motion on the identical issue—relying on documents from the *Countrywide* production as a basis for seeking expanded Single Family discovery in Connecticut.

[3]  Nomura also urges the Court that it should know "substantially in advance of trial" whether it can present a "key defense." Nomura Letter at 2. But under FHFA's proposed schedule, all briefing on any summary judgment motions would be fully submitted further in advance of trial than the briefing on FHFA's motion for partial summary judgment on the statute of limitations defense in the *HSBC* Action.

2

9, 2014, Report of Charles Grice ¶ 164), and that report, predictably, relies on numerous RBS documents (*Id.* at 78-80 & nn. 246-254)—documents about which FHFA has had no fair opportunity to depose RBS witnesses.  Moreover, in his capacity as Nomura's expert, Mr. Grice expressly invokes the diligence that RBS performed as underwriter for four of the seven deals in the *Nomura* Action as a "check" that justified Nomura's own limited diligence.  (Grice Report ¶ 169).  It is impossible for FHFA to fully respond to this assertion in motion practice without complete discovery into the RBS processes upon which Nomura supposedly relied.

   Finally, Nomura suggests that, in the event the Court adjusts the schedule, FHFA should be limited to seeking summary judgment solely against RBS, and to filing its expert rebuttal report solely as to Mr. Grice.  But this artificial constraint ignores that that RBS's outstanding discovery potentially bears on all defendants in the *Nomura* Action and all expert issues.  RBS served as an underwriter for four out of the seven Securitizations that Nomura sponsored; RBS personnel corresponded and interacted with Nomura personnel on such matters as deal structure and marketing; and RBS's witnesses, once deposed, are therefore likely to have information relevant, not only to RBS's defense, but Nomura's as well.  There is no reason that FHFA, in this action alone among all of the coordinated actions, should be prevented from making summary judgment motions, and forced to make its full expert presentation with relevant discovery outstanding.

   In sum, FHFA's proposed adjustment to the schedule in the *Nomura* Action will ensure that FHFA has the opportunity, which has applied across the coordinated actions before this Court, to file motions and submit expert reports on a full record.  It will also ensure that RBS is not permitted to secure a benefit in proceedings before this Court on account of its delays in the *RBS* Action.

Respectfully submitted,

/s/  Philippe Z. Selendy_____
Philippe Z. Selendy
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,
as Conservator for Fannie Mae and Freddie Mac*

CC: Counsel of record (via ECF)