UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                                        :
                        Plaintiff,      :        11cv6201 (DLC)
                                        :
            -v-                         :        OPINION & ORDER
                                        :
NOMURA HOLDING AMERICA, INC., et al.,   :
                                        :
                        Defendants.     :
                                        :
---------------------------------------X

APPEARANCES:

For plaintiff FHFA:

Philippe Z. Selendy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants Nomura Holding America Inc., Nomura Asset
Acceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit &
Capital, Inc., Nomura Securities International, Inc., David
Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N.
Dante LaRocca:

Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1700 New York Ave., NW, Ste. 700
Washington, DC 20006

For defendant RBS Securities Inc.:

Thomas C. Rice
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

By Joint Order of November 5, 2012, discovery in the above-captioned action (the "Nomura Action") was coordinated with discovery in the related action FHFA v. Royal Bank of Scotland PLC, 11cv1383 (D. Conn.) (AWT) (the "RBS Action"), as both concern similar securities claims brought by plaintiff Federal Housing Finance Agency ("FHFA") against defendant RBS Securities Inc. ("RBS") relating to residential mortgage-backed securities ("RMBS") sponsored, packaged, or underwritten by RBS or its affiliates. RBS was an underwriter of securitizations offered by affiliates of Nomura Holding America, Inc. (collectively, "Nomura") and is a codefendant in the FHFA action brought against Nomura.

By letter of August 22, 2014, FHFA requests that the schedule in the Nomura Action be adjusted. Although summary judgment motions in the Nomura Action were due June 20, 2014, FHFA did not file any summary judgment motion in that action addressed to the RBS affirmative defenses of due diligence and reasonable reliance (collectively, "Due Diligence").[1] FHFA now asks that it be given an opportunity to bring motions for summary judgment concerning Nomura's and RBS's Due Diligence

---

[1] The Due Diligence defenses are available in the strict liability claims brought against RBS, pursuant to 15 U.S.C. § 77k(b)(3), 77l(a)(2).

practices.  FHFA explains that it was unable to bring these
motions by the June 20 deadline because it has not yet been able
to take any depositions of RBS witnesses as RBS has delayed its
production of documents in the RBS Action.  For the following
reasons, FHFA's request to adjust the schedule in the Nomura
Action is granted.

## BACKGROUND

The Nomura Action is one of sixteen[2] related actions
prosecuted in the Southern District of New York by FHFA, as
conservator for the Federal National Mortgage Association
("Fannie Mae") and the Federal Home Loan Mortgage Corporation
("Freddie Mac") (together, the Government-Sponsored Enterprises
or "GSEs"), alleging misstatements in the offering documents for
certain RMBS certificates purchased by the GSEs between 2005 and
2007 (the "New York Actions").  Two of these actions remain
pending, including the Nomura Action, which includes claims
against RBS for underwriting certificates linked to four of the
securitizations assembled by Nomura and its affiliates.  As
noted above, FHFA filed a similar action in the District of
Connecticut against RBS and its affiliates concerning

---

[2] A seventeenth action was filed in New York Supreme Court,
removed to the Southern District of New York, and transferred on
February 7, 2012 to the Central District of California for
coordination with In re Countrywide Finan. Corp. Mortgage-Backed
Sec. Litig., 11 MDL No. 2265.

securitizations sponsored, created, and marketed by them.  The total dollar amount of the securities at issue in the RBS Action is many times greater than the amount at issue in Nomura.

On August 17, 2012, the Honorable Alvin W. Thompson of the District of Connecticut granted FHFA's motion to commence discovery in the RBS Action.  At that time, discovery had recently commenced in the New York Actions, following a May 4, 2012 Opinion granting in part and denying in part a motion to dismiss in a coordinated New York Action.  FHFA v. UBS Americas, Inc., 858 F. Supp. 2d 306 (S.D.N.Y. 2012).  Pursuant to an Order of May 15, 2012, defendants in the New York Actions were, collectively, permitted to take 20 depositions of FHFA and the GSEs.  A Scheduling Order of June 14, 2012 required discovery to be completed in one of the New York Actions (the UBS Action) by June 14, 2013, and to be completed in the remaining New York Actions by December 6, 2013.  The sixteen New York Actions were scheduled to be tried in four tranches, with the UBS Action to be tried on January 13, 2014, and the remaining actions to be tried in descending order of their size on June 2, 2014 (two actions), September 29, 2014 (three actions), and beginning January 2015 (the remainder).  The Nomura Action fell in the fourth tranche.  Under this schedule, FHFA and UBS were required to undergo fact discovery first.

4

By letter of October 5, 2012, jointly submitted to Judges Thompson and Cote, FHFA proposed that discovery in the Nomura and RBS Actions be coordinated given "the likely substantial overlap between discovery in the S.D.N.Y. Actions and the RBS Action." As of that time, RBS was a defendant in four of the sixteen pending New York Actions. FHFA explained that in its initial disclosures in the New York and RBS Actions, RBS identified 27 of the same individuals as persons likely to have discoverable information. FHFA further explained that it had "served nearly identical document requests" in these actions.

On October 9, 2012, Judge Cote, acting with the authorization of Judge Thompson, instructed the parties in the RBS Action and New York Actions to submit by October 12, 2012 proposed coordination orders. The parties conferred and were unable to reach an agreement. They made separate submissions on October 12. FHFA explained that it had proposed a schedule "that would permit the RBS Action to be tried on the same timetable as the second tranche of the S.D.N.Y. Actions," that is, June of 2014.[3] As of October 12, FHFA and RBS had already

---

[3] The two New York Actions scheduled to be tried in tranche two -- the JP Morgan Action and the Merrill Lynch Action -- were as large or larger than the RBS Action, measured by the dollar amount at issue (for JP Morgan) or the number of securitizations at issue (for both actions). The JP Morgan and Merrill Lynch Actions settled on November 18, 2013 and April 1, 2014, respectively, and did not proceed to trial.

exchanged initial disclosures, and FHFA had served document requests on RBS in both the four New York Actions in which it was a party and in the RBS Action.  FHFA proposed, inter alia, that depositions applicable to both the New York and RBS Actions begin on January 22, 2013, and that all fact and expert discovery in these actions be completed by December 6, 2013.

RBS largely opposed coordination, stating "it is just not feasible for the RBS Action to somehow 'catch up' with the S.D.N.Y. Actions."  Of particular relevance here, it opposed the "[c]oordination of deposition discovery" on the schedule proposed by FHFA, explaining that FHFA's proposed schedule would leave RBS without "an adequate opportunity to review the produced documents" to participate in the depositions in the New York Actions due to begin in January of 2013, in particular the depositions of FHFA witnesses.  RBS advocated for a period of 18 months of discovery in the RBS Action.  It also opposed being bound by the 20-deposition limit adopted in the New York Actions.[4]

Coordination was discussed at a court conference in the New York Actions on October 15, 2012, and at a court conference in

---

[4] The 20-deposition limit allowed all defendants collectively to share in 20 depositions of FHFA and the GSEs, and FHFA to take 20 depositions of each corporate family across all of the FHFA actions.  See FHFA v. UBS Americas Inc., 2012 WL 5954817, at *1 (S.D.N.Y. Nov. 28, 2012).

Connecticut in the RBS Action on October 25.  At the October 15 conference, RBS stated that "[w]e would like, if it were feasible, to have a rule that says deponents are only taken once in a case."  RBS noted that "[t]he problem with that" is that RBS "will not be ready to take depositions" of FHFA in the RBS Action on the timetable of the New York Actions.  FHFA voiced "concern . . . that [RBS] [is] trying to create a scenario that makes it impossible to get coordinated, that makes it impossible to spare witnesses multiple depositions."

Also at the October 15 conference, the Court explained that dates for summary judgment practice, trial dates, and document production in the RBS Action were "for Judge Thompson to decide" and thus did not need to be part of a coordination order.  But, the court reminded RBS that it had to be prepared to begin deposition discovery of FHFA in January 2013, for the four New York Actions in which it was a party.  Based on the Court's conversations with Judge Thompson, it advised RBS that it believed that was also true for the RBS Action.  As reflected in the transcript of that conference and in orders issued by the judges, Judges Cote and Thompson had been in communication with each other and had agreed to work cooperatively with each other. The Court assured RBS that no coordination order would be signed without RBS and FHFA having an opportunity to be heard by Judge Thompson and without Judge Thompson deciding whether to agree to

any proposed coordination.  The Court requested a proposed
coordination order that "provides for no deponent being deposed
twice, documents produced in one of the 17 litigations being
produced in all, [and] the 20-deposition limit being [im]posed"
and that "reaches agreement where [the parties] can and has
competing paragraphs where there is no agreement."  On October
18, 2012, this Court ordered that the parties jointly submit to
Judges Thompson and Cote a proposed coordination order
indicating any areas of disagreement between the parties.

        At the October 25 court conference in Connecticut in the
RBS Action, RBS represented that "[w]e have agreed that we will
participate in the 20 depositions of FHFA, Fannie and Freddie
witnesses, and we will try our best not to ever . . . seek an
additional deposition of those 20 people who Judge Cote has
allowed in [the New York Actions]."  RBS noted that it said "try
our best because we're just not going to be as ready for
depositions [in the RBS Action] as people in New York are"
because "[w]e will not have produced our documents by then."
RBS affirmed that it was "going to talk about our timing for
documents and what's realistic" and was "willing to participate
in those [20 depositions of FHFA] and to only ask for further
deposition of one of those witnesses for good cause shown."
This was among the items RBS thought was "doable in terms of
coordination."  Among those items that were not "doable," RBS

objected to FHFA's proposed January 7, 2013 deadline for the completion of document production in the RBS Action, proposing instead a cutoff of May 30, 2013 as a date to "shoot for."

On November 1, 2012, a Joint Order was entered in the New York and RBS Actions, signed by both Judges Thompson and Cote,[5] providing for coordinated discovery in these actions (the "Coordination Order").  Of course, Judge Thompson alone controls the RBS Action, just as this Court controls the New York Actions.  In order to avoid great duplication of effort, however, the Coordination Order provides that "[d]ocuments produced . . . in the RBS Action will be treated as though such discovery was provided or given in the S.D.N.Y. Actions and . . . may be used in the prosecution or defense of the S.D.N.Y. Actions."  It also provides that "depositions taken in the RBS Action will be deemed to have been taken in the S.D.N.Y. Actions" and vice-versa, that "[n]o deponent shall be required to be deposed more than once" across those actions (the "one-deposition rule") "except by judicial Order," and that plaintiff and defendants were each limited to 20 depositions of former and current employees of the opposing side across both actions, except as permitted by Judge Thompson for good cause.  Finally, the Coordination Order set a schedule for the RBS Action,

---

[5] Judge Cote signed the Joint Order nunc pro tunc on November 5, 2012.

providing that the RBS document production was to be substantially complete by March 22, 2013;[6] that depositions were to begin by January 22, 2013; and that all fact and expert discovery in the New York and RBS Actions was to be completed by December 6, 2013.

December 6, 2013 came and went without FHFA deposing a single RBS witness in the Nomura or RBS Actions.  On December 6, Judge Thompson extended the fact discovery deadline in RBS through July 25, 2014.  On June 6, 2014, the parties to the RBS Action jointly requested that Judge Thompson further extend fact discovery through December 19, 2014.  Judge Thompson adopted the parties' proposal by Order of June 27, requiring that "[s]ubstantial completion of all remaining document production" occur by August 22, 2014, with "[c]ompletion of all fact depositions/discovery" by December 19, 2014.

As of June 2014, only three[7] of sixteen New York Actions remained pending.  The others had been settled.  One of the three pending actions was the Nomura Action; RBS had settled the other three New York Actions in which it was a defendant.

_____

[6] As of March 22, 2013, RBS produced only a small fraction of its documents, whether measured against its production by August 2014 or against the production of comparable defendants in the New York Actions.

[7] A fourth, the Ally Action, had been consolidated for trial with the Goldman Action, as all Ally defendants except for Goldman and its affiliates had settled.

Summary judgment motions were due to be filed in the three actions between June 10 and 20, 2014.  In the two other New York Actions, FHFA filed motions for summary judgment on defendants' Due Diligence defense.  No such motion was filed in the Nomura Action.[8]  As of the deadline for such a motion, it was still the case that no RBS witness had been deposed in the Nomura or RBS Actions.  While the Nomura trial had been scheduled since June 14, 2012 to begin in January 2015, its precise schedule was not set until July 23, 2014.  On that date, this Court ordered that the Nomura trial would begin on January 26, 2015, and the parties' Joint Pretrial Order be filed November 21, 2014.

By letter of August 22, 2014, FHFA moved this Court to adjust the schedule in the Nomura Action to allow the parties to serve expert reports and file summary judgment motions by December 8, 2014, to file the Joint Pretrial Order on February 9, 2015, and to begin trial on March 9, 2015.  FHFA explained that "[b]ecause RBS has delayed its production of documents in the RBS Action, FHFA has not been able to complete the depositions necessary to formulate its motions, and its expert presentation, in the Nomura Action."  In particular, FHFA states

---

[8] FHFA filed a motion addressed to the element of, and affirmative defense concerning, the GSEs' knowledge of false statements in the defendants' offering documents in all pending cases.  That motion was granted.  FHFA v. HSBC N. Am. Holdings Inc., --- F. Supp. 2d ---, 2014 WL 3702587 (S.D.N.Y. July 25, 2014).

that "[b]ecause numerous potential deponents would be relevant in both the Nomura and RBS Actions, regardless of when RBS completed its document production in the Nomura Action, FHFA could not as a practical matter depose RBS's current or former employees until RBS also substantially completed its document production in the RBS Action." FHFA represents that, because of this delayed discovery, it has "been unable to depose RBS witnesses in either the RBS or Nomura Actions up to this time."

RBS responded by letter of August 25. It explains that it substantially completed document production related to the Nomura securitizations on October 22, 2012, and highlights the fact that FHFA failed to raise these issues before fact discovery closed in the Nomura Action on December 6, 2013, or before the deadline for a summary judgment motion in that action passed on June 20, 2014. RBS also suggests that FHFA's access to depositions of RBS witnesses taken in other cases (not brought by FHFA) or reliance on the expert report in which RBS outlined its diligence would have permitted FHFA to bring a summary judgment motion addressed to RBS's Due Diligence defense. RBS underscores that "[t]his Court has made clear that '[t]he fact discovery cutoff date of December 6, 2013 is not going to change.'" In particular, RBS states that the schedule proposed by FHFA would prejudice RBS because it would allow FHFA to depose RBS witnesses after seeing RBS's expert report, while

RBS was not permitted to do the same.  Nomura also responded by letter of August 25.

This Court held a telephone conference in the Nomura Action on August 27, 2014 to discuss these issues.  Among other things, the Court explained its reason for believing that FHFA should be permitted to file a motion for summary judgment in the Nomura Action addressed to the Due Diligence defense.  In particular, based on its review of the Due Diligence summary judgment motions filed in the other two New York Actions, the Court identified four issues which merited careful consideration. Those four issues, with some additional explication, are as follows:

(1)   whether a more exacting due diligence standard applies to an underwriter that controls a security's issuer;

(2)   whether, or under what circumstances, sampling that is not statistically sound may be relied upon in conducting due diligence;

(3)   whether diligence can be sufficient where a party encounters a relatively high percentage of defective loans in a sample yet fails to respond by, for example, culling more defective loans and then retesting with a new sample; and

(4)   whether, or under what circumstances, due diligence can be adequate where representations in offering documents concern the loans in a Supporting Loan Group but (a) a party never tests the rate of defective loans in the Supporting Loan Group at issue, but rather reviews only pools of loans as they are acquired, and (b) the aggregator does not randomly select loans from those pools to populate the Supporting Loan Group.

(In its August 29 submission, RBS does not dispute that these
are important issues meriting careful attention.)  At the August
27 conference, the Court observed that, in the event a summary
judgment motion was meritorious, "it would be very wasteful for
the parties to spend time, in preparing for trial, thinking
about how to present that defense to the jury and gathering the
evidence to do so," and that "[i]t would certainly be wasteful
of the jury's time to consider evidence about a due diligence
defense" never submitted to it.

Later that day, Judges Thompson and Cote jointly filed an
Order to Show Cause why a certain proposed schedule should not
be adopted ("Proposed Schedule").  The Proposed Schedule
provides that RBS must complete all outstanding document
discovery in the RBS Action by September 12, 2014 and be
prepared to produce documents requested by FHFA in outstanding
motions to compel in the RBS Action within one week in the event
Judge Thompson grants them.  It reaffirms that depositions in
the RBS Action are to be completed by December 19, 2014, and
provides that the parties shall cooperate to complete any RBS
depositions relevant to RBS's Due Diligence defense no later
than October 17, 2014.  It permits FHFA to move for summary
judgment in the Nomura Action on Due Diligence by November 4,
2014.  And it moves the Nomura trial to March 9, 2015.  The

14

August 27 Order to Show Cause directed the parties to submit any objections by August 29.

On August 29, RBS wrote to reiterate its objections to an extension of fact discovery in the Nomura Action, particularly if it would permit FHFA to question RBS witnesses about the securitizations in the Nomura Action, and to permit summary judgment motions in the Nomura Action on Due Diligence.  RBS writes that this Court has "consistently held defendants to a heightened showing of good cause when seeking even targeted discovery within the discovery deadlines," and has stated that "requests for more discovery at this late hour must be carefully analyzed" and that the December 6, 2013 fact discovery cutoff date "is not going to change."  RBS urges that "[t]here should not be two sets of rules, one for defendants and another for FHFA."  Nomura reiterated its opposition to FHFA's filing a summary judgment motion addressed to the Due Diligence defense. FHFA indicated that it would undertake to comply with the Proposed Schedule.

On September 2, 2014, Judge Thompson and Judge Cote issued another joint order requesting further information from the parties about their schedule for completing document production. The parties were required to confer and make additional submissions by September 5, 2014.  In those submissions, RBS asked, inter alia, for six to twelve weeks to complete

production of certain categories of documents.  On September 8,
2014, Judge Thompson and Judge Cote issued a joint order for the
completion of discovery in the RBS Action and for the filing of
a summary judgment motion in the Nomura Action, among other
things.

## DISCUSSION

For the reasons set forth below, FHFA's application is
granted.  FHFA will be permitted to test the Nomura defendants'
Due Diligence defenses by summary judgment motion, and the
Nomura trial will be adjourned.

Pursuant to Rule 6(b) of the Federal Rules of Civil
Procedure, a court may extend a deadline for "good cause," where
the moving party shows "excusable neglect."  Excusable neglect
is an "elastic concept" that "is not limited strictly to
omissions caused by circumstances beyond the control of the
movant."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.
P'ship, 507 U.S. 380, 392 (1993); accord Silivanch v. Celebrity
Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003).  The
determination is "at bottom an equitable one, taking account of
all relevant circumstances surrounding the party's omission."
Silivanch, 333 F.3d at 366 (quoting Pioneer, 507 U.S. at 395).
Courts consider factors including "(1) the danger of prejudice
to the non-movant, (2) the length of the delay and its potential
impact on judicial proceedings, (3) the reason for the delay,

16

including whether it was within the reasonable control of the
movant, and (4) whether the movant acted in good faith."  Id.
(quoting Pioneer, 507 U.S. at 395).  Courts in this circuit
"have focused on the third factor," in particular.  Id.  Where a
party "fails to follow the clear dictates of a court rule" and
that rule "is entirely clear," "the equities will rarely if ever
favor [that] party."  Id. (citation omitted).

An extension of FHFA's time to move for summary judgment as
to Nomura's and RBS's Due Diligence defenses is warranted here.
FHFA's failure to meet the June 20, 2014 summary judgment
deadline was a consequence of the ongoing need to coordinate the
Nomura and RBS Actions.  The Coordination Order's one-deposition
rule, to which all parties agreed, has resulted in and will
result in obvious cost savings for the parties; yet it also
creates equally obvious difficulties for the parties should fact
discovery deadlines in the two actions fall out of sync, as they
have here.  FHFA is correct that, as a practical matter, it
could not depose a given RBS witness -- in the single deposition
permitted of that witness for both actions -- or even make a
final selection of its 20 RBS deponents before FHFA had seen
relevant documents from both actions.

There appears to be little danger of any real prejudice to
Nomura and RBS here.  RBS itself agreed to the one-deposition
rule, and knew by December 6, 2013 -- the deadline for fact

17

discovery in the New York Actions -- that no RBS witness depositions had yet been taken.[9]  As of that date, three of the four New York Actions in which RBS was a defendant were still being litigated.  Although neither RBS nor FHFA raised the issue with this Court at that time, it is difficult to believe that RBS expected to succeed in avoiding all depositions of its witnesses in the New York Actions by slow walking its production of documents over two years in the RBS Action.[10]

RBS asserts it will be prejudiced by FHFA's ability to question RBS witnesses after reviewing RBS's expert report.  It asserts that FHFA will "obtain an unfair advantage by [taking] RBS depositions after it has seen RBS and Nomura's expert reports, while RBS and Nomura had to take depositions of FHFA witnesses long before seeing any of FHFA's expert reports."

At the time the schedule for summary judgment motions in the Nomura Action was set, it was expected that fact discovery

---

[9] Certain fact discovery, principally of third parties, continued to be taken in 2014 in the New York Actions.

[10] It should be noted that, pursuant to the November 11, 2012 Order Regarding Deposition Protocol, all parties in the New York Actions had the right to depose before trial "any witness designated to testify at trial in [an] Action who has not previously been deposed in the Actions."  This addition was intended to reduce any incentive for gamesmanship and to address any potential prejudice from limiting the number of depositions of a corporate family to 20.  It was never intended to substitute altogether for a party's right to take depositions during the discovery period.

in the RBS Action would be closed before such motions were
filed.  Pursuant to the November 26, 2012 Revised Pretrial
Scheduling Order, summary judgment motions in the Nomura Action
were due January 24, 2014, seven weeks after fact discovery was
set to close in both the Nomura and RBS Actions.  That has not
occurred.  Both sets of dates have moved.  While the original
sequence would have been ideal, coordination comes with costs as
well as benefits.  In exchange for substantial cost savings to
the parties, the parties must be flexible in dealing with
coordination hiccups.  While there is no doubt FHFA could and
should have raised this issue earlier, RBS was also free to
raise the issue if it was concerned, as the time approached to
serve its expert reports in Nomura, that no RBS employees had
yet been deposed.

    RBS does not suggest that FHFA's depositions of RBS's own
employees would change RBS's own expert analysis.  It would be
surprising if it did make such a suggestion.  After all, RBS is
a sophisticated litigant.  It would have taken due care to
ensure that its expert considered all relevant information so
that she or he could produce a reliable and accurate set of
opinions that could withstand examination at trial.  And to the
extent that RBS's expert report relies directly or indirectly on
information from RBS witnesses, any tactical advantage gained by
granting the requested opportunity to defer summary judgment

practice until Due Diligence depositions are completed in the
RBS Action pales in comparison to the unfair prejudice that
would be suffered by FHFA if it were unable to depose those
witnesses, or were forced to depose those witnesses before
receiving documents related to them.  As noted above, RBS itself
has affirmed at several points in this litigation the prejudice
a party would suffer if it were to lack "an adequate opportunity
to review the [relevant] produced documents" before a
deposition.  RBS acknowledges in its correspondence with the
Court that depositions of its current or former employees are
occurring in other RMBS litigation this Fall; RBS suggests no
reason its employees cannot also be deposed in the RBS Action in
the coming weeks.

     The length of the delay by FHFA in making this request is
substantial, but allowing FHFA to test the Nomura defendants'
Due Diligence defenses will promote, rather than frustrate, the
efficient progress of these proceedings.  FHFA brought summary
judgment motions concerning Due Diligence defenses in two
related actions, FHFA v. HSBC North America Holdings Inc.,
11cv6189 (S.D.N.Y.) (DLC), and FHFA v. Goldman, Sachs & Co.,
11cv6198 (S.D.N.Y.) (DLC), in June 2013.[11]  As noted above,
FHFA's motions raise serious questions about the rigor of

---

[11] The Goldman action has since been dismissed following its
settlement.

aggregator and underwriter diligence practices in the industry. Given the similarities across the New York Actions, and the extent to which the record on summary judgment in HSBC and Goldman addressed diligence practices across the RMBS industry, there is a very real chance that FHFA's summary judgment motions concerning Due Diligence in Nomura may be meritorious, at least in part. It would be a tremendous waste of resources -- for the parties, the Court, and also the jury -- were the parties to address a Due Diligence defense at trial, only to have it stricken before it reached the jury.

Finally, there is no showing that FHFA has ever acted in anything but good faith. Defendants do not contend otherwise.

Accordingly, FHFA will be permitted to file summary judgment motions as to Nomura's and RBS's Due Diligence defenses. The Nomura trial will be adjourned by two months.

It is clear from its submissions that RBS feels strongly that it should not have its Due Diligence defense tested by summary judgment practice, unlike defendants in every other New York Action. RBS goes so far as to question this Court's fairness, complaining that defendants' late requests for certain costly and irrelevant discovery were denied, and that discovery schedules were enforced unless a party showed good cause for altering them. But, FHFA is not making a belated request for discovery. At every turn, this Court has endeavored to ensure

the orderly, fair, and efficient progress of the New York
Actions.  The Coordination Order's deposition provisions state
that documents produced in and depositions taken in the RBS
Action may be used in the Nomura Action, and vice-versa.  It is
difficult to imagine that RBS is surprised that FHFA, having
taken no depositions of RBS witnesses to date, intends to make
use of depositions conducted in the RBS Action in the Nomura
Action.  Rather, this is a request for the same opportunity the
parties had in every other case among the New York Actions -- to
test the opposing parties' claims and defenses via summary
judgment motions, after an opportunity to conduct fact and
expert discovery.  Coordination comes with challenges as well as
benefits, and this alteration to the Nomura schedule is the
result of one such challenge.

    Moreover, at the upcoming depositions of RBS witnesses,
FHFA is permitted to question them about securitizations at
issue in the Nomura Action and the Due Diligence defenses in the
Nomura Action.  RBS objects that scheduling orders applicable to
the Nomura Action have long notified the parties that fact
discovery closed on December 6, 2013, and that the Court has
refused to move that date.[12]  Yet, those scheduling orders were
issued with the understanding, pursuant to the November 1, 2012

---

[12] As noted above, some fact discovery in the New York Actions
continued into 2014.

Coordination Order, that certain overlapping discovery --
including, in particular, depositions of RBS witnesses -- could
be taken in the <u>RBS</u> Action and then used in the <u>Nomura</u> Action.
Indeed, for reasons set out above, FHFA was in no position to
choose how to make use of its 20 RBS depositions, or to take
depositions of those RBS witnesses relevant to both the <u>Nomura</u>
and <u>RBS</u> Actions, before it received relevant documents.  And
FHFA's intent to take RBS depositions relevant to either action
after receiving RBS's documents in both actions can come as no
surprise to RBS, as FHFA has taken no RBS depositions to date.

**CONCLUSION**

FHFA's letter-motion of August 22, 2014 is granted.  FHFA
is permitted to file summary judgment motions as to Nomura's and
RBS's Due Diligence defenses, and the <u>Nomura</u> trial is adjourned.


        SO ORDERED:

Dated:    New York, New York
          September 8, 2014

                                _____
                                 DENISE COTE
                            United States District Judge