**Motion** *in Limine* **No. 2**

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

October 7, 2014

<u>By Electronic Mail</u>

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:     <u>*FHFA v. Nomura Holding America, Inc., et al.*, No 11 Civ. 6201 (S.D.N.Y.) (DLC)</u>

Dear Judge Cote:

        FHFA moves *in limine* for an order prohibiting Defendants in the *Nomura* Action from offering documents or eliciting testimony related to the GSEs' Single Family businesses' whole-loan due diligence ("Single Family due diligence").  Based on the questioning of FHFA and GSE witnesses at depositions, Nomura's expert reports, and the documents relied upon to oppose FHFA's dispositive motions, Nomura will likely attempt to introduce documents and offer fact and expert testimony at trial regarding Single Family due diligence to argue that:  (a) the GSEs' Single Family diligence for the purchase of whole-loan pools helps establish the industry standard for PLS due diligence; (b) as a result of the GSEs' diligence of other whole-loan pools, the GSEs knew Nomura misrepresented the characteristics of the Supporting Loan Groups ("SLGs") for PLS investments; and (c) the GSEs' diligence of other whole-loan pools for their direct mortgage purchases should inform what loan-level characteristics were and were not material to a PLS investor.  *See, e.g.*, Ex. 1 (7/9/2014 Expert Report of Charles Grice ("Grice Report")), Sec. VI, at 82.[1]

        The diligence practices used by the GSEs to review discrete and relatively small sets of loans purchased by the Single Family businesses have no relationship to the diligence that Defendants performed, or failed to perform, on the SLGs underlying PLS in order to fulfill their obligations under the governing securities laws.  The Court has agreed, repeatedly finding that the GSEs' Single Family due diligence is irrelevant and explaining that the admission of evidence and testimony concerning the GSEs' Single Family diligence practices would be "entirely wasteful."  2/21/2013 Hr'g Tr., 11-cv-5201 Dkt. 472, at 62:17-63:11.  As the Court has

---

[1]  FHFA requests that the Court exclude testimony from Mr. Grice about the opinions in ¶¶ 173-196 of his report. Ex. 1 (Grice Report) ¶¶ 173-196.  *See also* Ex. 2 (R. Feigles Dep. Tr.) at 111:19-116:9, 433:7-436:18, 588:6-590:12; Ex. 3 (L. Bates Moss Dep. Tr.) at 74:5-75:9, 240:9-242:19; Ex. 4 (K. Palmer Dep. Tr.) 408:9-411:19, 596:11-598:14; Ex. 5 (J. Ingram Dep. Tr.) at 297:9-298:21; Ex. 6 (P. Cook Dep. Tr.) at 111:17-115:17.  Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. on Knowledge, Dkt. 690, at 11, 25, 28; Defs.' Local Rule 56.1 Counter Stmt. in Support, Dkt. 691, ¶¶ 80, 296-314, 319-327, 455 and exhibits cited therein.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

emphasized, the GSEs' Single Family businesses performed diligence on different loans than Defendants; often from different originators; always for a different purpose; based on different financial incentives; and according to different standards.  Admitting material regarding Single Family due diligence, which the Court has already deemed irrelevant, would prejudice FHFA, mislead the jury, and waste time.

## BACKGROUND

*GSE Single Family Due Diligence.*  The Single Family businesses of both Fannie Mae and Freddie Mac purchased pools of whole loans as part of their respective statutory missions to provide liquidity to the mortgage market.[2]  Fannie Mae used third-party vendors to perform diligence on subprime loan pools purchased and held for investment as part of its New Business Initiative ("NBI").[3]  For its part, Freddie Mac employed third-party vendor Clayton to conduct diligence on subprime and Alt-A mortgage loans collateralizing guaranteed Structured Pass-Through Certificates ("T-Deals"), and provided T-Deal investors with a payment guarantee.[4]  As with their other Single Family purchases, the GSEs had repurchase rights on loans that did not comply with seller representations.[5]

*The Court's Rulings.*  Defendants moved before this Court for orders that FHFA produce the GSEs' Single Family diligence policies and procedures and third-party vendor reports.  *See* 12/12/2012 Ltr. from R. Klapper at 2, Nomura Dkt. 191; 2/4/13 Ltr. from R. Klapper, Nomura Dkt. 213.  Defendants argued that these documents were relevant to assessing the adequacy of Nomura's diligence.  *See* 12/12/2012 Ltr. from R. Klapper at 2, Nomura Dkt. 191; 2/4/13 Ltr. from R. Klapper, Nomura Dkt. 213.  The Court denied such requests, ruling, "[t]here are simply too many differences in the due diligence programs conducted in that limited part of the GSE[s'] work, compared to the due diligence which will be before the jury at these trials for discovery of the third party due diligence on the Single Family side of [the GSEs] to be helpful, probative or productive."[6]  Most recently, the Court rejected Defendants' argument that Single Family due

---

[2]   Unlike Nomura, which conducted diligence pursuant to its Securities Act and Blue Sky obligations, Fannie Mae and Freddie Mac purchased and chose to conduct diligence in connection with their purchase of residential mortgages pursuant to their statutory missions.  *See* 12 U.S.C. §§ 1454(a)(1), 1717(b)(2) (2006).  The GSEs' purchased PLS as investments.  *See* Ex. 7 (D. Hackney Dep. Tr.) at 56:2-5 ("My job was to purchase loans that we felt were going to be profitable to Freddie Mac.  So my goal was to get our pool of loans that would give us a high return.").

[3]   *See* Ex. 5 (J. Ingram Dep. Tr.) at 86:2-88:4, 303:20-304:25.  Fannie Mae did not securitize loans purchased through the NBI.  *See* Ex. 8 (Fannie Mae NBI Temporary Approval) FHFA00311033 at -035 (discussing need to "control the risks inherent in sub-prime credit guarantee business").

[4]   *See* Ex. 2 (R. Feigles Dep. Tr.) at 111:19-112:7, 428:21-429:17; Ex. 4 (K. Palmer Dep. Tr.) at 93:12-22; Ex. 9 (October 2007 Freddie Mac's Terms of Business for T-Deals with Subprime Collateral) FHFA03457158 at -186.  T-Deals are securitizations issued by Freddie Mac in which Freddie Mac purchased certificates issued by the securitization trust and issued securities collateralized by those certificates.  *See, e.g.,* Ex. 10 (T-067 Offering Circular Supplement) at S-1 ("We guarantee principle and interest payments on the SPCs.").

[5]   *See* Ex. 8 (Fannie Mae NBI Temporary Approval) at FHFA00311041; Ex. 2 (R. Feigles Dep. Tr.) at 440:15-441:18.

[6]   *See also FHFA v. UBS Americas Inc.* ("*UBS III*"), 11-Civ-5201 (DLC), 2013 WL 3284118, at*23 (S.D.N.Y. June 28, 2013) (denying Defendants' request for GSE diligence production because "the GSEs' use of this type of diligence is not sufficiently relevant to justify the significant additional burden that would be entailed in producing (footnote continued)

diligence gave the GSEs knowledge of Defendants' misrepresentations, reasoning that the pull-through rates in the GSEs' Single Family due diligence did not "impl[y] . . . that a material number of defective loans were 'pulled through' into Supporting Loan Groups of the Securitizations." *FHFA v. HSBC N. Am. Holdings Inc.*, --- F. Supp. 2d ---, 2014 WL 3702587, at *30 (S.D.N.Y. July 25, 2014).

## I.   THE GSES' SINGLE FAMILY DUE DILIGENCE IS NOT RELEVANT

### A.   The GSEs' Single Family Due Diligence Is Irrelevant to Nomura's Statute of Limitations Defense

To prevail on a statute of limitations defense, Defendants must demonstrate that the GSEs "discovered" sufficient facts to assert their claims in a viable complaint before September 7, 2007. *FHFA v. UBS Ams. Inc.* ("*UBS III*"), No. 11-cv-5201, 2013 WL 3284118, at *21 (S.D.N.Y. June 28, 2013). To meet this standard, Defendants must present evidence demonstrating that the GSEs were aware of Defendants' misrepresentations concerning the specific loans backing the disputed Securitizations in this action. *See id.* For reasons the Court has recognized, however, evidence pertaining to diligence that the GSEs performed on different loans, for different purposes, at different times, is irrelevant to those standards. Any information about loan originators the GSEs' Single Family businesses may have acquired through their diligence has no bearing on the information available to the GSEs' PLS traders about the loans supporting the Certificates, and would not have given the GSEs any reason to doubt Defendants' assurances that they had subjected the loans backing the Certificates to sufficient diligence to support their representations. *See HSBC N. Am. Holdings Inc.*, 2014 WL 3702587, at *20 ("[K]nowledge about a general population—here, the set of all loans generated by a particular Originator—cannot be conflated with knowledge concerning a specific subset of that population, like loans from that Originator selected and securitized into a particular Supporting Loan Group by a Defendant.").

### B.   Evidence of the GSEs' Single Family Due Diligence Is Irrelevant to Prove Nomura's Due Diligence Defense

In the report of its expert, Charles Grice, Nomura seeks to establish the sufficiency of its diligence practices by demonstrating that they were consistent with "industry practices" the GSEs adopted in their Single Family diligence.[7] But, as FHFA has explained in prior briefing in these consolidated Actions, any purported "industry practices" that the GSEs adhered to in performing diligence on Single Family purchases are irrelevant to the appropriate standards for

---

it."); 11/26/2013 Order re Clayton Discovery, Dkt. 549; 12/9/2013 Hr'g Tr., 11-cv-5201, Dkt. 688, at 97:1-21, 106:8-107:3 (denying discovery into GSE diligence on relevance grounds).

[7]   Ex. 1 (Grice Report) ¶¶ 173-196. In light of the similarities between the Grice Report filed in the *Nomura* Action and the Grice Report filed in the *Goldman Sachs* Action, FHFA expects that Mr. Grice will offer testimony in the *Nomura* Action consistent with his testimony in the *Goldman Sachs* Action. In his deposition in the *Goldman Sachs* Action, Grice admitted that he had no personal knowledge of the GSEs' Single Family due diligence and had only reviewed relevant documents and depositions. Ex. 11 (Grice Goldman Sachs Dep. Tr.) 240:20-24 ("I have not done an audit or tried to examine the internal practices of Fannie Mae and Freddie the same way I've evaluated the processes here at Goldman."); *see id.* at 242:2-13. Therefore, Mr. Grice's testimony about the GSEs' Single Family diligence practices will be a factual narrative that is improper as expert testimony.

Nomura's investigation in the PLS it issued here.[8] Even if industry practices were relevant—which they were not—the GSEs' Single Family due diligence would not inform those practices and is irrelevant to Nomura's defense. *See In re WorldCom*, No. 02-cv-3288 (DLC), 2005 WL 408137, at *3 (S.D.N.Y. Feb. 22, 2005) ("[P]erformance of the named plaintiffs . . . [i]s not the yardstick by which to measure the due diligence of the defendants.").

The Court has already concluded that Defendants' statutorily required securitization diligence and the GSEs' Single Family due diligence were "two different programs with two different standards, with different implications in the field." 2/21/2013 Hr'g Tr., 11-cv-5201 Dkt. 472, at 70:19-21. Fannie Mae did not securitize subprime pools. Freddie Mac securitized some whole-loan purchases, but guaranteed the payment of principal and interest payments on the bonds. Its due diligence was not for securitization purposes, but, like Fannie Mae, to assess the credit risk of whole-loan pools held by the purchaser for the long term.[9] In contrast, Nomura sold the credit risk with the Certificates and was obligated under the Securities Act and Blue Sky laws to ensure the loans' consistency with its representations. In sum, as the Court found, "[t]here are simply too many differences" for the GSEs' Single Family diligence to be "helpful, probative or productive" for the issues in this case. *Id.* 63:2-7.

### C.    The GSEs' Single Family Diligence Is Not Relevant to Materiality

Whether a misrepresentation is "material" is measured by an objective standard and turns on what a reasonable investor in non-agency RMBS would consider material at the time it purchased a PLS certificate. *See* 15 U.S.C. §§ 77k, 77l(a)(2); *UBS III*, 2013 WL 3284118, at *23 (citing *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004)). The loan-level characteristics the GSEs considered important to assess the risk associated with whole loans is not probative of whether a reasonable investor in a PLS Certificate would view Nomura's misrepresentations as substantially altering the total mix of information available.

The Court has already rejected the false equivalency that Nomura's expert, Mr. Grice, draws between Single Family diligence on whole-loan pools—on which the GSEs held the long-term credit risk—and Nomura's securitization diligence required for purposes of offering the Certificates to investors. *See, e.g.*, Ex. 1 (Grice Report) ¶ 176. As the Court explained, "there is no reason to think that the types of (often nonpublic) information a Single Family employee would consider material in deciding whether to purchase a whole loan is illuminating in determining what a PLS trader would consider material in deciding whether to buy a security backed by a pool of loans." *UBS III*, 2013 WL 3284118, at *23. The GSEs applied different requirements to their whole-loan purchases compared to their PLS purchases.[10] Accordingly,

---

[8]  *See, e.g.*, Pl.'s Reply Mem. in Supp. of Mot. Sum. J. on HSBC Defs.' Due Diligence and Reasonable Care Defenses 13-16, 11-cv-6189, Dkt. No. 905.

[9]  *See* Ex. 2 (R. Feigles Dep. Tr.) at 703:2-16; Ex. 12 (Due Diligence for Subprime Business Presentation) at FHFA01488781 (Freddie Mac's due diligence on T-Deals consisted of "[t]argeted sampling to identify and carve out [the] costliest defects" and "[s]tatistical sampling to enable [a] reliable estimate of [the] total exposure to ineligible loans.").

[10]  *See, e.g.*, Ex. 8 (Fannie Mae NBI Temporary Approval) at FHFA00311067-068 (showing that Fannie Mae established strict loan- and deal-level credit limits, including a "Loan Box," which set loan-level characteristics and "exclude[d] the lowest credit quality portion" of each deal, and a "Deal Box" that provided concentration limits for (footnote continued)

evidence and testimony about the GSEs' Single Family purchases is irrelevant to the materiality of defects in the loans underlying the Securitizations.

## II.   EVEN IF RELEVANT, EVIDENCE RELATED TO THE GSES' SINGLE FAMILY DUE DILIGENCE SHOULD BE EXCLUDED UNDER RULE 403

Even if evidence related to the GSEs' Single Family due diligence is relevant—and it is not—the Court "may exclude [such] evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has recognized these very dangers in its rulings addressed to the GSEs' Single Family diligence. Indeed, the Court has concluded that "[i]t would be entirely wasteful . . . for the parties to spend energy exploring the differences [between the GSEs' Single Family purchases and Defendants' Securitization diligence] and trying to come up with some meaningful way in which these two very different programs related to each or could be said to be comparable." 2/21/2013 Hr'g Tr., 11-cv-5201 Dkt. 472, at 62:17-63:11. Accordingly, the introduction of evidence and argument concerning the GSEs' Single Family due diligence would not be "helpful, probative or productive for our work here." *Id.* at 63:7. Nomura should not be permitted to create a distraction at trial, and FHFA requests that evidence concerning the GSEs' Single Family due diligence be precluded. *See In re WorldCom*, 2005 WL 408137, at *4 (ruling plaintiff's testimony inadmissible to prove materiality because the jury might confuse materiality and plaintiff's reliance).


Respectfully submitted,

*/s/ Philippe Z. Selendy*

Philippe Z. Selendy



cc:   All Counsel of Record

---

key risk categories identified in each deal); Ex. 13 (SafeStep Mortgages Presentation) at FHFA01496448 (showing Freddie Mac's guidelines for non-prime loans and directed its third-party vendor to flag certain loans for review based on Freddie Mac's requirements); Ex. 2 (R. Feigles Dep. Tr.) at 487:16-489:2.