Motion *in Limine* No. 4

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

October 14, 2014

<u>VIA ELECTRONIC MAIL</u>

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

    Re:    <u>FHFA v. Nomura Holding Am., Inc., et al.</u>, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

    Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," collectively with Fannie Mae, the "GSEs"), respectfully moves *in limine* for an order precluding Defendants from eliciting testimony, offering documents, or arguing that the sale of any of the Certificates was consummated before the "settlement date" as listed in FHFA's Amended Complaint (Dkt. 60). Any such argument is not only legally flawed but will also prejudice FHFA by creating a substantial risk of jury confusion.

## BACKGROUND

    **A.**    **The GSEs' Trade Dates And Settlement Dates**

    To initiate a sale of a Certificate, Defendants contacted a GSE trader to actively solicit the interest of the GSE and to extend an invitation to purchase upcoming new securities. *See, e.g.*, Ex. 1 (Fannie Mae Non-Agency (Private Label) Desk Procedure Manual) at FHFA04382870; Ex. 2 (Hackney Dep. Tr.) at 52:18-25. Upon deciding to move forward, the GSE trader completed a trade ticket using information provided by the underwriter entity, here either Defendant Nomura Securities or Defendant RBS Securities. *See* Ex. 1 at FHFA04382870; Ex. 3 (Freddie Mac Mortgage Portfolio Investment Procedure (MIS 101)) at FHFA12975185; Ex. 4 (Trade Ticket for NHELI 2006-HE3 IA1) at FHFA00002480.[1] On the date of the trade ticket—the "trade date"—the GSE made a conditional commitment to purchase the Certificate and Defendants made a conditional commitment to sell the Certificate to the pertinent GSE at a later time. *See id.* at FHFA00002480; Ex. 5 (Dyson Dep. Tr.) at 710:8-19; Ex. 2 at 305:18-307:1; Ex. 6 (Fannie Mae Accounting Policies and the Accounting Manual) at FHFA13012116 ("the initiation date of the commitment is the 'trade' date"). Both before and after the trade date, a trader or credit analyst conducted analysis to determine the strength of the investment based on

---

[1] For one Certificate, NHELI 2007-3, non-party Lehman Brothers, Inc. provided the information to Freddie Mac. Dkt. 60 tbl.10.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

information received from Defendants.  *See* Ex. 1 at FHFA04382870; Ex. 3 at FHFA12975182-85; Ex. 7 (Freddie Mac Business Engineering 103 - Non-Agency ABS Loan Level Data, Charter Review and Legal Documents Collection Procedure) at FHFA00535907.  Such information included collateral stratifications, a preliminary prospectus, a free writing prospectus, or a term sheet.  *See, e.g.*, Ex. 8 (NHELI 2006-HE3 free writing prospectus) at FHFA01041504.

This back-and-forth between the GSE and the Defendants culminated in a formal prospectus supplement that contained the final terms and descriptions of the Certificates (the "Prospectus Supplement").  It was the Prospectus Supplement that "describe[d] the specific terms of th[e] series of certificates" from which a GSE would purchase its Certificate.  *E.g.*, Ex. 9 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591328.  On or about the date the Prospectus Supplement was issued, a GSEs would formally transfer payment to Defendants for the Certificate and title transferred from Defendants to the GSE; this date is known as the "settlement date."  *See* Ex. 6 at FHFA13012116 ("the date that the security is actually delivered is the 'settlement' date.").  Appendix A shows the trade date, settlement date, the date shown on the face of each Prospectus Supplement, and the date each Prospectus Supplement was filed with the SEC.

> B.   **The Representations In The Final Prospectus Supplement Could Not Materially Deviate From The Representations In The Preliminary Offering Materials**

Prospectus Supplements always issued after the "trade date."  As both a factual and legal matter, the representations in the final Prospectus Supplements had to be materially similar to the representations in the preliminary offering materials in order for a sale to go through.  Factually, after being contacted by a Defendant, the GSEs "would tentatively say we are interested in a transaction based on preliminary information. We would receive a … preliminary prospectus before the trade. It would be reviewed and compared to what was shown to us when we said we would be interested in the trade. If it was different, I would not be committed to transact." Ex. 2 at 101:22-102:3 (Freddie Mac witness); *see also* Ex. 10 (Fannie Mae Private Label Securities Post-Settlement Review) at FHFA 12805232 (similar policy allowing Fannie Mae to "[r]eject trades" that are not consistent with post-settlement review).  Many of the preliminary offering materials themselves likewise made clear that Defendants' "obligation to sell securities to you is conditioned on the mortgage loans and the securities having the characteristics described in this free writing prospectus. If that condition is not satisfied, [Defendants] will notify you, and neither the Issuing Entity nor any underwriter will have any obligation to you to deliver all or any portion of the securities which you have committed to purchase." Ex. 11 (2006-FM2 Free Writing Prospectus) at FHFA01041880.  And the Prospectus Supplements made clear that investors "should rely only on the information contained in this document" in making a purchasing decision.  *E.g.*, Ex. 12 (NHELI 2006-FM2 Prospectus Supplement) at FHFA04178854.  The course of dealing between the parties confirms this principle: the Prospectus Supplements' representations for the seven Certificates that the GSEs purchased from Defendants did not materially change from the earlier offering materials.  *See* Appendices B-H.[2]

---

[2]   The NAA 2005-AR6 Certificate does not deviate from this principle.  While a term sheet sent before the trade date of the NAA 2005-AR6 Securitization contained different statistical representations about the security, after the trade date Nomura altered the structure of the Securitization to create a new Supporting Loan Group IV out of what was previously Supporting Loan Group III; the representations about later preliminary offering materials are

Governing SEC regulations also required the information in such preliminary offering materials to "not conflict with" the information in the final Prospectus Supplement and directed the investor, here the GSEs, to consult the final Prospectus Supplements. 17 C.F.R. § 230.433(c)(1)-(2). General industry practice conformed to this requirement: RMBS purchases "involved conditional contracts where investors agreed to purchase securities before they had all the prospectus information…. [C]ommenters stated that purchasers were given the opportunity to reassess their purchase decisions if new or changed information was provided." Securities Offering Reform, 70 Fed. Reg. 44,722, at 44,767 n.407 (Aug. 3, 2005); *see also* Comments of the Bond Market Association to Securities Offering Reform (File No. 27-38-04), Impacts of Proposal in the ABS Markets, dated Jan. 31, 2005, at 8, *available at* http://www.sec.gov/rules/proposed/s73804/bma013105.pdf (comments of Bond Market Association, of which Defendants are both members, stating that "[o]ur members' understanding is that, under current law as well as practice, if a security is sold (that is, a cont[r]act of sale is entered into) based on Preliminary Information, and if there are Material Changes between the Preliminary Information and the final prospectus, then the investor has the right to break the trade based on the Material Change until the time of settlement.").[3]

## C.   Defendants' Prior Arguments About Trade Date And Settlement Date

In their filings in this Court, Defendants have attempted to highlight a false distinction between trade dates and settlement dates. For example, in their Local Rule 56.1 counterstatement opposing FHFA's motion for summary judgment on the GSEs' knowledge, Defendants conceded that the GSEs' "purchased" the Certificates "[b]etween November 30, 2005 and April 30, 2007"—*i.e.*, the settlement dates, *see* Appendix A—but then emphasized that the trade dates for each Certificate were several weeks earlier. Dkt. 689, ¶¶ 1-8. Defendants have drawn similar distinctions in their 56.1 statements in support of their motion for summary judgment on the statutes of repose (Dkt. 713, ¶¶ 1-8) and in opposition to FHFA's motion for summary judgment on the statutes of limitations (Defs.' Sept. 29, 2014 Local Rule 56.1 Counterstatement of Material Facts ¶ 15 & tbl. B). By contrast, even Defendants' expert agrees that the "purchase date" is the settlement date. Ex. 13 (Vandell Expert Rep.) at 3 & tbl. (using settlement date in "purchase date" column). These repeated references suggest that Defendants will seek to introduce evidence and/or argue at trial that Defendants "sold" the Certificates to the GSEs on the trade date—between 1 and 39 days before the Prospectus Supplements were issued, *see* Appendix A—and thus the GSEs could not or did not consider the representations in the Prospectus Supplements in making their purchasing decisions. So that the parties may prepare

---

consistent with the representations in the final Prospectus Supplement about the final Supporting Loan Group III. *See* Appendix B.

[3]   *See also* Comments of the Mortgage Bankers Association of America, the Housing Policy Council of the Financial Services Roundtable, and the Consumer Mortgage Coalition on Securities Offering Reform Proposal (File No. S7-38-04) – Impact on the MBS Forward Delivery Market, dated Feb. 15, 2005, at 6, *available at* http://www.sec.gov/rules/proposed/s73804/group021505.pdf (comments from, *inter alia*, the Financial Services Roundtable—of which RBS's then-subsidiary, Citizens Bank, was a member—stating, "Under current custom and practice based on market participants' understanding of existing law, if an investor agrees with an underwriter to purchase [an] MBS based on preliminary information, such as a term sheet or other ABS informational and computational material, and there is a material change in the final prospectus as compared to the information contained in the preliminary information, then the investor has the right to decline to purchase the Forward MBS prior to settlement.").

more efficiently for trial, FHFA respectfully requests that the Court exclude any argument or evidence that the sale of a Certificate was completed before its settlement date.

## ARGUMENT

**I.  EVIDENCE AND ARGUMENT THAT DEFENDANTS "SOLD" A CERTIFICATE TO A GSE ON THE TRADE DATE IS LEGALLY FLAWED**

Any argument by Defendants that the "trade date" is the date on which Defendants "sold" a Certificate to a GSE is wrong as a matter of law.  A final "sale" requires that the buyer and seller make an "irrevocable commitment to exchange shares" with no "significant conditions" left unfulfilled.  *In re Alliance Pharm. Corp. Secs. Litig.*, 279 F. Supp. 2d 171, 187 (S.D.N.Y. 2003); *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 863 (9th Cir. 2013) (no final "sale" where "commitment to the exchange of shares was contingent on a number of conditions"); *SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 704 (D.D.C. 1978) (no sale or "binding, irrevocable commitment" where original commitment was "conditional" and there was "no expectation or duty to proceed with the sales if the merger was aborted").  Here, there was no "final" commitment on the trade date, because the GSEs were purchasing "asset-backed securities offerings involv[ing] conditional contracts" where the GSEs could always "reassess their purchase decisions if new or changed information was provided."  Securities Offering Reform, 70 Fed. Reg. at 44,767 n.407; *see also* Ex. 2 at 101:22-102:3.  Defendants should not be allowed to argue that a "sale" occurred on the trade date when there still remained a significant condition precedent to be fulfilled, namely that the representations in the Prospectus Supplement would not materially change from those in the preliminary offering materials.

Nor can Defendants offer evidence or argument about the trade date to claim that the representations later made in the Prospectus Supplements were not material.  As an initial matter, the representations in the Prospectus Supplements were, for all of the Certificates except one (*see* n.2, *supra*) identical or nearly identical to representations Defendants had already made on or about the trade dates in marketing the Certificates to the GSEs.  *See* Appendices B-H; *e.g.*, Appendix F (Defendants representing in free writing prospectus that owner occupancy rate would be 45.61%, where final Prospectus Supplement owner occupancy rate was 45.78%).[4] Indeed, were Defendants to argue that their representations in the Prospectus Supplements were not material because the GSEs made purchase decisions based on the preliminary offering materials, then no representation in any RMBS Prospectus Supplement would ever be material, there would be no need for Defendants in the Prospectus Supplements to advise investors that they "should rely only on the information contained in this document" (Ex. 12 at FHFA04178854), nor would there ever need to be a Prospectus Supplement at all.  In reality, the GSEs tentatively agreed to the transactions only after Defendants made the same material representations that appeared in the Prospectus Supplements, and the GSEs were entitled to decline the transactions had the representations differed.  The "trade date" is thus irrelevant to the questions that will be presented to the jury.

---

[4]  Nor is there any basis for Defendants to argue, for FHFA's Section 12 claims, that information forming the basis of FHFA's claims "was not conveyed to [a GSE] at or prior to the time of the contract of sale."  *FHFA v. Bank of Am. Corp.*, 2012 WL 6592251, at *7 (S.D.N.Y. Dec. 18, 2012).

II.  **EVIDENCE AND ARGUMENT THAT DEFENDANTS "SOLD" A CERTIFICATE TO A GSE ON THE TRADE DATE WILL PREJUDICE FHFA, CONFUSE THE ISSUES, MISLEAD THE JURY, AND WASTE TIME**

Even if the trade date were in some way relevant, which it is not, any argument by Defendants that the trade date is the date of "sale" will prejudice FHFA, confuse the issues, mislead the jury, and waste time. *See* Fed. R. Evid. 403.

Defendants will likely offer such testimony for the purpose of introducing to the jury— explicitly or implicitly—the GSEs' reliance, or lack thereof, on the Prospectus Supplement for each Certificate. But reliance is not an element of any claim or defense: "This Court has repeatedly emphasized that neither Section 11 nor Section 12(a)(2) requires allegations of scienter, *reliance,* or loss causation in order to state a claim." *Bank of Am. Corp.*, 2012 WL 6592251, at *2 (emphasis added) (citations and quotations omitted); *see also id.* at *7 n.8 (same for FHFA's Blue Sky claims). Allowing such testimony and argument will likely lead the jury to assume that FHFA must prove that the PLS traders and credit analysts read each of the Prospectus Supplements before deciding whether to enter into a trade and that their failure to do so is fatal to FHFA's claims—an assumption that is wrong as a matter of law, *Demarco v. Edens*, 390 F.2d 836, 841 (2d Cir. 1968). If permitted, FHFA will be forced to waste the Court's and the jury's time explaining the distinction between the settlement date and trade date, even though such a distinction has no legal relevance and does not absolve Defendants of their misrepresentations and omissions of material fact.

Moreover, any argument or evidence by Defendants as to the "trade date" would cause needless confusion over the proper standard for judging whether Defendants' representations were material. Materiality is an objective standard that turns on what a "prototype reasonable investor" would consider important rather than on "whether the investment decision of a particular individual would have been affected." *In re Metlife Demutualization Litig.*, 229 F.R.D. 369, 380 (E.D.N.Y. 2005) (citing *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363 (2d Cir. 1973)). As this Court and others have concluded, evidence or argument about a particular plaintiff's individual circumstances will likely distract the jury from the objective materiality test and create "dangers of unfair prejudice, confusion of the issues, and misleading the jury." *In re WorldCom, Inc. Secs. Litig.*, 2005 WL 408137, at *5 (S.D.N.Y. Feb. 22, 2005); *see also In re ICN/Viratek Secs. Litig.*, 1996 WL 34448146, at *4 (S.D.N.Y. July 15, 1996) (evidence of an individual investor's purchasing decision "has little, if any, probative value, and that value is greatly outweighed by the potential for jury confusion"). That a GSE made a conditional commitment on the trade date upon receiving preliminary offering materials that were expected to contain the same representations as in the Prospectus Supplements does not speak to how an objective investor would have viewed those representations.

## CONCLUSION

For the reasons set forth above, FHFA respectfully requests that the Court exclude any argument or evidence that the sale of a Certificate was consummated before its settlement date.

Respectfully submitted,

/s/ Philippe Z. Selendy

Philippe Z. Selendy

cc:     All Counsel of Record

## Motion in Limine 4 – Appendix A

| GSE | Securitization | Tranche | CUSIP | Trade Date | Settlement Date | Date on Prospectus Supplement | Prospectus Supplement Issuance Date |
|---|---|---|---|---|---|---|---|
| FRE | NHELI 2006-FM1 | IA | 65536HBT4 | 12/19/2005 | 1/31/2006 | 1/27/2006 | 1/31/2006 |
| FRE | NHELI 2006-FM2 | IA1 | 65537FAA9 | 10/18/2006 | 10/31/2006 | 10/30/2006 | 10/31/2006 |
| FRE | NHELI 2006-HE3 | IA1 | 65536QAA6 | 8/14/2006 | 8/31/2006 | 8/29/2006 | 8/30/2006 |
| FRE | NHELI 2007-1 | IIIA | 65537KAA8 | 1/23/2007 | 1/31/2007 | 1/29/2007 | 1/31/2007 |
| FRE | NHELI 2007-2 | IA1 | 65537MAA4 | 12/27/2006 | 1/31/2007 | 1/30/2007 | 2/1/2007 |
| FRE | NHELI 2007-3 | IA1 | 65537NAA2 | 4/26/2007 | 4/30/2007 | 4/27/2007 | 5/1/2007 |
| FNM | NAA 2005-AR6 | IIIA1 | 65535VRJ9 | 11/16/2005 | 11/30/2005 | 11/29/2005 | 11/30/2005 |