expected to be collected over the sum of (1) the initial investment less (2) cash collected less (3) OTTI plus (4) amount of yield accreted to date.

2. Cost Recovery Method

If the future cash flows cannot be reliably estimated (this is expected to be very rare), all subsequent coupon interest amounts received should first go to reducing the basis of the security before any further income is recognized. The cost recovery method should be used until it is determined that the amount and timing of cash flows are reasonably estimable.

B. Investments that <u>are</u> subject to EITF 99-20

1. Scope

The scope of EITF 99-20 only includes BIs[3] in securitized financial assets including transactions issued or guaranteed by us that:

a. Are debt securities accounted for under the provisions of FAS 115, SOP 03-3 **or** financial assets that are not debt securities in form but are required to be accounted like debt securities in accordance with paragraph 14 of FAS 140, **and**
b. Involve securitized financial assets that have contractual cash flows (e.g. EITF 99-20 does not apply to common-stock equity securities as they do not involve contractual cash flows), **and**
c. Are rated below AA **or** can contractually be prepaid or otherwise settled in such a way that we would not recover at least 90% of our recorded investment.

The scope of this section covers:

- Interest only strips (I/Os);
- Guarantee asset retained in a securitization out of our portfolio and those arising from a lender swap transaction,
- Buy ups ("BUs");
- BIs that <u>are not</u> of high credit quality at the date of acquisition/ transaction (purchase or securitization) and are not subject to the provisions of PB 6 or SOP 03-3;
- BIs purchased at a premium of more than 10% of face value (expected to be rare); and,
- Residual interests generated, if any, at the time of purchase of our security (expected to be rare).

In addition, we evaluate all mortgage related securities and non-mortgage investment securities <u>that are beneficial interests in a securitization of financial assets</u> to determine whether they are within the scope of EITF 99-20. A beneficial interest is defined as:

*"Rights to receive all or portions of specified cash inflows to a trust or other entity, including senior and subordinated shares of interest, principal, or other cash inflows*

---

[3] BIs are in the scope of EITF 99-20 regardless of whether they are classified as trading, available for sale or held to maturity.

*to be "passed-through" or "paid-through," premiums due to guarantors, commercial paper obligations, and residual interests, whether in the form of debt or equity."[4]*

2. **High credit quality determination**

We determine whether a BI is rated at least AA <u>only</u> at the date we acquire the security and document the appropriate support to evidence the rating at acquisition. A downgrade in the credit rating of a security that was rated at least AA at acquisition and not within the scope of EITF 99-20 does not cause that security to be subject to EITF 99-20. It should be noted, if a portion of a specific security is purchased in one period and deemed to not meet the scope of EITF 99-20 and a portion of the exact same security is purchased in a subsequent period, it is possible for the second 'lot' acquired of the same security to fall within the scope of EITF 99-20. Therefore, we may have two separate 'lots' of the same security being accounted for under different accounting policies.

3. **Recognition and measurement of impairment**

We recognize the excess of all cash flows attributable to the BI estimated at the acquisition/ transaction date (referred to herein as the transaction date) over the initial investment (the accretable yield) as interest income over the life of the BI using the effective yield method. If the BI arises out of a securitization from our portfolio, the initial investment is the allocated carrying amount after application of the relative fair value allocation method.

We continue to update our estimate of cash flows over the life of the BI. If upon evaluation the fair value of the BI has declined below its reference amount[5], then we determine whether the decline is other than temporary. If, based on our best estimate of cash flows that a market participant would use[6] in determining the current fair value of the BI, there has been an adverse change in estimated cash flows from those previously projected (considering both the timing and amount of estimated cash flows), then an OTTI should be considered to have occurred. In such a scenario, the BI will be written down to fair value with the resulting change included in income as an impairment charge.

If an OTTI is recognized pursuant to the above, prospective yield on the BI is reset to the market yield.

Therefore, a BI within the scope of EITF 99-20 is deemed to be other than temporarily impaired if:

a. The fair value of the BI is less than the BI's reference amount, **and**
b. The most recent evaluation determines that there has been an adverse change in the cash flows.

---

[4] FAS 140, Appendix E
[5] The reference amount is equal to (i) the initial investment, less (ii) Cash received to date, less (iii) OTTI recognized to date, plus (iv) the yield accreted to date.
[6] Estimate of cash flows used for EITF 99-20 purposes are adjusted for both credit and prepayment risk.

If we conclude that under the guidance of EITF 99-20 a BI is not OTTI, we also assess it for impairment under the policy for investments that are not subject to EITF 99-20.

**C. Special Considerations**

1. **Guarantees or other credit enhancements**

   We consider guarantees, insurance or other credit enhancement (such as collateral) in determining whether it is probable that we will be unable to collect all amounts due according to the contractual terms of the debt security only if (a) the guarantee or other credit enhancement provides for payments to be made (or assets transferred) solely to reimburse us for failure of the investee to satisfy its required payment obligations, and (b) the guarantee or other credit enhancement is contractually included in the terms of the purchased debt security or were contractually attached to the security at the time the credit enhancement was obtained (i.e. wrapped securities). Contractually attached insurance, guarantees or other credit enhancements are considered when evaluating a wrapped security, as long as they are attached to or embedded in the security and are considered legally part of that security; that is, they travel with the security, are not detachable from that security, and are not tradable separately under any circumstances.

   Freestanding insurance agreements or other credit enhancements synthetically added to the security to create a wrapped security, also referred to as unattached or "back-end," cannot be considered for purposes of assessing OTTI.

2. **Credit ratings**

   We use ratings from external rating agencies, such as Moody's, Standard & Poor's, or Fitch. See descriptions and mapping of ratings between rating agencies below. We use the lowest rating category (disregarding any plus or minus or any numerical or other subcategory) of any of the three rating agencies. For example, BB+, BB, BB-, Ba1, Ba2, and Ba3 are all considered BB.

*Long-term rating scales comparison:*

| Definitions | Moody's | S&P | Fitch |
|---|---|---|---|
| Prime. Maximum Safety | Aaa | AAA | AAA |
| High Grade/High Quality | Aa1 | AA+ | AA+ |
|  | Aa2 | AA | AA |
|  | Aa3 | AA- | AA- |
| Upper Medium Grade | A1 | A+ | A+ |
|  | A2 | A | A |
|  | A3 | A- | A- |
| Lower Medium Grade | Baa1 | BBB+ | BBB+ |
|  | Baa2 | BBB | BBB |
|  | Baa3 | BBB- | BBB- |
| Non Investment Grade/ Speculative | Ba1 | BB+ | BB+ |
|  | Ba2 | BB | BB |
|  | Ba3 | BB- | BB- |

| | | | |
|---|---|---|---|
| Highly Speculative | B1<br>B2<br>B3 | B+<br>B<br>B- | B+<br>B<br>B- |
| Substantial Risk/ In Poor Standing | Caa1<br>Caa2<br>Caa3 | CCC+<br>CCC<br>CCC- | CCC+<br>CCC<br>CCC- |
| Extremely Speculative | Ca | CC | CC |
| Maybe in Default | C | | C |
| Default | | D | DDD<br>DD<br>D |

## III. QUESTIONS AND INTERPRETIVE RESPONSES

Decline Solely Due to Interest Rates

**Question 1: If we conclude that a decline is attributable solely to adverse interest rate movements, are we required to recognize an OTTI?**

The SEC staff has indicated that a registrant may need to recognize an OTTI even if the decline in fair value is due solely to adverse interest rate movements (and not credit quality). In determining if we can overcome the presumption that OTTI exists, our intent and ability is a key factor to consider.

## IV. APPLICABLE ACCOUNTING AND REGULATORY LITERATURE

| GAAP Literature | Effective Date | Title |
|---|---|---|
| FAS 115 | 1/1/1994 | Accounting for Certain Investments in Debt and Equity Securities |
| FAS 115 Q&A | 11/1995 | A Guide to Implementation of Statement 115 on Accounting for Certain Investments in Debt and Equity Securities: Questions and Answers |
| EITF 03-1[7] | Disclosure Requirements- effective for years ending after 12/15/03; recognition and measurement- effective for years ending after 6/15/04 | The Meaning of Other-Than-Temporary Impairment and Its Application to Certain Investments |
| EITF 99-20 | 4/1/2001 | *Recognition of Interest Income and Impairment on Purchased and Retained Beneficial Interests in Securitized Financial Assets* |
| SOP 03-3 | 1/1/2005 | *Accounting for Certain Loans or Debt Securities Acquired in a Transfer* |

---

[7] FSP FAS 115-1 and 124-1 nullified the requirements of paragraphs 10–18 of EITF 03-1 as of the effective date of the FSP.

| FSP FAS 115-1 and FAS 124-1 | 1/1/2006 | *The Meaning of Other-Than-Temporary Impairment and Its Application to Certain Investments* |

Confidential and Proprietary - Confidential Treatment Requested by Fannie Mae                 227

CONFIDENTIAL                                                                       FHFA13012278

| MATERIALITY | G9.6 |
|---|---|

## I. APPLICABILITY

This policy addresses how we apply principles of materiality in assessing potential misstatements in our financial statements. This policy is effective as of December 31, 2004.

## II. POLICY

We evaluate all errors in accordance with SAB 99, *Materiality*, in order to determine if adjustments arising from errors would be required for the financial statements to ensure they would not be misleading.

A misstatement is evaluated in light of quantitative and qualitative factors, and in relation to individual line item amounts, subtotals, or totals in the financial statements. We consider the significance of a misstatement to the financial statements, the pervasiveness of the misstatement, and the effect of the misstatement on the financial statements taken as a whole.

- A. *Quantitative and Qualitative Factors* - Both quantitative and qualitative factors must be considered when assessing materiality.

    1. **Quantitative:** Quantifying, in percentage terms, the magnitude of a misstatement is only a portion of the materiality analysis; it cannot appropriately be used as a substitute for a full analysis of all relevant considerations.

    2. **Qualitative:** The following list, while not exhaustive, contains examples of qualitative considerations that should be evaluated.

        i. Whether the misstatement arises from an item capable of precise measurement or whether it arises from an estimate and, if so, the degree of imprecision inherent in the estimate.
        ii. Whether the misstatement masks a change in earnings or other trends.
        iii. Whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise.
        iv. Whether the misstatement changes a loss into income or vice versa.
        v. Whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability.
        vi. Whether the misstatement affects the registrant's compliance with regulatory requirements.
        vii. Whether the misstatement affects the registrant's compliance with loan covenants or other contractual requirements.
        viii. Whether the misstatement has the effect of increasing management's compensation - for example, by satisfying requirements for the award of bonuses or other forms of incentive compensation.
        ix. Whether the misstatement involves concealment of an unlawful transaction.
        x. Whether the misstatement would result in a significant positive or negative market reaction.

- B. *Aggregating and Netting Misstatements:* Each misstatement is considered individually and in the aggregate to determine if the impact of not recording such amount(s) could result in a material misstatement. First, we determine whether a misstatement of individual amounts causes a material misstatement of the financial

Confidential and Proprietary - Confidential Treatment Requested by Fannie Mae
228
CONFIDENTIAL
FHFA13012279

statements taken as a whole. Then, we aggregate those misstatements that are not deemed to be material on an individual basis and determine, if collectively, they have a material effect on subtotals or totals.

C. ***Prior Year Misstatements:*** Effects of misstatements from prior periods are evaluated using both a balance sheet and an income statement approach to determine if there is an impact on the current period. Misstatements evaluated and determined to be immaterial and as such not recorded, may impact a future period.

Compliance with the Securities Exchange Act of 1934 is required by law, even if misstatements are immaterial. In assessing whether a misstatement results in a violation of our obligation to keep books and records that are accurate in reasonable detail, we consider, in additional to factors regarding materiality, those items set forth below.

- **The significance of the misstatement.** It is reasonable to treat misstatements whose effects are clearly inconsequential differently than more significant ones.

- **How the misstatement arose.** It is unlikely that it is ever reasonable to record misstatement or not to correct known misstatements - even immaterial ones - as part of an ongoing effort directed by or known to senior management for the purposes of "managing" earnings. On the other hand, insignificant misstatements that arise from the operation of systems or recurring processes in the normal course of business generally will not cause the books to be inaccurate in reasonable detail.

- **The cost of correcting the misstatement.** The books and records provisions of the Exchange Act do not require registrants to make major expenditures to correct small misstatements. Conversely, where there is little cost or delay involved in correcting a misstatement, failing to do so is unlikely to be reasonable.

- **The clarity of authoritative accounting guidance with respect to the misstatement.** Where reasonable minds may differ about the appropriate accounting treatment of a financial statement item, a failure to correct it may not render the financial statements inaccurate in reasonable detail. Where, however, there is little ground for reasonable disagreement, the case for leaving a misstatement uncorrected is correspondingly weaker.

### III. QUESTIONS AND INTERPRETIVE RESPONSES

Not applicable

### IV. APPLICABLE ACCOUNTING LITERATURE

| GAAP Literature | Effective Date | Title |
| --- | --- | --- |
| SAB 99 | August 1999 | Materiality |
| SAS 107 | June 1984 | Audit Risk and Materiality in Conducting an Audit |
| CON 2 | May 1980 | Qualitative Characteristics of Accounting Information |

**I. APPLICABILITY**

This policy applies to the election of the fair value option pursuant to FAS 159. It is effective as of January 1, 2008.

**II. POLICY**

FAS 159 allows the Company to elect to record qualifying financial assets and liabilities at fair value on the balance sheet with unrealized gains and losses reported in earnings as they occur. The election must be made on an instrument-specific basis, must be applied to the entire instrument, and is irrevocable. Elections can be made only under limited circumstances including when the Company first recognizes the financial instrument in the financial statements, or upon the occurrence of certain remeasurement events.

1. **Qualifying Instruments**

    The following items qualify for the fair value option election:

    - Financial assets and liabilities recorded in the financial statements except those that are not eligible (see 2.)
    - A firm commitment that would otherwise not be recognized at inception and that involves only financial instruments
    - A written loan commitment
    - The rights and obligations under an insurance contract that is not a financial instrument but whose terms permit the insurer to settle by paying a third party to provide those goods and services
    - The rights and obligations under a warranty that is not a financial instrument but whose terms permit the warrantor to settle by paying a third party to provide those goods or services
    - A host financial instrument resulting from the separation of an embedded nonfinancial derivative instrument from a nonfinancial hybrid instrument under paragraph 12 of FAS 133, except those that are not eligible (see 2.)

2. **Instruments Not Eligible for Fair Value Option Election**

    The following items do not qualify for the fair value option election:

    - Subsidiaries and variable interest entities that require consolidation
    - Employer assets representing over funding and employer liabilities representing future obligations for benefit plans including pension, postretirement, post employment, stock options, stock purchase plans, and deferred compensation arrangements
    - The financial assets and liabilities related to leases, except for third-party guarantees of lease obligations or contingencies recognized as the result of cancelled leases
    - Demand deposit liabilities of banks and other savings institutions
    - Any financial instrument recorded in shareholders' equity, in whole or in part

3. Accounting

Upon election of the fair value option for qualifying items, the instrument is recorded at fair value with gains and losses reported in earnings as they occur. Impairment, valuation allowances and deferred costs and fees would not be recognized.

Election of the fair value option can be applied to eligible instruments based on the unit of account. However, for multiple fundings as part of a credit line or loan, the entire balance must be designated as the financial instrument for purposes of the fair value option election. For equity method investments, the fair value option must be elected for the entire investment. For insurance contracts, the fair value option must be elected for all claims and obligations under the contract. Also, all integrated and nonintegrated features of the contract issued at inception of or during the contract period must be included in the fair value option election. Selected cash flows of an instrument can never be designated for the fair value option.

The fair value option can only be elected under limited circumstances including at the point when the Company first recognizes the financial instrument in the financial statements and upon the occurrence of an event that requires remeasurement of the instrument at fair value as a non-recurring event (e.g. significant modifications of debt). Note that when considering the election of an instrument for recognition under the fair value option, non-recurring events do not include items subject to lower-of-cost-or-market accounting or other-than-temporary impairment.

III. QUESTIONS AND INTERPRETIVE RESPONSES

Not Applicable


IV. APPLICABLE ACCOUNTING AND REGULATORY LITERATURE

| GAAP Literature | Effective Date | Title |
| --- | --- | --- |
| FAS 159 | 01/01/08 | *The Fair Value Option for Financial Assets and Financial Liabilities* |
| FAS 157 | 01/01/08 | *Fair Value Measurements* |

6. **Conflict Resolution and Escalations**

The Vice President, Accounting Policy, will resolve conflicts regarding the interpretation of this policy.

7. **Policy Exceptions**

There may be no exceptions to this policy.

8. **Policy Review**

This policy will be reviewed based on changes in facts and circumstances, or at least annually.

9. **Definitions**

Accounting Policies - The accounting rules established by Fannie Mae based on interpretations of generally accepted accounting principles, which guide the accounting treatment applied by Fannie Mae.

APG - Accounting Policy Group

GAAP - Generally Accepted Accounting Principles