announced generally as of a date either 45 days prior to, or the first business day of the month immediately preceding the month of, such Adjustment Date. Thus, if Six-Month LIBOR or One-Year LIBOR rises, the lag in time before the corresponding Mortgage Rate increases, will, all other things being equal, slow the upward adjustment of the pass-through rate or rate cap, as applicable, on the Offered Certificates. In addition, substantially all of the adjustable-rate Mortgage Loans have Mortgage Rates which will not adjust for a substantial period of time after origination. See "The Mortgage Pool" in this prospectus supplement.

The rate of principal prepayments may also be affected by whether the Mortgage Loan documents provide for prepayment charges. Approximately 78.07%, 84.62% and 81.23% of the Group I Mortgage Loans, Group II Mortgage Loans and the Mortgage Loans in the aggregate, respectively, in each case by the related aggregate principal balance as of the Cut-off Date, provide for the payment by the borrower of a Prepayment Charge on voluntary prepayments typically made within up to three years from the date of the execution of the related Mortgage Note. These Prepayment Charges, if still applicable and if enforced by the servicers would typically discourage prepayments on the related Mortgage Loans. There can be no assurance that the Prepayment Charges will have any effect on the prepayment performance of the Mortgage Loans. Investors should conduct their own analysis of the effect, if any, that the Prepayment Charges may have on the prepayment performance of the Mortgage Loans.

The timing of changes in the rate of prepayments may significantly affect the actual yield to investors who purchase the Offered Certificates at prices other than par, even if the average rate of principal prepayments is consistent with the expectations of investors. In general, the earlier the payment of principal of the mortgage loans in the related loan group the greater the effect on an investor's yield to maturity. As a result, the effect on an investor's yield of principal prepayments occurring at a rate higher or lower than the rate anticipated by the investor during the period immediately following the issuance of the Offered Certificates may not be offset by a subsequent like reduction or increase in the rate of principal prepayments.

The Mortgage Loans were underwritten in accordance with the underwriting standards described in this prospectus supplement under "The Mortgage Pool—The Originators", "—Underwriting Standards of the Sponsor" and "—Modified Standards" and may or may not conform to Fannie Mae or Freddie Mac underwriting guidelines for "A" credit borrowers. Accordingly, the Mortgage Loans may experience rates of delinquency, foreclosure and loss that are higher, and may be substantially higher, than mortgage loans originated in accordance with the Fannie Mae or Freddie Mac underwriting guidelines. Any resulting losses, to the extent not covered by credit enhancement, may affect the yield to maturity of the Offered Certificates.

The weighted average life and yield to maturity of each class of Offered Certificates will also be influenced by the amount of excess interest generated by the Mortgage Loans and applied in reduction of the Certificate Principal Balances of the Offered Certificates. The amount of Monthly Excess Interest available on any distribution date to be applied in reduction of the Certificate Principal Balances of the Offered Certificates  will be influenced by, among other factors,

- the overcollateralization level of the Mortgage Loans in the Mortgage Pool at such time, i.e., the extent to which interest on the Mortgage Loans is accruing on a higher Stated Principal Balance than the Certificate Principal Balance of the Offered Certificates;

S-141

NOM-FHFA_05591470

- the delinquency and default experience of the Mortgage Loans; and

- the provisions of the pooling and servicing agreement that permit principal collections to be distributed to the Class X Certificates and the Residual Certificates as provided in the pooling and servicing agreement when the Targeted Overcollateralization Amount has been met.

To the extent that greater amounts of excess interest are distributed in reduction of the Certificate Principal Balance of a class of Offered Certificates, the weighted average life of such class can be expected to shorten. No assurance, however, can be given as to the amount of Monthly Excess Interest to be distributed at any time or in the aggregate.

We refer you to "Description of the Certificates—Distributions of Principal" and "—Credit Enhancement—Overcollateralization in this prospectus supplement.

The yields to maturity of the Offered Certificates and, in particular the Mezzanine Certificates, in the order of payment priority, will be progressively more sensitive to the rate, timing and severity of Realized Losses on the Mortgage Loans. If a Realized Loss is allocated to any class of Mezzanine Certificates, the Certificate Principal Balance thereof will be reduced by the amount of such Realized Loss and such class will thereafter accrue interest on a reduced Certificate Principal Balance.

**Yield Considerations for the Subordinate Certificates**

The rate of payment of principal, the aggregate amount of distributions and the yield to maturity of the Subordinate Certificates will be affected by the rate of prepayments on the related Mortgage Loans, as well as the rate of borrower defaults resulting in Realized Losses, by the severity of those losses and by the timing thereof. See "Description of the Certificates—Credit Enhancement" in this prospectus supplement for a description of the manner in which Realized Losses may be allocated to the Subordinate Certificates. If the purchaser of a Subordinate Certificate calculates its anticipated yield based on an assumed rate of default and amount of Realized Losses that is lower than the default rate and the amount of Realized Losses actually incurred, its actual yield to maturity will be lower than that so calculated. The timing of defaults and losses will also affect an investor's actual yield to maturity, even if the average rate of defaults and severity of losses are consistent with an investor's expectations. In general, the earlier a loss occurs, the greater is the effect on an investor's yield to maturity. There can be no assurance as to the delinquency, foreclosure or loss experience with respect to the Mortgage Loans.

**Prepayments and Yields of Offered Certificates**

The extent to which the yield to maturity of an Offered Certificate may vary from the anticipated yield will depend upon the degree to which it is purchased at a discount or premium and, correspondingly, the degree to which the timing of payments thereon is sensitive to prepayments, liquidations and purchases of the Mortgage Loans. In particular, in the case of an Offered Certificate purchased at a discount, an investor should consider the risk that a slower than anticipated rate of principal payments, liquidations and purchases of the Mortgage Loans could result in an actual yield to such investor that is lower than the anticipated yield and, in the case of an Offered Certificate purchased at a premium, the risk that a faster than anticipated rate of principal payments, liquidations

S-142

NOM-FHFA_05591471

and purchases of such Mortgage Loans could result in an actual yield to such investor that is lower than the anticipated yield.

The "last scheduled distribution date" for each class of Offered Certificates is the distribution date in January 2037. The actual final distribution date with respect to each class of certificates could occur significantly earlier than its last scheduled distribution date because

- prepayments are likely to occur which will be applied to the payment of the Certificate Principal Balances thereof;

- Monthly Excess Interest to the extent available will be applied as an accelerated payment of principal on the Offered Certificates to the extent required to restore or maintain the Targeted Overcollateralization Amount as described in this prospectus supplement; and

- the master servicer may exercise its option to purchase all the assets of the trust as described under "– Optional Termination" in this prospectus supplement.

Prepayments on mortgage loans are commonly measured relative to a prepayment standard or model (the "Prepayment Assumption"). The model used in this prospectus supplement, which we refer to as the prepayment model, is a prepayment assumption which represents an assumed rate of prepayment each month relative to the then outstanding principal balance of a pool of mortgage loans for the life of such mortgage loans. A 100% prepayment assumption assumes that the outstanding principal balance of a pool of adjustable-rate Mortgage Loans prepays at a constant prepayment rate ("CPR") of 10% in the first month of the life of such pool, such rate increasing by an additional approximate 1.82% CPR (precisely 20%/11) each month thereafter through the twelfth month of the life of such pool, 30% CPR from month 13 through and including month 23; 55% CPR from month 24 through and including month 28; and 35% CPR from month 29 and thereafter; and this assumes that the outstanding principal balance of a pool of fixed-rate Mortgage Loans prepays at a constant prepayment rate ("CPR") of 5% in the first month of the life of such pool, such rate increasing by an additional approximate 1.82% CPR (precisely 20%/11) each month thereafter through the twelfth month of the life of such pool, and 25% CPR thereafter.

There is no assurance, however, that prepayments on the Mortgage Loans will conform to any level of the prepayment model, and no representation is made that the Mortgage Loans will prepay at the prepayment rates shown or any other prepayment rate. The rate of principal payments on pools of mortgage loans is influenced by a variety of economic, geographic, social and other factors, including the level of interest rates. Other factors affecting prepayment of mortgage loans include changes in borrowers' housing needs, job transfers and unemployment. In the case of mortgage loans in general, if prevailing interest rates fall significantly below the interest rates on such mortgage loans, the mortgage loans are likely to be subject to higher prepayment rates than if prevailing interest rates remain at or above the rates borne by such mortgage loans. Conversely, if prevailing interest rates rise above the interest rates on such mortgage loans, the rate of prepayment would be expected to decrease.

S-143

CONFIDENTIAL

NOM-FHFA_05591472

The following tables have been prepared on the basis of the following assumptions, which we refer to, collectively, as modeling assumptions:

- the Mortgage Pool consists of 225 group I mortgage loans and 218 group II mortgage loans with the characteristics set forth in the tables set forth below;

- distributions on the Offered Certificates are received, in cash, on the 25th day of each month, commencing in February 2007;

- the Mortgage Loans prepay at the percentages of the Prepayment Assumption indicated;

- no defaults or delinquencies in, or modifications, waivers or amendments respecting, the payment by the borrowers of principal and interest on the Mortgage Loans occur;

- except with respect to footnote (2) on each of the following tables, none of the depositor, the servicers or any other person purchases from the trust fund any Mortgage Loan under any obligation or option under the pooling and servicing agreement;

- scheduled payments are assumed to be received on the first day of each month commencing in February 2007, there are no shortfalls in the payment of interest to certificateholders and prepayments represent payment in full of individual Mortgage Loans and are assumed to be received on the last day of each month, commencing in January 2007, and include 30 days' interest thereon;

- scheduled payments of principal and interest on the Mortgage Loans are calculated on their respective principal balances (prior to giving effect to prepayments received thereon during the preceding calendar month), mortgage rate and remaining amortization terms to maturity such that the Mortgage Loans will fully amortize by their remaining amortization terms (taking into account any remaining interest only periods);

- the certificates are purchased on January 31, 2007;

- the level of One-Month LIBOR remains constant at 5.320% per annum;

- the level of Six-Month LIBOR remains constant at 5.40% per annum;

- the level of One-Year LIBOR remains constant at 5.43% per annum;

- the Certificate Principal Balance of the Class P Certificates is assumed to be zero; and

- the Interest Rate Swap Agreement is not subject to early termination.

CONFIDENTIAL

NOM-FHFA_05591473

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 264,924.14 | 8.82074 | 8.30674 | 359 | 479 | 1 | N/A | 1 Year Libor | 6.26649 | 14.82074 | 8.82074 | 3.00000 | 1.00000 | 23 | 12 |
| 135,116.49 | 7.75000 | 7.23600 | 358 | 478 | 2 | N/A | 1 Year Libor | 6.12500 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 22 | 12 |
| 945,184.81 | 8.04871 | 7.53471 | 359 | 479 | 1 | N/A | 1 Year Libor | 6.14179 | 14.04871 | 8.04871 | 3.00000 | 1.00000 | 23 | 12 |
| 356,170.04 | 6.70311 | 6.18911 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.12500 | 12.70311 | 6.70311 | 3.00000 | 1.00000 | 22 | 12 |
| 224,913.48 | 7.96945 | 7.45545 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.40834 | 13.96945 | 7.96945 | 3.00000 | 1.00000 | 22 | 12 |
| 134,331.76 | 7.12500 | 6.61100 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.12500 | 13.12500 | 7.12500 | 3.00000 | 1.00000 | 22 | 12 |
| 2,457,505.46 | 7.98429 | 7.47029 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.25401 | 13.98429 | 7.98429 | 3.00000 | 1.00000 | 22 | 12 |
| 899,150.75 | 8.78527 | 8.27127 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.78916 | 14.78527 | 8.78527 | 3.00000 | 1.00000 | 22 | 12 |
| 10,213,127.12 | 7.90776 | 7.39376 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.17632 | 13.90776 | 7.90776 | 3.00000 | 1.00000 | 22 | 12 |
| 3,287,268.32 | 7.47408 | 6.96008 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.24457 | 13.47408 | 7.47408 | 3.00000 | 1.00000 | 22 | 12 |
| 149,969.09 | 7.75000 | 7.23600 | 359 | 539 | 1 | N/A | 1 Year Libor | 5.75000 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 23 | 12 |
| 1,459,178.85 | 8.35111 | 7.83711 | 359 | 539 | 1 | N/A | 1 Year Libor | 6.12357 | 14.35111 | 8.35111 | 3.00000 | 1.00000 | 23 | 12 |
| 333,802.79 | 8.46465 | 7.95065 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.61303 | 14.46465 | 8.46465 | 3.00000 | 1.00000 | 22 | 12 |
| 1,730,118.54 | 8.48284 | 7.96884 | 357 | 357 | 3 | N/A | 6 Month Libor | 6.85799 | 14.48284 | 8.32385 | 3.00000 | 1.00000 | 21 | 6 |
| 317,827.46 | 8.21943 | 7.70543 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.02999 | 14.55135 | 7.22367 | 3.00000 | 1.00000 | 19 | 6 |
| 212,860.67 | 8.12500 | 7.61100 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.87500 | 14.12500 | 8.12500 | 3.00000 | 1.00000 | 23 | 6 |
| 198,832.19 | 7.00000 | 6.48600 | 353 | 353 | 7 | N/A | 6 Month Libor | 4.52000 | 13.00000 | 7.00000 | 3.00000 | 1.00000 | 17 | 6 |
| 358,946.86 | 8.34211 | 7.82811 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.22430 | 14.34211 | 8.34211 | 3.00000 | 1.00000 | 22 | 6 |
| 344,887.27 | 7.30940 | 6.79540 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.10327 | 13.30940 | 7.30940 | 3.00000 | 1.00000 | 22 | 6 |
| 293,900.49 | 8.74068 | 8.22668 | 356 | 356 | 4 | N/A | 6 Month Libor | 6.17969 | 14.74068 | 8.74068 | 3.00000 | 1.00000 | 20 | 6 |
| 95,592.47 | 8.60000 | 8.08600 | 353 | 353 | 7 | N/A | 6 Month Libor | 5.88000 | 14.60000 | 8.60000 | 3.00000 | 1.00000 | 17 | 6 |
| 61,367.83 | 7.95000 | 7.43600 | 352 | 352 | 8 | N/A | 6 Month Libor | 7.50000 | 14.95000 | 7.95000 | 3.00000 | 1.50000 | 16 | 6 |
| 619,054.31 | 8.46075 | 7.94675 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.17974 | 14.46075 | 8.46075 | 3.00000 | 1.00000 | 23 | 6 |
| 51,733.71 | 8.25000 | 7.73600 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.12500 | 14.25000 | 8.25000 | 3.00000 | 1.00000 | 22 | 6 |
| 5,228,440.64 | 8.96955 | 8.45555 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.59973 | 15.14532 | 8.69344 | 3.00000 | 1.08492 | 19 | 6 |
| 912,827.86 | 7.61957 | 7.10557 | 356 | 356 | 4 | N/A | 6 Month Libor | 5.97468 | 13.61957 | 7.06831 | 2.88193 | 1.00000 | 20 | 6 |
| 52,695,202.05 | 8.71163 | 8.19763 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.65086 | 14.85527 | 8.36463 | 2.84027 | 1.05877 | 19 | 6 |
| 9,772,747.15 | 8.01762 | 7.50362 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.32831 | 14.17863 | 7.72771 | 2.84374 | 1.06555 | 19 | 6 |
| 1,820,289.24 | 8.45693 | 7.94293 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.38370 | 14.80633 | 8.30192 | 3.00000 | 1.07750 | 18 | 6 |
| 476,527.45 | 8.98526 | 8.47126 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.44490 | 14.98526 | 8.98526 | 3.00000 | 1.00000 | 18 | 6 |
| 274,894.95 | 8.35960 | 7.84560 | 358 | 478 | 2 | N/A | 6 Month Libor | 6.74295 | 14.35960 | 8.35960 | 3.00000 | 1.00000 | 22 | 6 |
| 130,468.99 | 7.99000 | 7.47600 | 354 | 474 | 6 | N/A | 6 Month Libor | 5.50000 | 13.99000 | 7.99000 | 3.00000 | 1.00000 | 18 | 6 |
| 287,489.42 | 7.95000 | 7.43600 | 354 | 474 | 6 | N/A | 6 Month Libor | 7.20000 | 14.95000 | 7.95000 | 3.00000 | 1.50000 | 18 | 6 |

S-145

NOM-FHFA_05591474

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 279,294.69 | 10.12179 | 9.60779 | 356 | 476 | 4 | N/A | 6 Month Libor | 6.00000 | 16.12179 | 10.12179 | 1.00000 | 1.00000 | 20 | 6 |
| 113,974.73 | 8.87500 | 8.36100 | 359 | 479 | 1 | N/A | 6 Month Libor | 6.62500 | 14.87500 | 8.87500 | 3.00000 | 1.00000 | 23 | 6 |
| 1,146,614.51 | 8.54193 | 8.02793 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.57862 | 14.69423 | 8.54193 | 2.64450 | 1.07615 | 19 | 6 |
| 1,495,309.90 | 8.12099 | 7.60699 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.52707 | 14.12099 | 8.12099 | 2.62524 | 1.00000 | 19 | 6 |
| 46,295,328.80 | 8.27660 | 7.76260 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.47204 | 14.44762 | 8.20634 | 2.29797 | 1.05270 | 19 | 6 |
| 11,433,580.51 | 7.63993 | 7.12593 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.27599 | 13.82907 | 7.62500 | 2.66168 | 1.07181 | 18 | 6 |
| 431,799.94 | 8.03277 | 7.51877 | 352 | 472 | 8 | N/A | 6 Month Libor | 5.85448 | 14.03277 | 8.03277 | 3.00000 | 1.00000 | 16 | 6 |
| 11,588,255.65 | 8.68108 | 8.16708 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.18837 | 14.83292 | 8.27130 | 2.62109 | 1.07118 | 19 | 6 |
| 2,296,451.34 | 8.00920 | 7.49520 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.24687 | 14.33178 | 8.00920 | 3.00000 | 1.16129 | 18 | 6 |
| 1,296,284.29 | 7.96788 | 7.45388 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.53207 | 13.96788 | 7.96788 | 3.00000 | 1.00000 | 22 | 6 |
| 79,933.43 | 7.75000 | 7.23600 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.75000 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 20 | 6 |
| 458,319.04 | 8.43883 | 7.92483 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.25338 | 14.43883 | 8.43883 | 3.00000 | 1.00000 | 23 | 6 |
| 170,761.43 | 9.62500 | 9.11100 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.87500 | 15.62500 | 9.62500 | 3.00000 | 1.00000 | 23 | 6 |
| 615,285.37 | 7.87722 | 7.36322 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.44028 | 13.87722 | 7.87722 | 3.00000 | 1.00000 | 22 | 6 |
| 217,560.44 | 8.12500 | 7.61100 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.12500 | 14.12500 | 8.12500 | 3.00000 | 1.00000 | 23 | 6 |
| 5,036,319.97 | 8.48711 | 7.97311 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.35044 | 14.48711 | 8.48711 | 3.00000 | 1.00000 | 22 | 6 |
| 1,711,711.45 | 8.33999 | 7.82599 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.27688 | 14.33999 | 8.33999 | 3.00000 | 1.00000 | 23 | 6 |
| 259,941.80 | 7.50000 | 6.98600 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.12500 | 13.50000 | 7.50000 | 3.00000 | 1.00000 | 23 | 6 |
| 1,500,142.45 | 8.58191 | 8.06791 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.31995 | 14.58191 | 8.58191 | 3.00000 | 1.00000 | 22 | 6 |
| 157,537.50 | 7.87500 | 7.36100 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.12500 | 13.87500 | 7.87500 | 3.00000 | 1.00000 | 22 | 6 |
| 1,256,248.04 | 8.32031 | 7.80631 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.26557 | 14.32031 | 8.32031 | 3.00000 | 1.00000 | 22 | 6 |
| 269,611.70 | 8.38949 | 7.87549 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.34506 | 14.38949 | 8.38949 | 3.00000 | 1.00000 | 23 | 6 |
| 162,982.19 | 8.37500 | 7.86100 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.37500 | 14.37500 | 8.37500 | 3.00000 | 1.00000 | 23 | 6 |
| 110,144.67 | 7.41442 | 6.90042 | 358 | 598 | 2 | N/A | 6 Month Libor | 5.75000 | 13.41442 | 7.41442 | 3.00000 | 1.00000 | 22 | 6 |
| 844,923.12 | 7.43335 | 6.91935 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.30246 | 13.43335 | 7.43335 | 3.00000 | 1.00000 | 22 | 6 |
| 4,380,674.25 | 7.63992 | 7.12592 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.06464 | 13.63992 | 7.63992 | 3.00000 | 1.00000 | 23 | 6 |
| 734,952.92 | 7.37509 | 6.86109 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.14480 | 13.37509 | 7.37509 | 3.00000 | 1.00000 | 22 | 6 |
| 30,590,932.05 | 7.79387 | 7.27987 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.15695 | 13.79387 | 7.77143 | 3.00000 | 1.00000 | 22 | 6 |
| 7,457,001.36 | 7.31773 | 6.80373 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.17139 | 13.31773 | 7.31773 | 3.00000 | 1.00000 | 22 | 6 |
| 2,170,066.06 | 7.48744 | 6.97344 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.28479 | 13.48744 | 7.48744 | 3.00000 | 1.00000 | 23 | 6 |
| 476,162.60 | 7.11093 | 6.59693 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.78772 | 13.11093 | 7.11093 | 3.00000 | 1.00000 | 23 | 6 |
| 5,150,154.56 | 8.23172 | 7.71772 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.28009 | 14.23172 | 8.18963 | 3.00000 | 1.00000 | 22 | 6 |
| 372,159.04 | 8.14513 | 7.63113 | 358 | 598 | 2 | N/A | 6 Month Libor | 5.89329 | 14.14513 | 8.14513 | 3.00000 | 1.00000 | 22 | 6 |

S-146

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 256,500.00 | 8.75000 | 8.23600 | 356 | 356 | 4 | 60 | 6 Month Libor | 7.75000 | 14.75000 | 8.75000 | 3.00000 | 1.00000 | 20 | 6 |
| 214,400.10 | 8.55000 | 8.03600 | 353 | 353 | 7 | 60 | 6 Month Libor | 5.83000 | 14.55000 | 8.55000 | 3.00000 | 1.00000 | 17 | 6 |
| 156,750.00 | 8.75000 | 8.23600 | 359 | 359 | 1 | 60 | 6 Month Libor | 6.62500 | 14.75000 | 8.75000 | 3.00000 | 1.00000 | 23 | 6 |
| 1,128,459.97 | 7.56638 | 7.05238 | 355 | 355 | 5 | 60 | 6 Month Libor | 6.14044 | 13.89249 | 7.56638 | 3.00000 | 1.16305 | 19 | 6 |
| 12,921,692.96 | 7.73623 | 7.22223 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.25646 | 13.99291 | 7.36152 | 2.63017 | 1.06746 | 18 | 6 |
| 5,813,379.71 | 7.64442 | 7.13042 | 356 | 356 | 4 | 60 | 6 Month Libor | 6.17798 | 13.68244 | 7.64442 | 2.89008 | 1.01901 | 20 | 6 |
| 352,000.00 | 8.05000 | 7.53600 | 357 | 357 | 3 | 60 | 6 Month Libor | 7.05000 | 14.05000 | 8.05000 | 3.00000 | 1.00000 | 21 | 6 |
| 388,000.00 | 7.51500 | 7.00100 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.87500 | 14.51500 | 7.51500 | 3.00000 | 1.50000 | 18 | 6 |
| 244,000.00 | 6.59500 | 6.08100 | 352 | 352 | 8 | 120 | 6 Month Libor | 5.50000 | 12.59500 | 5.50000 | 3.00000 | 1.00000 | 16 | 6 |
| 1,032,119.90 | 8.95187 | 8.43787 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.51741 | 15.11534 | 8.46440 | 2.39988 | 1.00000 | 18 | 6 |
| 2,003,549.99 | 8.11905 | 7.60505 | 357 | 357 | 3 | 60 | 6 Month Libor | 6.11590 | 14.24707 | 7.95392 | 3.00000 | 1.06401 | 21 | 6 |
| 233,807.86 | 8.55000 | 8.03600 | 353 | 353 | 7 | 120 | 6 Month Libor | 5.50000 | 14.55000 | 5.50000 | 3.00000 | 1.00000 | 17 | 6 |
| 17,920,462.80 | 9.19810 | 8.68410 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.48811 | 15.35795 | 8.70925 | 2.61022 | 1.05037 | 19 | 6 |
| 5,217,159.69 | 8.53460 | 8.02060 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.51012 | 14.81627 | 8.46944 | 2.77453 | 1.08081 | 19 | 6 |
| 123,471.59 | 8.75000 | 8.23600 | 359 | 479 | 1 | N/A | 1 Year Libor | 5.75000 | 14.75000 | 8.75000 | 3.00000 | 1.00000 | 35 | 12 |
| 272,882.38 | 7.95472 | 7.44072 | 359 | 479 | 1 | N/A | 1 Year Libor | 6.24729 | 13.95472 | 7.95472 | 3.00000 | 1.00000 | 35 | 12 |
| 344,556.23 | 8.99000 | 8.47600 | 358 | 538 | 2 | N/A | 1 Year Libor | 5.75000 | 14.99000 | 8.99000 | 3.00000 | 1.00000 | 34 | 12 |
| 314,204.37 | 7.75000 | 7.23600 | 357 | 537 | 3 | N/A | 1 Year Libor | 6.25000 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 33 | 12 |
| 3,018,573.93 | 7.90961 | 7.39561 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.27721 | 13.90961 | 7.90961 | 3.00000 | 1.00000 | 34 | 12 |
| 1,608,990.77 | 7.13673 | 6.62273 | 357 | 537 | 3 | N/A | 1 Year Libor | 5.92898 | 13.13673 | 7.13673 | 3.00000 | 1.00000 | 33 | 12 |
| 1,715,572.38 | 7.93339 | 7.41939 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.26733 | 13.93339 | 7.93339 | 3.00000 | 1.00000 | 34 | 12 |
| 1,299,398.76 | 7.76949 | 7.25549 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.23224 | 13.76949 | 7.76949 | 3.00000 | 1.00000 | 34 | 12 |
| 146,977.06 | 9.25000 | 8.73600 | 358 | 598 | 2 | N/A | 1 Year Libor | 5.75000 | 15.25000 | 9.25000 | 3.00000 | 1.00000 | 34 | 12 |
| 399,894.27 | 7.05968 | 6.54568 | 359 | 599 | 1 | N/A | 1 Year Libor | 6.12500 | 13.05968 | 7.05968 | 3.00000 | 1.00000 | 35 | 12 |
| 363,958.84 | 8.10995 | 7.59595 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.12500 | 14.10995 | 8.10995 | 3.00000 | 1.00000 | 34 | 12 |
| 136,767.01 | 8.12500 | 7.61100 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.50000 | 14.12500 | 8.12500 | 3.00000 | 1.00000 | 34 | 12 |
| 173,621.86 | 7.30000 | 6.78600 | 354 | 354 | 6 | N/A | 6 Month Libor | 4.50000 | 13.30000 | 4.50000 | 3.00000 | 1.00000 | 30 | 6 |
| 120,690.79 | 6.50000 | 5.98600 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.12500 | 12.50000 | 6.50000 | 3.00000 | 1.00000 | 35 | 6 |
| 77,195.92 | 8.00000 | 7.48600 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.87500 | 14.00000 | 8.00000 | 3.00000 | 1.00000 | 34 | 6 |
| 326,360.68 | 8.43412 | 7.92012 | 357 | 357 | 3 | N/A | 6 Month Libor | 6.88385 | 14.43412 | 8.43412 | 3.00000 | 1.00000 | 33 | 6 |
| 694,533.66 | 7.77200 | 7.25800 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.33652 | 13.77200 | 7.77200 | 3.00000 | 1.00000 | 35 | 6 |
| 223,086.05 | 8.84725 | 8.33325 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.87500 | 14.84725 | 8.84725 | 3.00000 | 1.00000 | 34 | 6 |
| 1,177,112.17 | 9.29820 | 8.78420 | 355 | 355 | 5 | N/A | 6 Month Libor | 7.31316 | 16.12087 | 9.29820 | 3.00000 | 1.41133 | 31 | 6 |

CONFIDENTIAL

NOM-FHFA_05591476

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 554,574.67 | 9.37500 | 8.86100 | 355 | 355 | 5 | N/A | 6 Month Libor | 7.98766 | 15.37500 | 9.08379 | 3.00000 | 1.00000 | 31 | 6 |
| 242,040.66 | 7.25000 | 6.73600 | 355 | 355 | 5 | N/A | 6 Month Libor | 5.23000 | 13.25000 | 7.25000 | 3.00000 | 1.00000 | 31 | 6 |
| 8,928,933.73 | 8.32619 | 7.81219 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.83667 | 14.82185 | 8.25305 | 3.00000 | 1.24046 | 31 | 6 |
| 2,967,945.48 | 8.16050 | 7.64650 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.72377 | 14.66394 | 7.99887 | 2.94859 | 1.25172 | 31 | 6 |
| 604,110.58 | 9.82475 | 9.31075 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.95000 | 15.82475 | 9.82475 | 3.00000 | 1.00000 | 30 | 6 |
| 283,331.89 | 7.99000 | 7.47600 | 352 | 472 | 8 | N/A | 6 Month Libor | 6.99000 | 13.99000 | 7.99000 | 3.00000 | 1.00000 | 28 | 6 |
| 858,340.67 | 9.40876 | 8.89476 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.95000 | 15.40876 | 9.40876 | 3.00000 | 1.00000 | 31 | 6 |
| 6,822,229.92 | 8.15077 | 7.63677 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.79722 | 14.70201 | 8.15077 | 2.93396 | 1.27562 | 30 | 6 |
| 2,584,390.58 | 7.69464 | 7.18064 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.47311 | 14.07404 | 7.69464 | 3.00000 | 1.18970 | 30 | 6 |
| 2,003,455.67 | 8.36180 | 7.84780 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.60919 | 15.22874 | 8.36180 | 3.00000 | 1.43347 | 30 | 6 |
| 917,288.38 | 7.24950 | 6.73550 | 355 | 475 | 5 | N/A | 6 Month Libor | 6.33090 | 13.82291 | 7.24950 | 3.00000 | 1.28670 | 31 | 6 |
| 326,819.36 | 9.52325 | 9.00925 | 355 | 535 | 5 | N/A | 6 Month Libor | 6.75569 | 15.52325 | 9.52325 | 3.00000 | 1.00000 | 31 | 6 |
| 3,239,708.73 | 9.07765 | 8.56365 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.85512 | 15.07765 | 9.07765 | 3.00000 | 1.00000 | 32 | 6 |
| 977,106.24 | 8.08719 | 7.57319 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.66643 | 14.08719 | 8.08719 | 3.00000 | 1.00000 | 32 | 6 |
| 3,799,611.00 | 8.59731 | 8.08331 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.55651 | 14.59731 | 8.59731 | 3.00000 | 1.00000 | 34 | 6 |
| 417,652.10 | 7.75000 | 7.23600 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.75000 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 32 | 6 |
| 139,974.31 | 7.00000 | 6.48600 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 13.00000 | 7.00000 | 3.00000 | 1.00000 | 35 | 6 |
| 367,837.26 | 6.50000 | 5.98600 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 12.50000 | 6.50000 | 3.00000 | 1.00000 | 34 | 6 |
| 2,518,061.79 | 7.94056 | 7.42656 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.25120 | 13.94056 | 7.94056 | 3.00000 | 1.00000 | 35 | 6 |
| 235,133.38 | 7.17135 | 6.65735 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 13.17135 | 7.17135 | 3.00000 | 1.00000 | 34 | 6 |
| 3,361,988.40 | 8.06419 | 7.55019 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.13738 | 14.06419 | 8.06419 | 3.00000 | 1.00000 | 35 | 6 |
| 139,904.72 | 8.37500 | 7.86100 | 359 | 599 | 1 | N/A | 6 Month Libor | 5.75000 | 14.37500 | 8.37500 | 3.00000 | 1.00000 | 35 | 6 |
| 402,718.32 | 7.21025 | 6.69625 | 354 | 354 | 6 | 60 | 6 Month Libor | 4.44805 | 13.21025 | 7.21025 | 3.00000 | 1.00000 | 30 | 6 |
| 172,200.00 | 7.64000 | 7.12600 | 355 | 355 | 5 | 60 | 6 Month Libor | 6.95000 | 13.64000 | 7.64000 | 3.00000 | 1.00000 | 31 | 6 |
| 1,287,175.21 | 8.30420 | 7.79020 | 353 | 353 | 7 | 60 | 6 Month Libor | 6.78970 | 14.70937 | 8.30420 | 2.70284 | 1.05255 | 29 | 6 |
| 709,360.00 | 8.15348 | 7.63948 | 357 | 357 | 3 | 60 | 6 Month Libor | 6.63208 | 14.47489 | 8.15348 | 3.00000 | 1.16071 | 33 | 6 |
| 595,600.00 | 8.33823 | 7.82423 | 354 | 354 | 6 | 120 | 6 Month Libor | 7.87920 | 14.33823 | 7.87920 | 3.00000 | 1.00000 | 30 | 6 |
| 474,800.00 | 8.92370 | 8.40970 | 355 | 355 | 5 | 120 | 6 Month Libor | 8.42370 | 14.92370 | 8.42370 | 3.00000 | 1.00000 | 31 | 6 |
| 1,178,841.24 | 8.54767 | 8.03367 | 352 | 352 | 8 | 60 | 6 Month Libor | 6.28137 | 15.14092 | 6.82433 | 2.11013 | 1.29662 | 28 | 6 |
| 697,360.00 | 8.59639 | 8.08239 | 358 | 358 | 2 | 60 | 6 Month Libor | 6.43229 | 14.73979 | 8.17337 | 2.78490 | 1.07170 | 34 | 6 |
| 13,026,121.23 | 8.94983 | 8.43583 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.35556 | 15.45065 | 7.69993 | 2.47789 | 1.25041 | 31 | 6 |
| 2,742,775.72 | 8.35912 | 7.84512 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.23008 | 14.92093 | 7.32255 | 2.49034 | 1.28091 | 31 | 6 |
| 191,766.56 | 8.50000 | 7.98600 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.12500 | 14.50000 | 8.50000 | 3.00000 | 1.00000 | 46 | 6 |

S-148

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 159,822.75 | 6.87500 | 6.36100 | 356 | 536 | 4 | N/A | 1 Year Libor | 5.87500 | 12.87500 | 6.87500 | 3.00000 | 1.00000 | 56 | 12 |
| 324,084.56 | 7.38919 | 6.87519 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.48711 | 13.38919 | 7.38919 | 3.00000 | 1.00000 | 58 | 12 |
| 99,178.12 | 6.50000 | 5.98600 | 359 | 599 | 1 | N/A | 1 Year Libor | 6.12500 | 12.50000 | 6.50000 | 3.00000 | 1.00000 | 59 | 12 |
| 147,967.31 | 6.50000 | 5.98600 | 359 | 599 | 1 | N/A | 1 Year Libor | 6.12500 | 12.50000 | 6.50000 | 3.00000 | 1.00000 | 59 | 12 |
| 393,886.29 | 8.00757 | 7.49357 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.16533 | 14.00757 | 8.00757 | 3.00000 | 1.00000 | 58 | 6 |
| 171,959.87 | 7.37500 | 6.86100 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.12500 | 13.37500 | 7.37500 | 3.00000 | 1.00000 | 59 | 6 |
| 149,960.44 | 6.99900 | 6.48500 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.12500 | 12.99900 | 6.99900 | 3.00000 | 1.00000 | 59 | 6 |
| 324,622.83 | 8.85574 | 8.34174 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.39546 | 14.85574 | 8.85574 | 3.00000 | 1.00000 | 58 | 6 |
| 107,318.61 | 6.87500 | 6.36100 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 12.87500 | 6.87500 | 3.00000 | 1.00000 | 58 | 6 |
| 315,192.35 | 7.42377 | 6.90977 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.23801 | 13.42377 | 7.42377 | 3.00000 | 1.00000 | 59 | 6 |
| 604,500.19 | 7.41863 | 6.90463 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.19737 | 13.41863 | 7.41863 | 3.00000 | 1.00000 | 59 | 6 |
| 307,200.00 | 7.04102 | 6.52702 | 358 | 358 | 2 | 60 | 6 Month Libor | 6.12500 | 13.04102 | 7.04102 | 3.00000 | 1.00000 | 58 | 6 |
| 335,114.05 | 8.13868 | 7.62468 | 176 | 176 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 99,684.50 | 7.00000 | 6.48600 | 179 | 179 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 395,005.41 | 8.24961 | 7.73561 | 177 | 177 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 178,871.26 | 7.11990 | 6.60590 | 175 | 175 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 368,636.94 | 8.59647 | 8.08247 | 237 | 237 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 203,112.17 | 7.85000 | 7.33600 | 296 | 296 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 229,176.16 | 8.66000 | 8.14600 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 206,267.52 | 10.18000 | 9.66600 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 8,806,788.42 | 8.61177 | 8.09777 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,835,003.38 | 8.42991 | 7.91591 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 501,669.16 | 8.33016 | 7.81616 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 184,428.89 | 7.35000 | 6.83600 | 356 | 356 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,192,033.26 | 8.01143 | 7.49743 | 357 | 357 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 668,789.10 | 8.14110 | 7.62710 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,018,849.20 | 8.46073 | 7.94673 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 603,661.53 | 7.09934 | 6.58534 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 26,060,251.15 | 8.24232 | 7.72832 | 356 | 356 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 11,391,880.44 | 7.75623 | 7.24223 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 27,979.95 | 11.00000 | 10.48600 | 358 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 25,492.01 | 9.99000 | 9.47600 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 25,661.55 | 12.99000 | 12.47600 | 356 | 356 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

S-149

NOM-FHFA_05591478

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 632,197.83 | 11.45069 | 10.93669 | 357 | 357 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 159,479.46 | 10.61449 | 10.10049 | 358 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 151,082.28 | 11.68827 | 11.17427 | 358 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 29,452.48 | 10.50000 | 9.98600 | 356 | 356 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,068,677.67 | 11.56431 | 11.05031 | 357 | 357 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 673,037.80 | 10.74489 | 10.23089 | 358 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 721,768.53 | 8.25266 | 7.73866 | 174 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 232,252.19 | 12.11617 | 11.60217 | 175 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 100,284.47 | 11.03513 | 10.52113 | 177 | 357 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 195,976.83 | 11.95341 | 11.43941 | 173 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 27,180.51 | 10.99900 | 10.48500 | 178 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 470,591.13 | 12.83781 | 12.32381 | 174 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 251,198.51 | 11.51067 | 10.99667 | 174 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,975,863.99 | 8.22066 | 7.70666 | 355 | 475 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 241,760.29 | 7.63034 | 7.11634 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 227,917.23 | 8.62500 | 8.11100 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 165,488.97 | 8.36000 | 7.84600 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 128,642.73 | 8.87500 | 8.36100 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5,741,459.03 | 8.02922 | 7.51522 | 355 | 475 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4,313,782.12 | 7.36844 | 6.85444 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 32,587.01 | 9.25000 | 8.73600 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,486,077.38 | 11.78702 | 11.27302 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 521,294.70 | 10.63867 | 10.12467 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 361,516.88 | 11.74772 | 11.23372 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 89,581.99 | 11.09263 | 10.57863 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,496,497.53 | 12.22382 | 11.70982 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 634,776.45 | 10.85624 | 10.34224 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 330,000.00 | 8.25000 | 7.73600 | 356 | 476 | 4 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,846,927.20 | 8.18810 | 7.67410 | 355 | 475 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 569,105.53 | 8.52346 | 8.00946 | 353 | 473 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 207,974.95 | 6.50000 | 5.98600 | 357 | 477 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 189,969.56 | 8.50000 | 7.98600 | 359 | 539 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 192,327.78 | 8.07227 | 7.55827 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

S-150

NOM-FHFA_05591479

GROUP I

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60,731.27 | 8.62500 | 8.11100 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 363,694.99 | 8.87500 | 8.36100 | 357 | 537 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 219,883.26 | 6.99000 | 6.47600 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 7,214,289.36 | 8.03222 | 7.51822 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,382,467.85 | 7.58595 | 7.07195 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 642,811.76 | 8.85469 | 8.34069 | 358 | 538 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 640,163.51 | 8.04410 | 7.53010 | 356 | 596 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 215,963.87 | 7.25000 | 6.73600 | 359 | 599 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 843,015.02 | 7.91928 | 7.40528 | 358 | 598 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5,059,604.66 | 8.12972 | 7.61572 | 359 | 599 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 867,178.05 | 7.47002 | 6.95602 | 359 | 599 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 966,487.14 | 9.04770 | 8.53370 | 358 | 598 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 238,327.88 | 8.58000 | 8.06600 | 353 | 593 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,579,746.21 | 8.30736 | 7.79336 | 355 | 355 | 5 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 364,900.00 | 7.72344 | 7.20944 | 356 | 356 | 4 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,064,000.00 | 7.44041 | 6.92641 | 354 | 354 | 6 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 339,980.00 | 8.58762 | 8.07362 | 354 | 354 | 6 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 99,750.00 | 7.99000 | 7.47600 | 359 | 359 | 1 | 120 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 160,612.63 | 6.99000 | 6.47600 | 358 | 358 | 2 | 120 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 561,400.00 | 8.12401 | 7.61001 | 354 | 354 | 6 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 119,815.58 | 8.45000 | 7.93600 | 353 | 353 | 7 | 60 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 50,000.00 | 8.87500 | 8.36100 | 358 | 358 | 2 | 120 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 100,817.66 | 9.64000 | 9.12600 | 114 | 114 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 304,018.37 | 9.33029 | 8.81629 | 177 | 177 | 3 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 138,358.26 | 7.95000 | 7.43600 | 176 | 176 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 9,559,865.47 | 8.90202 | 8.38802 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4,091,002.23 | 8.31126 | 7.79726 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

CONFIDENTIAL

NOM-FHFA_05591480

GROUP II

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 223,871.21 | 7.99900 | 7.48500 | 358 | 478 | 2 | N/A | 1 Year Libor | 6.12500 | 13.99900 | 7.99900 | 3.00000 | 1.00000 | 22 | 12 |
| 915,284.06 | 7.44522 | 6.93122 | 358 | 478 | 2 | N/A | 1 Year Libor | 6.39533 | 13.44522 | 7.44522 | 3.00000 | 1.00000 | 22 | 12 |
| 143,837.28 | 8.00000 | 7.48600 | 358 | 478 | 2 | N/A | 1 Year Libor | 6.12500 | 14.00000 | 8.00000 | 3.00000 | 1.00000 | 22 | 12 |
| 110,728.25 | 8.50000 | 7.98600 | 356 | 536 | 4 | N/A | 1 Year Libor | 7.50000 | 14.50000 | 8.50000 | 3.00000 | 1.00000 | 20 | 12 |
| 1,915,288.58 | 7.96246 | 7.44846 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.18582 | 13.96246 | 7.96246 | 3.00000 | 1.00000 | 22 | 12 |
| 1,529,647.56 | 7.10565 | 6.59165 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.21582 | 13.10565 | 7.10565 | 3.00000 | 1.00000 | 22 | 12 |
| 8,345,301.02 | 7.57412 | 7.06012 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.18580 | 13.57412 | 7.57412 | 3.00000 | 1.00000 | 22 | 12 |
| 7,979,249.49 | 7.74034 | 7.22634 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.21374 | 13.74034 | 7.74034 | 3.00000 | 1.00000 | 22 | 12 |
| 566,971.38 | 8.12051 | 7.60651 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.45820 | 14.12051 | 8.12051 | 3.00000 | 1.00000 | 22 | 12 |
| 534,239.05 | 7.93078 | 7.41678 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.29354 | 13.93078 | 7.55832 | 3.00000 | 1.00000 | 22 | 12 |
| 1,715,518.40 | 8.22824 | 7.71424 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.22641 | 14.22824 | 8.22824 | 3.00000 | 1.00000 | 22 | 12 |
| 237,038.77 | 8.62500 | 8.11100 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.62500 | 14.62500 | 8.62500 | 3.00000 | 1.00000 | 22 | 6 |
| 77,733.79 | 6.95000 | 6.43600 | 348 | 348 | 12 | N/A | 6 Month Libor | 6.01000 | 12.95000 | 6.95000 | 3.00000 | 1.00000 | 12 | 6 |
| 288,745.30 | 8.37835 | 7.86435 | 348 | 348 | 12 | N/A | 6 Month Libor | 5.73659 | 15.37835 | 5.73659 | 3.00000 | 1.00000 | 12 | 6 |
| 271,162.24 | 8.12538 | 7.61138 | 347 | 347 | 13 | N/A | 6 Month Libor | 5.55000 | 14.12538 | 6.66135 | 3.00000 | 1.00000 | 11 | 6 |
| 69,647.37 | 7.75000 | 7.23600 | 353 | 353 | 7 | N/A | 6 Month Libor | 5.80000 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 17 | 6 |
| 1,180,138.11 | 7.79973 | 7.28573 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.33459 | 13.79973 | 7.79973 | 3.00000 | 1.00000 | 22 | 6 |
| 571,653.48 | 8.50000 | 7.98600 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.62500 | 14.50000 | 8.50000 | 3.00000 | 1.00000 | 23 | 6 |
| 206,828.64 | 6.37500 | 5.86100 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.12500 | 13.37500 | 6.37500 | 3.00000 | 1.50000 | 18 | 6 |
| 118,111.22 | 8.56000 | 8.04600 | 348 | 348 | 12 | N/A | 6 Month Libor | 7.25000 | 15.56000 | 7.25000 | 3.00000 | 1.00000 | 12 | 6 |
| 434,657.91 | 8.75979 | 8.24579 | 353 | 353 | 7 | N/A | 6 Month Libor | 7.05861 | 14.75979 | 8.53247 | 3.00000 | 1.00000 | 17 | 6 |
| 67,607.95 | 8.37500 | 7.86100 | 359 | 359 | 1 | N/A | 6 Month Libor | 6.75000 | 14.37500 | 8.37500 | 3.00000 | 1.00000 | 23 | 6 |
| 201,161.33 | 8.62500 | 8.11100 | 358 | 358 | 2 | N/A | 6 Month Libor | 6.62500 | 14.62500 | 8.62500 | 3.00000 | 1.00000 | 22 | 6 |
| 2,631,732.11 | 8.61148 | 8.09748 | 353 | 353 | 7 | N/A | 6 Month Libor | 6.15181 | 14.72284 | 7.87669 | 3.00000 | 1.00000 | 17 | 6 |
| 2,413,553.38 | 8.43127 | 7.91727 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.37806 | 14.81210 | 6.82797 | 3.00000 | 1.22115 | 18 | 6 |
| 26,045,778.02 | 8.54340 | 8.02940 | 353 | 353 | 7 | N/A | 6 Month Libor | 6.32810 | 14.71907 | 7.95820 | 3.00136 | 1.07535 | 17 | 6 |
| 9,700,337.00 | 7.64656 | 7.13256 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.28064 | 13.78257 | 7.26176 | 2.98760 | 1.07784 | 19 | 6 |
| 780,070.28 | 8.15620 | 7.64220 | 350 | 350 | 10 | N/A | 6 Month Libor | 6.09953 | 14.55289 | 7.34693 | 3.00000 | 1.00000 | 14 | 6 |
| 3,970,515.74 | 8.93844 | 8.42444 | 354 | 474 | 6 | N/A | 6 Month Libor | 7.57297 | 15.37928 | 8.93844 | 3.00000 | 1.29450 | 18 | 6 |
| 1,557,763.10 | 7.34755 | 6.83355 | 357 | 477 | 3 | N/A | 6 Month Libor | 6.46003 | 13.34755 | 7.34755 | 3.00000 | 1.00000 | 21 | 6 |
| 29,364,583.81 | 8.18901 | 7.67501 | 353 | 473 | 7 | N/A | 6 Month Libor | 6.59400 | 14.59805 | 7.93686 | 3.00000 | 1.16657 | 17 | 6 |
| 16,493,096.68 | 7.54105 | 7.02705 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.43658 | 14.06343 | 7.52656 | 2.96812 | 1.26091 | 18 | 6 |

S-152

**GROUP II**

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2,228,514.52 | 8.20515 | 7.69115 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.48656 | 14.35202 | 8.20515 | 3.00000 | 1.12983 | 18 | 6 |
| 3,244,642.78 | 8.99903 | 8.48503 | 353 | 473 | 7 | N/A | 6 Month Libor | 7.32973 | 15.70866 | 8.92718 | 3.00000 | 1.35482 | 17 | 6 |
| 1,620,677.45 | 8.43942 | 7.92542 | 353 | 473 | 7 | N/A | 6 Month Libor | 6.64333 | 15.08916 | 8.43942 | 2.87688 | 1.46234 | 17 | 6 |
| 871,494.46 | 8.47275 | 7.95875 | 358 | 538 | 2 | N/A | 6 Month Libor | 7.33467 | 14.47275 | 8.47275 | 3.00000 | 1.00000 | 22 | 6 |
| 2,095,632.16 | 8.11876 | 7.60476 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.45145 | 14.11876 | 8.11876 | 3.00000 | 1.00000 | 22 | 6 |
| 265,332.81 | 7.12500 | 6.61100 | 359 | 539 | 1 | N/A | 6 Month Libor | 6.62500 | 13.12500 | 7.12500 | 3.00000 | 1.00000 | 23 | 6 |
| 7,385,231.92 | 7.92556 | 7.41156 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.37824 | 13.92556 | 7.92522 | 3.00000 | 1.00000 | 22 | 6 |
| 2,928,552.56 | 7.99019 | 7.47619 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.38050 | 13.99019 | 7.99019 | 3.00000 | 1.00000 | 22 | 6 |
| 440,758.25 | 8.99000 | 8.47600 | 356 | 536 | 4 | N/A | 6 Month Libor | 7.99000 | 14.99000 | 8.99000 | 3.00000 | 1.00000 | 20 | 6 |
| 484,658.32 | 8.25000 | 7.73600 | 356 | 536 | 4 | N/A | 6 Month Libor | 7.25000 | 14.25000 | 8.25000 | 3.00000 | 1.00000 | 20 | 6 |
| 1,635,755.64 | 9.35445 | 8.84045 | 358 | 538 | 2 | N/A | 6 Month Libor | 7.02875 | 15.35445 | 9.35445 | 3.00000 | 1.00000 | 22 | 6 |
| 1,341,701.65 | 7.76719 | 7.25319 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 13.76719 | 7.76719 | 3.00000 | 1.00000 | 23 | 6 |
| 193,931.84 | 7.12835 | 6.61435 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 13.12835 | 7.12835 | 3.00000 | 1.00000 | 22 | 6 |
| 4,099,774.59 | 7.66068 | 7.14668 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.24526 | 13.66068 | 7.66068 | 3.00000 | 1.00000 | 22 | 6 |
| 4,663,264.85 | 7.46897 | 6.95497 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 13.46897 | 7.46897 | 3.00000 | 1.00000 | 22 | 6 |
| 22,977,026.95 | 7.71373 | 7.19973 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.21092 | 13.71373 | 7.71373 | 3.00000 | 1.00000 | 22 | 6 |
| 12,908,897.47 | 7.55159 | 7.03759 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.26057 | 13.55159 | 7.55159 | 3.00000 | 1.00000 | 22 | 6 |
| 449,855.86 | 7.37500 | 6.86100 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.37500 | 13.37500 | 7.37500 | 3.00000 | 1.00000 | 22 | 6 |
| 1,792,441.27 | 7.35958 | 6.84558 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 13.35958 | 7.35958 | 3.00000 | 1.00000 | 23 | 6 |
| 2,265,811.76 | 8.27195 | 7.75795 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.05579 | 14.27195 | 8.27195 | 3.00000 | 1.00000 | 22 | 6 |
| 4,161,603.89 | 8.16674 | 7.65274 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.18490 | 14.19029 | 8.16674 | 3.00000 | 1.00000 | 23 | 6 |
| 446,529.17 | 8.40000 | 7.88600 | 348 | 348 | 12 | N/A | 6 Month Libor | 6.99000 | 14.40000 | 6.99000 | 3.00000 | 1.00000 | 12 | 6 |
| 326,670.33 | 8.00495 | 7.49095 | 346 | 346 | 14 | N/A | 6 Month Libor | 5.74901 | 14.00495 | 5.74901 | 2.60396 | 1.19802 | 10 | 6 |
| 441,000.00 | 5.55000 | 5.03600 | 347 | 347 | 13 | 24 | 6 Month Libor | 5.55000 | 11.55000 | 5.55000 | 3.00000 | 1.00000 | 11 | 6 |
| 604,780.69 | 8.70000 | 8.18600 | 350 | 350 | 10 | 60 | 6 Month Libor | 7.25000 | 15.70000 | 7.25000 | 2.00000 | 1.00000 | 14 | 6 |
| 296,000.00 | 7.20000 | 6.68600 | 347 | 347 | 13 | 60 | 6 Month Libor | 5.55000 | 13.20000 | 7.20000 | 3.00000 | 1.00000 | 11 | 6 |
| 760,000.00 | 8.25000 | 7.73600 | 359 | 359 | 1 | 60 | 6 Month Libor | 6.12500 | 14.25000 | 8.25000 | 3.00000 | 1.00000 | 23 | 6 |
| 1,409,846.68 | 7.88565 | 7.37165 | 358 | 358 | 2 | 60 | 6 Month Libor | 6.02827 | 13.88565 | 7.88565 | 3.00000 | 1.00000 | 22 | 6 |
| 5,310,660.00 | 7.73673 | 7.22273 | 355 | 355 | 5 | 60 | 6 Month Libor | 6.10158 | 13.79505 | 7.73673 | 2.91696 | 1.00000 | 19 | 6 |
| 17,766,596.93 | 7.61726 | 7.10326 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.05158 | 13.90159 | 7.41041 | 2.95449 | 1.02573 | 18 | 6 |
| 25,210,113.26 | 7.38154 | 6.86754 | 356 | 356 | 4 | 60 | 6 Month Libor | 6.09128 | 13.48395 | 7.27740 | 3.00000 | 1.04173 | 20 | 6 |
| 502,300.00 | 7.82315 | 7.30915 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.18237 | 14.35013 | 7.82315 | 3.00000 | 1.26349 | 18 | 6 |
| 1,756,100.00 | 6.95477 | 6.44077 | 357 | 357 | 3 | 60 | 6 Month Libor | 6.02334 | 13.17571 | 6.95477 | 3.00000 | 1.00000 | 21 | 6 |

S-153

GROUP II

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 342,425.00 | 7.95000 | 7.43600 | 354 | 354 | 6 | 120 | 6 Month Libor | 5.51600 | 13.95000 | 7.95000 | 3.00000 | 1.00000 | 18 | 6 |
| 128,800.00 | 6.50000 | 5.98600 | 344 | 344 | 16 | 60 | 6 Month Libor | 5.50000 | 12.50000 | 5.50000 | 3.00000 | 1.00000 | 8 | 6 |
| 146,121.09 | 7.75000 | 7.23600 | 345 | 345 | 15 | 120 | 6 Month Libor | 2.87500 | 13.75000 | 2.87500 | 3.00000 | 1.00000 | 9 | 6 |
| 383,974.83 | 8.10000 | 7.58600 | 348 | 348 | 12 | 24 | 6 Month Libor | 8.10000 | 14.10000 | 8.10000 | 3.00000 | 1.00000 | 12 | 6 |
| 2,661,732.45 | 8.07367 | 7.55967 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.36355 | 14.24495 | 8.07367 | 2.77165 | 1.29133 | 18 | 6 |
| 2,234,057.22 | 8.39740 | 7.88340 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.28216 | 14.46969 | 8.28549 | 3.00000 | 1.00000 | 18 | 6 |
| 9,876,878.27 | 8.87896 | 8.36496 | 352 | 352 | 8 | N/A | 6 Month Libor | 6.33726 | 15.04665 | 8.14494 | 2.82374 | 1.15841 | 16 | 6 |
| 3,138,678.83 | 8.57054 | 8.05654 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.13635 | 14.57054 | 8.32225 | 2.83136 | 1.08432 | 18 | 6 |
| 139,856.93 | 7.75000 | 7.23600 | 359 | 479 | 1 | N/A | 1 Year Libor | 6.12500 | 13.75000 | 7.75000 | 3.00000 | 1.00000 | 35 | 12 |
| 159,183.39 | 8.37500 | 7.86100 | 359 | 539 | 1 | N/A | 1 Year Libor | 6.37500 | 14.37500 | 8.37500 | 3.00000 | 1.00000 | 35 | 12 |
| 394,059.19 | 8.50000 | 7.98600 | 357 | 537 | 3 | N/A | 1 Year Libor | 7.50000 | 14.50000 | 8.50000 | 3.00000 | 1.00000 | 33 | 12 |
| 2,732,193.87 | 7.73450 | 7.22050 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.13680 | 13.73450 | 7.73450 | 3.00000 | 1.00000 | 34 | 12 |
| 1,145,295.41 | 7.38021 | 6.86621 | 357 | 537 | 3 | N/A | 1 Year Libor | 6.12419 | 13.38021 | 7.38021 | 3.00000 | 1.00000 | 33 | 12 |
| 2,510,762.56 | 7.86777 | 7.35377 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.40015 | 13.86777 | 7.86777 | 3.00000 | 1.00000 | 34 | 12 |
| 948,278.46 | 8.23532 | 7.72132 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.28340 | 14.23532 | 8.23532 | 3.00000 | 1.00000 | 34 | 12 |
| 248,664.97 | 7.20000 | 6.68600 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.12500 | 13.20000 | 7.20000 | 3.00000 | 1.00000 | 34 | 12 |
| 277,420.44 | 7.08913 | 6.57513 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.12500 | 13.08913 | 7.08913 | 3.00000 | 1.00000 | 34 | 12 |
| 935,159.61 | 7.81886 | 7.30486 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.10264 | 13.81886 | 7.81886 | 3.00000 | 1.00000 | 34 | 12 |
| 377,413.57 | 8.67658 | 8.16258 | 358 | 598 | 2 | N/A | 1 Year Libor | 6.78692 | 14.67658 | 8.67658 | 3.00000 | 1.00000 | 34 | 12 |
| 317,470.57 | 7.50000 | 6.98600 | 353 | 353 | 7 | N/A | 6 Month Libor | 4.97000 | 13.50000 | 7.50000 | 3.00000 | 1.00000 | 29 | 6 |
| 104,367.97 | 7.65000 | 7.13600 | 355 | 355 | 5 | N/A | 6 Month Libor | 4.80000 | 13.65000 | 7.65000 | 3.00000 | 1.00000 | 31 | 6 |
| 147,627.80 | 8.29000 | 7.77600 | 354 | 354 | 6 | N/A | 6 Month Libor | 7.50000 | 15.29000 | 8.29000 | 3.00000 | 1.50000 | 30 | 6 |
| 567,232.69 | 9.77686 | 9.26286 | 355 | 355 | 5 | N/A | 6 Month Libor | 7.50000 | 16.77686 | 9.77686 | 3.00000 | 1.50000 | 31 | 6 |
| 494,190.80 | 8.57017 | 8.05617 | 354 | 354 | 6 | N/A | 6 Month Libor | 7.50000 | 15.57017 | 8.57017 | 3.00000 | 1.50000 | 30 | 6 |
| 4,232,302.13 | 8.20966 | 7.69566 | 355 | 355 | 5 | N/A | 6 Month Libor | 7.08285 | 15.04218 | 8.18447 | 3.00000 | 1.41626 | 31 | 6 |
| 1,430,357.46 | 7.50599 | 6.99199 | 356 | 356 | 4 | N/A | 6 Month Libor | 6.58832 | 14.09405 | 7.50599 | 3.00000 | 1.29403 | 32 | 6 |
| 359,660.49 | 10.61000 | 10.09600 | 353 | 473 | 7 | N/A | 6 Month Libor | 6.95000 | 16.61000 | 10.61000 | 3.00000 | 1.00000 | 29 | 6 |
| 424,007.79 | 7.00000 | 6.48600 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.50000 | 13.00000 | 7.00000 | 3.00000 | 1.00000 | 30 | 6 |
| 7,797,343.35 | 8.51599 | 8.00199 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.96585 | 14.99905 | 8.24896 | 3.00000 | 1.24153 | 30 | 6 |
| 2,860,603.96 | 7.28052 | 6.76652 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.66960 | 14.28052 | 7.28052 | 3.00000 | 1.50000 | 30 | 6 |
| 475,058.55 | 8.59000 | 8.07600 | 354 | 474 | 6 | N/A | 6 Month Libor | 6.17000 | 15.59000 | 8.59000 | 3.00000 | 1.50000 | 30 | 6 |
| 486,222.30 | 7.06166 | 6.54766 | 352 | 472 | 8 | N/A | 6 Month Libor | 4.99793 | 13.52103 | 7.06166 | 3.00000 | 1.22969 | 28 | 6 |
| 1,072,356.70 | 8.04209 | 7.52809 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.45175 | 14.04209 | 7.52116 | 3.00000 | 1.00000 | 32 | 6 |

S-154

NOM-FHFA_05591483

GROUP II

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3,950,677.23 | 8.38215 | 7.86815 | 356 | 536 | 4 | N/A | 6 Month Libor | 6.69119 | 14.38215 | 8.18074 | 3.00000 | 1.00000 | 32 | 6 |
| 994,255.73 | 8.44889 | 7.93489 | 357 | 537 | 3 | N/A | 6 Month Libor | 6.33613 | 14.44889 | 8.44889 | 3.00000 | 1.00000 | 33 | 6 |
| 59,957.73 | 8.25000 | 7.73600 | 356 | 536 | 4 | N/A | 6 Month Libor | 7.25000 | 14.25000 | 8.25000 | 3.00000 | 1.00000 | 32 | 6 |
| 821,330.76 | 8.44438 | 7.93038 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.12500 | 14.44438 | 8.44438 | 3.00000 | 1.00000 | 34 | 6 |
| 142,378.31 | 7.50000 | 6.98600 | 359 | 599 | 1 | N/A | 6 Month Libor | 7.12500 | 13.50000 | 7.50000 | 3.00000 | 1.00000 | 35 | 6 |
| 363,932.94 | 6.99000 | 6.47600 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 12.99000 | 6.99000 | 3.00000 | 1.00000 | 35 | 6 |
| 2,545,720.55 | 7.30917 | 6.79517 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.23501 | 13.48660 | 7.30917 | 3.00000 | 1.08872 | 34 | 6 |
| 671,753.06 | 7.34712 | 6.83312 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 13.34712 | 7.34712 | 3.00000 | 1.00000 | 35 | 6 |
| 2,092,340.60 | 8.48558 | 7.97158 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.25057 | 14.48558 | 8.48558 | 3.00000 | 1.00000 | 35 | 6 |
| 176,691.25 | 8.45000 | 7.93600 | 359 | 599 | 1 | N/A | 6 Month Libor | 6.12500 | 14.45000 | 8.45000 | 3.00000 | 1.00000 | 35 | 6 |
| 471,821.58 | 7.66676 | 7.15276 | 355 | 355 | 5 | 60 | 6 Month Libor | 4.96093 | 13.66676 | 7.66676 | 3.00000 | 1.00000 | 31 | 6 |
| 203,952.00 | 7.50000 | 6.98600 | 353 | 353 | 7 | 60 | 6 Month Libor | 4.85000 | 13.50000 | 7.40000 | 3.00000 | 1.00000 | 29 | 6 |
| 595,600.00 | 9.32322 | 8.80922 | 355 | 355 | 5 | 60 | 6 Month Libor | 6.43455 | 15.32322 | 9.32322 | 3.00000 | 1.00000 | 31 | 6 |
| 1,503,247.35 | 8.85439 | 8.34039 | 354 | 354 | 6 | 60 | 6 Month Libor | 6.59406 | 14.85439 | 8.08926 | 3.00000 | 1.00000 | 30 | 6 |
| 2,135,587.11 | 7.91887 | 7.40487 | 354 | 354 | 6 | 60 | 6 Month Libor | 5.71571 | 14.01435 | 7.91887 | 3.00000 | 1.00000 | 30 | 6 |
| 407,120.00 | 7.65624 | 7.14224 | 358 | 358 | 2 | 60 | 6 Month Libor | 6.12500 | 13.65624 | 7.65624 | 3.00000 | 1.00000 | 34 | 6 |
| 75,000.00 | 10.35000 | 9.83600 | 352 | 352 | 8 | 60 | 6 Month Libor | 5.92500 | 17.35000 | 5.92500 | 1.50000 | 1.50000 | 28 | 6 |
| 2,927,752.00 | 8.80238 | 8.28338 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.50542 | 15.38085 | 8.34709 | 2.77956 | 1.28924 | 31 | 6 |
| 533,350.45 | 7.50194 | 6.98794 | 356 | 356 | 4 | N/A | 6 Month Libor | 6.66689 | 14.13702 | 7.50194 | 3.00000 | 1.31754 | 32 | 6 |
| 367,417.74 | 7.50000 | 6.98600 | 359 | 539 | 1 | N/A | 1 Year Libor | 6.12500 | 13.50000 | 7.50000 | 3.00000 | 1.00000 | 59 | 12 |
| 968,525.93 | 7.40781 | 6.89381 | 357 | 537 | 3 | N/A | 1 Year Libor | 6.26632 | 13.40781 | 7.40781 | 3.00000 | 1.00000 | 57 | 12 |
| 204,239.68 | 8.75000 | 8.23600 | 358 | 538 | 2 | N/A | 1 Year Libor | 6.37500 | 14.75000 | 8.75000 | 3.00000 | 1.00000 | 58 | 12 |
| 177,397.96 | 7.40000 | 6.88600 | 354 | 354 | 6 | N/A | 6 Month Libor | 6.55000 | 13.40000 | 7.40000 | 3.00000 | 1.00000 | 54 | 6 |
| 1,424,677.24 | 8.18283 | 7.66883 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.22562 | 14.18283 | 7.97636 | 3.00000 | 1.00000 | 55 | 6 |
| 904,172.38 | 7.72118 | 7.20718 | 353 | 353 | 7 | N/A | 6 Month Libor | 6.66796 | 13.13137 | 7.05764 | 3.00000 | 1.00000 | 53 | 6 |
| 459,254.09 | 9.16000 | 8.64600 | 353 | 473 | 7 | N/A | 6 Month Libor | 6.55000 | 15.16000 | 9.16000 | 3.00000 | 1.00000 | 53 | 6 |
| 336,310.61 | 8.00000 | 7.48600 | 353 | 473 | 7 | N/A | 6 Month Libor | 5.55000 | 14.00000 | 8.00000 | 3.00000 | 1.00000 | 53 | 6 |
| 1,218,652.49 | 7.41397 | 6.89997 | 352 | 472 | 8 | N/A | 6 Month Libor | 4.69080 | 13.41397 | 5.49708 | 3.00000 | 1.00000 | 52 | 6 |
| 1,078,523.70 | 6.97116 | 6.45716 | 356 | 476 | 4 | N/A | 6 Month Libor | 6.06715 | 12.97116 | 6.97116 | 3.00000 | 1.00000 | 56 | 6 |
| 155,050.32 | 7.50000 | 6.98600 | 358 | 538 | 2 | N/A | 6 Month Libor | 6.12500 | 13.50000 | 7.50000 | 3.00000 | 1.00000 | 58 | 6 |
| 847,834.51 | 8.08725 | 7.57325 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 14.08725 | 8.08725 | 3.00000 | 1.00000 | 58 | 6 |
| 1,018,717.64 | 7.18311 | 6.66911 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.23982 | 13.18311 | 7.18311 | 3.00000 | 1.00000 | 58 | 6 |
| 575,785.45 | 6.37500 | 5.86100 | 358 | 598 | 2 | N/A | 6 Month Libor | 6.12500 | 12.37500 | 6.37500 | 3.00000 | 1.00000 | 58 | 6 |

S-155

GROUP II

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 262,439.32 | 7.29000 | 6.77600 | 355 | 355 | 5 | 60 | 6 Month Libor | 4.40000 | 13.29000 | 7.29000 | 3.00000 | 1.00000 | 55 | 6 |
| 242,250.00 | 7.25000 | 6.73600 | 357 | 357 | 3 | 60 | 6 Month Libor | 6.00000 | 13.25000 | 7.25000 | 3.00000 | 1.00000 | 57 | 6 |
| 2,148,766.31 | 7.55698 | 7.04298 | 355 | 355 | 5 | 60 | 6 Month Libor | 6.30528 | 13.67728 | 7.55698 | 3.00000 | 1.06015 | 55 | 6 |
| 2,947,609.91 | 7.18325 | 6.66925 | 358 | 358 | 2 | 60 | 6 Month Libor | 6.05441 | 13.20930 | 7.18325 | 3.00000 | 1.01303 | 58 | 6 |
| 521,054.81 | 6.66917 | 6.15517 | 349 | 349 | 11 | 120 | 6 Month Libor | 5.21805 | 13.66917 | 5.76694 | 3.00000 | 1.22556 | 49 | 6 |
| 151,437.21 | 8.62500 | 8.11100 | 355 | 355 | 5 | N/A | 6 Month Libor | 6.75000 | 14.62500 | 8.62500 | 3.00000 | 1.00000 | 55 | 6 |
| 82,522.54 | 7.99000 | 7.47600 | 175 | 175 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 313,413.08 | 9.15230 | 8.63830 | 172 | 172 | 8 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 126,424.85 | 6.85000 | 6.33600 | 174 | 174 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 179,143.85 | 9.05726 | 8.54326 | 234 | 234 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 267,856.05 | 8.40973 | 7.89573 | 234 | 234 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 440,498.95 | 8.14961 | 7.63561 | 351 | 351 | 9 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 92,227.66 | 8.55000 | 8.03600 | 352 | 352 | 8 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5,381,455.26 | 8.67111 | 8.15711 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,510,776.07 | 8.53182 | 8.01782 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 443,021.46 | 7.94842 | 7.43442 | 350 | 350 | 10 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 99,469.20 | 8.30000 | 7.78600 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 863,598.79 | 8.65266 | 8.13866 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 633,159.98 | 9.14804 | 8.63404 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 802,580.43 | 8.95749 | 8.44349 | 351 | 351 | 9 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 692,226.24 | 7.31435 | 6.80035 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 152,437.24 | 7.75000 | 7.23600 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 13,550,215.52 | 8.20246 | 7.68846 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 9,741,080.63 | 7.70283 | 7.18883 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 22,189.84 | 12.50000 | 11.98600 | 173 | 173 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 61,839.47 | 12.66000 | 12.14600 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 119,953.58 | 10.62500 | 10.11100 | 359 | 359 | 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 687,832.26 | 11.49063 | 10.97663 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 288,158.39 | 11.25839 | 10.74439 | 355 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,293,658.05 | 11.82903 | 11.31503 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,659,316.74 | 10.57196 | 10.05796 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 6,961,015.82 | 11.27291 | 10.75891 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5,692,327.23 | 10.34187 | 9.82787 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

S-156

NOM-FHFA_05591485

GROUP II

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 965,451.70 | 11.40820 | 10.89420 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,739,332.54 | 10.43389 | 9.91989 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 113,537.76 | 13.02500 | 12.51100 | 113 | 113 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 388,836.06 | 11.32736 | 10.81336 | 233 | 233 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 209,706.25 | 10.81157 | 10.29757 | 232 | 232 | 8 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4,366,626.67 | 11.46840 | 10.95440 | 353 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3,126,467.27 | 11.11546 | 10.60146 | 354 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 246,376.46 | 9.48904 | 8.97504 | 169 | 349 | 11 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 28,381.77 | 11.50000 | 10.98600 | 178 | 358 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 20,229.31 | 12.85000 | 12.33600 | 159 | 339 | 21 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 265,774.75 | 12.76914 | 12.25514 | 174 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 607,171.65 | 12.40304 | 11.88904 | 175 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,384,532.63 | 11.34255 | 10.82855 | 173 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,873,962.77 | 11.02215 | 10.50815 | 175 | 355 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 660,770.18 | 12.17120 | 11.65720 | 173 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 610,893.59 | 10.71241 | 10.19841 | 174 | 354 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,445,370.34 | 12.41709 | 11.90309 | 172 | 352 | 8 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 876,212.37 | 11.73472 | 11.22072 | 173 | 353 | 7 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 2,266,245.51 | 8.44025 | 7.92625 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 520,548.47 | 8.99000 | 8.47600 | 356 | 476 | 4 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 109,845.37 | 8.75000 | 8.23600 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,946,181.24 | 7.85160 | 7.33760 | 355 | 475 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,550,208.24 | 7.44865 | 6.93465 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,164,229.72 | 12.37005 | 11.85605 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 874,737.80 | 10.93074 | 10.41674 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3,324,756.91 | 12.01260 | 11.49860 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3,086,720.87 | 10.79947 | 10.28547 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 781,031.87 | 12.02774 | 11.51374 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 501,754.91 | 10.33909 | 9.82509 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,587,599.53 | 12.39427 | 11.88027 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,812,370.24 | 11.03635 | 10.52235 | 358 | 478 | 2 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 702,126.27 | 8.53529 | 8.02129 | 355 | 475 | 5 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 164,424.32 | 8.15000 | 7.63600 | 354 | 474 | 6 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

CONFIDENTIAL

NOM-FHFA_05591486

**GROUP II**

| Principal Balance ($) | Gross Mortgage Rate (%) | Net Mortgage Rate (%) | Remaining Term to Maturity (Months) | Amortization Remaining Term (Months) | Age (Months) | Original Interest Only (Months) | Index Type | Gross Margin (%) | Maximum Mortgage Rate (%) | Minimum Mortgage Rate (%) | Initial Periodic Rate Cap (%) | Subsequent Periodic Rate Cap (%) | Months to Next Rate Adjustment | Adjustment Rate Frequency (Months) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 638,444.80 | 7.25000 | 6.73600 | 359 | 539 | 1 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 368,541.10 | 7.62500 | 7.11100 | 358 | 538 | 2 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 342,986.82 | 6.50000 | 5.98600 | 358 | 538 | 2 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 849,843.99 | 7.73641 | 7.22241 | 358 | 538 | 2 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,440,103.87 | 7.29439 | 6.78039 | 358 | 538 | 2 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,339,016.74 | 7.81364 | 7.29964 | 357 | 597 | 3 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 511,793.34 | 6.75000 | 6.23600 | 358 | 598 | 2 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 227,986.17 | 9.87500 | 9.36100 | 359 | 599 | 1 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 30,278.19 | 7.95000 | 7.43600 | 346 | 346 | 14 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 2,117,106.57 | 8.34596 | 7.83196 | 354 | 354 | 6 | 60 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 347,770.00 | 8.19817 | 7.68417 | 356 | 356 | 4 | 60 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 1,543,544.81 | 9.04989 | 8.53589 | 354 | 354 | 6 | 60 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 222,630.00 | 8.81000 | 8.29600 | 355 | 355 | 5 | 60 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 187,999.00 | 7.05000 | 6.53600 | 351 | 351 | 9 | 120 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 304,000.00 | 8.25000 | 7.73600 | 356 | 356 | 4 | 120 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 98,000.00 | 10.12500 | 9.61100 | 353 | 353 | 7 | 120 | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 113,985.87 | 8.75000 | 8.23600 | 174 | 174 | 6 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 112,079.50 | 7.15000 | 6.63600 | 235 | 235 | 5 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 156,684.03 | 8.26546 | 7.75146 | 233 | 233 | 7 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 4,188,240.03 | 8.52500 | 8.01100 | 354 | 354 | 6 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 2,551,956.41 | 7.87537 | 7.36137 | 351 | 351 | 9 | N/A | | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

S-158

NOM-FHFA_05591487

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class I-A-1 | | | | |
| --- | --- | --- | --- | --- | --- |
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 | 80 | 73 | 66 | 60 | 53 |
| January 25, 2009 | 55 | 42 | 29 | 18 | 7 |
| January 25, 2010 | 37 | 21 | 8 | 0 | 0 |
| January 25, 2011 | 28 | 20 | 8 | 0 | 0 |
| January 25, 2012 | 22 | 15 | 8 | 0 | 0 |
| January 25, 2013 | 18 | 11 | 7 | 0 | 0 |
| January 25, 2014 | 15 | 8 | 5 | 0 | 0 |
| January 25, 2015 | 12 | 6 | 3 | 0 | 0 |
| January 25, 2016 | 9 | 5 | 2 | 0 | 0 |
| January 25, 2017 | 8 | 4 | 2 | 0 | 0 |
| January 25, 2018 | 6 | 3 | 1 | 0 | 0 |
| January 25, 2019 | 5 | 2 | 1 | 0 | 0 |
| January 25, 2020 | 4 | 2 | * | 0 | 0 |
| January 25, 2021 | 3 | 1 | * | 0 | 0 |
| January 25, 2022 | 3 | 1 | 0 | 0 | 0 |
| January 25, 2023 | 2 | 1 | 0 | 0 | 0 |
| January 25, 2024 | 2 | * | 0 | 0 | 0 |
| January 25, 2025 | 1 | * | 0 | 0 | 0 |
| January 25, 2026 | 1 | 0 | 0 | 0 | 0 |
| January 25, 2027 | 1 | 0 | 0 | 0 | 0 |
| January 25, 2028 | 1 | 0 | 0 | 0 | 0 |
| January 25, 2029 | * | 0 | 0 | 0 | 0 |
| January 25, 2030 | * | 0 | 0 | 0 | 0 |
| January 25, 2031 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 3.63 | 2.68 | 1.95 | 1.30 | 1.12 |
| Weighted Average Life (in years)[1][2] | 3.36 | 2.46 | 1.78 | 1.30 | 1.12 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                                                     NOM-FHFA_05591488

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class II-A-1 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008.................................... | 69 | 59 | 48 | 38 | 28 |
| January 25, 2009.................................... | 31 | 11 | 0 | 0 | 0 |
| January 25, 2010.................................... | 4 | 0 | 0 | 0 | 0 |
| January 25, 2011.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2012.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2013.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2014.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2015.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2016.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2017.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2018.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2019.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2020.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2021.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2022.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2023.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2024.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037.................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 1.56 | 1.21 | 1.00 | 0.85 | 0.74 |
| Weighted Average Life (in years)[1] [2] | 1.56 | 1.21 | 1.00 | 0.85 | 0.74 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                            NOM-FHFA_05591489

## Percent of the Initial Certificate Principal Balance
## at the Respective Percentages of the Prepayment Assumption

| | Class II-A-2 | | | | |
|---|---|---|---|---|---|
| **Distribution Date** | **60%** | **80%** | **100%** | **120%** | **140%** |
| Initial Percentage ................................. | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008................................. | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009................................. | 100 | 100 | 38 | 0 | 0 |
| January 25, 2010................................. | 100 | 0 | 0 | 0 | 0 |
| January 25, 2011................................. | 21 | 0 | 0 | 0 | 0 |
| January 25, 2012................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2013................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2014................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2015................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2016................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2017................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2018................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2019................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2020................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2021................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2022................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2023................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2024................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036................................. | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037................................. | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 3.69 | 2.53 | 2.00 | 1.73 | 1.53 |
| Weighted Average Life (in years)[1] [2] | 3.69 | 2.53 | 2.00 | 1.73 | 1.53 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL

NOM-FHFA_05591490

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class II-A-3 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 | 100 | 100 | 100 | 57 | 2 |
| January 25, 2010 | 100 | 74 | 7 | 0 | 0 |
| January 25, 2011 | 100 | 69 | 7 | 0 | 0 |
| January 25, 2012 | 81 | 43 | 7 | 0 | 0 |
| January 25, 2013 | 58 | 23 | * | 0 | 0 |
| January 25, 2014 | 41 | 9 | 0 | 0 | 0 |
| January 25, 2015 | 26 | 0 | 0 | 0 | 0 |
| January 25, 2016 | 15 | 0 | 0 | 0 | 0 |
| January 25, 2017 | 5 | 0 | 0 | 0 | 0 |
| January 25, 2018 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2019 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2020 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2021 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2022 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2023 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2024 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 6.79 | 4.79 | 2.78 | 2.09 | 1.81 |
| Weighted Average Life (in years)[1][2] | 6.79 | 4.79 | 2.78 | 2.09 | 1.81 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)    The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)    Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                                                           NOM-FHFA_05591491

## Percent of the Initial Certificate Principal Balance
## at the Respective Percentages of the Prepayment Assumption

| Distribution Date | Class II-A-4 | | | | |
| --- | --- | --- | --- | --- | --- |
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage .................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008.................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009.................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010.................................... | 100 | 100 | 100 | 0 | 0 |
| January 25, 2011.................................... | 100 | 100 | 100 | 0 | 0 |
| January 25, 2012.................................... | 100 | 100 | 100 | 0 | 0 |
| January 25, 2013.................................... | 100 | 100 | 100 | 0 | 0 |
| January 25, 2014.................................... | 100 | 100 | 68 | 0 | 0 |
| January 25, 2015.................................... | 100 | 94 | 47 | 0 | 0 |
| January 25, 2016.................................... | 100 | 70 | 32 | 0 | 0 |
| January 25, 2017.................................... | 100 | 52 | 22 | 0 | 0 |
| January 25, 2018.................................... | 93 | 39 | 15 | 0 | 0 |
| January 25, 2019.................................... | 75 | 29 | 10 | 0 | 0 |
| January 25, 2020.................................... | 60 | 21 | 4 | 0 | 0 |
| January 25, 2021.................................... | 48 | 16 | 0 | 0 | 0 |
| January 25, 2022.................................... | 37 | 11 | 0 | 0 | 0 |
| January 25, 2023.................................... | 30 | 7 | 0 | 0 | 0 |
| January 25, 2024.................................... | 24 | 2 | 0 | 0 | 0 |
| January 25, 2025.................................... | 19 | 0 | 0 | 0 | 0 |
| January 25, 2026.................................... | 15 | 0 | 0 | 0 | 0 |
| January 25, 2027.................................... | 12 | 0 | 0 | 0 | 0 |
| January 25, 2028.................................... | 9 | 0 | 0 | 0 | 0 |
| January 25, 2029.................................... | 5 | 0 | 0 | 0 | 0 |
| January 25, 2030.................................... | 1 | 0 | 0 | 0 | 0 |
| January 25, 2031.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036.................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037.................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 14.79 | 10.93 | 8.46 | 2.65 | 2.15 |
| Weighted Average Life (in years)[1][2] | 10.65 | 7.82 | 6.07 | 2.65 | 2.15 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                    NOM-FHFA_05591492

## Percent of the Initial Certificate Principal Balance
## at the Respective Percentages of the Prepayment Assumption

| Distribution Date | Class M-1 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ....................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008...................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009...................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010...................................... | 100 | 100 | 100 | 50 | 0 |
| January 25, 2011...................................... | 85 | 61 | 100 | 50 | 0 |
| January 25, 2012...................................... | 68 | 45 | 57 | 50 | 0 |
| January 25, 2013...................................... | 55 | 34 | 20 | 50 | 0 |
| January 25, 2014...................................... | 44 | 25 | 14 | 49 | 0 |
| January 25, 2015...................................... | 35 | 19 | 10 | 32 | 0 |
| January 25, 2016...................................... | 28 | 14 | 7 | 20 | 0 |
| January 25, 2017...................................... | 23 | 10 | 5 | 11 | 0 |
| January 25, 2018...................................... | 18 | 8 | 3 | 3 | 0 |
| January 25, 2019...................................... | 15 | 6 | 2 | 0 | 0 |
| January 25, 2020...................................... | 12 | 4 | 0 | 0 | 0 |
| January 25, 2021...................................... | 10 | 3 | 0 | 0 | 0 |
| January 25, 2022...................................... | 8 | 2 | 0 | 0 | 0 |
| January 25, 2023...................................... | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024...................................... | 5 | 0 | 0 | 0 | 0 |
| January 25, 2025...................................... | 4 | 0 | 0 | 0 | 0 |
| January 25, 2026...................................... | 3 | 0 | 0 | 0 | 0 |
| January 25, 2027...................................... | 2 | 0 | 0 | 0 | 0 |
| January 25, 2028...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036...................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037...................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.74 | 5.92 | 5.70 | 5.86 | 2.44 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.31 | 5.22 | 3.87 | 2.44 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

S-164

NOM-FHFA_05591493

## Percent of the Initial Certificate Principal Balance
## at the Respective Percentages of the Prepayment Assumption

| Distribution Date | Class M-2 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 | 100 | 100 | 100 | 100 | 0 |
| January 25, 2011 | 85 | 61 | 97 | 100 | 0 |
| January 25, 2012 | 68 | 45 | 29 | 99 | 0 |
| January 25, 2013 | 55 | 34 | 20 | 42 | 0 |
| January 25, 2014 | 44 | 25 | 14 | 7 | 0 |
| January 25, 2015 | 35 | 19 | 10 | 5 | 0 |
| January 25, 2016 | 28 | 14 | 7 | 3 | 0 |
| January 25, 2017 | 23 | 10 | 5 | 0 | 0 |
| January 25, 2018 | 18 | 8 | 3 | 0 | 0 |
| January 25, 2019 | 15 | 6 | 0 | 0 | 0 |
| January 25, 2020 | 12 | 4 | 0 | 0 | 0 |
| January 25, 2021 | 10 | 3 | 0 | 0 | 0 |
| January 25, 2022 | 8 | * | 0 | 0 | 0 |
| January 25, 2023 | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024 | 5 | 0 | 0 | 0 | 0 |
| January 25, 2025 | 4 | 0 | 0 | 0 | 0 |
| January 25, 2026 | 3 | 0 | 0 | 0 | 0 |
| January 25, 2027 | * | 0 | 0 | 0 | 0 |
| January 25, 2028 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.72 | 5.84 | 5.23 | 6.05 | 2.77 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.24 | 4.76 | 4.82 | 2.77 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)  The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)  Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

S-165

NOM-FHFA_05591494

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class M-3 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 | 100 | 100 | 100 | 100 | 66 |
| January 25, 2011 | 85 | 61 | 43 | 100 | 66 |
| January 25, 2012 | 68 | 45 | 29 | 18 | 66 |
| January 25, 2013 | 55 | 34 | 20 | 11 | 66 |
| January 25, 2014 | 44 | 25 | 14 | 7 | 55 |
| January 25, 2015 | 35 | 19 | 10 | 5 | 26 |
| January 25, 2016 | 28 | 14 | 7 | 1 | 7 |
| January 25, 2017 | 23 | 10 | 5 | 0 | 0 |
| January 25, 2018 | 18 | 8 | 2 | 0 | 0 |
| January 25, 2019 | 15 | 6 | 0 | 0 | 0 |
| January 25, 2020 | 12 | 4 | 0 | 0 | 0 |
| January 25, 2021 | 10 | 3 | 0 | 0 | 0 |
| January 25, 2022 | 8 | 0 | 0 | 0 | 0 |
| January 25, 2023 | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024 | 5 | 0 | 0 | 0 | 0 |
| January 25, 2025 | 4 | 0 | 0 | 0 | 0 |
| January 25, 2026 | 1 | 0 | 0 | 0 | 0 |
| January 25, 2027 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.70 | 5.79 | 5.01 | 5.11 | 6.22 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.21 | 4.56 | 4.72 | 3.59 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)    The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)    Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                                                              NOM-FHFA_05591495

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| | Class M-4 | | | | |
| Distribution Date | 60% | 80% | 100% | 120% | 140% |
|---|---|---|---|---|---|
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011..................................... | 85 | 61 | 43 | 100 | 100 |
| January 25, 2012..................................... | 68 | 45 | 29 | 18 | 100 |
| January 25, 2013..................................... | 55 | 34 | 20 | 11 | 37 |
| January 25, 2014..................................... | 44 | 25 | 14 | 7 | 3 |
| January 25, 2015..................................... | 35 | 19 | 10 | 5 | 0 |
| January 25, 2016..................................... | 28 | 14 | 7 | 0 | 0 |
| January 25, 2017..................................... | 23 | 10 | 5 | 0 | 0 |
| January 25, 2018..................................... | 18 | 8 | 0 | 0 | 0 |
| January 25, 2019..................................... | 15 | 6 | 0 | 0 | 0 |
| January 25, 2020..................................... | 12 | 4 | 0 | 0 | 0 |
| January 25, 2021..................................... | 10 | 0 | 0 | 0 | 0 |
| January 25, 2022..................................... | 8 | 0 | 0 | 0 | 0 |
| January 25, 2023..................................... | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024..................................... | 5 | 0 | 0 | 0 | 0 |
| January 25, 2025..................................... | 4 | 0 | 0 | 0 | 0 |
| January 25, 2026..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037..................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.67 | 5.76 | 4.90 | 4.75 | 5.88 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.19 | 4.46 | 4.39 | 3.90 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)    The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)    Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

S-167

CONFIDENTIAL

**Percent of the Initial Certificate Principal Balance**
**at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class M-5 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 .................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 .................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 .................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011 .................................... | 85 | 61 | 43 | 47 | 100 |
| January 25, 2012 .................................... | 68 | 45 | 29 | 18 | 29 |
| January 25, 2013 .................................... | 55 | 34 | 20 | 11 | 6 |
| January 25, 2014 .................................... | 44 | 25 | 14 | 7 | 0 |
| January 25, 2015 .................................... | 35 | 19 | 10 | 5 | 0 |
| January 25, 2016 .................................... | 28 | 14 | 7 | 0 | 0 |
| January 25, 2017 .................................... | 23 | 10 | 5 | 0 | 0 |
| January 25, 2018 .................................... | 18 | 8 | 0 | 0 | 0 |
| January 25, 2019 .................................... | 15 | 6 | 0 | 0 | 0 |
| January 25, 2020 .................................... | 12 | 4 | 0 | 0 | 0 |
| January 25, 2021 .................................... | 10 | 0 | 0 | 0 | 0 |
| January 25, 2022 .................................... | 8 | 0 | 0 | 0 | 0 |
| January 25, 2023 .................................... | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024 .................................... | 5 | 0 | 0 | 0 | 0 |
| January 25, 2025 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 .................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 .................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.65 | 5.72 | 4.81 | 4.53 | 4.98 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.18 | 4.39 | 4.18 | 3.90 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

S-168

NOM-FHFA_05591497

### Percent of the Initial Certificate Principal Balance
### at the Respective Percentages of the Prepayment Assumption

| Distribution Date | Class M-6 | | | | |
| --- | --- | --- | --- | --- | --- |
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011 ..................................... | 85 | 61 | 43 | 29 | 100 |
| January 25, 2012 ..................................... | 68 | 45 | 29 | 18 | 11 |
| January 25, 2013 ..................................... | 55 | 34 | 20 | 11 | 6 |
| January 25, 2014 ..................................... | 44 | 25 | 14 | 7 | 0 |
| January 25, 2015 ..................................... | 35 | 19 | 10 | 1 | 0 |
| January 25, 2016 ..................................... | 28 | 14 | 7 | 0 | 0 |
| January 25, 2017 ..................................... | 23 | 10 | * | 0 | 0 |
| January 25, 2018 ..................................... | 18 | 8 | 0 | 0 | 0 |
| January 25, 2019 ..................................... | 15 | 6 | 0 | 0 | 0 |
| January 25, 2020 ..................................... | 12 | 0 | 0 | 0 | 0 |
| January 25, 2021 ..................................... | 10 | 0 | 0 | 0 | 0 |
| January 25, 2022 ..................................... | 8 | 0 | 0 | 0 | 0 |
| January 25, 2023 ..................................... | 6 | 0 | 0 | 0 | 0 |
| January 25, 2024 ..................................... | 2 | 0 | 0 | 0 | 0 |
| January 25, 2025 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 ..................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.62 | 5.69 | 4.74 | 4.36 | 4.52 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.17 | 4.34 | 4.03 | 3.90 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)   The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)   Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL

NOM-FHFA_05591498

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| | Class M-7 | | | | |
|---|---|---|---|---|---|
| **Distribution Date** | **60%** | **80%** | **100%** | **120%** | **140%** |
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011 ..................................... | 85 | 61 | 43 | 29 | 44 |
| January 25, 2012 ..................................... | 68 | 45 | 29 | 18 | 11 |
| January 25, 2013 ..................................... | 55 | 34 | 20 | 11 | 6 |
| January 25, 2014 ..................................... | 44 | 25 | 14 | 7 | 0 |
| January 25, 2015 ..................................... | 35 | 19 | 10 | 0 | 0 |
| January 25, 2016 ..................................... | 28 | 14 | 7 | 0 | 0 |
| January 25, 2017 ..................................... | 23 | 10 | 0 | 0 | 0 |
| January 25, 2018 ..................................... | 18 | 8 | 0 | 0 | 0 |
| January 25, 2019 ..................................... | 15 | 3 | 0 | 0 | 0 |
| January 25, 2020 ..................................... | 12 | 0 | 0 | 0 | 0 |
| January 25, 2021 ..................................... | 10 | 0 | 0 | 0 | 0 |
| January 25, 2022 ..................................... | 8 | 0 | 0 | 0 | 0 |
| January 25, 2023 ..................................... | 4 | 0 | 0 | 0 | 0 |
| January 25, 2024 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 ..................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.57 | 5.64 | 4.67 | 4.24 | 4.22 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.16 | 4.30 | 3.93 | 3.90 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)    The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)    Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option. See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                                                          NOM-FHFA_05591499

## Percent of the Initial Certificate Principal Balance
## at the Respective Percentages of the Prepayment Assumption

| Distribution Date | Class M-8 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011 ..................................... | 85 | 61 | 43 | 29 | 19 |
| January 25, 2012 ..................................... | 68 | 45 | 29 | 18 | 11 |
| January 25, 2013 ..................................... | 55 | 34 | 20 | 11 | 0 |
| January 25, 2014 ..................................... | 44 | 25 | 14 | 5 | 0 |
| January 25, 2015 ..................................... | 35 | 19 | 10 | 0 | 0 |
| January 25, 2016 ..................................... | 28 | 14 | 1 | 0 | 0 |
| January 25, 2017 ..................................... | 23 | 10 | 0 | 0 | 0 |
| January 25, 2018 ..................................... | 18 | 8 | 0 | 0 | 0 |
| January 25, 2019 ..................................... | 15 | 0 | 0 | 0 | 0 |
| January 25, 2020 ..................................... | 12 | 0 | 0 | 0 | 0 |
| January 25, 2021 ..................................... | 10 | 0 | 0 | 0 | 0 |
| January 25, 2022 ..................................... | 6 | 0 | 0 | 0 | 0 |
| January 25, 2023 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2024 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 ..................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.52 | 5.60 | 4.61 | 4.12 | 4.01 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.16 | 4.27 | 3.84 | 3.77 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)     The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)     Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

S-171

NOM-FHFA_05591500

**Percent of the Initial Certificate Principal Balance
at the Respective Percentages of the Prepayment Assumption**

| Distribution Date | Class M-9 | | | | |
|---|---|---|---|---|---|
| | 60% | 80% | 100% | 120% | 140% |
| Initial Percentage ..................................... | 100% | 100% | 100% | 100% | 100% |
| January 25, 2008 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2009 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2010 ..................................... | 100 | 100 | 100 | 100 | 100 |
| January 25, 2011 ..................................... | 85 | 61 | 43 | 29 | 19 |
| January 25, 2012 ..................................... | 68 | 45 | 29 | 18 | 11 |
| January 25, 2013 ..................................... | 55 | 34 | 20 | 11 | 0 |
| January 25, 2014 ..................................... | 44 | 25 | 14 | 0 | 0 |
| January 25, 2015 ..................................... | 35 | 19 | 9 | 0 | 0 |
| January 25, 2016 ..................................... | 28 | 14 | 0 | 0 | 0 |
| January 25, 2017 ..................................... | 23 | 10 | 0 | 0 | 0 |
| January 25, 2018 ..................................... | 18 | 0 | 0 | 0 | 0 |
| January 25, 2019 ..................................... | 15 | 0 | 0 | 0 | 0 |
| January 25, 2020 ..................................... | 12 | 0 | 0 | 0 | 0 |
| January 25, 2021 ..................................... | 9 | 0 | 0 | 0 | 0 |
| January 25, 2022 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2023 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2024 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2025 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2026 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2027 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2028 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2029 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2030 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2031 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2032 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2033 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2034 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2035 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2036 ..................................... | 0 | 0 | 0 | 0 | 0 |
| January 25, 2037 ..................................... | 0 | 0 | 0 | 0 | 0 |
| Weighted Average Life (in years)[1] | 7.45 | 5.54 | 4.54 | 4.03 | 3.84 |
| Weighted Average Life (in years)[1][2] | 6.94 | 5.15 | 4.24 | 3.78 | 3.63 |

*If applicable, indicates a number that is greater than zero but less than 0.5%.

(1)   The weighted average life of the Offered Certificates is determined by (i) multiplying the amount of each principal payment by the number of years from the date of issuance to the related distribution date, (ii) adding the results, and (iii) dividing the sum by the initial respective certificate principal balance for such class of Offered Certificates.

(2)   Assumes that the master servicer exercises its option to purchase the Mortgage Loans on the earliest possible distribution date on which it is permitted to exercise this option.  See "Pooling and Servicing Agreement—Optional Termination" in this prospectus supplement.

CONFIDENTIAL                                                                                                                 NOM-FHFA_05591501

## THE SPONSOR

Nomura Credit & Capital, Inc., the sponsor, is a Delaware corporation whose principal offices are located in New York, New York.  The sponsor has a book value of approximately $79 million as of December 31, 2006, is an indirect subsidiary of Nomura Holding America Inc., and an indirect subsidiary of Nomura Holdings, Inc., a global investment banking and securities firm having a current market capitalization of approximately $37.61 billion.  The sponsor is a HUD approved mortgagee primarily engaged in the business of originating, purchasing and selling commercial mortgage loans, purchasing and selling residential mortgage loans and engaging in various asset backed warehouse and repurchase financings of non-securities.  The sponsor is also an affiliate of Nomura Home Equity Loan, Inc., the depositor for this transaction.  The sponsor was incorporated in the State of Delaware on June 24, 1998.  The sponsor maintains its principal office at Two World Financial Center, Building B, New York, New York 10281. Its telephone number is (212) 667-9300.

Since 2002 the sponsor has been purchasing residential mortgage loans, comprised primarily of newly originated, conforming and non-conforming balance, Alt-A, first-lien, fixed and adjustable rate mortgages, as well as second-lien and subprime mortgages, in excess of $31.12 billion as of December 31, 2006.  The sponsor is responsible for pooling the mortgage loans to be securitized by the depositor, negotiating the principal securitization transaction documents and participating with the underwriters in the structuring of such transactions.  The sponsor also sells residential mortgage loans and related servicing rights to third-party investors.

The sponsor has been actively securitizing residential mortgage loans since April 2003.  The following table describes the size (at issuance), composition and growth of the sponsor's total portfolio of assets it has publicly securitized as of the dates indicated.  As of the date of this prospectus supplement, none of the securitization transactions sponsored by the sponsor through December 2006 and involving the depositor have defaulted or experienced a trigger event that is material to the certificateholders.

| | Year ended December 31, 2003 | | Year ended December 31, 2004 | | Year ended December 31, 2005 | | December 31, 2006 | |
|---|---|---|---|---|---|---|---|---|
| Loan Type | Number | Total Portfolio of Loans | Number | Total Portfolio of Loans | Number | Total Portfolio of Loans | Number | Total Portfolio of Loans |
| Alt-A ARM............ | N/A | N/A | 6,360 | $1,595,220,173 | 11,166 | $3,096,819,467 | 7,778 | $2,551,409,012 |
| Alt-A Fixed............ | 3,268 | $687,573,876 | 3,823 | $ 773,581,361 | 6,798 | $1,387,201,153 | 8,202 | $1,932,941,952 |
| Seconds.................. | N/A | N/A | N/A | N/A | 12,142 | $ 685,450,460 | 0 | N/A |
| SubPrime ............... | N/A | N/A | N/A | N/A | 10,278 | $2,080,121,500 | 29,333 | $5,586,310,350 |

## STATIC POOL INFORMATION

Static pool information material to this offering may be found at http://www.nomuradeals.com/NHEL+2007-2.

Information provided through the Internet address above will not be deemed to be a part of this prospectus or the registration statement for the securities offered hereby if it relates to any prior securities pool or vintage formed before January 1, 2006, or with respect to any mortgage pool (if applicable) acquired before January 1, 2006.

S-173

NOM-FHFA_05591502

## ISSUING ENTITY

Nomura Home Equity Loan, Inc., Home Equity Loan Trust Series 2007-2 is a common law trust formed under the laws of the State of New York pursuant to the pooling and servicing agreement between the depositor, Ocwen Loan Servicing, LLC, Equity One, Inc., Select Portfolio Servicing, Inc., the master servicer, the securities administrator and the trustee, dated as of January 1, 2007 (the "Pooling and Servicing Agreement"). The Pooling and Servicing Agreement constitutes the "governing instrument" under the laws of the State of New York. After its formation, the Issuing Entity will not engage in any activity other than (i) acquiring and holding the Mortgage Loans and the other assets of the trust and proceeds therefrom, (ii) issuing the certificates, (iii) making payments on the certificates and (iv) engaging in other activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith. The foregoing restrictions are contained in the Pooling and Servicing Agreement. These restrictions cannot be amended without the consent of holders of certificates evidencing at least 51% of the voting rights. For a description of other provisions relating to amending the Pooling and Servicing Agreement, please see "Description *of the Agreements — Amendment"* in the prospectus.

The assets of the Issuing Entity will consist of the Mortgage Loans and certain related assets.

The Issuing Entity's fiscal year end is December 31.

## THE DEPOSITOR

Nomura Home Equity Loan, Inc., the depositor, is a special purpose corporation incorporated in the State of Delaware on April 26, 2005. The principal executive offices of the depositor are located at Two World Financial Center, Building B, New York, New York 10281. Its telephone number is (212) 667-9300. The depositor does not have, nor is it expected in the future to have, any significant assets.

The limited purposes of the depositor are, in general, to acquire, own and sell mortgage loans and financial assets; to issue, acquire, own, hold and sell securities and notes secured by or representing ownership interests in mortgage loans and other financial assets, collections on the mortgage loans and related assets; and to engage in any acts that are incidental to, or necessary, suitable or convenient to accomplish, these purposes.

The depositor has been actively serving as a private secondary mortgage market conduit for residential mortgage loans since its inception. Since that time it has been involved in the issuance of public securities backed by residential mortgage loans in excess of $7.7 billion as of December 31, 2006.

After issuance and registration of the securities contemplated in this prospectus supplement, the depositor will have no duties or responsibilities with respect to the pool assets or securities.

All of the shares of capital stock of the depositor are held by Nomura America Mortgage Finance, LLC, a Delaware limited liability company.

S-174

# SERVICING

Primary servicing of approximately 92.54% of the Mortgage Loans (the "Ocwen Mortgage Loans"), by aggregate principal balance as of the Cut-off Date, will be provided by Ocwen Loan Servicing, LLC ("Ocwen") pursuant to the Pooling and Servicing Agreement. Ocwen will continue to service the Ocwen Mortgage Loans until it is terminated under the Pooling and Servicing Agreement. The information set forth below under "Ocwen Loan Servicing, LLC" has been provided by Ocwen because Ocwen is servicing in excess of 20% of the Mortgage Loans, by aggregate principal balance as of the Cut-off Date.

Primary servicing of approximately 6.66% of the Mortgage Loans (the "Equity One Mortgage Loans") will be provided by Equity One, Inc. pursuant to the Pooling and Servicing Agreement, through a subservicing arrangement with its affiliate, Popular Mortgage Servicing, Inc., a Delaware corporation. Notwithstanding its subservicing arrangement with Popular Mortgage Servicing, Inc., Equity One will continue to be liable for the servicing of the Equity One Mortgage Loans until it is terminated under the Pooling and Servicing Agreement.

Primary servicing of approximately 0.79% of the Mortgage Loans (the "Wells Fargo Mortgage Loans"), by aggregate principal balance as of the Cut-off Date, will be provided by Wells Fargo Bank, N.A. ("Wells Fargo Bank") pursuant to the Seller's Warranties and Servicing Agreement, dated as of March 1, 2006, between Wells Fargo Bank and the sponsor, Nomura Credit & Capital, Inc. as modified by the Assignment, Assumption and Recognition Agreement, dated as of January 1, 2007, among Wells Fargo Bank, the sponsor, the depositor, the master servicer and the trustee (together, the "Servicing Agreement"). Wells Fargo Bank will continue to service the Wells Fargo Mortgage Loans until it is terminated under the Servicing Agreement.

Primary servicing of approximately 0.02% of the Mortgage Loans (the "SPS Mortgage Loans"), by aggregate principal balance as of the Cut-off Date, will be provided by Select Portfolio Servicing, Inc. ("SPS") pursuant to the Pooling and Servicing Agreement. SPS will continue to service the SPS Mortgage Loans until it is terminated under the Pooling and Servicing Agreement.

## Ocwen Loan Servicing, LLC

Ocwen Loan Servicing, LLC ("Ocwen"), a Delaware limited liability company, has its primary servicing operations in Orlando, Florida and its corporate offices in West Palm Beach, Florida. Ocwen is a wholly owned subsidiary of Ocwen Financial Corporation, a public financial services holding company ("OCN") headquartered in West Palm Beach, Florida. OCN's primary businesses are the servicing, special servicing and resolution of nonconforming, subperforming and nonperforming residential and commercial mortgage loans for third parties, as well as providing loan servicing technology and business-to-business e-commerce solutions for the mortgage and real estate industries.

As of September 30, 2006, OCN had approximately $1.913 billion in assets, including $192.2 million of cash, approximately $1.374 billion in liabilities and approximately $537.2 million in equity. For the quarter ended September 30, 2006, OCN's net income was approximately $17.0 million, as compared to approximately $159.1 million (including a tax benefit of $141.7 million) reported for the quarter ended June 30, 2006.

CONFIDENTIAL

NOM-FHFA_05591504

Ocwen is rated as a "Strong" residential subprime servicer and residential special servicer by Standard & Poor's and has an "RPS2" rating as a subprime servicer and an "RSS2" rating as special servicer from Fitch Ratings. Ocwen is also rated "SQ2-" ("Above Average") as a primary servicer of subprime loans and "SQ2" ("Above Average") as a special servicer by Moody's Investors Service, Inc. On April 23, 2004, Standard & Poor's placed its "Strong" residential subprime servicer and residential special servicer ratings assigned to Ocwen on "Credit Watch with negative implications." Ocwen is an approved Freddie Mac and Fannie Mae seller/servicer.

Ocwen, as successor in interest to Ocwen Federal Bank, and OCN are defendants in several potential class action lawsuits challenging Ocwen's mortgage servicing practices. To date, no such lawsuit has been certified by any court as a class action. On April 13, 2004, these lawsuits were consolidated in a single proceeding in the United States District Court for the District of Illinois under caption styled: Ocwen Federal Bank FSB Mortgage Servicing Litigation, MDL Docket No. 1604. Ocwen believes that its servicing practices comply with legal requirements and is vigorously defending against such lawsuits. Ocwen is also subject to various other routine pending litigation in the ordinary course of its business. While the outcome of litigation is always uncertain, Ocwen's management is of the opinion that the resolution of any of these claims and lawsuits will not have a material adverse effect on the results of its operations or financial condition or its ability to service the mortgage loans.

On February 9, 2006, a trial court in Galveston, Texas entered judgment in the amount of $1.8 million in compensatory and statutory damages and attorneys' fees against Ocwen in favor of a plaintiff borrower whose mortgage loan was serviced by Ocwen. The plaintiff brought the claims under the Texas Deceptive Trade Practices Act and other state statutes and common law generally alleging that Ocwen engaged in improper loan servicing practices. Ocwen believes that the judgment is against the weight of evidence and contrary to law and that the attorneys' fees award, which comprises $1.1 million of the judgment should be reduced as impermissibly excessive. Ocwen appealed the decision and will continue to vigorously defend this matter.

On September 13, 2006, a complaint was filed in the United States Bankruptcy Court in Delaware against Ocwen and other parties by the Chapter 7 Trustee of American Business Financial Services, Inc. and its subsidiaries (collectively, "ABFS") alleging various improper activities and conduct that have harmed ABFS. Claims against Ocwen include damages resulting from improperly servicing mortgage loans included in ABFS-sponsored securitizations and from actions relating to the acquisition of servicing rights from ABFS on those securitizations. Ocwen believes the claims made by ABFS are without merit and intends to vigorously defend the matter.

Ocwen, including its predecessors, has significant experience in servicing residential and commercial mortgage loans and has been servicing residential mortgage loans since 1988, and non prime mortgage loans since 1994. Ocwen is one of the largest third-party subprime mortgage loan servicers in the United States. OCN and its related companies currently employ more than 3,500 people worldwide with domestic residential mortgage loan servicing and processing centers in Orlando, Florida and Chicago, Illinois and related international offices in Bangalore and Mumbai, India. Ocwen specializes in the management of sub-performing and non performing assets, including severely delinquent and labor-intensive mortgage loans and REO assets. Ocwen's servicing experience generally includes collection, loss mitigation, default reporting, bankruptcy, foreclosure and REO property management.

S-176

CONFIDENTIAL

As of September 30, 2006, Ocwen provided servicing for residential mortgage loans with an aggregate unpaid principal balance of approximately $50.8 billion, substantially all of which are being serviced for third parties, including loans in over 250 securitizations. The table below sets forth the aggregate unpaid principal balance of the subprime mortgage loans serviced by Ocwen at the end of each of the indicated periods.

**Ocwen**
**Subprime Servicing Portfolio**
**(Dollars in Thousands)**

| Aggregate Principal Balance as of December 31, 2002 | Aggregate Principal Balance as of December 31, 2003 | Aggregate Principal Balance as of December 31, 2004 | Aggregate Principal Balance as of December 31, 2005 | Aggregate Principal Balance as of September 30, 2006 |
|---|---|---|---|---|
| $26,356,007 | $30,551,242 | $28,367,753 | $37,424,696 | $39,232,629 |

**Ocwen's Delinquency and Foreclosure Experience**

The following tables set forth, for the subprime mortgage loan servicing portfolio serviced by Ocwen, certain information relating to the delinquency, foreclosure, REO and loss experience with respect to such mortgage loans (including loans in foreclosure in Ocwen's servicing portfolio (which portfolio does not include mortgage loans that are subserviced by others)) at the end of the indicated periods. The indicated periods of delinquency are based on the number of days past due on a contractual basis. No mortgage loan is considered delinquent for these purposes until it is one month past due on a contractual basis. Ocwen's portfolio may differ significantly from the mortgage loans in the mortgage loan pool in terms of interest rates, principal balances, geographic distribution, types of properties, lien priority, origination and underwriting criteria, prior servicer performance and other possibly relevant characteristics. There can be no assurance, and no representation is made, that the delinquency and foreclosure experience with respect to the mortgage loans in the mortgage loan pool will be similar to that reflected in the table below, nor is any representation made as to the rate at which losses may be experienced on liquidation of defaulted mortgage loans in the mortgage loan pool. The actual delinquency experience with respect to the mortgage loans in the mortgage loan pool will depend, among other things, upon the value of the real estate securing such mortgage loans in the mortgage loan pool and the ability of the related borrower to make required payments. It should be noted that if the residential real estate market should experience an overall decline in property values, the actual rates of delinquencies and foreclosures could be higher than those previously experienced by Ocwen. In addition, adverse economic conditions may affect the timely payment by borrowers of scheduled payments of principal and interest on the mortgage loans in the mortgage loan pool and, accordingly, the actual rates of delinquencies and foreclosures with respect to the mortgage loan pool. Finally, the statistics shown below represent the delinquency experience for Ocwen's mortgage servicing portfolio only for the periods presented, whereas the aggregate delinquency experience with respect to the mortgage loans comprising the mortgage loan pool will depend on the results obtained over the life of the mortgage loan pool.

S-177

CONFIDENTIAL

NOM-FHFA_05591506

## Ocwen
## Delinquencies and Foreclosures
### (Dollars in Thousands)

| | As of December 31, 2003 | | | | As of December 31, 2004 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | By No. Of Loans | By Dollar Amount | Percent by No. of Loans | Percent by Dollar Amount | By No. Of Loans | By Dollar Amount | Percent by No. of Loans | Percent by Dollar Amount |
| Total Portfolio | 256,891 | $30,551,242 | 100.00% | 100.00% | 237,985 | $28,367,753 | 100.00% | 100.00% |
| Period of Delinquency[1] | | | | | | | | |
| 30-59 days | 10,662 | $ 1,117,125 | 4.15% | 3.66% | 11,251 | $ 1,127,427 | 4.73% | 3.97% |
| 60-89 days | 4,595 | $ 488,900 | 1.79% | 1.60% | 5,066 | $ 515,826 | 2.13% | 1.82% |
| 90 days or more | 24,050 | $ 2,341,837 | 9.36% | 7.67% | 26,459 | $ 2,545,313 | 11.12% | 8.97% |
| Total Delinquent Loans | 39,307 | $ 3,947,862 | 15.30% | 12.92% | 42,776 | $ 4,188,566 | 17.97% | 14.77% |
| Loans in Foreclosure[2] | 9,800 | $ 1,057,710 | 3.81% | 3.46% | 9,599 | $ 975,961 | 4.03% | 3.44% |

| | As of December 31, 2005 | | | | As of September 30, 2006 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | By No. Of Loans | By Dollar Amount | Percent by No. of Loans | Percent by Dollar Amount | By No. Of Loans | By Dollar Amount | Percent by No. of Loans | Percent by Dollar Amount |
| Total Portfolio | 304,153 | $37,424,696 | 100.00% | 100.00% | 299,223 | $39,232,629 | 100.00% | 100.00% |
| Period of Delinquency[2] | | | | | | | | |
| 30-59 days | 15,854 | $ 1,678,284 | 5.21% | 4.48% | 15,995 | $ 1,936,476 | 5.35% | 4.94% |
| 60-89 days | 7,701 | $ 773,139 | 2.53% | 2.07% | 9,021 | $ 1,101,279 | 3.01% | 2.81% |
| 90 days or more | 34,669 | $ 3,336,423 | 11.40% | 8.92% | 39,611 | $ 4,411,617 | 13.24% | 11.24% |
| Total Delinquent Loans | 58,224 | $ 5,787,845 | 19.14% | 15.47% | 64,627 | $ 7,449,371 | 21.60% | 18.99% |
| Loans in Foreclosure[2] | 9,057 | $ 924,118 | 2.98% | 2.47% | 12,413 | $ 1,629,316 | 4.15% | 4.15% |

[1] Includes 24,210 loans totaling $2,488,223 for September 30, 2006, which were delinquent at the time of transfer to Ocwen.

[2] Loans in foreclosure are also included under the heading "Total Delinquent Loans."

S-178

NOM-FHFA_05591507

**Ocwen**
**Real Estate Owned**
**(Dollars in Thousands)**

| | As of December 31, 2003 | | As of December 31, 2004 | | As of December 31, 2005 | | As of September 30, 2006 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | By No. of Loans | By Dollar Amount | By No. of Loans | By Dollar Amount | By No. of Loans | By Dollar Amount | By No. of Loans | By Dollar Amount |
| Total Portfolio | 256,891 | $30,551,242 | 237,985 | $28,367,753 | 304,153 | $37,424,696 | 299,223 | $39,232,629 |
| Foreclosed Loans[1] | 4,849 | $ 437,510 | 4,858 | $ 439,890 | 4,475 | $ 390,412 | 5,397 | $ 548,618 |
| Foreclosure Ratio[2] | 1.89% | 1.43% | 2.04% | 1.55% | 1.47% | 1.04% | 1.80% | 1.40% |

[1]   For the purpose of these tables, "Foreclosed Loans" means the principal balance of mortgage loans secured by mortgaged properties the title to which has been acquired by Ocwen.

[2]   The "Foreclosure Ratio" is equal to the aggregate principal balance or number of Foreclosed Loans divided by the aggregate principal balance, or number, as applicable, of mortgage loans in the Total Portfolio at the end of the indicated period.

**Ocwen**
**Loan Gain/(Loss) Experience**
**(Dollars in Thousands)**

| | As of December 31, 2003 | As of December 31, 2004 | As of December 31, 2005 | As of September 30, 2006 |
| --- | --- | --- | --- | --- |
| Total Portfolio[1] | $ 30,551,242 | $28,367,753 | $37,424,696 | $39,232,629 |
| Net Gains/(Losses)[2][3] | $ (249,516) | $ (348,145) | $ (406,451) | $ (406,360) |
| Net Gains/(Losses) as a Percentage of Total Portfolio | (0.82)% | (1.23)% | (1.09)% | (1.04)% |

[1]   "Total Portfolio" on the date stated above, is the principal balance of the mortgage loans outstanding on the last day of the period.

[2]   "Net Gains/(Losses)" are actual gains or losses incurred on liquidated properties and shortfall payoffs for the preceding one year period. Gains or losses on liquidated properties are calculated as net sales proceeds less unpaid principal at the time of payoff. Shortfall payoffs are calculated as the difference between the principal payoff amount and unpaid principal at the time of payoff.

[3]   Includes ($133,613) as of September 30, 2006 of losses attributable to loans, which were delinquent at the time of transfer to Ocwen.

### Prior Securitizations

In the past three years, although certain servicing performance tests or triggers have not been satisfied in several residential mortgage backed securities transactions in which Ocwen was serving as servicer, Ocwen has not been terminated as a servicer in any of those transactions, and Ocwen has not been terminated in any other residential mortgage-backed securities transaction due to

S-179

NOM-FHFA_05591508

a servicer default.  In the past three years, Ocwen has not failed to make any required advance with respect to any issuance of residential mortgage backed securities transactions.

**Ocwen's Policies and Procedures**

Upon boarding a mortgage loan, various types of information are automatically loaded into Ocwen's mortgage loan servicing system ("REALServicing").  Ocwen then makes all reasonable efforts to collect the contractual mortgage loan payments that are due by the borrower pursuant to the applicable mortgage loan documents and, consistent with the applicable servicing agreement, will follow such collection procedures that are customary with respect to comparable mortgage loans.

Ocwen's collection policy seeks to identify payment problems at the early stage of delinquency and, if necessary, to address such delinquency in order to preserve the equity of a pre-foreclosure mortgaged property.  Ocwen uses a consistent application, a proactive consulting approach, defined call strategies, and enhanced payment methods to assist the collection process.  On a monthly basis, borrowers are mailed their monthly statement in advance of the due date.  All borrowers can obtain loan information and make payments via web access (www.ocwen.com), as well as direct dial customer service.

Ocwen utilizes multiple strategies in order to identify payment problems while working with borrowers to make their monthly payment in a timely manner.  The potential for losses is mitigated using internal proprietary models to project performance and required advances and to assist in identifying workout options.  On a monthly basis the delinquency status is determined for each mortgage loan.  A collector then calls the borrower to make payment arrangements.  If payments have not been collected by the date a late charge becomes effective, a standard reminder letter is mailed to the borrower.

Subject to the limitations set forth in the applicable servicing agreement, Ocwen, in its discretion, may waive any assumption fees, late payment charges, or other charges in connection with the underlying mortgage loans, modify any term of a mortgage loan, consent to the postponement of strict compliance with any such terms, or grant indulgence to any borrower.

If a loan becomes non-performing, projections are conducted on a monthly basis using proprietary cash-flow models that help determine the recoverability of losses and the preservation of equity.  Various marketing scenarios are analyzed using an updated broker price opinion and appraisals to assist in projecting property cash flow.  If the projected loss severity reaches or exceeds 100% (proceeds less expenses) then future advances on the mortgage loan are deemed non-recoverable and a recommendation is then made to stop making such advances.  A more in-depth analysis is conducted to determine if charge-off is appropriate.

If reasonable collection efforts have not been successful, Ocwen will determine whether a foreclosure proceeding is appropriate.  Additional proprietary models are used to project future costs that may occur while completing foreclosure and ultimately liquidating the loan.

Ocwen complies with standard servicing practices in utilizing customary external vendors for such functions as obtaining property appraisals, broker price opinions, property preservation functions and legal counsel.  These functions are monitored and reviewed by Ocwen.

S-180

NOM-FHFA_05591509

Over the past three years, there have been no material changes in Ocwen's servicing policies and procedures.

**Servicing and Other Compensation and Payment of Expenses**

Each servicer will provide the servicing functions with respect to the related Mortgage Loans serviced by such servicer as set forth in the Pooling and Servicing Agreement or the Servicing Agreement, as applicable. Among other things, each servicer will be obligated, except under certain circumstances described in this prospectus supplement, to make P&I Advances with respect to the Mortgage Loans serviced by such servicer. In managing the liquidation of defaulted Mortgage Loans, each servicer will have sole discretion to take such action in maximizing recoveries to the certificateholders including, without limitation, selling defaulted Mortgage Loans and REO Properties as described in the Pooling and Servicing Agreement or the Servicing Agreement, as applicable. Pursuant to the terms of the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, the related servicer will be entitled to reimbursement for P&I Advances, servicing advances, servicing fees and applicable expenses on a priority basis from, among other things, late recoveries of principal and/or interest, Liquidation Proceeds and Insurance Proceeds from the Mortgage Loans. In addition, as provided in the Pooling and Servicing Agreement, Ocwen may withdraw from the related Custodial Account funds that are not included in the Interest Remittance Amount and the Principal Remittance Amount for a distribution date to reimburse itself for outstanding P&I Advances and servicing advances; provided that such amounts used by Ocwen to reimburse itself for outstanding P&I Advances and servicing advances shall be replaced by Ocwen by deposit in the related Custodial Account no later than the Servicer Remittance Date immediately following the Due Period or Prepayment Period for which such amounts relate. The master servicer will be required to monitor the performance of Ocwen, Equity One and SPS under the Pooling and Servicing Agreement and Wells Fargo Bank under the Servicing Agreement.

The principal compensation to be paid to each servicer in respect of the servicing activities performed by it with respect to the Mortgage Loans will be 0.50% per annum (the "Servicing Fee Rate") on the Stated Principal Balance of each Mortgage Loan (the "Servicing Fee"). As additional servicing compensation, each servicer is entitled to retain all assumption fees, late payment charges, and other miscellaneous servicing fees in respect of the Mortgage Loans serviced by such servicer to the extent collected from the borrowers, together with any interest or other income earned on funds held in the related Custodial Account (as defined in this prospectus supplement) maintained by such servicer and any escrow accounts. In addition, Ocwen is entitled to prepayment interest excess (as defined in the Pooling and Servicing Agreement).

In general, each servicer will be obligated to offset any Prepayment Interest Shortfall relating to voluntary prepayments in full on any distribution date with Compensating Interest on such distribution date as described in the definition of Compensating Interest under "Description of the Certificates—Glossary of Terms" in this prospectus supplement; *provided however* that the obligation of the related servicer with respect to the payment of Compensating Interest will be limited to the Servicing Fee payable to such servicer for such month. Each servicer is obligated to pay insurance premiums and other ongoing expenses associated with the Mortgage Loans serviced by such servicer incurred by it in connection with its responsibilities under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, and is entitled to reimbursement for these expenses as provided in the Pooling and Servicing Agreement or the Servicing Agreement, as applicable.

CONFIDENTIAL

NOM-FHFA_05591510

**Payments on Mortgage Loans; Deposits to Custodial Accounts**

Each servicer shall establish and maintain or cause to be maintained a separate trust account (each, a "Custodial Account") for the Mortgage Loans serviced by such servicer for the benefit of the certificateholders. The Custodial Accounts will be Eligible Accounts (as defined in the Pooling and Servicing Agreement or the Servicing Agreement, as applicable). Within two (2) business days of receipt by a servicer of amounts in respect of the Mortgage Loans (excluding amounts representing the Servicing Fee or other servicing compensation, reimbursement for P&I Advances and servicing advances and Insurance Proceeds to be applied to the restoration or repair of a related Mortgaged Property or similar items), such servicer will deposit such amounts in the related Custodial Account. Amounts so deposited may be invested in Permitted Investments maturing no later than one Business Day prior to the Servicer Remittance Date. All investment income on funds in a Custodial Account shall be for the benefit of related servicer.

Any one or more of the following obligations or securities held in the name of the trustee for the benefit of the related certificateholders will be considered a Permitted Investment (each a "Permitted Investment"):

(i)     obligations of the United States or any agency thereof, provided such obligations are backed by the full faith and credit of the United States;

(ii)     general obligations of or obligations guaranteed by any state of the United States or the District of Columbia receiving the highest long-term debt rating of each rating agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the certificates by each rating agency, as evidenced in writing;

(iii)     commercial or finance company paper which is then receiving the highest commercial or finance company paper rating of each rating agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the certificates by each rating agency, as evidenced in writing;

(iv)     certificates of deposit, demand or time deposits, or bankers' acceptances issued by any Depository institution or trust company incorporated under the laws of the United States or of any state thereof and subject to supervision and examination by federal and/or state banking authorities (including the trustee in its commercial banking capacity), provided that the commercial paper and/or long term unsecured debt obligations of such Depository institution or trust company are then rated one of the two highest long-term and the highest short-term ratings of each such rating agency for such securities, or such lower ratings as will not result in the downgrading or withdrawal of the rating then assigned to the certificates by any rating agency, as evidenced in writing;

(v)     demand or time deposits or certificates of deposit issued by any bank or trust company or savings institution to the extent that such deposits are fully insured by the FDIC;

(vi)     guaranteed reinvestment agreements issued by any bank, insurance company or other corporation containing, at the time of the issuance of such agreements, such terms and conditions as will not result in the downgrading or withdrawal of the rating then assigned to the certificates by each rating agency, as evidenced in writing;

S-182

NOM-FHFA_05591511

(vii)   repurchase obligations with respect to any security described in clauses (i) and (ii) above, in either case entered into with a Depository institution or trust company (acting as principal) described in clause (v) above;

(viii)   securities (other than stripped bonds, stripped coupons or instruments sold at a purchase price in excess of 115% of the face amount thereof) bearing interest or sold at a discount issued by any corporation incorporated under the laws of the United States or any state thereof which, at the time of such investment, have one of the two highest short term ratings of each rating agency (except if the rating agency is Moody's, such rating will be the highest commercial paper rating of Moody's for any such securities), or such lower rating as will not result in the downgrading or withdrawal of the rating then assigned to the certificates by each rating agency, as evidenced by a signed writing delivered by each rating agency;

(ix)   interests in any money market fund (including any such fund managed or advised by the trustee or any affiliate thereof) which at the date of acquisition of the interests in such fund and throughout the time such interests are held in such fund has the highest applicable short term rating by each rating agency or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the certificates by each rating agency, as evidenced in writing;

(x)   short term investment funds sponsored by any trust company or banking association incorporated under the laws of the United States or any state thereof (including any such fund managed or advised by the trustee or the master servicer or any affiliate thereof) which on the date of acquisition has been rated by each rating agency in their respective highest applicable rating category or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the certificates by each rating agency, as evidenced in writing; and

(xi)   such other investments having a specified stated maturity and bearing interest or sold at a discount acceptable to each rating agency and as will not result in the downgrading or withdrawal of the rating then assigned to the certificates by any rating agency, as evidenced by a signed writing delivered by each rating agency.

**Prepayment Interest Shortfalls and Compensating Interest**

When a principal prepayment in full is made on a Mortgage Loan, the mortgagor is charged interest only for the period from the Due Date of the preceding monthly payment up to the date of the prepayment, instead of for a full month. When a partial principal prepayment is made on a Mortgage Loan, the mortgagor is not charged interest on the amount of the prepayment for the month in which the prepayment is made. In addition, the application of the Relief Act to any Mortgage Loan could adversely affect, for an indeterminate period of time, the ability of the related servicer to collect full amounts of interest on such Mortgage Loans.

Each servicer is obligated to pay from its own funds up to the related amount of Compensating Interest only those interest shortfalls attributable to voluntary principal prepayments in full by the borrowers on the Mortgage Loans serviced by such servicer. Any interest shortfalls attributable to voluntary principal prepayments required to be funded but not funded by the servicers are required to be paid by the master servicer, but only to the extent that such amount does not exceed the aggregate master servicing fee (exclusive of the portion of such fee payable to the credit risk manager) for the Mortgage Loans for the applicable distribution date.  Accordingly, the effect of

S-183

NOM-FHFA_05591512

(i) any principal prepayments on the Mortgage Loans, to the extent that any resulting shortfall (a "Prepayment Interest Shortfall") exceeds any Compensating Interest payments by the servicers or the master servicer or (ii) any shortfalls resulting from the application of the Relief Act will be to reduce the aggregate amount of interest collected that is available for distribution to the holders of the related certificates. Any such shortfalls will be allocated among the certificates as provided under "Description of the Certificates–Distributions" in this prospectus supplement. See "Certain Legal Aspects of the Loans–Servicemembers Civil Relief Act" in the prospectus.

## P&I Advances

Subject to the limitations set forth in the following paragraph, if a scheduled payment on a Mortgage Loan which was due on a related due date and is delinquent (other than as a result of application of the Relief Act), the related servicer will be required to remit to the securities administrator for deposit in the Distribution Account (as defined in this prospectus supplement) from its own funds or from funds available in the Custodial Account relating to a subsequent due date, or some combination of its own funds and such amounts on the Servicer Remittance Date, an amount equal to such delinquency, net of the Servicing Fee (any such remittance, a "P&I Advance").

P&I Advances are required to be made only to the extent they are deemed by the related servicer to be recoverable from related late collections, Insurance Proceeds or Liquidation Proceeds from the Mortgage Loan as to which the unreimbursed P&I Advance was made. In addition, any P&I Advances previously made in respect of any Mortgage Loan that are deemed by the related servicer to be nonrecoverable from related late collections, Insurance Proceeds or Liquidation Proceeds may be reimbursed to the related servicer out of any funds in the related Custodial Account prior to distributions on the certificates. In addition, as provided in the Pooling and Servicing Agreement, Ocwen may withdraw from the related Custodial Account funds that are not included in the Interest Remittance Amount and the Principal Remittance Amount for a distribution date to reimburse itself for outstanding P&I Advances and servicing advances; provided that such amounts used by Ocwen to reimburse itself for outstanding P&I Advances and servicing advances shall be replaced by Ocwen by deposit in the related Custodial Account no later than the Servicer Remittance Date immediately following the Due Period or Prepayment Period for which such amounts relate. The purpose of making the P&I Advances is to maintain a regular cash flow to the certificateholders, rather than to guarantee or insure against losses. No servicer will be required to make any P&I Advances with respect to reductions in the amount of the monthly payments on any Mortgage Loan due to bankruptcy proceedings or the application of the Relief Act. In the event that a balloon Mortgage Loan is not paid in full on its maturity date, the related servicer will also be obligated to make advances with respect to the assumed monthly payments that would have been due on such Mortgage Loan based upon the original amortization schedule for such Mortgage Loan, unless the related servicer determines that the advance would not be recoverable. In addition and pursuant to the Pooling and Servicing Agreement, each servicer will be obligated to advance or cause to be advanced, from time to time, its own funds, or funds available in the related Custodial Account relating to a subsequent due date, as servicing advances on Mortgage Loans serviced by such servicer.

Failure of a servicer to make any required P&I Advance, which failure goes unremedied for the days specified in the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, would constitute an event of default under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable. Such event of default would obligate the master servicer, with respect to a default by Ocwen, Equity One or SPS, or the trustee, with respect

S-184

CONFIDENTIAL                                                                                     NOM-FHFA_05591513

to a default by Wells Fargo Bank, in its capacity as a servicer, as successor servicer, or any other successor servicer appointed by the master servicer or the trustee, as applicable, to make such P&I Advance subject to applicable law and its determination of recoverability from related late collections, Insurance Proceeds or Liquidation Proceeds from the related Mortgage Loan.

The Pooling and Servicing Agreement also provides that a servicer (or any successor thereto) may enter into a facility with any person which provides that such person may fund P&I Advances or servicing advances, although no such facility shall reduce or otherwise affect the obligations of such servicer (or any successor thereto) to fund such P&I Advances or servicing advances. Any P&I Advances or servicing advances funded by an advancing person will be reimbursed to the advancing person in the same manner as reimbursements would be made to such servicer (or any successor thereto).

**Modifications**

In instances in which a Mortgage Loan is in default or if default is reasonably foreseeable, and if determined by the related servicer to be in the best interest of the certificateholders, the related servicer may permit servicing modifications of the Mortgage Loan rather than proceeding with foreclosure. However, the related servicer's ability to perform servicing modifications will be subject to some limitations, including but not limited to the following. Any amounts added to the principal balance of the Mortgage Loan, or capitalized amounts added to the Mortgage Loan, will be required to be fully amortized over the remaining term, or the extended term, of the Mortgage Loan. All capitalizations are to be implemented in accordance with the related servicer's standards and may be implemented only by the related servicer for that purpose. The final maturity of any Mortgage Loan will not be extended beyond the assumed final distribution date. No servicing modification with respect to a Mortgage Loan will have the effect of reducing the mortgage rate below one half of the mortgage rate as in effect on the Cut off Date, but not less than the servicing fee rate. Further, the aggregate current principal balance of all Mortgage Loans subject to modifications can be no more than five percent (5%) of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date, but this limit may increase from time to time with the consent of the rating agencies.

Any advances made on any Mortgage Loan will be reduced to reflect any related servicing modifications previously made. The mortgage rate and net mortgage rate as to any Mortgage Loan will be deemed not reduced by any servicing modification, so that the calculation of the amount of current interest payable on the Senior Certificates and Subordinate Certificates as described in this prospectus supplement will not be affected by the servicing modification.

**Evidence as to Compliance**

The Pooling and Servicing Agreement and the Servicing Agreement will provide that not later than March 15 of each year, beginning with the first year after the year in which the Cut-off Date occurs, each party responsible for the servicing function will provide to the depositor and the master servicer a report on an assessment of compliance with the minimum servicing criteria established in Item 1122(d) of Regulation AB (the "AB Servicing Criteria"). The AB Servicing Criteria include specific criteria relating to the following areas: general servicing considerations, cash collection and administration, investor remittances and reporting, and pool asset administration. Such report will indicate that the AB Servicing Criteria were used to test compliance on a platform level basis and will set out any material instances of noncompliance.

S-185

The Pooling and Servicing Agreement and the Servicing Agreement will also provide that each party responsible for the servicing function will deliver along with its report on assessment of compliance, an attestation report from a firm of independent public accountants on the assessment of compliance with the AB Servicing Criteria.

The Pooling and Servicing Agreement and the Servicing Agreement will also provide for delivery to the master servicer and the securities administrator, not later than March 15 of each year, of a separate annual statement of compliance from each entity responsible for the servicing function to the effect that, to the best knowledge of the signing officer, the servicer has fulfilled in all material respects its obligations under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, throughout the preceding year or, if there has been a material failure in the fulfillment of any obligation, the statement shall specify such failure and the nature and status thereof. This statement may be provided as a single form making the required statements as to more than one pooling and servicing agreement or servicing agreement, as applicable.

Copies of the annual reports of assessment of compliance, attestation reports, and statements of compliance may be obtained by certificateholders without charge upon written request to the master servicer at the address of the master servicer set forth under "The Master Servicer, Securities Administrator and Custodian" in this prospectus supplement. These items will be filed with the Issuing Entity's annual report on Form 10-K, to the extent required under Regulation AB.

## THE MASTER SERVICER, SECURITIES ADMINISTRATOR AND CUSTODIAN

### General

The information set forth in the following paragraphs has been provided by the master servicer.

Wells Fargo Bank, N.A. ("Wells Fargo Bank") will act as master servicer and securities administrator under the Pooling and Servicing Agreement. Wells Fargo Bank is a national banking association and a wholly-owned subsidiary of Wells Fargo & Company. A diversified financial services company with approximately $483 billion in assets, 23+ million customers and 167,000+ employees as of September 30, 2006, Wells Fargo & Company is a U.S. bank holding company, providing banking, insurance, trust, mortgage and consumer finance services throughout the United States and internationally. Wells Fargo Bank provides retail and commercial banking services and corporate trust, custody, securities lending, securities transfer, cash management, investment management and other financial and fiduciary services. The depositor, the servicers and the sponsor may maintain banking and other commercial relationships with Wells Fargo Bank and its affiliates. Wells Fargo Bank maintains principal corporate trust offices located at 9062 Old Annapolis Road, Columbia, Maryland 21045-1951 (among other locations) and its office for certificate transfer services is located at Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479.

Wells Fargo Bank serves or may have served within the past two years as loan file custodian for various mortgage loans owned by the sponsor or an affiliate of the sponsor and anticipates that one or more of those mortgage loans may be included in the trust. The terms of any custodial agreement under which those services are provided by Wells Fargo Bank are customary for the mortgage-backed securitization industry and provide for the delivery, receipt, review and safekeeping of mortgage loan files.

S-186

CONFIDENTIAL

*Master Servicer.*  Wells Fargo Bank acts as master servicer pursuant to the Pooling and Servicing Agreement.  The master servicer is responsible for the aggregation of monthly servicer reports and remittances and for the oversight of the performance of the servicers under the terms of the Pooling and Servicing Agreement and the Servicing Agreement. In particular, the master servicer independently calculates monthly loan balances based on servicer data, compares its results to servicer loan-level reports and reconciles any discrepancies with the servicers.  The master servicer also reviews the servicing of defaulted loans for compliance with the terms of the Pooling and Servicing Agreement and the Servicing Agreement. In addition, upon the occurrence of certain servicer events of default under the terms of the Pooling and Servicing Agreement and the Servicing Agreement, the master servicer may be required to enforce certain remedies on behalf of the trust against such defaulting servicer.  Wells Fargo Bank has been engaged in the business of master servicing since June 30, 1995.  As of December 31, 2006, Wells Fargo Bank was acting as master servicer for approximately 1,427 series of residential mortgage-backed securities with an aggregate outstanding principal balance of approximately $748,854,000,000.

*Securities Administrator.* Under the terms of the Pooling and Servicing Agreement, Wells Fargo Bank is also responsible for securities administration, which includes pool performance calculations, distribution calculations and the preparation of monthly distribution reports.  As securities administrator, Wells Fargo Bank is responsible for the preparation and filing of all REMIC tax returns on behalf of the trust REMICs and the preparation of monthly reports on Form 10-D, current reports on Form 8-K and annual reports on Form 10-K that are required to be filed with the Securities and Exchange Commission on behalf of the trust.  Wells Fargo Bank has been engaged in the business of securities administration since June 30, 1995.  As of December 31, 2006, Wells Fargo Bank was acting as securities administrator with respect to more than $1,006,418,000,000 of outstanding residential mortgage-backed securities.

*Custodian.*  Wells Fargo Bank is acting as custodian of the mortgage loan files pursuant to the custodial agreement to be entered into among HSBC Bank USA, National Association, as trustee, Wells Fargo Bank, N.A., as custodian and the servicers.  In that capacity, Wells Fargo Bank is responsible to hold and safeguard the mortgage notes and other contents of the mortgage files on behalf of the trustee and the certificateholders.  Wells Fargo Bank maintains each mortgage loan file in a separate file folder marked with a unique bar code to assure loan-level file integrity and to assist in inventory management.  Files are segregated by transaction or investor.  Wells Fargo Bank has been engaged in the mortgage document custody business for more than 25 years.  Wells Fargo Bank maintains document custody facilities in its Minneapolis, Minnesota headquarters and in three regional offices located in Richfield, Minnesota, Irvine, California, and Salt Lake City, Utah.  As of December 31, 2006, Wells Fargo Bank maintains mortgage custody vaults in each of those locations with an aggregate capacity of over eleven million files.

**Master Servicing and Other Compensation and Payment of Expenses**

The principal compensation to be paid to the master servicer in respect of its master servicing activities for the certificates will be a master servicing fee equal to one-twelfth of the product of 0.0140% multiplied by the Stated Principal Balance of the Mortgage Loans as of the Due Date in the preceding calendar month. In addition, the master servicer will be entitled to any interest or other income earned on funds held in the Distribution Account (together, the "Master Servicing Compensation"), as set forth in the Pooling and Servicing Agreement. The master servicing fee includes securities administrator, custodian, paying agent, certificate registrar and credit risk manager fees.

S-187

CONFIDENTIAL

The monthly fee payable to the trustee for the performance of its obligations under the Pooling and Servicing Agreement will be paid by the master servicer from its fee. The expenses of the custodian and the trustee will be paid out of the trust fund prior to making payments to the certificateholders.

In the event that a servicer fails to pay the amount of any Prepayment Interest Shortfall required to be paid on any distribution date, the master servicer shall pay such amount up to the aggregate master servicing compensation (exclusive of the portion of such fee payable to the credit risk manager) payable to the master servicer on such distribution date.

The master servicer shall not resign except upon a determination that the master servicer's duties are no longer permissible under applicable law.  The master servicer may sell and assign its rights and delegate its duties and obligations subject to the conditions set forth in the Pooling and Servicing Agreement.

**The Distribution Account**

The securities administrator will establish a non-interest bearing trust account (the "Distribution Account") into which will be deposited amounts remitted to it by the servicers for distribution to the certificateholders on each distribution date and payment of certain fees and expenses of the trust. The Distribution Account will be an Eligible Account (as defined in the Pooling and Servicing Agreement). Amounts on deposit therein may be invested in Permitted Investments (as defined under "Servicing – Payments on Mortgage Loans; Deposits to Custodial Accounts" in this prospectus supplement) maturing on or before the business day prior to the related distribution date unless such Permitted Investments are invested in investments managed or advised by the securities administrator or an affiliate thereof, in which case such Permitted Investments may mature on the related distribution date.  All investment income on funds in the Distribution Account shall be for the benefit of the master servicer.  Any losses resulting from such investments are required to be reimbursed to the Distribution Account by the master servicer out of its own funds.

**Transfer of Master Servicing**

The master servicer may sell and assign its rights and delegate its duties and obligations in its entirety as master servicer under the Pooling and Servicing Agreement; provided, however, that: (i) the purchaser or transferee accept in writing such assignment and delegation and assume the obligations of the master servicer under the Pooling and Servicing Agreement (a) shall have a net worth of not less than $15,000,000 (unless otherwise approved by each rating agency pursuant to clause (ii) below); (b) shall be reasonably satisfactory to the trustee (as evidenced in a writing signed by the trustee); and (c) shall execute and deliver to the trustee an agreement, in form and substance reasonably satisfactory to the trustee, which contains an assumption by such Person of the due and punctual performance and observance of each covenant and condition to be performed or observed by it as master servicer under the Pooling and Servicing Agreement; (ii) each rating agency shall be given prior written notice of the identity of the proposed successor to the master servicer and each rating agency's rating of the certificates in effect immediately prior to such assignment, sale and delegation will not be downgraded, qualified or withdrawn as a result of such assignment, sale and delegation, as evidenced by a letter to such effect delivered to the master servicer and the trustee; and (iii) the master servicer assigning and selling the master servicing shall deliver to the trustee an officer's certificate and an opinion of independent counsel, each stating that all conditions precedent to such action under the Pooling and Servicing Agreement have been completed and such action is

CONFIDENTIAL

NOM-FHFA_05591517

permitted by and complies with the terms of the Pooling and Servicing Agreement. No such assignment or delegation shall affect any liability of the master servicer arising out of acts or omissions prior to the effective date thereof.

## POOLING AND SERVICING AGREEMENT

**General**

The certificates will be issued under the Pooling and Servicing Agreement, a form of which is filed as an exhibit to the registration statement. A Current Report on Form 8-K relating to the certificates containing a copy of the Pooling and Servicing Agreement as executed will be filed by the depositor with the Securities and Exchange Commission ("SEC") following the initial issuance of the certificates. The trust fund created under the Pooling and Servicing Agreement will consist of (i) all of the depositor's right, title and interest in the Mortgage Loans, the related Mortgage Notes, mortgages and other related documents; (ii) all payments on or collections in respect of the Mortgage Loans due after the Cut-off Date, together with any proceeds of the Mortgage Loans; (iii) any Mortgaged Properties acquired on behalf of certificateholders by foreclosure or by deed in lieu of foreclosure, and any revenues received on these Mortgaged Properties; (iv) the rights of the trustee under all insurance policies required to be maintained under the Pooling and Servicing Agreement and (v) the rights of the depositor with respect to the Mortgage Loans under the mortgage loan purchase agreement and the Servicing Agreement. Reference is made to the prospectus for important information in addition to that set forth in this prospectus supplement regarding the trust fund, the terms and conditions of the Pooling and Servicing Agreement, the Servicing Agreement and the Offered Certificates. The depositor will provide to a prospective or actual certificateholder without charge, on written request, a copy, without exhibits, of the Pooling and Servicing Agreement. Requests should be addressed to Nomura Home Equity Loan, Inc., Two World Financial Center, Building B, 21st Floor, New York, New York 10281.

On the Closing Date, the depositor will transfer to the trust all of its right, title and interest in and to each Mortgage Loan (other than the servicing rights with respect to the Mortgage Loans which shall be retained by (i) the servicer who owns the servicing rights on the Mortgage Loans or (ii) the sponsor, in the event the sponsor comes into ownership of any such servicing rights), the related Mortgage Note, mortgage, assignment of mortgage in recordable form to the trustee and other related documents (collectively, the "Related Documents"), including all scheduled payments with respect to each such Mortgage Loan due after the Cut-off Date. The trustee, concurrently with such transfer, will deliver the certificates to the depositor. Each Mortgage Loan transferred to the trust will be identified on a schedule (the "Mortgage Loan Schedule") delivered to the trustee pursuant to the Pooling and Servicing Agreement. The Mortgage Loan Schedule will include information such as the outstanding principal balance of each Mortgage Loan as of the Cut-off Date, its Mortgage Rate as well as other information with respect to each Mortgage Loan.

The Pooling and Servicing Agreement will require that, within the time period specified therein, the depositor will deliver or cause to be delivered to the trustee (or a custodian, as the trustee's agent for such purpose) the Mortgage Notes endorsed to the trustee on behalf of the certificateholders and the Related Documents. In lieu of delivery of original mortgages or Mortgage Notes, if such original is not available or lost, the depositor may deliver or cause to be delivered true and correct copies thereof, or, with respect to a lost Mortgage Note, a lost note affidavit. The assignments of mortgage are generally required to be recorded by or on behalf of the depositor in the appropriate offices for real property records, except (i) in states as to which an opinion of counsel is

CONFIDENTIAL

delivered to the effect that such recording is not required to protect the trustee's interest in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the depositor or the sponsor, or (ii) with respect to any Mortgage Loan electronically registered through the Mortgage Electronic Registration Systems, Inc.

On or prior to the Closing Date, the custodian on behalf of the trustee will review the Mortgage Loans and the Related Documents pursuant to the custodial agreement to be entered into among the custodian, the servicer and the trustee, and if any Mortgage Loan or Related Document is found to be defective in any material respect and such defect is not cured by the sponsor within 90 days following notification thereof to the sponsor by the custodian or the servicer, the sponsor will be obligated to either (i) substitute for such Mortgage Loan a Qualified Substitute Mortgage Loan (as defined below); however, such substitution is permitted only within two years of the Closing Date and may not be made unless an opinion of counsel is provided to the effect that such substitution will not disqualify any of the REMICs (as defined in the Pooling and Servicing Agreement) as a REMIC or result in a prohibited transaction tax under the Internal Revenue Code or (ii) purchase such Mortgage Loan at a price (the "Purchase Price") equal to the outstanding principal balance of such Mortgage Loan as of the date of purchase, plus 30 days' accrued interest thereon and all costs and damages incurred by the trust in connection with any violation by such Mortgage Loan of any predatory or abusive lending law prior to such purchase, computed at the Mortgage Rate through the end of the calendar month in which the purchase is effected, plus the amount of any unreimbursed P&I Advances and servicing advances made by the related servicer or the master servicer.  The Purchase Price will be required to be remitted to the related servicer for deposit in the related Custodial Account on or prior to the next succeeding determination date after such obligation arises. The obligation of the sponsor to repurchase or substitute for a Deleted Mortgage Loan (as defined below) is the sole remedy regarding any defects in the Mortgage Loans and Related Documents available to the certificateholders.

In connection with the substitution of a Qualified Substitute Mortgage Loan, the sponsor will be required to remit to the related servicer for deposit in the related Custodial Account on or prior to the next succeeding determination date after such obligation arises an amount (the "Substitution Shortfall Amount") equal to the excess of the outstanding principal balance of the related Deleted Mortgage Loan over the outstanding principal balance of such Qualified Substitute Mortgage Loan.

A "Qualified Substitute Mortgage Loan" is a mortgage loan substituted for a Deleted Mortgage Loan which must, on the date of such substitution, (i) have an outstanding principal balance (or in the case of a substitution of more than one mortgage loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance), not in excess of the outstanding principal balance of the Deleted Mortgage Loan; (ii) have a Mortgage Rate not less than the Mortgage Rate of the Deleted Mortgage Loan and not more than 1% in excess of the Mortgage Rate of such Deleted Mortgage Loan; (iii) have the same due date as the Deleted Mortgage Loan; (iv) have a remaining term to maturity not more than one year earlier and not later than the remaining term to maturity of the Deleted Mortgage Loan; (v) comply with each representation and warranty as to the Mortgage Loans set forth in the mortgage loan purchase agreement (deemed to be made as of the date of substitution); (vi) be of the same or better credit quality as the Mortgage Loan being replaced; (vii) have the same lien priority on the related mortgaged property as the Mortgage Loan being replaced; and (viii) satisfy certain other conditions specified in the Pooling and Servicing Agreement.

CONFIDENTIAL                                                                                    NOM-FHFA_05591519

The sponsor will make certain representations and warranties as to the accuracy in all material respects of certain information furnished to the trustee with respect to each Mortgage Loan. In addition, the sponsor will represent and warrant, as of the Closing Date, that, among other things: (i) at the time of transfer to the depositor, the sponsor has transferred or assigned all of its right, title and interest in each Mortgage Loan and the Related Documents, free of any lien; (ii) each Mortgage Loan complied, at the time of origination, in all material respects with applicable local, state and federal laws including, but not limited to all applicable predatory and abusive lending laws; (iii) the Mortgage Loans are not subject to the requirements of the Home Ownership and Equity Protection Act of 1994 and no Mortgage Loan is classified and/or defined as a "high cost", "covered" or "predatory" loan under any other federal, state or local law or ordinance or regulation including, but not limited to, the States of Georgia or North Carolina, or the City of New York; (iv) no proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies as part of the origination of, or as a condition to closing, such Mortgage Loan; (v) no Mortgage Loan has a Prepayment Charge longer than five years after its date of origination; and (vi) to the best of the sponsor's knowledge, the related servicer has accurately and fully reported its borrower credit files to each of the credit repositories in a timely manner. Upon discovery of a breach of any such representation and warranty which materially and adversely affects the interests of the certificateholders in the related Mortgage Loan and Related Documents, the sponsor will have a period of 90 days after the earlier of discovery or receipt of written notice of the breach to effect a cure; provided, however that any breach of the representations and warranties set forth in clauses (ii), (iii), (iv), (v) and (vi) above with respect to any Group I Mortgage Loan shall be deemed to materially and adversely affect the interests of the certificateholders in the related Mortgage Loan. If the breach cannot be cured within the 90-day period, the sponsor will be obligated to (i) substitute for such Deleted Mortgage Loan a Qualified Substitute Mortgage Loan or (ii) purchase such Deleted Mortgage Loan from the trust.  The same procedure and limitations that are set forth above for the substitution or purchase of Deleted Mortgage Loans as a result of deficient documentation relating thereto will apply to the substitution or purchase of a Deleted Mortgage Loan as a result of a breach of a representation or warranty in the mortgage loan purchase agreement that materially and adversely affects the interests of the certificateholders.  The depositor will file the mortgage loan purchase agreement as an exhibit to the Pooling and Servicing Agreement with the Securities and Exchange Commission in a Current Report on Form 8-K.

Mortgage Loans required to be transferred to the sponsor as described in the preceding paragraphs are referred to as "Deleted Mortgage Loans."

**Amendment**

The Pooling and Servicing Agreement may be amended by the sponsor, the depositor, the master servicer, the securities administrator, the credit risk manager, Ocwen, Equity One, SPS (or any successor to any such servicer) and the trustee, with the consent of the Swap Provider (such consent not to be unreasonably withheld) without the consent of certificateholders,

- to cure any ambiguity,

- to correct or supplement any provision therein,

- to make any revisions with respect to the provisions relating to the requirements of Regulation AB, or

S-191

NOM-FHFA_05591520

- to make any other revisions with respect to matters or questions arising under the Pooling and Servicing Agreement which are not inconsistent with the provisions thereof,

provided that such action will not adversely affect in any material respect the interests of any certificateholder. An amendment will be deemed not to adversely affect in any material respect the interests of the certificateholders if the person requesting such amendment obtains a letter from each rating agency stating that such amendment will not result in the downgrading or withdrawal of the respective ratings then assigned to any class of certificates.

In addition, the Pooling and Servicing Agreement may be amended without the consent of certificateholders to modify, eliminate or add to any of its provisions to such extent as may be necessary to maintain the qualification of the trust fund's REMIC elections, provided that the trustee has received an opinion of counsel to the effect that such action is necessary or helpful to maintain such qualification. In addition, the Pooling and Servicing Agreement may be amended by the sponsor, the depositor, the master servicer, the credit risk manager, Ocwen, Equity One, SPS (or any successor to any such servicer), the securities administrator and the trustee with the consent of the holders of a majority in interest of each class of certificates affected thereby for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Pooling and Servicing Agreement or of modifying in any manner the rights of the certificateholders; provided, however, that no such amendment may

- reduce in any manner the amount of, or delay the timing of, payments required to be distributed on any certificate without the consent of the holder of such certificate;

- cause any trust fund REMIC to fail to qualify as a REMIC for federal tax purposes;

- reduce the percentage of the holders of the certificates the affected class which are required to consent to any such amendment, without the consent of the holders of all certificates of such class.

The trustee will not be required to consent to any amendment to the Pooling and Servicing Agreement without having first received an opinion of counsel to the effect that such amendment is permitted under the terms of the Pooling and Servicing Agreement and will not cause the trust fund's REMIC elections to fail to qualify as REMICs for federal tax purposes.

**Voting Rights**

As of any date of determination,

- holders of the certificates, other than the Class X, Class P and Residual Certificates, will be allocated 98.00% of all voting rights, allocated among such certificates in proportion to their respective outstanding Certificate Principal Balances;

- holders of the Class X Certificates and Class P Certificates will each be allocated 1% of all voting rights; and

S-192

NOM-FHFA_05591521

- holders of the Residual Certificates will not be allocated any voting rights.

Voting rights will be allocated among the certificates of each such class in accordance with their respective percentage interests. The initial owner of the Residual Certificates will be Nomura Holding America, Inc.

## Optional Purchase of Certain Loans

As to any Mortgage Loan which is delinquent in payment by 91 days or more, the sponsor may, at its option, purchase such Mortgage Loan at a price equal to the sum of (i) 100% of the Stated Principal Balance thereof as of the date of such purchase plus (ii) 30 days' accrued interest thereon at the applicable Net Mortgage Rate, plus any portion of the Servicing Fee, the fee payable to the master servicer, servicing advances and P&I Advances payable to the servicer or the master servicer, as applicable, of the Mortgage Loan, plus (iii) any costs and damages of the trust incurred in connection with any violation by such Mortgage Loan of any abusive or predatory lending law, including any expenses incurred by the trustee with respect to such Mortgage Loan prior to the purchase thereof.

In addition, the sponsor may, at its option, purchase any Mortgage Loan from the trust if the first scheduled payment due for such Mortgage Loan is on or subsequent to the Cut-off Date and such first scheduled payment is not made within thirty (30) days of the related due date. Such purchase will be made at a price equal to the purchase price described in the prior paragraph.

## Optional Termination

The master servicer will have the right to purchase all remaining Mortgage Loans and related REO Properties and thereby effect early retirement of all of the certificates on any distribution date if on such distribution date the aggregate Stated Principal Balance of the Mortgage Loans and related REO Properties remaining in the trust fund is reduced to less than or equal to 10% of the aggregate outstanding principal balance of the Mortgage Loans as of the Cut-off Date. If the master servicer fails to exercise such option, Ocwen (each of the master servicer and Ocwen, the "Terminator") will have the right to purchase all remaining Mortgage Loans and related REO Properties and thereby effect early retirement of all of the certificates on any distribution date if on such distribution date the aggregate Stated Principal Balance of the Mortgage Loans and related REO Properties remaining in the trust fund is reduced to less than or equal to 5% of the aggregate outstanding principal balance of the Mortgage Loans as of the Cut-off Date. In the event that the Terminator exercises such option it will effect such purchase at a price equal to the sum of

- 100% of the Stated Principal Balance of each Mortgage Loan, other than in respect of any related REO Property, plus 30 days' accrued interest thereon at the applicable Mortgage Rate,

- the appraised value of any related REO Property, up to the Stated Principal Balance of the Mortgage Loan, plus accrued interest thereon at the applicable Mortgage Rate, and

- any unreimbursed costs and expenses of the trustee, securities administrator, the custodian, the servicers and the master servicer and the principal portion of any unreimbursed advances previously incurred by the servicer or the

S-193

NOM-FHFA_05591522

master servicer in the performance of their servicing obligations and any Swap Termination Payment payable to the Swap Provider not due to a Swap Provider Trigger Event pursuant to the Interest Rate Swap Agreement and to the extent not paid by the securities administrator from any upfront payment received pursuant to any replacement interest rate swap agreement that may be entered into by the Supplemental Interest Trust Trustee.

Notwithstanding the foregoing, neither the master servicer nor Ocwen Loan Servicing, LLC shall be entitled to exercise its optional termination right to the extent that the depositor enters into a net interest margin transaction which includes the Class X Certificates or Class P Certificates and the notes issued pursuant to such net interest margin transaction are outstanding on the date on which the master servicer or Ocwen Loan Servicing, LLC intends to exercise its optional termination right.

Proceeds from such purchase will be distributed to the certificateholders in the priority described in this prospectus supplement under "Description of the Certificates— Distributions." The proceeds from any such distribution may not be sufficient to distribute the full amount to which each class of certificates is entitled if the purchase price is based in part on the appraised value of any related REO Property and such appraised value is less than the Stated Principal Balance of the related Mortgage Loan. Any purchase of the Mortgage Loans and related REO Properties will result in an early retirement of the certificates.

The securities administrator will be required to give notice of any termination to the certificateholders, upon which the certificateholders shall surrender their certificates to the securities administrator for payment of the final distribution and cancellation. Such notice shall be given by letter, mailed not earlier than the 15th day and not later than the 25th day of the month next preceding the month of such final distribution, and shall specify (i) the distribution date upon which final payment of the related certificates will be made upon presentation and surrender of such certificates at the office of the securities administrator therein designated, (ii) the amount of any such final payment and (iii) that the record date otherwise applicable to such distribution date is not applicable, payments being made only upon presentation and surrender of the certificates at the office of the securities administrator therein specified.

In the event such notice is given in connection with the purchase of all of the Mortgage Loans by the Terminator, the Terminator will be required to deliver to the securities administrator for deposit in the Distribution Account not later than the business day prior to the distribution date on which the final distribution on the certificates an amount in immediately available funds equal to the termination price described above. The securities administrator will be required to remit to the servicers, the master servicer, the trustee and the custodian from such funds deposited in the Distribution Account (i) any amounts which the servicers or the master servicer would be permitted to withdraw and retain from the Custodial Accounts or the Distribution Account, as applicable, as if such funds had been deposited therein (including all unpaid Servicing Fees, master servicing fees and all outstanding P&I Advances and Servicing Advances), (ii) any other amounts otherwise payable by the securities administrator to the master servicer, the trustee, the custodian and the servicer from amounts on deposit in the Distribution Account pursuant to the terms of the Pooling and Servicing Agreement and (iii) any Swap Termination Payment payable to the Swap Provider not due to a Swap Provider Trigger Event pursuant to the Interest Rate Swap Agreement and to the extent not paid by the securities administrator from any upfront payment received pursuant to any replacement interest rate swap agreement that may be entered into by the

S-194

NOM-FHFA_05591523

Supplemental Interest Trust Trustee prior to making any final distributions. Upon certification to the trustee by the securities administrator of the making of such final deposit, the trustee will be required to promptly release or cause to be released to the Terminator the Mortgage Files for the Mortgage Loans and the trustee will surrender all assignments, endorsements and other instruments delivered to it and necessary to effectuate such transfer.

Upon presentation of the certificates by the certificateholders on the final distribution date, the securities administrator will be required to distribute to each certificateholder so presenting and surrendering its certificates the amount otherwise distributable on such distribution date in respect of the certificates so presented and surrendered. Any funds not distributed to any certificateholder(s) being retired on such distribution date because of the failure of such certificateholders to tender their certificates shall, on such date, be set aside and held in trust and credited to the account of the appropriate non-tendering certificateholders. If any certificates as to which notice has been given shall not have been surrendered for cancellation within six months after the time specified in such notice, the securities administrator shall mail a second notice to the remaining non-tendering certificateholders to surrender their certificates for cancellation in order to receive the final distribution with respect thereto. If within one year after the second notice all such certificates shall not have been surrendered for cancellation, the securities administrator shall, directly or through an agent, mail a final notice to the remaining non-tendering certificateholders concerning surrender of their certificates. The costs and expenses of maintaining the funds in trust and of contacting such certificateholders shall be paid out of the assets remaining in the trust funds. If within one (1) year after the final notice any such certificates shall not have been surrendered for cancellation, the securities administrator shall pay to the depositor all such amounts, and all rights of non-tendering certificateholders in or to such amounts shall thereupon cease. No interest shall accrue or be payable to any certificateholder on any amount held in trust by the securities administrator as a result of such certificateholder's failure to surrender its certificate(s) on the related final distribution date for final payment thereof. Any such amounts held in trust by the securities administrator shall be held uninvested in an Eligible Account.

In the event that the Terminator purchases all the Mortgage Loans or the final payment on or other liquidation of the last Mortgage Loan, the trust fund will be terminated in accordance with the following additional requirements:

(i)     The securities administrator shall specify the first day in the 90-day liquidation period in a statement attached to each Trust REMIC's final Tax Return pursuant to Treasury regulation Section 1.860F-1 and shall satisfy all requirements of a qualified liquidation under Section 860F of the Code and any regulations thereunder, as evidenced by an opinion of counsel obtained by and at the expense of the Terminator;

(ii)     During such 90-day liquidation period and, at or prior to the time of making of the final payment on the outstanding certificates, the trustee shall sell all of the assets of the related REMIC to the Terminator for cash; and

(iii)     At the time of the making of the final payment on the outstanding certificates, the securities administrator shall distribute or credit, or cause to be distributed or credited, to the holders of the residual certificates all cash on hand in the trust fund (other than cash retained to meet claims), and the trust fund shall terminate at that time.

S-195

At the expense of the Terminator (or, if the trust fund is being terminated as a result of the last scheduled distribution date, at the expense of the trust fund), the Terminator shall prepare or cause to be prepared the documentation required in connection with the adoption of a plan of liquidation of each related REMIC.

By their acceptance of certificates, the holders thereof hereby agree to authorize the securities administrator to specify the 90-day liquidation period for each REMIC, which authorization shall be binding upon all successor certificateholders.

## Events of Default

Events of default with respect to a servicer under the Pooling and Servicing Agreement or the Servicing Agreement include, without limitation:

- any failure by such servicer (or any successor servicer) to remit to the securities administrator any payment, including an advance required to be made by the servicer under the terms of the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, which continues unremedied for two business days after the day on which written notice of such failure is given by the master servicer;

- any failure by such servicer (or any successor servicer) to observe or perform in any material respect any other of its covenants or agreements, the breach of which has a material adverse effect and which continues unremedied for thirty days after the giving of written notice of such failure to such servicer (or any successor servicer) by the trustee or the depositor, or to such servicer (or any successor servicer) and the trustee by the holders of certificates evidencing not less than 25% of the voting rights evidenced by the certificates;

- such servicer (or any successor servicer) shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, made an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations;

- a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding up or liquidation of its affairs, shall have been entered against such servicer and such decree or order shall have remained in force undischarged or unstayed for a period of sixty days; or

- such servicer fails to deliver the annual compliance statements and accountant's report as required pursuant to the Pooling and Servicing Agreement or the Servicing Agreement, as applicable.

S-196

NOM-FHFA_05591525

Events of default with respect to the master servicer under the Pooling and Servicing Agreement include, without limitation:

- any failure on the part of the master servicer to observe or perform in any material respect any of the covenants or agreements on the part of the master servicer contained in this Pooling and Servicing Agreement, or the breach by the master servicer of any representation and warranty contained in the pooling and servicing agreement, which continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the master servicer by the depositor or the trustee or to the master servicer, the depositor and the trustee by the holders of certificates entitled to at least twenty-five percent (25%) of the voting rights evidenced by the certificates; or

- a decree or order of a court or agency or supervisory authority having jurisdiction in the premises in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceeding, or for the winding-up or liquidation of its affairs, shall have been entered against the master servicer and such decree or order shall have remained in force undischarged or unstayed for a period of sixty (60) days; or

- the master servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to it or of or relating to all or substantially all of its property; or

- the master servicer fails to deliver the any statements or reports with respect to the requirements of Regulation AB as required pursuant to the Pooling and Servicing Agreement; or

- the master servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations.

**Rights Upon Event of Default**

Upon the occurrence and continuance of an event of default with respect to the payment obligations of Ocwen, Equity One or SPS under the Pooling and Servicing Agreement, the master servicer shall terminate all the rights and obligations of such servicer under the Pooling and Servicing Agreement, and in and to the related Mortgage Loans. Upon the occurrence and continuance of an event of default with respect to the payment obligations of Wells Fargo Bank under the Servicing Agreement, the trustee will be required to terminate all the rights and obligations of Wells Fargo Bank under the Servicing Agreement, and in and to the related Mortgage Loans. In addition, upon the occurrence and continuance of any other event of default with respect to Ocwen, Equity One or SPS under the Pooling and Servicing Agreement, the master servicer may, and at the direction of the holders of certificates representing not less than 25% of the voting rights shall,

S-197

NOM-FHFA_05591526

terminate all the rights and obligations of such servicer under the Pooling and Servicing Agreement and in and to the related Mortgage Loans. Upon the occurrence and continuance of any other event of default with respect to Wells Fargo Bank under the Servicing Agreement, the trustee may, and at the direction of the holders of certificates representing not less than 25% of the voting rights will be required to, terminate all the rights and obligations of Wells Fargo Bank under the Servicing Agreement, and in and to the related Mortgage Loans.  Upon the termination of a servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, the master servicer or the trustee, as applicable, shall succeed to all of the responsibilities and duties of the terminated servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, including the obligation to make any P&I Advance required to be made by the terminated servicer on the distribution date immediately following the occurrence of such event of default with respect to the terminated servicer subject to applicable law and the master servicer's or the trustee's determination of recoverability thereof; *provided, however*, that neither the master servicer nor the trustee shall have any obligation whatsoever with respect to any liability incurred by the terminated servicer at or prior to the termination of such servicer with respect to any default, and there will be a period of transition, not to exceed 90 days, before the servicing functions can be transferred to a successor servicer.  As compensation therefor, the master servicer or the trustee, as applicable, shall be entitled to all funds relating to the Mortgage Loans which the terminated servicer would have been entitled to retain if the terminated servicer had continued to act as such, except for those amounts due the terminated servicer as reimbursement for advances previously made or expenses previously incurred. Notwithstanding the above, the master servicer or the trustee, as applicable, may, if it shall be unwilling so to act, or shall, if it is legally unable so to act, appoint, or petition a court of competent jurisdiction to appoint, any established housing and home finance institution which is a Fannie Mae or Freddie Mac approved servicer as the successor to the terminated servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, in the assumption of all or any part of the responsibilities, duties or liabilities of the terminated servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable. Pending appointment of a successor to the terminated servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, the master servicer or the trustee, as applicable, shall act in such capacity as provided under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable.  In connection with such appointment and assumption, the master servicer or the trustee, as applicable, may make such arrangements for the compensation of such successor out of payments on the related Mortgage Loans as it and such successor shall agree; *provided, however*, that no such compensation shall be in excess of the Servicing Fee payable to such servicer. No assurance can be given that termination of the rights and obligations of the terminated servicer under the Pooling and Servicing Agreement or the Servicing Agreement, as applicable, would not adversely affect the servicing of the related Mortgage Loans, including the delinquency experience of the related Mortgage Loans. The costs and expenses of the trustee and the master servicer in connection with the termination of the terminated servicer, appointment of a successor servicer and the transfer of servicing, if applicable, to the extent not paid by the terminated servicer, will be paid by the trust fund from amounts available in the Distribution Account as provided in the Pooling and Servicing Agreement.

Upon the occurrence and continuance of an event of default with respect to the master servicer, the depositor or the trustee may, and at the written direction of the holders of certificates evidencing ownership of not less than 51% of the trust, the trustee shall terminate all of the rights and obligations of the master servicer in its capacity as master servicer under the Pooling and Servicing Agreement, to the extent permitted by law, and in and to the Mortgage Loans and the proceeds thereof. The trustee shall automatically succeed to all of the responsibilities and duties of the master

S-198

 NOM-FHFA_05591527

servicer under the Pooling and Servicing Agreement. Notwithstanding the foregoing, the trustee may, if it shall be unwilling so to act, or shall, if it is legally unable so to act, appoint, or petition a court of competent jurisdiction to appoint, a successor master servicer in accordance with the Pooling and Servicing Agreement. The costs and expenses of the trustee in connection with the termination of the terminated master servicer, will be paid by the trust fund from amount available in the Distribution Account as provided in the Pooling and Servicing Agreement.

No certificateholder, solely by virtue of such holder's status as a certificateholder, will have any right under the Pooling and Servicing Agreement to institute any proceeding with respect thereto, unless such holder previously has given to the trustee written notice of the continuation of an event of default and unless the holders of certificates having not less than 25% of the voting rights evidenced by the certificates have made written request to the trustee to institute such proceeding in its own name as trustee thereunder and have offered to the trustee indemnity satisfactory to it and the trustee for 60 days has neglected or refused to institute any such proceeding.

The Pooling and Servicing Agreement provides that Ocwen may pledge its servicing rights under the Pooling and Servicing Agreement to one or more lenders. No such pledge will reduce or otherwise affect Ocwen's servicing obligations under the Pooling and Servicing Agreement. Upon a servicer default by Ocwen under the Pooling and Servicing Agreement, the master servicer may remove Ocwen as the servicer of the related Mortgage Loans and the master servicer will, or under certain circumstances Ocwen or its designee may, appoint a successor servicer. In any event, the successor servicer must meet the requirements for successor servicers under the Pooling and Servicing Agreement. In the event Ocwen is removed as the servicer of the related Mortgage Loans under the Pooling and Servicing Agreement, its servicing rights will be transferred to any successor servicer, and none of the trust, the depositor, the master servicer, the trustee or the securities administrator will have any right or claim to the portion of Ocwen's servicing rights pledged, or to any unreimbursed P&I Advances or Servicing Advances of Ocwen that were pledged.

**The Trustee**

HSBC Bank USA, National Association, a national banking association, will be the trustee under the Pooling and Servicing Agreement. The depositor, the servicers, the master servicer and securities administrator may maintain other banking relationships in the ordinary course of business with the trustee. The trustee's corporate trust office is located at 452 Fifth Avenue, New York, New York 10018, Attention: NHEL 2007-2 or at such other address as the trustee may designate from time to time. The Trustee can be contacted by telephone at (212) 525-1367.

HSBC Bank USA, National Association, has been, and currently is, serving as trustee for numerous securities transactions involving similar pool assets to those found in this transaction.

The trustee, the Basis Risk Cap Provider, the Swap Provider and the Interest Rate Cap Provider are the same entity.

The trustee, prior to the occurrence of an Event of Default with respect to the master servicer and after the curing or waiver of all Events of Default with respect to the master servicer which may have occurred will undertake to perform such duties and only such duties as are specifically set forth in the Pooling and Servicing Agreement as duties of the trustee, including:

CONFIDENTIAL

1.   Upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments which are specifically required to be furnished to the trustee pursuant to the Pooling and Servicing Agreement, the trustee (or its custodian, if applicable) shall examine them to determine whether they are in the required form; provided, however, that the trustee shall not be responsible for the accuracy or content of any resolution, certificate, statement, opinion, report, document, order or other instrument furnished hereunder; provided, further, that the trustee shall not be responsible for the accuracy or verification of any calculation provided to it pursuant to the Pooling and Servicing Agreement.

2.   The trustee shall promptly remit to the servicer any complaint, claim, demand, notice or other document (collectively, the "Notices") delivered to the trustee as a consequence of the assignment of any Mortgage Loan hereunder and relating to the servicing of the Mortgage Loans; provided than any such notice (i) is delivered to the trustee at its corporate trust office, (ii) contains information sufficient to permit the trustee to make a determination that the real property to which such document relates is a Mortgaged Property (as defined in the Pooling and Servicing Agreement). The trustee shall have no duty hereunder with respect to any notice it may receive or which may be alleged to have been delivered to or served upon it unless such notice is delivered to it or served upon it at its corporate trust office and such notice contains the information required pursuant to clause (ii) of the preceding sentence.

3.   Except for those actions that the trustee is required to take under the Pooling and Servicing Agreement, the trustee shall not have any obligation or liability to take any action or to refrain from taking any action in the absence of written direction as provided in the Pooling and Servicing Agreement.

If an Event of Default with respect to the master servicer has occurred and has not been cured or waived, the trustee shall exercise such of the rights and powers vested in it by the Pooling and Servicing Agreement, using the same degree of care and skill in their exercise, as a prudent person would exercise under the circumstances in the conduct of his own affairs.  Such rights and powers may include:

1.   Execute and deliver, on behalf of the master servicer as attorney-in-fact or otherwise, any and all documents and other instruments and to do or accomplish all other acts or things necessary or appropriate to effect the termination of the master servicer, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise.

2.   The trustee shall automatically become the successor in all respects to the master servicer after the master servicer is terminated and shall thereafter be subject to all the responsibilities, duties, liabilities and limitations on liabilities relating thereto placed on the master servicer by the terms and provisions of the Pooling and Servicing Agreement.  Notwithstanding the foregoing, the trustee may, if it shall be unwilling so to act, or shall, if it is

S-200

legally unable so to act, appoint, or petition a court of competent jurisdiction to appoint, a successor master servicer in accordance with the Pooling and Servicing Agreement.

3.   Upon any termination or appointment of a successor to the master servicer, the trustee shall give prompt written notice thereof to certificateholders at their respective addresses appearing in the certificate register and to the rating agencies.

For further discussion of the duties of the trustee, please see "Description *of the Agreements—Material Terms of the Pooling and Servicing Agreements and Underlying Servicing Agreements—Duties of the Trustee*" in the prospectus.

The master servicer will pay the trustee the trustee's fee in respect of its obligations under the Pooling and Servicing Agreement. The Pooling and Servicing Agreement will provide that the trustee and any director, officer, employee or agent of the trustee will be indemnified by the trust and will be held harmless against any loss, liability, expense or cost including, without limitation, attorneys fees and expenses (not including expenses and disbursements incurred or made by the trustee in the ordinary course of the trustee's performance in accordance with the provisions of the Pooling and Servicing Agreement) incurred by the trustee in connection with any pending or threatened legal action or arising out of or in connection with the acceptance or administration of its obligations and duties under the Pooling and Servicing Agreement, the certificates or the Custodial Agreement, other than any loss, liability or expense (i) resulting from a breach of the obligations and duties of a servicer under the Pooling and Servicing Agreement or the Servicing Agreement (for which the trustee receives indemnity from such servicer) or (ii) incurred by reason of willful misfeasance, bad faith or negligence in the performance of the trustee's duties under the Pooling and Servicing Agreement, the certificates or the Custodial Agreement or by reason of reckless disregard, of the trustee's obligations and duties under the Pooling and Servicing Agreement, the certificates or the Custodial Agreement.

The trustee will also act as Supplemental Interest Trust Trustee.  The depositor shall promptly notify the rating agencies if the trustee is removed as trustee under the Pooling and Servicing Agreement.

## THE CREDIT RISK MANAGER

Wells Fargo Bank, N.A. will act as credit risk manager for the trust (the "Credit Risk Manager"). As Credit Risk Manager, Wells Fargo Bank, N.A. will monitor the performance of and make recommendations to the servicers regarding certain delinquent and defaulted Mortgage Loans and will report on the performance of such Mortgage Loans pursuant to the Pooling and Servicing Agreement. The Credit Risk Manager will rely upon Mortgage Loan data that is provided to it by the servicers and the master servicer in performing its advisory and monitoring functions. The fee payable to the Credit Risk Manager is included in the master servicing fee.

## USE OF PROCEEDS

After deducting expenses of approximately $1,600,836, the depositor will apply the net proceeds of the sale of the Offered Certificates against the purchase price of the Mortgage Loans.

S-201

NOM-FHFA_05591530

## FEDERAL INCOME TAX CONSEQUENCES

In the opinion of Thacher Proffitt & Wood LLP, counsel to the depositor, assuming compliance with the provisions of the Pooling and Servicing Agreement, for federal income tax purposes, each of the REMICs established under the Pooling and Servicing Agreement will qualify as a REMIC under the Code.

For federal income tax purposes (i) each Residual Certificate will represent the sole class of "residual interests" in one or more REMICs elected by the trust and (ii) the Senior Certificates and Subordinate Certificates (exclusive of any right of the holders of the Senior Certificates and Subordinate Certificates to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of Basis Risk Shortfalls and the obligation to make payments to the Supplemental Interest Trust), the Class P Certificates and Class X Certificates (exclusive of the right to receive payments from the Supplement Interest Trust and the obligation to make payments to the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust) will represent the "regular interests" in, and will be treated as debt instruments of, a REMIC. See "Federal Income Tax Consequences–REMICs" in the prospectus.

For federal income tax purposes, the Class M-9 Certificates will be, and the remaining classes of Offered Certificates may be, treated as having been issued with original issue discount. The prepayment assumption that will be used in determining the rate of accrual of original issue discount, market discount and premium, if any, for federal income tax purposes will be based on the assumption that, subsequent to the date of any determination the Group I Mortgage Loans and Group II Mortgage Loans will prepay at a rate equal to 100.00% of the prepayment assumption described in this prospectus supplement.  No representation is made that the Mortgage Loans will prepay at that rate or at any other rate. See "Federal Income Tax Consequences–General" and "–REMICs–Sales of REMIC Certificates" in the prospectus.

The holders of the Offered Certificates will be required to include in income interest on their certificates in accordance with the accrual method of accounting.

The Internal Revenue Service (the "IRS") has issued original issue discount regulations (the "OID Regulations") under sections 1271 to 1275 of the Code that address the treatment of debt instruments issued with original issue discount, Purchasers of the Offered Certificates should be aware that the OID Regulations do not adequately address certain issues relevant to, or are not applicable to, prepayable securities such as the Offered Certificates.  In addition, there is considerable uncertainty concerning the application of the OID Regulations to REMIC Regular Certificates that provide for payments based on an adjustable rate such as the Offered Certificates.  Because of the uncertainty concerning the application of Section 1272(a)(6) of the Code to such certificates and because the rules of the OID Regulations relating to debt instruments having an adjustable rate of interest are limited in their application in ways that could preclude their application to such certificates even in the absence of Section 1272(a)(6) of the Code, the IRS could assert that the Offered Certificates should be treated as issued with original issue discount or should be governed by the rules applicable to debt instruments having contingent payments or by some other method not yet set forth in regulations. Prospective purchasers of the Offered Certificates are advised to consult their tax advisors concerning the tax treatment of such certificates.

CONFIDENTIAL

NOM-FHFA_05591531

In certain circumstances the OID Regulations permit the holder of a debt instrument to recognize original issue discount under a method that differs from that used by the issuer. Accordingly, the holder of an offered certificate may be able to select a method for recognizing original issue discount that differs from that used by the Trust in preparing reports to the certificateholders and the IRS.

If the method for computing original issue discount described above results in a negative amount for any period with respect to a certificateholder, the amount of original issue discount allocable to that period would be zero and the certificateholder will be permitted to offset that negative amount only against future original issue discount, if any, attributable to those certificates.

Certain of the certificates may be treated for federal income tax purposes as having been issued at a premium. Whether any holder of a certificate will be treated as holding such certificate with amortizable bond premium will depend on such certificateholders purchase price and the distributions remaining to be made on such certificate at the time of its acquisition by such certificateholder. Holders of such certificates should consult their own tax advisors regarding the possibility of making an election to amortize such premium. See "Federal Income Tax Consequences– REMICs" in the prospectus.

Each holder of a Senior Certificate or Subordinate Certificate is deemed to own an undivided beneficial ownership interest in a REMIC regular interest and the right to receive payments from the Basis Risk Shortfall Reserve Fund or the Supplemental Interest Trust in respect of any Basis Risk Shortfall or the obligation to make payments to the Supplemental Interest Trust. The Basis Risk Shortfall Reserve Fund, the Basis Risk Cap Agreement, the Interest Rate Cap Agreement, the Interest Rate Swap Agreement and the Supplemental Interest Trust are not assets of any REMIC. The REMIC regular interest corresponding to a Senior Certificate or a Subordinate Certificate will be entitled to receive interest and principal payments at the times and in the amounts equal to those made on the certificate to which it corresponds, except that (i) the maximum interest rate of that REMIC regular interest will equal the Net Funds Cap computed for this purpose by limiting the Swap Scheduled Notional Amount of the Interest Rate Swap Agreement to the aggregate principal balance of the Mortgage Loans and (ii) any Swap Termination Payment will be treated as being payable solely from Monthly Excess Cashflow. As a result of the foregoing, the amount of distributions on the REMIC regular interest corresponding to a Senior Certificate or a Subordinate Certificate may exceed the actual amount of distributions on a Senior Certificate or a Subordinate Certificate.

The treatment of amounts received by a holder of a Senior Certificate or a Subordinate Certificate under such holder's right to receive any Basis Risk Shortfall, will depend on the portion, if any, of such holder's purchase price allocable thereto. Under the REMIC Regulations, each holder of a Senior Certificate or Subordinate Certificate must allocate its purchase price for the Senior Certificate or Subordinate Certificate among its undivided interest in the regular interest of the related REMIC and its undivided interest in the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfall in accordance with the relative fair market values of each property right. The securities administrator will, as required, treat payments made to the holders of the Senior Certificates and Subordinate Certificates with respect to any Basis Risk Shortfall, as includible in income based on the regulations relating to notional principal contracts (the "Notional Principal Contract Regulations"). The OID Regulations provide that the Trust's allocation of the issue price is binding on all holders unless the

S-203

NOM-FHFA_05591532

holder explicitly discloses on its tax return that its allocation is different from the Trust's allocation. For tax reporting purposes, the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of Basis Risk Shortfalls with respect to the Senior Certificates and Subordinate Certificates may be treated as having more than a *de minimis* value as provided in the pooling and servicing agreement. Upon request, the securities administrator will make available information regarding such amounts as has been provided to it. Under the REMIC Regulations, the Securities Administrator is required to account for the REMIC regular interest, the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfall as discrete property rights. Holders of the Senior Certificates and Subordinate Certificates are advised to consult their own tax advisors regarding the allocation of issue price, timing, character and source of income and deductions resulting from the ownership of such Certificates. Treasury regulations have been promulgated under Section 1275 of the Code generally providing for the integration of a "qualifying debt instrument" with a hedge if the combined cash flows of the components are substantially equivalent to the cash flows on a variable rate debt instrument. However, such regulations specifically disallow integration of debt instruments subject to Section 1272(a)(6) of the Code. Therefore, holders of the Senior Certificates and Subordinate Certificates will be unable to use the integration method provided for under such regulations with respect to those Certificates. If the Securities Administrator's treatment of payments of any Basis Risk Shortfall is respected, ownership of the right to any Basis Risk Shortfall will entitle the owner to amortize the price paid for the right to any Basis Risk Shortfall under the Notional Principal Contract Regulations.

Any payments made to a beneficial owner of an Senior Certificate or a Subordinate Certificate in excess of the amounts payable on the corresponding REMIC regular interest will be treated as having been received as a payment on a notional principal contract. To the extent the sum of such periodic payments for any year exceeds that year's amortized cost of any Basis Risk Shortfalls, such excess represents net income for that year. Conversely, to the extent that the amount of that year's amortized cost exceeds the sum of the periodic payments, such excess will represent a net deduction for that year. In addition, any amounts payable on such REMIC regular interest in excess of the amount of payments on the Senior Certificate or Subordinate Certificate to which it relates will be treated as having been received by the beneficial owners of such Certificates and then paid by such owners to the Supplemental Interest Trust pursuant to the Swap Administration Agreement, and such excess should be treated as a periodic payment on a notional principal contract that is made by the beneficial owner during the applicable taxable year and that is taken into account in determining the beneficial owner's net income or net deduction with respect to any Basis Risk Shortfalls for such taxable year. Although not clear, net income or a net deduction with respect to any Basis Risk Shortfall should be treated as ordinary income or as an ordinary deduction. Holders of the Senior Certificates and Subordinate Certificates are advised to consult their own tax advisors regarding the tax characterization and timing issues relating to a Swap Termination Payment.

Because a beneficial owner of any Basis Risk Shortfalls will be required to include in income the amount deemed to have been paid by such owner, but may not be able to deduct that amount from income, a beneficial owner of an Senior Certificate or a Subordinate Certificate may have income that exceeds cash distributions on the Senior Certificate or Subordinate Certificate, in any period and over the term of the Senior Certificate or Subordinate Certificate. As a result, the Senior Certificates and Subordinate Certificates may not be a suitable investment for any taxpayer whose net deduction with respect to any Basis Risk Shortfalls would be subject to the limitations described above.

S-204

CONFIDENTIAL

Upon the sale of a Senior Certificate or a Subordinate Certificate, the amount of the sale allocated to the selling certificateholder's right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfall would be considered a "termination payment" under the Notional Principal Contract Regulations allocable to the related Senior Certificate or Subordinate Certificate, as the case may be. A holder of a Senior Certificate or a Subordinate Certificate will have gain or loss from such a termination of the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfall equal to (i) any termination payment it received or is deemed to have received minus (ii) the unamortized portion of any amount paid (or deemed paid) by the certificateholder upon entering into or acquiring its interest in the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfall.

Gain or loss realized upon the termination of the right to receive payments from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust in respect of any Basis Risk Shortfalls will generally be treated as capital gain or loss. Moreover, in the case of a bank or thrift institution, Code Section 582(c) would likely not apply to treat such gain or loss as ordinary.

It is possible that the right to receive payments in respect of any Basis Risk Shortfalls could be treated as a partnership among the holders of all of the Certificates, in which case holders of such Certificates potentially would be subject to different timing of income and foreign holders of such Certificates could be subject to withholding in respect of any related Basis Risk Shortfall. Holders of the Offered Certificates and Class B-1 Certificates are advised to consult their own tax advisors regarding the allocation of issue price, timing, character and source of income and deductions resulting from the ownership of their Certificates.

The REMIC regular interest component of each Senior Certificate and Subordinate Certificate will be treated as assets described in Section 7701(a)(19)(C) of the Code, and as "real estate assets" under Section 856(c)(5)(B) of the Code, generally, in the same proportion that the assets of the Trust, exclusive of the assets not included in any REMIC, would be so treated. In addition, the interest derived from the REMIC regular interest component of each Senior Certificate and Subordinate Certificate will be interest on obligations secured by interests in real property for purposes of section 856(c)(3) of the Code, subject to the same limitation in the preceding sentence. The notional principal contract component of each Regular Certificate will not qualify, however, as an asset described in Section 7701(a)(19)(C) of the Code, as a real estate asset under Section 856(c)(5)(B) of the Code or as a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code. As a result, the Regular Certificates generally may not be a suitable investment for a REMIC, a real estate investment trust or an entity intending to qualify under Section 7701(a)(19)(C) of the Code.

Because any Basis Risk Shortfall is treated as separate rights of the Senior Certificates and Subordinate Certificates not payable by any REMIC elected by the Trust, such rights will not be treated as qualifying assets for any certificateholder that is a mutual savings bank, domestic building and loan association, real estate investment trust, or REMIC. In addition, any amounts received from the Basis Risk Shortfall Reserve Fund and the Supplemental Interest Trust will not be qualifying real estate income for real estate investment trusts or qualifying income for REMICs.

S-205

For further information regarding federal income tax consequences of investing in the Offered Certificates, see "Federal Income Tax Consequences—REMICs" in the prospectus.

## ERISA CONSIDERATIONS

A fiduciary of any employee benefit plan or other plan or arrangement subject to ERISA or Section 4975 of the Code (a "Plan"), or any insurance company, whether through its general or separate accounts, or any other person investing plan assets of a Plan, should carefully review with its legal advisors whether the purchase or holding of Offered Certificates could give rise to a transaction prohibited or not otherwise permissible under ERISA or Section 4975 of the Code. The purchase or holding of the Offered Certificates by or on behalf of, or with Plan assets of, a Plan may qualify for exemptive relief under the Underwriters' Exemption, as currently in effect and as described under "ERISA Considerations" in the prospectus if certain conditions are satisfied. The Department of Labor has granted to the Underwriters a Prohibited Transaction Exemption ("PTE") which was amended by PTE 2002-41 at 67 F.R. 54487 (the "Underwriters' Exemption"). However, the Underwriters' Exemption contains a number of conditions which must be met for the exemption to apply, including the requirements that the Offered Certificates be rated at least "BBB-" (or its equivalent) by Fitch Ratings, Moody's or S&P at the time of the Plan's purchase and that the investing Plan must be an "accredited investor" as defined in Rule 501(a)(1) of Regulation D under the Securities Act of 1933, as amended (the "Securities Act"). A fiduciary of a Plan contemplating purchasing an offered certificate must make its own determination that the conditions set forth in the Underwriters' Exemption will be satisfied with respect to the Offered Certificates.

For so long as the holder of an Offered Certificate also holds an interest in the Supplemental Interest Trust, the holder will be deemed to have acquired and be holding the Offered Certificate without the right to receive payments from the Supplemental Interest Trust and, separately, the right to receive payments from the Supplemental Interest Trust. The Exemption is not applicable to the acquisition, holding and transfer of an interest in the Supplemental Interest Trust. In addition, while the Supplemental Interest Trust is in existence, it is possible that not all of the requirements for the Exemption to apply to the acquisition, holding and transfer of Offered Certificates will be satisfied. However, if the Exemption is not available, there may be other exemptions that may apply. Accordingly, no Plan or other person using assets of a Plan may acquire or hold an Offered Certificate while the Supplemental Interest Trust is in existence, unless (1) such Plan is an accredited investor within the meaning of the Exemption and (2) such acquisition or holding is eligible for the exemptive relief available under PTCE 84-14 (for transactions by independent "qualified professional asset managers"), 91-38 (for transactions by bank collective investment funds), 90-1 (for transactions by insurance company pooled separate accounts), 95-60 (for transactions by insurance company general accounts) or 96-23 (for transactions effected by "in-house asset managers"). For so long as the Supplemental Interest Trust is in existence, each beneficial owner of an Offered Certificate or any interest therein, shall be deemed to have represented, by virtue of its acquisition or holding of the Offered Certificate, or interest therein, that either (i) it is not a Plan or (ii) (A) it is an accredited investor within the meaning of the Exemption and (B) the acquisition and holding of such Offered Certificate and the separate right to receive payments from the Supplemental Interest Trust are eligible for the exemptive relief available under one of the five prohibited transaction class exemptions enumerated above.

Each beneficial owner of a Subordinate Certificate or interest therein that is acquired after termination of the Supplemental Interest Trust shall be deemed to have represented, by virtue of

S-206

CONFIDENTIAL

its acquisition or holding of that certificate or interest therein, that either (i) it is not a plan investor, (ii) it has acquired and is holding such subordinated certificates in reliance on the Underwriters' Exemption, and that it understands that there are certain conditions to the availability of the Underwriters' Exemption, including that the subordinated certificates must be rated, at the time of purchase, not lower than "BBB-" (or its equivalent) by Fitch Ratings, Moody's or S&P, or (iii) (1) it is an insurance company, (2) the source of funds used to acquire or hold the certificate or interest therein is an "insurance company general account," as such term is defined in PTE 95-60, and (3) the conditions in Sections I and III of PTE 95-60 have been satisfied.

If any Certificate or any interest therein is acquired or held in violation of the conditions described in this section, the next preceding permitted beneficial owner will be treated as the beneficial owner of that Certificate, retroactive to the date of transfer to the purported beneficial owner. Any purported beneficial owner whose acquisition or holding of any such certificate or interest therein was effected in violation of the conditions described in this section shall indemnify and hold harmless the depositor, the securities administrator, the trustee, the master servicer, the servicers and the trust fund from and against any and all liabilities, claims, costs or expenses incurred by those parties as a result of that acquisition or holding.

Any fiduciary or other investor of Plan assets that proposes to acquire or hold the Offered Certificates on behalf of or with Plan assets of any Plan should consult with its counsel with respect to: (i) whether, with respect to the Offered Certificates, the specific and general conditions and the other requirements in the Underwriters' Exemption would be satisfied and (ii) the potential applicability of the general fiduciary responsibility provisions of ERISA and the prohibited transaction provisions of ERISA and Section 4975 of the Internal Revenue Code to the proposed investment. See "*ERISA Considerations*" in the prospectus.

The sale of any of the Offered Certificates to a Plan is in no respect a representation by the depositor or the underwriter that an investment in the Offered Certificates meets all relevant legal requirements relating to investments by Plans generally or any particular Plan, or that an investment in the Offered Certificates is appropriate for Plans generally or any particular Plan.

## LEGAL INVESTMENT

The Offered Certificates will not constitute "mortgage related securities" for purposes of SMMEA.

Institutions whose investment activities are subject to review by certain regulatory authorities hereafter may be or may become subject to restrictions on investment in the certificates, and such restrictions may be retroactively imposed. The Federal Financial Institutions Examination Council, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Office of Thrift Supervision, or OTS, and the National Credit Union Administration, or NCUA, have adopted guidelines, and have proposed policies, regarding the suitability of investments in various types of derivative mortgage-backed securities, including securities such as the certificates.

For example, on April 23, 1998, the Federal Financial Institutions Examination Council issued a revised supervisory policy statement, referred to as the 1998 Policy Statement, applicable to all Depository institutions, setting forth guidelines for investments in "high-risk mortgage securities." The 1998 Policy Statement has been adopted by the Federal Reserve Board, the

S-207

NOM-FHFA_05591536