**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

November 3, 2014

**BY ELECTRONIC MAIL**

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA v. Nomura Holding America, Inc., et al.*, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

  Defendants fail to address, and thus concede, that evidence regarding the GSEs' AUS is irrelevant to the materiality of Defendants' misrepresentations (Mot. 4-5) and their statute of limitations defense (*id.*). Defendants also do not—and cannot—dispute that AUS-generated "approve" or "accept" recommendations for SLG loans are irrelevant to the falsity of Defendants' misrepresentations. Mot. 3-4. Defendants further do not (i) identify any AUS report or recommendation for any loan; (ii) identify any loan file from the SLG samples; or (iii) provide any justification for admitting Custom Desktop Underwriter evidence.[1] Defendants "concede through silence" that evidence regarding the GSEs' AUS is not admissible to any of these issues. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012).

  **Single Family AUS Evidence Does Not Inform Minimum Industry Standards to Underwrite Alt-A or Subprime Loans.** Defendants have only one argument as to admissibility: they seek to introduce evidence regarding AUS used by originators to assess loans for potential sale to the GSEs' Single Family businesses to impeach or challenge FHFA's re-underwriting expert's opinion regarding minimum industry standards ("MIS") for underwriting Alt-A and subprime loans. FHFA's re-underwriting expert, Robert Hunter, applied MIS—"the minimum [underwriting] requirements across the industry [from 2002 to 2007]" for subprime and Alt-A loans (Ex. 11 (May 15, 2014 Expert Report of Robert Hunter) at 86-87)—when re-underwriting loans where (i) the applicable guidelines did not address a fundamental underwriting requirement (*id.* at 88), (ii) the effective date of the guidelines applicable to a particular product was more than 90 days earlier than the loan's origination date (*id.* at 89), or (iii) no guidelines were produced for the product type at issue (*id.*). Mr. Hunter identified these requirements from, among other sources, underwriting guidelines from subprime and Alt-A originators—including New Century, WMC, Countrywide, and Long Beach. *Id.* at 87. Defendants claim that AUS documents relating to underwriting loans through Fannie Mae's Desktop Underwriter ("DU") and Freddie Mac's Loan Prospector ("LP") and delivering them to the GSEs' Single Family businesses are relevant to challenge the MIS. Opp. 3-5, Defs.' Exs. A & J.

  Defendants' argument that AUS is somehow relevant to assessing MIS is belied by the report of their own re-underwriting expert, Michael Forester, who does not rely on or cite any evidence regarding AUS to criticize Mr. Hunter's opinions regarding MIS. Ex. 12 (Aug. 14, 2014 Expert Report of Michael Forester) ¶¶ 176-91. Nor is there any reason Mr. Forester would.

---

[1] Defendants admit Custom Desktop Underwriter's irrelevance by acknowledging that this system permitted an originator to enter its own guidelines. Opp. 4. Defendants provide no evidence of any guidelines that an originator used with Custom Desktop Underwrtier. The fact that Fannie Mae's software program did not restrict potential guidelines does not demonstrate the presence or absence of any minimum industry standards.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Reply in Support of Motion *in Limine* No. 5

DU and LP were used by originators to analyze different loans than the ones backing the Certificates for conformity with different guidelines than the ones at issue in this case. DU and LP assessed loans for compliance with GSE Single Family standards and their eligibility for sale to the GSEs' Single Family businesses, not the subprime and Alt-A loans backing the Certificates, which were underwritten to different standards. *FHFA v. UBS Ams. Inc.*, 2013 WL 3284118, at *22 (S.D.N.Y. June 28, 2013) (rejecting discovery of Single Family materials to show what constitutes industry standards because "[t]his argument ignores the repeated observation that the GSEs principally bought whole loans under different standards and constraints than those that applied to PLS collateral"). Defendants acknowledged as much in the Prospectus Supplements they prepared, representing that the supporting loans *were not underwritten* to GSE requirements (the very requirements their respective AUS assessed).[2]  *See id.*

      **The Court Should Prohibit Defendants from Using AUS Evidence to Challenge Minimum Industry Standards Pursuant to Rule 403.**  Even if AUS evidence were relevant to MIS, this evidence should be excluded under Rule 403. First, guides or other documents describing the operation or inputs of AUS used by each GSE's Single Family business and how originators may have used them to assess whole loans for potential sale to each GSE's Single Family business have no probative value to the underwriting standards applicable to the subprime and Alt-A loans at issue. Even if there were some limited probative value, it would be outweighed by the very real danger that AUS Single Family evidence would confuse and mislead the jury about the nature of the loans, guidelines, and underwriting standards in this case. *See In re Worldcom, Inc. Sec. Litig.*, 2005 WL 408137, at *5 (S.D.N.Y. Feb. 22, 2005) (Cote, J.) (excluding evidence because its "limited relevance is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury"). Additionally, FHFA would have to present testimony to explain the AUS system and software, the GSEs' Single Family businesses and the rep-and-warrant acquisition models, how originators could use AUS, and the distinction between prime/conforming whole loans and subprime/Alt-A loans—none of which proves or disproves any claim or defense the jury must decide in this strict liability case. The presentation of this evidence (and the necessary rebuttal and clarification) would unduly delay the trial and waste time.

---

[2] *See, e.g.*, Defs.' Ex. D (2005-AR6 Prospectus Supplement) at NOM-FHFA_04811820 ("The underwriting standards applicable to the Mortgage Loans . . . may or may not conform to Fannie Mae or Freddie Mac guidelines."), NOM-FHFA_04811894 ("The underwriting standards applicable to the Mortgage Loans typically differ from, and are . . . generally less stringent than, the underwriting standards established by Fannie Mae or Freddie Mac . . . ."), NOM-FHFA_04811927 ("The Mortgage Loans were underwritten generally in accordance with the underwriting standards described in this prospectus supplement . . . and may or may not conform to Fannie Mae or Freddie Mac underwriting guidelines for 'A' credit borrowers.").

                                         **Reply in Support of Motion *in Limine* No. 5**

Respectfully submitted,

*/s/ Philippe Z. Selendy*

Philippe Z. Selendy

cc:      All Counsel of Record