# Exhibit 12

HIGHLY CONFIDENTIAL

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION<br><br>v.<br><br>NOMURA HOLDING AMERICA INC., *ET AL*. | 11 CIV. 6201 (DLC) |

**EXPERT REPORT OF**

**Michael Forester**

**August 14, 2014**

# TABLE OF CONTENTS

I.      Qualifications ................................................................................................1

II.     Case Background ..........................................................................................2

III.    Assignment ...................................................................................................3

IV.     Summary of Opinions ...................................................................................4

V.      Mortgage Underwriting .................................................................................8

    **A.**   Mortgage Origination and The Purpose of Underwriting .......................8

    **B.**   Documentation Evaluated During the Underwriting Process Depends on Documentation Type ............................................................................15

    **C.**   Verification of Borrower Information ....................................................18

    **D.**   Exceptions and Compensating Factors ..................................................19

    **E.**   Loan Documentation and File Maintenance ...........................................21

VI.     Securitizations .............................................................................................27

    **A.**   NAA 2005-AR6 ...................................................................................28

    **B.**   NHELI 2006-FM1 and NHELI 2006-FM2 ...........................................29

    **C.**   NHELI 2006-HE3 ................................................................................29

    **D.**   NHELI 2007-1 .....................................................................................30

    **E.**   NHELI 2007-2 .....................................................................................31

    **F.**   NHELI 2007-3 .....................................................................................32

VII.    Nomura's Risk Disclosures In The Offering Documents ................................33

VIII.   My Review of the 665 Loans with Alleged Defects ........................................38

    **A.**   The Review Team .................................................................................38

    **B.**   Review Scope .......................................................................................40

    **C.**   Loan Files and Guideline Matching .......................................................40

    **D.**   Review Process ....................................................................................42

    **E.**   Results .................................................................................................43

IX.     Errors in Plaintiff's Expert's Findings ...........................................................43

    **A.**   Plaintiff's Expert Overstates Material Defects .......................................43

    **B.**   Plaintiff's Expert Improperly Considers Pre-Closing Tape Discrepancies to be Underwriting Defects ....................................................................45

    **C.**   Plaintiff's Expert Improperly Relied on Post-Closing Documents ...........48

HIGHLY CONFIDENTIAL

**D.** Plaintiff's Expert Improperly Asserts That Borrowers Misrepresented Occupancy of the Property.......................................................................61

    1. Plaintiff's Expert Ignores Intent to Occupy ............................................. 61

    2. Plaintiff's Expert Relies Upon Post-Closing Documents ......................... 63

    3. Plaintiff's Expert Improperly Relies on Credit Reports for Occupancy ... 63

    4. Plaintiff's Expert Relies on Other Documents Not Available to the Underwriter ................................................................................................ 66

**E.** Plaintiff's Expert Misread or Misinterpreted the Guidelines.................................68

**F.** Plaintiff's Expert Improperly Cited "Minimum Industry Standards" That Are Not in the Applicable Guidelines....................................................................70

**G.** Plaintiff's Expert Cited Deviations That Were Not Significant ............................78

**H.** Plaintiff's Expert Applied the Wrong Guidelines.................................................79

**I.** Plaintiff's Expert Made Calculation Errors .........................................................80

**J.** Plaintiff's Expert Incorrectly Evaluated Stated Income ......................................82

    1. Plaintiff's Expert Used Incorrect Occupational Codes............................. 84

    2. Plaintiff's Expert Used Incorrect MSAs.................................................. 86

    3. Plaintiff's Expert Cited Immaterial Differences Between BLS Data and Borrower's Stated Income ..................................................................... 87

    4. Plaintiff's Expert Improperly Uses Bankruptcy Documents to Evidence Borrower Income ...................................................................... 87

    5. Plaintiff's Expert Found Reasonable Stated Income to Be Unreasonable 89

**K.** Plaintiff's Expert Overlooked Documentation in the File .....................................90

    1. Mr. Hunter's Missing Document Claims Ignore Applicable Guidelines . 91

    2. Mr. Hunter's Missing Document Claims Are Unfounded Because He Ignored Evidence From the Loan File that a Missing Document Was Present at Origination ............................................................................ 92

    3. Mr. Hunter's Allegedly Missing Documents Constituted Insignificant Errors................................................................................................... 94

**L.** Plaintiff's Expert Misunderstood the Details of the Loan Transactions................95

**M.** Plaintiff's Expert Ignored Compensating Factors and Exceptions in His Analysis.................................................................................................................96

**N.** Plaintiff's Expert Cites No Violations of the General Underwriting Criteria Disclosed in the Prospectus Supplements, and There Were None ..........97

HIGHLY CONFIDENTIAL

X.   Conclusion ........................................................................................................................98

HIGHLY CONFIDENTIAL

## LIST OF ATTACHMENTS

**Appendix 1: Curriculum Vitae of Michael Forester**
**Appendix 2: Documents Relied Upon**
**Appendix 3: Cross-Reference Chart for Certain Finding Numbers**

HIGHLY CONFIDENTIAL

## I.    Qualifications

1.      I am co-founder and managing director of CrossCheck Compliance LLC ("CrossCheck"). CrossCheck is a professional services firm providing regulatory compliance, loan review, and internal audit services to financial institutions. I am a Certified Public Accountant and a Certified Fraud Examiner. I received my undergraduate degree in accountancy from the University of Notre Dame. I received a master's degree in business administration from the University of Chicago with a focus on finance. Throughout my 35-year career I have audited, reviewed, and re-underwritten thousands of residential mortgage loans, either directly or in a supervisory capacity.

2.      I am responsible for CrossCheck's mortgage services practice, which includes quality control on newly originated mortgages, servicing quality control, compliance audits, repurchase request analysis, and a variety of forensic mortgage file reviews. In a typical month, CrossCheck reviews and re-underwrites 1,000 to 2,000 mortgage loans.

3.      Prior to forming CrossCheck in 2007, I was managing director at The Prieston Group, a firm that provides fraud prevention and indemnification services to the mortgage industry. While at The Prieston Group, I was responsible for tracking and analyzing the performance of an insured portfolio of over 750,000 mortgage loans primarily for credit and fraud risk. The portfolio consisted of a variety of mortgage products, including prime, Alt-A, and subprime.

4.      Before joining The Prieston Group, I spent 16 years with Household International (now HSBC). In 1983, I joined Household International as an internal auditor. In this role I was heavily involved in Household International's acquisitions of savings and loan associations. The acquisition due diligence I performed included review and analysis of mortgage loan portfolios. I later served as chief financial officer of Household Finance, and was involved in credit risk

HIGHLY CONFIDENTIAL

analysis and securitization of residential mortgage portfolios. I also served as the national sales director for Household International's correspondent mortgage business. In this position, I supervised the acquisition of mortgage loan portfolios from correspondent lenders throughout the country for which re-underwriting of correspondent loans is a critical component.

5.    I began my career with the accounting firm of Ernst & Young, focusing primarily on audits of banks and savings and loan associations. At that time, savings and loan associations were the dominant mortgage originators, and these audits required the review of samples of loans for documentation, underwriting quality, and regulatory compliance.

6.    Currently, I serve on the Mortgage Bankers Association Quality Committee and Fraud Issues Subcommittee, the Illinois Mortgage Bankers Association Risk Committee, the Wisconsin Mortgage Bankers Association Residential Production Committee, and the California Mortgage Bankers Association Compliance Committee. I am a member of the American Institute of Certified Public Accountants, the Illinois CPA Society, and the Association of Certified Fraud Examiners. My *curriculum vitae*, which includes a list of industry publications and speaking engagements, is attached as Appendix A to this report.

7.    I have testified at deposition once in the last four years, in the matter of *Western and Southern Life Insurance Company, et al. v. DLJ Mortgage Capital, Inc. et al.* I have not testified at trial.

## II.    Case Background

8.    The present matter stems from investments made by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") in seven mortgage-backed securitizations ("Securitizations") sponsored by

HIGHLY CONFIDENTIAL

defendant Nomura Credit & Capital, Inc. ("NCCI").[1] Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., and Nomura Securities International, Inc. (collectively, "Nomura" or "Defendants"). The Securitizations are further described below in Section V.

9.      The Federal Housing Finance Agency ("Plaintiff"), as conservator for Fannie Mae and Freddie Mac, alleges in the Amended Complaint that Defendants made "materially false or misleading statements and omissions"[2] to Plaintiff regarding the Securitizations and the underlying mortgage loans, including in prospectus supplements for each Securitization ("Prospectus Supplements") filed with the Securities and Exchange Commission. In support of this claim, Plaintiff's expert, Robert W. Hunter, re-underwrote a sample of 723 loans, approximately 100 from each pool of loans backing each of the seven securitizations purchased by Fannie Mae and Freddie Mac (the "Sample Loans").[3]

## III.   Assignment

10.      I have been retained by counsel for Nomura to evaluate (i) Plaintiff's expert's alleged findings of material defects in the loans he re-underwrote; (ii) whether the Sample Loans complied with the underwriting guidelines applicable to them; and (iii) whether the Sample Loans were consistent with the disclosures in the Prospectus Supplement for each securitization. The purpose of my report is to present my analysis and conclusions with respect to Mr. Hunter's findings concerning his re-underwriting of the Sample Loans.

---

[1] The GSEs have asserted claims against Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., , and Nomura Securities International, Inc. as well (together with NCCI, "Nomura" or "Defendants").

[2] Amended Complaint dated June 28. 2012, ¶1.

[3] Expert Report of Robert W. Hunter, *Federal Housing Finance Agency v. Nomura Holding America Inc., et al.*, May 15, 2014, ("Hunter Report"), p. 2.

HIGHLY CONFIDENTIAL

11.     In his report, Mr. Hunter claimed that 571 (79%) of the 723 Sample Loans he re-underwrote had underwriting defects that substantially increased the credit risk of the loans.[4],[5] He alleged that an additional 94 loans (13% of the sample) had underwriting defects that were insignificant and did not increase the credit risk of the loan.

12.     I evaluated both groups of loans described above (a total of 665 loans) for the presence of potential substantial defects.[6] I was supported in this work by my staff at CrossCheck and a team from Fortace, LLC ("Fortace"), who worked under my direction.

13.     In performing my work, I relied on depositions taken in this matter, and documents produced by the parties and third parties. A list of the materials I relied upon in forming my opinions is attached as Appendix B. My responses to each of Mr. Hunter's findings are set forth in Exhibits 1 – 665 to this report.[7] These exhibits set forth the origination data for each loan; Mr. Hunter's findings for each loan; and my responses to those findings.

14.     CrossCheck bills $550 per hour for the work I perform in connection with this matter. My compensation is not contingent on my opinions or on the outcome of this litigation.

## IV.    Summary of Opinions

15.     Mortgage underwriting is the process of an underwriter reviewing credit, capacity, and collateral for a potential loan to determine if the borrower meets the loan originator's eligibility requirements, which are referred to as underwriting guidelines. These guidelines vary widely over time across lenders and, within lenders, across the different loan products they

---

[4] *Id.*, p. 3.

[5] Mr. Hunter evaluated approximately 100 Sample Loans from each of the 7 Securitizations' supporting loan groups ("SLGs").

[6] Mr. Hunter identified 16 loans where he claimed defects related to an appraisal's compliance with standards applicable to appraisers. These appraisal findings have been reviewed by Mr. Michael Hedden, an appraisal expert retained by counsel for Defendants. I rely on his conclusions regarding these appraisal-related claims, though I did review other findings related to each of these 16 loans.

[7] Certain of Mr. Hunter's findings were identified by long alpha-numeric strings that were inconsistent with the finding ID format he used to identify the majority of his findings. For clarity, attached as Appendix C is a chart that assigns simpler finding IDs to these alpha-numeric strings.

HIGHLY CONFIDENTIAL

offer—for example, in terms of the standards they set, and the documentation or verification they require to establish that those standards have been met. As a result, there are no general standard underwriting guidelines that apply across-the-board to every loan. This was true during the 2005 to 2007 period, when the loans I discuss in this report were originated.

16.      Underwriting guidelines are just that—guidelines—and underwriters use their judgment and experience to determine whether a loan can be originated consistent with those guidelines. If characteristics of a loan are outside specific aspects of an underwriting guideline, an underwriter may properly conclude that the loan is nevertheless consistent with the underwriting guidelines as a whole if the deviations are insignificant, or if factors are present that compensate for the deviation. In making such determinations, different competent underwriters can and do reach different conclusions about whether a loan satisfies underwriting guidelines.

17.      A file of documents is assembled when a loan is originated. There is no rule about the documents that must be preserved in such a file, and entities with different roles in connection with a loan—lenders, servicers, investors—take different approaches to loan file creation and maintenance. Documents obtained late in the underwriting process, such as pre-funding verifications or documents required at closing, may be less likely to ever reach a lender's loan file, much less that of a servicer or investor. When loan files have changed hands, have been converted from paper to electronic form, or are held by defunct entities, they are especially susceptible to becoming incomplete. These are just examples of why loan files, especially those obtained many years after a loan was originated, often do not contain all the documents that the underwriter used to evaluate the loan. The absence of a document in such circumstances does not indicate that it was never reviewed by the underwriter.

HIGHLY CONFIDENTIAL

18.     As noted above, the loans at issue in this case were bundled into seven Securitizations, and these Securitizations were offered pursuant to Registration Statements and Prospectus Supplements filed with the Securities and Exchange Commission. Those offering documents contained disclosures about the loans at issue, including disclosures about their compliance with certain underwriting criteria. With respect to the loans I reviewed for purposes of this report, those disclosures were fair and accurate.

19.     As noted above, after reviewing a sample of the loans backing each Securitization, Mr. Hunter opined that 665 of them, 91.9% of his sample, contain substantial or insubstantial defects. With assistance from two teams of experienced underwriters, I reviewed each of these loans. I conclude that, based on the information currently available, there are only 39 loans where I cannot confirm that a reasonable underwriter at the time of origination could have found that the loans satisfied the applicable underwriting guidelines ("Guidelines"). I also found that of the 665 loans reviewed, 153 loans had insignificant variances from the underwriting guidelines that did not significantly increase the credit risk of the loan. The remaining 473 loans I reviewed conformed to the underwriting guidelines. I therefore conclude that only 39, or 5.4% of the 723 Sample Loans, may potentially have substantial defects, not 79.0% as asserted by Mr. Hunter. I have identified in Exhibits 1-665 the basis for my determinations.

20.     For the 532 loans where I disagree with Mr. Hunter's finding of a substantial defect, I observed various errors in Mr. Hunter's re-underwriting that, when corrected, result in a finding that the loans fully complied with the applicable Guidelines, or that any deviations from the Guidelines were insubstantial or justified due to the presence of sufficient compensating factors. For example:

HIGHLY CONFIDENTIAL

a. In assessing whether an underwriter properly characterized a loan as owner-occupied, Mr. Hunter failed to analyze the borrower's intent at origination and instead considered where the borrower may have lived long after that time. Mr. Hunter criticized underwriters for failing to account for many other types of information that did not exist when the loans were underwritten.

b. Mr. Hunter claims documents were missing for 112 loans where the documents were clearly in the loan file or there was evidence that the document was available to the underwriter during the underwriting process.

c. Mr. Hunter relied on the wrong guideline in findings for another 106 loans, though the loan complied with the correct guideline.

d. For many loans in the sample that conformed to the applicable guidelines, Mr. Hunter incorrectly applied "minimum industry standards" of his own creation.

e. Mr. Hunter wrongly considered the absence of documentation in loans files produced years after origination to be evidence that the document never existed or the related underwriting procedures were never performed.

f. Contrary to applicable underwriting guidelines, Mr. Hunter ignored compensating factors in considering the appropriateness of exceptions.

g. In assessing the reasonableness of borrower statements about income, Mr. Hunter often used U.S. Bureau of Labor Statistics ("BLS") data, which

HIGHLY CONFIDENTIAL

was not a tool referenced by any guideline cited by Mr. Hunter and is inappropriate for this purpose.

21.     These are simply examples of the many defects in Mr. Hunter's analysis. In the following sections, I expand upon my opinions and provide the bases for them. My work in this matter is ongoing, and I reserve the right to supplement my analysis and opinions should more information become available to me, or in response to additional revisions or findings by Mr. Hunter.

## V.     Mortgage Underwriting

### A.     Mortgage Origination and The Purpose of Underwriting

22.     In this section, I provide a general description of how mortgages are originated according to underwriting guidelines.

23.     Mortgage loans are ultimately approved or denied by mortgage underwriters who review a borrower's credit, capacity (ability to repay the loan), and collateral (value of the property) to determine if a borrower meets the loan originator's or investor's eligibility requirements for a particular mortgage loan product.

24.     In determining whether the borrower has the credit, capacity and collateral profile to quality for a loan, the underwriter is guided by the guidelines for a particular loan product or program matrix, which indicates recommended minimums and/or maximums for various key loan parameters, such as credit score, loan amount, loan-to-value ("LTV") ratio, debt-to-income ("DTI") ratio, cash-out limits, and reserve requirements.[8] These criteria generally establish the level of credit and collateral risk the originator or investor is willing to accept with respect to a specific mortgage loan. In addition, the underwriter must follow the originator's underwriting

---

[8] *See, e.g.,* Deposition of Joseph Kohout, November 22, 2013 ("Kohout Deposition Tr."), 48:22-49:9, 49:21-50:15.

HIGHLY CONFIDENTIAL

policies and procedures, which describe the processes and documentation requirements to be followed in evaluating a borrower's credit, capacity, and collateral.[9]

25.     Lending and underwriting processes vary widely across lenders, borrowers, and mortgage products. Different loan types and programs have different eligibility requirements reflecting the varying levels of risk acceptable to specific investors and originators. Thus, the mortgage underwriting process is not designed to ensure the origination of risk-free loans. Rather, the underwriting process allows the underwriter to evaluate whether the risk profile of the loan is consistent with the level of risk acceptable to the investor or originator for the particular loan product. The mere fact that a loan was approved after having been evaluated as part of the underwriting process implies not an absence of risk but that the risks—based on an analysis of the borrower and loan characteristics—were consistent with the eligibility requirements and underwriting guidelines and therefore acceptable to the investor or originator.

26.     Underwriting is not a formula. Individual decisions by underwriters are based upon assessments as to whether loans comply with applicable underwriting guidelines, including whether sufficient compensating factors exist.

27.     Each originator maintains its own underwriting guidelines, which may be revised frequently. As discussed *infra* Section VIII.D, these variations in guidelines make it difficult to determine which underwriting guidelines applied to any given loan, especially seven to nine years after origination.

28.     In determining whether a borrower satisfies the applicable eligibility requirements, an underwriter reviews a borrower's credit to ascertain the borrower's historic willingness to pay his or her debts on a timely basis.[10] Borrower credit is primarily evaluated

---

[9] *See* Kohout Deposition Tr. at 28:13-19.
[10] *See* Deposition of Neil Spagna, November 13, 2013 ("Spagna Deposition Tr."), 59:6-14.

HIGHLY CONFIDENTIAL

based on the borrower's credit score.[11] Lenders originally used proprietary scorecards and

scoring models to evaluate borrowers' credit. Beginning in the late 1980s, a credit scoring model

developed by Fair Isaac Corporation gained wide acceptance and is now considered an industry

standard. All of the major credit bureaus report what is known as a "FICO" score. These credit

scores measure the likelihood that the borrower will make timely payments on his debts, and are

calculated based on the borrower's past payment history, level of indebtedness, and other factors.

29.     In addition to the measure of general credit performance embodied in the credit

score, mortgage underwriters typically place greater emphasis on the borrower's timeliness when

making housing payments, whether mortgage or rent payments.

30.     Underwriting guidelines often use the borrower's credit score to determine the

recommended maximum loan amount, LTV ratio, and DTI ratio allowed for the transaction. A

borrower's credit score is also sometimes used to determine whether a borrower is eligible for

certain programs and document types. The borrower's credit score is generally represented by a

FICO score. The FICO score is assigned to a borrower by an independent credit assessor—

typically a third-party firm, the entity giving the line of credit, or a credit bureau working with

the credit grantor. FICO scores take into account factors such as income, assets, length of

employment, length of residency in a single location, and credit history. Bankruptcies, tax

delinquencies, and other similar events negatively impact a borrower's credit score.[12] All other

characteristics being equal, a borrower with a higher FICO score is more creditworthy and

deemed less likely to default than a borrower with a lower FICO score.[13] For example, the

---

[11] *See* Spagna Deposition Tr. at 18:12-19:2; Deposition of Jeffrey Hartnagel, November 25, 2013, 253:7-10.

[12] Downes, John and Jordan Goodman, *Dictionary of Finance and Investment Terms*, Seventh Edition, Barron's Educational Series, Inc., 2006, pp. 153-154.

[13] Agarwal, Sumit, et al., "An Empirical Analysis of Home Equity Loan and Line Performance," *Journal of Financial Intermediation*, 2006, p. 458.

HIGHLY CONFIDENTIAL

People's Choice First Lien Underwriting Matrix[14] for the EZ Score program dated May 12, 2006 requires the borrower to have a minimum FICO score of 600.

31.     Other credit characteristics utilized by the underwriter in the origination process are credit depth or history, bankruptcy and public records, and trade lines, which are non-mortgage credit extensions such as credit cards or auto loans. A lender's underwriting guidelines may include minimum trade line requirements. For example, the Fremont Wholesale Division Underwriting Guidelines dated April 2006 required the borrower to have three trade lines reporting with one trade line reporting for 12 months with a balance of $1,000.[15] In addition, underwriting guidelines may include credit requirements regarding bankruptcies filed by potential borrowers. These guidelines require a "seasoning" timeline for past bankruptcy filings, meaning a borrower may not be eligible for certain products until, for example, one or two years after the bankruptcy was discharged. Furthermore, lenders may require re-established credit for all borrowers with prior bankruptcy filings.[16]

32.     Underwriting guidelines also set standards for the borrower's capacity or ability to repay the loan. This is most commonly represented by the borrower's DTI ratio, which is the ratio of the borrower's total monthly debt payments to total monthly income.[17]

33.     Put differently, a DTI ratio is the percentage of the borrower's gross monthly income that goes towards paying monthly debts. The borrower's DTI ratio is calculated by dividing the borrower's total monthly debts by the borrower's total monthly income.[18] All underwriting guidelines of which I am aware include DTI ratio requirements for full

---

[14] People's Choice First Lien Matrix, EZ Score 5/12/2006, NOM-FHFA_04452816.
[15] Fremont Wholesale Underwriting Guidelines, 4/1/2006, LF1UBS_00053008.
[16] *See* Spagna Deposition Tr. at 55:7-16, 74:5-9.
[17] Fremont Wholesale Underwriting Guidelines, 4/1/2006, LF1UBS_00053062.
[18] *See* Kohout Deposition Tr. at 39:17-40:5.

HIGHLY CONFIDENTIAL

documentation and stated income loans. Other documentation types (*see* Section IV.B, below) do not require (or permit) the DTI ratio to be calculated.

34.     Underwriting guidelines may indicate maximum allowed DTI ratios for specific transaction types and programs. The maximum allowed is sometimes tied to the borrower's credit score, loan amount, and LTV ratio and, as such, the maximum recommended DTI for a borrower may depend on these other factors or the type of transaction. For example, the People's Choice First Lien Underwriting Matrix for the EZ Score program dated May 12, 2006[19] allows a DTI ratio maximum of 55% for full documentation transactions and 50% for stated income transactions. The Fremont Wholesale Division Underwriting Guidelines dated April 2006[20] require the underwriter to consider loan amount and LTV when determining the maximum DTI ratio allowed for the transaction.

35.     Underwriting guidelines may describe the monthly debt payments that should be included in the DTI ratio calculation; however, these recommendations vary among originators and specific programs. For example, guidelines may instruct the underwriter how to account for installment and revolving debts as well as 401k loans, installment loans with fewer than ten payments remaining, revolving accounts with small balances or no monthly payment reported to the credit bureau, authorized user accounts, auto leases, business debt, and deferred debt. The Fremont Wholesale Division Underwriting Guidelines dated April 2006[21] allowed the underwriter to exclude any revolving account with a balance of less than $99 and gave a payment factor of 3% of the outstanding balance for balances between $100 and $1,500 and 2% for balances over $1,500. In comparison, the People's Choice Home Loan Underwriting Policy and

---

[19] People's Choice First Lien Matrix, EZ Score 5/12/2006, NOM-FHFA_04452816.
[20] Fremont Wholesale Underwriting Guidelines, 4/1/2006, LF1UBS_00052974.
[21] Fremont Wholesale Underwriting Guidelines, 4/1/2006, LF1UBS_00053062.

Guidelines dated January 20, 2006[22] instruct the underwriter to use the monthly payment reported on the credit report for revolving accounts for the DTI ratio calculation. For debts without a monthly payment shown on the credit report, the guidelines instruct the underwriter to utilize 3% of the balance as the monthly payment to be included in the DTI ratio calculation. For example, the underwriter would use a $30 monthly payment for a revolving account with a $1,000 balance if no monthly payment was included in the credit report.

36.     The other component of the DTI ratio calculation is gross monthly income. Originators' underwriting guidelines may provide guidance to the underwriter on how to calculate the borrower's gross monthly income. This guidance may describe recommendations on how to analyze different sources of income (retirement, non-taxable, wages, and self-employment) and what calculation is preferred for each source; when to use base pay versus a prior-year average; when to use deposits or balances on bank statement programs; or when to increase income amounts from tax-free sources.

37.     DTI ratio exceptions were permitted by most originator's guidelines. For example, the Fremont Wholesale Division Underwriting Guidelines dated April 2006[23] permit an underwriter to grant an exception if the calculated DTI exceeded guideline recommendations. These guidelines indicated, depending on levels of authority, that underwriters could make up to a 4.99% DTI exception up to the maximum allowed of 55%. These guidelines consider compensating factors of high gross disposable income, large financial reserves, high credit score, and low LTV among other factors.

38.     In connection with reviewing a borrower's loan application, an underwriter will consider the value of the collateral supporting the mortgage loan (*e.g.*, the property's appraised

---

[22] People's Choice Home Loan, Policies and Procedures Manual, JPMC-UWG-BEAR-000211413.
[23] Fremont Wholesale Underwriting Guidelines, 4/1/2006, LF1UBS_00053088.

HIGHLY CONFIDENTIAL

value). The value of the collateral supporting the loan is important because, in instances where the borrower fails to make timely payments, the lender usually relies on the value of the underlying collateral to recoup the amount of the loan. In a purchase money transaction, the value of collateral is typically established by the purchase price of the property, although an appraisal is also generally obtained to confirm the reasonableness of that value. In a refinance transaction, the value of the collateral is typically established through an appraisal of the property securing the loan. One metric that measures the collateral risk associated with a loan is the LTV ratio, or the loan amount compared to the value of the collateral, measured as the lesser of the sales price or the appraisal value.[24] The lower the LTV, the greater the amount by which the collateral value exceeds the amount of the loan.

39.     The underwriter will review the appraisal or valuation of the subject property to determine the reasonableness of the property value, which is used in calculating the LTV ratio for the transaction. As underwriters are generally not trained or licensed appraisers, underwriting guidelines typically only required the underwriter to review limited aspects of the appraisal, for example, the completeness of the appraisal report, age of the report, property type eligibility, property address, and signature and license number of the appraiser.

40.     The underwriter generally has other options to assist in his review of the appraisal, including automated valuation tools and staff appraisers. For example, underwriters may use automated valuation models ("AVMs") to assist in the review of an appraisal and the reasonableness of the appraisal value. AVMs provide the underwriters with an estimate of a range of value based on a statistical model but cannot definitively determine if the appraised

---

[24] *See, e.g.,* Kohout Deposition Tr. at 36:23-37:7.

value is reasonable.[25] There were many valuation products available during 2005 to 2007; however, the use of these products varied among lenders.

### B. Documentation Evaluated During the Underwriting Process Depends on Documentation Type

41.    The documentation required by the originator to be obtained and evaluated depends upon the specific loan program in question. Many of the loans that Mr. Hunter claims are substantially defective are reduced documentation loans (*i.e.*, 306 out of the 665, or 46% of the total loans that I reviewed). These loans usually do not require verification of income and may also not require verification of assets. The table below shows the breakdown of the reviewed loans by documentation type.

**Table 1:** Documentation Types

| Documentation Type | Loans |
|---|---|
| Full documentation | 347 |
| Stated income, verified assets | 198 |
| Stated income, stated assets | 33 |
| No income, verified assets | 28 |
| No ratio | 33 |
| No documentation | 14 |
| Other | 12 |

42.    Differences in documentation programs result in meaningful differences in the underwriting process.[26]

---

[25] *See, e.g.,* Fannie Mae, Selling Guide: Fannie Mae Single Family, July 30, 2013, https://www.fanniemae.com/content/guide/sel073013.pdf, p. 1,233; and FDIC, "Interagency Appraisal and Evaluation Guidelines," December 2, 2010, http://www.fdic.gov/news/news/financial/2010/fil10082a.pdf, p. 40. The Uniform Standards of Professional Appraisal Practice state that "[t]he output of an AVM is not, by itself, an appraisal." (Appraisal Standards Board, Advisory Opinion 18, Uniform Standards of Professional Appraisal Practice, 2012-2013 ed., at A-42). *See also* Fannie Mae, "Fannie Mae's Use and Policies on Automated Valuation Models," October 24, 2007, FHFA04382613 at 618. *See also* Appraisal Standards Board, Advisory Opinion 18, Uniform Standards of Professional Appraisal Practice, 2012-2013 ed., at A-44-5.
[26] *See, e.g.,* Deposition of Mendy Sabo, December 5, 2013 ("Sabo Deposition Tr."), 15:7-17; Kohout Deposition Tr. at 54:25-55:11 (underwriting is "relative to doc type.").

HIGHLY CONFIDENTIAL

43.     Full Documentation ("Full Doc") programs require both a borrower's income and assets to be documented and verified by the originator. Usually, Full Doc programs specify the income and asset documentation they require, such as paystubs, W-2's, and bank statements. Only 347 of the reviewed loans were Full Doc. The Fremont Underwriting Guidelines Revised 1/2006[27] guidelines are typical as to income documentation required for a full documentation loan. These guidelines required the prior year's W-2 and the most recent paystub for a salaried borrower. Self-employed borrowers were required to provide tax returns for the past two years. The guidelines alternatively allowed self-employed borrowers to provide the last 12-24 months of bank statements.

44.     Stated income, verified assets ("SIVA") programs do not require a borrower's income to be documented, but do require that the amount of the borrower's assets be verified. The underwriter relies on the income stated by the borrower on the loan application without further confirmation. While stated income programs may require the underwriter to evaluate the reasonableness of the income provided by the borrower, the guidelines typically do not require the underwriter to verify the reasonableness of the stated income in any particular way, for example through third-party sources, nor to document his evaluation of the stated income. For example, the Own It The Right Loan Underwriting Guidelines dated 10/2005[28] state that the "income from the application as stated by the borrower is used to qualify" and "income must be reasonable based on source." These guidelines do not require the underwriter to confirm the reasonableness of the stated income through a third-party source.

45.     Stated income, stated assets ("SISA") programs do not require a borrower's income or assets to be documented. The underwriter relies on the income and assets stated by the

---

[27] Fremont Underwriting Guidelines dated 1/1/2006, LF1UBS_00051762.
[28] Own It The Right Loan Underwriting Guidelines dated 10/1/2005, JPMC-UWG-BEAR-001137151.

HIGHLY CONFIDENTIAL

borrower on the loan application. For example, the Aegis Signature Underwriting Guidelines dated 6/13/2005[29] state "the borrower's assets must be stated on the application" and "no documentation of assets is required."

46.     No income, no assets ("NINA") programs do not take into account a borrower's income, nor his assets. Instead, underwriters rely on a borrower's credit (*i.e.*, credit score and history) and collateral. NINA programs may require verbal verification of employment. For example, the Aegis Signature Underwriting Guidelines dated 6/13/2005[30] state "no verification of income is required, verbal verification of employment is required" and "assets are not required to be stated or verified."

47.     No Ratio ("No Income, Verified Assets," or "NIVA") programs do not take into account a borrower's income. Asset information is required and verified. Employment, but not income, is verbally verified. Because income is not stated or verified, a borrower's DTI ratio is not calculated or considered in the underwriting process (hence the term "No Ratio"). For example, the Aegis Signature Underwriting Guidelines dated 6/13/2005[31] state "the borrower is not required to disclose his/her income; therefore the program has no qualifying ratio standards" and "no documentation of income is required."

48.     Similar to NINA programs, No Doc programs do not take into account a borrower's income or assets. Employment is not verified. Because employment, income, and assets are not evaluated in the underwriting process for these loans, underwriters rely to an increased degree on the borrower's credit history and collateral in assessing loan applications. Therefore, higher credit scores and lower LTVs may be required for loans issued under No Doc

---

[29]Aegis Signature Underwriting Guidelines dated 6/13/2005, JPMC-UWG-BEAR-0000055519.
[30]Aegis Signature Underwriting Guidelines dated 6/13/2005, JPMC-UWG-BEAR-0000055521.
[31]Aegis Signature Underwriting Guidelines dated 6/13/2005, JPMC-UWG-BEAR-0000055520.

HIGHLY CONFIDENTIAL

programs.[32] For example, the Aegis Signature Underwriting Guidelines dated 6/13/2005[33] state "income and employment should not be disclosed on the application or in the file documentation" and "assets should not be disclosed on the application or in the file documentation."

### C.    Verification of Borrower Information

49.     Beyond the documentation as described above, underwriters also have access to borrowers and can directly obtain additional information and answers to resolve ambiguities.

50.     For example, an underwriter can discuss with the borrower whether he or she intends to live in the subject property or if it is a second home, which would typically have a different set of applicable underwriting guidelines than a primary home. The underwriter can obtain an explanation for any circumstances that might appear to be inconsistent with the borrower's asserted intent to occupy a property, such as the borrower moving to a smaller or less desirable home, not listing the borrower's current residence, or moving to a property more distant from the borrower's place of employment. Underwriting guidelines typically do not require such conversations to be documented in the loan file. Even in cases where communication with the borrower is documented, it may be recorded in system notes, or in handwritten notes in the loan file, or with a checklist that indicates that a conversation occurred, rather than with a formal letter from the borrower that becomes part of the loan file.

51.     Similarly, if guidelines require the underwriter to obtain an explanation for inquiries that appear on a credit report, an underwriter can review a credit report and easily discern whether recent inquiries were efforts by the borrower to obtain more credit. It is common for a borrower to apply for a mortgage with multiple lenders to find the best interest rate

---

[32] *See, e.g.,* NOM-FHFA_05136695-697 (showing higher minimum FICO scores and lower maximum LTVs generally required for reduced documentation loans).
[33] Aegis Signature Underwriting Guidelines dated 6/13/2005, JPMC-UWG-BEAR-0000055521.

HIGHLY CONFIDENTIAL

available. The underwriter can simply contact the borrower to confirm that only one mortgage ultimately will be obtained for a given property, even if the credit report contains several mortgage-related inquiries. The underwriter can similarly confirm with the borrower that no additional credit was taken out as a result of any inquiries. The underwriter also can confirm with the borrower whether credit inquiries may have been the result of an existing creditor reviewing the borrower's credit in order to extend special offers such as balance transfers or reduced interest rates. Creditors do this routinely, without the borrower initiating the request. Borrowers are often not aware of these credit inquiries and may not even recognize the creditor listed on the inquiry, especially in the case of private label credit cards, where the creditor is a bank or finance company, not the retail store.

52.     Loans with reduced income documentation requirements may require an underwriter to take additional steps to evaluate the reasonableness of the borrower's stated income and/or stated assets (*see* Section V.B, above). In such cases the applicable underwriting guidelines dictate the required procedures. A verbal verification of employment may be required, but some programs may not require any income or employment verification. In such cases, underwriters typically rely on their knowledge of a borrower's occupation, geographic location, time on the job, amount of liquid and other assets, education, and full credit profile to evaluate the reasonableness of income.

### D.     Exceptions and Compensating Factors

53.     During the relevant time period, underwriters used the loan originator's underwriting guidelines as just that—guidelines—and were expected to use their judgment and experience in evaluating whether a loan should be originated. If an underwriter deemed a borrower creditworthy despite certain characteristics of the loan being outside specific aspects of the guidelines, an exception was permissible.

HIGHLY CONFIDENTIAL

54.    The underwriting guidelines of the originators of the loans in the Securitizations specifically allowed for the approval of exception loans with compensating factors.

55.    Exception policies varied among lenders. Some lenders established formal exception authorities, while others gave individual underwriters the authority to originate loans that included exceptions in certain circumstances. Individual underwriter authority might vary among underwriters within an originator depending on factors such as seniority, experience, and familiarity with the particular loan program. Reasonable underwriters might disagree about whether a loan should be funded based on their subjective assessments of compensating factors.[34]

56.    Significant exceptions typically required compensating factors. A compensating factor is a strength in one aspect of a borrower's application that offsets a weakness in another.[35] For example, a borrower might have a DTI above the guideline's maximum, but an LTV well below the maximum. The strong collateral (and, relatedly, low LTV) might compensate for the DTI exception, because a significant equity position would incentivize a borrower to make the required monthly payments and if the borrower did not make timely payments, sufficient collateral would be available to repay the loan. For another example, a borrower may not have met the required level of reserves, indicating weakness in capacity. If that same borrower had years of stable job history, however, reserves become less important, as reserves were less likely to be necessary where employment is consistent. The borrower's steady job history, in that example, compensates for a reserves exception.

---

[34] *See, e.g.,* Deposition of Vicki Beal, April 25, 2014 ("Beal Deposition Tr."), 63:7-12; Kohout Deposition Tr. at 232:21-233:2; Fannie Mae Single Family Selling Guide, Part X: Underwriting Guidelines, Introduction, June 30, 2002 (underwriters should not "apply[] a strict set of underwriting rules singularly"); Fannie Mae Single Family, 2006 Selling Guide, Part X: Underwriting Guidelines, Chapter 303.01, accessed through http://www.allregs.com.
[35] *See* Spagna Deposition Tr. at 118:6-15; Deposition of Christopher Scampoli, November 26, 2013, 40:21-25; Sabo Deposition Tr. at 66:11-16.

57.     There are no strict rules regarding the application of compensating factors.[36] A loan file should be considered in its entirety to determine whether a compensating factor is sufficient.

58.     The Prospectus Supplements acknowledge that loans constituting exceptions to guidelines could be approved if they had compensating factors.[37] See Section VI below for discussion of the underwriting-related disclosures made in the Prospectus Supplements.

### E.     Loan Documentation and File Maintenance

59.     As loan documents, including underwriting documents, disclosures, and legal documents, were accumulated by a mortgage lender, they were assembled into a loan file. These documents were received from a variety of sources (*e.g.*, borrower, credit bureau, bank, broker, employer, closing agent) or were generated by the lender (*e.g.*, application, underwriting documentation, disclosures). Documentation was generated at different points in the underwriting process, the closing process, and the servicing process. This information may have been stored in multiple locations, or not at all.

60.     There is no single authority as to what documents should have been included in a loan file and how the documents should have been ordered. Rather, loan documentation was organized and grouped in different ways by different lenders and servicers. For example, some lenders created a separate collateral file that included the legal documents required to enforce the loan's terms (note, mortgage, mortgage assignments). Lenders might also segregate documents into (1) an origination or underwriting file containing the loan application, credit report, and

---

[36] Kohout Deposition Tr. at 47:14-21; Beal Deposition Tr. at 63:7-12.

[37] NHELI 2006-FM1 Prospectus Supplement, dated January 27, 2006 ("2006-FM1 Pro Supp"), at S-65-67; NAA 2005-AR6 Prospectus Supplement, dated November 29, 2005 ("2005-AR6 Pro Supp"), at S-88; NHELI 2006-HE3 Prospectus Supplement, dated August 29, 2006 ("2006-HE3 Pro Supp"), at S-77; NHELI 2006-FM2 Prospectus Supplement, dated October 30, 2006 ("2006-FM2 Pro Supp"), at S-77; NHELI 2007-1 Prospectus Supplement, dated January 29, 2007 ("2007-1 Pro Supp"), at S-109; NHELI 2007-2 Prospectus Supplement, dated January 30, 2007 ("2007-2 Pro Supp"), at S-84; NHELI 2007-3 Prospectus Supplement, dated April 27, 2007 ("2007-3 Pro Supp"), at S-83.

HIGHLY CONFIDENTIAL

other supporting documentation used in the underwriting process; and (2) a servicing file, containing closing documents (*i.e.*, documents signed by the borrower at the time the loan was closed) and other documents needed for proper servicing of the loan.

61.     Mortgage loan servicing does not require knowledge of all of the details of the loan underwriting process; therefore the servicing files typically only included documents required for servicing mortgage loans. This allowed for a streamlined file, making the critical servicing documents easier to locate when needed. Servicing files were typically created after the closing documents (*i.e.,* documents signed by the borrower when the loan is closed) were available, and contained only the documents that might need to be referenced during the servicing of the loan.

62.     Documents typically were received in paper form, and then converted to digital images at some point in the origination process or thereafter. Some lenders may have converted documents early in the process, for example, by utilizing technology that automatically imaged faxed documents. These multiple imaged documents then needed to be bundled properly into the final digital file. Other lenders assembled the files in paper form and may not have scanned the files until weeks or even years after origination, if at all. Filing and scanning of paper documents was and often still is a manual process subject to paper jams, documents being stuck together, and human error. The technology most lenders used to assist in these processes in 2006 and 2007 was considerably less advanced than technology available today. It is not surprising that under these circumstances, documents or parts of documents from time to time went missing.[38]

---

[38] Federal retention requirements call for application documentation to be retained for 25 months. State retention requirements vary. *See* FDIC Law, Regulations, Related Acts Section 1002.12, available at http://www.fdic.gov/regulations/laws/rules/6500-300.html; Federal Fair Lending Regulations and Statutes Section 202.12, available at http://www.federalreserve.gov/boarddocs/supmanual/cch/200601/fair_lend_reg_b.pdf.

63.     A servicer might remove documents from the loan files during the course of servicing the loan (*i.e.*, to resolve disputes with a borrower, provide information to a collection agency, court, etc.) and such documents might not always have been promptly or accurately returned to the loan files. With all of these processes, there was ample opportunity for documents to be misfiled or misplaced and, in the case of paper files being converted to electronic files, for scans to be lost.

64.     As set forth *infra*, three of the "loan files" Mr. Hunter reviewed were actually files produced in this litigation from servicers, rather than the originators of the loans. Typically servicers only receive a subset of the documents that were actually present in the origination files because many of the documents were not necessary for servicing.[39] Many of the documents most relevant to the creditworthiness of the borrower, *e.g.* the appraisal, credit report, income and asset documentation, are not relevant to servicing and may have been omitted from the servicing file.[40] As explained *infra* Section VIII.C, I understand that during the "matching process," wherein each party sought to identify the best representation of the loan file that the parties were able to recreate, Plaintiff has taken the position that servicing loan files were as reliable as origination files. Although Nomura refused to stipulate to those files, Mr. Hunter nevertheless

---

[39] Deposition of Tracy Hillsgrove, May 16, 2014, 88:9-20 ("Q: And how would Ocwen be able to service the loan without having the loan [file?] A: Because we still have the data points and data tape is provided . . . in regards to . . . the borrower information, the borrower's address, prior servicer's loan number, the investor number, then the Ocwen loan number."); Deposition of Roger Kistler, May 16, 2014, 96:6-12 ("[Y]ou can service a loan without an origination file.").

[40] For example, *see* Deposition of Nick Minardi, April 23, 2014, 108:13-109 ("Q: In your experience, . . . would a servicer obtain copies of materials in the appraisal section of the loan file? A: Not that I remember, no. Q: And in your experience, would a servicer obtain copies of materials in the credit section of the loan file? A: Not that I am aware of. Q: What about materials in the income documentation section of the loan, would a servicer obtain copies of those? A: Not that I am aware of. Q: . . . In your experience at Encore, are those three of the key parts of the loan file that are part of the underwriting review? . . . A: Yes, I would say so."); Deposition of Bob Smith, May 14, 2014, 94:[] ("Q: . . . What would you consider critical documents? A: . . . [S]ervicing maintained the files, so the critical documents are going to be the notes, TILs, you know, probably rescissions, deeds of trust, appraisal, documents they'll need to service the loan . . . should it go into foreclosure or they've got to deal with the borrower on the phone.").

reviewed servicing files in his underwriting.[41] Accordingly, it is not surprising that certain documents irrelevant to servicing were missing from those files. For example, Mr. Hunter reviewed loan number NHELI_2006_HE3_2002205419[42] and noted defects because the loan file he reviewed was missing certain credit-related documents, including a credit report, appraisal or loan application. But the loan file Mr. Hunter reviewed included only documents sent to the servicer. The appraisal, credit report, and final application that he asserted were missing from the file would not typically be part of a servicing file.

65.    It is also not surprising that certain documents were missing from the loan files produced by Nomura in this action. Nomura did not originate any of the Sample loans, but purchased these loans, usually in bulk, from originators, and at that time received from originators the origination loan files associated with each sample loan. These loan files might not include all documents that the originators had at the time of closing, particularly those that were procured at closing—so-called "trailing documents," such as the mortgage deed, final HUD-1, and final title policy.

66.    Even an apparently complete loan file may lack information as to how a loan was underwritten. For example, verbal verifications of employment or an underwriter's rationale for guidelines exceptions may not have been documented in writing, or may have been handwritten on the back of a document that was not scanned subsequently.

67.    Due to the enormous number of documents that lenders processed (typically several hundred pages per loan), the multiple sources and mixed (paper/digital) formats of documents, and the often frequent movement of files, maintaining loan documentation was and remains a challenge for lenders and servicers. For these reasons, it is not unusual for some

---

[41] Loan file NHELI_2006_HE3_2002205419, NOM-FUN-LF_00000237.
[42] Exhibit 370.

HIGHLY CONFIDENTIAL

documents to be missing from a given loan file, particularly after a period of years. This is particularly true if the lender has become insolvent or there has been a change of control of the lender. In such instances, the physical file transfers, shifts in the organizational structure of files, and application of different storage and maintenance procedures result in an increased likelihood that documents present at origination may not be available many years later. For example, ResMAE Mortgage Corporation's corporate designee testified that ResMAE's loan files were moved after the company changed ownership, and that she was unaware of the process by which those loan files were scanned, raising the possibility that some files were lost or were scanned incorrectly.[43] Fremont also changed ownership, and the new owners found that they were unable to access all of Fremont's electronic databases during the loan file discovery phase of this litigation.[44]

68.     Many originators have testified about the difficulties in maintaining a perfect imaged loan file. For example, Gretchen Leff from Wells Fargo stated:

> Q. Is there a way to know from looking at the scanned loan file today, to the extent a particular document does not appear in there, or a particular type of document does not appear in there, is there – is there a way to know whether those documents existed at the time the loan was underwritten?
> [. . .]
> THE WITNESS: No.[45]
> [. . .]
> Q. Were there situations where documents -- asset documentation was collected at the time of underwriting and prior to approval, but were not included in the hardcopy or scanned loan file?
> A. Yes.
> Q. And how do you know that?
> A. In the example I just gave, you know, bank statements, often you lose pages of them in – in the scanning process. Even in the changing-hands process things – things can get misplaced and – lost out of the paper file.[46]

---

[43] *See* Deposition of Theresa Whitecotton, April 8, 2014, 50:12-51:21 (noting that loan files were moved when ResMAE changed ownership and corporate designee was unaware of the electronic scanning process for the hard copy loan files).

[44] *See* Deposition of Jeff Cruisinberry, April 8, 2014, 94:20 – 96:3.

[45] Deposition of Gretchen Leff, March 4, 2014 ("Leff Deposition Tr.") 80:23-81:6.

HIGHLY CONFIDENTIAL

69.     Third-party due diligence provider Clayton Holdings—a firm used by Nomura as well as many others in the industry[47]—similarly recognized that imaged loan files often were missing documents that had been available at origination. When they reviewed loan files, Clayton employees would consider their diligence "incomplete" without first asking an originator for missing documents:

> Q: And you mentioned a stip clearing process. Would you explain what that is?
> A: Yes. That's -- during our process of reviewing to guidelines and looking to make sure that all, the completeness of the loan file, so, you know, if we found any missing documents, the process was to assign grades to the loans. And then we would, if that was the process that our client allowed, that we interact directly with the seller, we could give the seller our exceptions. And those exceptions we'd call them stips or conditions. And the condition clearing process was a big part of the review because if you were missing, say, an appraisal, or a credit report, and you could give that file with that exception noted back to the originator or the seller, then they could furnish that back and we could do a more thorough review of the loan file.
> [. . .]
>
> Q: So you would consider the due diligence review incomplete without having gone through a stip clearing process with the lender?
> [. . .]
>
> A. Yes, I would.[48]

70.     Members of Nomura's due diligence team also recognized the limitations of imaged loan files. Neil Spagna, for example, testified that: "In the case of an imaged document, you might be missing something . . . someone has it on their desk somewhere . . . [or] in a file[] folder."[49]

71.     Based on my experience and consistent with the loan documentation process and testimony described above, it is not unusual for documents to be missing from loan files, particularly several years after a loan has been originated. For this reason, I did not assume that

---

[46] Leff Deposition Tr. at 108:8-19. *See also* Leff Deposition Tr. at 103:17-24.
[47] *See generally,* Expert Report of Charles Grice, dated July 9, 2014, for details about Nomura's due diligence.
[48] Beal Deposition Tr. at 49:8-53:10; *see also* Deposition of Peter Kempf, May 9, 2014, 85:4-23 (loans were flagged due to missing documents "[q]uite frequently.").
[49] Spagna Deposition Tr. at 256:20-257:5.

HIGHLY CONFIDENTIAL

because a document is not present in the loan file today, it did not exist at the time of origination, and I did not consider the identification of documents missing from a loan file to be a substantial defect. Instead, I reviewed the loan file for indications of the missing document's existence. For example, a loan file might not contain a credit report, but the credit score and debts listed on the application might indicate that the credit report was available at origination. Similarly, a flood insurance policy may be missing from the loan file that exists today, but policy premiums indicated on the HUD-1 settlement statement provide evidence that the insurance coverage was obtained. In those instances, I would conclude that these documents existed at the time the loan was originated.

72.     Ultimately, my conclusion as to whether I could confirm a loan satisfied the applicable underwriting guidelines included consideration of 1) whether the information was critical to the underwriting process, 2) the age and condition of the loan file, and 3) indications in the file that the information was available to the origination underwriter.

73.     In addition, because documents may exist outside the file that, if available, would change my opinion on a loan, at most when I cannot clear a claim by Mr. Hunter, this signifies that I cannot confirm that a reasonable underwriter at the time of origination could have found that the loan satisfied the applicable guidelines, not that I have concluded that there was a significant defect in the loan's origination.

## VI.   Securitizations

74.     The seven subject Securitizations are Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2005-AR6 ("NAA 2005-AR6"); Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM1("NHELI 2006-FM1"); Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM2 ("NHELI 2006-FM2"); Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE3 ("NHELI 2006-

HE3"); Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2007-1 ("NHELI

2007-1"); Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2007-2 ("NHELI

2007-2"); and Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2007-3

("NHELI 2007-3") (collectively, the "Securitizations").

75.     Nomura Credit & Capital, Inc. was the seller/sponsor;[50] HSBC Bank USA, N.A.

served as trustee;[51] and Wells Fargo Bank, N.A. was the master servicer, securities administrator,

and custodian[52] for all seven Securitizations.

### A.     NAA 2005-AR6

76.     The loans in the NAA 2005-AR6 securitization were originated or purchased by

Alliance Bancorp (20.6% of loans by aggregate principal balance by cut-off date), Silver State

Mortgage (11.82% of loans by aggregate principal balance by cut-off date), Aegis Mortgage

(11.21% of loans by aggregate principal balance by cut-off date), and various other originators

not identified in the prospectus supplement because they originated fewer than 10% of loans by

aggregate principal balance by cut-off date.[53]

77.     The securitization contained 2,212 loans with approximately $655,477,464.31

aggregate principal balance by cut-off date.[54] The loans in the securitization were full

documentation (15.87% of loans or 13.00% by aggregate principal balance by cut-off date),

alternative documentation (0.81% of loans or 0.83% by aggregate principal balance by cut-off

date), stated income verified assets (43.35% of loans or 43.94% by aggregate principal balance

by cut-off date), no ratio documentation (17.54% of loans or 18.85% by aggregate principal

---

[50] 2005-AR6 Pro Supp at S-1; 2006-FM1 Pro Supp at S-1; 2006-HE3; 2006-FM2 Pro Supp at S-1; 2007-1 Pro Supp at S-2; 2007-2 Pro Supp at S-1; 2007-3 Pro Supp at S-1.
[51] 2005-AR6 Pro Supp at S-1; 2006-FM1 Pro Supp at S-1; 2006-HE3 Pro Supp at S-2; 2006-FM2 Pro Supp at S-2; 2007-1 Pro Supp at S-2; 2007-2 Pro Supp at S-2.
[52] 2005-AR6 Pro Supp at S-1; 2006-FM1 Pro Supp at S-1-2; 2006-HE3 Pro Supp at S-1-2; 2006-FM2 Pro Supp at S-1-2; 2007-1 Pro Supp at S-2; 2007-2 Pro Supp at S-1-2; 2007-3 Pro Supp at S-1-2.
[53] 2005-AR6 Pro Supp at S-137.
[54] *Id.* at S-8.

balance by cut-off date), stated income stated assets (9.58% of loans or 9.35% by aggregate

principal balance by cut-off date), and no documentation (12.84% of loans or 14.03% by

aggregate principal balance by cut-off date).[55]

    **B.**    **NHELI 2006-FM1 and NHELI 2006-FM2**

    78.    The loans in the NHELI 2006-FM1 and NHELI 2006-FM2 securitizations were

originated or purchased by Fremont Investment and Loan ("Fremont").[56]

    79.    There were 4,448 loans in NHELI 2006-FM1 with an approximate aggregate cut-

off principal balance of $933,771,934.[57] The loans in NHELI 2006-FM1 were full / alternative

documentation (57.51% of loans or 51.72% by aggregate principal balance by cut-off date),

reduced / limited documentation (10.72% of loans or 12.25% by aggregate principal balance by

cut-off date), and stated income (31.77% of loans or 36.04% by aggregate principal balance by

cut-off date).[58]

    80.    There were 5,714 loans in NHELI 2006-FM2 with an approximate aggregate cut-

off principal balance of $1,228,042,345.[59] The loans in NHELI 2006-FM2, were full / alternative

documentation (57.4% of loans or 54.99% by aggregate principal balance by cut-off date), stated

income verified assets (4.99% of loans or 5.58% by aggregate principal balance by cut-off date),

and stated income stated assets (37.59% of loans or 39.43% by aggregate principal balance by

cut-off date).[60]

    **C.**    **NHELI 2006-HE3**

    81.    The loans in the NHELI 2006-HE3 securitization were originated or purchased by

People's Choice Home Loan, Inc. (38.19% of loans), First NLC Financial Services, LLC

---

[55] *Id.* at S-80.
[56] 2006-FM1 Pro Supp at S-1; 2006-FM2 Pro Supp at S-2.
[57] 2006-FM1 Pro Supp at S-2.
[58] *Id.* at S-59.
[59] 2006-FM2 Pro Supp at S-2.
[60] *Id.* at S-70.

(14.47% of loans), Equifirst Corporation (10.77% of loans), and various other originators not identified in the prospectus supplement because they originated fewer than 10% of loans.[61]

82.    The securitization contained 5,905 loans with approximately $1,074,928,098 aggregate principal balance by cut-off date.[62] The loans in the securitization were full or alternative documentation (55.55% of loans or 50.94% by aggregate principal balance by cut-off date), verified income stated assets (3.23% of loans or 3.62% by aggregate principal balance by cut-off date), stated income verified assets (19.8% of loans or 19.67% by aggregate principal balance by cut-off date), stated income stated assets (21.02% of loans or 25.3% by aggregate principal balance by cut-off date), and no documentation (0.41% of loans or 0.47% by aggregate principal balance by cut-off date).[63]

**D.    NHELI 2007-1**

83.    The loans in the NHELI 2007-1 securitization were originated or purchased by First National Bank of Nevada (35.88% of loans in Group I by aggregate principal balance by cut-off date), Silver State Financial Services, Inc. d/b/a Silver State Mortgage (31.67% of loans in Group II by aggregate principal balance by cut-off date), and various other originators not identified in the prospectus supplement, because they originated fewer than 10% of loans by aggregate principal balance by cut-off date.[64]

84.    The securitization contained 3,496 loans with approximately $1,023,112,197.80 aggregate principal balance by cut-off date.[65]

85.    The loans in Group I of the securitization—consisting of 1,745 loans—were full documentation (13.07% of loans or 10.18% by aggregate principal balance by cut-off date),

---

[61] 2006-HE3 Pro Supp at S-1-2.
[62] *Id.* at S-2.
[63] *Id.* at S-69.
[64] 2007-1 Pro Supp at S-3.
[65] *Id.* at S-3, S-20, S-21 (The total aggregate principal balance by cut-off date was calculated by adding $423,073,670 from Group I plus $600,038,527.80 from Group II).

HIGHLY CONFIDENTIAL

alternative documentation (0.40% of loans or 0.37% by aggregate principal balance by cut-off date), limited documentation (0.29% of loans or 0.38% by aggregate principal balance by cut-off date), no documentation (16.91% of loans or 14.64% by aggregate principal balance by cut-off date), no ratio documentation (26.65% of loans or 27.64% by aggregate principal balance by cut-off date), reduced documentation (37.02% of loans or 39.91% by aggregate principal balance by cut-off date), and stated documentation (5.67% of loans or 6.88% by aggregate principal balance by cut-off date).[66]

86.     The loans in Group II of the securitization—consisting of 1,751 loans—were full documentation (7.88% of loans or 5.73% by aggregate principal balance by cut-off date), alternative documentation (0.63% of loans and by aggregate principal balance by cut-off date), reduced documentation (41.12% of loans or 46.37% by aggregate principal balance by cut-off date), lite documentation[67] (0.17% of loans or 0.23% by aggregate principal balance by cut-off date), stated income stated assets (7.14% of loans or 7.06% by aggregate principal balance by cut-off date), no ratio documentation (31.07% of loans or 30.51% by aggregate principal balance by cut-off date), and no documentation (11.99% of loans or 9.46% by aggregate principal balance by cut-off date.[68]

### E.     NHELI 2007-2

87.     The loans in the NHELI 2007-2 securitization were originated or purchased by Ownit Mortgage Solutions, Inc. (42.38% of loans), First NLC Financial Services, LLC (11.56%

---

[66] *Id.* at S-63.
[67] The lite documentation programs are considered subprime and generally assess the borrower's income based on review of bank statements for the previous 12- or 24-month period. *See* 2007-1 Pro Supp at S-107.
[68] 2007-1 Pro Supp at S-73.

HIGHLY CONFIDENTIAL

of loans), and various other originators not identified in the prospectus supplement because they originated fewer than 10% of the loans.[69]

88.　　The securitization contained 5,136 loans with approximately $930,628,229 aggregate principal balance by cut-off date.[70] The loans in the securitization were full or alternative documentation (60.79% of loans or 55.29% by aggregate principal balance by cut-off date), verified income stated assets (0.62% of loans or 0.53% by aggregate principal balance by cut-off date), stated income verified assets (26.87% of loans or 29.76% by aggregate principal balance by cut-off date), stated income stated assets (11.12% of loans or 13.5% by aggregate principal balance by cut-off date), no ratio documentation (0.35% of loans or 0.63% by aggregate principal balance by cut-off date), and no documentation (0.25% of loans or 0.29% by aggregate principal balance by cut-off date).[71]

## F.　　NHELI 2007-3

89.　　The loans in the NHELI 2007-3 securitization were largely originated or purchased by ResMAE Mortgage Corporation (77.61% of loans) and to a lesser extent various other originators not identified in the prospectus supplement because they originated fewer than 10% of the loans.[72]

90.　　The securitization contained 5,292 loans with approximately $1,144,802,765 aggregate principal balance by cut-off date.[73] The loans in the securitization were full or alternative documentation (63.81% of loans or 57.24% by aggregate principal balance by cut-off date), verified income stated assets (0.02% of loans or 0.01% by aggregate principal balance by cut-off date), stated income verified assets (7.48% of loans or 9.6% by aggregate principal

---

[69] 2007-2 Pro Supp at S-2.
[70] *Id.*
[71] *Id.* at S-75.
[72] 2007-3 Pro Supp at S-2.
[73] *Id.*

balance by cut-off date), stated income stated assets (28.34% of loans or 32.57% by aggregate principal balance by cut-off date), no ratio documentation (0.04% of loans or 0.06% by aggregate principal balance by cut-off date), and no documentation (0.3% of loans or 0.52% by aggregate principal balance by cut-off date).[74]

## VII.  Nomura's Risk Disclosures In The Offering Documents

91.     The loans underlying the Securitizations were predominantly subprime and Alt-A first lien mortgages. Subprime loans are made to borrowers with impaired credit. Alt-A products are typically offered to borrowers with stronger credit. Alt-A loans have different features than prime loans, which may include higher LTV limits and/or reduced documentation requirements. Accordingly, most of the at-issue Alt-A loans had LTVs greater than 80 percent or were reduced documentation loans.

92.     The higher LTVs or reduced documentation associated with Alt-A loans may result in an Alt-A loan being relatively more risky than a prime loan. Similarly, the lower credit profile of subprime borrowers may increase risk. As a result, subprime and Alt-A loans generally have higher interest rates than prime loans, which is a well-understood sign that the loans are riskier than prime loans, and thus require greater compensation to offset the increased risk.

93.     The Prospectus Supplements for each Securitization contain descriptions and other disclosures regarding the mortgage loans underlying the Securitizations. Each Prospectus Supplement described the characteristics of the loans in general, including property type (*e.g.*, single family, multi-family, or condo), occupancy, original LTV and/or CLTV ratio, and credit score. This information was provided not on a loan-by-loan basis, but rather in aggregated form.

---

[74] *Id.* at S-73.

HIGHLY CONFIDENTIAL

94.     The offering documents also included numerous disclosures related to potential

risks, including declines in property values, high LTV ratios, mortgage loans with interest-only

periods, the illiquidity of secondary mortgage markets, credit ratings changes, and increased

levels of mortgage loan delinquency. The underwriting criteria used to originate the loans

backing the securities were also described in the offering documents, and for any originator

whose loans comprised more than 10% of the loan collateral, the Prospectus Supplements

contained a general summary (provided by the relevant lender[75]) of underwriting guidelines used

by that lender.

95.     The lender-specific descriptions of underwriting guidelines were general and

high-level. Underwriting guidelines can have hundreds of pages describing the specific factors

that are evaluated in the underwriting process, but the offering documents generally included

only short descriptions of the relevant lender's guidelines used to evaluate borrower ability to

repay and credit, as well as the value and adequacy of the collateral. The Prospectus

Supplements explained that these sections described the underwriting guidelines generally

applied by any specifically identified originators.[76]

---

[75] *E.g.*, 2006-FM2 Pro Supp at S-76-80 ("The information in this section has been provided to the depositor by Fremont."); 2006-FM1 Pro Supp at S-65-70 (Fremont); 2006-HE3 Pro Supp at S-76-83 ("The information set forth below under 'People's Choice Home Loan, Inc.' has been provided by People's Choice Home Loan, Inc. . . ."); 2007-1 Pro Supp at S-104-08 (First National Bank of Nevada and Silver State); 2007-2 Pro Supp at S-83-86 (information about Ownit obtained from a prior prospectus supplement filed by Ownit); 2007-3 Pro Supp at S-81-86 (information about ResMAE obtained from a prior prospectus supplement filed by ResMAE).

[76] 2006-FM1 Pro Supp at S-65 (giving "a summary of the underwriting guidelines believed by the Depositor to have been applied, with some variation, by" Fremont); 2006-FM2 Pro Supp at S-76 (loans were originated "generally in accordance with the underwriting criteria described in this section"); 2006-HE3 Pro Supp at S-76 (loans were "generally originated by People's Choice Home Loan, Inc. . . . in accordance with the underwriting criteria described in this section"); 2007-1 Pro Supp at S-104 (loans were "originated either under FNBN's 'full' or 'alternative' underwriting guidelines"); 2007-2 Pro Supp at S-84 (providing a "general summary" of Ownit's guidelines); 2007-3 Pro Supp at S-82 (providing a "brief description of the underwriting guidelines used for Mortgage Loans originated by ResMAE Mortgage Corporation").

HIGHLY CONFIDENTIAL

96.     In addition, the Prospectus Supplements described how these lenders' Guidelines

provide direction, but that exceptions are often made. Below is specific language from the

Prospectus Supplements describing exceptions.

**NHELI 2006-FM1 and NHELI 2006-FM2:**

> On a case by case basis, Fremont may determine that, based upon
> compensating factors, a prospective mortgagor not strictly qualifying
> under the underwriting risk category guidelines described below is
> nonetheless qualified to receive a loan, i.e., an underwriting exception.
> Compensating factors may include, but are not limited to, low loan-to-
> value ratio, low debt to income ratio, substantial liquid assets, good
> credit history, stable employment and time in residence at the applicant's
> current address. It is expected that a substantial portion of the mortgage
> loans may represent such underwriting exceptions.[77]

**NHELI 2006-HE3:**

> The Mortgage Loans are generally consistent with and conform to the
> Underwriting Guidelines. On a case-by-case basis, exceptions to the
> Underwriting Guidelines may be made where compensating factors exist.
> It is expected that some portion of the PCHL loans will represent those
> exceptions.[78]

**NHELI 2007-2:**

> The Underwriting Guidelines and Credit Matrices of the RightLoan are
> designed to be used as a guide in determining the credit worthiness of the
> borrower and his/her ability to repay. The guidelines, a reasonable loan
> amount and the RightLoan itself offer a solution that also facilitates
> making logical exceptions to those guides. Exceptions to the guidelines
> will be made if the loan meets the primary criteria of the RightLoan and
> offers supported compensating factors when a deviation occurs.[79]

**NHELI 2007-3:**

> On a case by case basis, ResMAE may determine that, based upon
> compensating factors, a prospective mortgagor not strictly qualifying
> under the underwriting risk category guidelines described below warrants
> an underwriting exception. Compensating factors may include, but are
> not limited to, low loan-to-value ratio, low Debt Ratio, substantial liquid

---

[77] 2006-FM1 Pro Supp at S-66-67; 2006-FM2 Pro Supp at S-77.
[78] 2006-HE3 Pro Supp at S-77.
[79] 2007-2 Pro Supp at S-84.

HIGHLY CONFIDENTIAL

assets, good credit history, stable employment and time in residence at the applicant's current address. A substantial portion of the Mortgage Loans represent such underwriting exceptions.[80]

97.     The Prospectus Supplement for NAA 2005-AR6 did not describe underwriting guidelines applied by any specific lender.

98.     All but one of the Prospectus Supplements also disclosed, without regard to a particular lender, that the loans backing the Securitizations "were originated generally in accordance with the underwriting criteria described in this section."[81] A portion entitled "Underwriting Standards of the Sponsor" described the "underwriting criteria" for the loans backing the Securitization, in particular: (i) each borrower was required to complete an application containing certain information and may have been required to authorize certain verifications; (ii) based on any data that was provided, the lender determined whether the borrower could meet his monthly obligations; (iii) the debt-to-income ratio was generally limited to 60%, though it could vary "on a case-by-case-basis"; and (iv) the property value was generally determined by an appraisal. In describing "Modified Standards" applicable to "alternative" underwriting programs, the Prospectus Supplement explained that such loans were originated with less stringent standards than applied generally, including reduced standards for documentation of income and/or assets, so that "underwriting for such Mortgage Loans may be based primarily or entirely on an appraisal of the Mortgaged Property, the loan-to-value ratio at origination and/or the borrower's credit score."[82]

99.     The specific disclosures also made clear that the loans in the Securitizations did not conform to the underwriting standards established by Fannie Mae and Freddie Mac, and that

---

[80] 2007-3 Pro Supp at S-83.

[81] 2005-AR6 Pro Supp at S-88-89; 2006-FM2 Pro Supp at S-80-82; 2006-HE3 Pro Supp at S-83-84; 2007-1 Pro Supp at S-108-10; 2007-2 Pro Supp at S-86-87; 2007-3 Pro Supp at S-86-87.

[82] 2005-AR6 Pro Supp at S-89-90; 2006-FM2 Pro Supp at 82-83; 2006-HE3 Pro Supp at S-85; 2007-1 Pro Supp at S-110-11; 2007-2 Pro Supp at S-87-88; 2007-3 Pro Supp at S-87-88.

HIGHLY CONFIDENTIAL

exceptions to the underwriting standards described in the Prospectus Supplements were made, using substantially identical language:

> The underwriting standards applicable to the Mortgage Loans typically differ from, and are, with respect to a substantial number of Mortgage Loans, generally less stringent than, the underwriting standards established by Fannie Mae or Freddie Mac primarily with respect to original principal balances, loan-to-value ratios, borrower income, credit score, required documentation, interest rates, borrower occupancy of the mortgaged property, and/or property types. To the extent the programs reflect underwriting standards different from those of Fannie Mae and Freddie Mac, the performance of the Mortgage Loans thereunder may reflect higher delinquency rates and/or credit losses. In addition, certain exceptions to the underwriting standards described in this prospectus supplement are made in the event that compensating factors are demonstrated by a prospective borrower.[83]

100.    Based on my review of the 571 loans that Mr. Hunter asserted have significant defects, I did not observe any inconsistencies between disclosures in the Offering Documents relating to lender-specific underwriting guidelines and any originator's actual underwriting practices. Nor did I observe any inconsistencies between disclosures concerning the general underwriting criteria and any of the mortgage loans I reviewed. Indeed, as set forth in greater detail below, it is my opinion that the Sample Loans substantially complied with the applicable Guidelines, and with the underwriting criteria described in the Prospectus Supplements.

---

[83] Six of the seven Securitizations used this language. *See* 2005-AR6 Pro Supp at S-88; 2006-FM2 Pro Supp at S-81; 2006-HE3 Pro Supp at S-83; 2007-1 Pro Supp at S-109; 2007-2 Pro Supp at S-86; 2007-3 Pro Supp at S-86. The 2006-FM1 Securitization used the following slightly different but substantially similar language:

> The Mortgage Loans were underwritten in accordance with the underwriting standards described in this prospectus supplement under "The Mortgage Pool-Underwriting Standards", and the Mortgage Loans may or may not conform to Fannie Mae or Freddie Mac underwriting guidelines for "A" credit borrowers. Accordingly, the Mortgage Loans may experience rates of delinquency, foreclosure and loss that are higher, and may be substantially higher, than mortgage loans originated in accordance with the Fannie Mae or Freddie Mac underwriting guidelines. Any resulting losses, to the extent not covered by credit enhancement, may affect the yield to maturity of the Offered Certificates. (2006-FM1 Pro Supp at S-107).

HIGHLY CONFIDENTIAL

## VIII.  My Review of the 665 Loans with Alleged Defects

101.    In this section, I describe in detail my review of the findings for the 665 loans that Mr. Hunter claims are defective. My review was designed to replicate the review that a reasonable loan underwriter would have conducted at origination.

### A.    The Review Team

102.    Under my direction, an experienced review team conducted a loan-level review of each of the 665 allegedly defective loans for conformance with the applicable Guidelines. The review team, collectively, has decades of experience underwriting and reviewing mortgage loans.

103.    Each team member had a minimum of ten years of mortgage underwriting experience. All team members were experienced in underwriting reduced documentation loans and underwrote mortgage loans during the period in which the subject loans were originated.

104.    I was assisted by Fortace, a firm experienced in mortgage loan review and re-underwriting. Under my direction, Fortace reviewed the allegedly defective loans and matched those files to the applicable Guidelines, and gathered other data in order to assist in evaluating and responding to Mr. Hunter's findings. Fortace is headquartered in Manhattan Beach, California and is led by an executive team with extensive experience in mortgage origination and underwriting. Prior to agreeing to use Fortace to provide underwriting support for my report, I carefully vetted the qualifications of its management.

105.    In order to familiarize myself with Fortace, I first reviewed the company website and read the *curriculum vitae* of each member of the management team. I then scheduled a visit to Fortace's corporate offices where I met in person with the firm's managing partners, director of operations, and engagement manager. I also obtained resumes for each proposed member of the Fortace review team.

HIGHLY CONFIDENTIAL

106.    During the meeting we discussed the company's previous litigation support experience, the review processes used in working on similar underwriting assignments, and the technology employed. The Fortace executives explained the firm's basic approach to re-underwriting and described how the company conducts loan file reviews.

107.    In the course of my discussions with Fortace, I became comfortable that the team was highly qualified and possessed the experience and knowledge required to understand the underwriting topics at issue and to assist me in leading a thorough and accurate review designed to objectively determine whether or not the sample loans were originated in accordance with the applicable Guidelines.

108.    Based on my review of resumes and discussions with the Fortace executives, I approved or declined underwriter candidates for the review team.

109.    Prior to the start of the loan review I conducted a full-day, in-person training session for the entire underwriting team—both Fortace and CrossCheck—in Chicago. Each of the underwriters had previously done work for Fortace and was already familiar with their software systems and general workflow processes. I gave the underwriters an overview of my background and re-underwriting philosophy. I explained the importance of using the correct Guidelines and my approach to exceptions and compensating factors based on my many years in the mortgage industry.

110.    The team worked under my supervision and followed review protocol specific to this assignment.

### B.    Review Scope

111.    Mr. Hunter has claimed that 665 loan files contained underwriting defects. In his opinion, defects in 571 of the loans resulted in substantially increased credit risk.[84] I have reviewed the 665 loans and the alleged defects along with the applicable Guidelines for the loans and the Prospectus Supplements for the seven Securitizations.

### C.    Loan Files and Guideline Matching

112.    The re-underwriting process began with ensuring access to the applicable loan files produced in this litigation. The next step of the loan review process was to match the correct Guidelines to each loan to be reviewed. My understanding is that the parties in this matter agreed to a "matching process" whereby each of the parties reviewed the available underwriting guidelines and identified the best representation of the guidelines for each loan that the parties were able to locate. After resolving any differences, the parties stipulated to the agreed-upon guidelines, while reserving the right to substitute Guidelines should more applicable guidelines be identified later.

113.    The guidelines identified by party stipulation were marked as "Matching," so the review team could easily search for and view the Matching underwriting guidelines. The re-underwriter then checked the stipulated guidelines against the loan file characteristics such as the note date, origination channel, loan program, loan product, loan purpose, occupancy, documentation type, lien position, and loan-to-value ratio by reviewing the origination data, the loan approval, and/or other documents available in the loan file helpful in identifying the applicable underwriting guidelines. Because lenders modify their Guidelines periodically, it was important to determine the applicable date of the Guidelines. Because the underwriting process typically begins about 30 days prior to loan closing, I instructed the re-underwriters to select a

---

[84] Hunter Report, p. 3.

HIGHLY CONFIDENTIAL

Guideline date as close to the loan closing date as possible, but at least 30 days prior to the date the loan was closed. I identified the closing date using the note date, security instrument, or HUD-1.

114.     The re-underwriter verified that the Matching Guidelines were the best available representations of the Guidelines and determined if any other available Guidelines were a better match. For example, the re-underwriter may have found similar underwriting guidelines with an effective date closer, but still 30 days prior, to the note date. Some loans had Guidelines present in the loan files. In these instances, the re-underwriter reviewed the loan approval, terms, and characteristics to confirm the guidelines were applicable and if so, applied the guidelines accordingly. Similarly, if the re-underwriter disagreed with the Matching Guidelines for a particular loan, or no Matching Guidelines were identified for a loan, the re-underwriter performed a search to determine whether there were any potentially applicable Guidelines available.

115.     Once the re-underwriter identified the applicable Guidelines, the re-underwriter entered the identifying information for the applicable Guidelines, or noted if he did not find any applicable Guidelines. In those instances, the re-underwriters were instructed to review the loan file and provide their findings in the responses. For example, if the claim was for a missing document, the re-underwriter would review the file for the missing document and provide his findings. As another example, if Plaintiff alleged a miscalculation of DTI, the re-underwriter would attempt to verify the original underwriter's calculations and provide the resulting findings. Every finding was reviewed and addressed, regardless of whether there were identified Guidelines.

116.     All Guideline matches were reviewed by a manager for accuracy and completeness. If further information was requested or errors were identified, the file was returned to the re-underwriter for corrections.

**D.     Review Process**

117.     My review consisted of a four-step process. First, a Fortace underwriter conducted a review of each loan file and the applicable Guidelines and drafted initial findings. Second, a Fortace manager conducted a quality control review of each loan file and initial findings. Third, a CrossCheck manager conducted a review of the loan file and initial findings. Lastly, I performed a final evaluation of each loan. After reviewing my team's comments, Mr. Hunter's findings, and the loan file, I formed an opinion as to the potential underwriting defects cited by Mr. Hunter with regard to each loan.

118.     Because the purpose of my review was to evaluate the underwriting of the loans, I only used information that would have been available to the original underwriter. No post-closing information was considered in the review. In contrast, and as discussed more fully in Section VIII.B below, Mr. Hunter improperly used documents and information that was not available until after the loan closing—information that was not and could not have been available to the original underwriter.

119.     In those instances where I determined that a particular loan did not satisfy an aspect of the applicable Guidelines, I next determined if the deviation was a technical deviation, meaning it was sufficiently close to satisfying the guidelines that it would not, in my opinion, increase the credit risk of the loan. If I determined a deviation from the Guidelines could potentially have increased the credit risk of the loan, I examined the loan file for the presence of compensating factors that might support the granting of an exception based on my experience with exceptions and compensating factors in the industry during the relevant time period.

HIGHLY CONFIDENTIAL

### E.     Results

120.     Upon completion of my review, I could confirm that for all but 39 loans of the 665 loans reviewed, an underwriter at the time of origination could have found that the loans satisfied the applicable guidelines. In this section, I summarize my findings relative to Mr. Hunter's findings. I expand on my findings from a qualitative perspective in Section IX.

121.     My findings on each loan reviewed are detailed in individual loan reports attached as Exhibits 1- 665.

## IX.   Errors in Plaintiff's Expert's Findings

### A.     Plaintiff's Expert Overstates Material Defects

122.     I have concluded that Mr. Hunter's report substantially overstates the number of loans with significantly increased credit risk due to underwriting defects. I found that Mr. Hunter misapplied underwriting guidelines, failed to sufficiently consider compensating factors, and applied an unreasonable standard as to what constituted a substantial deviation from underwriting guidelines.

123.     Upon completion of my re-underwriting review, I determined that there were 39 loans (out of the 571 loans that Mr. Hunter identified as being substantially defective) where I could not confirm that a reasonable underwriter at the time of origination could have found that the loans satisfied the applicable underwriting guidelines. It is my opinion that 532 of the 571 loans that Mr. Hunter identified as being substantially defective are in substantial compliance with the Guidelines. I found that 153 of the 571 loans either contain only technical deviations from the Guidelines, or sufficient compensating factors exist that justified the granting of an exception. After combining my finding that 532 loans are free from substantial defects with Mr.

Hunter's conclusion that 94 loans[85] have insubstantial defects and 58 loans[86] are free from underwriting defects, I conclude that 684 out of the 723 loans included in the sample, or 94.6%, are free of substantial defects.

124.     A summary of my findings relative to Mr. Hunter's findings appears in Table 2 below.

**Table 2:** **Comparison of Alleged Substantial Defects**

|  | Hunter | Forester |
|---|---|---|
| Number of loans in sample | 723 | 723 |
| Number of loans in sample with substantial defects | 571 | 39[87] |
| Loans with potential defects as percentage of total loans in sample | 79.0% | 5.4% |
|  |  |  |
| **Breakdown of loans by category of alleged defect** |  |  |
| Missing or incomplete documentation | 309 | 16 |
| Failure to meet underwriting guidelines | 530 | 23 |
| Underwriting error or negligence | 364 | 3 |
| Misrepresentation | 278 | 4 |
| Loan tape discrepancy | 390 | - |
|  |  |  |
| Unreasonable stated income | 115 | 5 |
| Compliance issue | 19 | - |
| Appraisal issue | 17 | - |
| Other | 17 | 2 |

Note: individual loans may have multiple alleged defects

125.     Mr. Hunter's overstatement of 532 substantial defective loans is due to the following reasons:

---

[85] Hunter Report, Exhibit B.
[86] Hunter Report, Exhibit B.
[87] Mr. Hunter alleges that certain loans have substantial defects. As set forth *infra* Section IX.K., because 7-9 years have passed since the loans were originated, it is impossible to confirm whether any loans had substantial defects at the time of origination. These loans are those where I could not determine that an underwriter at the time of origination could have found that the loans satisfied the applicable guidelines.

HIGHLY CONFIDENTIAL

**Table 3:** Errors in Mr. Hunter's Analysis

| Mr. Hunter's Error | Loans Affected[88] |
|---|---|
| Pre-closing loan tape discrepancies are not underwriting errors | 359 |
| Post-closing documents were relied upon | 369 |
| Guidelines were misread or misinterpreted | 330 |
| No Guideline deviations were cited | 428 |
| Defect cited was immaterial | 153 |
| Incorrect Guidelines were applied | 106 |
| Calculation errors | 98 |
| Reasonable stated income was considered unreasonable by Mr. Hunter | 85 |
| Documentation in the file was overlooked | 112 |
| His version of transaction details was incorrect | 9 |

Note: For many loans Mr. Hunter committed multiple errors.

## B. Plaintiff's Expert Improperly Considers Pre-Closing Tape Discrepancies to be Underwriting Defects

126.    One of Mr. Hunter's most prevalent findings is a "Pre-Closing Loan Tape Discrepancy." He claimed 390 loans, or 53.9% of the sample, had such discrepancies. Mr. Hunter alleged "there are numerous instances where information contained on the pre-closing loan tapes concerning the credit characteristics of those loans was not accurate."[89] Every one of these findings was incorrect, for two reasons: (1) alleged "Pre-Closing Loan Tape Discrepancies" are not violations of underwriting guidelines and (2) every one of these findings was derivative of another claim Mr. Hunter made related to the same loan, nearly all of which were also incorrect.

127.    First, loan tapes discrepancies are not underwriting errors. Mr. Hunter purports to act as an underwriter when conducting his analysis by identifying "deficiencies in the original underwriting process."[90] As stated *supra* Section V, an underwriter follows a specific set of

---

[88] Mr. Hunter's analysis often has multiple shortcomings for a single loan, resulting in the total number of errors identified above exceeding the number of loans reviewed.
[89] Hunter Report, p. 118.
[90] Hunter Report, p. 188 (Hunter claims his findings are "deficiencies in the original underwriting process.").

HIGHLY CONFIDENTIAL

guidelines when originating a loan. Mr. Hunter never cites a single guideline relating to a "pre-closing tape," and, in fact, no applicable Guideline included such language. Underwriters were not instructed to verify "pre-closing loan tapes" because such a recommendation would be illogical; "pre-closing loan tapes" were typically created *after* a loan was originated.

128.    Second, all of Mr. Hunter's "Pre-Closing Loan Tape Discrepancy" findings are derivative of other findings. Mr. Hunter therefore misleadingly double-counts his (mostly unsupported or insignificant) findings related to loan characteristics disclosed on "pre-closing loan tapes." For example, for loan number NHELI_2007_1_2002056810[91], an underwriter approved the loan with a DTI of ██████ Because this DTI was reflected in the loan file, the "pre-closing loan tape" entry corresponding to this loan also reflected a DTI of ████ Mr. Hunter asserts, based on undisclosed debt listed on an "audit credit report" pulled seven to nine years after the loan's origination, that the borrower failed to disclose mortgage debt he or she had at the time of origination. Using this previously undisclosed information, Mr. Hunter recalculated the loan's DTI as ██████ and found this loan defective based on an "Excessive DTI" finding.[92] Mr. Hunter then found the loan defective based on a "Pre-Closing Loan Tape Discrepancy" finding for the allegedly separate reason that the loan tape did not reflect the number he calculated, improperly, several years later.[93] As set forth previously, Mr. Hunter cannot point to any guideline either directing loan underwriters to create or vet pre-closing loan tapes or instructing whoever was responsible for pre-closing loan tape to use data other than that reflected in the loan file. All of Mr. Hunter's 390 "Pre-Closing Loan Tape Discrepancy" findings are

---

[91] Exhibit 443.

[92] The excessive DTI finding, ID # 17820989, cleared because Mr. Hunter improperly relied on an "audit credit report" pulled post-origination, as discussed *infra* Section IX.C.

[93] In fact, Mr. Hunter uses the allegedly undisclosed mortgages to support still another finding styled as a "Misrepresentation of Debt Obligation" claim. This finding, ID # 1780989, was also cleared for the reasons discussed in the above footnote.

similarly dependent on other findings. By artificially double-counting these findings, Mr. Hunter

appears to present far more deficiencies than he purports to identify.

129.    For example:

- Mr. Hunter claims that the reported LTV of ████ of loan number

  NHELI_2006_HE3_2001918073[94] was misstated. He bases this claim on a retrospective

  AVM developed by Plaintiff's expert Dr. John Kilpatrick for the purposes of this

  litigation.[95] Based on Dr. Kilpatrick's opinions, Mr. Hunter recalculated the LTV as

  99.26% and uses this calculation as the basis for an "Excessive LTV (AVM)" finding.[96]

  Mr. Hunter also uses Dr. Kilpatrick's opinions as the basis for finding ID # 92000053,

  concluding that the loan was defective based on a "pre-closing loan tape" discrepancy

  because the loan tape did not reflect the ████ LTV that he calculated based on a value

  from an AVM run years after the loan closed. The loan tape, however, accurately

  reported that the loan was found to have an ████ LTV at origination.

- Mr. Hunter claims that the borrower of loan number NHELI_2007_2_2002208997[97]

  inaccurately disclosed his intent to occupy the subject property. Mr. Hunter asserts this

  claim based on an "audit credit report" pulled several years after the subject loan closed

  on ████████.  The report showed that on ████████ the borrower had a

  different address from the subject property address. Mr. Hunter claims that the audit

  credit report indicates that the loan violated the applicable guidelines, which "required:

---

[94] Exhibit 320.
[95] For a discussion of why basing an LTV finding on the Kilpatrick AVM is inappropriate, *see infra* Section IX.C.
[96] Finding ID # 91000053 (cleared for the reasons discussed *infra* Section IX.C relating to Mr. Hunter's unsupportable use of Dr. Kilpatrick's AVM findings).
[97] Exhibit 547.

HIGHLY CONFIDENTIAL

the borrower to occupy the property for 12 months."[98] These facts also were the basis for

a separate "Misrepresentation of Occupancy" finding.[99] These same facts were also the

basis for the "pre-closing loan tape" finding associated with this loan, which accurately

stated that the property was owner-occupied according to the loan file, misstates the

loan's occupancy status.

130.    Because every one of the "Pre-Closing Loan Tape Discrepancy" findings for the

390 loans was duplicative and unrelated to underwriting, I cleared all of those findings, which

constitute just under a quarter of Mr. Hunter's total findings.

**C.    Plaintiff's Expert Improperly Relied on Post-Closing Documents**

131.    As discussed above, the purpose of the re-underwriting review was to evaluate

whether the underwriters followed the guidelines in place at the time the loans were originated.

Mr. Hunter, however, instructed his re-underwriters to "review public information and other

records" generated after the loans in question were originated to determine whether the borrower

made a misrepresentation. These additional sources constitute information that the origination

underwriters were not required or reasonably expected to collect and, in many cases, could not

have collected because the information was not available at the time of the underwriting

process—seven to nine years before Mr. Hunter's team collected these additional sources. This

methodology is flawed because Mr. Hunter illogically evaluates the original underwriting

process based on facts not available to the original underwriter.

---

[98] Finding ID # 93000077 (cleared for the reasons discussed *infra* Section IX.D relating to Mr. Hunter's deficient owner-occupancy findings and, as discussed *infra* Section IX.C because Mr. Hunter relied on post-origination documents).

[99] *Id.*

HIGHLY CONFIDENTIAL

132.    Mr. Hunter primarily relies on post-origination documents to support his borrower misrepresentation findings regarding income[100], occupancy[101] and debt obligations. The post-origination documents upon which Mr. Hunter relied include servicing documents, bankruptcy filings, audit credit reports, and reports from LexisNexis Accurint, SiteX, DataVerify, and other sources. Many of these documents are unreliable sources of information and are therefore insufficient to substantiate a borrower misrepresentation, even putting aside the fact that post-origination documents should not be used at all. Mr. Hunter also uses valuation data derived from the Greenfield Automated Valuation Model (GAVM) to support his excessive LTV/CLTV findings. This AVM was developed by plaintiff's expert Dr. Kilpatrick seven to nine years after the origination of the subject loans and, I understand, uses data not available at the time of origination.[102] The use of this information created and collected after a loan's origination is an inherent flaw in Mr. Hunter's methodology.

133.    Mr. Hunter's findings based on post-origination documents are not only the result of an illogical process, they also suffer from hindsight bias. Mr. Hunter presents the facts in these post-origination documents as having been predictable when in fact there would have been no reasonable basis for an underwriter to reach these defect findings at the time the loans were originated. Further, Mr. Hunter never points to any Guideline that requires an underwriter to consult any of the documents he uses to support his findings, which did not exist at the time of origination.

134.    The reports Mr. Hunter uses are not suited for this type of information verification. For example, for 16 loans Mr. Hunter depends on LexisNexis Accurint reports for

---

[100] *See infra* Section IX.J for a discussion about inappropriate use of BLS data to support Mr. Hunter's income misrepresentation findings.

[101] *See infra* Section IX.D for a discussion about Mr. Hunter's flawed process for his occupancy misrepresentations findings.

[102] August 14, 2014 Expert Report of Dr. Hans Isakson at pp. 41-43.

HIGHLY CONFIDENTIAL

his findings. Mr. Hunter cited these reports, which his team pulled solely for the purposes of this litigation, as evidence of newly discovered data regarding debt obligations, occupancy, and employment information.[103] Although on the Accurint website, LexisNexis warns that Accurint compiles data from third party sources and the customer should not "rely on [Accurint reports] for the accuracy or completeness of the information," there is no evidence that Mr. Hunter attempted to independently verify this data. In fact, the following disclaimer appears at the bottom of the Accurint reports:

> The Public Records and commercially available data sources used reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified.

135.    Despite these warnings, Mr. Hunter exclusively relies on Accurint reports for some of his findings. For example, for loan number NHELI_2006_HE3_2002209123, which closed on ▮▮▮▮▮ Mr. Hunter claimed a borrower misrepresented his debt obligations based, in part, on an Accurint report showing the borrower had an ▮▮▮▮▮▮▮▮▮▮▮ opened on ▮▮▮▮▮ This one entry in the Accurint report was the basis for the following three findings: "Misrepresentation of Debt Obligation, "Excessive DTI," and a "Pre-Closing Loan Tape Discrepancy."[104] I cleared all of these findings for three reasons. First, as explained above, Mr. Hunter does not do anything to independently verify the information in the Accurint report his team pulled eight years after this loan closed. Second, Mr. Hunter's assertions that the

---

[103]    For example, Mr. Hunter uses an Accurint report as partial support for a "failure to determine reasonable ability to pay" claim for NHELI_2007_2_2002130933. The Accurint report showed that the borrower had engaged in other cash-out refinances, which indicate "cash flow concerns." Not only does this finding rely on data not present in the loan file but it also misunderstands the stated income, stated assets program under which the loan was originated. Those programs do not require an underwriter to verify a borrower's income or assets, thus, Mr. Hunter's claim that a borrower had "cash flow concerns" interposes a requirement outside of applicable guidelines. Further, as discussed *infra* Section IX.J, Mr. Hunter's stated income claims are unfounded because they rely on post-origination data, from such reports and the BLS website, that the applicable guidelines did not require the underwriter to consult.

[104] Exhibit 378.

HIGHLY CONFIDENTIAL

underwriter should have pulled the Accurint report do not conform to the applicable guidelines, which did not require the underwriter to pull Accurint reports or investigate all credit inquiries. Third, and most importantly, Mr. Hunter's assertion is illogical. The Accurint report Mr. Hunter relied upon was never available to the underwriter because it was pulled eight years after origination. The underwriter approved the loan on ███████████████████████ which took place on █████████ The debt was not opened until after the underwriter approved the loan. Therefore the debt obligation on the Accurint report, even if accurate, was not accessible at the time the underwriter completed the origination process for this loan.

136.    Mr. Hunter also uses so-called "audit credit reports"—which are credit reports that Mr. Hunter's team pulled for the purposes for this litigation—to support findings on 90 loans claiming a borrower misrepresented a debt obligation.[105] These "audit credit reports" usually list a debt obligation that contradicts the credit report the underwriter considered because it was not otherwise discernable from the loan file at the time of origination. Mr. Hunter uses this undisclosed debt obligation to support findings of borrower misrepresentation and, derivatively, recalculates excessive DTI ratios and makes "Pre-Closing Loan Tape Discrepancy" findings. Mr. Hunter cannot, of course, point to any guideline requiring that an underwriter consult multiple credit reports, especially one pulled seven to nine years after origination.[106] For example, Mr. Hunter utilizes debts from a recently pulled audit credit report to calculate the DTI for loan number NHELI_2006_HE3_2002121884.[107] Mr. Hunter includes an auto loan payment of ██████ to support his DTI, Pre-Loan Closing Tape, and Misrepresentation of Debt claims for this loan. However, Mr. Hunter fails to note that this payment was not listed on the origination credit

---

[105] Mr. Hunter also uses these reports to support his "occupancy misrepresentation" findings as discussed *infra* Section IX.D.
[106] Notably, although Mr. Hunter made independent findings questioning the validity of credit reports in loan files he accepted without question the accuracy of his "audit credit reports."
[107] Exhibit 350.

HIGHLY CONFIDENTIAL

report[108] which was dated ███████████████████████████ as required by the applicable

guidelines.[109]

137.    "Audit credit reports" sometimes may disclose a debt obligation the borrower

purportedly had at the time the loan was originated but that was not reflected on the credit report

in the loan file. Mr. Hunter cannot point to evidence that the original underwriter saw such

undisclosed debt obligations at the time of origination. Mr. Hunter attempts to justify his use of

debt obligations only disclosed on later audit credit reports by stating that "undisclosed borrower

debts would have been uncovered if the underwriter had followed up on unexplained credit

inquiries."[110] Mr. Hunter accordingly claims "underwriter error or negligence" for 355 loans in

instances where he alleges that an underwriter did not investigate credit inquiries. I was able to

clear all but one of these findings for one of three reasons: (1) the claim relied on "minimum

industry standards," which is insufficient for the reasons discussed *infra* Section IX.F; (2) Mr.

Hunter cited the correct guidelines, but those guidelines did not require that an underwriter

investigate all credit inquiries; or (3) Mr. Hunter cited the correct guidelines, which do

recommend that an underwriter investigate credit inquiries but do not recommend an underwriter

document this investigation in the loan file (as Mr. Hunter claims is required.)[111]

138.    Most of the applicable guidelines for the Sample Loans do not contain a

recommendation that an underwriter investigate all credit inquiries. Credit inquiries are notations

on a credit report made whenever a lender asks about a borrower's credit. A recent credit inquiry

could indicate that a borrower is preparing to take out a loan. It is common for a mortgage

borrower to have recent credit inquiries noted on his credit report because that borrower likely

---

[108] Credit Report, NOM-FHFA_02264129.
[109] People's Choice Underwriting Policy and Guidelines/Loan Program Guidelines, JPMC-UWG-BEAR-000211365.
[110] Hunter Report, pgs. 106-107.
[111] *See* Aegis Mortgage Corporation Signature Guidelines, JPMC-UWG-BEAR-000005514.

HIGHLY CONFIDENTIAL

obtained quotes from several mortgage originators before deciding upon a lender. Each of these mortgage originators would make an inquiry which would be noted on the borrower's credit report.

139.    As a result, many of the applicable Guidelines did not require an underwriter to investigate every open credit inquiry. In fact, Mr. Hunter is forced to cite his invented "minimum industry standard" for 87 of his credit inquiry findings because the applicable Guidelines did not require an investigation. For example, for loan number NHELI_2006_HE3_2001914961 Exhibit 317, Mr. Hunter claims "underwriter error or negligence" because he could not find evidence in the file that the underwriter investigated credit inquiries listed on the report within 90 days of the credit report date. The applicable guidelines did not instruct underwriters to investigate credit inquiries and certainly did not require underwriters to document such investigation in the loan file. Because these alleged defects are the result of an invented requirement, I cleared all 87 of these findings.

140.    For the remaining 267 credit inquiry claims, Mr. Hunter does not reference "minimum industry standards," but nevertheless finds an underwriting deficiency because the underwriter did not document the investigation of credit inquiries. The Guidelines, however, did not require that the underwriter document the investigation of credit inquiries. I cleared these findings because Mr. Hunter misreads the applicable guidelines and imposes invented standards.

141.    A common error Mr. Hunter makes is misreading the correct Guideline to impose a requirement that an underwriter undertake an investigation of all credit inquiries, for loan number NHELI_2006_HE3_2002003809, Exhibit 336, Mr. Hunter cites the applicable Guidelines that require an underwriter to pull a qualified credit report on all borrowers signing the note. The underwriter did so by pulling a tri-merged credit report, which combines credit

records from the three major credit bureaus—Equifax, Experian, and TransUnion. Mr. Hunter asserts that the underwriter should have asked the borrower for an explanation for credit inquiries on the report. The applicable guidelines did not require that an underwriter investigate credit inquiries. It certainly did not require an underwriter obtain a written explanation for credit inquiries. Because these findings impose invented requirements on an underwriter, and do not violate the applicable guidelines, I cleared these findings.

142.    Similarly, even when Mr. Hunter can point to a Guideline concerning investigating credit inquiries, Mr. Hunter's findings fail because he does not accurately interpret the Guideline. For example, for loan number NHELI_2006_HE3_2002235902, Exhibit 387, Mr. Hunter makes a finding that the underwriter did not investigate a credit inquiry because the underwriter did not document his or her investigation in Mr. Hunter's version of the loan file. Mr. Hunter fails to note that the guidelines specifically state that mortgage inquiries around the same time as the application do not need an explanation as this was typical. Mr. Hunter also failed to identify which specific inquiry he claimed needed to be addressed under this guideline and, as such, I cleared this finding.

143.    Mr. Hunter's position suffers from "hindsight bias" in that it implies, based on knowledge of a debt obligation discovered many years later, that an underwriter should have gone above and beyond the applicable guidelines. Mr. Hunter cannot point to any other reason why an underwriter should have known about undisclosed debt obligations listed on the "audit credit reports" upon which he bases the majority of his findings of misrepresentation of debt.

144.    Moreover, these "audit credit reports" are not always reliable and Mr. Hunter makes basic mistakes in interpreting the reports. For example, Mr. Hunter mistakenly assumes that a borrower opening a revolving account is equivalent to that borrower incurring a debt

obligation. For loan number NHELI_2006_HE3_2001916678, Exhibit 319, Mr. Hunter discovers a "revolving account" opened in the borrower's name on an "audit credit report." This account was not listed on the credit report that the origination underwriter pulled and considered in accordance with applicable guidelines. Instead of determining whether the borrower drew on the revolving credit line, thereby actually incurring a debt obligation, Mr. Hunter assumes that the borrower's debt obligation is equivalent to the maximum amount available under this source of credit. In fact, the borrower may never have incurred a debt obligation related to this revolving account. Mr. Hunter's finding therefore misunderstands how revolving lines of credit work. Further, this error highlights the fundamental flaw in using post-origination "audit credit reports." Mr. Hunter cannot ascertain from the borrower the context for items listed on an "audit credit report," like revolving credit lines, because his re-underwriting process took place so many years after the loan closed—in contrast to the initial underwriting of the loan, where the originator was in regular contact with the borrower and could clarify unresolved issues such as this one.

145.    A single undisclosed debt obligation on an "audit credit report," which the original underwriter never saw, sometimes serves as the basis for up to three different findings: (1) misrepresentation of a debt obligation, (2) excessive DTI, and (3) a "Pre-Closing Loan Tape Discrepancy."[112] For example,

- For loan number NHELI_2006_HE3_2001919851, Mr. Hunter used an "audit credit report" pulled eight years after origination and allegedly discovered an installment loan opened ██████████████████████████ Mr. Hunter uses this undisclosed debt obligation, which was not contained on the credit report in the file, to recalculate an

---

[112] *See supra* Section IX.B for a discussion about Mr. Hunter's "Pre-Closing Loan Tape Discrepancy" findings.

HIGHLY CONFIDENTIAL

"excessive DTI," which led to a "Pre-Closing Loan Tape Discrepancy" finding.[113] He also claimed that this undisclosed obligation could have been discovered if the underwriter investigated all the credit inquiries in the file, even though Mr. Hunter could not point to any requirement to do so in the applicable guidelines. Further, the allegedly undisclosed obligation was from ███████████████████████████ ██████████████████████ which was pulled in accordance with all applicable guidelines. It is likely that this supposed debt obligation, if accurate, was incurred after the date a credit report had to be pulled. Because none of Mr. Hunter's four findings related to loan number NHELI_2006_HE3_2001919851 were supported by facts available to underwriter at the time of origination, and the underwriter followed all procedures from the applicable guidelines, I cleared the findings for this loan.

- For loan number NAA_2005_AR6_1001976169, Mr. Hunter claimed that he discovered an undisclosed debt obligation from ████████ the day the subject loan closed, of ████ ████████████████[114] Mr. Hunter obtained this information from an "audit credit report," a DataVerify report, and other documents obtained post-origination. This debt obligation does not appear on the credit report in the file that was pulled ████████ before closing in accordance with applicable guidelines. Nevertheless, Mr. Hunter uses this debt obligation, unknown and unavailable to the underwriter, to recalculate the DTI on the loan, supporting his excessive DTI and loan tape findings.[115] The debt, allegedly discovered by Mr. Hunter eight years after the subject loan closed, in this case was not shown as a credit inquiry on the credit report in the loan file, thus, the underwriter had no notice that this debt could have existed. Further, Mr. Hunter makes no effort to determine

---

[113] Exhibit 324.
[114] Exhibit 33.
[115] *Id.*

HIGHLY CONFIDENTIAL

whether the undisclosed obligation on another property was offset by rental income despite clear evidence that the borrower was an active investor, *i.e.*, the fact the subject loan was for an investment property.

146.     I cleared all the misrepresentation of debt findings if the underwriter complied with applicable guidelines in pulling and considering the borrower's debt as listed on the valid credit report in the version of the loan Mr. Hunter reviewed and investigated any credit inquiries required by the guidelines. In sum, I was able to clear all of Mr. Hunter's 90 misrepresentation of debt obligation findings based on an undisclosed debt obligation in an audit credit report.

147.     Mr. Hunter also made frequent use of bankruptcy documents filed after the closing of the subject loan to support his findings that a borrower misrepresented his stated income. These bankruptcy documents disclose an income for the borrower at the time of origination that may be different from the income the borrower stated to qualify for a mortgage loan. Of course, as with other post-origination documents, Mr. Hunter cannot point to a single reason an underwriter would have known or should have known about a borrower's income as disclosed on a bankruptcy filing many years after a loan closed. Nor can Mr. Hunter point to any reason to give credit to statements made in a bankruptcy proceeding over statements made in a loan application signed subject to penalties under federal law for misrepresentation.

148.     Moreover, Mr. Hunter compounded his error by misusing this information. For example, in certain instances Mr. Hunter again used the income disclosed on a bankruptcy filing as the basis for three separate findings: (1) income misrepresentation, (2) excessive DTI and (3) "Pre-Closing Loan Tape Discrepancy." For example,

HIGHLY CONFIDENTIAL

- Mr. Hunter made a misrepresentation of income finding for loan number NHELI_2006_HE3_2002208686.[116] The borrower on the subject loan stated an income that the underwriter used to properly qualify the loan under the applicable guidelines. The loan closed in ████████ and the underwriter would therefore have used the borrower's stated ███ income in evaluating the borrower's ability to repay the loan. The borrower filed █████████████████████████████████████████████ ████████████ Mr. Hunter used the filing, ███████████████████████ ██████████ to claim that the borrower misrepresented his income. Aside from the error of relying upon documents created post-origination, Mr. Hunter inexplicably used ████ income to find a defect, even though ██████ income was used to qualify for the loan. Mr. Hunter used the ████ income from the ██████████ to recalculate the loan's DTI ratio—and then made two derivative claims for excessive DTI and a "Pre-Closing Loan Tape Discrepancy" for the DTI entry. I cleared all three of these findings.[117]

- Mr. Hunter made another misrepresentation of income claim, Exhibit 496, for loan number NHELI_2007_2_2001930813, which closed in ████████ based on the borrower's ██████████████████[118] Mr. Hunter bases his finding on documents not available to the underwriter and compounds the error by ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Again, Mr. Hunter also used this ██████████████ for an excessive DTI and loan tape finding. I cleared all three of those findings.[119]

---

[116] Exhibit 374.
[117] *Id.*
[118] Exhibit 496.
[119] *Id.*

HIGHLY CONFIDENTIAL

149.    In addition, Mr. Hunter uses Dr. Kilpatrick's Greenfield AVM as the basis for 149 excessive LTV/CLTV findings. These findings therefore depend on a value generated 7 to 9 years after origination by an AVM to which none of the underwriters had access at the time of origination, instead of according to the method specified in the applicable guidelines. Accordingly, if the underwriter followed the applicable guidelines in calculating the LTV/CLTV, I cleared the finding. Overall, I was able to clear all 149 excessive LTV/CLTV findings based on Dr. Kilpatrick's AVM.

150.    An underwriter must look to the then-applicable underwriting guidelines to determine what property value to use as the denominator in the loan-to-value calculation for both the required LTV and CLTV. All of the applicable guidelines for the Sample Loans instructed underwriters to use the lesser of the appraisal or sales price as the property value. The Prospectus Supplements for all the Securitizations also disclosed this method for calculation of LTV/CLTVs.[120] Mr. Hunter, on the other hand, substitutes Dr. Kilpatrick's AVM values for the appraisal values or sale prices that the underwriter used in accordance with the applicable guidelines. Aside from being contrary to underwriting guidelines, Mr. Hunter's method is flawed for two additional reasons: (1) the underwriter had no access to the value generated by Dr. Kilpatrick's GAVM at the time of the loan's origination and (2) as discussed in more detail by Nomura's other experts, Dr. Kilpatrick's GAVM is an unreliable measurement of property value.[121] I cleared these findings because the underwriters used the appropriate values for their LTV/CLTV calculations. For example:

---

[120] *See* 2005-AR6 Pro Supp at S-23-24; 2006-FM1 Pro Supp at S-26-27; 2006-HE3 Pro Supp at S-32; 2006-FM2 Pro Supp at S-33; 2007-1 Pro Supp at S-49; 2007-2 Pro Supp at S-34; 2007-3 Pro Supp at S-33.
[121] *See* August 14, 2014 Expert Reports of Lee Kennedy, Hans Isakson, and Jerry Hausman.

HIGHLY CONFIDENTIAL

- Mr. Hunter made an excessive LTV finding for loan number NAA_2005_AR6_1002111410.[122] The subject loan was for a purchase transaction and the underwriter used the sale price of ███████ in accordance with applicable guidelines, to calculate an LTV ratio of ██████ below the guideline maximum of 80%. Despite the sale price negotiated in an arm's length transaction, Mr. Kilpatrick's GAVM produced a value of ███████ yielding an LTV of █████ Mr. Hunter uses this retrospective valuation, determined nine years after the loan closed in █████ as the basis for excessive LTV and "Pre-Closing Loan Tape Discrepancy" findings. Because the underwriter properly calculated the LTV using the sale prices in accordance with the applicable underwriting guidelines, I cleared both these findings.[123]

- Mr. Hunter claimed loan number NHELI_2006_FM2_2001987494, Exhibit 245, had an excessive CLTV. The applicable guidelines allowed an LTV of 80% and a CLTV of 100%. The underwriter properly calculated the LTV/CLTV for this loan using an appraised value of ███████ and determined the loan met the applicable guidelines. Mr. Hunter uses a property value of ██████ based on Dr. Kilpatrick's GAVM—a value produced six years after the subject loan closed. Mr. Hunter's claim is that the underwriter should have neglected the applicable guidelines and used a value that did not exist when the loan was originated. Mr. Hunter's excessive CLTV and derivative loan tape findings are baseless, and I cleared them both.[124]

---

[122] Exhibit 65.
[123] Id.
[124] Exhibit 245.

HIGHLY CONFIDENTIAL

**D.    Plaintiff's Expert Improperly Asserts That Borrowers Misrepresented Occupancy of the Property**

151.    Among Mr. Hunter's claimed materially defective loans are 105 loans for which Mr. Hunter claims that the borrower supposedly misrepresented occupancy of the property. All of these allegations depend upon documents that did not exist at the time of the loan's origination. The documents allegedly indicate that within 12 months of the date of origination, the borrower listed a primary residence other than the address of the mortgaged property.

152.    Mr. Hunter's occupancy analysis is flawed in four ways. First, he confuses the borrower's intent to occupy with actual occupancy. Second, he relies on post-closing documentation to determine whether the borrower improperly represented previous intent to occupy at the time of origination. Third, he largely bases his occupancy findings on credit reports, which are poor indicators of occupancy. Fourth, in many cases he ignores that the address of the subject property is noted as the borrower's address even in the documents he cites as evidence that the borrower in fact occupied a different property.

### 1.    Plaintiff's Expert Ignores Intent to Occupy

153.    Mr. Hunter incorrectly applies the standard for owner-occupancy. In a refinance transaction, there is rarely a question as to occupancy, because there is regular communication with the borrower during the origination process. It is fairly easy for the underwriter or loan processor to obtain reasonable assurance that the property is occupied by the borrower. For example, the borrower will provide an address for necessary correspondence. If that address is not the subject property, the underwriter would have the opportunity to request and evaluate an explanation. In the absence of such a discrepancy, it would not be reasonable to conclude that owner occupancy was misrepresented based on data that was not publicly available at the time the loans were underwritten.

154.     Purchase transactions, which represent 48 out of 105, or 45.7% percent, of Mr. Hunter's findings related to owner occupancy, present more difficulty, because no borrower resides in the subject property at the time the loan is originated. Because events can occasionally cause a borrower to fail to occupy the property, during the underwriting process the primary concern regarding occupancy is the borrower's *intent* to occupy the property. Accordingly, almost all guidelines define an owner-occupied property based on the owner's intent to move into the property within a certain period after closing.[125] In my opinion and experience, this was widely understood in the industry in the 2005-2007 time period.

155.     To evidence this intent, the mortgage industry has developed a standard occupancy certificate, which may read, for example, "I/We understand that the loan for which we are applying is intended only for the purchase of a home, which at least one of us, the applicants, intends to own and personally occupy as his/her principal residence within 60 days of the close of escrow or settlement" and "I/We understand that the Lender is willing to evaluate my loan application only because I/we certify the intention to occupy the property."[126]

156.     But even a borrower who agreed to such a representation in good faith might, under certain circumstances, never occupy the subject property. Such circumstances could include the borrower's inability to sell his current residence, a job relocation, divorce, or unforeseen financial hardship.

157.     Mr. Hunter's evidence that the properties were not owner-occupied has no bearing on the question of the borrower's intent, nor does it account for circumstances where the borrower intended to occupy the property when the loan was originated, but was thwarted by changed circumstances.

---

[125] Aegis Signature Underwriting Guidelines dated 6/14/2005, JPMC-UWG-BEAR-000005506 ("Borrower(s) declare(s) his/her/their intention to occupy the subject").
[126] Occupancy Affidavit Example, NOM-FHFA_01528164.

HIGHLY CONFIDENTIAL

## 2.   Plaintiff's Expert Relies Upon Post-Closing Documents

158.   In certain instances, Mr. Hunter based his allegations of misrepresentations on post-closing information such as audit credit reports, mortgage payment checks, LexisNexis and DataVerify reports, bankruptcy documents, utility and other public records, and loss mitigation documents such as tax returns. Ninety-five of the 105 occupancy findings rely on "audit credit reports" pulled seven to nine years after the origination of the subject loan and which were therefore not available to the underwriter.[127] As discussed *supra* Section IX.C, relying on this information is improper because it would not have been available to the origination underwriter, and would not have contradicted the borrower's intent to occupy the property.

159.   Not only is it improper to utilize information not available to the original underwriter, but Mr. Hunter compounds his error by misusing such information. In the paragraphs that follow I provide examples of Mr. Hunter's misuse of credit reports pulled after origination in forming his opinions as to borrower occupancy.

## 3.   Plaintiff's Expert Improperly Relies on Credit Reports for Occupancy

160.   Mr. Hunter relies on credit reports to support 96 claims of misrepresentation of occupancy. Credit reports are unreliable and poor indicators of occupancy for several reasons. First, the reports do not indicate whether the addresses listed are primary or secondary. Rather they indicate only that certain addresses have been associated with the borrower.

161.   Second, Mr. Hunter misinterprets the "audit credit reports" badly. Mr. Hunter asserts that "audit credit reports" support a misrepresentation of occupancy finding when there is no evidence of the subject address on the audit credit report. But "audit credit reports" only

---

[127] The only occupancy finding in which Mr. Hunter relies upon a credit report pulled at the time of origination is for loan number NHELI_2006_FM1_2002009090, Exhibit 162. In fact, this is the only "misrepresentation of occupancy" finding in which the cited information was available at the time of the subject loan's origination, and it is the only occupancy related finding I was not able to clear.

HIGHLY CONFIDENTIAL

report a consumer's address when the consumer lists that address at the time he applies for

credit. A borrower may live in a subject property but not apply for credit during the time he lives

there; under those circumstances, the borrower would not have made a misrepresentation with

respect to his intent to occupy a property, and in fact would have occupied the property, but the

property would not be listed on the "audit credit report" pulled several years later.

162.     Third, the dates associated with the addresses often overlap, a circumstance which

prevents identifying any one residence as primary and underscores the unreliability of credit

reports. For example, Mr. Hunter made a misrepresentation of occupancy finding for loan

number NAA_2005_AR6_1002008905 based on the presence of another address on the "audit

credit report" pulled by Mr. Hunter's team nine years after the loan's origination.[128] The report

shows ████████████████████████ which was after the subject loan's closing

date. One of those addresses is for the subject property. Mr. Hunter ignores this information and

only mentions the other address reflected on the report. This means, according to Mr. Hunter's

logic, that the borrower had two primary residences on the same day, which is not reasonable.

The fact that credit reports may list multiple addresses for the same date is simply more evidence

that addresses reported by creditors to the credit bureau are not definitive evidence of occupancy.

163.     For example, Mr. Hunter supports his misrepresentation of occupancy finding for

loan number NHELI_2006_FM2_2001987494 by observing that the subject property address is

not shown on the credit report Mr. Hunter's team pulled eight years after origination.[129]

However, there is no indication that the borrower applied for credit after the loan closed in ████

████ Credit reporting agencies would therefore not have a record of the borrower using the new

address to apply for credit.

---

[128] Exhibit 56.
[129] Exhibit 245.

HIGHLY CONFIDENTIAL

164.    Fourth, Mr. Hunter inappropriately values evidence of multiple addresses in the "audit credit report" over significantly stronger evidence from the loan file that the underwriter actually evaluated in judging a borrower's intent. For loan number NAA_2005_AR6_1002123505, Mr. Hunter's "audit credit report," pulled eight years after the loan's origination, lists the subject property address as of ██████ which is after the loan closing date of ████████[130] Mr. Hunter again ignores this and only mentions another address reflected on the report (as of the same day) to support his misrepresentation of occupancy finding. Again, Mr. Hunter seems to give credence only to reported addresses that support his conclusion despite significant evidence in the origination loan file that supports the borrower's intent to occupy the subject property, including █████████████████████████ ██████████████████████████████████████████████████ ████████████ Mr. Hunter noted nothing in the origination loan file or any other documents that would have been available at the time of origination that would have led the underwriter to question the borrower's intent to occupy.

165.    Mr. Hunter's misrepresentation of occupancy findings were rife with similar mistakes. For example:

- Mr. Hunter's "audit credit report" pulled nine years after the origination of loan number NAA_2005_AR6_1002196441 shows the subject property address as of ████████ which is after the closing date of ████████[131] Mr. Hunter once again ignores this and only mentions another address █████████████████ which is listed on the report twice, on ███████████████ but with two different

---

[130] Exhibit 70.
[131] Exhibit 93.

HIGHLY CONFIDENTIAL

cities and zip codes. This is additional evidence of how unreliable address data is

on credit reports.

- Mr. Hunter's misrepresentation of occupancy finding for loan number

    NHELI_2006_FM1_2002006487 again relies upon an "audit credit report" and,

    once again, he failed to note that the credit report reflects the subject property

    address on ███████ and ███████. The loan closed on ███████[132] Instead, Mr.

    Hunter only noted a different address that was reported as of ███████ Under

    Mr. Hunter's logic, the addresses the "audit credit report" lists would imply that

    the borrower occupied the subject property in ███████ changed occupancy in

    ███████ and then again resided in the subject property in ███████ This scenario is

    quite unlikely and further supports my conclusion that addresses reported to the

    credit agencies are unreliable as evidence of occupancy.

### 4. Plaintiff's Expert Relies on Other Documents Not Available to the Underwriter

166.    Mr. Hunter identified nine alleged findings of borrower misrepresentations of

occupancy based on documents other than audit credit reports. In these instances, Mr. Hunter

similarly relies on documents not available to the underwriter at the time of the subject loan's

origination, including mortgage payment checks, LexisNexis Accurint and DataVerify reports,

bankruptcy documents, utility and other public records, and loss mitigation documents such as

tax returns. As discussed above, reliance on documents created and collected years after the

subject loan closed is illogical because the underwriter could not have considered such

information. Furthermore, such evidence is not relevant to the borrower's intent to occupy the

property at the time of the subject loan's origination.

---

[132] Exhibit 152.

HIGHLY CONFIDENTIAL

167.    For example, Mr. Hunter relies on bankruptcy filings for five occupancy-related findings. These bankruptcy documents were filed with a court years after the subject loan closed and were never available to the original underwriter. Furthermore, a bankruptcy strongly implies that some unexpected event occurred in a borrower's life that could have altered a borrower's original intention. Mr. Hunter nevertheless claims that an underwriter should be on notice that a borrower does not intend to occupy a property at the time of origination because the borrower listed another address in a bankruptcy filing years after the subject loan closed. For example, the borrower for loan number NHELI_2006_HE3_2001915223 declared ██████████████████ ████████ more than four years after the subject loan closed on ████████ Mr. Hunter uses this filing to support a misrepresentation of occupancy claim because the filing states that the borrower lived in another home from ██████████████████[133] The applicable guidelines state that a borrower should intend to reside in the subject property for 12 months. Thus, Mr. Hunter concludes, because a document generated four years later disclosed that a borrower only lived in a property ████████████ instead of twelve months, the underwriter made an error in originating the loan as "owner-occupied." Again, in making this finding, Mr. Hunter does not reasonably consider the loan from the perspective of the origination underwriter, who would have reviewed evidence such as a signed occupancy letter from the borrower, and would have had no access to evidence suggesting that the borrower moved away from the property ████████ after the loan closed. Nor would evidence that a borrower moved ████ ████ after origination indicate anything about the borrower's intent.

168.    Overall, I was able to clear all of the 105 "misrepresentation of occupancy" findings. I cleared these findings because they were based on information derived from

---

[133] Exhibit 318.

documents created after the origination of the loan and, in large part, a flawed methodology of relying on "audit credit reports."

### E.    Plaintiff's Expert Misread or Misinterpreted the Guidelines

169.    I found 330 loans for which Mr. Hunter misread or misinterpreted the requirements of the Guidelines. For example, for loan number NHELI_2006_FM1_2002006490[134], Mr. Hunter claims the borrower did not have sufficient credit history for approval. The requirement Mr. Hunter noted was for "re-established" credit history, and does not apply to the subject transaction as the loan amount is under ▉▉▉▉ it is a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ith an LTV less than ▉▉▉▉ and the verification of housing history is from a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[135]

170.    In another example, Mr. Hunter cited two defects for loan number NHELI_2006_FM1_2001902485 that were not supported.[136] First, Mr. Hunter claims the lender failed to obtain the most recent pay stub for the borrower, which was required to properly verify the borrower's income. Mr. Hunter claims the pay stub dated ▉▉▉▉▉▉[137] did not satisfy the guideline requirement of "most recent" as the loan closed on ▉▉▉▉▉

171.    Mr. Hunter cites the lender's guidelines regarding income documentation requirements, which state the most recent pay stub is required on full documentation programs. However, Mr. Hunter fails to cite, acknowledge, or consider the lender's loan documentation guidelines, which cover the age of documentation requirements.

172.    Lenders may request that the borrower provide the most recent paystubs when the underwriter is reviewing borrower income as described in the cited Guidelines. However, there is

---

[134] Exhibit 153.
[135] Fremont Wholesale Division Underwriting Guidelines, 7/1/2005, NOM-FRE-GL_00001217- NOM-FRE-GL_00001218; NOM-FRE-GL_00001220- NOM-FRE-GL_00001221.
[136] Exhibit 133.
[137] Pay Stub, UBS-LF00218037.

HIGHLY CONFIDENTIAL

often a significant time period between the underwriter's review of borrower income and the closing of the loan. It would not be reasonable to request the borrower to provide new paystubs as they become available. The Guidelines recognize this and in Chapter 2 detail the age of documentation[138] required, including age of pay stubs. These guidelines clearly state that pay stubs should be no more than 90 days old at the time of funding. The pay stub dated ███████ ████████████████████ at the time of funding, ███████ and as such satisfied the applicable guideline requirement.

173.    Mr. Hunter also claims the same loan number NHELI_2006_FM1_2001902485 is defective because the lender failed to properly document the borrower's prior 12-month housing history.[139] Once again, Mr. Hunter failed to adequately research and cite the applicable guidelines and properly review the loan approval.

174.    Mr. Hunter is correct that the applicable guidelines require a borrower's prior rental history to be verified; however, Mr. Hunter fails to note that the guidelines also provide for transaction scenarios in which the rental history is unverifiable or unavailable.[140] In this instance, the applicable guidelines allow for transactions with no rental history if several conditions are met. The loan amount must be lower than $750,000, the loan must be graded "C," the borrower must have a minimum credit score of 500, and the LTV ratio cannot exceed 75%. The loan approval[141] reflects that the loan meets these criteria, with a credit score of ████ a final LTV of ████ a loan amount of ████████ and a credit grade of ████ which are the required conditions.

---

[138] Fremont Wholesale Division Underwriting Guidelines, 7/1/2005, Loan Documentation Guidelines, NOM-FRE-GL_00001199.
[139] Exhibit 133.
[140] Fremont Wholesale Division Underwriting Guidelines, 7/1/2005, No Rental History Guidelines, NOM-FRE-GL00001222.
[141] Loan Approval, NOM-FHFA_00537731 – NOM-FHFA_00537734.

Furthermore, the "Underwriter Recommendation" section of the loan approval clearly states that the underwriter approved the loan under the unverifiable rental history requirements.

175.    With respect to loan number NHELI_2007_2_2002181904[142], Mr. Hunter claims the lender failed to verify the borrower's prior 12 month rental history as required by the Guidelines. But the applicable guidelines[143] do not require verification of the prior 12 months' rental history when the borrower meets the minimum base credit history criteria. In this instance, the borrower met the minimum credit requirements of ▇▇▇▇▇ reporting fo ▇▇▇▇[144]

### F.    Plaintiff's Expert Improperly Cited "Minimum Industry Standards" That Are Not in the Applicable Guidelines

176.    Mr. Hunter considered 428 loans to have substantial defects but was unable to cite any specific deviation from the Guidelines. Instead, Mr. Hunter often compared subject loans to a set of underwriting standards that he refers to as "minimum industry standards." While he states that he uses "minimum industry standards" "[i]n instances where no underwriting guidelines were available or the underwriting guidelines were silent regarding key credit characteristics,"[145] he in fact relied on his own "minimum industry standards" in 271 of the 571 loans, or 47.46% of the loans, for which he found substantial defects. Mr. Hunter relied upon "minimum industry standards" in his analysis of another 22 loans, but did not note a substantial defect in these instances.

177.    In his report Mr. Hunter claims the "use of minimum industry standards is not unusual or anything new to the mortgage credit markets."[146] However, he refutes his own statement by saying "the bulk of loan sale transactions historically have identified key guidelines

---

[142] Exhibit 543.
[143] Ownit Mortgage Underwriting Guidelines- The Right Loan, 2/24/2006, ML_FHFA6097339.
[144] Credit report, NOM-FHFA_03576625.
[145] Hunter Report, p. 86.
[146] *Id.*

HIGHLY CONFIDENTIAL

that both parties agreed to…" My experience is consistent with Mr. Hunter's latter statement. In my experience with secondary mortgage market transactions, buyer and seller agree to specific guidelines and loan parameters that are defined in loan purchase agreements, and do not rely on nebulous "industry standards." I am not aware of any lenders using "minimum industry standards" in their underwriting processes. This is because there are no "minimum industry standards" for the approval of a mortgage loan; a loan is approved when an underwriter uses a reasonable approach to conclude that a loan complies with the underwriting guidelines that apply to that loan. While individuals in the mortgage industry may have personal views as to which standards or guidelines may be commonly applied, there is no set of "minimum industry standards" or anything acknowledged as a standard in the business.

178.   Representatives from originators, third-party diligence providers, and the GSEs have testified that there were no such "minimum industry standards."

179.   For example, a representative from Quicken Loans—an originator that contributed loans to the at-issue SLGs—testified that "each product is different, so there's not a set minimum across every possible loan . . . in every situation. So each product has their own requirements, and even on a state level some state[s] . . . have their own thresholds, some states will cap at DTI, others won't. So . . . there's not an industry minimum."[147] Other originators testified to this as well, agreeing that there were no "minimum industry standards" during the relevant time period.[148] Ronald Feigles, the Freddie Mac employee in charge of its due diligence on its Alt-A and subprime securitizations, did not recall "instruct[ing] Clayton to review loans for whether they conformed with minimum industry standards."[149] Donald Bisenius, the Senior Vice President of Freddie Mac's Single Family Risk Management Group, was similarly unaware

---

[147] Deposition of Clint Bonkowski, April 21, 2014, 51:14-52:14.
[148] *See* Leff Deposition Tr. at 159:22-160:8. *See also* Deposition of Jeff Crusinberry, April 8, 2014, 96:12-97:24.
[149] Deposition of Ronald Feigles, June 13, 2013, 595:12-596:18.

HIGHLY CONFIDENTIAL

of any "industry standard or a minimum industry standard for loan underwriting," and Michael

Aneiro, Freddie Mac's Senior Vice President of Non-Agency Portfolio Management, did not

recall having opinions about "industry standard or industry average practices for underwriters or

issuers."[150] Mr. Salahuddin, a trader for Fannie Mae, also testified that he was unaware of any

industry standard with respect to underwriting procedures.[151] Similarly, Ms. Beal, Clayton's

30(b)(6) representative, testified that, to her knowledge, there was no set of minimum industry

standards to which Clayton reviewed loans in the 2005-2007 time period.[152]

180.    Mr. Hunter tries to suggest his "minimum industry standards" are "implicit in the

representations contained in the Offering Documents."[153] Yet Mr. Hunter was unable to support

that claim with a citation from the Prospectus Supplements, despite devoting an entire exhibit

consisting of 19 tables[154] to Prospectus and Prospectus Supplement citations.

181.    Mr. Hunter further discredits the concept of "minimum industry standards" by

admitting that he created the standards he used, saying he "distilled the minimum industry

standards that were used from 2002 through 2007"[155] from a variety of sources. He had to create

the standards because a definitive set of "minimum industry standards" simply does not exist.

182.    Mr. Hunter's application of "minimum industry standards" ignores the variation

among relevant lending and underwriting programs. He suggests that these "minimum industry

standards" "constituted the most lenient standards found in underwriting guidelines in the

mortgage loan industry between 2002 and 2007."[156] But Mr. Hunter's "minimum industry

standards" were apparently not the "most lenient," since he used them so frequently to create

---

[150] Deposition of Donald Bisenius, December 6, 2013, 409:2-18, 492:24-493:19; Deposition of Michael Aneiro, June 7, 2013, 539:21-540:6.
[151] Deposition of Shayan Salahuddin, September 24, 2013, 556:5-60:23.
[152] Beal Deposition Tr. at 74:17-78:14.
[153] Hunter Report, p. 21.
[154] *Id.*, Exhibit 6.
[155] *Id*, p. 87.
[156] *Id*, p. 91.

underwriting defects where he could not by reference to the actual Guidelines under which the loans were originated. These "minimum industry standards" in fact sometimes contradicted actual underwriting guidelines.

183.   For 49 loans, Mr. Hunter fabricates requirements where no applicable guidelines have been identified. As an example, for loan number NAA_2005_AR6_1001976675, Mr. Hunter did not cite any Guidelines.[157] Mr. Hunter instead cited "minimum industry standards" for a CLTV requirement, claiming the maximum CLTV for a stated income, non-owner occupied property with a ███ FICO score is ███ The CLTV on the transaction is ███ Mr. Hunter fabricated the 90% CLTV requirement; this loan does not violate the guidelines that applied to it. In fact, there were originators at the time that allowed CLTVs on similar loans in excess of Mr. Hunter's "minimum industry standards." For example, Fremont Investment and Loan allowed CLTVs as high as 100%.[158]

184.   In other cases, Mr. Hunter uses "minimum industry standards" to impose requirements beyond those set forth in the applicable guidelines. For example

- Mr. Hunter makes nine total claims categorized as "excessive payment shock." Seven of the nine claims rely upon Mr. Hunter's invented "minimum industry standard" that "the current housing expense must be compared to the proposed new obligation" in order to analyze the potential for payment shock. None of the guidelines for these seven claims require an underwriter to analyze the potential for payment shock.[159] Because none of these seven findings was based on an

---

[157] Exhibit 48.
[158] Fremont Investment and Loan Underwriting Matrix dated 10/9/2006, NOM-FHFA_04452814.
[159] *See e.g.* NHELI_2006_FM1_2002120173, Exhibit 177. I was also able to clear Mr. Hunter's two findings of "excessive payment shock" that cited guidelines. *See* loan number NHELI_2007_3_2002131013, Exhibit 617 and loan number NHELI_2007_3_2002238154, Exhibit 662.

actual guideline recommendation that an underwriter consider payment shock, I

cleared those findings.

- Mr. Hunter made a finding for loan number NAA_2005_AR6_1001902888 in

   which he claims the underwriter failed to provide a "Final HUD-1."[160] Mr. Hunter

   cites "minimum industry standards" to support his claim that a final HUD-1

   should be in the loan file. The applicable Guidelines—to which both parties

   stipulated—do not instruct the underwriter retain the "Final HUD-1" in the loan

   file.[161]

- Mr. Hunter made a finding for loan number NAA_2005_AR6_1002024332,

   Exhibit 58, that the underwriter failed to obtain a second lien note, in violation of

   the "minimum industry standard" requiring that "a fully executed second lien note

   was required for a lien established simultaneously with the subject transaction."

   The applicable Guidelines to which the parties stipulated did not require that the

   underwriter obtain a second lien note.[162]

185.    In other instances, the applicable guideline stated a requirement, yet Mr. Hunter

ignored that requirement and imposed a more stringent requirement, considering the more

stringent requirement the "minimum" required by the industry. As an example, for loan number

NHELI_2007_2_2002179884[163],Mr. Hunter claims the lender failed to document the borrower's

prior 12 month rental history with canceled checks as required by "minimum industry

---

[160] Exhibit 13.
[161] Alliance Mortgage Banking Corp – Conduit Alt A Underwriting Guidelines and Product Mix dated 4/22/2005, JPMC-UWG-WAMU-000736544. This loan is also a missing document claim, which is addressed *infra* Section IX.K.
[162] AMNET Program Highlights – Advantage Non-Conforming Fixed dated 6/24/2005, JPMC-UWG-WAMU-000740672. For other examples of Mr. Hunter imposing invented requirements on an underwriter, see the discussion on credit inquiries *supra* Section IX.C.
[163] Exhibit 539.

HIGHLY CONFIDENTIAL

standards." Mr. Hunter fails to note that the applicable guidelines, Master Financial Score Select[164], address previous rental history verification requirements. These guidelines state that the borrower's prior housing payment history may be supported by 12 months' canceled checks or a Fannie Mae VOR form as long as it is not completed by the seller of the property. The file contains a Fannie Mae VOR form[165] verifying ████████ of on time rental payments which satisfies the applicable requirement.

186.    Yet another example is loan number NAA_2005_AR6_1002196405.[166] In this instance, Mr. Hunter claims that according to "minimum industry standards," a transaction is prudent for the borrower only if the DTI is below 55%. Loan number NAA_2005_AR6_1002196405, however, was ████████ loan, and the applicable guidelines had no DTI maximum. ████████████████████████████████████ ████████████████████[167]

187.    At times, Mr. Hunter's "minimum industry standards" are more stringent than the requirements of the GSEs themselves. For example, in May 2005, Fannie Mae published its Anti-Predatory Lending Compliance Profile, which described the terms of the subprime loans Fannie Mae was allowed to purchase as whole loans under its Anti-Predatory guidelines. Fannie Mae's Anti-Predatory Lending Compliance Profile stated that "Fannie Mae does not purchase loans where the DTI is > 60%."[168] Likewise, most of the Nomura prospectus supplements disclosed that "[g]enerally" the DTI ratio for the loans backing the securities was "not in excess of 60%"(e.g.. 2005 AR6 Pro Supp at S-88-89) Mr. Hunter, however, argues that the "minimum

---

[164] Master Financial Score Select Matrix, 5/10/2006, NOM-FHFA_04455620.
[165] Verification of Rent, NOM-FHFA_03149465.
[166] Exhibit 90.
[167] Cameron Financial Group / 1st Choice Mortgage True Alt A Underwriting Guidelines, 4/26/2005, JPMC-UWG-BEAR-000041500.
[168] See FHFA11863279 at 283.

industry standard" prohibits a DTI ratio greater than 55 percent.[169] This again directly contradicts Mr. Hunter's statement that the "minimum industry standards" were the most lenient standards in the industry.

188.    Likewise, in Freddie Mac's own subprime and Alt-A securitizations, it employed guidelines that contradict Mr. Hunter's purported "minimum industry standards." For example, Mr. Hunter states that it was a "minimum industry standard" to impose the following limits on late payments: "[f]or a subprime mortgage, the borrower may have [only] one 30-day late payment within the past 12 months, and one 60-day late payment within the past 24 months."[170] In the due diligence Freddie Mac conducted on its July 2007 "T-Deal"[171] securitization of a pool of Wells Fargo subprime loans, however, Freddie Mac does not appear to have applied such a standard. For example, as reflected in the Clayton diligence reports, Freddie Mac waived in one loan where the "Mortgage/Rental late[][payments] exceed[ed] grade limits . . . 2x60 in the last 12 months."[172] It waived in another loan where "3x60 [late payments] exceeds 1x60 max allowed. Prior 2nd mortgage was 60 days late in 9/06, 8/06, 7/06 rolling of 60 days late not permitted."[173] Freddie Mac does not appear to have viewed waiving in loans with more than "one 60 day late payment within the past 24 months," as falling below any "minimum industry standard" for subprime loan origination.

189.    In another example, Mr. Hunter claims that it was a "minimum industry standard" to "verify a salaried borrower's employment, confirming the employer, occupation, position, and length of employment. The lender must verify employment for the previous 12 months."[174]

---

[169] Hunter Exhibit 7.
[170] Hunter Report, Exhibit 7.
[171] "T-Deals" were securities that Freddie Mac offered to the public after performing pre-funding due diligence. *See* discussion below in Section IX.C.
[172] FHFA02438975 at 8999.
[173] FHFA02438975 at 9279.
[174] Hunter Report, Exhibit 7.

"[T]hese standards required the underwriter to verify a salaried borrower's employment for the 12 months prior to the loan application…[by] at least a verbal VOE or written VOE form signed by the borrower's employer certifying the borrower's date, place and status of employment."[175] In the same July 2007 T-Deal, Freddie Mac waived in numerous loans where its own "[p]hone re-verification indicate[d] [that the] borrower [was] no longer employed at company listed on application."[176]

190.    Mr. Hunter stated that it was a "minimum industry standard" for lenders and underwriters to require that "the borrower must have an established credit history with at least one open and active trade line during the 12 months preceding the loan closing."[177] Here again, Freddie Mac does not appear to have considered this standard to govern its subprime loan underwriting. It included a loan in a T-Deal where "[the] [c]redit history [was] insufficient for program/grade . . . Borrowers have no active tradelines."[178] Freddie Mac waived in this loan despite the fact that "[the] [c]redit [was] history of collections, chargeoffs and judgements[sic] . . . First Premier Bank account shows included in Chapter 7 bankruptcy 5/02."[179]

191.    Mr. Hunter also claims that it was a "minimum industry standard" for lenders to verif[y] a self-employed borrower's employment with appropriate documentation for the 12 month period preceding the loan closing. Freddie Mac included loans in its T-Deals where this step does not appear to have been taken. It also included loans where the reasonableness of stated income appears not to have been assessed. For example, the only justification in the Clayton report for a borrower with a stated income of ██████████████████████

---

[175] Hunter Report, 56-57.
[176] *See* FHFA02439296 at 39525, 39592, 39623.
[177] Hunter Report, Exhibit 7.
[178] FHFA02438975 at 9007.
[179] FHFA02438975 at 9007.

████████████████████████████████████████████████ [80] At the time of this Clayton

report ████████████ were required only to average $1,000 in sales per month for three

consecutive months, maintain four average monthly listings for the past three months, and

maintain a 98 percent positive total feedback rating.[181]

### G.    Plaintiff's Expert Cited Deviations That Were Not Significant

192.    For 153 loans, Mr. Hunter found loan defects based upon exceptions from

Guidelines that are insignificant. These are minor deviations that are of the type that an

underwriter would generally not have found important enough to consider deviations. For

example, for loan number NAA_2005_AR6_1002196505, the applicable guidelines allow a

transaction to include seller concessions of up to 2% of the loan amount.[182] Seller concessions

are costs such as title insurance and processing fees that the seller of the property pays on behalf

of the buyer/borrower. Mr. Hunter makes a finding for "excessive seller contributions" because

the seller concessions amount listed on the HUD-1 was ████████████████████ of the

guideline recommendation. This minor deviation is not significant and does not increase the risk

of the transaction.

193.    As another example, for loan number NHELI_2006_FM1_2002118570[183], Mr.

Hunter claims that the DTI of ████████ was excessive because the applicable guidelines allowed

for a maximum DTI of 50%.[184] Beyond the fact that this loan was considered defective due to an

immaterial distinction, Mr. Hunter's failure to acknowledge that the compensating factors[185]

present on this file—an LTV ████████████████████████████████████████

---

[180] FHFA02439296 at 39556-39558.
[181] Power Sellers, Criteria, 1995-2007 eBay Inc. (via Internet Archive, Wayback Machine),
https://web.archive.org/web/20070508213948/http://pages.ebay.com/services/buyandsell/powerseller/ criteria.html.
[182] Exhibit 96.
[183] Exhibit 169.
[184] Fremont Scored XTreme Wholesale Rate Sheet, 4/19/2004, JPMC-UWG-BEAR-000135527.
[185] Credit Report, NOM-FHFA_00616093 - NOM-FHFA_00616098. Loan Approval, NOM-FHFA_00616211 and
UBS-LF00183829 – UBS-LF0013831.

█████████████████████████████████████████████ indicates a lack of understanding of compensating factors and how they were utilized during the time of origination.

194.    In another example, Mr. Hunter cited a defect for underwriting error or negligence for loan number NAA_2005_AR6_1002008905[186], claiming that the discrepancy in the borrower's position between the verbal and written verifications of employment was significant. In this instance the verbal verification[187] indicated the borrower was ███████████ and the written verification[188] indicated the borrower was a ████████ However, this discrepancy would be consider minor and insignificant given that this was a full documentation loan, with the income verified by a ████████████████████████████████ and given that the borrower's employment was █████████████████████████████████

### H.    Plaintiff's Expert Applied the Wrong Guidelines

195.    For 106 loans Mr. Hunter applied the incorrect Guidelines in forming his opinion. For the majority of these errors, Mr. Hunter applies Guidelines from the incorrect loan program.

196.    For example, for loan number NAA_2005_AR6_1001832288,[190] Mr. Hunter used underwriting Guidelines for the Conduit ALT-A Program.[191] However, the loan was originated under the Expanded Portfolio Program.[192] The applicable Guidelines stated that a bankruptcy should be discharged for two years and the borrower needed to re-establish credit for the loan to meet the guidelines.[193] The ████████ was discharged on ████████[1]94 The loan

---

[186] Exhibit 56.
[187] Verbal VOE, NOM-FHFA_00032135.
[188] Written VOE, NOM-FHFA_00032136.
[189] W2 form, NOM-FHFA_00032137.
[190] Exhibit 4.
[191] See Hunter Report, Exhibit 2.
[192] Loan approval form, WFFHFASMPL001409988.
[193] Alliance Bancorp Matrix, JPMC-UWG-WAMU-000736379 - JPMC-UWG-WAMU-000736380.
[194] Credit Report - WFFHFASMPL001409994 - WFFHFASMPL001410004.

application date was ████ [95], the credit report date was █████ and the loan funded ████ therefore the loan was underwritten consistently with the proper guidelines.

197.    Mr. Hunter also utilized the wrong guidelines for loan number NHELI_2006_FM2_2001835967.[196] In this instance, Mr. Hunter cites guidelines that were over nine months old at origination when more timely guidelines and a specific matrix were available. Mr. Hunter cites the Fremont Underwriting Guidelines dated 7/2005 when the loan closed on ████ The applicable guidelines were the Fremont Underwriting Guidelines dated 3/1/2006[197] and the Score Xpress Underwriting Matrix dated 12/12/2005[198] as these guidelines were closer in time to the application date of ████ The use of the incorrect guidelines led Mr. Hunter to cite an insufficient credit score defect for this loan. Mr. Hunter claims the borrower's credit score of ███[99] was insufficient as a 620 score was required per the guidelines. The applicable guidelines require a minimum credit score of 600 for the program used to approve the transaction.[200]

## I.    Plaintiff's Expert Made Calculation Errors

198.    For 98 loans, Mr. Hunter made miscalculations in evaluating the original underwriting of the loan. For example, for loan number NHELI_2006_FM1_2001835590 Mr. Hunter claims the lender failed to properly calculate the borrower's monthly debts, alleging a ████ auto loan payment was not included in the total debts of ████ used by the lender.[201] Mr. Hunter did not provide a breakdown of the ████ in total debt payments he used other than to simply add ████ to the total debt payments used by the lender. This calculation is incorrect. The

---

[195] Application, WFFHFASMPL001409876.
[196] Exhibit 210.
[197] Fremont Underwriting Guidelines, NOM-FRE-GL_00002168 – NOM-FRE-GL_00002291.
[198] Scored Xpress Matrix, NOM-FHFA_04458064 – NOM-FHFA_04458065.
[199] Credit Report, NOM-FHFA_00873795 - NOM-FHFA_00873803.
[200] Loan approval, NOM-FHFA_00873958 – NOM-FHFA_00873959, UBS-LF00350282, and UBS-LF00350292.
[201] Exhibit 126.

HIGHLY CONFIDENTIAL

Total Mortgage and Consumer Debts Remaining Open Worksheet[202] in the file showed the following debts—including an auto loan payment of ▮▮▮—that were to remain open and were included in the DTI ratio calculation:



| Description | Balance | Payment |
| --- | --- | --- |

199.    Mr. Hunter therefore double-counted the ▮▮ auto loan payment with no explanation as to why he did so. The DTI ratio of ▮▮▮ including monthly debts of ▮▮▮ was calculated correctly at origination. The DTI ratio of ▮▮▮ was approved as an exception to the 50% maximum. This was evidenced by the underwriter's comments on the loan approval.[203]

200.    Mr. Hunter's error in calculating the DTI ratio resulted in an unsupported excessive DTI claim on this loan.

201.    Mr. Hunter also made an error in his calculations on loan NHELI_2006_FM1_2002119743.[204] Mr. Hunter claims that the proper DTI calculation for this loan is ▮▮▮ and claims the lender failed to include monthly payment of ▮▮▮ for a consumer debt and ▮▮ for the borrower's property taxes. However, Mr. Hunter fails to provide his total debt calculation and the income he used to calculate his DTI ratio. Furthermore, Mr. Hunter miscalculated the monthly property tax amount which was ▮▮▮ per month[205], not the ▮▮ per month claimed by Mr. Hunter, and which was included in the lender's DTI calculation[206].

[202] Underwriter Analysis Worksheet, NOM-FHFA_00133003.
[203] Loan Approval, NOM-FHFA_00132996 – NOM-FHFA_00132997 and NOM-FHFA_0013299 – NOM-FHFA_00133001.
[204] Exhibit 176.
[205] Title Policy, NOM-FHFA_00360844.
[206] *See* Loan Approval, NOM-FHFA_00360873- NOM-FHFA_00360876 and Final 1008, UBS-LF00219514.

Finally, the lender correctly omitted the ██ per month consumer debt because the balance reported to the credit report was ████ and according to the guidelines[208] payments on debts of less than ███ may be excluded from the DTI calculation. Given that the lender correctly calculated the monthly property tax payment and included the payment in the DTI ratio and accurately omitted the ███ consumer payment, I cleared this finding.

202.    Mr. Hunter made another calculation error with respect to loan number NHELI_2006_FM2_2002205388.[209] In this instance, Mr. Hunter claims the original underwriter miscalculated the monthly debt. Mr. Hunter did not provide the details for his calculations but stated that the total monthly debt for the Borrower is ████ Mr. Hunter's total monthly debt calculation is incorrect under the applicable guidelines, which instructed the underwriter to use specific payment factors to calculate the minimum monthly debt associated with revolving accounts.[210] Instead, Mr. Hunter used the amount the borrower paid as listed on the credit report. The borrower's monthly debt, when the guidelines were correctly applied, was █████ which is the amount calculated by the original underwriter.

**J.    Plaintiff's Expert Incorrectly Evaluated Stated Income**

203.    Mr. Hunter cited 85 loans in which he considered a borrower's stated income to be unreasonable, but these loans in fact had incomes stated by the borrower that were reasonable for the borrower's position and tenure.

204.    Mr. Hunter instead often relied on Bureau of Labor Statistics ("BLS") information in evaluating whether stated income was reasonable. This is an unsupportable approach. In fact, the BLS Commissioner testified before Congress that BLS data is not a tool to establish

---

[207] Credit Report, UBS-LF00219524.
[208] Fremont Underwriting Guidelines, 7/1/2005, NOM-FRE-GL_00001271.
[209] Exhibit 288.
[210] Fremont Underwriting Guidelines, 5/1/2006, NOM-FRE-GL_00002759.

HIGHLY CONFIDENTIAL

"prevailing wages or determining what data are appropriate for that purpose."[211] In my experience, during the time period in which the subject loans were originated, BLS data was rarely used by underwriters as a tool to evaluate stated income, and for good reason.

205.    First, BLS data is based on employment information submitted by a sample of employers. For any particular job title and geographic location, there may be very limited information reported. The BLS Commissioner confirmed this limitation at the hearing mentioned above, testifying that BLS data is "based on responses from only a handful of employers" and can "result in large sampling error."[212]

206.    Second, BLS data is not and cannot be specific to any particular borrower, and therefore does not account for licensing, skill level, or years of experience. Nor is BLS data specific to any particular company.Real world borrowers (even those in the same line of work) have a wide range of incomes.

207.    Third, BLS statistics do not include all income. Instead, they report only what BLS defines as "wages." Base rates, commissions, incentive pay, and tips are among the categories of pay included in that defined term. Overtime pay, year-end bonuses, weekend premium pay, holiday bonuses, severance pay, and on-call pay are some of the types of pay that BLS excludes from wages.[213] These types of income, however, could properly be included by an underwriter evaluating a prospective borrower.

---

[211] Statement of Erica L. Groshen, Commissioner, Bureau of Labor Statistics, Before the Subcommittee on Workforce Protections, Committee on Education and the Workforce, U.S. House of Representatives, June 18, 2013, p. 6 (http://www.bls.gov/bls/congressional_testimony/groshen06182013.pdf).
[212] Statement of Erica L. Groshen, Commissioner, Bureau of Labor Statistics, Before the Subcommittee on Workforce Protections, Committee on Education and the Workforce, U.S. House of Representatives, June 18, 2013, p. 6 (http://www.bls.gov/bls/congressional_testimony/groshen06182013.pdf).
[213] Occupational Employment Statistics, Frequently Asked Questions," U.S. Department of Labor, Bureau of Labor Statistics, available at http://www.bls.gov/oes/oes_ques.htm.

HIGHLY CONFIDENTIAL

208.     Fourth, BLS data do not reflect current salaries. In general, these data are released in March or early April, and are a compilation of salary data from a rolling three-year cycle.[214]

209.     Fifth, BLS data is subject to a salary cap for reported compensation. Because salaried employees are limited to a cap of $187,200, individuals with high salaries such as chief executives, managers, and highly paid legal and health care professionals, among others, are effectively excluded from the statistics. Thus, BLS data are rarely representative of incomes of individuals in highly compensated professions or geographic areas where salaries are above average. BLS also does not include income earned from self-employment.[215]

210.     Last, income-comparison tools simply are not the primary way underwriters assessed stated income in the 2005 to 2007 time period. Instead, following applicable guidelines, underwriters first and foremost relied on information gathered during the origination process – information about a borrower's occupation, location, time on the job, assets, education, and full credit profile – to evaluate reasonableness. Only if "red flags" of borrower misstatements appeared in an application might an underwriter turn to a salary engine (though almost certainly not BLS data). Mr. Hunter's approach implies that in every instance underwriters should have used a particular such tool, BLS data, and that is not correct.

211.     In addition to the shortcomings of BLS data described above, Mr. Hunter often erred in identifying and applying BLS data in several ways, as described below.

### 1.     Plaintiff's Expert Used Incorrect Occupational Codes

212.     BLS data is searched based on occupational codes for various jobs. It is critical to use the correct codes when searching BLS data. Yet for a re-underwriter evaluating a loan seven

---

[214] Occupational Employment Statistics, Frequently Asked Questions, Bureau of Labor Statistics, http://www.bls.gov/oes/oes_ques.htm; *see also* Survey Methods and Reliability Statement for the May 2013 Occupational Employment Statistics Survey, p. 4, available at http://www.bls.gov/oes/current/methods_statement.pdf.

[215] Occupational Employment Statistics, Frequently Asked Questions, Bureau of Labor Statistics, United States Department of Labor, http://www.bls.gov/oes/oes_ques.htm.

HIGHLY CONFIDENTIAL

to nine years after origination, this often cannot be done reliably. BLS job codes are broad and vague, and do not account for many variations in similarly titled positions. A loan application rarely contains enough information to identify which of many BLS job codes (if any) is most similar to the borrower's job. Where, as here, there is no opportunity to ask clarifying questions of the borrower, the task is more difficult. As a result, a re-underwriter who using BLS data is often merely making a guess. In fact, as illustrated by the examples below, Mr. Hunter frequently used the incorrect occupational code.

213.    For loan number NAA_2005_AR6_1002196405, the borrower's stated position wa ██████████████████ Mr. Hunter used the occupational code ████████████ ██████████████ which returned a 90th percentile income of $2,919 per month. An internet search for the position ██████████████ returned job description information indicating previous experience as a ██████████████ was required. The more appropriate occupation code, therefore, was ████████████████████████ for which the 90th percentile income is $5,123.

214.    For loan number NHELI_2007_1_2001927386[217], Mr. Hunter used an occupational code of ██████████████████████████ which returned a 90th percentile income of $5,718. The borrower indicated ████████████████ for position on the loan application.[218] For the more appropriate occupation code of ██████████████████████████ the 90th percentile income is $7,958. Mr. Hunter failed to select an occupational code that included the title ██████████ even though the application indicated such. Had Mr. Hunter selected the more

---

[216] Exhibit 90.
[217] Exhibit 406.
[218] Uniform Residential Loan Application, NOM-FHFA_02822509.

appropriate occupation code, the 90th percentile income of $7,958 is within 10% of the borrower's stated income of ▮▮▮▮▮▮

215.    For loan number NHELI_2007_1_2002176545, the borrower stated an occupation as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Mr. Hunter used an occupational code of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ resulting in a 90th percentile income of $3,242.[219] An internet search on the employer indicated the borrower was employed in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Using a more applicable occupation code of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the 90th percentile income of $7,449, is within 10% of the borrower's the stated income of ▮▮▮▮

216.    For loan number NAA_2005_AR6_1002171202 Mr. Hunter used the occupational code ▮▮▮▮▮▮▮▮▮▮[220] The borrower indicated a position of ▮▮▮▮ ▮▮▮▮ on the loan application[221] which was confirmed by the verbal VOE.[222] There is no indication that the borrower's position involved or was within ▮▮▮▮▮▮ A more appropriate occupation code would be ▮▮▮▮▮▮▮▮▮▮▮▮

### 2.    Plaintiff's Expert Used Incorrect MSAs

217.    Because salaries for similar positions can vary in different geographies, BLS data is reported by Metropolitan Statistical Area ("MSA"). In many instances Mr. Hunter used an incorrect MSA when searching the BLS data. As an example, for loan number NHELI_2007_2_2002236365, Mr. Hunter used the MSA for Baltimore-Towson, MD which is



---

[219] Exhibit 457.
[220] Exhibit 79.
[221] Uniform Residential Loan Application,WFFHFASMPL001407604.
[222] Verbal VOE, WFFHFASMPL001407609.

HIGHLY CONFIDENTIAL

over 80 miles from the location of the employer.[223] The employer was located in ███████████ which is in ███████████ The more appropriate MSA was ███████████ ███████████

### 3. Plaintiff's Expert Cited Immaterial Differences Between BLS Data and Borrower's Stated Income

218.    For loan number NAA_2005_AR6_1001975792, the borrower stated income of █████ per month.[224] The BLS 90th percentile for ███████████ was $7,383. The borrower's stated income was ███████████

219.    For loan number NHELI_2007_3_2002015188, Mr. Hunter identified a BLS 90th percentile for a ███████████ of $3,378.[225] The income stated by the borrower of █████ was only 3.6% higher.

### 4. Plaintiff's Expert Improperly Uses Bankruptcy Documents to Evidence Borrower Income

220.    As previously discussed, the use of post-closing documentation for a re-underwriting review is improper, because that information was not available to the origination underwriter. Mr. Hunter made frequent use of bankruptcy documents filed after the close of the subject loan in evaluating borrowers' stated incomes. As with other uses of post-closing documents, Mr. Hunter again compounded his error by misusing the information.

221.    For example, for loan number NHELI_2006_HE3_2002235843, the borrower ███████████████████████████████████████████ ███████████████████████████████ Mr. Hunter used the income figure from █████ s a basis for claims of income misrepresentation and failure to determine ability-to-repay on a stated

---

[223] Exhibit 570.
[224] Exhibit 32.
[225] Exhibit 598.
[226] Exhibit 385.

HIGHLY CONFIDENTIAL

income documentation loan. ███████████████████████████ income figure, although from the same employer, is not applicable to a loan that closed in ████████ for which the borrower's ███████████████████████ Mr. Hunter dismisses this inconsistency by suggesting it was unlikely the borrower's income would have decreased while the borrower was employed by the same employer. Mr. Hunter ignores the stark differences in the economy between ████████ and the possibility of, for example, reduced schedules. Mr. Hunter also conveniently ignores the ██████████ income figures. █████████████████████████ ███████████████████████████████████████████

222.    Loan number NHELI_2006_HE3_2002208686 closed in ████████████ and the underwriter would therefore have used ████ income in evaluating the borrower's ability to repay the loan.[227] The borrower ███████████████████████████████ Mr. Hunter again used documents not available to the originating underwriter but, as with the previous example, that do not pertain to the relevant year. Mr. Hunter based his findings on the borrower's ████████████████████████████████████████

223.    Loan number NHELI_2007_1_2002237486 closed in ████████████ The loan was underwritten based on the borrower's stated income of ███████ per month as ██████████████[228] The borrower ████████████████████████████████ Mr. Hunter claims the borrower misrepresented income based on documents not available to the originating underwriter and again the documents do not pertain to the year of closing and thus do not support Mr. Hunter's allegation. Mr. Hunter claims that the borrower's ███████████████████████ ████████████████████ indicates the borrower misrepresented his income. Mr. Hunter has again ignored changes in economic conditions between ██████████████████

---

[227] Exhibit 374.
[228] Exhibit 477.

HIGHLY CONFIDENTIAL

224.    Loan number NHELI_2007_2_2001930813 closed in ███████ Mr. Hunter again alleges the borrower misstated his income based on documents not available to the originating underwriter.[229] He compounds the error by ignoring that the borrower, according to

██████████████████████████████████████████████████████████████████

225.    In addition to the misuse of bankruptcy filings illustrated by the above examples, Mr. Hunter has placed undue reliance on bankruptcy filings, ignoring the borrower's incentive to understate his or her income on such filings so as to obtain the most favorable terms for settling outstanding debts. Mr. Hunter gives no reason to credit a bankruptcy filing over a loan application.

### 5.    Plaintiff's Expert Found Reasonable Stated Income to Be Unreasonable

226.    Mr. Hunter frequently asserted that a borrower's reasonable stated income was unreasonable and considered that a deviation from the Guidelines. For example, for loan number NAA_2005_AR6_1001918585, Mr. Hunter claims ███████ per month is unreasonable for a ██████████████████████ based on BLS data indicating $9,224 per month.[230] As previously noted, BLS data is unreliable for these purposes and the Guidelines stated that reasonableness should be based on the borrower's "employment history, income source and past credit experience,"[231] with no mention of using third-party data. However, the BLS result is within ████ of the borrower's stated income and supports the reasonableness of that income. Furthermore, the borrower had ██████████████████ and would be expected to earn at the top of

---

[229] Exhibit 496.
[230] Exhibit 25.
[231] Aegis Signature Guidelines, 6/14/2005, JPMC-UWG-WAMU-000735645.

HIGHLY CONFIDENTIAL

the range for the position. Mr. Hunter also cites the lack of documentation of the underwriter's evaluation of income reasonableness, but the Guidelines have no such requirement.

### K.    Plaintiff's Expert Overlooked Documentation in the File

227.    For 112 loans, Mr. Hunter claimed an underwriting defect based on the alleged absence of documentation in a file, when such documentation in fact existed in the file he reviewed or there were indications in the file that the document existed at the time the loan was underwritten. This false defect finding further highlights the inherent difficulties re-underwriters face compared to origination underwriters. The origination underwriter builds a file throughout the underwriting process, is close to the loan during that process, and is well aware of what documents are present or still need to be obtained for the loan to close. Re-underwriters, in contrast, must page through a several-year-old file—typically several hundred pages in length—and try to assess the loan with no context as to which documents were present and which were missing years before. Errors in attempting to recreate loan files are certain to occur, as they did here, rendering the accuracy of Mr. Hunter's re-underwriting process inherently suspect.

228.    Mr. Hunter often overlooked documentation that was present in the file. For example, for loan number NHELI_2006_FM2_2001984218, Mr. Hunter claims the loan file contained incomplete income documentation as the lender failed to obtain an award letter to verify the borrower's ███████████[232] The applicable guidelines[233] require the lender to obtain an award letter indicating the amount paid and the duration of payments.

229.    The loan file contains a ████████████████████████████████

████████████████[234] The verification document reflects the amount received by the

---

[232] Exhibit 231.
[233] Fremont Investment & Loan, 2/1/2006, Pension Income Guidelines, LF1UBS_00052294 – LF1UBX_000052295.
[234] Verification of Annuity, NOM-FHFA_00990845.

borrower on a monthly basis and confirms it is a █████████ It is unclear why Mr. Hunter did not view this document as sufficient to meet the applicable guidelines.

230.    The following are additional examples:

- In loan number NHELI_2007_3_2001857184, Exhibit 579, Mr. Hunter claims that ████████ documentation was missing from the file. In fact, the ██████████ documents, in compliance with applicable guidelines, were located in the loan file.

- In loan number NAA_2005_AR6_1001976169, Exhibit 33, Mr. Hunter claims the file was missing a ████████ signed by the borrower. The loan file he reviewed does contain a ███████ but Mr. Hunter overlooked it because ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ which satisfied guidelines.

- In loan number NHELI_2006_FM2_2002235023, Exhibit 303, Mr. Hunter claims that despite guideline requirements, a ████████████████ was not obtained." The applicable guidelines required a written verification of two months' balance and accepted a variety of documents as verification. The loan file contained a copy of a █████████████████████████████ ████████ in satisfaction of applicable guidelines.

**1.      Mr. Hunter's Missing Document Claims Ignore Applicable Guidelines**

231.    At times, Mr. Hunter alleges that a document was missing from the loan file, even though the document was not required by the applicable underwriting guidelines. I cleared these findings because a loan file cannot be expected to contain documents not required by the applicable guidelines.

HIGHLY CONFIDENTIAL

232.     Mr. Hunter often misread applicable guidelines. For example, Mr. Hunter claims

the underwriter for loan number NHELI_2007_1_2002148883 failed to appropriately verify

income because the required verification was missing from his version of the loan file.[235]

Although Mr. Hunter cites the correct guidelines, the subject loan was originated under a "stated

income, stated asset" program. Under that program, the guidelines Mr. Hunter cites do not

require an underwriter to obtain income verification documents, thus Mr. Hunter's finding is not

valid.

233.     In other cases, Mr. Hunter applies an inapplicable guideline to claim a missing

document. For example, Mr. Hunter claims the file for loan number

NHELI_2006_FM2_2002199258 was missing a required ██████████ as required by his cited

guidelines.[236] Mr. Hunter cited a version of the guidelines from the same month as the loan's

closing date. As discussed *supra* Section VIII.C, loans are originated using guidelines from at

least 30 days before the closing date. I used guidelines from one month before the loan's closing,

which did not require a first lien note, thus clearing Mr. Hunter's finding.

### 2.     Mr. Hunter's Missing Document Claims Are Unfounded Because He Ignored Evidence From the Loan File that a Missing Document Was Present at Origination

234.     In many instances, Mr. Hunter asserts substantial underwriting defects based on

the assumption that a document that he was unable to locate in the file was missing at the time of

origination. In doing so, Mr. Hunter often ignores evidence from the documents in the loan file

demonstrating that certain allegedly missing documents were present at the time the loan was

originated. These errors suggest that Mr. Hunter's process was cursory and superficial. In

contrast, Fortace and I conducted a thorough review of each loan file, assessing its contents in

---

[235] Exhibit 452.
[236] Exhibit 279.

HIGHLY CONFIDENTIAL

their entirety. We considered all evidence from the documents currently contained in the imaged

loan file seven to nine years after origination and were able to draw reasonable inferences about

the contents of the original loan file.

235.    Despite the nature of imaging during the relevant time period, as discussed above,

Mr. Hunter takes an unreasonably strict view of documents that were missing pages. Instead of

acknowledging the possibility that the document could be incomplete due to an imaging error,

Mr. Hunter treats any document with missing pages as if the document did not exist. For

example, Mr. Hunter states that loan number NAA_2005_AR6_1002171262 was missing a

required ███████ because the image in the loan file was ██████████████████████████

███ [237] This is a particularly misleading claim because an underwriter did not even need the

████████████████████████████████████████████ I was able to

clear all of Mr. Hunter's claims that only found certain pages of required documents missing.

236.    In other cases, Mr. Hunter's missing document claims ignore evidence in the loan

file that the allegedly missing document was present at origination. As discussed above, there are

a variety of reasons that documents from imaged files used for the origination of a loan 7-9 years

ago might be missing. Mr. Hunter again takes the unreasonable position that any document not in

his version of the loan file was missing at the time of origination despite clear evidence in the file

to the contrary. For example:

- Mr. Hunter's finding related to loan number NAA_2005_AR6_1002196416, Exhibit 92,

    claims ████████████ documentation was missing from his version of the loan file.

    Although Mr. Hunter is correct that this documentation is missing, the loan file did

    contain ████████████████████████████████████████████████████████

    ████████████████████████████████████████████████████████

---

[237] Exhibit 80.

HIGHLY CONFIDENTIAL

███████ Based on these facts, I was able to conclude that the original loan file likely contained the required ████████████ ocumentation.

- Mr. Hunter's claim loan number NAA_2005_AR6_1002024378, Exhibit 61, claims the loan file was ████████████████████████████████ This version of the loan file did include an initial loan application and the loan approval showed the underwriter reviewed and approved the ██████████████████ This evidence is sufficient for me to conclude that a final, executed loan application likely was present in the original loan file.

- Mr. Hunter claims that the origination underwriter for loan number NHELI_2007_1_2001856495, Exhibit 400, failed to obtain a final ██████ Again, while the loan file he reviewed does not contain a final ██████ it does contain closing documents that show the Final ██████ was available at that time. These closing documents allow me to reasonably infer that the final ██████ was also available at the time of origination in satisfaction of applicable guidelines.

### 3. Mr. Hunter's Allegedly Missing Documents Constituted Insignificant Errors

237.     Some of Mr. Hunter's missing document findings relate to insignificant documents not related to the credit decision of the underwriter. In other words, even if these documents were missing from the original loan file, their absence would have had no meaningful impact on the creditworthiness of the borrower. These include documents such as proof of required insurance and other regulatory documents.[238] Mr. Hunter's findings also include claims that an entire document is missing simply because the file did not contain a signed version of that

---

[238] *E.g*, loan number NHELI_2007_3_2002178759, Exhibit 630, ██████████████████
loan number NAA_2005_AR6_1002171703, Exhibit 81 ███████████████████████████

document. For example, Mr. Hunter claimed loan number NHELI_2007_2_2002180362, Exhibit

540, was missing a  Mr.

Hunter's objection was that the ███████████████████████████████████████████

███████████████████████████████████████████ the loan file's copy of the

purchase contract met applicable guidelines. Whether a copy of the purchase contract is signed

by one or both parties has no bearing on the appropriateness of the loan's origination thus this

finding is insignificant.

238.    For these reasons, I cleared the vast majority of Mr. Hunter's missing document

findings as wrong, unfounded or insignificant. Further, in my opinion, the errors present in Mr.

Hunter's analysis suggest he lacked an understanding of the nature of loan files and thus engaged

in a systematically flawed re-underwriting process.

**L.    Plaintiff's Expert Misunderstood the Details of the Loan Transactions.**

239.    For 9 loans, Mr. Hunter misunderstood the details of the loan transaction. For

example, for loan number NAA_2005_AR6_1002210417, Mr. Hunter claimed the lender failed

to verbally verify employment within five days of closing.[239] The verbal verification of

employment was dated ██████[240] and the closing date wa ██████[241] however, the subject

transaction occurred in ██████ which is a "dry funding" state.

240.    Typically, in dry funding states, the borrower does not receive proceeds from the

transaction until all of the paperwork has been reviewed by the lending institution. It is common

for loans to "close" in dry funding states several days if not weeks prior to the proceeds of the

loan being released. Due to this practice, it was common for lenders to require a verbal

verification of employment prior to funding as opposed to prior to closing because, to lower risk

---

[239] Exhibit 100.
[240] Verbal verification of employment, NOM-FHFA_00037855.
[241] Note, NOM-FHFA_00037739.

of employment misrepresentation, the lender would prefer to verify employment as close to the disbursement of funds as possible.

241.     The loan approval[242] indicates that the underwriter required the  to be completed within ████ of funding, not closing. The transaction funded on ████[243] and as such, the ██████████████████████████ and met the condition required by the underwriter on the loan approval.

242.     Mr. Hunter noted that the verbal verification was in the loan file and dated ████ however, he failed to recognize the document was satisfactory, perhaps due to a lack of knowledge about procedures in dry funding states or failure to properly review the loan approval conditions and closing documents.

243.     As another example, for loan number NHELI_2006_FM1_2001835587 Mr. Hunter claims the lender failed to properly calculate the borrower's income.[244] The documentation type was ████[245] and no income calculation was applicable.

**M.     Plaintiff's Expert Ignored Compensating Factors and Exceptions in His Analysis**

244.     The errors in Mr. Hunter's analysis discussed throughout this Section IX include instances where the loan was in fact properly originated due to the presence of compensating factors or excused by a properly granted exception as contemplated by the Guidelines. As discussed in Section V.D., every major originator who contributed loans to the Supporting Loan Groups instructed underwriters to conduct a holistic review of each loan file. Those originators' guidelines allowed for the origination of certain loans with minor deviations from certain guideline recommendations if the underwriter found factors that compensated for the

---

[242] Loan Approval, NOM-FHFA_00037841.
[243] Final HUD-1, NOM-FHFA_00037787, NOM-FHFA_00037789 – NOM-FHFA_00037790.
[244] Exhibit 125.
[245] Loan Approval, NOM-FHFA_00136763 - NOM-FHFA_00136769.

HIGHLY CONFIDENTIAL

deviations.[246] As explained earlier, some originators required documentation of the compensating factor and/or properly granted exceptions, while other originators did not require such documentation. Nevertheless, Mr. Hunter does not appear to consider compensating factors at all in his analysis; in fact, he does not identify a single loan where a deviation was offset by a compensating factor.

245.     Mr. Hunter also ignored properly granted and documented exceptions. For example, Mr. Hunter fails to acknowledge that the loan approval[247] and underwriting worksheets for loan number NHELI_2007_3_2002018626 indicate that a ███ LTV exception was granted for the loan file based on compensating factors.[248] Instead, Mr. Hunter claims a LTV defect because the LTV of ███ was over the maximum allowed of 85%.

### N.     Plaintiff's Expert Cites No Violations of the General Underwriting Criteria Disclosed in the Prospectus Supplements, and There Were None

246.     As explained in Section VII, Nomura's Prospectus Supplements contained disclosures concerning the underwriting guidelines of lenders that had originated more than 20% of the loans backing a deal, and otherwise only described the underwriting criteria generally applicable. I listed those general criteria in Section VII, and they can also be found in most of the Prospectus Supplements, in sections entitled "Underwriting Standards of the Sponsor" and "Modified Standards."[249] Mr. Hunter does not claim that the sample loans failed to comply with these disclosed underwriting criteria, and I found no instances of noncompliance. To the contrary, each loan I reviewed was originated consistent with the disclosed underwriting criteria.

---

[246] Mr. Hunter acknowledges that "[u]nderwriting guidelines sometimes allow for exceptions to be made when compensating factors sufficiently offset the increased credit risk presented by non-compliant loans." Hunter pg. 12.
[247] Loan Approval, NOM-BRI-LF_00001816, NOM-BRI-LF_00001819 - NOM-BRI-LF_00001820, NOM-BRI-LF_00001824 - NOM-BRI-LF_00001825, and NOM-BRI-LF_00001827.
[248] Exhibit 605.
[249] 2005-AR6 Pro Supp at S-88-90; 2006-FM2 Pro Supp at S-80-83; 2006-HE3 Pro Supp at S-83-85; 2007-1 Pro Supp at S-108-11; 2007-2 Pro Supp at S-86-88; 2007-3 Pro Supp at S-86-88.

HIGHLY CONFIDENTIAL

## X.    Conclusion

247.    Overall, based on the analyses I performed as described above, my background and experience re-underwriting residential mortgage loans, and my understanding of the relevant documents and testimony in this matter, I find that there are no substantial defects for 532 of the 571 allegedly defective loans. I also find that based on the information currently available, it cannot be confirmed that a reasonable underwriter at the time of origination could have found that 39 of the 571 of the allegedly defective loans satisfied the applicable guidelines. This results in a potential substantial defect rate of 5.4%, not 79.0%, as alleged by Mr. Hunter. It is also my opinion that the underwriting of the at-issue loans was (with a small and expected number of exceptions) in accordance with the applicable Guidelines and well within acceptable industry standards.


By: _____

Michael Forester

# Appendix A: *Curriculum Vitae* of Michael Forester

## PROFESSIONAL PROFILE

Michael Forester is a thirty-year senior financial services executive with extensive operations, financial, and technology experience. He is currently managing director of CrossCheck Compliance, a regulatory compliance and due diligence firm serving banks and mortgage lenders. Prior to co-founding CrossCheck Compliance, he helped launch The Prieston Group, which provides fraud prevention and indemnification services to the mortgage industry. Mr. Forester spent 16 years with Household International (now HSBC). During his career with Household, he served in several executive roles, including national sales director of Household's correspondent mortgage business and chief financial officer of Household's consumer finance business, Household Finance.

## PROFESSIONAL EXPERIENCE

**CROSSCHECK COMPLIANCE LLC**                                          **2007 –**
Professional services firm providing regulatory compliance and mortgage due diligence services to financial institutions.

Mr. Forester is co-founder and managing director of CrossCheck Compliance. He focuses specifically in mortgage finance, which includes the following areas:

- mortgage due diligence
- post-closing quality control
- forensic mortgage file reviews
- mortgage portfolio analysis

**THE PRIESTON GROUP/PBIS INSURANCE SERVICES**              **2000 – 2007**
Provider of mortgage fraud prevention and mitigation services, including a unique insurance product indemnifying lenders for mortgage fraud losses.

Mr. Forester participated in the launch of this startup company, providing financial and technology leadership to take the firm from startup to consistent profitability. He coordinated design and construction of databases housing all insured loan and claim information, resulting in the industry's most robust mortgage fraud database. Mr. Forester's mortgage fraud studies and data analyses have covered:

- mortgage fraud by product
- fraud by document type
- identification of geographic hot spots
- development of mortgage fraud scoring systems

**HOUSEHOLD INTERNATIONAL**                                                      1983 - 1999

A $50 billion (assets) financial services company, now part of HSBC. Its primary businesses are consumer finance (Household Finance Corporation), mortgage finance (Household Mortgage Services), and credit cards.

### *Vice President, National Sales Director*                                   1996 - 1999
*Household Mortgage Services*

Mr. Forester managed correspondent mortgage acquisitions for Household, growing volume from $15 million per month in early 1996 to $350 million per month. From this foundation, Household Mortgage Services (later HSBC Mortgage Services) became the premier nonprime mortgage investor. During this period, Mr. Forester made significant contributions in product design and pricing. He also structured and managed a joint venture with a money center bank to purchase and securitize subprime mortgage loans, growing the joint venture to $250 million in mortgage receivables. Mr. Forester participated in due diligence for Household's $8.6 billion acquisition of Beneficial Corporation.

### *Vice President, Business Technology*                                       1994 - 1996
*Household Finance Corporation*

Mr. Forester led the $100 million development of HFC's next generation of computer technology, incorporating state-of-the-art client/server architecture and a graphical user interface environment for both branch office and processing center functionality. Functionality covered the entire origination (sales, application, underwriting, pricing) and servicing (customer service, collections) functions.

### *Vice President, Chief Financial Officer*                                   1991 - 1994
*Household Finance Corporation*

Servings as chief financial officer of Household's $10 billion (assets) consumer finance business, Mr. Forester directed all accounting and finance functions including treasury operations and strategic planning. Balance sheet management strategies included securitization of mortgage loans. During his tenure, Mr. Forester led the overhaul of all accounting systems, which included installation of the PeopleSoft general ledger system.

### *Assistant Vice President, Commercial Finance*                              1988 - 1991
*Household Commercial Financial Services*

While with Household Commercial, Mr. Forester marketed, underwrote, structured, and negotiated mid-size ($5-50 million) commercial transactions, including real estate, LBO, and syndicated financing. He also managed Household's preferred stock portfolio.

### *Assistant to Chief Financial Officer*                                      1987 - 1988
*Household Finance Corporation*

Mr. Forester assisted the chief financial officer with a variety of projects in the accounting and finance functions. While in this position, he participated in a company-wide overhead cost analysis project, identifying cost reduction opportunities.

### *Regional Controller*                                                       1984 - 1987
*Household Bank*

After the acquisition of several savings banks in multiple states, Mr. Forester joined the newly created bank accounting group as regional controller, with responsibility for three of Household's banks.

***Supervisor, Internal Audit***                                    **1983 - 1984**
*Household International*

Mr. Forester began his career with Household as supervisor in the Internal Audit Department, where he directed financial audits of Household's consumer finance and banking operations. During this period, Household acquired savings bank charters in several states. Mr. Forester played key roles in pre-acquisition due diligence, onsite coordination of the acquisitions, and post-acquisition integration. His due diligence responsibilities included commercial and residential mortgage loan review, for several bank acquisitions.

**ALBERTO-CULVER COMPANY**                                    **1981 - 1983**
Consumer products firm
*Senior Auditor*

Mr. Forester was responsible for financial and operational auditing of the company's manufacturing and retail facilities.

**ERNST & YOUNG**                                    **1977 - 1981**
Public accounting firm
*Senior Auditor*

Mr. Forester began his professional career with the public accounting firm of Ernst & Young. As a senior auditor he was responsible for planning and direction of audit field work. His clients were in a variety of industries, primarily banks and savings institutions.

# Appendix B: Documents Relied Upon

**Case Documents**

*Federal Housing Finance Agency* v. *Nomura Holding America*, *et al*., Amended Complaint, June 28, 2012, United States District Court, Southern District of New York.

Expert Report of Robert W. Hunter, *Federal Housing Finance Agency v. Nomura Holding America Inc., et al*., May 15, 2014

Expert Report of Charles Grice, dated July 9, 2014

**Deposition Transcripts**

Transcript of Deposition of Michael Aneiro, June 7, 2013

Transcript of Deposition of Vicki Beal, April 25, 2014

Transcript of Deposition of Donald Bisenius, December 6, 2013

Transcript of Deposition of Clint Bonkowski, April 21, 2014

Transcript of Deposition of Jeff Crusinberry, April 8, 2014

Transcript of Deposition of Ronald Feigles, June 13, 2013

Transcript of Deposition of Tracy Hillsgrove, May 16, 2014

Transcript of Deposition of Peter Kempf, May 9, 2014

Transcript of Deposition of Roger Kistler, May 16, 2014

Transcript of Deposition of Joseph Kohout, November 22, 2013

Transcript of Deposition of Gretchen Leff, March 4, 2014

Transcript of Deposition of Nick Minardi, April 23, 2014

Transcript of Deposition of Mendy Sabo, December 5, 2013

Transcript of Deposition of Christopher Scampoli, November 26, 2013

Transcript of Deposition of Shayan Salahuddin, September 24, 2013

Transcript of Deposition of Neil Spagna, November 13, 2013

Transcript of Deposition of Theresa Whitecotton, April 8, 2014

**Produced Documents**

FHFA04382613

FHFA11863279

FHFA02438975

FHFA02439296

**SEC Filings**

Form 424 (b)(5), Nomura Asset Acceptance Corporation Alternative Loan Trust 2005-AR6, Prospectus Supplement and Prospectus, dated November 29, 2005 (prospectus dated September 27, 2005).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2006-FM1, Prospectus Supplement and Prospectus, dated January 27, 2006 (prospectus dated October 27, 2005).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2006-FM2, Prospectus Supplement and Prospectus, dated October 30, 2006 (prospectus dated April 18, 2006).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2006-HE3, Prospectus Supplement and Prospectus, dated August 29, 2006 (prospectus dated April 18, 2006).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2007-1, Prospectus Supplement and Prospectus, dated January 29, 2007 (prospectus dated April 18, 2006).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2007-2, Prospectus Supplement and Prospectus, dated January 30, 2007 (prospectus dated April 18, 2006).

Form 424 (b)(5), Nomura Home Equity Loan Trust 2007-3, Prospectus Supplement and Prospectus, dated April 27, 2007 (prospectus dated April 18, 2006).

**Publicly Available Documents**

Agarwal, Sumit, et al., "An Empirical Analysis of Home Equity Loan and Line Performance," Journal of Financial Intermediation, 2006.

Appraisal Standards Board, Advisory Opinion 18, Uniform Standards of Professional Appraisal Practice, 2012-2013 ed.

Downes, John and Jordan Goodman, Dictionary of Finance and Investment Terms, Seventh Edition, Barron's Educational Series, Inc., 2006.

Fannie Mae, Selling Guide: Fannie Mae Single Family, July 30, 2013, https://www.fanniemae.com/content/guide/sel073013.pdf

Fannie Mae Single Family Selling Guide, Part X: Underwriting Guidelines, Introduction, June 30, 2002, accessed through http://www.allregs.com.

FDIC, "Interagency Appraisal and Evaluation Guidelines," December 2, 2010, http://www.fdic.gov/news/news/financial/2010/fil10082a.pdf.

FDIC Law, Regulations, Related Acts Section 1002.12, available at http://www.fdic.gov/regulations/laws/rules/6500-300.html.

Federal Fair Lending Regulations and Statutes Section 202.12, available at http://www.federalreserve.gov/boarddocs/supmanual/cch/200601/fair_lend_reg_b.pdf.

House of Representatives, June 18, 2013, p. 6 http://www.bls.gov/bls/congressional_testimony/groshen06182013.pdf.

Occupational Employment Statistics, Frequently Asked Questions, Bureau of Labor Statistics, United States Department of Labor, http://www.bls.gov/oes/oes_ques.htm.

Power Sellers, Criteria, 1995-2007 eBay Inc. (via Internet Archive, Wayback Machine), https://web.archive.org/web/20070508213948/http://pages.ebay.com/services/buyandsell/powerseller/ criteria.html.

Statement of Erica L. Groshen, Commissioner, Bureau of Labor Statistics, Before the Subcommittee on Workforce Protections, Committee on Education and the Workforce, U.S.

Survey Methods and Reliability Statement for the May 2013 Occupational Employment Statistics Survey, available at http://www.bls.gov/oes/current/methods_statement.pdf.

**Other Documents**

Selected BLS Finding Screen Shots

## Guidelines

| Beginning Bates | Ending Bates |
|---|---|
| BARC-EF_000000144 | BARC-EF_000000230 |
| Bridgefield-UWG-0000001 | Bridgefield-UWG-0000006 |
| Bridgefield-UWG-0000552 | Bridgefield-UWG-0000580 |
| Bridgefield-UWG-0000717 | Bridgefield-UWG-0000744 |
| Bridgefield-UWG-0000745 | Bridgefield-UWG-0000831 |
| Bridgefield-UWG-0001177 | Bridgefield-UWG-0001262 |
| Bridgefield-UWG-0001263 | Bridgefield-UWG-0001348 |
| Bridgefield-UWG-0001349 | Bridgefield-UWG-0001364 |
| Bridgefield-UWG-0001365 | Bridgefield-UWG-0001380 |
| Bridgefield-UWG-0001433 | Bridgefield-UWG-0001467 |
| Bridgefield-UWG-0001468 | Bridgefield-UWG-0001503 |
| Bridgefield-UWG-0001676 | Bridgefield-UWG-0001710 |
| Bridgefield-UWG-0001711 | Bridgefield-UWG-0001746 |
| Bridgefield-UWG-0001747 | Bridgefield-UWG-0001751 |
| CSFHFA007672635 | CSFHFA007672642 |
| CSFHFA007672684 | CSFHFA007672770 |
| CSFHFA007672783 | CSFHFA007672798 |
| CSFHFA009310552 | CSFHFA009310553 |
| CSFHFA009310554 | CSFHFA009310557 |
| JPMC-UWG-BEAR-000005121 | JPMC-UWG-BEAR-000005124 |
| JPMC-UWG-BEAR-000005376 | JPMC-UWG-BEAR-000005428 |
| JPMC-UWG-BEAR-000005489 | JPMC-UWG-BEAR-000005560 |
| JPMC-UWG-BEAR-000016737 | JPMC-UWG-BEAR-000016788 |
| JPMC-UWG-BEAR-000018300 | JPMC-UWG-BEAR-000018354 |
| JPMC-UWG-BEAR-000041424 | JPMC-UWG-BEAR-000041496 |
| JPMC-UWG-BEAR-000041497 | JPMC-UWG-BEAR-000041499 |
| JPMC-UWG-BEAR-000041500 | JPMC-UWG-BEAR-000041565 |
| JPMC-UWG-BEAR-000041743 | JPMC-UWG-BEAR-000041744 |
| JPMC-UWG-BEAR-000041791 | JPMC-UWG-BEAR-000041830 |
| JPMC-UWG-BEAR-000048433 | JPMC-UWG-BEAR-000048442 |
| JPMC-UWG-BEAR-000070263 | JPMC-UWG-BEAR-000070280 |
| JPMC-UWG-BEAR-000070995 | JPMC-UWG-BEAR-000070999 |
| JPMC-UWG-BEAR-000071917 | JPMC-UWG-BEAR-000071937 |
| JPMC-UWG-BEAR-000071982 | JPMC-UWG-BEAR-000071983 |
| JPMC-UWG-BEAR-000083895 | JPMC-UWG-BEAR-000083959 |
| JPMC-UWG-BEAR-000119540 | JPMC-UWG-BEAR-000119540 |
| JPMC-UWG-BEAR-000119657 | JPMC-UWG-BEAR-000119723 |
| JPMC-UWG-BEAR-000119724 | JPMC-UWG-BEAR-000119727 |
| JPMC-UWG-BEAR-000119804 | JPMC-UWG-BEAR-000119805 |
| JPMC-UWG-BEAR-000130383 | JPMC-UWG-BEAR-000130394 |
| JPMC-UWG-BEAR-000130438 | JPMC-UWG-BEAR-000130449 |
| JPMC-UWG-BEAR-000130505 | JPMC-UWG-BEAR-000130547 |
| JPMC-UWG-BEAR-000131234 | JPMC-UWG-BEAR-000131298 |

| Beginning Bates | Ending Bates |
| --- | --- |
| JPMC-UWG-BEAR-000131380 | JPMC-UWG-BEAR-000131384 |
| JPMC-UWG-BEAR-000131543 | JPMC-UWG-BEAR-000131583 |
| JPMC-UWG-BEAR-000135525 | JPMC-UWG-BEAR-000135525 |
| JPMC-UWG-BEAR-000135526 | JPMC-UWG-BEAR-000135526 |
| JPMC-UWG-BEAR-000135527 | JPMC-UWG-BEAR-000135527 |
| JPMC-UWG-BEAR-000135781 | JPMC-UWG-BEAR-000135781 |
| JPMC-UWG-BEAR-000138043 | JPMC-UWG-BEAR-000138059 |
| JPMC-UWG-BEAR-000138060 | JPMC-UWG-BEAR-000138076 |
| JPMC-UWG-BEAR-000138146 | JPMC-UWG-BEAR-000138155 |
| JPMC-UWG-BEAR-000144002 | JPMC-UWG-BEAR-000144013 |
| JPMC-UWG-BEAR-000145103 | JPMC-UWG-BEAR-000145145 |
| JPMC-UWG-BEAR-000146819 | JPMC-UWG-BEAR-000147056 |
| JPMC-UWG-BEAR-000154567 | JPMC-UWG-BEAR-000154570 |
| JPMC-UWG-BEAR-000155215 | JPMC-UWG-BEAR-000155215 |
| JPMC-UWG-BEAR-000155222 | JPMC-UWG-BEAR-000155222 |
| JPMC-UWG-BEAR-000155223 | JPMC-UWG-BEAR-000155230 |
| JPMC-UWG-BEAR-000156428 | JPMC-UWG-BEAR-000156450 |
| JPMC-UWG-BEAR-000157388 | JPMC-UWG-BEAR-000157398 |
| JPMC-UWG-BEAR-000157399 | JPMC-UWG-BEAR-000157403 |
| JPMC-UWG-BEAR-000157423 | JPMC-UWG-BEAR-000157449 |
| JPMC-UWG-BEAR-000157460 | JPMC-UWG-BEAR-000157504 |
| JPMC-UWG-BEAR-000157514 | JPMC-UWG-BEAR-000157526 |
| JPMC-UWG-BEAR-000157542 | JPMC-UWG-BEAR-000157602 |
| JPMC-UWG-BEAR-000157618 | JPMC-UWG-BEAR-000157624 |
| JPMC-UWG-BEAR-000157687 | JPMC-UWG-BEAR-000157696 |
| JPMC-UWG-BEAR-000157742 | JPMC-UWG-BEAR-000157750 |
| JPMC-UWG-BEAR-000157764 | JPMC-UWG-BEAR-000157778 |
| JPMC-UWG-BEAR-000157840 | JPMC-UWG-BEAR-000157847 |
| JPMC-UWG-BEAR-000157848 | JPMC-UWG-BEAR-000157854 |
| JPMC-UWG-BEAR-000159676 | JPMC-UWG-BEAR-000159677 |
| JPMC-UWG-BEAR-000159679 | JPMC-UWG-BEAR-000159730 |
| JPMC-UWG-BEAR-000159936 | JPMC-UWG-BEAR-000159956 |
| JPMC-UWG-BEAR-000159957 | JPMC-UWG-BEAR-000159980 |
| JPMC-UWG-BEAR-000166220 | JPMC-UWG-BEAR-000166225 |
| JPMC-UWG-BEAR-000166226 | JPMC-UWG-BEAR-000166249 |
| JPMC-UWG-BEAR-000169151 | JPMC-UWG-BEAR-000169169 |
| JPMC-UWG-BEAR-000169298 | JPMC-UWG-BEAR-000169321 |
| JPMC-UWG-BEAR-000169322 | JPMC-UWG-BEAR-000169332 |
| JPMC-UWG-BEAR-000169333 | JPMC-UWG-BEAR-000169343 |
| JPMC-UWG-BEAR-000169344 | JPMC-UWG-BEAR-000169353 |
| JPMC-UWG-BEAR-000169354 | JPMC-UWG-BEAR-000169372 |
| JPMC-UWG-BEAR-000177425 | JPMC-UWG-BEAR-000177426 |
| JPMC-UWG-BEAR-000177606 | JPMC-UWG-BEAR-000177664 |
| JPMC-UWG-BEAR-000177665 | JPMC-UWG-BEAR-000177722 |
| JPMC-UWG-BEAR-000177756 | JPMC-UWG-BEAR-000177758 |

| Beginning Bates | Ending Bates |
|---|---|
| JPMC-UWG-BEAR-000190285 | JPMC-UWG-BEAR-000190466 |
| JPMC-UWG-BEAR-000190467 | JPMC-UWG-BEAR-000190472 |
| JPMC-UWG-BEAR-000193387 | JPMC-UWG-BEAR-000193388 |
| JPMC-UWG-BEAR-000194795 | JPMC-UWG-BEAR-000194843 |
| JPMC-UWG-BEAR-000199817 | JPMC-UWG-BEAR-000199817 |
| JPMC-UWG-BEAR-000206747 | JPMC-UWG-BEAR-000206748 |
| JPMC-UWG-BEAR-000206840 | JPMC-UWG-BEAR-000206937 |
| JPMC-UWG-BEAR-000206939 | JPMC-UWG-BEAR-000206939 |
| JPMC-UWG-BEAR-000209446 | JPMC-UWG-BEAR-000209471 |
| JPMC-UWG-BEAR-000209474 | JPMC-UWG-BEAR-000209474 |
| JPMC-UWG-BEAR-000211068 | JPMC-UWG-BEAR-000211131 |
| JPMC-UWG-BEAR-000211324 | JPMC-UWG-BEAR-000211436 |
| JPMC-UWG-BEAR-000211437 | JPMC-UWG-BEAR-000211540 |
| JPMC-UWG-BEAR-000211925 | JPMC-UWG-BEAR-000211925 |
| JPMC-UWG-BEAR-000211926 | JPMC-UWG-BEAR-000211929 |
| JPMC-UWG-BEAR-000213348 | JPMC-UWG-BEAR-000213352 |
| JPMC-UWG-BEAR-000213353 | JPMC-UWG-BEAR-000213404 |
| JPMC-UWG-BEAR-000216265 | JPMC-UWG-BEAR-000216272 |
| JPMC-UWG-BEAR-000216381 | JPMC-UWG-BEAR-000216384 |
| JPMC-UWG-BEAR-000216893 | JPMC-UWG-BEAR-000216901 |
| JPMC-UWG-BEAR-000216902 | JPMC-UWG-BEAR-000216952 |
| JPMC-UWG-BEAR-000218507 | JPMC-UWG-BEAR-000218514 |
| JPMC-UWG-BEAR-000218623 | JPMC-UWG-BEAR-000218626 |
| JPMC-UWG-BEAR-000225780 | JPMC-UWG-BEAR-000225800 |
| JPMC-UWG-BEAR-000226946 | JPMC-UWG-BEAR-000226988 |
| JPMC-UWG-BEAR-000235549 | JPMC-UWG-BEAR-000235648 |
| JPMC-UWG-BEAR-000235692 | JPMC-UWG-BEAR-000235700 |
| JPMC-UWG-BEAR-000248250 | JPMC-UWG-BEAR-000248387 |
| JPMC-UWG-BEAR-000249525 | JPMC-UWG-BEAR-000249655 |
| JPMC-UWG-BEAR-000249656 | JPMC-UWG-BEAR-000249771 |
| JPMC-UWG-BEAR-000279080 | JPMC-UWG-BEAR-000279107 |
| JPMC-UWG-BEAR-000279264 | JPMC-UWG-BEAR-000279268 |
| JPMC-UWG-BEAR-000279769 | JPMC-UWG-BEAR-000279780 |
| JPMC-UWG-BEAR-000293519 | JPMC-UWG-BEAR-000293588 |
| JPMC-UWG-BEAR-000295258 | JPMC-UWG-BEAR-000295263 |
| JPMC-UWG-BEAR-000295264 | JPMC-UWG-BEAR-000295345 |
| JPMC-UWG-BEAR-000295346 | JPMC-UWG-BEAR-000295387 |
| JPMC-UWG-BEAR-000297104 | JPMC-UWG-BEAR-000297157 |
| JPMC-UWG-BEAR-000297199 | JPMC-UWG-BEAR-000297204 |
| JPMC-UWG-BEAR-000297205 | JPMC-UWG-BEAR-000297247 |
| JPMC-UWG-BEAR-000297404 | JPMC-UWG-BEAR-000297409 |
| JPMC-UWG-BEAR-000297411 | JPMC-UWG-BEAR-000297411 |
| JPMC-UWG-BEAR-000307595 | JPMC-UWG-BEAR-000307627 |
| JPMC-UWG-BEAR-000309436 | JPMC-UWG-BEAR-000309438 |
| JPMC-UWG-BEAR-000321377 | JPMC-UWG-BEAR-000321386 |

| Beginning Bates | Ending Bates |
|---|---|
| JPMC-UWG-BEAR-000408918 | JPMC-UWG-BEAR-000408923 |
| JPMC-UWG-BEAR-000442085 | JPMC-UWG-BEAR-000442098 |
| JPMC-UWG-BEAR-000465599 | JPMC-UWG-BEAR-000465602 |
| JPMC-UWG-BEAR-000479887 | JPMC-UWG-BEAR-000480011 |
| JPMC-UWG-BEAR-000488240 | JPMC-UWG-BEAR-000488396 |
| JPMC-UWG-BEAR-000494566 | JPMC-UWG-BEAR-000494574 |
| JPMC-UWG-JPM-000036861 | JPMC-UWG-JPM-000036870 |
| JPMC-UWG-JPM-000040837 | JPMC-UWG-JPM-000040853 |
| JPMC-UWG-JPM-000050248 | JPMC-UWG-JPM-000050287 |
| JPMC-UWG-JPM-000050288 | JPMC-UWG-JPM-000050304 |
| JPMC-UWG-JPM-000066273 | JPMC-UWG-JPM-000066300 |
| JPMC-UWG-JPM-000066301 | JPMC-UWG-JPM-000066313 |
| JPMC-UWG-JPM-000066401 | JPMC-UWG-JPM-000066412 |
| JPMC-UWG-JPM-000066484 | JPMC-UWG-JPM-000066511 |
| JPMC-UWG-JPM-000066530 | JPMC-UWG-JPM-000066615 |
| JPMC-UWG-JPM-000066628 | JPMC-UWG-JPM-000066641 |
| JPMC-UWG-JPM-000066642 | JPMC-UWG-JPM-000066646 |
| JPMC-UWG-JPM-000066647 | JPMC-UWG-JPM-000066652 |
| JPMC-UWG-JPM-000066660 | JPMC-UWG-JPM-000066694 |
| JPMC-UWG-WAMU-000735618 | JPMC-UWG-WAMU-000735689 |
| JPMC-UWG-WAMU-000735690 | JPMC-UWG-WAMU-000735698 |
| JPMC-UWG-WAMU-000736377 | JPMC-UWG-WAMU-000736378 |
| JPMC-UWG-WAMU-000736379 | JPMC-UWG-WAMU-000736380 |
| JPMC-UWG-WAMU-000736437 | JPMC-UWG-WAMU-000736506 |
| JPMC-UWG-WAMU-000736507 | JPMC-UWG-WAMU-000736540 |
| JPMC-UWG-WAMU-000736544 | JPMC-UWG-WAMU-000736606 |
| JPMC-UWG-WAMU-000737029 | JPMC-UWG-WAMU-000737047 |
| JPMC-UWG-WAMU-000737068 | JPMC-UWG-WAMU-000737103 |
| JPMC-UWG-WAMU-000737130 | JPMC-UWG-WAMU-000737153 |
| JPMC-UWG-WAMU-000737154 | JPMC-UWG-WAMU-000737170 |
| JPMC-UWG-WAMU-000740672 | JPMC-UWG-WAMU-000740687 |
| JPMC-UWG-WAMU-000745697 | JPMC-UWG-WAMU-000745718 |
| JPMC-UWG-WAMU-000780004 | JPMC-UWG-WAMU-000780034 |
| JPMC-UWG-WAMU-000783005 | JPMC-UWG-WAMU-000783043 |
| JPMC-UWG-WAMU-000783848 | JPMC-UWG-WAMU-000783886 |
| JPMC-UWG-WAMU-000786183 | JPMC-UWG-WAMU-000786204 |
| JPMC-UWG-WAMU-000796423 | JPMC-UWG-WAMU-000796448 |
| JPMC-UWG-WAMU-000796515 | JPMC-UWG-WAMU-000796515 |
| JPMC-UWG-WAMU-000796770 | JPMC-UWG-WAMU-000796783 |
| JPMC-UWG-WAMU-000796784 | JPMC-UWG-WAMU-000796788 |
| JPMC-UWG-WAMU-000796810 | JPMC-UWG-WAMU-000796832 |
| JPMC-UWG-WAMU-000811418 | JPMC-UWG-WAMU-000811428 |
| JPMC-UWG-WAMU-000818446 | JPMC-UWG-WAMU-000818446 |
| JPMC-UWG-WAMU-000818533 | JPMC-UWG-WAMU-000818535 |
| JPMC-UWG-WAMU-000818536 | JPMC-UWG-WAMU-000818540 |

| Beginning Bates | Ending Bates |
|---|---|
| JPMC-UWG-WAMU-000818541 | JPMC-UWG-WAMU-000818545 |
| JPMC-UWG-WAMU-000818546 | JPMC-UWG-WAMU-000818551 |
| JPMC-UWG-WAMU-000818552 | JPMC-UWG-WAMU-000818560 |
| JPMC-UWG-WAMU-000818561 | JPMC-UWG-WAMU-000818567 |
| JPMC-UWG-WAMU-000818568 | JPMC-UWG-WAMU-000818571 |
| JPMC-UWG-WAMU-000818572 | JPMC-UWG-WAMU-000818593 |
| JPMC-UWG-WAMU-000818594 | JPMC-UWG-WAMU-000818595 |
| LF1UBS_00051104 | LF1UBS_00051221 |
| LF1UBS_00051222 | LF1UBS_00051339 |
| LF1UBS_00052229 | LF1UBS_00052352 |
| LF1UBS_00052723 | LF1UBS_00052846 |
| LF1UBS_00052847 | LF1UBS_00052973 |
| LF1UBS_00052974 | LF1UBS_00053100 |
| LF1UBS_00053227 | LF1UBS_00053352 |
| ML_FHFA 6065237 | ML_FHFA 6065320 |
| ML_FHFA 6097303 | ML_FHFA 6097411 |
| ML_FHFA 6114599 | ML_FHFA 6114610 |
| ML_FHFA 6114623 | ML_FHFA 6114628 |
| MS_FHFA_003892728 | MS_FHFA_003892732 |
| NOM_FHFA_05507077 | NOM_FHFA_05507128 |
| NOM_FHFA_05511244 | NOM_FHFA_05511295 |
| NOM-FHFA_04438047 | NOM-FHFA_04438153 |
| NOM-FHFA_04439761 | NOM-FHFA_04439795 |
| NOM-FHFA_04441142 | NOM-FHFA_04441142 |
| NOM-FHFA_04442493 | NOM-FHFA_04442531 |
| NOM-FHFA_04442920 | NOM-FHFA_04442946 |
| NOM-FHFA_04443394 | NOM-FHFA_04443489 |
| NOM-FHFA_04443810 | NOM-FHFA_04443811 |
| NOM-FHFA_04449472 | NOM-FHFA_04449496 |
| NOM-FHFA_04449879 | NOM-FHFA_04449884 |
| NOM-FHFA_04449892 | NOM-FHFA_04449897 |
| NOM-FHFA_04449912 | NOM-FHFA_04449919 |
| NOM-FHFA_04449927 | NOM-FHFA_04449954 |
| NOM-FHFA_04449983 | NOM-FHFA_04450010 |
| NOM-FHFA_04450011 | NOM-FHFA_04450023 |
| NOM-FHFA_04450207 | NOM-FHFA_04450292 |
| NOM-FHFA_04450293 | NOM-FHFA_04450378 |
| NOM-FHFA_04450391 | NOM-FHFA_04450402 |
| NOM-FHFA_04450417 | NOM-FHFA_04450432 |
| NOM-FHFA_04450534 | NOM-FHFA_04450538 |
| NOM-FHFA_04450539 | NOM-FHFA_04450543 |
| NOM-FHFA_04450972 | NOM-FHFA_04450982 |
| NOM-FHFA_04450983 | NOM-FHFA_04451002 |
| NOM-FHFA_04451003 | NOM-FHFA_04451010 |
| NOM-FHFA_04451011 | NOM-FHFA_04451023 |

| Beginning Bates | Ending Bates |
|---|---|
| NOM-FHFA_04451024 | NOM-FHFA_04451042 |
| NOM-FHFA_04451043 | NOM-FHFA_04451058 |
| NOM-FHFA_04451059 | NOM-FHFA_04451097 |
| NOM-FHFA_04451374 | NOM-FHFA_04451424 |
| NOM-FHFA_04451532 | NOM-FHFA_04451532 |
| NOM-FHFA_04451535 | NOM-FHFA_04451535 |
| NOM-FHFA_04451672 | NOM-FHFA_04451672 |
| NOM-FHFA_04452736 | NOM-FHFA_04452811 |
| NOM-FHFA_04452814 | NOM-FHFA_04452815 |
| NOM-FHFA_04452824 | NOM-FHFA_04452824 |
| NOM-FHFA_04452874 | NOM-FHFA_04452898 |
| NOM-FHFA_04453687 | NOM-FHFA_04453715 |
| NOM-FHFA_04453750 | NOM-FHFA_04453845 |
| NOM-FHFA_04454401 | NOM-FHFA_04454401 |
| NOM-FHFA_04454927 | NOM-FHFA_04455008 |
| NOM-FHFA_04455619 | NOM-FHFA_04455620 |
| NOM-FHFA_04456795 | NOM-FHFA_04456828 |
| NOM-FHFA_04457471 | NOM-FHFA_04457557 |
| NOM-FHFA_04458064 | NOM-FHFA_04458065 |
| NOM-FHFA_04458066 | NOM-FHFA_04458066 |
| NOM-FHFA_04981980 | NOM-FHFA_04982016 |
| NOM-FHFA_05350941 | NOM-FHFA_05351130 |
| NOM-FHFA_05507240 | NOM-FHFA_05507274 |
| NOM-FHFA_05507870 | NOM-FHFA_05507980 |
| NOM-FHFA_05508268 | NOM-FHFA_05508304 |
| NOM-FHFA_05509030 | NOM-FHFA_05509095 |
| NOM-FHFA_05509979 | NOM-FHFA_05509997 |
| NOM-FHFA_05510106 | NOM-FHFA_05510155 |
| NOM-FHFA_05510908 | NOM-FHFA_05510980 |
| NOM-FHFA_05511793 | NOM-FHFA_05511876 |
| NOM-FHFA_05512628 | NOM-FHFA_05512730 |
| NOM-FRE-GL_00000122 | NOM-FRE-GL_00000242 |
| NOM-FRE-GL_00000835 | NOM-FRE-GL_00000951 |
| NOM-FRE-GL_00000952 | NOM-FRE-GL_00001069 |
| NOM-FRE-GL_00001070 | NOM-FRE-GL_00001187 |
| NOM-FRE-GL_00001188 | NOM-FRE-GL_00001305 |
| NOM-FRE-GL_00001306 | NOM-FRE-GL_00001427 |
| NOM-FRE-GL_00001428 | NOM-FRE-GL_00001550 |
| NOM-FRE-GL_00001674 | NOM-FRE-GL_00001797 |
| NOM-FRE-GL_00001798 | NOM-FRE-GL_00001920 |
| NOM-FRE-GL_00001921 | NOM-FRE-GL_00002043 |
| NOM-FRE-GL_00002044 | NOM-FRE-GL_00002167 |
| NOM-FRE-GL_00002168 | NOM-FRE-GL_00002291 |
| NOM-FRE-GL_00002292 | NOM-FRE-GL_00002418 |
| NOM-FRE-GL_00002419 | NOM-FRE-GL_00002545 |

| Beginning Bates | Ending Bates |
|---|---|
| NOM-FRE-GL_00002546 | NOM-FRE-GL_00002671 |
| NOM-FRE-GL_00002672 | NOM-FRE-GL_00002797 |
| SF1FHFA04711466 | SF1FHFA04711467 |
| SF1FHFA04711477 | SF1FHFA04711488 |
| SF1FHFA04711489 | SF1FHFA04711502 |
| SF1FHFA04711503 | SF1FHFA04711545 |
| SF1FHFA04711546 | SF1FHFA04711548 |
| SF1FHFA04711549 | SF1FHFA04711553 |
| SF1FHFA04711554 | SF1FHFA04711567 |
| UBS-FHFA-00287109 | UBS-FHFA-00287197 |
| UBS-FHFA-00287832 | UBS-FHFA-00287920 |
| UBS-FHFA-00288010 | UBS-FHFA-00288013 |
| UBS-FHFA-00289838 | UBS-FHFA-00289842 |
| UBS-FHFA-00289843 | UBS-FHFA-00289926 |
| UBS-FHFA-00292626 | UBS-FHFA-00292656 |
| UBS-FHFA-00302722 | UBS-FHFA-00302752 |
| UBS-FHFA-00302789 | UBS-FHFA-00302852 |
| UBS-FHFA-00311153 | UBS-FHFA-00311232 |
| UBS-FHFA-00333425 | UBS-FHFA-00333426 |
| UBS-FHFA-00333429 | UBS-FHFA-00333430 |
| UBS-FHFA-00333431 | UBS-FHFA-00333431 |
| UG1FHFA00001904 | UG1FHFA00001924 |
| UG1FHFA00006042 | UG1FHFA00006128 |
| UG1FHFA00006141 | UG1FHFA00006156 |
| UG1FHFA00006157 | UG1FHFA00006191 |
| UG1FHFA00006192 | UG1FHFA00006196 |
| UG1FHFA00023799 | UG1FHFA00023799 |
| UG1FHFA00023800 | UG1FHFA00023800 |
| UG1FHFA00023801 | UG1FHFA00023871 |
| UG1FHFA00024433 | UG1FHFA00024503 |
| WMC-FHFA-Cases-00000401 | WMC-FHFA-Cases-00000600 |
| WMC-FHFA-Cases-00000801 | WMC-FHFA-Cases-00001000 |
| WMC-FHFA-Cases-00004362 | WMC-FHFA-Cases-00004371 |

## Loan Files

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1001831518 | NOM-FHFA_00015533<br>NOM-GAT-LF_00000001 | NOM-FHFA_00015569<br>NOM-GAT-LF_00000408 |
| NAA_2005_AR6_1001832273 | NOM-FHFA_00017501<br>WFFHFASMPL001406705 | NOM-FHFA_00017513<br>WFFHFASMPL001407059 |
| NAA_2005_AR6_1001832275 | LF3NOM_00001089<br>NOM-WEL-LF_00005028 | LF3NOM_00001089<br>NOM-WEL-LF_00005458 |
| NAA_2005_AR6_1001832288 | NOM-FHFA_00018503<br>WFFHFASMPL001409747 | NOM-FHFA_00018554<br>WFFHFASMPL001410128 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1001832384 | NOM-FHFA_00020449 | NOM-FHFA_00020498 |
| | WFFHFASMPL001418850 | WFFHFASMPL001419488 |
| | WFFHFASMPL001419919 | WFFHFASMPL001419920 |
| NAA_2005_AR6_1001833833 | NOM-FHFA-AEG-LF_00005198 | NOM-FHFA-AEG-LF_00005448 |
| | NOM-FHFA_00032712 | NOM-FHFA_00032751 |
| | WFFHFASMPL001435655 | WFFHFASMPL001436157 |
| NAA_2005_AR6_1001833845 | NOM-FHFA-AEG-LF_00007223 | NOM-FHFA-AEG-LF_00007733 |
| | NOM-FHFA_00034069 | NOM-FHFA_00034099 |
| | WFFHFASMPL001439650 | WFFHFASMPL001440690 |
| | WFFHFASMPL001441279 | WFFHFASMPL001441293 |
| NAA_2005_AR6_1001833850 | NOM-FHFA-AEG-LF_00002606 | NOM-FHFA-AEG-LF_00002898 |
| | NOM-FHFA_00034332 | NOM-FHFA_00034365 |
| NAA_2005_AR6_1001833854 | NOM-FHFA_00035529 | NOM-FHFA_00035559 |
| | NOM-GAT-LF_00000694 | NOM-GAT-LF_00001044 |
| | WFFHFASMPL001443728 | WFFHFASMPL001445324 |
| NAA_2005_AR6_1001901637 | NOM-FHFA_00015170 | NOM-FHFA_00015208 |
| | WFFHFASMPL001403440 | WFFHFASMPL001403448 |
| | WFFHFASMPL001403867 | WFFHFASMPL001404455 |
| NAA_2005_AR6_1001901643 | NOM-FHFA_00015570 | NOM-FHFA_00016069 |
| NAA_2005_AR6_1001901745 | NOM-FHFA-NJL-LF_00000001 | NOM-FHFA-NJL-LF_00000200 |
| | NOM-FHFA_00016505 | NOM-FHFA_00016749 |
| | WFFHFASMPL001406068 | WFFHFASMPL001406402 |
| NAA_2005_AR6_1001902888 | NOM-FHFA_00019080 | NOM-FHFA_00019125 |
| | WFFHFASMPL001411275 | WFFHFASMPL001412090 |
| NAA_2005_AR6_1001903396 | NOM-FHFA_00022632 | NOM-FHFA_00022669 |
| | NOM-GAT-LF_00000409 | NOM-GAT-LF_00000693 |
| NAA_2005_AR6_1001904135 | NOM-FHFA_00026138 | NOM-FHFA_00026312 |
| NAA_2005_AR6_1001904292 | NOM-FHFA_00031083 | NOM-FHFA_00031241 |
| NAA_2005_AR6_1001904835 | NOM-FHFA-AEG-LF_00009643 | NOM-FHFA-AEG-LF_00009932 |
| | NOM-FHFA_00033585 | NOM-FHFA_00033616 |
| NAA_2005_AR6_1001904838 | NOM-FHFA-AEG-LF_00006647 | NOM-FHFA-AEG-LF_00006943 |
| | NOM-FHFA_00033689 | NOM-FHFA_00033724 |
| | WFFHFASMPL001438885 | WFFHFASMPL001439294 |
| NAA_2005_AR6_1001904846 | NOM-FHFA-AEG-LF_00001494 | NOM-FHFA-AEG-LF_00001737 |
| | NOM-FHFA_00034152 | NOM-FHFA_00034185 |
| NAA_2005_AR6_1001904847 | NOM-FHFA-AEG-LF_00002371 | NOM-FHFA-AEG-LF_00002605 |
| | NOM-FHFA_00034186 | NOM-FHFA_00034242 |
| NAA_2005_AR6_1001904883 | NOM-FHFA_00039151 | NOM-FHFA_00039437 |
| | WFFHFASMPL001454375 | WFFHFASMPL001454775 |
| NAA_2005_AR6_1001904884 | NOM-FHFA_00039438 | NOM-FHFA_00039764 |
| NAA_2005_AR6_1001918368 | NOM-FHFA_00036386 | NOM-FHFA_00036430 |
| | WFFHFASMPL001449792 | WFFHFASMPL001450283 |
| NAA_2005_AR6_1001918371 | NOM-FHFA_00040540 | NOM-FHFA_00040779 |
| NAA_2005_AR6_1001918585 | NOM-FHFA-AEG-LF_00010698 | NOM-FHFA-AEG-LF_00010928 |
| | NOM-FHFA_00043572 | NOM-FHFA_00043601 |
| NAA_2005_AR6_1001918586 | NOM-FHFA-AEG-LF_00004235 | NOM-FHFA-AEG-LF_00004552 |
| | NOM-FHFA_00043731 | NOM-FHFA_00043760 |
| NAA_2005_AR6_1001918593 | NOM-FHFA-AEG-LF_00009345 | NOM-FHFA-AEG-LF_00009642 |
| | NOM-FHFA_00043917 | NOM-FHFA_00043959 |
| | WFFHFASMPL001457357 | WFFHFASMPL001457770 |
| NAA_2005_AR6_1001975107 | NOM-FHFA_00014047 | NOM-FHFA_00014300 |
| NAA_2005_AR6_1001975110 | NOM-WEL-LF_00000236 | NOM-WEL-LF_00002974 |
| NAA_2005_AR6_1001975281 | NOM-WEL-LF_00004682 | NOM-WEL-LF_00005027 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1001975298 | NOM-FHFA_00018304 | NOM-FHFA_00018353 |
| | WFFHFASMPL001408275 | WFFHFASMPL001409746 |
| NAA_2005_AR6_1001975792 | NOM-FHFA_00023178 | NOM-FHFA_00023219 |
| | WFFHFASMPL001423288 | WFFHFASMPL001425724 |
| NAA_2005_AR6_1001976169 | NOM-FHFA_00024454 | NOM-FHFA_00024500 |
| | WFFHFASMPL001426460 | WFFHFASMPL001427023 |
| NAA_2005_AR6_1001976173 | NOM-FHFA_00024583 | NOM-FHFA_00024627 |
| | WFFHFASMPL001427024 | WFFHFASMPL001427586 |
| NAA_2005_AR6_1001976184 | NOM-FHFA_00025069 | NOM-FHFA_00025115 |
| | WFFHFASMPL001427587 | WFFHFASMPL001428056 |
| NAA_2005_AR6_1001976362 | NOM-FHFA_00027403 | NOM-FHFA_00027439 |
| | WFFHFASMPL001431002 | WFFHFASMPL001431746 |
| NAA_2005_AR6_1001976374 | NOM-FHFA_00029080 | NOM-FHFA_00029237 |
| NAA_2005_AR6_1001976406 | NOM-FHFA_00029651 | NOM-FHFA_00029862 |
| NAA_2005_AR6_1001976424 | NOM-FHFA_00031242 | NOM-FHFA_00031431 |
| NAA_2005_AR6_1001976434 | NOM-FHFA-AEG-LF_00005772 | NOM-FHFA-AEG-LF_00005968 |
| | NOM-FHFA_00033249 | NOM-FHFA_00033280 |
| | WFFHFASMPL001437551 | WFFHFASMPL001437979 |
| NAA_2005_AR6_1001976435 | NOM-FHFA-AEG-LF_00005969 | NOM-FHFA-AEG-LF_00006299 |
| | NOM-FHFA_00033317 | NOM-FHFA_00033353 |
| | WFFHFASMPL001437980 | WFFHFASMPL001438426 |
| NAA_2005_AR6_1001976472 | NOM-FHFA-AEG-LF_00006300 | NOM-FHFA-AEG-LF_00006646 |
| | NOM-FHFA_00033430 | NOM-FHFA_00033463 |
| | WFFHFASMPL001438427 | WFFHFASMPL001438884 |
| | WFFHFASMPL001439228 | WFFHFASMPL001439229 |
| | WFFHFASMPL001440045 | WFFHFASMPL001440062 |
| NAA_2005_AR6_1001976475 | NOM-FHFA-AEG-LF_00003909 | NOM-FHFA-AEG-LF_00004234 |
| | NOM-FHFA_00033548 | NOM-FHFA_00033584 |
| NAA_2005_AR6_1001976480 | NOM-FHFA-AEG-LF_00003671 | NOM-FHFA-AEG-LF_00003908 |
| | NOM-FHFA_00033762 | NOM-FHFA_00033815 |
| NAA_2005_AR6_1001976481 | NOM-FHFA-AEG-LF_00007734 | NOM-FHFA-AEG-LF_00008098 |
| | NOM-FHFA_00034100 | NOM-FHFA_00034151 |
| | WFFHFASMPL001440691 | WFFHFASMPL001441475 |
| NAA_2005_AR6_1001976485 | NOM-FHFA-AEG-LF_00000656 | NOM-FHFA-AEG-LF_00000895 |
| | NOM-FHFA_00034605 | NOM-FHFA_00034666 |
| NAA_2005_AR6_1001976671 | NOM-FHFA_00036178 | NOM-FHFA_00036213 |
| | WFFHFASMPL001448240 | WFFHFASMPL001448717 |
| NAA_2005_AR6_1001976675 | NOM-FHFA_00036431 | NOM-FHFA_00036638 |
| | WFFHFASMPL001450284 | WFFHFASMPL001450554 |
| NAA_2005_AR6_1001976678 | NOM-FHFA_00036956 | NOM-FHFA_00037210 |
| NAA_2005_AR6_1002007402 | NOM-FHFA_00014934 | NOM-FHFA_00015153 |
| | WFFHFASMPL001403440 | WFFHFASMPL001403866 |
| NAA_2005_AR6_1002007623 | NOM-WEL-LF_00002975 | NOM-WEL-LF_00004681 |
| NAA_2005_AR6_1002007958 | NOM-FHFA_00019892 | NOM-FHFA_00019967 |
| | WFFHFASMPL001414979 | WFFHFASMPL001416849 |
| NAA_2005_AR6_1002008184 | NOM-FHFA_00020761 | NOM-FHFA_00020826 |
| | WFFHFASMPL001419493 | WFFHFASMPL001420976 |
| NAA_2005_AR6_1002008590 | NOM-FHFA_00025270 | NOM-FHFA_00025386 |
| | WFFHFASMPL001428135 | WFFHFASMPL001428776 |
| NAA_2005_AR6_1002008622 | NOM-FHFA_00030624 | NOM-FHFA_00030894 |
| NAA_2005_AR6_1002008905 | NOM-FHFA_00032048 | NOM-FHFA_00032307 |
| NAA_2005_AR6_1002008926 | NOM-FHFA-AEG-LF_00006944 | NOM-FHFA-AEG-LF_00007222 |
| | NOM-FHFA_00033870 | NOM-FHFA_00033906 |
| | WFFHFASMPL001439295 | WFFHFASMPL001439649 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1002024332 | NOM-FHFA_00035281 | NOM-FHFA_00035317 |
| | WFFHFASMPL001238931 | WFFHFASMPL001239296 |
| | WFFHFASMPL001441813 | WFFHFASMPL001442179 |
| NAA_2005_AR6_1002024351 | NOM-FHFA_00042492 | NOM-FHFA_00042895 |
| | SAM0000556 | SAM0000588 |
| | SAM0000672 | SAM0000798 |
| NAA_2005_AR6_1002024366 | NOM-FHFA-AEG-LF_00003115 | NOM-FHFA-AEG-LF_00003328 |
| | NOM-FHFA_00043801 | NOM-FHFA_00043831 |
| NAA_2005_AR6_1002024378 | NOM-FHFA-AEG-LF_00000220 | NOM-FHFA-AEG-LF_00000655 |
| | NOM-FHFA_00043896 | NOM-FHFA_00043916 |
| NAA_2005_AR6_1002077914 | NOM-FHFA_00036142 | NOM-FHFA_00036177 |
| | WFFHFASMPL001447985 | WFFHFASMPL001448419 |
| NAA_2005_AR6_1002077915 | NOM-FHFA_00036214 | NOM-FHFA_00036236 |
| | WFFHFASMPL001444771 | WFFHFASMPL001444779 |
| | WFFHFASMPL001448718 | WFFHFASMPL001449322 |
| | WFFHFASMPL001449801 | WFFHFASMPL001449804 |
| NAA_2005_AR6_1002077917 | NOM-FHFA_00036639 | NOM-FHFA_00036955 |
| | WFFHFASMPL001450555 | WFFHFASMPL001452253 |
| NAA_2005_AR6_1002111410 | NOM-FHFA_00038577 | NOM-FHFA_00038820 |
| NAA_2005_AR6_1002111414 | NOM-FHFA_00040003 | NOM-FHFA_00040300 |
| | WFFHFASMPL001455047 | WFFHFASMPL001455523 |
| NAA_2005_AR6_1002111424 | NOM-FHFA-AEG-LF_00008099 | NOM-FHFA-AEG-LF_00008334 |
| | NOM-FHFA_00043010 | NOM-FHFA_00043051 |
| | WFFHFASMPL001455905 | WFFHFASMPL001456232 |
| NAA_2005_AR6_1002122375 | NOM-FHFA_00018603 | NOM-FHFA_00018649 |
| | WFFHFASMPL001410129 | WFFHFASMPL001410603 |
| NAA_2005_AR6_1002122827 | NOM-FHFA_00020269 | NOM-FHFA_00020296 |
| | WFFHFASMPL001418513 | WFFHFASMPL001418849 |
| NAA_2005_AR6_1002123505 | NOM-WEL-LF_00006610 | NOM-WEL-LF_00007031 |
| NAA_2005_AR6_1002123725 | NOM-FHFA_00030401 | NOM-FHFA_00030623 |
| NAA_2005_AR6_1002123728 | NOM-FHFA_00032502 | NOM-FHFA_00032711 |
| | WFFHFASMPL001435221 | WFFHFASMPL001435654 |
| NAA_2005_AR6_1002123741 | NOM-FHFA-AEG-LF_00000896 | NOM-FHFA-AEG-LF_00001170 |
| | NOM-FHFA_00033816 | NOM-FHFA_00033869 |
| NAA_2005_AR6_1002123749 | NOM-FHFA-AEG-LF_00009933 | NOM-FHFA-AEG-LF_00010359 |
| | NOM-FHFA_00034294 | NOM-FHFA_00034331 |
| NAA_2005_AR6_1002123751 | NOM-FHFA_00034877 | NOM-FHFA_00035174 |
| | WFFHFASMPL001440775 | WFFHFASMPL001441812 |
| NAA_2005_AR6_1002124174 | NOM-FHFA_00036001 | NOM-FHFA_00036042 |
| | NOM-GAT-LF_00001662 | NOM-GAT-LF_00002089 |
| NAA_2005_AR6_1002124183 | NOM-FHFA_00036346 | NOM-FHFA_00036385 |
| | WFFHFASMPL001449323 | WFFHFASMPL001449791 |
| NAA_2005_AR6_1002124365 | NOM-FHFA-AEG-LF_00002899 | NOM-FHFA-AEG-LF_00003114 |
| | NOM-FHFA_00043442 | NOM-FHFA_00043478 |
| NAA_2005_AR6_1002171202 | NOM-FHFA_00017514 | NOM-FHFA_00017552 |
| | WFFHFASMPL001407060 | WFFHFASMPL001408274 |
| NAA_2005_AR6_1002171262 | NOM-FHFA_00019126 | NOM-FHFA_00019169 |
| | WFFHFASMPL001412091 | WFFHFASMPL001412517 |
| NAA_2005_AR6_1002171703 | NOM-WEL-LF_00005459 | NOM-WEL-LF_00006308 |
| NAA_2005_AR6_1002171943 | NOM-FHFA_00026313 | NOM-FHFA_00026529 |
| NAA_2005_AR6_1002171948 | NOM-FHFA_00026956 | NOM-FHFA_00027221 |
| NAA_2005_AR6_1002171960 | NOM-FHFA_00029863 | NOM-FHFA_00030057 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1002172247 | NOM-FHFA-AEG-LF_00008659 | NOM-FHFA-AEG-LF_00009037 |
| | NOM-FHFA_00033083 | NOM-FHFA_00033120 |
| | WFFHFASMPL001436158 | WFFHFASMPL001437550 |
| NAA_2005_AR6_1002172248 | NOM-FHFA-AEG-LF_00003329 | NOM-FHFA-AEG-LF_00003670 |
| | NOM-FHFA_00033121 | NOM-FHFA_00033139 |
| NAA_2005_AR6_1002195590 | NOM-ALL-LF_00001087 | NOM-ALL-LF_00001468 |
| | NOM-FHFA_00016380 | NOM-FHFA_00016412 |
| NAA_2005_AR6_1002196236 | NOM-FHFA_00023541 | NOM-FHFA_00023563 |
| | WFFHFASMPL001425725 | WFFHFASMPL001426459 |
| NAA_2005_AR6_1002196402 | NOM-FHFA_00026741 | NOM-FHFA_00026955 |
| NAA_2005_AR6_1002196405 | NOM-FHFA_00027270 | NOM-FHFA_00027307 |
| | WFFHFASMPL001430738 | WFFHFASMPL001431001 |
| NAA_2005_AR6_1002196406 | NOM-WEL-LF_00006309 | NOM-WEL-LF_00006609 |
| NAA_2005_AR6_1002196416 | NOM-FHFA_00029238 | NOM-FHFA_00029434 |
| | WFFHFASMPL001434799 | WFFHFASMPL001435220 |
| NAA_2005_AR6_1002196441 | NOM-FHFA-AEG-LF_00005449 | NOM-FHFA-AEG-LF_00005771 |
| | NOM-FHFA_00032752 | NOM-FHFA_00032791 |
| NAA_2005_AR6_1002196492 | NOM-FHFA-AEG-LF_00001738 | NOM-FHFA-AEG-LF_00001967 |
| | NOM-FHFA_00034422 | NOM-FHFA_00034467 |
| NAA_2005_AR6_1002196501 | NOM-FHFA_00035862 | NOM-FHFA_00035871 |
| | NOM-GAT-LF_00001288 | NOM-GAT-LF_00001289 |
| | WFFHFASMPL001445656 | WFFHFASMPL001446903 |
| NAA_2005_AR6_1002196505 | NOM-FHFA_00035959 | NOM-FHFA_00036000 |
| | NOM-GAT-LF_00001290 | NOM-GAT-LF_00001661 |
| NAA_2005_AR6_1002205150 | NOM-FHFA_00041660 | NOM-FHFA_00042002 |
| NAA_2005_AR6_1002205166 | NOM-FHFA-AEG-LF_00010360 | NOM-FHFA-AEG-LF_00010697 |
| | NOM-FHFA_00043268 | NOM-FHFA_00043365 |
| NAA_2005_AR6_1002205172 | NOM-FHFA-AEG-LF_00001968 | NOM-FHFA-AEG-LF_00002370 |
| | NOM-FHFA_00043761 | NOM-FHFA_00043800 |
| NAA_2005_AR6_1002210417 | NOM-FHFA_00037701 | NOM-FHFA_00037943 |
| | WFFHFASMPL001452254 | WFFHFASMPL001452661 |
| NAA_2005_AR6_1002210723 | NOM-FHFA-AEG-LF_00004862 | NOM-FHFA-AEG-LF_00005197 |
| | NOM-FHFA_00043535 | NOM-FHFA_00043571 |
| NAA_2005_AR6_1002210726 | NOM-FHFA-AEG-LF_00009038 | NOM-FHFA-AEG-LF_00009344 |
| | NOM-FHFA_00043602 | NOM-FHFA_00043638 |
| | WFFHFASMPL001456870 | WFFHFASMPL001457356 |
| NAA_2005_AR6_1002235651 | NOM-WEL-LF_00000001 | NOM-WEL-LF_00000235 |
| NAA_2005_AR6_1002235662 | NOM-FHFA_00016750 | NOM-FHFA_00016999 |
| | WFFHFASMPL001406403 | WFFHFASMPL001406704 |
| NAA_2005_AR6_1002238436 | NOM-FHFA_00019996 | NOM-FHFA_00020019 |
| | WFFHFASMPL001416850 | WFFHFASMPL001418245 |
| NAA_2005_AR6_1002238514 | NOM-FHFA_00022346 | NOM-FHFA_00022548 |
| | NOM-SUN-LF_00000001 | NOM-SUN-LF_00000684 |
| NAA_2005_AR6_1002238554 | CHL_BAR_29832 | CHL_BAR_30185 |
| | NOM-FHFA_00023513 | NOM-FHFA_00023540 |
| NAA_2005_AR6_1002238642 | NOM-FHFA_00025425 | NOM-FHFA_00025465 |
| | WFFHFASMPL001428777 | WFFHFASMPL001429382 |
| NAA_2005_AR6_1002238653 | NOM-FHFA_00026530 | NOM-FHFA_00026740 |
| | WFFHFASMPL001429655 | WFFHFASMPL001430737 |
| NAA_2005_AR6_1002238662 | NOM-FHFA_00027666 | NOM-FHFA_00027704 |
| | WFFHFASMPL001431747 | WFFHFASMPL001432092 |
| NAA_2005_AR6_1002238665 | NOM-FHFA_00028761 | NOM-FHFA_00028944 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NAA_2005_AR6_1002238862 | NOM-FHFA_00035363 | NOM-FHFA_00035400 |
| | WFFHFASMPL001239297 | WFFHFASMPL001240844 |
| | WFFHFASMPL001442180 | WFFHFASMPL001443727 |
| NAA_2005_AR6_1002252057 | NOM-FHFA_00037211 | NOM-FHFA_00037441 |
| NAA_2005_AR6_1002252059 | NOM-FHFA_00038298 | NOM-FHFA_00038576 |
| | WFFHFASMPL001452662 | WFFHFASMPL001454374 |
| NAA_2005_AR6_1002252060 | NOM-FHFA_00038821 | NOM-FHFA_00039150 |
| NAA_2005_AR6_1002252088 | NOM-FHFA-AEG-LF_00000001 | NOM-FHFA-AEG-LF_00000219 |
| | NOM-FHFA_00043999 | NOM-FHFA_00044031 |
| NHELI_2006_FM1_2001833303 | NOM-FHFA_00586122 | NOM-FHFA_00586407 |
| | UBS-LF00207823 | UBS-LF00207863 |
| | UBS-LF00219200 | UBS-LF00219422 |
| | UBS-LF00233083 | UBS-LF00233086 |
| | UBS-LF00233792 | UBS-LF00233795 |
| | UBS-LF00235206 | UBS-LF00235209 |
| | UBS-LF00314329 | UBS-LF00314332 |
| | UBS-LF00416836 | UBS-LF00416856 |
| | UBS-LF00446971 | UBS-LF00446984 |
| | UBS-LF00451305 | UBS-LF00451326 |
| NHELI_2006_FM1_2001833475 | NOM-FHFA_00475089 | NOM-FHFA_00475386 |
| | UBS-LF00202947 | UBS-LF00202996 |
| | UBS-LF00220413 | UBS-LF00220643 |
| | UBS-LF00234423 | UBS-LF00234426 |
| | UBS-LF00236347 | UBS-LF00236350 |
| | UBS-LF00240209 | UBS-LF00240230 |
| | UBS-LF00249751 | UBS-LF00249762 |
| | UBS-LF00315107 | UBS-LF00315110 |
| NHELI_2006_FM1_2001833810 | NOM-FHFA_00398794 | NOM-FHFA_00399127 |
| | UBS-LF00200200 | UBS-LF00200242 |
| | UBS-LF00221023 | UBS-LF00221289 |
| | UBS-LF00222350 | UBS-LF00222360 |
| | UBS-LF00224938 | UBS-LF00224960 |
| | UBS-LF00234296 | UBS-LF00234299 |
| | UBS-LF00235196 | UBS-LF00235199 |
| | UBS-LF00315408 | UBS-LF00315411 |
| NHELI_2006_FM1_2001834258 | NOM-FHFA_00341074 | NOM-FHFA_00341337 |
| | UBS-LF00198632 | UBS-LF00198674 |
| | UBS-LF00215666 | UBS-LF00215888 |
| | UBS-LF00231751 | UBS-LF00231754 |
| | UBS-LF00233816 | UBS-LF00233819 |
| | UBS-LF00235188 | UBS-LF00235191 |
| | UBS-LF00277163 | UBS-LF00277164 |
| | UBS-LF00360828 | UBS-LF00360839 |
| | UBS-LF00361723 | UBS-LF00361740 |
| NHELI_2006_FM1_2001835012 | NOM-FHFA_00267035 | NOM-FHFA_00267263 |
| | UBS-LF00196547 | UBS-LF00196602 |
| | UBS-LF00196642 | UBS-LF00196881 |
| | UBS-LF00208843 | UBS-LF00208848 |
| | UBS-LF00262986 | UBS-LF00262987 |
| | UBS-LF00315452 | UBS-LF00315453 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
| --- | --- | --- |
| NHELI_2006_FM1_2001835436 | NOM-FHFA_00166630 | NOM-FHFA_00166913 |
| | UBS-LF00223757 | UBS-LF00223996 |
| | UBS-LF00224014 | UBS-LF00224055 |
| | UBS-LF00233389 | UBS-LF00233390 |
| | UBS-LF00234884 | UBS-LF00234885 |
| | UBS-LF00277116 | UBS-LF00277117 |
| | UBS-LF00337262 | UBS-LF00337282 |
| | UBS-LF00337413 | UBS-LF00337428 |
| NHELI_2006_FM1_2001835567 | NOM-FHFA_00157480 | NOM-FHFA_00157793 |
| | UBS-LF00213883 | UBS-LF00213904 |
| | UBS-LF00218641 | UBS-LF00218686 |
| | UBS-LF00220661 | UBS-LF00220924 |
| | UBS-LF00234312 | UBS-LF00234315 |
| | UBS-LF00235164 | UBS-LF00235165 |
| | UBS-LF00315865 | UBS-LF00315866 |
| | UBS-LF00446691 | UBS-LF00446704 |
| NHELI_2006_FM1_2001835583 | NOM-FHFA_00141382 | NOM-FHFA_00141702 |
| | UBS-LF00199853 | UBS-LF00199891 |
| | UBS-LF00206460 | UBS-LF00206707 |
| | UBS-LF00219759 | UBS-LF00219783 |
| | UBS-LF00220379 | UBS-LF00220387 |
| | UBS-LF00234427 | UBS-LF00234428 |
| | UBS-LF00236475 | UBS-LF00236476 |
| NHELI_2006_FM1_2001835587 | NOM-FHFA_00136621 | NOM-FHFA_00136918 |
| | UBS-LF00219790 | UBS-LF00219831 |
| | UBS-LF00221588 | UBS-LF00221801 |
| | UBS-LF00233834 | UBS-LF00233838 |
| | UBS-LF00235275 | UBS-LF00235279 |
| | UBS-LF00236076 | UBS-LF00236080 |
| | UBS-LF00236372 | UBS-LF00236394 |
| | UBS-LF00242023 | UBS-LF00242035 |
| | UBS-LF00277547 | UBS-LF00277548 |
| NHELI_2006_FM1_2001835590 | NOM-FHFA_00132897 | NOM-FHFA_00133204 |
| | UBS-LF00199984 | UBS-LF00200042 |
| | UBS-LF00205423 | UBS-LF00205728 |
| | UBS-LF00257773 | UBS-LF00257787 |
| | UBS-LF00268235 | UBS-LF00268238 |
| | UBS-LF00451385 | UBS-LF00451413 |
| NHELI_2006_FM1_2001872750 | NOM-FHFA_00098572 | NOM-FHFA_00098991 |
| | UBS-LF00198490 | UBS-LF00198545 |
| | UBS-LF00205847 | UBS-LF00206170 |
| | UBS-LF00224325 | UBS-LF00224339 |
| | UBS-LF00227876 | UBS-LF00227904 |
| | UBS-LF00234270 | UBS-LF00234273 |
| | UBS-LF00236534 | UBS-LF00236547 |
| | UBS-LF00275630 | UBS-LF00275633 |
| NHELI_2006_FM1_2001872755 | NOM-FHFA_00093610 | NOM-FHFA_00093821 |
| | UBS-LF00202997 | UBS-LF00203047 |
| | UBS-LF00212393 | UBS-LF00212577 |
| | UBS-LF00234170 | UBS-LF00234173 |
| | UBS-LF00235216 | UBS-LF00235219 |
| | UBS-LF00314339 | UBS-LF00314342 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2001901904 | NOM-FHFA_00075785 | NOM-FHFA_00076084 |
| | UBS-LF00180241 | UBS-LF00180282 |
| | UBS-LF00184102 | UBS-LF00184405 |
| | UBS-LF00205742 | UBS-LF00205745 |
| | UBS-LF00232950 | UBS-LF00232953 |
| | UBS-LF00234635 | UBS-LF00234638 |
| | UBS-LF00314357 | UBS-LF00314360 |
| | UBS-LF00315919 | UBS-LF00315920 |
| NHELI_2006_FM1_2001901910 | NOM-FHFA_00797600 | NOM-FHFA_00797978 |
| | UBS-LF00197982 | UBS-LF00198038 |
| | UBS-LF00206937 | UBS-LF00207299 |
| | UBS-LF00209143 | UBS-LF00209146 |
| | UBS-LF00232696 | UBS-LF00232697 |
| | UBS-LF00234639 | UBS-LF00234642 |
| | UBS-LF00321198 | UBS-LF00321218 |
| NHELI_2006_FM1_2001902228 | NOM-FHFA_00641440 | NOM-FHFA_00641727 |
| | UBS-LF00209622 | UBS-LF00209858 |
| | UBS-LF00210207 | UBS-LF00210245 |
| | UBS-LF00225116 | UBS-LF00225140 |
| | UBS-LF00230251 | UBS-LF00230256 |
| | UBS-LF00234429 | UBS-LF00234430 |
| | UBS-LF00236477 | UBS-LF00236478 |
| | UBS-LF00315921 | UBS-LF00315922 |
| NHELI_2006_FM1_2001902449 | NOM-FHFA_00602953 | NOM-FHFA_00603249 |
| | UBS-LF00203606 | UBS-LF00203644 |
| | UBS-LF00219870 | UBS-LF00220115 |
| | UBS-LF00220972 | UBS-LF00220993 |
| | UBS-LF00232702 | UBS-LF00232703 |
| | UBS-LF00234338 | UBS-LF00234341 |
| | UBS-LF00235174 | UBS-LF00235177 |
| | UBS-LF00277497 | UBS-LF00277500 |
| | UBS-LF00430332 | UBS-LF00430336 |
| NHELI_2006_FM1_2001902485 | NOM-FHFA_00537563 | NOM-FHFA_00537888 |
| | UBS-LF00200243 | UBS-LF00200301 |
| | UBS-LF00217920 | UBS-LF00218154 |
| | UBS-LF00232657 | UBS-LF00232677 |
| | UBS-LF00235178 | UBS-LF00235183 |
| | UBS-LF00252832 | UBS-LF00252836 |
| | UBS-LF00315927 | UBS-LF00315936 |
| NHELI_2006_FM1_2001902489 | NOM-FHFA_00534439 | NOM-FHFA_00534774 |
| | UBS-LF00199199 | UBS-LF00199235 |
| | UBS-LF00202456 | UBS-LF00202739 |
| | UBS-LF00225943 | UBS-LF00225945 |
| | UBS-LF00232958 | UBS-LF00232959 |
| | UBS-LF00234549 | UBS-LF00234550 |
| | UBS-LF00275858 | UBS-LF00275859 |
| | UBS-LF00305042 | UBS-LF00305053 |
| | UBS-LF00306723 | UBS-LF00306740 |
| NHELI_2006_FM1_2001902640 | NOM-FHFA_00495062 | NOM-FHFA_00495287 |
| | UBS-LF00210128 | UBS-LF00210159 |
| | UBS-LF00222361 | UBS-LF00222553 |
| | UBS-LF00229033 | UBS-LF00229048 |
| | UBS-LF00234567 | UBS-LF00234568 |
| | UBS-LF00277074 | UBS-LF00277075 |
| | UBS-LF00449351 | UBS-LF00449358 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2001903498 | NOM-FHFA_00294975 | NOM-FHFA_00295232 |
| | UBS-LF00210246 | UBS-LF00210295 |
| | UBS-LF00220164 | UBS-LF00220378 |
| | UBS-LF00234571 | UBS-LF00234572 |
| | UBS-LF00275860 | UBS-LF00275863 |
| | UBS-LF00351965 | UBS-LF00351987 |
| | UBS-LF00402262 | UBS-LF00402272 |
| NHELI_2006_FM1_2001904269 | NOM-FHFA_00199820 | NOM-FHFA_00200147 |
| | UBS-LF00207571 | UBS-LF00207822 |
| | UBS-LF00208194 | UBS-LF00208233 |
| | UBS-LF00226324 | UBS-LF00226337 |
| | UBS-LF00228551 | UBS-LF00228570 |
| | UBS-LF00234164 | UBS-LF00234167 |
| | UBS-LF00235212 | UBS-LF00235215 |
| | UBS-LF00277539 | UBS-LF00277542 |
| NHELI_2006_FM1_2001978358 | NOM-FHFA_00764048 | NOM-FHFA_00764380 |
| | UBS-LF00199576 | UBS-LF00199841 |
| | UBS-LF00201621 | UBS-LF00201662 |
| | UBS-LF00232030 | UBS-LF00232033 |
| | UBS-LF00234152 | UBS-LF00234155 |
| | UBS-LF00234354 | UBS-LF00234375 |
| | UBS-LF00234481 | UBS-LF00234491 |
| | UBS-LF00235170 | UBS-LF00235173 |
| | UBS-LF00315077 | UBS-LF00315080 |
| NHELI_2006_FM1_2001979532 | NOM-FHFA_00605994 | NOM-FHFA_00606217 |
| | UBS-LF00200302 | UBS-LF00200342 |
| | UBS-LF00216431 | UBS-LF00216633 |
| | UBS-LF00232653 | UBS-LF00232654 |
| | UBS-LF00234545 | UBS-LF00234546 |
| | UBS-LF00244042 | UBS-LF00244043 |
| | UBS-LF00338455 | UBS-LF00338462 |
| | UBS-LF00345473 | UBS-LF00345490 |
| NHELI_2006_FM1_2001980478 | NOM-FHFA_00529882 | NOM-FHFA_00530230 |
| | UBS-LF00198728 | UBS-LF00198760 |
| | UBS-LF00202030 | UBS-LF00202337 |
| | UBS-LF00221535 | UBS-LF00221550 |
| | UBS-LF00234288 | UBS-LF00234291 |
| | UBS-LF00236333 | UBS-LF00236336 |
| | UBS-LF00259830 | UBS-LF00259839 |
| | UBS-LF00315089 | UBS-LF00315092 |
| NHELI_2006_FM1_2001980893 | NOM-FHFA_00505818 | NOM-FHFA_00506118 |
| | UBS-LF00199236 | UBS-LF00199279 |
| | UBS-LF00208855 | UBS-LF00209107 |
| | UBS-LF00228869 | UBS-LF00228883 |
| | UBS-LF00230257 | UBS-LF00230258 |
| | UBS-LF00234643 | UBS-LF00234644 |
| | UBS-LF00257705 | UBS-LF00257726 |
| | UBS-LF00275618 | UBS-LF00275619 |
| NHELI_2006_FM1_2001980915 | NOM-FHFA_00470252 | NOM-FHFA_00470485 |
| | UBS-LF00209505 | UBS-LF00209538 |
| | UBS-LF00222893 | UBS-LF00223083 |
| | UBS-LF00224836 | UBS-LF00224852 |
| | UBS-LF00234551 | UBS-LF00234554 |
| | UBS-LF00236159 | UBS-LF00236162 |
| | UBS-LF00315853 | UBS-LF00315856 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2001980931 | NOM-FHFA_00455174 | NOM-FHFA_00455510 |
| | UBS-LF00203894 | UBS-LF00203929 |
| | UBS-LF00216996 | UBS-LF00217307 |
| | UBS-LF00234234 | UBS-LF00234237 |
| | UBS-LF00234864 | UBS-LF00234867 |
| | UBS-LF00264192 | UBS-LF00264211 |
| | UBS-LF00264522 | UBS-LF00264529 |
| | UBS-LF00277470 | UBS-LF00277473 |
| | UBS-LF00277481 | UBS-LF00277484 |
| NHELI_2006_FM1_2001981342 | NOM-FHFA_00442907 | NOM-FHFA_00443240 |
| | UBS-LF00209579 | UBS-LF00209621 |
| | UBS-LF00214885 | UBS-LF00215157 |
| | UBS-LF00224691 | UBS-LF00224719 |
| | UBS-LF00233379 | UBS-LF00233380 |
| | UBS-LF00234645 | UBS-LF00234648 |
| | UBS-LF00253875 | UBS-LF00253897 |
| | UBS-LF00314363 | UBS-LF00314366 |
| | UBS-LF00454743 | UBS-LF00454754 |
| NHELI_2006_FM1_2001981351 | NOM-FHFA_00436201 | NOM-FHFA_00436447 |
| | UBS-LF00203791 | UBS-LF00203840 |
| | UBS-LF00223523 | UBS-LF00223749 |
| | UBS-LF00234577 | UBS-LF00234578 |
| | UBS-LF00244044 | UBS-LF00244045 |
| | UBS-LF00254441 | UBS-LF00254469 |
| | UBS-LF00315857 | UBS-LF00315858 |
| NHELI_2006_FM1_2001981483 | NOM-FHFA_00066750 | NOM-FHFA_00066999 |
| | UBS-LF00182456 | UBS-LF00182495 |
| | UBS-LF00188603 | UBS-LF00188817 |
| | UBS-LF00197723 | UBS-LF00197726 |
| | UBS-LF00232038 | UBS-LF00232041 |
| | UBS-LF00234579 | UBS-LF00234582 |
| | UBS-LF00236085 | UBS-LF00236088 |
| | UBS-LF00262717 | UBS-LF00262726 |
| | UBS-LF00264494 | UBS-LF00264515 |
| | UBS-LF00315404 | UBS-LF00315407 |
| NHELI_2006_FM1_2001981699 | NOM-FHFA_00392168 | NOM-FHFA_00392485 |
| | UBS-LF00198798 | UBS-LF0198839 |
| | UBS-LF00213396 | UBS-LF00213645 |
| | UBS-LF00219165 | UBS-LF00219173 |
| | UBS-LF00219847 | UBS-LF00219869 |
| | UBS-LF00232349 | UBS-LF00232352 |
| | UBS-LF00234250 | UBS-LF00234253 |
| | UBS-LF00235200 | UBS-LF00235203 |
| | UBS-LF00315448 | UBS-LF00315451 |
| NHELI_2006_FM1_2001983318 | NOM-FHFA_00239280 | NOM-FHFA_00239508 |
| | UBS-LF00197501 | UBS-LF00197536 |
| | UBS-LF00214133 | UBS-LF00214311 |
| | UBS-LF00214551 | UBS-LF00214571 |
| | UBS-LF00217885 | UBS-LF00217901 |
| | UBS-LF00233067 | UBS-LF00233068 |
| | UBS-LF00234533 | UBS-LF00234534 |
| | UBS-LF00244299 | UBS-LF00244300 |
| | UBS-LF00318367 | UBS-LF00318368 |
| | UBS-LF00443462 | UBS-LF00443473 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2001983339 | NOM-FHFA_00208897 | NOM-FHFA_00209169 |
| | UBS-LF00198675 | UBS-LF00198708 |
| | UBS-LF00202740 | UBS-LF00202946 |
| | UBS-LF00210103 | UBS-LF00210119 |
| | UBS-LF00222885 | UBS-LF00222892 |
| | UBS-LF00234308 | UBS-LF00234311 |
| | UBS-LF00235259 | UBS-LF00235262 |
| | UBS-LF00236060 | UBS-LF00236063 |
| NHELI_2006_FM1_2001993499 | NOM-FHFA_00085730 | NOM-FHFA_00086364 |
| | UBS-LF00209233 | UBS-LF00209277 |
| | UBS-LF00212578 | UBS-LF00212792 |
| | UBS-LF00234418 | UBS-LF00234419 |
| | UBS-LF00234890 | UBS-LF00234893 |
| | UBS-LF00256239 | UBS-LF00256242 |
| | UBS-LF00258426 | UBS-LF00258450 |
| | UBS-LF00277144 | UBS-LF00277146 |
| NHELI_2006_FM1_2002006329 | NOM-FHFA_00663348 | NOM-FHFA_00663576 |
| | UBS-LF00199287 | UBS-LF00199319 |
| | UBS-LF00210783 | UBS-LF00210954 |
| | UBS-LF00211749 | UBS-LF00211780 |
| | UBS-LF00221006 | UBS-LF00221009 |
| | UBS-LF00233788 | UBS-LF00233791 |
| | UBS-LF00234860 | UBS-LF00234863 |
| | UBS-LF00255520 | UBS-LF00255536 |
| | UBS-LF00277151 | UBS-LF00277154 |
| | UBS-LF00395130 | UBS-LF00395140 |
| NHELI_2006_FM1_2002006487 | NOM-FHFA_00622656 | NOM-FHFA_00622930 |
| | UBS-LF00201669 | UBS-LF00201707 |
| | UBS-LF00210296 | UBS-LF00210507 |
| | UBS-LF00227922 | UBS-LF00227937 |
| | UBS-LF00228571 | UBS-LF00228588 |
| | UBS-LF00234180 | UBS-LF00234183 |
| | UBS-LF00234797 | UBS-LF00234800 |
| | UBS-LF00277463 | UBS-LF00277465 |
| | UBS-LF00277474 | UBS-LF00277476 |
| NHELI_2006_FM1_2002006490 | NOM-FHFA_00618612 | NOM-FHFA_00618938 |
| | UBS-LF00197371 | UBS-LF00197414 |
| | UBS-LF00198586 | UBS-LF00198606 |
| | UBS-LF00198929 | UBS-LF00199198 |
| | UBS-LF00199842 | UBS-LF00199852 |
| | UBS-LF00231738 | UBS-LF00231740 |
| | UBS-LF00234274 | UBS-LF00234277 |
| | UBS-LF00235232 | UBS-LF00235235 |
| | UBS-LF00257417 | UBS-LF00257420 |
| | UBS-LF00277157 | UBS-LF00277158 |
| NHELI_2006_FM1_2002006496 | NOM-FHFA_00613020 | NOM-FHFA_00613322 |
| | UBS-LF00198546 | UBS-LF00198585 |
| | UBS-LF00215889 | UBS-LF00216123 |
| | UBS-LF00232114 | UBS-LF00232117 |
| | UBS-LF00234286 | UBS-LF00234287 |
| | UBS-LF00264701 | UBS-LF00264710 |
| | UBS-LF00265241 | UBS-LF00265260 |
| | UBS-LF00277110 | UBS-LF00277111 |
| | UBS-LF00315925 | UBS-LF00315926 |
| | UBS-LF00402658 | UBS-LF00402659 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002006832 | NOM-FHFA_00526878 | NOM-FHFA_00527201 |
| | UBS-LF00198761 | UBS-LF00198797 |
| | UBS-LF00203048 | UBS-LF00203335 |
| | UBS-LF00218621 | UBS-LF00218640 |
| | UBS-LF00233796 | UBS-LF00233799 |
| | UBS-LF00236463 | UBS-LF00236464 |
| NHELI_2006_FM1_2002007078 | NOM-FHFA_00485610 | NOM-FHFA_00485856 |
| | UBS-LF00198039 | UBS-LF00198076 |
| | UBS-LF00200988 | UBS-LF00201187 |
| | UBS-LF00228199 | UBS-LF00228217 |
| | UBS-LF00228337 | UBS-LF00228345 |
| | UBS-LF00234569 | UBS-LF00234570 |
| | UBS-LF00275620 | UBS-LF00275621 |
| NHELI_2006_FM1_2002007084 | NOM-FHFA_00478663 | NOM-FHFA_00478989 |
| | UBS-LF00201248 | UBS-LF00201299 |
| | UBS-LF00203336 | UBS-LF00203605 |
| | UBS-LF00204785 | UBS-LF00204808 |
| | UBS-LF00234230 | UBS-LF00234233 |
| | UBS-LF00235238 | UBS-LF00235240 |
| | UBS-LF00290751 | UBS-LF00290775 |
| | UBS-LF00297959 | UBS-LF00297964 |
| | UBS-LF00315103 | UBS-LF00315106 |
| | UBS-LF00453746 | UBS-LF00453750 |
| NHELI_2006_FM1_2002007705 | NOM-FHFA_00370667 | NOM-FHFA_00370905 |
| | UBS-LF00198126 | UBS-LF00198161 |
| | UBS-LF00207864 | UBS-LF00208052 |
| | UBS-LF00219788 | UBS-LF00219789 |
| | UBS-LF00220644 | UBS-LF00220660 |
| | UBS-LF00221018 | UBS-LF00221022 |
| | UBS-LF00233812 | UBS-LF00233815 |
| | UBS-LF00235241 | UBS-LF00235244 |
| | UBS-LF00236042 | UBS-LF00236045 |
| | UBS-LF00314333 | UBS-LF00314336 |
| NHELI_2006_FM1_2002007862 | NOM-FHFA_00321954 | NOM-FHFA_00322248 |
| | UBS-LF00199892 | UBS-LF00199941 |
| | UBS-LF00225464 | UBS-LF00225716 |
| | UBS-LF00232655 | UBS-LF00232656 |
| | UBS-LF00233820 | UBS-LF00233823 |
| | UBS-LF00235249 | UBS-LF00235251 |
| | UBS-LF00236050 | UBS-LF00236052 |
| | UBS-LF00315049 | UBS-LF00315052 |
| | UBS-LF00317187 | UBS-LF00317200 |
| | UBS-LF00318002 | UBS-LF00318029 |
| NHELI_2006_FM1_2002008507 | NOM-FHFA_00825863 | NOM-FHFA_00826206 |
| | UBS-LF00198162 | UBS-LF00198202 |
| | UBS-LF00200407 | UBS-LF00200676 |
| | UBS-LF00220397 | UBS-LF00220412 |
| | UBS-LF00224996 | UBS-LF00225013 |
| | UBS-LF00232060 | UBS-LF00232063 |
| | UBS-LF00234204 | UBS-LF00234207 |
| | UBS-LF00235255 | UBS-LF00235258 |
| | UBS-LF00236056 | UBS-LF00236059 |
| | UBS-LF00315065 | UBS-LF00315068 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002008654 | NOM-FHFA_00201162 | NOM-FHFA_00201427 |
| | UBS-LF00200043 | UBS-LF00200079 |
| | UBS-LF00201300 | UBS-LF00201498 |
| | UBS-LF00232072 | UBS-LF00232075 |
| | UBS-LF00232088 | UBS-LF00232091 |
| | UBS-LF00234262 | UBS-LF00234265 |
| | UBS-LF00235263 | UBS-LF00235266 |
| | UBS-LF00236064 | UBS-LF00236067 |
| | UBS-LF00256225 | UBS-LF00256238 |
| | UBS-LF00260481 | UBS-LF00260497 |
| | UBS-LF00318069 | UBS-LF00318072 |
| NHELI_2006_FM1_2002009090 | NOM-FHFA_00144146 | NOM-FHFA_00144551 |
| | UBS-LF00197587 | UBS-LF00197637 |
| | UBS-LF00213056 | UBS-LF00213395 |
| | UBS-LF00225105 | UBS-LF00225115 |
| | UBS-LF00225152 | UBS-LF00225176 |
| | UBS-LF00232417 | UBS-LF00232418 |
| | UBS-LF00234416 | UBS-LF00234417 |
| | UBS-LF00236248 | UBS-LF00236249 |
| | UBS-LF00315458 | UBS-LF00315459 |
| NHELI_2006_FM1_2002009093 | NOM-FHFA_00133205 | NOM-FHFA_00133483 |
| | UBS-LF00198077 | UBS-LF00198125 |
| | UBS-LF00206708 | UBS-LF00206936 |
| | UBS-LF00225083 | UBS-LF00225104 |
| | UBS-LF00233839 | UBS-LF00233842 |
| | UBS-LF00234439 | UBS-LF00234440 |
| | UBS-LF00318075 | UBS-LF00318076 |
| | UBS-LF00430275 | UBS-LF00430287 |
| | UBS-LF00432959 | UBS-LF00432970 |
| NHELI_2006_FM1_2002059836 | NOM-FHFA_00102327 | NOM-FHFA_00102835 |
| | UBS-LF00198884 | UBS-LF00198928 |
| | UBS-LF00200677 | UBS-LF00200915 |
| | UBS-LF00234473 | UBS-LF00234476 |
| | UBS-LF00236250 | UBS-LF00236253 |
| | UBS-LF00268586 | UBS-LF00268606 |
| | UBS-LF00314353 | UBS-LF00314356 |
| NHELI_2006_FM1_2002069922 | NOM-FHFA_00076085 | NOM-FHFA_00076430 |
| | UBS-LF00204479 | UBS-LF00204784 |
| | UBS-LF00233800 | UBS-LF00233803 |
| | UBS-LF00234894 | UBS-LF00234897 |
| | UBS-LF00259600 | UBS-LF00259612 |
| | UBS-LF00277132 | UBS-LF00277135 |
| | UBS-LF00310581 | UBS-LF00310603 |
| | UBS-LF00311865 | UBS-LF00311880 |
| NHELI_2006_FM1_2002117762 | NOM-FHFA_00056512 | NOM-FHFA_00056793 |
| | UBS-LF00185210 | UBS-LF00185247 |
| | UBS-LF00185500 | UBS-LF00185747 |
| | UBS-LF00197978 | UBS-LF00197981 |
| | UBS-LF00232366 | UBS-LF00232369 |
| | UBS-LF00234537 | UBS-LF00234538 |
| | UBS-LF00234782 | UBS-LF00234783 |
| | UBS-LF00260021 | UBS-LF00260042 |
| | UBS-LF00270156 | UBS-LF00270160 |
| | UBS-LF00272067 | UBS-LF00272070 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002117936 | NOM-FHFA_00777042 | NOM-FHFA_00777341 |
| | UBS-LF00197796 | UBS-LF00197798 |
| | UBS-LF00197848 | UBS-LF00197892 |
| | UBS-LF00206224 | UBS-LF00206459 |
| | UBS-LF00232028 | UBS-LF00232029 |
| | UBS-LF00234318 | UBS-LF00234321 |
| | UBS-LF00235228 | UBS-LF00235231 |
| | UBS-LF00260136 | UBS-LF00260155 |
| | UBS-LF00315073 | UBS-LF00315076 |
| | UBS-LF00337408 | UBS-LF00337412 |
| | UBS-LF00361704 | UBS-LF00361722 |
| | UBS-LF00449842 | UBS-LF00449843 |
| NHELI_2006_FM1_2002117950 | NOM-FHFA_00744463 | NOM-FHFA_00744816 |
| | UBS-LF00202374 | UBS-LF00202419 |
| | UBS-LF00217308 | UBS-LF00217601 |
| | UBS-LF00225442 | UBS-LF00225463 |
| | UBS-LF00234539 | UBS-LF00234540 |
| | UBS-LF00244040 | UBS-LF00244041 |
| | UBS-LF00364306 | UBS-LF00364333 |
| NHELI_2006_FM1_2002118570 | NOM-FHFA_00616013 | NOM-FHFA_00616325 |
| | UBS-LF00181740 | UBS-LF00181760 |
| | UBS-LF00183048 | UBS-LF00183085 |
| | UBS-LF00183791 | UBS-LF00184020 |
| | UBS-LF00184042 | UBS-LF00184081 |
| | UBS-LF00197919 | UBS-LF00197920 |
| | UBS-LF00221010 | UBS-LF00221011 |
| | UBS-LF00228346 | UBS-LF00228348 |
| | UBS-LF00232700 | UBS-LF00232701 |
| | UBS-LF00234788 | UBS-LF00234789 |
| NHELI_2006_FM1_2002118574 | NOM-FHFA_00613822 | NOM-FHFA_00614102 |
| | UBS-LF00177376 | UBS-LF00177419 |
| | UBS-LF00182589 | UBS-LF00182801 |
| | UBS-LF00195161 | UBS-LF00195173 |
| | UBS-LF00196523 | UBS-LF00196526 |
| | UBS-LF00206222 | UBS-LF00206223 |
| | UBS-LF00225858 | UBS-LF00225879 |
| | UBS-LF00232104 | UBS-LF00232105 |
| | UBS-LF00234282 | UBS-LF00234285 |
| | UBS-LF00277466 | UBS-LF00277469 |
| | UBS-LF00277477 | UBS-LF00277480 |
| | UBS-LF00315923 | UBS-LF00315924 |
| | UBS-LF00446763 | UBS-LF00446776 |
| NHELI_2006_FM1_2002118758 | NOM-FHFA_00560593 | NOM-FHFA_00560845 |
| | UBS-LF00201499 | UBS-LF00201533 |
| | UBS-LF00221290 | UBS-LF00221505 |
| | UBS-LF00234222 | UBS-LF00234225 |
| | UBS-LF00235236 | UBS-LF00235237 |
| | UBS-LF00241221 | UBS-LF00241237 |
| | UBS-LF00277159 | UBS-LF00277162 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002119173 | NOM-FHFA_00496711 | NOM-FHFA_00497066 |
| | UBS-LF00209539 | UBS-LF00209578 |
| | UBS-LF00214598 | UBS-LF00214884 |
| | UBS-LF00226965 | UBS-LF00226986 |
| | UBS-LF00228323 | UBS-LF00228336 |
| | UBS-LF00234226 | UBS-LF00234229 |
| | UBS-LF00235184 | UBS-LF00235187 |
| | UBS-LF00277501 | UBS-LF00277504 |
| NHELI_2006_FM1_2002119189 | NOM-FHFA_00471899 | NOM-FHFA_00472255 |
| | UBS-LF00203841 | UBS-LF00203893 |
| | UBS-LF00203930 | UBS-LF00204213 |
| | UBS-LF00225832 | UBS-LF00225845 |
| | UBS-LF00228843 | UBS-LF00228868 |
| | UBS-LF00234346 | UBS-LF00234349 |
| NHELI_2006_FM1_2002119369 | NOM-FHFA_00425730 | NOM-FHFA_00426009 |
| | UBS-LF00195465 | UBS-LF00195502 |
| | UBS-LF00215413 | UBS-LF00215665 |
| | UBS-LF00231747 | UBS-LF00231750 |
| | UBS-LF00234510 | UBS-LF00234513 |
| | UBS-LF00236431 | UBS-LF00236434 |
| | UBS-LF00315444 | UBS-LF00315447 |
| | UBS-LF00382548 | UBS-LF00382568 |
| | UBS-LF00391605 | UBS-LF00391615 |
| NHELI_2006_FM1_2002119580 | NOM-FHFA_00405853 | NOM-FHFA_00406198 |
| | UBS-LF00197415 | UBS-LF00197457 |
| | UBS-LF00217602 | UBS-LF00217864 |
| | UBS-LF00233098 | UBS-LF00233101 |
| | UBS-LF00234784 | UBS-LF00234787 |
| | UBS-LF00236422 | UBS-LF00236430 |
| | UBS-LF00236473 | UBS-LF00236474 |
| | UBS-LF00241481 | UBS-LF00241502 |
| NHELI_2006_FM1_2002119743 | NOM-FHFA_00360694 | NOM-FHFA_00361059 |
| | UBS-LF00206171 | UBS-LF00206215 |
| | UBS-LF00219423 | UBS-LF00219729 |
| | UBS-LF00228159 | UBS-LF00228171 |
| | UBS-LF00228823 | UBS-LF00228842 |
| | UBS-LF00234555 | UBS-LF00234556 |
| | UBS-LF00244295 | UBS-LF00244296 |
| NHELI_2006_FM1_2002120173 | NOM-FHFA_00241100 | NOM-FHFA_00241399 |
| | UBS-LF00197458 | UBS-LF00197500 |
| | UBS-LF00213905 | UBS-LF00214132 |
| | UBS-LF00217865 | UBS-LF00217884 |
| | UBS-LF00218155 | UBS-LF00218170 |
| | UBS-LF00233065 | UBS-LF00233066 |
| | UBS-LF00233102 | UBS-LF00233105 |
| | UBS-LF00234531 | UBS-LF00234532 |
| | UBS-LF00244297 | UBS-LF00244298 |
| | UBS-LF00318365 | UBS-LF00318366 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002120377 | NOM-FHFA_00189655 | NOM-FHFA_00189997 |
| | UBS-LF00198840 | UBS-LF00198883 |
| | UBS-LF00216160 | UBS-LF00216404 |
| | UBS-LF00224763 | UBS-LF00224784 |
| | UBS-LF00228349 | UBS-LF00228365 |
| | UBS-LF00234193 | UBS-LF00234196 |
| | UBS-LF00234583 | UBS-LF00234586 |
| | UBS-LF00235267 | UBS-LF00235270 |
| | UBS-LF00236068 | UBS-LF00236071 |
| | UBS-LF00315454 | UBS-LF00315457 |
| NHELI_2006_FM1_2002120383 | NOM-FHFA_00187485 | NOM-FHFA_00187805 |
| | UBS-LF00200131 | UBS-LF00200199 |
| | UBS-LF00210552 | UBS-LF00210782 |
| | UBS-LF00219832 | UBS-LF00219846 |
| | UBS-LF00224853 | UBS-LF00224882 |
| | UBS-LF00234197 | UBS-LF00234200 |
| | UBS-LF00235271 | UBS-LF00235274 |
| | UBS-LF00236072 | UBS-LF00236075 |
| | UBS-LF00277114 | UBS-LF00277115 |
| NHELI_2006_FM1_2002120572 | NOM-FHFA_00161236 | NOM-FHFA_00161562 |
| | UBS-LF00200936 | UBS-LF00200987 |
| | UBS-LF00204214 | UBS-LF00204478 |
| | UBS-LF00228897 | UBS-LF00228924 |
| | UBS-LF00234535 | UBS-LF00234536 |
| | UBS-LF00236443 | UBS-LF00236446 |
| | UBS-LF00448366 | UBS-LF00448376 |
| NHELI_2006_FM1_2002152239 | NOM-FHFA_00091073 | NOM-FHFA_00091352 |
| | UBS-LF00209195 | UBS-LF00209232 |
| | UBS-LF00214312 | UBS-LF00214550 |
| | UBS-LF00221551 | UBS-LF00221571 |
| | UBS-LF00234174 | UBS-LF00234177 |
| | UBS-LF00236451 | UBS-LF00236454 |
| | UBS-LF00315434 | UBS-LF00315437 |
| NHELI_2006_FM1_2002152244 | NOM-FHFA_00086780 | NOM-FHFA_00087078 |
| | UBS-LF00200080 | UBS-LF00200130 |
| | UBS-LF00208617 | UBS-LF00208842 |
| | UBS-LF00234441 | UBS-LF00234442 |
| | UBS-LF00235220 | UBS-LF00235221 |
| | UBS-LF00236395 | UBS-LF00236421 |
| | UBS-LF00242012 | UBS-LF00242022 |
| | UBS-LF00318369 | UBS-LF00318370 |
| NHELI_2006_FM1_2002167513 | NOM-FHFA_00765794 | NOM-FHFA_00766135 |
| | UBS-LF00210955 | UBS-LF00211748 |
| | UBS-LF00212793 | UBS-LF00213055 |
| | UBS-LF00224340 | UBS-LF00224690 |
| | UBS-LF00224785 | UBS-LF00224813 |
| | UBS-LF00225897 | UBS-LF00225942 |
| | UBS-LF00228218 | UBS-LF00228222 |
| | UBS-LF00230259 | UBS-LF00230264 |
| | UBS-LF00233776 | UBS-LF00233779 |
| | UBS-LF00235168 | UBS-LF00235169 |
| | UBS-LF00277147 | UBS-LF00277150 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002167725 | NOM-FHFA_00727626 | NOM-FHFA_00727971 |
| | UBS-LF00201534 | UBS-LF00201578 |
| | UBS-LF00201718 | UBS-LF00202024 |
| | UBS-LF00219752 | UBS-LF00219758 |
| | UBS-LF00233780 | UBS-LF00233787 |
| | UBS-LF00236256 | UBS-LF00236257 |
| | UBS-LF00258912 | UBS-LF00258935 |
| | UBS-LF00259569 | UBS-LF00259571 |
| | UBS-LF00314361 | UBS-LF00314362 |
| NHELI_2006_FM1_2002168258 | NOM-FHFA_00053822 | NOM-FHFA_00054083 |
| | UBS-LF00180170 | UBS-LF00180211 |
| | UBS-LF00185270 | UBS-LF00185499 |
| | UBS-LF00197749 | UBS-LF00197750 |
| | UBS-LF00209112 | UBS-LF00209115 |
| | UBS-LF00232954 | UBS-LF00232957 |
| | UBS-LF00234543 | UBS-LF00234544 |
| | UBS-LF00259547 | UBS-LF00259568 |
| | UBS-LF00260195 | UBS-LF00260208 |
| | UBS-LF00275616 | UBS-LF00275617 |
| NHELI_2006_FM1_2002168710 | NOM-FHFA_00543765 | NOM-FHFA_00544161 |
| | UBS-LF00201188 | UBS-LF00201231 |
| | UBS-LF00216634 | UBS-LF00216995 |
| | UBS-LF00223750 | UBS-LF00223754 |
| | UBS-LF00233375 | UBS-LF00233378 |
| | UBS-LF00234803 | UBS-LF00234806 |
| | UBS-LF00277128 | UBS-LF00277131 |
| | UBS-LF00408001 | UBS-LF00408021 |
| | UBS-LF00408624 | UBS-LF00408633 |
| NHELI_2006_FM1_2002169144 | NOM-FHFA_00431707 | NOM-FHFA_00432057 |
| | NOM-FHFA_05512761 | NOM-FHFA_05512766 |
| | UBS-LF00191173 | UBS-LF00191213 |
| | UBS-LF00191938 | UBS-LF00192218 |
| | UBS-LF00197727 | UBS-LF00197730 |
| | UBS-LF00232042 | UBS-LF00232045 |
| | UBS-LF00234350 | UBS-LF00234353 |
| | UBS-LF00236155 | UBS-LF00236158 |
| | UBS-LF00242341 | UBS-LF00242364 |
| | UBS-LF00253784 | UBS-LF00253795 |
| | UBS-LF00318047 | UBS-LF00318050 |
| NHELI_2006_FM1_2002169147 | NOM-FHFA_00426607 | NOM-FHFA_00426999 |
| | UBS-LF00193126 | UBS-LF00193535 |
| | UBS-LF00197929 | UBS-LF00197932 |
| | UBS-LF00224753 | UBS-LF00224756 |
| | UBS-LF00234246 | UBS-LF00234249 |
| | UBS-LF00236089 | UBS-LF00236092 |
| | UBS-LF00258382 | UBS-LF00258403 |
| | UBS-LF00315045 | UBS-LF00315048 |
| NHELI_2006_FM1_2002169166 | NOM-FHFA_00406199 | NOM-FHFA_00406464 |
| | UBS-LF00202420 | UBS-LF00202455 |
| | UBS-LF00218426 | UBS-LF00218620 |
| | UBS-LF00219730 | UBS-LF00219751 |
| | UBS-LF00225880 | UBS-LF00225896 |
| | UBS-LF00228925 | UBS-LF00228933 |
| | UBS-LF00233385 | UBS-LF00233388 |
| | UBS-LF00234872 | UBS-LF00234875 |
| | UBS-LF00277523 | UBS-LF00277526 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
| --- | --- | --- |
| NHELI_2006_FM1_2002170004 | NOM-FHFA_00270178 | NOM-FHFA_00270449 |
|  | UBS-LF00209147 | UBS-LF00209194 |
|  | UBS-LF00209870 | UBS-LF00210102 |
|  | UBS-LF00234188 | UBS-LF00234192 |
|  | UBS-LF00235252 | UBS-LF00235254 |
|  | UBS-LF00236053 | UBS-LF00236055 |
|  | UBS-LF00253099 | UBS-LF00253123 |
|  | UBS-LF00253796 | UBS-LF00253809 |
|  | UBS-LF00277136 | UBS-LF00277141 |
| NHELI_2006_FM1_2002170012 | NOM-FHFA_00047080 | NOM-FHFA_00047386 |
|  | UBS-LF00186122 | UBS-LF00186173 |
|  | UBS-LF00186442 | UBS-LF00186723 |
|  | UBS-LF00188302 | UBS-LF00188324 |
|  | UBS-LF00201663 | UBS-LF00201668 |
|  | UBS-LF00232377 | UBS-LF00232382 |
|  | UBS-LF00234526 | UBS-LF00234530 |
|  | UBS-LF00236439 | UBS-LF00236442 |
|  | UBS-LF00317472 | UBS-LF00317473 |
|  | UBS-LF00443594 | UBS-LF00443606 |
| NHELI_2006_FM1_2002170643 | NOM-FHFA_00165035 | NOM-FHFA_00165383 |
|  | UBS-LF00177333 | UBS-LF00177375 |
|  | UBS-LF00181135 | UBS-LF00181425 |
|  | UBS-LF00192738 | UBS-LF00192740 |
|  | UBS-LF00196445 | UBS-LF00196470 |
|  | UBS-LF00207314 | UBS-LF00207317 |
|  | UBS-LF00233073 | UBS-LF00233076 |
|  | UBS-LF00234414 | UBS-LF00234415 |
|  | UBS-LF00277102 | UBS-LF00277103 |
|  | UBS-LF00318073 | UBS-LF00318074 |
|  | UBS-LF00453820 | UBS-LF00453831 |
|  | UBS-LF00454345 | UBS-LF00454356 |
| NHELI_2006_FM1_2002170875 | NOM-FHFA_00114226 | NOM-FHFA_00114667 |
|  | UBS-LF00197751 | UBS-LF00197795 |
|  | UBS-LF00204809 | UBS-LF00205183 |
|  | UBS-LF00233843 | UBS-LF00233846 |
|  | UBS-LF00234792 | UBS-LF00234793 |
|  | UBS-LF00277104 | UBS-LF00277105 |
|  | UBS-LF00330139 | UBS-LF00330161 |
|  | UBS-LF00330250 | UBS-LF00330272 |
| NHELI_2006_FM1_2002194992 | NOM-FHFA_00624963 | NOM-FHFA_00625236 |
|  | UBS-LF00203645 | UBS-LF00203687 |
|  | UBS-LF00215158 | UBS-LF00215412 |
|  | UBS-LF00220994 | UBS-LF00220997 |
|  | UBS-LF00234479 | UBS-LF00234480 |
|  | UBS-LF00236479 | UBS-LF00236480 |
|  | UBS-LF00268318 | UBS-LF00268342 |
|  | UBS-LF00317761 | UBS-LF00317762 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002195131 | NOM-FHFA_00608141 | NOM-FHFA_00608529 |
| | UBS-LF00187029 | UBS-LF00187069 |
| | UBS-LF00195782 | UBS-LF00196109 |
| | UBS-LF00197255 | UBS-LF00197276 |
| | UBS-LF00197638 | UBS-LF00197641 |
| | UBS-LF00210120 | UBS-LF00210122 |
| | UBS-LF00228884 | UBS-LF00228896 |
| | UBS-LF00232068 | UBS-LF00232071 |
| | UBS-LF00232084 | UBS-LF00232087 |
| | UBS-LF00234334 | UBS-LF00234337 |
| | UBS-LF00236081 | UBS-LF00236084 |
| | UBS-LF00315085 | UBS-LF00315088 |
| NHELI_2006_FM1_2002195609 | NOM-FHFA_00067556 | NOM-FHFA_00067825 |
| | UBS-LF00184886 | UBS-LF00184932 |
| | UBS-LF00190328 | UBS-LF00190559 |
| | UBS-LF00200934 | UBS-LF00200935 |
| | UBS-LF00232401 | UBS-LF00232402 |
| | UBS-LF00234431 | UBS-LF00234432 |
| | UBS-LF00236481 | UBS-LF00236482 |
| | UBS-LF00265261 | UBS-LF00265273 |
| | UBS-LF00267087 | UBS-LF00267114 |
| NHELI_2006_FM1_2002196030 | NOM-FHFA_00301947 | NOM-FHFA_00302287 |
| | UBS-LF00208304 | UBS-LF00208370 |
| | UBS-LF00222568 | UBS-LF00222843 |
| | UBS-LF00224720 | UBS-LF00224744 |
| | UBS-LF00224936 | UBS-LF00224937 |
| | UBS-LF00228419 | UBS-LF00228420 |
| | UBS-LF00234156 | UBS-LF00234159 |
| | UBS-LF00236097 | UBS-LF00236100 |
| | UBS-LF00277531 | UBS-LF00277534 |
| NHELI_2006_FM1_2002230853 | NOM-FHFA_00803109 | NOM-FHFA_00803383 |
| | UBS-LF00208100 | UBS-LF00208146 |
| | UBS-LF00218171 | UBS-LF00218425 |
| | UBS-LF00233767 | UBS-LF00233770 |
| | UBS-LF00234794 | UBS-LF00234796 |
| | UBS-LF00295687 | UBS-LF00295708 |
| | UBS-LF00315069 | UBS-LF00315072 |
| NHELI_2006_FM1_2002231240 | NOM-FHFA_00699196 | NOM-FHFA_00699530 |
| | UBS-LF00197324 | UBS-LF00197370 |
| | UBS-LF00209278 | UBS-LF00209504 |
| | UBS-LF00220137 | UBS-LF00220163 |
| | UBS-LF00231089 | UBS-LF00231118 |
| | UBS-LF00232064 | UBS-LF00232065 |
| | UBS-LF00232080 | UBS-LF00232081 |
| | UBS-LF00234565 | UBS-LF00234566 |
| | UBS-LF00276842 | UBS-LF00276843 |
| NHELI_2006_FM1_2002231243 | NOM-FHFA_00697496 | NOM-FHFA_00697884 |
| | UBS-LF00210160 | UBS-LF00210206 |
| | UBS-LF00212034 | UBS-LF00212366 |
| | UBS-LF00234322 | UBS-LF00234325 |
| | UBS-LF00236455 | UBS-LF00236458 |
| | UBS-LF00318355 | UBS-LF00318356 |
| | UBS-LF00402737 | UBS-LF00402742 |
| | UBS-LF00403296 | UBS-LF00403317 |
| | UBS-LF00418396 | UBS-LF00418417 |
| | UBS-LF00419009 | UBS-LF00419011 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002231419 | NOM-FHFA_00690412 | NOM-FHFA_00690715 |
| | UBS-LF00207322 | UBS-LF00207560 |
| | UBS-LF00208053 | UBS-LF00208093 |
| | UBS-LF00227034 | UBS-LF00227056 |
| | UBS-LF00229022 | UBS-LF00229032 |
| | UBS-LF00233063 | UBS-LF00233064 |
| | UBS-LF00234212 | UBS-LF00234215 |
| | UBS-LF00236258 | UBS-LF00236261 |
| | UBS-LF00315081 | UBS-LF00315084 |
| | UBS-LF00448827 | UBS-LF00448828 |
| NHELI_2006_FM1_2002232302 | NOM-FHFA_00812563 | NOM-FHFA_00812831 |
| | UBS-LF00203733 | UBS-LF00203778 |
| | UBS-LF00223315 | UBS-LF00223522 |
| | UBS-LF00228246 | UBS-LF00228271 |
| | UBS-LF00234498 | UBS-LF00234507 |
| | UBS-LF00236337 | UBS-LF00236346 |
| | UBS-LF00279088 | UBS-LF00279091 |
| | UBS-LF00315093 | UBS-LF00315102 |
| NHELI_2006_FM1_2002232920 | NOM-FHFA_00409624 | NOM-FHFA_00409893 |
| | UBS-LF00205746 | UBS-LF00205788 |
| | UBS-LF00213646 | UBS-LF00213882 |
| | UBS-LF00233808 | UBS-LF00233811 |
| | UBS-LF00234868 | UBS-LF00234871 |
| | UBS-LF00277519 | UBS-LF00277522 |
| | UBS-LF00398883 | UBS-LF00398905 |
| | UBS-LF00399103 | UBS-LF00399111 |
| NHELI_2006_FM1_2002233339 | NOM-FHFA_00332558 | NOM-FHFA_00332848 |
| | UBS-LF00199942 | UBS-LF00199983 |
| | UBS-LF00211781 | UBS-LF00212033 |
| | UBS-LF00232054 | UBS-LF00232057 |
| | UBS-LF00234396 | UBS-LF00234399 |
| | UBS-LF00235245 | UBS-LF00235248 |
| | UBS-LF00236046 | UBS-LF00236049 |
| | UBS-LF00265769 | UBS-LF00265779 |
| | UBS-LF00266680 | UBS-LF00266701 |
| | UBS-LF00315412 | UBS-LF00315415 |
| NHELI_2006_FM1_2002233577 | NOM-FHFA_00282554 | NOM-FHFA_00282834 |
| | UBS-LF00210508 | UBS-LF00210551 |
| | UBS-LF00218928 | UBS-LF00219154 |
| | UBS-LF00231075 | UBS-LF00231088 |
| | UBS-LF00234160 | UBS-LF00234163 |
| | UBS-LF00236435 | UBS-LF00236438 |
| | UBS-LF00259980 | UBS-LF00260001 |
| NHELI_2006_FM1_2002233762 | NOM-FHFA_00061426 | NOM-FHFA_00061685 |
| | UBS-LF00196110 | UBS-LF00196153 |
| | UBS-LF00196886 | UBS-LF00197105 |
| | UBS-LF00197745 | UBS-LF00197748 |
| | UBS-LF00232358 | UBS-LF00232361 |
| | UBS-LF00234408 | UBS-LF00234411 |
| | UBS-LF00236200 | UBS-LF00236203 |
| | UBS-LF00269806 | UBS-LF00269830 |
| | UBS-LF00270603 | UBS-LF00270613 |
| | UBS-LF00317474 | UBS-LF00317477 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM1_2002233784 | NOM-FHFA_00244975 | NOM-FHFA_00245232 |
| | UBS-LF00208147 | UBS-LF00208193 |
| | UBS-LF00208371 | UBS-LF00208594 |
| | UBS-LF00233828 | UBS-LF00233831 |
| | UBS-LF00234880 | UBS-LF00234883 |
| | UBS-LF00259613 | UBS-LF00259627 |
| | UBS-LF00260113 | UBS-LF00260135 |
| | UBS-LF00277459 | UBS-LF00277462 |
| NHELI_2006_FM1_2002234190 | NOM-FHFA_00045878 | NOM-FHFA_00046134 |
| | UBS-LF00182548 | UBS-LF00182588 |
| | UBS-LF00187972 | UBS-LF00188196 |
| | UBS-LF00197230 | UBS-LF00197251 |
| | UBS-LF00197911 | UBS-LF00197912 |
| | UBS-LF00221016 | UBS-LF00221017 |
| | UBS-LF00233832 | UBS-LF00233833 |
| | UBS-LF00235204 | UBS-LF00235205 |
| | UBS-LF00236524 | UBS-LF00236533 |
| | UBS-LF00277142 | UBS-LF00277143 |
| NHELI_2006_FM1_2002238583 | NOM-FHFA_00827972 | NOM-FHFA_00828288 |
| | UBS-LF00188197 | UBS-LF00188250 |
| | UBS-LF00196154 | UBS-LF00196416 |
| | UBS-LF00197935 | UBS-LF00197938 |
| | UBS-LF00214572 | UBS-LF00214597 |
| | UBS-LF00232690 | UBS-LF00232693 |
| | UBS-LF00234435 | UBS-LF00234438 |
| | UBS-LF00236447 | UBS-LF00236450 |
| | UBS-LF00317478 | UBS-LF00317481 |
| NHELI_2006_FM2_2001835967 | NOM-FHFA_00873756 | NOM-FHFA_00874015 |
| | UBS-LF00322533 | UBS-LF00322573 |
| | UBS-LF00350206 | UBS-LF00350442 |
| | UBS-LF00351173 | UBS-LF00351208 |
| | UBS-LF00360749 | UBS-LF00360750 |
| | UBS-LF00374115 | UBS-LF00374118 |
| | UBS-LF00399828 | UBS-LF00399831 |
| | UBS-LF00401998 | UBS-LF00402019 |
| | UBS-LF00402316 | UBS-LF00402327 |
| NHELI_2006_FM2_2001836188 | NOM-FHFA_01134566 | NOM-FHFA_01134871 |
| | UBS-LF00335619 | UBS-LF00335669 |
| | UBS-LF00342360 | UBS-LF00342383 |
| | UBS-LF00347668 | UBS-LF00347943 |
| | UBS-LF00365227 | UBS-LF00365244 |
| | UBS-LF00380342 | UBS-LF00380344 |
| | UBS-LF00401227 | UBS-LF00401230 |
| NHELI_2006_FM2_2001836190 | NOM-FHFA_01135578 | NOM-FHFA_01135791 |
| | UBS-LF00335589 | UBS-LF00335618 |
| | UBS-LF00348442 | UBS-LF00348642 |
| | UBS-LF00362656 | UBS-LF00362661 |
| | UBS-LF00371640 | UBS-LF00371656 |
| | UBS-LF00374155 | UBS-LF00374158 |
| | UBS-LF00399909 | UBS-LF00399925 |
| | UBS-LF00401318 | UBS-LF00401321 |
| | UBS-LF00454012 | UBS-LF00454014 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2001836311 | NOM-FHFA_01223909 | NOM-FHFA_01224181 |
| | UBS-LF00327574 | UBS-LF00327610 |
| | UBS-LF00335672 | UBS-LF00335933 |
| | UBS-LF00337328 | UBS-LF00337348 |
| | UBS-LF00380375 | UBS-LF00380378 |
| | UBS-LF00400409 | UBS-LF00400412 |
| | UBS-LF00447927 | UBS-LF00447929 |
| NHELI_2006_FM2_2001836350 | NOM-FHFA_01278333 | NOM-FHFA_01278626 |
| | UBS-LF00336569 | UBS-LF00336612 |
| | UBS-LF00340096 | UBS-LF00340363 |
| | UBS-LF00342475 | UBS-LF00342500 |
| | UBS-LF00359183 | UBS-LF00359193 |
| | UBS-LF00374163 | UBS-LF00374166 |
| | UBS-LF00398770 | UBS-LF00398773 |
| NHELI_2006_FM2_2001836378 | NOM-FHFA_01351548 | NOM-FHFA_01351746 |
| | UBS-LF00321608 | UBS-LF00321639 |
| | UBS-LF00327675 | UBS-LF00327884 |
| | UBS-LF00377595 | UBS-LF00377596 |
| | UBS-LF00400125 | UBS-LF00400126 |
| | UBS-LF00405898 | UBS-LF00405915 |
| | UBS-LF00408612 | UBS-LF00408623 |
| | UBS-LF00454495 | UBS-LF00454496 |
| NHELI_2006_FM2_2001838499 | NOM-FHFA_01551249 | NOM-FHFA_01551488 |
| | UBS-LF00265601 | UBS-LF00265649 |
| | UBS-LF00268665 | UBS-LF00268871 |
| | UBS-LF00271966 | UBS-LF00271988 |
| | UBS-LF00307306 | UBS-LF00307335 |
| | UBS-LF00363077 | UBS-LF00363078 |
| | UBS-LF00400335 | UBS-LF00400336 |
| | UBS-LF00455052 | UBS-LF00455053 |
| | UBS-LF00455775 | UBS-LF00455776 |
| NHELI_2006_FM2_2001838507 | NOM-FHFA_01560804 | NOM-FHFA_01561031 |
| | UBS-LF00336954 | UBS-LF00336994 |
| | UBS-LF00355254 | UBS-LF00355458 |
| | UBS-LF00362606 | UBS-LF00362622 |
| | UBS-LF00365833 | UBS-LF00365849 |
| | UBS-LF00401350 | UBS-LF00401351 |
| | UBS-LF00402552 | UBS-LF00402553 |
| NHELI_2006_FM2_2001839380 | NOM-FHFA_01642961 | NOM-FHFA_01643229 |
| | UBS-LF00300802 | UBS-LF00300839 |
| | UBS-LF00302998 | UBS-LF00303246 |
| | UBS-LF00363083 | UBS-LF00363086 |
| | UBS-LF00387792 | UBS-LF00387813 |
| | UBS-LF00391561 | UBS-LF00391566 |
| | UBS-LF00401181 | UBS-LF00401196 |
| | UBS-LF00402680 | UBS-LF00402694 |
| | UBS-LF00455141 | UBS-LF00455143 |
| NHELI_2006_FM2_2001839996 | NOM-FHFA_01867459 | NOM-FHFA_01867739 |
| | UBS-LF00339223 | UBS-LF00339258 |
| | UBS-LF00355538 | UBS-LF00355798 |
| | UBS-LF00372281 | UBS-LF00372293 |
| | UBS-LF00374175 | UBS-LF00374178 |
| | UBS-LF00386029 | UBS-LF00386046 |
| | UBS-LF00400135 | UBS-LF00400138 |
| | UBS-LF00454413 | UBS-LF00454414 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2001905120 | NOM-FHFA_00833833 | NOM-FHFA_00834083 |
| | UBS-LF00264599 | UBS-LF00264640 |
| | UBS-LF00267297 | UBS-LF00267534 |
| | UBS-LF00364404 | UBS-LF00364407 |
| | UBS-LF00370025 | UBS-LF00370049 |
| | UBS-LF00391631 | UBS-LF00391634 |
| | UBS-LF00454897 | UBS-LF00454899 |
| | UBS-LF00455496 | UBS-LF00455497 |
| | UBS-LF00456561 | UBS-LF00456572 |
| NHELI_2006_FM2_2001905263 | NOM-FHFA_00923666 | NOM-FHFA_00923996 |
| | UBS-LF00323439 | UBS-LF00323484 |
| | UBS-LF00355874 | UBS-LF00356188 |
| | UBS-LF00367012 | UBS-LF00367037 |
| | UBS-LF00382208 | UBS-LF00382211 |
| | UBS-LF00400725 | UBS-LF00400728 |
| NHELI_2006_FM2_2001905280 | NOM-FHFA_00956709 | NOM-FHFA_00956953 |
| | UBS-LF00330392 | UBS-LF00330429 |
| | UBS-LF00346251 | UBS-LF00346483 |
| | UBS-LF00364161 | UBS-LF00364184 |
| | UBS-LF00374119 | UBS-LF00374120 |
| | UBS-LF00398754 | UBS-LF00398755 |
| | UBS-LF00401499 | UBS-LF00401500 |
| | UBS-LF00453990 | UBS-LF00454007 |
| NHELI_2006_FM2_2001905452 | NOM-FHFA_00985341 | NOM-FHFA_00985600 |
| | UBS-LF00338323 | UBS-LF00338355 |
| | UBS-LF00352439 | UBS-LF00352710 |
| | UBS-LF00392843 | UBS-LF00392844 |
| | UBS-LF00405841 | UBS-LF00405858 |
| | UBS-LF00454015 | UBS-LF00454021 |
| NHELI_2006_FM2_2001905493 | NOM-FHFA_01039724 | NOM-FHFA_01040026 |
| | UBS-LF00331642 | UBS-LF00331689 |
| | UBS-LF00348678 | UBS-LF00348684 |
| | UBS-LF00351460 | UBS-LF00351724 |
| | UBS-LF00392849 | UBS-LF00392852 |
| | UBS-LF00399698 | UBS-LF00399719 |
| | UBS-LF00400168 | UBS-LF00400181 |
| | UBS-LF00400354 | UBS-LF00400357 |
| NHELI_2006_FM2_2001905905 | NOM-FHFA_01096303 | NOM-FHFA_01096597 |
| | UBS-LF00330109 | UBS-LF00330138 |
| | UBS-LF00344783 | UBS-LF00345071 |
| | UBS-LF00345512 | UBS-LF00345527 |
| | UBS-LF00377555 | UBS-LF00377558 |
| | UBS-LF00399974 | UBS-LF00399977 |
| | UBS-LF00458878 | UBS-LF00458886 |
| NHELI_2006_FM2_2001906251 | NOM-FHFA_01166634 | NOM-FHFA_01166902 |
| | UBS-LF00311207 | UBS-LF00311247 |
| | UBS-LF00314082 | UBS-LF00314328 |
| | UBS-LF00333225 | UBS-LF00333245 |
| | UBS-LF00362093 | UBS-LF00362103 |
| | UBS-LF00382465 | UBS-LF00382466 |
| | UBS-LF00401332 | UBS-LF00401333 |
| | UBS-LF00454489 | UBS-LF00454490 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2001908423 | NOM-FHFA_01395652 | NOM-FHFA_01395976 |
| | UBS-LF00337466 | UBS-LF00337509 |
| | UBS-LF00342761 | UBS-LF00343066 |
| | UBS-LF00369853 | UBS-LF00369873 |
| | UBS-LF00372307 | UBS-LF00372315 |
| | UBS-LF00380882 | UBS-LF00380885 |
| | UBS-LF00400450 | UBS-LF00400453 |
| NHELI_2006_FM2_2001908585 | NOM-FHFA_01458828 | NOM-FHFA_01459075 |
| | UBS-LF00300349 | UBS-LF00300389 |
| | UBS-LF00300481 | UBS-LF00300714 |
| | UBS-LF00333128 | UBS-LF00333130 |
| | UBS-LF00333179 | UBS-LF00333202 |
| | UBS-LF00352101 | UBS-LF00352102 |
| | UBS-LF00377873 | UBS-LF00377876 |
| | UBS-LF00400212 | UBS-LF00400213 |
| | UBS-LF00455448 | UBS-LF00455449 |
| NHELI_2006_FM2_2001911867 | NOM-FHFA_01792132 | NOM-FHFA_01792366 |
| | UBS-LF00341132 | UBS-LF00341173 |
| | UBS-LF00361466 | UBS-LF00361677 |
| | UBS-LF00380387 | UBS-LF00380389 |
| | UBS-LF00399553 | UBS-LF00399573 |
| | UBS-LF00400079 | UBS-LF00400082 |
| | UBS-LF00400260 | UBS-LF00400271 |
| NHELI_2006_FM2_2001984199 | NOM-FHFA_00965183 | NOM-FHFA_00965614 |
| | UBS-LF00336861 | UBS-LF00336909 |
| | UBS-LF00349362 | UBS-LF00349655 |
| | UBS-LF00364438 | UBS-LF00364470 |
| | UBS-LF00364534 | UBS-LF00364554 |
| | UBS-LF00377519 | UBS-LF00377522 |
| | UBS-LF00400641 | UBS-LF00400644 |
| NHELI_2006_FM2_2001984218 | NOM-FHFA_00990603 | NOM-FHFA_00991057 |
| | UBS-LF00300878 | UBS-LF00300909 |
| | UBS-LF00307405 | UBS-LF00307666 |
| | UBS-LF00362123 | UBS-LF00362126 |
| | UBS-LF00363804 | UBS-LF00363813 |
| | UBS-LF00377493 | UBS-LF00377510 |
| | UBS-LF00380304 | UBS-LF00380307 |
| | UBS-LF00400337 | UBS-LF00400340 |
| | UBS-LF00402566 | UBS-LF00402569 |
| | UBS-LF00455415 | UBS-LF00455418 |
| NHELI_2006_FM2_2001984752 | NOM-FHFA_01120552 | NOM-FHFA_01120973 |
| | UBS-LF00341174 | UBS-LF00341217 |
| | UBS-LF00352983 | UBS-LF00353279 |
| | UBS-LF00360723 | UBS-LF00360743 |
| | UBS-LF00400182 | UBS-LF00400193 |
| | UBS-LF00400757 | UBS-LF00400758 |
| NHELI_2006_FM2_2001985087 | NOM-FHFA_01246434 | NOM-FHFA_01246713 |
| | UBS-LF00335934 | UBS-LF00335967 |
| | UBS-LF00356545 | UBS-LF00356804 |
| | UBS-LF00368884 | UBS-LF00368893 |
| | UBS-LF00371657 | UBS-LF00371677 |
| | UBS-LF00380379 | UBS-LF00380382 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2001985090 | NOM-FHFA_01249020 | NOM-FHFA_01249276 |
|  | UBS-LF00326394 | UBS-LF00326434 |
|  | UBS-LF00334278 | UBS-LF00334544 |
|  | UBS-LF00406873 | UBS-LF00406877 |
|  | UBS-LF00445233 | UBS-LF00445255 |
|  | UBS-LF00446072 | UBS-LF00446093 |
| NHELI_2006_FM2_2001985092 | NOM-FHFA_01249823 | NOM-FHFA_01250122 |
|  | UBS-LF00354244 | UBS-LF00354286 |
|  | UBS-LF00356189 | UBS-LF00356500 |
|  | UBS-LF00382485 | UBS-LF00382487 |
|  | UBS-LF00401259 | UBS-LF00401266 |
|  | UBS-LF00403651 | UBS-LF00403674 |
|  | UBS-LF00423526 | UBS-LF00423539 |
| NHELI_2006_FM2_2001985100 | NOM-FHFA_01260408 | NOM-FHFA_01260685 |
|  | UBS-LF00336782 | UBS-LF00336819 |
|  | UBS-LF00340761 | UBS-LF00341048 |
|  | UBS-LF00400071 | UBS-LF00400072 |
|  | UBS-LF00401696 | UBS-LF00401697 |
|  | UBS-LF00401858 | UBS-LF00401866 |
|  | UBS-LF00402293 | UBS-LF00402315 |
| NHELI_2006_FM2_2001985369 | NOM-FHFA_01314204 | NOM-FHFA_01314505 |
|  | UBS-LF00339386 | UBS-LF00339438 |
|  | UBS-LF00341509 | UBS-LF00341773 |
|  | UBS-LF00391589 | UBS-LF00391592 |
|  | UBS-LF00450608 | UBS-LF00450644 |
| NHELI_2006_FM2_2001985385 | NOM-FHFA_01339060 | NOM-FHFA_01339373 |
|  | UBS-LF00291787 | UBS-LF00291843 |
|  | UBS-LF00292814 | UBS-LF00293113 |
|  | UBS-LF00297965 | UBS-LF00297988 |
|  | UBS-LF00363097 | UBS-LF00363098 |
|  | UBS-LF00391597 | UBS-LF00391598 |
|  | UBS-LF00405207 | UBS-LF00405222 |
|  | UBS-LF00454979 | UBS-LF00454982 |
|  | UBS-LF00455785 | UBS-LF00455788 |
| NHELI_2006_FM2_2001985615 | NOM-FHFA_01430146 | NOM-FHFA_01430437 |
|  | UBS-LF00336015 | UBS-LF00336046 |
|  | UBS-LF00357181 | UBS-LF00357483 |
|  | UBS-LF00380922 | UBS-LF00380925 |
|  | UBS-LF00400458 | UBS-LF00400461 |
|  | UBS-LF00403257 | UBS-LF00403273 |
|  | UBS-LF00406843 | UBS-LF00406854 |
| NHELI_2006_FM2_2001985635 | NOM-FHFA_01452926 | NOM-FHFA_01453247 |
|  | UBS-LF00270490 | UBS-LF00270532 |
|  | UBS-LF00273976 | UBS-LF00274285 |
|  | UBS-LF00297492 | UBS-LF00297515 |
|  | UBS-LF00403677 | UBS-LF00403681 |
|  | UBS-LF00454136 | UBS-LF00454144 |
|  | UBS-LF00455847 | UBS-LF00455850 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2001985933 | NOM-FHFA_01546815 | NOM-FHFA_01547248 |
| | UBS-LF00318486 | UBS-LF00318528 |
| | UBS-LF00323562 | UBS-LF00323819 |
| | UBS-LF00338463 | UBS-LF00338487 |
| | UBS-LF00358914 | UBS-LF00358916 |
| | UBS-LF00377537 | UBS-LF00377538 |
| | UBS-LF00393117 | UBS-LF00393118 |
| | UBS-LF00399950 | UBS-LF00399951 |
| | UBS-LF00454523 | UBS-LF00454524 |
| NHELI_2006_FM2_2001986485 | NOM-FHFA_01640252 | NOM-FHFA_01640564 |
| | UBS-LF00314957 | UBS-LF00315001 |
| | UBS-LF00315941 | UBS-LF00316222 |
| | UBS-LF00362137 | UBS-LF00362140 |
| | UBS-LF00362297 | UBS-LF00362321 |
| | UBS-LF00380316 | UBS-LF00380319 |
| | UBS-LF00398778 | UBS-LF00398794 |
| | UBS-LF00399926 | UBS-LF00399929 |
| NHELI_2006_FM2_2001986687 | NOM-FHFA_01664922 | NOM-FHFA_01665266 |
| | UBS-LF00337552 | UBS-LF00337588 |
| | UBS-LF00358088 | UBS-LF00358409 |
| | UBS-LF00365611 | UBS-LF00365634 |
| | UBS-LF00391571 | UBS-LF00391572 |
| | UBS-LF00400485 | UBS-LF00400498 |
| | UBS-LF00401692 | UBS-LF00401693 |
| NHELI_2006_FM2_2001987014 | NOM-FHFA_01698873 | NOM-FHFA_01699113 |
| | UBS-LF00350707 | UBS-LF00350746 |
| | UBS-LF00360122 | UBS-LF00360372 |
| | UBS-LF00382441 | UBS-LF00382443 |
| | UBS-LF00400673 | UBS-LF00400674 |
| | UBS-LF00404842 | UBS-LF00404863 |
| | UBS-LF00407854 | UBS-LF00407867 |
| | UBS-LF00407899 | UBS-LF00407920 |
| NHELI_2006_FM2_2001987494 | NOM-FHFA_01777541 | NOM-FHFA_01777752 |
| | UBS-LF00355799 | UBS-LF00355828 |
| | UBS-LF00358410 | UBS-LF00358629 |
| | UBS-LF00399630 | UBS-LF00399631 |
| | UBS-LF00400073 | UBS-LF00400074 |
| | UBS-LF00408634 | UBS-LF00408650 |
| NHELI_2006_FM2_2001988340 | NOM-FHFA_01905358 | NOM-FHFA_01905657 |
| | UBS-LF00339439 | UBS-LF00339483 |
| | UBS-LF00354968 | UBS-LF00355237 |
| | UBS-LF00358630 | UBS-LF00358650 |
| | UBS-LF00360664 | UBS-LF00360680 |
| | UBS-LF00381076 | UBS-LF00381079 |
| | UBS-LF00401509 | UBS-LF00401512 |
| | UBS-LF00402043 | UBS-LF00402063 |
| NHELI_2006_FM2_2002011352 | NOM-FHFA_01073375 | NOM-FHFA_01073790 |
| | UBS-LF00335249 | UBS-LF00335291 |
| | UBS-LF00347944 | UBS-LF00347964 |
| | UBS-LF00349108 | UBS-LF00349361 |
| | UBS-LF00350822 | UBS-LF00350845 |
| | UBS-LF00380332 | UBS-LF00380333 |
| | UBS-LF00456466 | UBS-LF00456471 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
| --- | --- | --- |
| NHELI_2006_FM2_2002011555 | NOM-FHFA_01095654 | NOM-FHFA_01095899 |
| | UBS-LF00330665 | UBS-LF00330706 |
| | UBS-LF00334901 | UBS-LF00334921 |
| | UBS-LF00348206 | UBS-LF00348441 |
| | UBS-LF00377551 | UBS-LF00377554 |
| | UBS-LF00399970 | UBS-LF00399973 |
| | UBS-LF00444805 | UBS-LF00444818 |
| | UBS-LF00454473 | UBS-LF00454474 |
| NHELI_2006_FM2_2002011833 | NOM-FHFA_01134259 | NOM-FHFA_01134565 |
| | UBS-LF00337589 | UBS-LF00337631 |
| | UBS-LF00352721 | UBS-LF00352982 |
| | UBS-LF00373372 | UBS-LF00373388 |
| | UBS-LF00377559 | UBS-LF00377562 |
| | UBS-LF00381154 | UBS-LF00381175 |
| | UBS-LF00397777 | UBS-LF00397793 |
| | UBS-LF00399986 | UBS-LF00399989 |
| | UBS-LF00405467 | UBS-LF00405468 |
| NHELI_2006_FM2_2002011855 | NOM-FHFA_01157915 | NOM-FHFA_01158243 |
| | UBS-LF00316385 | UBS-LF00316424 |
| | UBS-LF00321301 | UBS-LF00321607 |
| | UBS-LF00342125 | UBS-LF00342146 |
| | UBS-LF00358925 | UBS-LF00358934 |
| | UBS-LF00380353 | UBS-LF00380355 |
| | UBS-LF00401245 | UBS-LF00401252 |
| | UBS-LF00454648 | UBS-LF00454651 |
| NHELI_2006_FM2_2002012338 | NOM-FHFA_01222009 | NOM-FHFA_01222277 |
| | UBS-LF00319350 | UBS-LF00319382 |
| | UBS-LF00326097 | UBS-LF00326347 |
| | UBS-LF00338439 | UBS-LF00338454 |
| | UBS-LF00360768 | UBS-LF00360771 |
| | UBS-LF00377575 | UBS-LF00377578 |
| | UBS-LF00398966 | UBS-LF00398978 |
| | UBS-LF00400063 | UBS-LF00400066 |
| NHELI_2006_FM2_2002012739 | NOM-FHFA_01290282 | NOM-FHFA_01290800 |
| | UBS-LF00341774 | UBS-LF00341814 |
| | UBS-LF00342501 | UBS-LF00342760 |
| | UBS-LF00384334 | UBS-LF00384337 |
| | UBS-LF00402150 | UBS-LF00402171 |
| | UBS-LF00402234 | UBS-LF00402237 |
| NHELI_2006_FM2_2002013675 | NOM-FHFA_01620545 | NOM-FHFA_01620859 |
| | UBS-LF00342050 | UBS-LF00342090 |
| | UBS-LF00360373 | UBS-LF00360663 |
| | UBS-LF00364373 | UBS-LF00364391 |
| | UBS-LF00380302 | UBS-LF00380303 |
| | UBS-LF00382176 | UBS-LF00382190 |
| | UBS-LF00401300 | UBS-LF00401305 |
| NHELI_2006_FM2_2002013777 | NOM-FHFA_01636418 | NOM-FHFA_01636749 |
| | UBS-LF00345598 | UBS-LF00345633 |
| | UBS-LF00356805 | UBS-LF00357113 |
| | UBS-LF00382256 | UBS-LF00382260 |
| | UBS-LF00399076 | UBS-LF00399089 |
| | UBS-LF00399154 | UBS-LF00399169 |
| | UBS-LF00400737 | UBS-LF00400743 |
| | UBS-LF00402570 | UBS-LF00402571 |
| | UBS-LF00454423 | UBS-LF00454426 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002013787 | NOM-FHFA_01650973 | NOM-FHFA_01651249 |
| | UBS-LF00316299 | UBS-LF00316342 |
| | UBS-LF00329444 | UBS-LF00329691 |
| | UBS-LF00342430 | UBS-LF00342452 |
| | UBS-LF00363769 | UBS-LF00363772 |
| | UBS-LF00365245 | UBS-LF00365256 |
| | UBS-LF00365430 | UBS-LF00365432 |
| | UBS-LF00382271 | UBS-LF00382273 |
| | UBS-LF00399938 | UBS-LF00399939 |
| | UBS-LF00402538 | UBS-LF00402539 |
| | UBS-LF00406918 | UBS-LF00406919 |
| NHELI_2006_FM2_2002013814 | NOM-FHFA_01699114 | NOM-FHFA_01699316 |
| | UBS-LF00350747 | UBS-LF00350779 |
| | UBS-LF00367903 | UBS-LF00368115 |
| | UBS-LF00382444 | UBS-LF00382447 |
| | UBS-LF00400675 | UBS-LF00400676 |
| | UBS-LF00404824 | UBS-LF00404841 |
| | UBS-LF00407868 | UBS-LF00407879 |
| | UBS-LF00407921 | UBS-LF00407938 |
| NHELI_2006_FM2_2002014208 | NOM-FHFA_01780456 | NOM-FHFA_01780986 |
| | UBS-LF00345158 | UBS-LF00345194 |
| | UBS-LF00357535 | UBS-LF00357805 |
| | UBS-LF00366088 | UBS-LF00366109 |
| | UBS-LF00366979 | UBS-LF00366987 |
| | UBS-LF00369921 | UBS-LF00369924 |
| | UBS-LF00400075 | UBS-LF00400078 |
| NHELI_2006_FM2_2002027242 | NOM-FHFA_01928412 | NOM-FHFA_01928694 |
| | NOM-FHFA_05512767 | NOM-FHFA_05512772 |
| | UBS-LF00335171 | UBS-LF00335209 |
| | UBS-LF00353280 | UBS-LF00353573 |
| | UBS-LF00381091 | UBS-LF00381094 |
| | UBS-LF00401700 | UBS-LF00401703 |
| | UBS-LF00457955 | UBS-LF00457966 |
| | UBS-LF00458758 | UBS-LF00458782 |
| NHELI_2006_FM2_2002119572 | NOM-FHFA_01080898 | NOM-FHFA_01081225 |
| | UBS-LF00330787 | UBS-LF00330826 |
| | UBS-LF00352129 | UBS-LF00352438 |
| | UBS-LF00382278 | UBS-LF00382281 |
| | UBS-LF00398998 | UBS-LF00399023 |
| | UBS-LF00400651 | UBS-LF00400654 |
| | UBS-LF00400829 | UBS-LF00400831 |
| | UBS-LF00401642 | UBS-LF00401654 |
| NHELI_2006_FM2_2002120452 | NOM-FHFA_01361196 | NOM-FHFA_01361397 |
| | UBS-LF00321265 | UBS-LF00321300 |
| | UBS-LF00327932 | UBS-LF00328128 |
| | UBS-LF00330320 | UBS-LF00330336 |
| | UBS-LF00364402 | UBS-LF00364403 |
| | UBS-LF00391601 | UBS-LF00391602 |
| | UBS-LF00400449 | UBS-LF00400449 |
| | UBS-LF00458342 | UBS-LF00458355 |
| | UBS-LF00458639 | UBS-LF00458653 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002121724 | NOM-FHFA_01477643 | NOM-FHFA_01477961 |
| | UBS-LF00323894 | UBS-LF00323935 |
| | UBS-LF00343619 | UBS-LF00343636 |
| | UBS-LF00349897 | UBS-LF00350205 |
| | UBS-LF00352109 | UBS-LF00352112 |
| | UBS-LF00365433 | UBS-LF00365436 |
| | UBS-LF00371688 | UBS-LF00371691 |
| | UBS-LF00400471 | UBS-LF00400474 |
| | UBS-LF00453789 | UBS-LF00453801 |
| NHELI_2006_FM2_2002122165 | NOM-FHFA_01519346 | NOM-FHFA_01519628 |
| | UBS-LF00335210 | UBS-LF00335248 |
| | UBS-LF00339783 | UBS-LF00340077 |
| | UBS-LF00374195 | UBS-LF00374200 |
| | UBS-LF00400809 | UBS-LF00400812 |
| | UBS-LF00401587 | UBS-LF00401608 |
| | UBS-LF00443045 | UBS-LF00443056 |
| NHELI_2006_FM2_2002122175 | NOM-FHFA_01528111 | NOM-FHFA_01528355 |
| | UBS-LF00339310 | UBS-LF00339349 |
| | UBS-LF00345634 | UBS-LF00345891 |
| | UBS-LF00369953 | UBS-LF00369954 |
| | UBS-LF00391643 | UBS-LF00391646 |
| NHELI_2006_FM2_2002122577 | NOM-FHFA_01563263 | NOM-FHFA_01563538 |
| | UBS-LF00336613 | UBS-LF00336644 |
| | UBS-LF00348685 | UBS-LF00348942 |
| | UBS-LF00382577 | UBS-LF00382580 |
| | UBS-LF00387749 | UBS-LF00387767 |
| | UBS-LF00399417 | UBS-LF00399426 |
| | UBS-LF00399474 | UBS-LF00399475 |
| NHELI_2006_FM2_2002122939 | NOM-FHFA_01657471 | NOM-FHFA_01657695 |
| | UBS-LF00322109 | UBS-LF00322143 |
| | UBS-LF00330827 | UBS-LF00331030 |
| | UBS-LF00335670 | UBS-LF00335671 |
| | UBS-LF00340078 | UBS-LF00340088 |
| | UBS-LF00344460 | UBS-LF00344477 |
| | UBS-LF00377539 | UBS-LF00377542 |
| | UBS-LF00399952 | UBS-LF00399955 |
| | UBS-LF00454619 | UBS-LF00454622 |
| NHELI_2006_FM2_2002122946 | NOM-FHFA_01666340 | NOM-FHFA_01666708 |
| | UBS-LF00337510 | UBS-LF00337551 |
| | UBS-LF00367081 | UBS-LF00367087 |
| | UBS-LF00367132 | UBS-LF00367482 |
| | UBS-LF00377547 | UBS-LF00377550 |
| | UBS-LF00387870 | UBS-LF00387890 |
| | UBS-LF00399966 | UBS-LF00399969 |
| NHELI_2006_FM2_2002124324 | NOM-FHFA_01893960 | NOM-FHFA_01894329 |
| | UBS-LF00355829 | UBS-LF00355873 |
| | UBS-LF00362672 | UBS-LF00362950 |
| | UBS-LF00363013 | UBS-LF00363063 |
| | UBS-LF00364210 | UBS-LF00364230 |
| | UBS-LF00396212 | UBS-LF00396215 |
| | UBS-LF00400303 | UBS-LF00400334 |
| | UBS-LF00400462 | UBS-LF00400463 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002124325 | NOM-FHFA_01894330 | NOM-FHFA_01894664 |
| | UBS-LF00335968 | UBS-LF00336014 |
| | UBS-LF00353923 | UBS-LF00354202 |
| | UBS-LF00367088 | UBS-LF00367108 |
| | UBS-LF00376444 | UBS-LF00376459 |
| | UBS-LF00380984 | UBS-LF00380987 |
| | UBS-LF00401507 | UBS-LF00401508 |
| NHELI_2006_FM2_2002172493 | NOM-FHFA_00837153 | NOM-FHFA_00837475 |
| | UBS-LF00275572 | UBS-LF00275615 |
| | UBS-LF00277858 | UBS-LF00278154 |
| | UBS-LF00283056 | UBS-LF00283076 |
| | UBS-LF00307397 | UBS-LF00307404 |
| | UBS-LF00374234 | UBS-LF00374242 |
| | UBS-LF00404740 | UBS-LF00404743 |
| | UBS-LF00455184 | UBS-LF00455185 |
| | UBS-LF00455900 | UBS-LF00455901 |
| NHELI_2006_FM2_2002172785 | NOM-FHFA_00969286 | NOM-FHFA_00969569 |
| | UBS-LF00330430 | UBS-LF00330485 |
| | UBS-LF00336534 | UBS-LF00336557 |
| | UBS-LF00343637 | UBS-LF00343885 |
| | UBS-LF00374121 | UBS-LF00374122 |
| | UBS-LF00382226 | UBS-LF00382243 |
| | UBS-LF00399848 | UBS-LF00399851 |
| NHELI_2006_FM2_2002173770 | NOM-FHFA_01410097 | NOM-FHFA_01410390 |
| | UBS-LF00339259 | UBS-LF00339309 |
| | UBS-LF00345246 | UBS-LF00345472 |
| | UBS-LF00345528 | UBS-LF00345564 |
| | UBS-LF00363784 | UBS-LF00363803 |
| | UBS-LF00367483 | UBS-LF00367502 |
| | UBS-LF00391625 | UBS-LF00391626 |
| | UBS-LF00400659 | UBS-LF00400660 |
| NHELI_2006_FM2_2002174323 | NOM-FHFA_01604530 | NOM-FHFA_01604777 |
| | UBS-LF00336820 | UBS-LF00336860 |
| | UBS-LF00349656 | UBS-LF00349896 |
| | UBS-LF00369812 | UBS-LF00369831 |
| | UBS-LF00380298 | UBS-LF00380301 |
| | UBS-LF00400729 | UBS-LF00400730 |
| | UBS-LF00406855 | UBS-LF00406872 |
| NHELI_2006_FM2_2002174339 | NOM-FHFA_01625715 | NOM-FHFA_01625999 |
| | UBS-LF00338934 | UBS-LF00338968 |
| | UBS-LF00359787 | UBS-LF00359822 |
| | UBS-LF00366709 | UBS-LF00366956 |
| | UBS-LF00382212 | UBS-LF00382213 |
| | UBS-LF00398795 | UBS-LF00398812 |
| | UBS-LF00400873 | UBS-LF00400874 |
| NHELI_2006_FM2_2002174641 | NOM-FHFA_01735303 | NOM-FHFA_01735620 |
| | UBS-LF00328755 | UBS-LF00328801 |
| | UBS-LF00335292 | UBS-LF00335588 |
| | UBS-LF00374403 | UBS-LF00374408 |
| | UBS-LF00377601 | UBS-LF00377625 |
| | UBS-LF00392857 | UBS-LF00392858 |
| | UBS-LF00401336 | UBS-LF00401337 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002174646 | NOM-FHFA_01743598 | NOM-FHFA_01743838 |
| | UBS-LF00347065 | UBS-LF00347103 |
| | UBS-LF00361213 | UBS-LF00361465 |
| | UBS-LF00380369 | UBS-LF00380372 |
| | UBS-LF00401694 | UBS-LF00401695 |
| | UBS-LF00403342 | UBS-LF00403362 |
| | UBS-LF00403433 | UBS-LF00403443 |
| NHELI_2006_FM2_2002174651 | NOM-FHFA_01756597 | NOM-FHFA_01756853 |
| | UBS-LF00345116 | UBS-LF00345157 |
| | UBS-LF00359194 | UBS-LF00359446 |
| | UBS-LF00377583 | UBS-LF00377584 |
| | UBS-LF00384332 | UBS-LF00384333 |
| | UBS-LF00396210 | UBS-LF00396211 |
| | UBS-LF00400413 | UBS-LF00400416 |
| | UBS-LF00402078 | UBS-LF00402099 |
| | UBS-LF00402430 | UBS-LF00402445 |
| NHELI_2006_FM2_2002195171 | LF1FHFA24826220 | LF1FHFA24827397 |
| | NOM-FHFA_01944300 | NOM-FHFA_01946686 |
| | UBS-LF00336645 | UBS-LF00336692 |
| | UBS-LF00353574 | UBS-LF00353922 |
| | UBS-LF00368576 | UBS-LF00368591 |
| | UBS-LF00375374 | UBS-LF00375375 |
| | UBS-LF00376309 | UBS-LF00376334 |
| | UBS-LF00382581 | UBS-LF00382584 |
| | UBS-LF00399542 | UBS-LF00399550 |
| | UBS-LF00400234 | UBS-LF00400236 |
| | UBS-LF00400475 | UBS-LF00400478 |
| NHELI_2006_FM2_2002199066 | NOM-FHFA_00901057 | NOM-FHFA_00901390 |
| | UBS-LF00331588 | UBS-LF00331641 |
| | UBS-LF00344134 | UBS-LF00344459 |
| | UBS-LF00364334 | UBS-LF00364335 |
| | UBS-LF00382202 | UBS-LF00382203 |
| | UBS-LF00398906 | UBS-LF00398932 |
| | UBS-LF00400869 | UBS-LF00400872 |
| | UBS-LF00401820 | UBS-LF00401823 |
| NHELI_2006_FM2_2002199258 | NOM-FHFA_00972552 | NOM-FHFA_00972855 |
| | UBS-LF00330486 | UBS-LF00330520 |
| | UBS-LF00346484 | UBS-LF00346748 |
| | UBS-LF00354952 | UBS-LF00354967 |
| | UBS-LF00391542 | UBS-LF00391545 |
| | UBS-LF00401292 | UBS-LF00401299 |
| | UBS-LF00458621 | UBS-LF00458638 |
| NHELI_2006_FM2_2002202724 | NOM-FHFA_01163544 | NOM-FHFA_01163829 |
| | UBS-LF00324456 | UBS-LF00324510 |
| | UBS-LF00328858 | UBS-LF00329113 |
| | UBS-LF00333131 | UBS-LF00333154 |
| | UBS-LF00360760 | UBS-LF00360763 |
| | UBS-LF00382458 | UBS-LF00382461 |
| | UBS-LF00398866 | UBS-LF00398882 |
| | UBS-LF00400398 | UBS-LF00400401 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002203064 | NOM-FHFA_01297637 | NOM-FHFA_01297999 |
|  | UBS-LF00336737 | UBS-LF00336781 |
|  | UBS-LF00340386 | UBS-LF00340760 |
|  | UBS-LF00382492 | UBS-LF00382495 |
|  | UBS-LF00399494 | UBS-LF00399495 |
|  | UBS-LF00400417 | UBS-LF00400420 |
|  | UBS-LF00437381 | UBS-LF00437403 |
|  | UBS-LF00442670 | UBS-LF00442680 |
| NHELI_2006_FM2_2002203707 | NOM-FHFA_01424662 | NOM-FHFA_01424932 |
|  | UBS-LF00332035 | UBS-LF00332079 |
|  | UBS-LF00342147 | UBS-LF00342359 |
|  | UBS-LF00345565 | UBS-LF00345585 |
|  | UBS-LF00357136 | UBS-LF00357164 |
|  | UBS-LF00365412 | UBS-LF00365426 |
|  | UBS-LF00374179 | UBS-LF00374182 |
|  | UBS-LF00400144 | UBS-LF00400145 |
| NHELI_2006_FM2_2002203715 | NOM-FHFA_01433707 | NOM-FHFA_01434032 |
|  | UBS-LF00329741 | UBS-LF00329780 |
|  | UBS-LF00329852 | UBS-LF00329867 |
|  | UBS-LF00354287 | UBS-LF00354563 |
|  | UBS-LF00361678 | UBS-LF00361687 |
|  | UBS-LF00364484 | UBS-LF00364533 |
|  | UBS-LF00391627 | UBS-LF00391630 |
|  | UBS-LF00400805 | UBS-LF00400808 |
|  | UBS-LF00401450 | UBS-LF00401475 |
| NHELI_2006_FM2_2002204489 | NOM-FHFA_01623711 | NOM-FHFA_01623977 |
|  | UBS-LF00341098 | UBS-LF00341131 |
|  | UBS-LF00363877 | UBS-LF00364139 |
|  | UBS-LF00377523 | UBS-LF00377526 |
|  | UBS-LF00399489 | UBS-LF00399493 |
|  | UBS-LF00399536 | UBS-LF00399541 |
|  | UBS-LF00399697 | UBS-LF00399697 |
|  | UBS-LF00402743 | UBS-LF00402746 |
|  | UBS-LF00450645 | UBS-LF00450657 |
|  | UBS-LF00450675 | UBS-LF00450694 |
| NHELI_2006_FM2_2002204820 | NOM-FHFA_01716553 | NOM-FHFA_01716848 |
|  | UBS-LF00350780 | UBS-LF00350821 |
|  | UBS-LF00368129 | UBS-LF00368412 |
|  | UBS-LF00369955 | UBS-LF00369976 |
|  | UBS-LF00377563 | UBS-LF00377564 |
|  | UBS-LF00399994 | UBS-LF00399995 |
|  | UBS-LF00408686 | UBS-LF00408689 |
| NHELI_2006_FM2_2002204821 | NOM-FHFA_01716849 | NOM-FHFA_01717172 |
|  | UBS-LF00319253 | UBS-LF00319303 |
|  | UBS-LF00324965 | UBS-LF00325301 |
|  | UBS-LF00360756 | UBS-LF00360757 |
|  | UBS-LF00369904 | UBS-LF00369906 |
|  | UBS-LF00382448 | UBS-LF00382449 |
|  | UBS-LF00400765 | UBS-LF00400766 |
|  | UBS-LF00456430 | UBS-LF00456434 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002205201 | NOM-FHFA_01764548 | NOM-FHFA_01764946 |
| | UBS-LF00337679 | UBS-LF00337729 |
| | UBS-LF00354564 | UBS-LF00354951 |
| | UBS-LF00369576 | UBS-LF00369599 |
| | UBS-LF00380383 | UBS-LF00380386 |
| | UBS-LF00400067 | UBS-LF00400070 |
| | UBS-LF00402550 | UBS-LF00402551 |
| | UBS-LF00411006 | UBS-LF00411010 |
| NHELI_2006_FM2_2002205388 | NOM-FHFA_01812683 | NOM-FHFA_01812935 |
| | UBS-LF00338021 | UBS-LF00338050 |
| | UBS-LF00338423 | UBS-LF00338438 |
| | UBS-LF00351725 | UBS-LF00351956 |
| | UBS-LF00356501 | UBS-LF00356519 |
| | UBS-LF00376296 | UBS-LF00376308 |
| | UBS-LF00380394 | UBS-LF00380397 |
| | UBS-LF00400087 | UBS-LF00400090 |
| NHELI_2006_FM2_2002216472 | NOM-FHFA_01925179 | NOM-FHFA_01925478 |
| | UBS-LF00308961 | UBS-LF00309005 |
| | UBS-LF00313465 | UBS-LF00313744 |
| | UBS-LF00362066 | UBS-LF00362092 |
| | UBS-LF00362170 | UBS-LF00362173 |
| | UBS-LF00384338 | UBS-LF00384341 |
| | UBS-LF00401529 | UBS-LF00401532 |
| NHELI_2006_FM2_2002216482 | NOM-FHFA_01954459 | NOM-FHFA_01954746 |
| | UBS-LF00341053 | UBS-LF00341097 |
| | UBS-LF00359823 | UBS-LF00360121 |
| | UBS-LF00398699 | UBS-LF00398700 |
| | UBS-LF00400479 | UBS-LF00400480 |
| | UBS-LF00454375 | UBS-LF00454399 |
| NHELI_2006_FM2_2002231336 | NOM-FHFA_00870565 | NOM-FHFA_00870872 |
| | UBS-LF00330521 | UBS-LF00330572 |
| | UBS-LF00336509 | UBS-LF00336533 |
| | UBS-LF00339519 | UBS-LF00339782 |
| | UBS-LF00365564 | UBS-LF00365593 |
| | UBS-LF00371678 | UBS-LF00371679 |
| | UBS-LF00374113 | UBS-LF00374114 |
| | UBS-LF00391524 | UBS-LF00391525 |
| | UBS-LF00400867 | UBS-LF00400868 |
| NHELI_2006_FM2_2002231338 | NOM-FHFA_00871095 | NOM-FHFA_00871344 |
| | UBS-LF00337730 | UBS-LF00337769 |
| | UBS-LF00350443 | UBS-LF00350667 |
| | UBS-LF00399660 | UBS-LF00399682 |
| | UBS-LF00400022 | UBS-LF00400030 |
| | UBS-LF00400299 | UBS-LF00400302 |
| | UBS-LF00401271 | UBS-LF00401272 |
| NHELI_2006_FM2_2002231958 | NOM-FHFA_01027474 | NOM-FHFA_01027689 |
| | UBS-LF00311248 | UBS-LF00311283 |
| | UBS-LF00312181 | UBS-LF00312386 |
| | UBS-LF00382267 | UBS-LF00382270 |
| | UBS-LF00398734 | UBS-LF00398753 |
| | UBS-LF00400753 | UBS-LF00400756 |
| | UBS-LF00405261 | UBS-LF00405272 |
| | UBS-LF00454600 | UBS-LF00454603 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002232196 | NOM-FHFA_01093964 | NOM-FHFA_01094164 |
| | UBS-LF00330079 | UBS-LF00330108 |
| | UBS-LF00348943 | UBS-LF00349107 |
| | UBS-LF00363814 | UBS-LF00363829 |
| | UBS-LF00365180 | UBS-LF00365189 |
| | UBS-LF00380334 | UBS-LF00380337 |
| | UBS-LF00401310 | UBS-LF00401317 |
| NHELI_2006_FM2_2002232209 | NOM-FHFA_01123194 | NOM-FHFA_01123450 |
| | UBS-LF00332080 | UBS-LF00332117 |
| | UBS-LF00347965 | UBS-LF00348205 |
| | UBS-LF00374151 | UBS-LF00374154 |
| | UBS-LF00374454 | UBS-LF00374458 |
| | UBS-LF00376422 | UBS-LF00376443 |
| | UBS-LF00399978 | UBS-LF00399981 |
| NHELI_2006_FM2_2002232515 | NOM-FHFA_01159053 | NOM-FHFA_01159336 |
| | UBS-LF00328802 | UBS-LF00328843 |
| | UBS-LF00332808 | UBS-LF00333081 |
| | UBS-LF00342453 | UBS-LF00342474 |
| | UBS-LF00382454 | UBS-LF00382457 |
| | UBS-LF00400394 | UBS-LF00400397 |
| | UBS-LF00401698 | UBS-LF00401699 |
| NHELI_2006_FM2_2002232517 | NOM-FHFA_01160981 | NOM-FHFA_01161324 |
| | UBS-LF00336693 | UBS-LF00336736 |
| | UBS-LF00350846 | UBS-LF00351168 |
| | UBS-LF00365649 | UBS-LF00365659 |
| | UBS-LF00366298 | UBS-LF00366319 |
| | UBS-LF00401330 | UBS-LF00401331 |
| NHELI_2006_FM2_2002232520 | NOM-FHFA_01163254 | NOM-FHFA_01163543 |
| | UBS-LF00318452 | UBS-LF00318485 |
| | UBS-LF00324511 | UBS-LF00324785 |
| | UBS-LF00337374 | UBS-LF00337382 |
| | UBS-LF00377567 | UBS-LF00377570 |
| | UBS-LF00381221 | UBS-LF00381238 |
| | UBS-LF00400039 | UBS-LF00400042 |
| | UBS-LF00454535 | UBS-LF00454538 |
| NHELI_2006_FM2_2002232747 | NOM-FHFA_01211994 | NOM-FHFA_01212233 |
| | UBS-LF00321219 | UBS-LF00321264 |
| | UBS-LF00325566 | UBS-LF00325818 |
| | UBS-LF00362163 | UBS-LF00362164 |
| | UBS-LF00400061 | UBS-LF00400062 |
| | UBS-LF00402548 | UBS-LF00402549 |
| | UBS-LF00453639 | UBS-LF00453676 |
| NHELI_2006_FM2_2002232758 | NOM-FHFA_01232757 | NOM-FHFA_01233023 |
| | UBS-LF00330573 | UBS-LF00330611 |
| | UBS-LF00330652 | UBS-LF00330664 |
| | UBS-LF00338597 | UBS-LF00338880 |
| | UBS-LF00362651 | UBS-LF00362652 |
| | UBS-LF00377579 | UBS-LF00377582 |
| | UBS-LF00399090 | UBS-LF00399102 |
| | UBS-LF00400677 | UBS-LF00400680 |
| | UBS-LF00434996 | UBS-LF00435017 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_FM2_2002233153 | NOM-FHFA_01320861 | NOM-FHFA_01321116 |
| | UBS-LF00331690 | UBS-LF00331729 |
| | UBS-LF00336995 | UBS-LF00337261 |
| | UBS-LF00380390 | UBS-LF00380393 |
| | UBS-LF00400421 | UBS-LF00400424 |
| | UBS-LF00431580 | UBS-LF00431601 |
| | UBS-LF00438887 | UBS-LF00438898 |
| NHELI_2006_FM2_2002234427 | NOM-FHFA_01544712 | NOM-FHFA_01544997 |
| | UBS-LF00299121 | UBS-LF00299166 |
| | UBS-LF00301878 | UBS-LF00302176 |
| | UBS-LF00364410 | UBS-LF00364413 |
| | UBS-LF00391647 | UBS-LF00391650 |
| | UBS-LF00401267 | UBS-LF00401270 |
| | UBS-LF00444058 | UBS-LF00444082 |
| | UBS-LF00454732 | UBS-LF00454734 |
| | UBS-LF00455204 | UBS-LF00455205 |
| NHELI_2006_FM2_2002235023 | NOM-FHFA_01688357 | NOM-FHFA_01688632 |
| | UBS-LF00345078 | UBS-LF00345115 |
| | UBS-LF00358651 | UBS-LF00358913 |
| | UBS-LF00365352 | UBS-LF00365372 |
| | UBS-LF00391575 | UBS-LF00391576 |
| | UBS-LF00401225 | UBS-LF00401226 |
| | UBS-LF00402341 | UBS-LF00402345 |
| | UBS-LF00454419 | UBS-LF00454420 |
| NHELI_2006_FM2_2002235036 | NOM-FHFA_01700327 | NOM-FHFA_01700593 |
| | UBS-LF00339484 | UBS-LF00339518 |
| | UBS-LF00358935 | UBS-LF00359182 |
| | UBS-LF00364414 | UBS-LF00364425 |
| | UBS-LF00365594 | UBS-LF00365610 |
| | UBS-LF00406878 | UBS-LF00406882 |
| NHELI_2006_FM2_2002235622 | NOM-FHFA_01838926 | NOM-FHFA_01839253 |
| | UBS-LF00345195 | UBS-LF00345245 |
| | UBS-LF00359488 | UBS-LF00359786 |
| | UBS-LF00385971 | UBS-LF00385996 |
| | UBS-LF00388735 | UBS-LF00388748 |
| | UBS-LF00392859 | UBS-LF00392860 |
| | UBS-LF00400095 | UBS-LF00400096 |
| | UBS-LF00401344 | UBS-LF00401345 |
| | UBS-LF00452372 | UBS-LF00452373 |
| NHELI_2006_HE3_2001839574 | NOM-FHFA_02090773 | NOM-FHFA_02090970 |
| NHELI_2006_HE3_2001841893 | NOM-FHFA_02177822 | NOM-FHFA_02178035 |
| | NOM-PEO-LF_00003693 | NOM-PEO-LF_00003905 |
| NHELI_2006_HE3_2001841896 | NOM-FHFA_02180678 | NOM-FHFA_02180908 |
| | NOM-PEO-LF_00006551 | NOM-PEO-LF_00006779 |
| NHELI_2006_HE3_2001844456 | NOM-FHFA_02382399 | NOM-FHFA_02382597 |
| | NOM-PEO-LF_00007886 | NOM-PEO-LF_00008106 |
| NHELI_2006_HE3_2001846083 | LF1FHFA24838198 | LF1FHFA24838301 |
| | NOM-FHFA_02426381 | NOM-FHFA_02426532 |
| | NOM-QUI-LF_00001402 | NOM-QUI-LF_00001623 |
| NHELI_2006_HE3_2001846084 | NOM-FHFA_02426728 | NOM-FHFA_02426884 |
| | NOM-QUI-LF_00002172 | NOM-QUI-LF_00002456 |
| NHELI_2006_HE3_2001846452 | NOM-FHFA_02459615 | NOM-FHFA_02459734 |
| NHELI_2006_HE3_2001846528 | NOM-FHFA_02489710 | NOM-FHFA_02489864 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_HE3_2001847068 | LF1FHFA24838492 | LF1FHFA24838768 |
| | NOM-FHFA-MUT-LF_00000001 | NOM-FHFA-MUT-LF_00000330 |
| | NOM-FHFA_02497055 | NOM-FHFA_02497261 |
| NHELI_2006_HE3_2001847928 | NOM-FHFA_02605319 | NOM-FHFA_02605521 |
| | NOM-PEO-LF_00010211 | NOM-PEO-LF_00010457 |
| NHELI_2006_HE3_2001849587 | NOM-FHFA_02784133 | NOM-FHFA_02784256 |
| NHELI_2006_HE3_2001914961 | NOM-FHFA_02029910 | NOM-FHFA_02030236 |
| | NOM-FUN-LF_00000004 | NOM-FUN-LF_00000236 |
| NHELI_2006_HE3_2001915223 | NOM-FHFA_02090002 | NOM-FHFA_02090272 |
| NHELI_2006_HE3_2001916678 | NOM-FHFA_02168677 | NOM-FHFA_02168974 |
| | NOM-PEO-LF_00007582 | NOM-PEO-LF_00007885 |
| NHELI_2006_HE3_2001918073 | NOM-FHFA_02206655 | NOM-FHFA_02206894 |
| | NOM-PEO-LF_00004744 | NOM-PEO-LF_00004988 |
| NHELI_2006_HE3_2001918074 | NOM-FHFA_02209376 | NOM-FHFA_02209622 |
| | NOM-PEO-LF_00006296 | NOM-PEO-LF_00006550 |
| NHELI_2006_HE3_2001918886 | NOM-FHFA_02340856 | NOM-FHFA_02341118 |
| | NOM-PEO-LF_00002363 | NOM-PEO-LF_00002629 |
| NHELI_2006_HE3_2001918904 | NOM-FHFA_02363394 | NOM-FHFA_02363673 |
| | NOM-PEO-LF_00003906 | NOM-PEO-LF_00004186 |
| NHELI_2006_HE3_2001919851 | BARC-EF-000109689 | BARC-EF-000110047 |
| | NOM-EQU-LF_00000890 | NOM-EQU-LF_00001248 |
| | NOM-FHFA_02393163 | NOM-FHFA_02393598 |
| NHELI_2006_HE3_2001919867 | NOM-FHFA_02418986 | NOM-FHFA_02419011 |
| | NOM-QUI-LF_00001132 | NOM-QUI-LF_00001401 |
| NHELI_2006_HE3_2001920226 | NOM-FHFA_02470708 | NOM-FHFA_02470827 |
| NHELI_2006_HE3_2001920677 | NOM-FHFA_02504457 | NOM-FHFA_02504745 |
| | NOM-PEO-LF_00011311 | NOM-PEO-LF_00011597 |
| NHELI_2006_HE3_2001922837 | NOM-FHFA_02782498 | NOM-FHFA_02782679 |
| NHELI_2006_HE3_2001988804 | NOM-FHFA_01983311 | NOM-FHFA_01983495 |
| NHELI_2006_HE3_2001992149 | LF1NOM_01707802 | LF1NOM_01708483 |
| | NOM-FHFA_02287767 | NOM-FHFA_02287992 |
| | NOM-PEO-LF_00005283 | NOM-PEO-LF_00005516 |
| NHELI_2006_HE3_2002002100 | NOM-FHFA_02420518 | NOM-FHFA_02420663 |
| | NOM-QUI-LF_00000794 | NOM-QUI-LF_00001131 |
| NHELI_2006_HE3_2002002123 | NOM-FHFA_02445972 | NOM-FHFA_02446140 |
| NHELI_2006_HE3_2002003234 | NOM-FHFA_02516961 | NOM-FHFA_02517175 |
| | NOM-PEO-LF_00008620 | NOM-PEO-LF_00008833 |
| NHELI_2006_HE3_2002003425 | NOM-FHFA_02528776 | NOM-FHFA_02529053 |
| | NOM-PEO-LF_00011030 | NOM-PEO-LF_00011310 |
| NHELI_2006_HE3_2002003797 | NOM-FHFA_02635240 | NOM-FHFA_02635522 |
| | NOM-PEO-LF_00010458 | NOM-PEO-LF_00010748 |
| NHELI_2006_HE3_2002003809 | NOM-FHFA_02650708 | NOM-FHFA_02650996 |
| | NOM-PEO-LF_00004989 | NOM-PEO-LF_00005282 |
| NHELI_2006_HE3_2002003960 | NOM-ALL-LF_00000001 | NOM-ALL-LF_00000194 |
| | NOM-FHFA_02704803 | NOM-FHFA_02705060 |
| NHELI_2006_HE3_2002012895 | NOM-FHFA_02060129 | NOM-FHFA_02060367 |
| | NOM-OCW-LF_00001066 | NOM-OCW-LF_00001664 |
| NHELI_2006_HE3_2002013470 | NOM-FHFA_02101307 | NOM-FHFA_02101602 |
| NHELI_2006_HE3_2002013475 | BARC-EF-000108800 | BARC-EF-000109218 |
| | NOM-EQU-LF_00000001 | NOM-EQU-LF_00000419 |
| | NOM-FHFA_02104580 | NOM-FHFA_02104979 |
| NHELI_2006_HE3_2002013634 | NOM-FHFA_02130560 | NOM-FHFA_02131036 |
| NHELI_2006_HE3_2002015027 | NOM-FHFA_02375195 | NOM-FHFA_02375413 |
| | NOM-PEO-LF_00004187 | NOM-PEO-LF_00004412 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_HE3_2002015245 | NOM-FHFA_02425986 | NOM-FHFA_02426185 |
| | NOM-QUI-LF_00000529 | NOM-QUI-LF_00000793 |
| NHELI_2006_HE3_2002016135 | NOM-FHFA_02575077 | NOM-FHFA_02575348 |
| | NOM-PEO-LF_00009298 | NOM-PEO-LF_00009578 |
| NHELI_2006_HE3_2002016289 | NOM-FHFA_02612134 | NOM-FHFA_02612340 |
| | NOM-PEO-LF_00009087 | NOM-PEO-LF_00009297 |
| NHELI_2006_HE3_2002016990 | NOM-FHFA_02782060 | NOM-FHFA_02782194 |
| NHELI_2006_HE3_2002017005 | NOM-FHFA_02794553 | NOM-FHFA_02794720 |
| NHELI_2006_HE3_2002119001 | NOM-FHFA_01966023 | NOM-FHFA_01966273 |
| NHELI_2006_HE3_2002121521 | NOM-FHFA_02180244 | NOM-FHFA_02180477 |
| | NOM-PEO-LF_00006780 | NOM-PEO-LF_00007043 |
| NHELI_2006_HE3_2002121884 | NOM-FHFA_02264016 | NOM-FHFA_02264250 |
| | NOM-PEO-LF_00002898 | NOM-PEO-LF_00003144 |
| NHELI_2006_HE3_2002123625 | NOM-FHFA_02531456 | NOM-FHFA_02531722 |
| | NOM-PEO-LF_00011598 | NOM-PEO-LF_00011868 |
| NHELI_2006_HE3_2002123878 | NOM-FHFA_02570034 | NOM-FHFA_02570318 |
| | NOM-PEO-LF_00007044 | NOM-PEO-LF_00007340 |
| NHELI_2006_HE3_2002124474 | NOM-ALL-LF_00000815 | NOM-ALL-LF_00001086 |
| | NOM-FHFA_02702578 | NOM-FHFA_02702891 |
| NHELI_2006_HE3_2002124858 | NOM-FHFA_02758941 | NOM-FHFA_02759224 |
| NHELI_2006_HE3_2002125056 | NOM-FHFA_02798644 | NOM-FHFA_02798863 |
| NHELI_2006_HE3_2002172375 | NOM-FHFA_01991612 | NOM-FHFA_01991781 |
| NHELI_2006_HE3_2002172387 | FHFA-GS-MN-004113 | FHFA-GS-MN-004483 |
| | NOM-FHFA_02001963 | NOM-FHFA_02002183 |
| NHELI_2006_HE3_2002172594 | NOM-FHFA_02023862 | NOM-FHFA_02024390 |
| | NOM-OCW-LF_00001665 | NOM-OCW-LF_00001679 |
| NHELI_2006_HE3_2002172851 | NOM-FHFA_02097069 | NOM-FHFA_02097355 |
| NHELI_2006_HE3_2002173403 | NOM-FHFA_02212976 | NOM-FHFA_02213230 |
| | NOM-PEO-LF_00001362 | NOM-PEO-LF_00001623 |
| NHELI_2006_HE3_2002173407 | NOM-FHFA_02215445 | NOM-FHFA_02215849 |
| | NOM-PEO-LF_00005517 | NOM-PEO-LF_00005948 |
| NHELI_2006_HE3_2002173834 | NOM-FHFA_02341586 | NOM-FHFA_02341935 |
| | NOM-PEO-LF_00005949 | NOM-PEO-LF_00006295 |
| NHELI_2006_HE3_2002174396 | NOM-FHFA_02536575 | NOM-FHFA_02536855 |
| | NOM-PEO-LF_00010749 | NOM-PEO-LF_00011029 |
| NHELI_2006_HE3_2002174402 | NOM-FHFA_02544076 | NOM-FHFA_02544337 |
| | NOM-PEO-LF_00001811 | NOM-PEO-LF_00002092 |
| NHELI_2006_HE3_2002174569 | NOM-FHFA_02582912 | NOM-FHFA_02583186 |
| | NOM-PEO-LF_00008107 | NOM-PEO-LF_00008396 |
| NHELI_2006_HE3_2002174715 | NOM-FHFA_02614827 | NOM-FHFA_02615103 |
| | NOM-PEO-LF_00001042 | NOM-PEO-LF_00001361 |
| NHELI_2006_HE3_2002174995 | NOM-FHFA_02766507 | NOM-FHFA_02766691 |
| NHELI_2006_HE3_2002175020 | NOM-FHFA_02787180 | NOM-FHFA_02787348 |
| NHELI_2006_HE3_2002205406 | NOM-FHFA_02023650 | NOM-FHFA_02023861 |
| | NOM-FUN-LF_00000001 | NOM-FUN-LF_00000003 |
| NHELI_2006_HE3_2002205419 | LF1FHFA24828040 | LF1FHFA24828254 |
| | LF1FHFA24828557 | LF1FHFA24828594 |
| | NOM-FUN-LF_00000237 | NOM-FUN-LF_00000463 |
| NHELI_2006_HE3_2002205584 | NOM-FHFA_02082979 | NOM-FHFA_02083323 |
| NHELI_2006_HE3_2002205585 | NOM-FHFA_02084579 | NOM-FHFA_02084743 |
| NHELI_2006_HE3_2002208388 | NOM-FHFA_02274486 | NOM-FHFA_02274737 |
| | NOM-PEO-LF_00000790 | NOM-PEO-LF_00001041 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2006_HE3_2002208686 | BARC-EF-000109219 | BARC-EF-000109688 |
| | NOM-EQU-LF_00000420 | NOM-EQU-LF_00000889 |
| | NOM-FHFA_02398498 | NOM-FHFA_02398923 |
| NHELI_2006_HE3_2002208698 | LF1FHFA24837709 | LF1FHFA24837740 |
| | NOM-FHFA_02410689 | NOM-FHFA_02411026 |
| | NOM-MOR-LF_00000001 | NOM-MOR-LF_00000321 |
| NHELI_2006_HE3_2002208921 | NOM-FHFA_02476829 | NOM-FHFA_02476977 |
| NHELI_2006_HE3_2002209120 | NOM-FHFA_02579270 | NOM-FHFA_02579530 |
| | NOM-PEO-LF_00000238 | NOM-PEO-LF_00000532 |
| NHELI_2006_HE3_2002209123 | NOM-FHFA_02583674 | NOM-FHFA_02584034 |
| | NOM-PEO-LF_00009579 | NOM-PEO-LF_00009943 |
| NHELI_2006_HE3_2002209611 | NOM-FHFA_02717735 | NOM-FHFA_02717968 |
| NHELI_2006_HE3_2002209817 | NOM-FHFA_02796019 | NOM-FHFA_02796172 |
| NHELI_2006_HE3_2002235729 | NOM-FHFA_02214475 | NOM-FHFA_02214741 |
| | NOM-PEO-LF_00002630 | NOM-PEO-LF_00002897 |
| NHELI_2006_HE3_2002235741 | NOM-FHFA_02231729 | NOM-FHFA_02231980 |
| | NOM-PEO-LF_00008834 | NOM-PEO-LF_00009086 |
| NHELI_2006_HE3_2002235759 | NOM-FHFA_02261969 | NOM-FHFA_02262182 |
| | NOM-PEO-LF_00007341 | NOM-PEO-LF_00007581 |
| NHELI_2006_HE3_2002235789 | NOM-FHFA_02320456 | NOM-FHFA_02320706 |
| | NOM-PEO-LF_00003145 | NOM-PEO-LF_00003426 |
| NHELI_2006_HE3_2002235843 | BARC-EF-000110048 | BARC-EF-000110338 |
| | LF1NOM_00643210 | LF1NOM_00643732 |
| | NOM-EQU-LF_00001249 | NOM-EQU-LF_00001539 |
| | NOM-FHFA_02400651 | NOM-FHFA_02400833 |
| NHELI_2006_HE3_2002235895 | LF1FHFA24838058 | LF1FHFA24838197 |
| | NOM-FHFA_02421554 | NOM-FHFA_02421730 |
| | NOM-QUI-LF_00001885 | NOM-QUI-LF_00002171 |
| NHELI_2006_HE3_2002235902 | NOM-FHFA_02434035 | NOM-FHFA_02434344 |
| NHELI_2006_HE3_2002235922 | NOM-FHFA_02450069 | NOM-FHFA_02450193 |
| NHELI_2006_HE3_2002235924 | NOM-FHFA_02450991 | NOM-FHFA_02451162 |
| NHELI_2006_HE3_2002236084 | NOM-FHFA_02483177 | NOM-FHFA_02483284 |
| NHELI_2006_HE3_2002236136 | NOM-FHFA_02576153 | NOM-FHFA_02576413 |
| | NOM-PEO-LF_00009944 | NOM-PEO-LF_00010210 |
| NHELI_2006_HE3_2002236156 | NOM-FHFA_02613999 | NOM-FHFA_02614219 |
| | NOM-PEO-LF_00000533 | NOM-PEO-LF_00000789 |
| NHELI_2006_HE3_2002236168 | NOM-FHFA_02632568 | NOM-FHFA_02632828 |
| | NOM-PEO-LF_00002093 | NOM-PEO-LF_00002362 |
| NHELI_2006_HE3_2002236172 | NOM-FHFA_02636778 | NOM-FHFA_02637102 |
| | NOM-PEO-LF_00004413 | NOM-PEO-LF_00004743 |
| NHELI_2006_HE3_2002236393 | NOM-FHFA_02770903 | NOM-FHFA_02771059 |
| NHELI_2006_HE3_2002236429 | NOM-FHFA_02809157 | NOM-FHFA_02809291 |
| NHELI_2007_1_2001852257 | NOM-FHFA_02824559 | NOM-FHFA_02824866 |
| NHELI_2007_1_2001854313 | NOM-FHFA_02842563 | NOM-FHFA_02842785 |
| NHELI_2007_1_2001856494 | NOM-FHFA_02893151 | NOM-FHFA_02893427 |
| NHELI_2007_1_2001856495 | NOM-FHFA_02893663 | NOM-FHFA_02893899 |
| NHELI_2007_1_2001856666 | NOM-FHFA_02908718 | NOM-FHFA_02908925 |
| NHELI_2007_1_2001856683 | NOM-FHFA_02914731 | NOM-FHFA_02914870 |
| NHELI_2007_1_2001865492 | NOM-FHFA_02922308 | NOM-FHFA_02922652 |
| NHELI_2007_1_2001865495 | NOM-FHFA_02926358 | NOM-FHFA_02926730 |
| NHELI_2007_1_2001927152 | NOM-FHFA_02821551 | NOM-FHFA_02821897 |
| NHELI_2007_1_2001927386 | NOM-FHFA_02822509 | NOM-FHFA_02822786 |
| NHELI_2007_1_2001928210 | NOM-FHFA_02828627 | NOM-FHFA_02828888 |
| NHELI_2007_1_2001928685 | NOM-FHFA_02833949 | NOM-FHFA_02834214 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_1_2001929177 | NOM-FHFA_02849116 | NOM-FHFA_02849350 |
| NHELI_2007_1_2001929182 | NOM-FHFA_02854710 | NOM-FHFA_02854935 |
| NHELI_2007_1_2001929985 | NOM-FHFA_02868208 | NOM-FHFA_02868443 |
| NHELI_2007_1_2001930159 | NOM-FHFA_02874196 | NOM-FHFA_02874432 |
| NHELI_2007_1_2001932199 | NOM-FHFA_02895598 | NOM-FHFA_02895832 |
| NHELI_2007_1_2001932373 | NOM-FHFA_02903070 | NOM-FHFA_02903357 |
| NHELI_2007_1_2001932387 | NOM-FHFA_02910172 | NOM-FHFA_02910418 |
| NHELI_2007_1_2001932390 | NOM-FHFA_02911340 | NOM-FHFA_02911581 |
| NHELI_2007_1_2001992411 | NOM-FHFA_02922918 | NOM-FHFA_02923161 |
| NHELI_2007_1_2001992416 | NOM-FHFA_02924534 | NOM-FHFA_02924753 |
| NHELI_2007_1_2001992604 | NOM-FHFA_02936385 | NOM-FHFA_02936595 |
| NHELI_2007_1_2002004860 | NOM-FHFA_02817655 | NOM-FHFA_02817883 |
| NHELI_2007_1_2002004869 | NOM-FHFA_02822207 | NOM-FHFA_02822508 |
| NHELI_2007_1_2002011212 | NOM-FHFA_02844394 | NOM-FHFA_02844638 |
| NHELI_2007_1_2002011872 | NOM-FHFA_02864346 | NOM-FHFA_02864610 |
| NHELI_2007_1_2002011879 | NOM-FHFA_02869511 | NOM-FHFA_02869861 |
| NHELI_2007_1_2002011881 | NOM-FHFA_02871279 | NOM-FHFA_02871578 |
| NHELI_2007_1_2002012051 | NOM-FHFA_02876150 | NOM-FHFA_02876428 |
| NHELI_2007_1_2002012236 | NOM-FHFA_02897546 | NOM-FHFA_02897857 |
| NHELI_2007_1_2002012241 | NOM-FHFA_02898618 | NOM-FHFA_02898921 |
| NHELI_2007_1_2002012246 | NOM-FHFA_02900214 | NOM-FHFA_02900436 |
| NHELI_2007_1_2002012250 | NOM-FHFA_02901821 | NOM-FHFA_02902082 |
| NHELI_2007_1_2002018486 | NOM-FHFA_02824867 | NOM-FHFA_02825187 |
| NHELI_2007_1_2002018499 | NOM-FHFA_02827960 | NOM-FHFA_02828295 |
| NHELI_2007_1_2002018500 | NOM-FHFA_02830672 | NOM-FHFA_02830932 |
| NHELI_2007_1_2002018979 | NOM-FHFA_02833544 | NOM-FHFA_02833729 |
| NHELI_2007_1_2002018981 | NOM-FHFA_02834750 | NOM-FHFA_02834995 |
| NHELI_2007_1_2002019140 | NOM-FHFA_02850480 | NOM-FHFA_02850682 |
| NHELI_2007_1_2002019465 | NOM-FHFA_02871833 | NOM-FHFA_02872124 |
| NHELI_2007_1_2002019475 | NOM-FHFA_02874624 | NOM-FHFA_02874847 |
| NHELI_2007_1_2002019940 | NOM-FHFA_02888627 | NOM-FHFA_02889047 |
| NHELI_2007_1_2002019947 | NOM-FHFA_02896061 | NOM-FHFA_02896313 |
| NHELI_2007_1_2002019951 | NOM-FHFA_02897097 | NOM-FHFA_02897301 |
| NHELI_2007_1_2002055706 | NOM-FHFA_02925312 | NOM-FHFA_02925515 |
| NHELI_2007_1_2002056810 | NOM-FHFA_02912842 | NOM-FHFA_02913138 |
| NHELI_2007_1_2002126347 | NOM-FHFA_02824270 | NOM-FHFA_02824558 |
| NHELI_2007_1_2002126585 | NOM-FHFA_02839942 | NOM-FHFA_02840127 |
| NHELI_2007_1_2002126759 | NOM-FHFA_02849586 | NOM-FHFA_02849856 |
| NHELI_2007_1_2002127060 | NOM-FHFA_02867360 | NOM-FHFA_02867538 |
| NHELI_2007_1_2002127066 | NOM-FHFA_02868702 | NOM-FHFA_02868978 |
| NHELI_2007_1_2002127285 | NOM-FHFA_02887107 | NOM-FHFA_02887360 |
| NHELI_2007_1_2002127302 | NOM-FHFA_02908219 | NOM-FHFA_02908500 |
| NHELI_2007_1_2002148508 | NOM-FHFA_02911969 | NOM-FHFA_02912214 |
| NHELI_2007_1_2002148883 | NOM-FHFA_02935661 | NOM-FHFA_02935932 |
| NHELI_2007_1_2002176318 | NOM-FHFA_02848065 | NOM-FHFA_02848426 |
| NHELI_2007_1_2002176469 | NOM-FHFA_02853459 | NOM-FHFA_02853717 |
| NHELI_2007_1_2002176487 | NOM-FHFA_02856232 | NOM-FHFA_02856464 |
| NHELI_2007_1_2002176522 | NOM-FHFA_02865429 | NOM-FHFA_02865629 |
| NHELI_2007_1_2002176545 | NOM-FHFA_02881019 | NOM-FHFA_02881167 |
| NHELI_2007_1_2002202439 | NOM-FHFA_02932107 | NOM-FHFA_02932332 |
| NHELI_2007_1_2002211361 | NOM-FHFA_02834474 | NOM-FHFA_02834749 |
| NHELI_2007_1_2002211558 | NOM-FHFA_02854458 | NOM-FHFA_02854709 |
| NHELI_2007_1_2002211580 | NOM-FHFA_02860636 | NOM-FHFA_02860890 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_1_2002211710 | NOM-FHFA_02861138 | NOM-FHFA_02861366 |
| NHELI_2007_1_2002211713 | NOM-FHFA_02862079 | NOM-FHFA_02862310 |
| NHELI_2007_1_2002211714 | NOM-FHFA_02862757 | NOM-FHFA_02862977 |
| NHELI_2007_1_2002211938 | NOM-FHFA_02868444 | NOM-FHFA_02868701 |
| NHELI_2007_1_2002212172 | NOM-FHFA_02896612 | NOM-FHFA_02896863 |
| NHELI_2007_1_2002212385 | NOM-FHFA_02920662 | NOM-FHFA_02920962 |
| NHELI_2007_1_2002212593 | NOM-FHFA_02928248 | NOM-FHFA_02928498 |
| | NOM-MET-LF_00000001 | NOM-MET-LF_00000477 |
| NHELI_2007_1_2002236551 | NOM-FHFA_02815213 | NOM-FHFA_02815466 |
| NHELI_2007_1_2002236636 | NOM-FHFA_02821898 | NOM-FHFA_02822206 |
| NHELI_2007_1_2002236649 | NOM-FHFA_02827456 | NOM-FHFA_02827739 |
| NHELI_2007_1_2002236999 | NOM-FHFA_02836107 | NOM-FHFA_02836416 |
| NHELI_2007_1_2002237147 | NOM-FHFA_02845738 | NOM-FHFA_02846087 |
| NHELI_2007_1_2002237148 | NOM-FHFA_02846375 | NOM-FHFA_02846613 |
| NHELI_2007_1_2002237295 | NOM-FHFA_02862311 | NOM-FHFA_02862532 |
| NHELI_2007_1_2002237443 | NOM-FHFA_02871579 | NOM-FHFA_02871832 |
| NHELI_2007_1_2002237486 | NOM-FHFA_02890248 | NOM-FHFA_02890617 |
| NHELI_2007_1_2002237651 | NOM-FHFA_02896314 | NOM-FHFA_02896611 |
| NHELI_2007_1_2002237670 | NOM-FHFA_02902636 | NOM-FHFA_02902889 |
| NHELI_2007_1_2002247991 | NOM-FHFA_02923162 | NOM-FHFA_02923410 |
| NHELI_2007_1_2002248079 | NOM-FHFA_02932574 | NOM-FHFA_02932815 |
| NHELI_2007_2_2001855455 | NOM-EQU-LF_00002948 | NOM-EQU-LF_00003299 |
| | NOM-FHFA_02972660 | NOM-FHFA_02972928 |
| NHELI_2007_2_2001855635 | BARC-EF-000110339 | BARC-EF-000110696 |
| | LF1FHFA01441742 | LF1FHFA01441938 |
| | NOM-EQU-LF_00001540 | NOM-EQU-LF_00001897 |
| | NOM-FHFA_02996606 | NOM-FHFA_02996841 |
| NHELI_2007_2_2001855985 | NOM-FHFA_03166606 | NOM-FHFA_03167097 |
| NHELI_2007_2_2001856214 | NOM-FHFA_03221363 | NOM-FHFA_03221599 |
| NHELI_2007_2_2001857532 | NOM-FHFA_03550392 | NOM-FHFA_03550656 |
| NHELI_2007_2_2001857725 | NOM-FHFA_03566985 | NOM-FHFA_03567246 |
| NHELI_2007_2_2001857862 | LF1FHFA01971040 | LF1FHFA01971276 |
| NHELI_2007_2_2001857878 | LF1FHFA01978853 | LF1FHFA01979337 |
| | LF1NOM_00650400 | LF1NOM_00651112 |
| NHELI_2007_2_2001857982 | NOM-FHFA_03641063 | NOM-FHFA_03641320 |
| NHELI_2007_2_2001929854 | NOM-FHFA_02946990 | NOM-FHFA_02947221 |
| NHELI_2007_2_2001930015 | NOM-EQU-LF_00004021 | NOM-EQU-LF_00004332 |
| | NOM-FHFA_02975088 | NOM-FHFA_02975273 |
| NHELI_2007_2_2001930021 | NOM-FHFA_02982174 | NOM-FHFA_02982448 |
| | UBS-LF00354203 | UBS-LF00354243 |
| | UBS-LF00362322 | UBS-LF00362605 |
| | UBS-LF00399852 | UBS-LF00399853 |
| | UBS-LF00402532 | UBS-LF00402533 |
| | UBS-LF00459260 | UBS-LF00459286 |
| | UBS-LF00459521 | UBS-LF00459556 |
| NHELI_2007_2_2001930340 | NOM-FHFA_03057392 | NOM-FHFA_03057601 |
| NHELI_2007_2_2001930630 | LF1FHFA01517738 | LF1FHFA01518307 |
| | NOM-FHFA_03074188 | NOM-FHFA_03074411 |
| NHELI_2007_2_2001930813 | NOM-FHFA_03112870 | NOM-FHFA_03113046 |
| NHELI_2007_2_2001930818 | NOM-FHFA_03114476 | NOM-FHFA_03114787 |
| NHELI_2007_2_2001931612 | NOM-FHFA_03215349 | NOM-FHFA_03215591 |
| NHELI_2007_2_2001931628 | NOM-EQU-LF_00006081 | NOM-EQU-LF_00006474 |
| | NOM-FHFA_03234761 | NOM-FHFA_03234980 |
| NHELI_2007_2_2001932595 | NOM-FHFA_03374746 | NOM-FHFA_03375017 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_2_2001932613 | NOM-FHFA_03397997 | NOM-FHFA_03398275 |
| NHELI_2007_2_2001932919 | NOM-FHFA_03441619 | NOM-FHFA_03441890 |
| NHELI_2007_2_2001933100 | NOM-FHFA_03496326 | NOM-FHFA_03496541 |
| NHELI_2007_2_2001933325 | LF1FHFA01889320 | LF1FHFA01889738 |
|  | LF1NOM_00657328 | LF1NOM_00658139 |
| NHELI_2007_2_2001933489 | LF1NOM_01742804 | LF1NOM_01743373 |
|  | NOM-FHFA_03610528 | NOM-FHFA_03610789 |
| NHELI_2007_2_2001933495 | NOM-FHFA_03616544 | NOM-FHFA_03616810 |
| NHELI_2007_2_2001992976 | LF1FHFA01977939 | LF1FHFA01978254 |
| NHELI_2007_2_2002009320 | NOM-FHFA_02956742 | NOM-FHFA_02956885 |
|  | NOM-QUI-LF_00000290 | NOM-QUI-LF_00000528 |
| NHELI_2007_2_2002009576 | NOM-EQU-LF_00005084 | NOM-EQU-LF_00005464 |
|  | NOM-FHFA_03005262 | NOM-FHFA_03005433 |
| NHELI_2007_2_2002010004 | NOM-ALL-LF_00000195 | NOM-ALL-LF_00000475 |
|  | NOM-FHFA_03033509 | NOM-FHFA_03033819 |
| NHELI_2007_2_2002010020 | NOM-FHFA_03048980 | NOM-FHFA_03049350 |
| NHELI_2007_2_2002010219 | NOM-FHFA_03061695 | NOM-FHFA_03061928 |
| NHELI_2007_2_2002011491 | NOM-FHFA_03214390 | NOM-FHFA_03214631 |
| NHELI_2007_2_2002011499 | NOM-FHFA_03223540 | NOM-FHFA_03223765 |
| NHELI_2007_2_2002011708 | BARC-EF-000114607 | BARC-EF-000114879 |
|  | NOM-EQU-LF_00005808 | NOM-EQU-LF_00006080 |
|  | NOM-FHFA_03250560 | NOM-FHFA_03250779 |
| NHELI_2007_2_2002011728 | NOM-BRI-LF_00000965 | NOM-BRI-LF_00001359 |
|  | NOM-FHFA_03279840 | NOM-FHFA_03280189 |
| NHELI_2007_2_2002020241 | NOM-EQU-LF_00003300 | NOM-EQU-LF_00003604 |
|  | NOM-FHFA_02997512 | NOM-FHFA_02997712 |
| NHELI_2007_2_2002021665 | NOM-FHFA_03438555 | NOM-FHFA_03438779 |
| NHELI_2007_2_2002022010 | NOM-FHFA_03615129 | NOM-FHFA_03615344 |
| NHELI_2007_2_2002058033 | NOM-FHFA_03652186 | NOM-FHFA_03652469 |
| NHELI_2007_2_2002130933 | NOM-FHFA_02946756 | NOM-FHFA_02946989 |
| NHELI_2007_2_2002130956 | BARC-EF-000111078 | BARC-EF-000111458 |
|  | LF1FHFA01424630 | LF1FHFA01424800 |
|  | NOM-EQU-LF_00002279 | NOM-EQU-LF_00002659 |
|  | NOM-FHFA_02968456 | NOM-FHFA_02968665 |
| NHELI_2007_2_2002131147 | NOM-FHFA_02972077 | NOM-FHFA_02972365 |
|  | UBS-LF00282662 | UBS-LF00282705 |
|  | UBS-LF00294071 | UBS-LF00294300 |
|  | UBS-LF00294878 | UBS-LF00294907 |
|  | UBS-LF00296002 | UBS-LF00296019 |
|  | UBS-LF00298919 | UBS-LF00298941 |
|  | UBS-LF00377511 | UBS-LF00377514 |
|  | UBS-LF00399813 | UBS-LF00399814 |
|  | UBS-LF00401153 | UBS-LF00401156 |
|  | UBS-LF00454574 | UBS-LF00454575 |
|  | UBS-LF00455460 | UBS-LF00455461 |
| NHELI_2007_2_2002131167 | NOM-EQU-LF_00003605 | NOM-EQU-LF_00004020 |
|  | NOM-FHFA_02997959 | NOM-FHFA_02998213 |
| NHELI_2007_2_2002131318 | NOM-FHFA_03049351 | NOM-FHFA_03049709 |
| NHELI_2007_2_2002132009 | NOM-FHFA_03158048 | NOM-FHFA_03158509 |
| NHELI_2007_2_2002133256 | NOM-FHFA_03450043 | NOM-FHFA_03450329 |
| NHELI_2007_2_2002134179 | NOM-FHFA_03576119 | NOM-FHFA_03576407 |
| NHELI_2007_2_2002134191 | NOM-FHFA_03596667 | NOM-FHFA_03596966 |
| NHELI_2007_2_2002134192 | NOM-FHFA_03597294 | NOM-FHFA_03597555 |
| NHELI_2007_2_2002134201 | NOM-FHFA_03611149 | NOM-FHFA_03611384 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_2_2002134402 | NOM-OCW-LF_00003427 | NOM-OCW-LF_00003647 |
| NHELI_2007_2_2002148656 | NOM-FHFA_03622015 | NOM-FHFA_03622270 |
| NHELI_2007_2_2002148962 | NOM-FHFA_03636591 | NOM-FHFA_03636889 |
| NHELI_2007_2_2002148978 | NOM-FHFA_03658712 | NOM-FHFA_03659064 |
| NHELI_2007_2_2002178776 | NOM-FHFA_02945864 | NOM-FHFA_02946024 |
| NHELI_2007_2_2002178984 | NOM-EQU-LF_00004333 | NOM-EQU-LF_00004738 |
| | NOM-FHFA_03003578 | NOM-FHFA_03003805 |
| NHELI_2007_2_2002179883 | NOM-FHFA_03147800 | NOM-FHFA_03148004 |
| NHELI_2007_2_2002179884 | NOM-FHFA_03149337 | NOM-FHFA_03149665 |
| NHELI_2007_2_2002180362 | NOM-BRI-LF_00000461 | NOM-BRI-LF_00000964 |
| | NOM-FHFA_03267966 | NOM-FHFA_03268439 |
| NHELI_2007_2_2002181250 | NOM-FHFA_03413209 | NOM-FHFA_03413545 |
| NHELI_2007_2_2002181848 | LF1FHFA01834913 | LF1FHFA01835719 |
| NHELI_2007_2_2002181904 | NOM-FHFA_03576408 | NOM-FHFA_03576734 |
| NHELI_2007_2_2002182090 | NOM-OCW-LF_00008055 | NOM-OCW-LF_00008344 |
| NHELI_2007_2_2002182219 | LF1FHFA01969779 | LF1FHFA01970094 |
| | LF1NOM_00674827 | LF1NOM_00675179 |
| NHELI_2007_2_2002182248 | NOM-FHFA_03641321 | NOM-FHFA_03641640 |
| NHELI_2007_2_2002208997 | NOM-FHFA_02941022 | NOM-FHFA_02941284 |
| | NOM-PEO-LF_00003427 | NOM-PEO-LF_00003692 |
| NHELI_2007_2_2002209146 | NOM-FHFA_02955180 | NOM-FHFA_02955368 |
| | NOM-QUI-LF_00001624 | NOM-QUI-LF_00001884 |
| NHELI_2007_2_2002209502 | NOM-ALL-LF_00000476 | NOM-ALL-LF_00000814 |
| | NOM-FHFA_03031805 | NOM-FHFA_03032136 |
| NHELI_2007_2_2002209654 | NOM-FHFA_03064072 | NOM-FHFA_03064294 |
| NHELI_2007_2_2002209851 | NOM-FHFA_03079147 | NOM-FHFA_03079402 |
| NHELI_2007_2_2002210018 | NOM-FHFA_03109661 | NOM-FHFA_03109873 |
| NHELI_2007_2_2002210025 | NOM-FHFA_03119020 | NOM-FHFA_03119178 |
| NHELI_2007_2_2002210807 | LF1NOM_01761445 | LF1NOM_01762132 |
| | NOM-FHFA_03324189 | NOM-FHFA_03324551 |
| NHELI_2007_2_2002210813 | NOM-FHFA_03331530 | NOM-FHFA_03331932 |
| NHELI_2007_2_2002211425 | NOM-FHFA_03378371 | NOM-FHFA_03378635 |
| NHELI_2007_2_2002211626 | NOM-FHFA_03447974 | NOM-FHFA_03448251 |
| NHELI_2007_2_2002211644 | NOM-FHFA_03466782 | NOM-FHFA_03467126 |
| NHELI_2007_2_2002212268 | NOM-FHFA_03550131 | NOM-FHFA_03550391 |
| NHELI_2007_2_2002212289 | NOM-FHFA_03577835 | NOM-FHFA_03578194 |
| NHELI_2007_2_2002212500 | NOM-FHFA_03594084 | NOM-FHFA_03594364 |
| NHELI_2007_2_2002212503 | NOM-FHFA_03595432 | NOM-FHFA_03595753 |
| NHELI_2007_2_2002212505 | LF1NOM_01766631 | LF1NOM_01766781 |
| | NOM-FHFA_03597897 | NOM-FHFA_03598033 |
| NHELI_2007_2_2002212716 | NOM-FHFA_03611385 | NOM-FHFA_03611664 |
| NHELI_2007_2_2002212971 | NOM-FHFA_03649631 | NOM-FHFA_03649904 |
| NHELI_2007_2_2002236011 | NOM-EQU-LF_00004739 | NOM-EQU-LF_00005083 |
| | NOM-FHFA_02974014 | NOM-FHFA_02974201 |
| NHELI_2007_2_2002236013 | NOM-EQU-LF_00001898 | NOM-EQU-LF_00002278 |
| | NOM-FHFA_02974848 | NOM-FHFA_02975087 |
| NHELI_2007_2_2002236040 | LF1NOM_01768574 | LF1NOM_01770270 |
| | NOM-FHFA_03016984 | NOM-FHFA_03017295 |
| NHELI_2007_2_2002236332 | NOM-FHFA_03122032 | NOM-FHFA_03122317 |
| NHELI_2007_2_2002236365 | NOM-FHFA_03152543 | NOM-FHFA_03152769 |
| NHELI_2007_2_2002236764 | LF1FHFA01623449 | LF1FHFA01623512 |
| | NOM-FUN-LF_00000552 | NOM-FUN-LF_00001110 |
| NHELI_2007_2_2002237077 | LF1NOM_01771201 | LF1NOM_01771779 |
| | NOM-FHFA_03327704 | NOM-FHFA_03327802 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_2_2002237108 | NOM-FHFA_03352598 | NOM-FHFA_03352878 |
| NHELI_2007_2_2002237803 | NOM-OCW-LF_00003152 | NOM-OCW-LF_00003426 |
| NHELI_2007_3_2001856541 | NOM-BRI-LF_00010042 | NOM-BRI-LF_00010414 |
| | NOM-FHFA_03733507 | NOM-FHFA_03733870 |
| NHELI_2007_3_2001856568 | NOM-BRI-LF_00008350 | NOM-BRI-LF_00008647 |
| | NOM-FHFA_03751866 | NOM-FHFA_03752161 |
| NHELI_2007_3_2001856719 | NOM-BRI-LF_00012425 | NOM-BRI-LF_00012763 |
| | NOM-FHFA_03810513 | NOM-FHFA_03810843 |
| NHELI_2007_3_2001856721 | NOM-BRI-LF_00012764 | NOM-BRI-LF_00013085 |
| | NOM-FHFA_03813757 | NOM-FHFA_03814075 |
| NHELI_2007_3_2001857184 | NOM-BRI-LF_00014684 | NOM-BRI-LF_00015069 |
| | NOM-FHFA_03947136 | NOM-FHFA_03947514 |
| NHELI_2007_3_2001857894 | LF1NOM_00687529 | LF1NOM_00687855 |
| | NOM-FHFA_03975026 | NOM-FHFA_03975239 |
| NHELI_2007_3_2001858026 | NOM-BRI-LF_00019307 | NOM-BRI-LF_00019609 |
| | NOM-FHFA_04013432 | NOM-FHFA_04013704 |
| NHELI_2007_3_2001858032 | NOM-BRI-LF_00020334 | NOM-BRI-LF_00020677 |
| | NOM-FHFA_04017539 | NOM-FHFA_04017871 |
| NHELI_2007_3_2001858167 | NOM-BRI-LF_00019984 | NOM-BRI-LF_00020333 |
| | NOM-FHFA_04030756 | NOM-FHFA_04031102 |
| NHELI_2007_3_2001858179 | NOM-BRI-LF_00021137 | NOM-BRI-LF_00021558 |
| | NOM-FHFA_04050712 | NOM-FHFA_04051160 |
| NHELI_2007_3_2001859293 | NOM-FHFA_04220136 | NOM-FHFA_04220423 |
| NHELI_2007_3_2001932287 | NOM-FHFA_03672465 | NOM-FHFA_03672685 |
| NHELI_2007_3_2001932486 | NOM-BRI-LF_00003248 | NOM-BRI-LF_00003598 |
| | NOM-FHFA_03691394 | NOM-FHFA_03691722 |
| NHELI_2007_3_2001932639 | NOM-BRI-LF_00009386 | NOM-BRI-LF_00009730 |
| | NOM-FHFA_03720289 | NOM-FHFA_03720618 |
| NHELI_2007_3_2001933001 | NOM-BRI-LF_00010725 | NOM-BRI-LF_00011002 |
| | NOM-FHFA_03759641 | NOM-FHFA_03759914 |
| NHELI_2007_3_2001933379 | NOM-BRI-LF_00013353 | NOM-BRI-LF_00013827 |
| | NOM-FHFA_03814076 | NOM-FHFA_03814467 |
| NHELI_2007_3_2001933574 | NOM-BRI-LF_00003599 | NOM-BRI-LF_00003948 |
| | NOM-FHFA_03853537 | NOM-FHFA_03853861 |
| NHELI_2007_3_2001933775 | NOM-FHFA_03901048 | NOM-FHFA_03901407 |
| NHELI_2007_3_2001934264 | NOM-FHFA_03954669 | NOM-FHFA_03954877 |
| | NOM-WMC-LF_00000001 | NOM-WMC-LF_00000240 |
| NHELI_2007_3_2001935437 | NOM-BRI-LF_00020678 | NOM-BRI-LF_00021136 |
| | NOM-FHFA_04159750 | NOM-FHFA_04160222 |
| NHELI_2007_3_2001935439 | NOM-BRI-LF_00026751 | NOM-BRI-LF_00027105 |
| | NOM-FHFA_04163695 | NOM-FHFA_04164075 |
| NHELI_2007_3_2002014490 | NOM-OCW-LF_00001680 | NOM-OCW-LF_00002245 |
| NHELI_2007_3_2002014764 | NOM-BRI-LF_00007025 | NOM-BRI-LF_00007402 |
| | NOM-FHFA_03708640 | NOM-FHFA_03709036 |
| NHELI_2007_3_2002015188 | NOM-BRI-LF_00008775 | NOM-BRI-LF_00009055 |
| | NOM-FHFA_03754180 | NOM-FHFA_03754445 |
| NHELI_2007_3_2002015207 | NOM-BRI-LF_00014307 | NOM-BRI-LF_00014683 |
| | NOM-FHFA_03773364 | NOM-FHFA_03773721 |
| NHELI_2007_3_2002015215 | NOM-BRI-LF_00011304 | NOM-BRI-LF_00011668 |
| | NOM-FHFA_03782957 | NOM-FHFA_03783282 |
| NHELI_2007_3_2002015606 | NOM-BRI-LF_00016755 | NOM-BRI-LF_00017158 |
| | NOM-FHFA_03859640 | NOM-FHFA_03860007 |
| NHELI_2007_3_2002017299 | NOM-BRI-LF_00022096 | NOM-BRI-LF_00022383 |
| | NOM-FHFA_04038200 | NOM-FHFA_04038536 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_3_2002018045 | NOM-BRI-LF_00026042 | NOM-BRI-LF_00026406 |
| | NOM-FHFA_04131413 | NOM-FHFA_04131742 |
| NHELI_2007_3_2002018405 | NOM-BRI-LF_00022384 | NOM-BRI-LF_00022780 |
| | NOM-FHFA_04184651 | NOM-FHFA_04185061 |
| NHELI_2007_3_2002018626 | NOM-BRI-LF_00001601 | NOM-BRI-LF_00001946 |
| | NOM-FHFA_04188395 | NOM-FHFA_04188728 |
| NHELI_2007_3_2002020528 | NOM-BRI-LF_00005852 | NOM-BRI-LF_00006178 |
| | NOM-FHFA_03693382 | NOM-FHFA_03693697 |
| NHELI_2007_3_2002020760 | NOM-BRI-LF_00010415 | NOM-BRI-LF_00010724 |
| | NOM-FHFA_03737604 | NOM-FHFA_03737899 |
| NHELI_2007_3_2002021770 | NOM-BRI-LF_00013828 | NOM-BRI-LF_00014306 |
| | NOM-FHFA_03853080 | NOM-FHFA_03853536 |
| NHELI_2007_3_2002021772 | NOM-BRI-LF_00003949 | NOM-BRI-LF_00004232 |
| | NOM-FHFA_03854608 | NOM-FHFA_03854882 |
| NHELI_2007_3_2002021913 | NOM-BRI-LF_00016469 | NOM-BRI-LF_00016754 |
| | NOM-FHFA_03865849 | NOM-FHFA_03866157 |
| NHELI_2007_3_2002021919 | NOM-BRI-LF_00007980 | NOM-BRI-LF_00008349 |
| | NOM-FHFA_03877171 | NOM-FHFA_03877506 |
| NHELI_2007_3_2002024734 | NOM-BRI-LF_00027432 | NOM-BRI-LF_00027851 |
| | NOM-FHFA_04211886 | NOM-FHFA_04212304 |
| NHELI_2007_3_2002026086 | NOM-FHFA_04245185 | NOM-FHFA_04245408 |
| | NOM-MET-LF_00001411 | NOM-MET-LF_00001842 |
| NHELI_2007_3_2002130300 | NOM-BRI-LF_00001360 | NOM-BRI-LF_00001600 |
| | NOM-FHFA_03724550 | NOM-FHFA_03724798 |
| NHELI_2007_3_2002130431 | NOM-BRI-LF_00011003 | NOM-BRI-LF_00011303 |
| | NOM-FHFA_03736064 | NOM-FHFA_03736371 |
| NHELI_2007_3_2002130821 | NOM-BRI-LF_00016133 | NOM-BRI-LF_00016468 |
| | NOM-FHFA_03809555 | NOM-FHFA_03809886 |
| NHELI_2007_3_2002131013 | NOM-BRI-LF_00017902 | NOM-BRI-LF_00018164 |
| | NOM-FHFA_03841501 | NOM-FHFA_03841777 |
| NHELI_2007_3_2002131594 | NOM-BRI-LF_00002918 | NOM-BRI-LF_00003247 |
| | NOM-FHFA_03934023 | NOM-FHFA_03934354 |
| NHELI_2007_3_2002131604 | NOM-BRI-LF_00015766 | NOM-BRI-LF_00016132 |
| | NOM-FHFA_03942848 | NOM-FHFA_03943192 |
| NHELI_2007_3_2002132609 | NOM-BRI-LF_00019610 | NOM-BRI-LF_00019983 |
| | NOM-FHFA_04030371 | NOM-FHFA_04030755 |
| NHELI_2007_3_2002132778 | NOM-BRI-LF_00025753 | NOM-BRI-LF_00026041 |
| | NOM-FHFA_04085249 | NOM-FHFA_04085545 |
| NHELI_2007_3_2002132953 | NOM-BRI-LF_00022781 | NOM-BRI-LF_00023100 |
| | NOM-FHFA_04099908 | NOM-FHFA_04100247 |
| NHELI_2007_3_2002132960 | NOM-BRI-LF_00026407 | NOM-BRI-LF_00026750 |
| | NOM-FHFA_04111281 | NOM-FHFA_04111633 |
| NHELI_2007_3_2002133116 | NOM-BRI-LF_00018974 | NOM-BRI-LF_00019306 |
| | NOM-FHFA_04138878 | NOM-FHFA_04139212 |
| NHELI_2007_3_2002133513 | NOM-FHFA_04225513 | NOM-FHFA_04225768 |
| NHELI_2007_3_2002163325 | NOM-FHFA_04231734 | NOM-FHFA_04231962 |
| NHELI_2007_3_2002178575 | NOM-BRI-LF_00001947 | NOM-BRI-LF_00002232 |
| | NOM-FHFA_03676008 | NOM-FHFA_03676300 |
| NHELI_2007_3_2002178744 | NOM-BRI-LF_00004233 | NOM-BRI-LF_00004592 |
| | NOM-FHFA_03681568 | NOM-FHFA_03681885 |
| NHELI_2007_3_2002178746 | NOM-BRI-LF_00005412 | NOM-BRI-LF_00005851 |
| | NOM-FHFA_03683631 | NOM-FHFA_03684050 |
| NHELI_2007_3_2002178759 | NOM-BRI-LF_00006179 | NOM-BRI-LF_00006581 |
| | NOM-FHFA_03700109 | NOM-FHFA_03700497 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_3_2002178764 | NOM-FHFA_03703926 | NOM-FHFA_03704289 |
| NHELI_2007_3_2002178771 | NOM-BRI-LF_00007403 | NOM-BRI-LF_00007694 |
| | NOM-FHFA_03709037 | NOM-FHFA_03709291 |
| NHELI_2007_3_2002179104 | NOM-BRI-LF_00008648 | NOM-BRI-LF_00008774 |
| | NOM-FHFA_03753889 | NOM-FHFA_03754179 |
| NHELI_2007_3_2002179111 | NOM-BRI-LF_00012043 | NOM-BRI-LF_00012424 |
| | NOM-FHFA_03764394 | NOM-FHFA_03764771 |
| NHELI_2007_3_2002179434 | NOM-BRI-LF_00015070 | NOM-BRI-LF_00015432 |
| | NOM-FHFA_03823457 | NOM-FHFA_03823824 |
| NHELI_2007_3_2002179436 | NOM-BRI-LF_00018165 | NOM-BRI-LF_00018567 |
| | NOM-FHFA_03825677 | NOM-FHFA_03826044 |
| NHELI_2007_3_2002179441 | NOM-BRI-LF_00015433 | NOM-BRI-LF_00015765 |
| | NOM-FHFA_03828802 | NOM-FHFA_03829141 |
| NHELI_2007_3_2002179449 | NOM-BRI-LF_00017614 | NOM-BRI-LF_00017901 |
| | NOM-FHFA_03842166 | NOM-FHFA_03842416 |
| NHELI_2007_3_2002179458 | NOM-BRI-LF_00017159 | NOM-BRI-LF_00017613 |
| | NOM-FHFA_03848882 | NOM-FHFA_03849347 |
| NHELI_2007_3_2002179617 | NOM-BRI-LF_00002233 | NOM-BRI-LF_00002588 |
| | NOM-FHFA_03857615 | NOM-FHFA_03857991 |
| NHELI_2007_3_2002179927 | NOM-BRI-LF_00002589 | NOM-BRI-LF_00002917 |
| | NOM-FHFA_03930541 | NOM-FHFA_03930879 |
| NHELI_2007_3_2002179931 | NOM-BRI-LF_00004593 | NOM-BRI-LF_00005006 |
| | NOM-FHFA_03931598 | NOM-FHFA_03932016 |
| NHELI_2007_3_2002180285 | NOM-FHFA_03957358 | NOM-FHFA_03957582 |
| | NOM-WMC-LF_00000706 | NOM-WMC-LF_00000938 |
| NHELI_2007_3_2002180574 | NOM-FHFA_03974606 | NOM-FHFA_03974852 |
| NHELI_2007_3_2002180579 | NOM-FHFA_03978180 | NOM-FHFA_03978390 |
| NHELI_2007_3_2002181471 | NOM-BRI-LF_00024413 | NOM-BRI-LF_00024733 |
| | NOM-FHFA_04140853 | NOM-FHFA_04141176 |
| NHELI_2007_3_2002181822 | NOM-BRI-LF_00025156 | NOM-BRI-LF_00025460 |
| | NOM-FHFA_04188729 | NOM-FHFA_04189050 |
| NHELI_2007_3_2002209763 | NOM-BRI-LF_00005007 | NOM-BRI-LF_00005411 |
| | NOM-FHFA_03684051 | NOM-FHFA_03684423 |
| NHELI_2007_3_2002209957 | NOM-BRI-LF_00007695 | NOM-BRI-LF_00007979 |
| | NOM-FHFA_03713952 | NOM-FHFA_03714249 |
| NHELI_2007_3_2002209961 | NOM-BRI-LF_00009056 | NOM-BRI-LF_00009385 |
| | NOM-FHFA_03715448 | NOM-FHFA_03715711 |
| NHELI_2007_3_2002211025 | NOM-BRI-LF_00009731 | NOM-BRI-LF_00010041 |
| | NOM-FHFA_03879305 | NOM-FHFA_03879594 |
| NHELI_2007_3_2002211257 | NOM-BRI-LF_00011669 | NOM-BRI-LF_00012042 |
| | NOM-FHFA_03922954 | NOM-FHFA_03923295 |
| NHELI_2007_3_2002211462 | NOM-OCW-LF_00002246 | NOM-OCW-LF_00002818 |
| NHELI_2007_3_2002211472 | NOM-WMC-LF_00000494 | NOM-WMC-LF_00000705 |
| NHELI_2007_3_2002211844 | NOM-FHFA_03961846 | NOM-FHFA_03961867 |
| | NOM-WMC-LF_00000241 | NOM-WMC-LF_00000493 |
| NHELI_2007_3_2002212803 | NOM-BRI-LF_00023101 | NOM-BRI-LF_00023489 |
| | NOM-FHFA_04100248 | NOM-FHFA_04100667 |
| NHELI_2007_3_2002213411 | NOM-BRI-LF_00021559 | NOM-BRI-LF_00022095 |
| | NOM-FHFA_04160629 | NOM-FHFA_04161136 |
| NHELI_2007_3_2002213811 | NOM-FHFA_04241696 | NOM-FHFA_04241964 |
| | NOM-MET-LF_00000978 | NOM-MET-LF_00001410 |
| NHELI_2007_3_2002237317 | NOM-BRI-LF_00000001 | NOM-BRI-LF_00000460 |
| NHELI_2007_3_2002237699 | NOM-BRI-LF_00006582 | NOM-BRI-LF_00007024 |
| | NOM-FHFA_03906146 | NOM-FHFA_03906548 |

| Securitization/Loan Number | Beginning Bates | Ending Bates |
|---|---|---|
| NHELI_2007_3_2002237963 | LF1NOM_00691355 | LF1NOM_00692502 |
| | NOM-FHFA_03968016 | NOM-FHFA_03968335 |
| NHELI_2007_3_2002238154 | NOM-BRI-LF_00023490 | NOM-BRI-LF_00023936 |
| | NOM-FHFA_04070094 | NOM-FHFA_04070513 |
| NHELI_2007_3_2002238360 | NOM-BRI-LF_00024734 | NOM-BRI-LF_00025155 |
| | NOM-FHFA_04109937 | NOM-FHFA_04110276 |
| NHELI_2007_3_2002239222 | LF1NOM_00692503 | LF1NOM_00693278 |
| | NOM-FHFA_04237982 | NOM-FHFA_04238154 |
| NHELI_2007_3_2002239228 | NOM-FHFA_04244109 | NOM-FHFA_04244412 |
| | NOM-MET-LF_00000478 | NOM-MET-LF_00000977 |

**Appendix C - Cross-Reference Chart for Certain Finding Numbers**

| Global Loan Number | Loan Number | Hunter Finding ID | Forester Finding ID |
|---|---|---|---|
| NAA_2005_AR6_1001975107 | | 258ebe65-e18c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001975107 | | f2e8664b-de8c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002007402 | | 242b4608-ef8c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001901637 | | 50673396-af78-e311-b68a-d8d385e0a8b2 | 1 |
| NAA_2005_AR6_1001901637 | | 44446505-e88d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001901637 | | 1dea8ece-ac78-e311-b68a-d8d385e0a8b2 | 3 |
| NAA_2005_AR6_1001901637 | | 878aa087-ae78-e311-b68a-d8d385e0a8b2 | 4 |
| NAA_2005_AR6_1001901637 | | dc3b2dcf-e78d-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001901637 | | 8dfe8d5e-e78d-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002235651 | | ddd25711-258d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002235651 | | efed7524-258d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001975110 | | 2f27fa65-668f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002007623 | | 488d920e-028d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001831518 | | 7b401bd9-9e8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001831518 | | 01850e05-988a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001831518 | | 362a47c4-988a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001901643 | | d823009b-b18d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002195590 | | 8e9c6e19-d08c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001901745 | | d5a6ff22-2494-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001901745 | | 19d36a21-c38d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001901745 | | 2cb0cb2f-c18d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001901745 | | 83725db6-c58d-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001901745 | | be44acfe-2194-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001901745 | | 370b8ff4-c18d-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002235662 | | d38c4d19-0b8d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002235662 | | 07da1049-198d-e311-8ed7-d8d385e1d166 | 2 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002235662 | 7610c28c-198d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001975281 | fcf99840-f38c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001975281 | e81e5612-b494-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001832273 | 2f173b34-258d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001832273 | 31f51052-fb8c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001832273 | 356d82a4-258d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001832273 | 0d968fe6-248d-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002171202 | 76261102-b68d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002171202 | d5614f23-b878-e311-b68a-d8d385e0a8b2 | 2 |
| NAA_2005_AR6_1001832275 | b7d0a681-2d79-e311-b68a-d8d385e0a8b2 | 1 |
| NAA_2005_AR6_1001832275 | 1478ca1b-2b79-e311-b68a-d8d385e0a8b2 | 2 |
| NAA_2005_AR6_1001832275 | 9f409df7-248d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001975298 | 2eed751e-d58d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001832288 | 1f27d9f5-c98d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001832288 | 62bd7404-ca8d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001832288 | 293cec82-92c5-e311-8daf-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002122375 | ccfc1265-7b8e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001902888 | d2910e8e-e08d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001902888 | 8113be73-e08d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001902888 | 7759ad6f-678e-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001902888 | 3b5b76ca-e18d-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001902888 | 9534cc3e-80a4-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001902888 | b71bb5d8-e18d-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002171262 | f8b363be-a28e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002171262 | bf59ea1d-a48e-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002171262 | e6242754-a48e-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002007958 | e1135bdd-9b8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002007958 | a7d757ff-c394-e311-8ed7-d8d385e1d166 | 2 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002007958 | 8cd6ed40-9b8a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002238436 | baa43230-c18a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238436 | 84285fb1-bf8d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002238436 | 42ac417f-c08d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002122827 | 2fba6ef2-068d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002122827 | e6f7f87f-078d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002122827 | 54532355-088d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002122827 | 3d191fdf-35d1-e311-8daf-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001832384 | 13436d44-b494-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008184 | ad001daa-1894-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008184 | 81fdd0a4-1c94-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002238514 | 70dbad57-9d8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001903396 | ac772d73-a18a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001903396 | f29d9328-9e8a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001903396 | 99f796cb-9f8a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001903396 | 11bae85d-a08a-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001903396 | f3bd62dc-a08a-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001975792 | 0b7df9f0-1298-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001975792 | e7d5e81c-1998-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001975792 | 0e9405e0-8295-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001975792 | 661a14a7-8595-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001975792 | 21cb9d3d-8e95-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001975792 | c28611d5-8e95-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1001975792 | 66d90115-8d95-e311-8ed7-d8d385e1d166 | 7 |
| NAA_2005_AR6_1001975792 | a1de069e-1698-e311-8ed7-d8d385e1d166 | 8 |
| NAA_2005_AR6_1002238554 | 3420023d-ed8c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196236 | 2fcd74bd-a58a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196236 | 973650fc-a58a-e311-8ed7-d8d385e1d166 | 2 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002171703 | fae6e3a7-f58c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002171703 | 090d5abb-f58c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976169 | ff399981-7d8e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976169 | 1abdd6b4-7c8e-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976169 | 202f3314-7c8e-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001976169 | ad9ad682-7b8e-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001976169 | c2eda67f-7c8e-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001976173 | 4f294632-808e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976184 | 843c7921-e78d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976184 | 3cae1e4a-e28d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008590 | 12b82e1b-b895-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008590 | 11447968-b395-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008590 | 9af69a4b-b495-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002008590 | acf1bb44-0198-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002238642 | 941b1559-828e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238642 | 3c268392-7d8e-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002238642 | 62fd3a03-7f8e-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904135 | caa5d2c6-a68a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904135 | 1e71c4a8-a58a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001904135 | 15dafde0-a78a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904135 | 5cd63445-a18a-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001904135 | 2a68aef3-a18a-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001904135 | f23d8f00-a28a-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002171943 | cb31f50c-e997-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238653 | 171eaffe-ce8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238653 | 5ed41d11-cd8a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196402 | 6fb9e581-8395-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002171948 | fd70af93-168d-e311-8ed7-d8d385e1d166 | 1 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002196405 | e1328fcf-f094-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196405 | 41c11df4-f28d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196405 | 50aa9424-f394-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002196405 | 95810c08-f28d-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001976362 | bac875d3-e38d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196406 | 08fda065-3a8f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196406 | b4a67778-3a8f-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123505 | 8c988ab6-618f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002123505 | cd798462-518f-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123505 | 632ad54e-518f-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002123505 | 3c58243e-518f-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002238662 | 7e0b7c0b-788a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238662 | 3e216378-788a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002238665 | fbe6e3a7-f58c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976374 | 727187cf-9b8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976374 | 162549b8-788a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976374 | 08ded9c9-a88a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002196416 | 8c46089a-e58c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196416 | 94641a2b-bb8a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196416 | f3a9f3db-ef8c-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002196416 | e4839418-df8c-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002196416 | 05b687ca-bd8a-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002196416 | e08ec2fc-bd8a-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002196416 | 5197d077-be8a-e311-8ed7-d8d385e1d166 | 7 |
| NAA_2005_AR6_1001976406 | 28c2be07-b28d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976406 | 7882486a-b38d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976406 | 3a76b882-a678-e311-b68a-d8d385e0a8b2 | 3 |
| NAA_2005_AR6_1001976406 | aead9de3-13da-e311-8daf-d8d385e1d166 | 4 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002171960 | dbac3bd9-c38a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002171960 | 0373e1aa-c38a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123725 | cfb7a8a4-5e93-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008622 | 420b69b0-908a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008622 | f86a9fd8-8f8a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008622 | d48a838f-7fa4-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904292 | 29db27bd-51d1-e311-8daf-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904292 | 3f74ddd0-a38a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976424 | 29623ec1-9d8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976424 | b6fb3ac4-d194-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008905 | aaf7e532-0d8d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008905 | 1ec67b1c-a78d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008905 | f4a6fb4e-a78d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002123728 | 2a1a7ab4-9a8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002123728 | aa5f6509-9a8a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001833833 | 612d2e03-cc94-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001833833 | 52409cc3-c694-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001833833 | ad2da3ba-c694-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002196441 | a13602ed-8a95-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002172247 | ed74509e-a895-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002172247 | bd24e314-a995-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002172247 | 414180ff-a895-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002172248 | da35e2b7-de97-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976435 | e0b1e29e-f794-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976435 | b6fb495b-9cc5-e311-8daf-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976435 | ca50ccfa-8795-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001976435 | 2f3b788d-f794-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001976472 | cd8a1860-f497-e311-8ed7-d8d385e1d166 | 1 |

| NAA_2005_AR6_1001976475 | 1c75b36a-8495-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976475 | e4bde436-8595-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976475 | b9ece629-d394-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001976475 | 24ca7b6b-d394-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001976475 | 74fd701f-d394-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001904835 | 800cc8a6-1d94-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904838 | 307c1aa3-0198-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904838 | af2148d6-0198-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001904838 | ccb4e540-1498-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904838 | deacb899-0198-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001904838 | 64425ccc-0198-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001976480 | 5fd88033-8bc5-e311-8daf-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976480 | 9f5fb23e-f294-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123741 | e599871b-bc95-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002123741 | e2ae8193-b095-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123741 | e26def44-b395-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002008926 | 0cb00f1b-a095-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002008926 | b2869138-b695-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002008926 | e52f1bc4-b595-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002008926 | 86fc8f4a-d897-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002008926 | 6e06ec28-9995-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002008926 | f83d7033-9995-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1001833845 | 007061fa-a395-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976481 | d1bd6288-a598-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904846 | 01f641ed-0795-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904846 | b1589ccc-9995-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001904846 | 84651606-9295-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904846 | f55181e8-8c95-e311-8ed7-d8d385e1d166 | 4 |

| NAA_2005_AR6_1001904847 | | be85e41b-0998-e311-8ed7-d8d385e1d166 | 1 |
|---|---|---|---|
| NAA_2005_AR6_1001904847 | | b68d5db9-f197-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001904847 | | 203023a3-fa97-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001904847 | | b2d5b240-fb97-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001904847 | | 93e8ca6a-0d98-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002123749 | | 3066fcc9-b995-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001833850 | | c9024e2b-f197-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001833850 | | 91b4ca6f-fd97-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196492 | | d957744c-ac95-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196492 | | 39e739d6-1098-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196492 | | 69321b77-b295-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002196492 | | 942b038f-b295-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002196492 | | 59374858-b295-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002123751 | | f9e6e3a7-f58c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002123751 | | 7b912433-f68c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002123751 | | ebad5fb3-f58c-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002123751 | | c9f206cf-f58c-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002123751 | | 060d5abb-f58c-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002123751 | | f0b3faa9-f78c-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002123751 | | 88fc473d-f78c-e311-8ed7-d8d385e1d166 | 7 |
| NAA_2005_AR6_1002123751 | | 6b6fe459-f78c-e311-8ed7-d8d385e1d166 | 8 |
| NAA_2005_AR6_1002024332 | | e6f3b22f-e08c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238862 | | 992742b5-038d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002238862 | | 38b6d36c-b3da-e311-8daf-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002238862 | | f2984aa9-038d-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002238862 | | 3e7ff37e-b2da-e311-8daf-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002238862 | | 969ef01c-b1da-e311-8daf-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002238862 | | f44a7b94-038d-e311-8ed7-d8d385e1d166 | 6 |

| NAA_2005_AR6_1002238862 | c2286fcd-038d-e311-8ed7-d8d385e1d166 | 7 |
| NAA_2005_AR6_1001833854 | 962d1eba-938a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001833854 | e7fcdc5b-918a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001833854 | 7df971ae-8c8a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001833854 | 92eeb981-948a-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001833854 | 2b08e816-8e8a-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1001833854 | 1dda470e-958a-e311-8ed7-d8d385e1d166 | 6 |
| NAA_2005_AR6_1002196501 | 1294a16c-868a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196501 | d8a53f26-888a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196505 | 2fae2d9a-b78a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002196505 | c370567a-b68a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002196505 | 3e6d102f-b88a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002124174 | 35545b8e-ec8c-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002124174 | 710a13b7-ec8c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002124174 | 5df4e49d-ec8c-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002124174 | 16ac9497-ec8c-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002077914 | adf71384-3c8f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976671 | 8d7752d5-a78a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976671 | 2b160ecf-a78a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002077915 | c20f9cbb-37c6-e311-8daf-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002077915 | ec7a294f-fa8c-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002124183 | 53c40394-eb89-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001918368 | f94b4d3f-5c8f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001918368 | 5f05b2ce-5a8f-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976675 | 99d37a8d-ac8a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976675 | 162bb2b0-b38a-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001976675 | 9c608ff8-b28a-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001976675 | 4773562d-b38a-e311-8ed7-d8d385e1d166 | 4 |

| | | |
|---|---|---|
| NAA_2005_AR6_1002077917 | 96f6cc5f-a38d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001976678 | c438263a-6893-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002210417 | 7a2d7860-b38e-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002252059 | 430d8333-e497-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002252059 | 8341e93f-bb95-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002252059 | 3c02e2cb-bc95-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002111410 | 67b1b0c5-c295-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904883 | ec95b426-1794-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904883 | 9dc6f6f4-1294-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001904884 | 94bdd8ae-9c95-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001904884 | fcd98fea-f394-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002111414 | 890afdf2-a695-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002111414 | cdb3e8e8-a695-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001918371 | 146f493e-0695-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001918371 | bbe10832-0795-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001918371 | e8ba8a10-0795-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1001918371 | 39b2759f-a1c5-e311-8daf-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001918371 | 6625adf0-0695-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002205150 | a9aef6ff-ec94-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002024351 | aa9173a4-c18a-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002111424 | 6b101236-d594-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002205166 | 6abe6f1e-3794-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002205166 | 68be6f1e-3794-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002205166 | c60c9e2a-3794-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002124365 | 963cf8da-0894-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002210723 | 65a2db73-ba94-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002210723 | 53e10bc6-bd94-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001918585 | 8de790e2-1494-e311-8ed7-d8d385e1d166 | 1 |

| | | | |
|---|---|---|---|
| NAA_2005_AR6_1002210726 | | 82e4de05-6793-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002210726 | | 1d1258c1-29d1-e311-8daf-d8d385e1d166 | 2 |
| NAA_2005_AR6_1001918586 | | 2ab1b4fa-b98d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1001918586 | | e1c42e92-b98d-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002205172 | | cabd8ffc-3093-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002205172 | | 94169ec6-1394-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002205172 | | c3af332a-3893-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002205172 | | 8a94ecdd-3693-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1002205172 | | 68546924-1394-e311-8ed7-d8d385e1d166 | 5 |
| NAA_2005_AR6_1002024366 | | c7993bd8-c38d-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002024378 | | 19ac792f-498f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002024378 | | 49434eeb-478f-e311-8ed7-d8d385e1d166 | 2 |
| NAA_2005_AR6_1002024378 | | a1ab6eae-488f-e311-8ed7-d8d385e1d166 | 3 |
| NAA_2005_AR6_1002024378 | | 5df89a45-438f-e311-8ed7-d8d385e1d166 | 4 |
| NAA_2005_AR6_1001918593 | | b94f83a5-608f-e311-8ed7-d8d385e1d166 | 1 |
| NAA_2005_AR6_1002252088 | | 95381076-b18e-e311-8ed7-d8d385e1d166 | 1 |