**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 24, 2014

By E-mail and ECF

The Honorable Denise L. Cote,
　United States District Judge,
　　Daniel Patrick Moynihan United States Court House,
　　　500 Pearl Street, Room 1610,
　　　　New York, New York  10007-1312.

　　　　　Re:　　*FHFA* v. *Nomura Holding America, Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

　　　　　Defendants respectfully submit this opposition to plaintiff's October 14, 2014 Motion *in Limine* No. 4, which seeks to exclude at trial any evidence of the "trade date" of the Certificates at issue ("Motion").  Plaintiff's motion is meritless.

## BACKGROUND

　　　　　To initiate the sale of a security during the period 2005 to 2007, an underwriter contacted Freddie Mac or Fannie Mae to provide notice of a new offering and preliminary information about the deal.  (Ex. A (Deposition of Michael Aneiro, June 6-7, 2013 ("Aneiro Tr.")), at 199:3-8, 202:09-204:13, 239:17-23; Ex. B (Deposition of Ashley Dyson, Sept. 11-12, 2013 ("Dyson Tr."), at 433:10-14.)  Freddie Mac and Fannie Mae then performed various internal analyses to determine whether to make a purchase.  (Ex. C, at FHFA12975181-182; Ex. B (Dyson Tr.), at 576:22-577:19.)  For Freddie Mac, this analysis included calculating the return on equity, evaluating interest rate risk and prepayment rate expectations, conducting an analysis to determine whether the loans backing the deal satisfied Freddie Mac's housing goal requirements and performing a credit analysis.  (*See* Ex. A (Aneiro Tr.), at 218:2-225:24, 239:17-240:25); Exs. D-I (trade packages).)  Fannie Mae performed similar pre-trade analysis on deals it was offered by underwriters.  (*See* Ex. J, at FHFA04382870; Ex. B (Dyson Tr.), at 457:5-23, 580:15-581:5, 582:14-583:8.)  Once Freddie Mac or Fannie Mae made the decision to purchase, the underwriter sent a Bloomberg message containing the price and terms of the deal—with a message such as "[T]HIS CONFIRMS THE FOLLOWING TRADE.  YOU BUY . . . ." (Ex. F, at FHFA00002490)—and the buyer created a "trade ticket" reflecting those terms (Ex. J, at FHFA04382870; Ex. C, at FHFA12975183-186; Ex. K (trade tickets)).[1]  Freddie Mac trader David Hackney testified that the trade date was the date on which Freddie Mac made "an actual firm commitment"—*i.e.*, the date when Freddie Mac "agreed I'm going to pay; you're going to sell."

---

[1] Plaintiff never located or produced Fannie Mae's analysis or documentation for 2005-AR6.  (Ex. L (Letter from plaintiff, June 28, 2013, at 1.)

Hon. Denise L. Cote                                                                                                           -2-

(Ex. M (Deposition of David Hackney, June 27-28, 2013 ("Hackney Tr.")), at 306:12-19.)  After the trade date, the traders would hand the deal off to the "back-office settlement people."  (*Id.* at 307:2-14.)  The settlement of the trade always occurred at least several days after the trade date, when payment and title were actually transferred.  (Exs. K & N (trade tickets and confirmation for 2005-AR6); Motion at 2.)  There is no evidence that in the period between the trade date and the settlement date, Freddie Mac or Fannie Mae ever performed any additional analysis on the seven deals at issue.

There is no dispute that for the seven deals at issue, the final prospectus supplement was in each case issued at least several days after the trade date.  (Motion, Appendix A; *id.* at 2 ("Prospectus Supplements always issued after the 'trade date.'").)  This was consistent with industry practice.  Indeed, traders at Freddie Mac and Fannie Mae testified that the prospectus supplement was typically created after the trade date—*i.e.*, after the date when Freddie Mac or Fannie Mae made the decision to purchase the Certificates.  (Ex. B (Dyson Tr.), at 574:4-10; Ex. M (Hackney Tr.), at 102:12-17.)  Michael Aneiro, the head of Freddie Mac's private label securities trading in the period 2005 to 2007, testified that he did not expect Freddie Mac's traders to read the prospectus supplements.  (Ex. A (Aneiro Tr.), at 360:1-24, 361:15-24.)  For two of the seven Certificates at issue, 2005-AR6 and 2006-FM2, the prospectus supplements contained additional or more detailed (albeit consistent) information about underwriting criteria, originators, loan-to-value ratios, and appraisal process than the information in preliminary offering materials used by Freddie Mac and Fannie Mae to make purchase decisions.  (Motion, Appendices B-H; *compare* Exs. O & P *with* Exs. Q & R (preliminary and final offering materials for 2005-AR6); Exs. S & T *with* Ex. U (preliminary and final offering materials for 2006-FM2).)  For the 2006-FM2 Certificate, there was also additional data on owner occupancy in the prospectus supplement.  (*Compare* Exs. S & T *with* Ex. U, at FHFA04178901.)

As this Court has recognized, the Securities and Exchange Commission ("SEC") has determined "that sellers should not be held responsible under [Section 12(a)(2) and the blue sky laws] for information conveyed to the buyer for the first time after sale but incorporated retroactively into the registration statement."  *FHFA* v. *Bank of America Corp.*, 2012 WL 6592251, at *6 & n.8 (S.D.N.Y. Dec. 18, 2012).  This is because "Section 12(a)(2) is concerned primarily with false statements in connection with solicitation."  *Id.*  Thus, there is "an affirmative defense for the Section 12(a)(2) defendant who can show that the allegedly false or misleading information in a Final Prospectus filed with the SEC, and upon which the plaintiff bases her claim, was not otherwise conveyed at or prior to [the] time of sale."  *Id.* at *7 (internal quotations omitted).  Evidence about the trade date—*i.e.*, the date on which the commitment to purchase was made—is highly relevant to (and indeed establishes) this defense.  In addition, evidence of the trade date is relevant to materiality and to providing important factual context to the jury about Freddie Mac's and Fannie Mae's decision-making.

**ARGUMENT**

I.  **EVIDENCE CONCERNING THE TIME OF SALE IS HIGHLY RELEVANT TO DEFENDANTS' POTENTIAL SECTION 12 AND BLUE SKY LIABILITY.**

   A.  **The Trade Date Is the Date of Sale.**

Plaintiff argues that the trade dates for the Certificates cannot be considered the dates of sale because, as a matter of law, "[a] final sale requires that the buyer and seller make an irrevocable commitment to exchange shares with no significant conditions left unfulfilled."  (Motion

at 4 (internal quotations omitted).) According to plaintiff, "[h]ere, there was no 'final' commitment on the trade date, because the GSEs were purchasing 'asset-backed securities offerings involv[ing] conditional contracts' where the GSEs could always 'reassess their purchase decisions if new or changed information was provided.'" (Motion at 4 (citing Securities Offering Reform, 70 Fed. Reg. at 44,767 n.407).)[2] Plaintiff is incorrect. At the very least, evidence about the trade date is relevant to a fact-finder's decision about when the commitment to purchase was made.

The time of a "purchase or sale" is "the time when the parties to the transaction are committed to one another." *Radiation Dynamics, Inc.* v. *Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972). "Commitment is a simple and direct way of designating the point at which, in the classical contractual sense, there was a meeting of the minds of the parties; it marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Id.*; *see also In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 186-87 (S.D.N.Y. 2003). The Second Circuit recognized in 2008 that "[t]his rule holds even if the later exchange of money and securities is contingent upon the occurrence of future events, such as the satisfaction of a financing condition, at least when the contingency is not so unlikely that it renders the stock transaction extremely speculative." *Vacold LLC* v. *Cerami*, 545 F.3d 114, 122 (2d Cir. 2008); *see also Yoder* v. *Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 (2d Cir. 1985) ("[A] contract for the issuance or transfer of a security may qualify as a sale under the securities laws even if the contract is never fully performed.").

Here, there is strong evidence that the trade dates are the dates on which Freddie Mac and Fannie Mae committed to purchase the Certificates, and the parties "obligated themselves to perform what they had agreed to perform," even though formal settlement occurred later.[3] *Radiation Dynamics*, 464 F.2d at 891; *see also* The Bond Market Ass'n, Uniform Practices for the Clearance and Settlement of Mortgage-Backed Securities and Other Related Securities 2-17 (SIFMA 2d ed. 1999) (defining "trade date" as "[t]he date on which parties enter into an agreement for the purchase or sale of securities"). The evidence will show that on the trade dates, Freddie Mac's or Fannie Mae's investment decision was complete; there is no evidence that either of them ever performed any additional analysis related to their decisions to purchase after the trade dates. Indeed, David Hackney of Freddie Mac testified that the trade date was the "actual firm commitment" and the date of the "actual purchase." (Ex. M (Hackney Tr.), at 306:12-16, 100:16-25.) After the trade date, traders handed a transaction off to the "back-office settlement

---

[2] The language quoted by plaintiff refers to comments made by private parties in letters to the SEC concerning the difficulty in determining when a purchaser of asset-backed securities is bound. *See* Securities Offering Reform, 70 Fed. Reg. at 44,767 n.407. These are comments, not legal authority.

[3] Plaintiff claims that in opposing its motion for summary judgment on the GSEs' knowledge, "[d]efendants conceded that the GSEs' 'purchased' the Certificates '[b]etween November 30, 2005 and April 30, 2007'—*i.e.*, the settlement dates." (Motion at 3.) Defendants' reference to settlement dates instead of trade dates was clearly a scrivener's error; indeed, defendants there cite to the trade confirmations as evidence of the purchase dates. (Ex. V (Nomura Defendants' Local Rule 56.1 Counterstatement, June 3, 2014) ¶ 1; Ex. W (Declaration of Amanda F. Davidoff, June 3, 2014) ¶¶ 2-7, 9.) Further, defendants' expert Dr. Kerry Vandell did not "agree that the 'purchase date' is the settlement date." (Motion at 3.) Dr. Vandell merely referred to the "purchase date" for the Certificates as alleged in the Amended Complaint. (Ex. X (July 9, 2014 Expert Report of Dr. Kerry D. Vandell) ¶ 5 & tbl.).

Hon. Denise L. Cote                                                                                          -4-

people." *Id.* at 307:2-14.  In addition, as defendants' expert Stephen Ryan will point out, Freddie Mac's and Fannie Mae's accounting treatment of all seven at-issue Certificates shows that they "committed to purchase" the Certificates as of the trade dates, and thus "deemed themselves to be obligated to purchase the At-Issue Certificates in the intervening period between agreeing to and settling the commitments, *i.e.*, before receiving the prospectus supplements." (Ex. Y (July 9, 2014 Expert Report of Stephen G. Ryan) ¶¶ 105-07.)

Plaintiff argues that the trade dates are of no significance because "there still remained a significant condition precedent to be fulfilled, namely that the representations in the Prospectus Supplement would not materially change from those in the preliminary offering materials." (Motion at 4.)  This misses the fact that under SEC rules, preliminary offering materials for residential mortgage-backed securities "shall not conflict with" the final prospectus supplement. 17 C.F.R. § 230.433(c).  The Second Circuit has rejected arguments that conditions (even those more substantial than the one at issue here) mean that the settlement date is the date of sale.  In *Yoder*, the Second Circuit found it "immaterial" to a determination of the date of sale of stock that a defendant's "obligation to deliver the stock was conditional on the attainment of given levels of sales."  751 F.2d at 559; *see also Pittsburgh Coke & Chem. Co.* v. *Bollo*, 421 F. Supp. 908, 923 (E.D.N.Y. 1976) (rejecting plaintiff's attempt to "postpone the 'commitment' date to the time of closing" because the agreement to purchase shares was subject to certain conditions).

The cases on which plaintiff relies are entirely off point.  Those cases deal with stock sales contingent on the consummation of mergers whose completion was highly uncertain.  For example, *In re Alliance Pharmaceutical Corporation Securities Litigation*, 279 F. Supp. 2d at 185, involved a stock-swap that became binding upon the closing of a merger (not yet approved by the relevant shareholders) from which one party had the unilateral "right to back out . . . for a number of reasons—or for no reason at all if it was willing to pay the termination fee." *Id.* at 186.  Similarly, *Hildes* v. *Arthur Anderson LLP*, 734 F.3d 854, 860-61 (9th Cir. 2013), and *SEC* v. *National Student Marketing Corp.*, 457 F. Supp. 682, 703-04 (D.D.C. 1978), both concerned whether a binding commitment had been made where an exchange of shares remained contingent on the consummation of a merger that shareholders had not yet voted to approve.  In contrast, the evidence here is that after the trade date, there was not any "significant condition precedent to be fulfilled." (Motion at 4.)  The "contingency" that there be no material change in the prospectus supplement was almost certain to occur and did not come close to rendering the transaction "extremely speculative." *Vacold*, 545 F.3d at 122.

     **B.**     **Evidence Concerning the Date of Sale Is Relevant to Defendants' Potential Section 12 and Blue Sky Liability.**

This Court has recognized that information in a final prospectus supplement that "was 'not otherwise conveyed at or prior to [the] time of sale'" cannot be the basis for Section 12 or blue sky liability. *FHFA* v. *Bank of America Corp.*, 2012 WL 6592251, at *7 (quoting 2005 SEC Release, 2005 WL 1692642, at *77 (Aug. 3, 2005)).[4]  "[W]hether or not information has been

---

[4] The Court has rejected the Eleventh Circuit's decision in *APA Excelsior III* v. *Premiere Technologies, Inc.*, 476 F.3d 1261 (11th Cir. 2007), that Section 11 creates only a rebuttable presumption of reliance.  *FHFA* v. *Bank of America Corp.*, 2012 WL 6592251, at *2-4.  Defendants preserve their objection to that ruling and note that the evidence here at issue is relevant to overcoming a rebuttable presumption of reliance.

conveyed to an investor at or prior to the time of the contract of sale is a facts and circumstances determination." *Id.* (internal quotations omitted).

As shown in plaintiff's appendices (Motion, Appendices B-H), the prospectus supplements for 2005-AR6 and 2006-FM2 contained much more detailed disclosures than the preliminary offering materials about underwriting criteria, identity of the originators, loan-to-value ratios, appraisal process, or owner occupancy data. *See also* p. 2, *supra*. Defendants are entitled to offer evidence that certain of the information plaintiff asserts was false or misleading was not conveyed to Freddie Mac or Fannie Mae until after the date on which the trade took place, and thus cannot be a basis for Section 12 or blue sky claims.

## II. EVIDENCE OF THE TRADE DATE IS RELEVANT TO ALL CLAIMS EVEN IF THE DATE OF SALE IS THE SETTLEMENT DATE.

### A. Evidence of the Trade Date is Relevant to Materiality.

Plaintiff argues that defendants should not be permitted to offer evidence about the trade dates because "the representations in the Prospectus Supplements were, for all the Certificates except one, identical or nearly identical to representations Defendants had already made on or about the trade dates." (Motion at 4.) This is also false. As stated above, for 2005-AR6 and 2006-FM2, there were important differences between the information conveyed at or prior to the trade dates versus in the prospectus supplements. *See* p. 2, *supra*. For those deals, some or all of the information in the prospectus supplements that plaintiff claims was false or misleading— information concerning underwriting criteria, identity of the originators, loan-to-value ratios, appraisal processes, and owner occupancy data—was not contained in the preliminary offering materials. *See id.* Defendant is entitled to submit evidence that Freddie Mac and Fannie Mae made their purchase decisions based on preliminary offering materials and without considering additional consistent information in prospectus supplements. Thus, regardless of whether the date of "sale" is the trade date or settlement date, evidence about the trade dates is relevant because information provided to investors for the first time after the decision to buy was not material to these buyers.[5]

### B. Evidence of the Trade Date Is Relevant Context For the Jury.

Plaintiff's case is about allegedly false and misleading statements made in connection with Freddie Mac's and Fannie Mae's purchase of the seven at-issue Certificates. Evidence of how and when those purchases occurred, including evidence about the trade date, provides critical context that will aid the jury's understanding. A court may not exclude such relevant evidence. *See SEC* v. *Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013); *Perez* v. *Consol. Edison Corp. of New York*, 2008 WL 194615, at *1 (S.D.N.Y. Jan. 23, 2008).[6] Plaintiff's motion should be denied.

---

[5] This does not mean that "no representation in any RMBS prospectus supplement would ever be material." (Motion at 4.) Alleged misrepresentations that "taken together and in context, would have misled a reasonable investor" would be material if disclosed before a purchase. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (internal citations omitted).

[6] There is no basis to exclude evidence of trade dates under Rule 403, which "favors admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion." *United States* v. *White*, 692 F.3d 235, 247 (2d Cir. 2012) (emphasis in original).

Hon. Denise L. Cote								-6-

        Respectfully submitted,

        /s/ David B. Tulchin

        David B. Tulchin

cc:     All Counsel