# Exhibit N

TRANSACTION SUBJECT TO AGREEMENT ON REVERSE SIDE

**NOMURA SECURITIES INTERNATIONAL, INC.**
2 WORLD FINANCIAL CENTER, BUILDING B
225 LIBERTY STREET NEW YORK, N.Y. 10281-1198
(212) 667-9300

ACCT
IRS#
TRD DATE   11/16/05
SETT DATE  11/30/05
RUN DATE   11/28/05

CUSTOMER COPY

FANNIE MAE
ATTN: JIM PLANT
3900 WISCONSIN AVE. NW
WASHINGTON, DC 20016

FMAE DC MBS/SALEMBS/FMAE DC MBS

TRADE NO : WGADM9
TBA REFERENCE NO : WGADM9
WE CONFIRM : YOU BOUGHT

DELIVERY DATE : 11/30/05

| SECURITIES DESCRIPTION | CUSIP |
|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 |

| FACE VALUE | PRICE | AMOUNT | |
|---|---|---|---|
| 64,943,000.00 | 101.1093750 | PRINCIPAL: | 65,663,461.41 |
| | | INTEREST: | 316,245.35 |
| AMORTIZED VALUE | FACTOR | OTHER: | |
| 64,943,000.00 | 1.00000000 | TOTAL: | 65,979,706.76 |

| COUPON | MATURITY | ISSUED | ACCOUNT EXECUTIVE |
|---|---|---|---|
| 6.044680 | 12/25/2035 | 11/01/05 | 084 KISTLER, JOHN P. |
| | | | EXECUTING ACCOUNT EXEC |
| | | | 084 KISTLER, JOHN P. |

INTEREST FROM:
          TO:

DELIVERY INSTRUCTIONS:

TRADE CANCELLED

+/- 10% VARIANCE

IF THIS PRODUCT REQUIRES OFFERING MATERIAL, IT WILL BE SENT UNDER SEPARATE COVER WHEN AVAILABLE.
YIELD MAY VARY DEPENDING ON THE SPEED OF PREPAYMENTS OF THE UNDERLYING COLLATERAL.
SPECIFIC INFORMATION IS AVAILABLE UPON WRITTEN REQUEST.

EXECUTED OTC AS PRINCIPAL
NSI DOES NOT HAVE A RATING BY A NRSRO ON FILE FOR THIS SECURITY.
PLEASE REFER TO YOUR OWN SOURCE TO DETERMINE RATING.

FORM NSI067 (05/2001)

CONFIDENTIAL                                                               NOM-FHFA_05783828

B3-20121500000

## TERMS OF AGREEMENT

IT IS AGREED BY YOU AND NOMURA SECURITIES INTERNATIONAL ("NSI") THAT THIS TRANSACTION, AS DESCRIBED ON THE FACE HEREOF, IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. This confirmation hereby incorporates, and all transactions hereunder are subject to, (a) the provisions of the customer agreement (if any) and any other written agreement between you and NSI, the terms of which shall prevail over any conflicting provisions of this confirmation, (b) the Uniform Practices for the Clearance and Settlement of Mortgage-Backed Securities and (c) the constitution, by-laws, rules, regulations, Interpretations and usages of the exchange or market (and its clearinghouse, if any) where executed and of the National Association of Securities Dealers, Inc. ("NASD"), the Securities and Exchange Commission ("SEC"), the Department of the Treasury and the Board of Governors of The Federal Reserve System, in all cases where applicable, and shall be governed by and construed in accordance with the laws of the State of New York and all applicable federal laws and regulations.
2. If our capacity is referenced on the face hereof as principal, we bought from or sold to you as dealer for our own account (or, if indicated, for our joint account with another firm or for the account of an underwriting syndicate of which we are a member). Your capacity was for your own account unless you expressly specified otherwise to us in writing and gave us sufficient information in writing prior to the transaction for us to identify and rely upon the credit of another party or your credit in another capacity. Time of execution of the transaction reflected on this confirmation will be furnished upon written request.
3. If our capacity is referenced on the face hereof as agent, you bought from or sold to the entity referenced on the face hereof for you own account and any claims regarding the performance of such entity must be resolved between you and such entity with no liability to NSI.
4. Until paid in full by you, securities sold to you or bought for you may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers. We may rehypothecate securities pledged to us by you.
5. If this transaction is a purchase by you and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly in accordance with the terms of this transaction, that we shall not be deemed to have delivered or be required to deliver such securities to you until we have received such full payment therefor and that you shall not sell such securities prior to making such payment. If this transaction is a sale by you and the securities described on the face hereof are not already held in your account with us and it is not marked short, we are acting upon your representation that you or your principal own such securities and it is agreed that you will promptly deliver such securities to us. If full payment for securities sold to or bought for you in this transaction is not received by us on or before the settlement date, or if securities bought from or sold (except short sales) for you in this transaction are not delivered to us promptly and in proper form, we may at our option (i) charge interest and fees or (ii) cancel or otherwise liquidate this transaction without further notice and you will be liable for any resulting loss.
6. This transaction and all other transactions with us have been entered into in consideration of each other. In the event that (i) you shall default in respect of this or any other transaction with us, (ii) you apply for, consent to, or are the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar person of yourself or of all or a substantial part of your property (iii) you admit in writing your inability or become generally unable to pay your debts as such debts become due or shall have a negative net worth, (iv) you make general assignment for the benefit of your creditors, (v) you file, or have filed or against you, a petition or order for relief under Title 11 of the United States Code, as amended, or any similar law of any jurisdiction regarding reorganization, liquidation, dissolution, insolvency or relief of debtors, (vi) you have filed against you an application for a protective decree under Section 5 of the Securities Investor Protection Act of 1970, as amended, (vii) we believe that we may not be able to apply without delay property we are holding or expect to receive from you against your obligations, or (viii) we believe that an event or circumstances has occurred which in our judgment materially impairs your credit worthiness or ability to perform your obligations, we may (a) cancel or otherwise liquidate this and any other transaction with us without prior notice to you (and you will be liable to us for any loss, cost and expense, including cost of collection and attorneys' fees), (b) set off any obligation to you against any of your obligations to us, (c) realize upon properly securing any obligations to us and (d) take any other action necessary or appropriate to protect and enforce our rights under this or any other agreement between you and us, and to reduce any risk to us of loss or delay. For purposes of the preceding sentence, references to "we" and "us" include any of our affiliates. Any grace or notice period required by agreement or custom prior to exercise of such remedies may be shortened or eliminated by us if, in our discretion, it is reasonable to do so under the circumstances. You hereby grant to NSI a security interest in all securities, moneys or other property and all proceeds of any of the foregoing now or hereafter held or carried by NSI or its affiliates in your account(s) with NSI or its affiliates or otherwise as collateral security for the payment of any and all of your obligations or liabilities to NSI now existing or arising hereafter.
7. At the time the transaction was executed or subsequent thereto, we (or others acting for our account) may have effected transactions which stabilize or maintain the market price of the securities described on the face hereof (or other securities of the same issuer or rights to subscribe to such securities) at a level above that which might otherwise prevail in the open market. Such transactions may have been effected on any market where these securities are traded. Such stabilization if commenced may be discontinued at any time. NSI may have made and may continue to make purchases and sales of securities of the same issue involved in this transaction (or other securities of the same issuer or rights to subscribe to such securities) for its own account or for the accounts of others and such transactions, if made, may be discontinued at any time. There may not have been, and there may not be in the future, any market in such securities other than that made by NSI.
8. We (or others acting for our account) reserve the right to offer for sale and/or to sell from time to time as principal or agent an amount of the securities described on the face hereof in excess of the amount owed by us (or the seller for whom we act as agent) at the time such offers and/or sales are made. Such offers or sales (sometimes known as "short sales" or "overallotments") may or may not be made in conjunction with stabilizing transactions described in the preceding paragraph.
9. If this transaction is a repurchase transaction, it is agreed as part of this repurchase agreement that within 24 hours after our request you will return to us a sufficient amount of the securities subject to this agreement or post collateral in a form satisfactory to NSI so that the market value of the securities and the other collateral still so subject bears the same ratio to the dollar amount of the agreement as the ratio on this date taking into account interest accrued on such securities and under this repurchase agreement.
10. If this transaction is a reverse repurchase transaction, it is agreed as part of this reverse repurchase agreement that the securities subject to this agreement are deemed to be in our possession and that within 24 hours after our request, you will deliver to us additional securities satisfactory to us so that the market value of the securities then subject to the agreement bears the same ratio to the dollar amount of the agreement as the ratio on this date taking into account interest accrued on such securities and under this reverse repurchase agreement.
11. If this transaction relates to a debt security, call features may exist which could effect the yield thereof. Further information pertaining to the yield on debt securities is available upon request.
12. This contract shall be subject to the special requirements for such contracts, if any, of the market where executed. This contract shall be settled and payment therefor made only at such time and place, in such manner, and by delivery of such securities and/or property received by us as such market may require, or shall be cancelled if the proposal pursuant to which the securities were to be issued or distributed has been abandoned or materially changed or if the securities which are the subject of the contract have been materially changed. Pending settlement of this contract, you shall be obligated to deliver to us on demand cash equal to the excess of the contract value of securities sold by us over their market value or the excess of the market value of securities purchased by us over their contract value.
13. If a security delivered by you to us is or becomes subject to a notice of adverse claim received by the issuer of such security (or its agent) from or on behalf of the registered holder of such security, then upon our request and simultaneously with our transfer to you of such a disputed security (or any right to receive such a disputed security from the issuer or its agent if such disputed security is in the possession of the issuer or its agent), you shall pay to us an amount equal to the amount theretofore paid by us to you for such disputed security. All transfers and payments pursuant to this Section 12 shall be effected in the same manner as in the transaction in which such disputed security was transferred by you to us.
14. This Agreement shall inure to the benifit of NSI and its successors and assigns. NSI may assign this Agreement to any of its affiliates without your consent. This Agreement cannot be assigned by you without the consent of NSI. Any such assignment by you shall be void.
15. This confirmation (including the matters set forth on the face hereof), shall be deemed to have been correct and to have been accepted by you if not objected to in writing, or corrected by NSI within 2 days after receipt by you.
16. If any part of this Agreement is held to be voided or unenforceable, this shall not affect the validity or enforceability of the remaining parts of this Agreement.
17. The Securities Investor Protection Act of 1970, as amended, will not protect you with respect to a repurchase or other transaction hereunder.

NOMURA SECURITIES INTERNATIONAL

FORM NRI001 (10/90)

CONFIDENTIAL

NOM-FHFA_05783829

B3-20121500001

TRANSACTION SUBJECT TO AGREEMENT ON REVERSE SIDE

**NOMURA SECURITIES INTERNATIONAL, INC.**
2 WORLD FINANCIAL CENTER, BUILDING B
225 LIBERTY STREET NEW YORK, N.Y. 10281-1198
(212) 667-9300

| ACCT | |
|---|---|
| IRS# | |
| TRD DATE | 11/16/05 |
| SETT DATE | 11/30/05 |
| RUN DATE | 11/28/05 |

CUSTOMER COPY

FANNIE MAE
ATTN: JIM PLANT
3900 WISCONSIN AVE. NW
WASHINGTON, DC 20016

FMAE DC MBS/SALEMBS/FMAE DC MBS

TRADE NO : WGADM9
TBA REFERENCE NO : WGADM9
WE CONFIRM : YOU BOUGHT

DELIVERY DATE : 11/30/05

| SECURITIES DESCRIPTION | CUSIP |
|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 |

| FACE VALUE | PRICE | AMOUNT | |
|---|---|---|---|
| 64,943,000.00 | 101.1093750 | PRINCIPAL: | 65,663,461.41 |
| | | INTEREST: | 316,228.61 |
| AMORTIZED VALUE | FACTOR | OTHER: | |
| 64,943,000.00 | 1.00000000 | TOTAL: | 65,979,690.02 |

| COUPON | MATURITY | ISSUED | ACCOUNT EXECUTIVE |
|---|---|---|---|
| 6.044680 | 12/25/2035 | 11/01/05 | 084 KISTLER, JOHN P. |
| | | | EXECUTING ACCOUNT EXEC |
| | | | 084 KISTLER, JOHN P. |

INTEREST FROM:
          TO:

DELIVERY INSTRUCTIONS:

TRADE CORRECTED

+/- 10% VARIANCE

IF THIS PRODUCT REQUIRES OFFERING MATERIAL, IT WILL BE SENT UNDER SEPARATE COVER WHEN AVAILABLE.
YIELD MAY VARY DEPENDING ON THE SPEED OF PREPAYMENTS OF THE UNDERLYING COLLATERAL.
SPECIFIC INFORMATION IS AVAILABLE UPON WRITTEN REQUEST.

EXECUTED OTC AS PRINCIPAL
NSI DOES NOT HAVE A RATING BY A NRSRO ON FILE FOR THIS SECURITY.
PLEASE REFER TO YOUR OWN SOURCE TO DETERMINE RATING.

FORM NSI067 (05/2001)

CONFIDENTIAL

NOM-FHFA_05783830

B3-20121500002

## TERMS OF AGREEMENT

IT IS AGREED BY YOU AND NOMURA SECURITIES INTERNATIONAL ("NSI") THAT THIS TRANSACTION, AS DESCRIBED ON THE FACE HEREOF, IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. This confirmation hereby incorporates, and all transactions hereunder are subject to, (a) the provisions of the customer agreement (if any) and any other written agreement between you and NSI, the terms of which shall prevail over any conflicting provisions of this confirmation, (b) the Uniform Practices for the Clearance and Settlement of Mortgage-Backed Securities and (c) the constitution, by-laws, rules, regulations, Interpretations and usages of the exchange or market (and its clearinghouse, if any) where executed and of the National Association of Securities Dealers, Inc. ("NASD"), the Securities and Exchange Commission ("SEC"), the Department of the Treasury and the Board of Governors of The Federal Reserve System, in all cases where applicable, and shall be governed by and construed in accordance with the laws of the State of New York and all applicable federal laws and regulations.
2. If our capacity is referenced on the face hereof as principal, we bought from or sold to you as dealer for our own account (or, if indicated, for our joint account with another firm or for the account of an underwriting syndicate of which we are a member). Your capacity was for your own account unless you expressly specified otherwise to us in writing and gave us sufficient information in writing prior to the transaction for us to identify and rely upon the credit of another party or your credit in another capacity. Time of execution of the transaction reflected on this confirmation will be furnished upon written request.
3. If our capacity is referenced on the face hereof as agent, you bought from or sold to the entity referenced on the face hereof for you own account and any claims regarding the performance of such entity must be resolved between you and such entity with no liability to NSI.
4. Until paid in full by you, securities sold to you or bought for you may be hypothecated under circumstances which will permit the commingling thereof with securities carried for the account of other customers. We may rehypothecate securities pledged to us by you.
5. If this transaction is a purchase by you and sufficient funds are not already in your account with us, it is agreed that you will make full payment for the securities described on the face hereof promptly in accordance with the terms of this transaction, that we shall not be deemed to have delivered or be required to deliver such securities to you until we have received such full payment therefor and that you shall not sell such securities prior to making such payment. If this transaction is a sale by you and the securities described on the face hereof are not already held in your account with us and it is not marked short, we are acting upon your representation that you or your principal own such securities and it is agreed that you will promptly deliver such securities to us. If full payment for securities sold to or bought for you in this transaction is not received by us on or before the settlement date, or if securities bought from or sold (except short sales) for you in this transaction are not delivered to us promptly and in proper form, we may at our option (i) charge interest and fees or (ii) cancel or otherwise liquidate this transaction without further notice and you will be liable for any resulting loss.
6. This transaction and all other transactions with us have been entered into in consideration of each other. In the event that (i) you shall default in respect of this or any other transaction with us, (ii) you apply for, consent to, or are the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar person of yourself or of all or a substantial part of your property (iii) you admit in writing your inability or become generally unable to pay your debts as such debts become due or shall have a negative net worth, (iv) you make general assignment for the benefit of your creditors, (v) you file, or have filed or against you, a petition or order for relief under Title 11 of the United States Code, as amended, or any similar law of any jurisdiction regarding reorganization, liquidation, dissolution, insolvency or relief of debtors, (vi) you have filed against you an application for a protective decree under Section 5 of the Securities Investor Protection Act of 1970, as amended, (vii) we believe that we may not be able to apply without delay property we are holding or expect to receive from you against your obligations, or (viii) we believe that an event or circumstances has occurred which in our judgment materially impairs your credit worthiness or ability to perform your obligations, we may (a) cancel or otherwise liquidate this and any other transaction with us without prior notice to you (and you will be liable to us for any loss, cost and expense, including cost of collection and attorneys' fees), (b) set off any obligation to you against any of your obligations to us, (c) realize upon properly securing any obligations to us and (d) take any other action necessary or appropriate to protect and enforce our rights under this or any other agreement between you and us, and to reduce any risk to us of loss or delay. For purposes of the preceding sentence, references to "we" and "us" include any of our affiliates. Any grace or notice period required by agreement or custom prior to exercise of such remedies may be shortened or eliminated by us if, in our discretion, it is reasonable to do so under the circumstances. You hereby grant to NSI a security interest in all securities, moneys or other property and all proceeds of any of the foregoing now or hereafter held or carried by NSI or its affiliates in your account(s) with NSI or its affiliates or otherwise as collateral security for the payment of any and all of your obligations or liabilities to NSI now existing or arising hereafter.
7. At the time the transaction was executed or subsequent thereto, we (or others acting for our account) may have effected transactions which stabilize or maintain the market price of the securities described on the face hereof (or other securities of the same issuer or rights to subscribe to such securities) at a level above that which might otherwise prevail in the open market. Such transactions may have been effected on any market where these securities are traded. Such stabilization if commenced may be discontinued at any time. NSI may have made and may continue to make purchases and sales of securities of the same issue involved in this transaction (or other securities of the same issuer or rights to subscribe to such securities) for its own account or for the accounts of others and such transactions, if made, may be discontinued at any time. There may not have been, and there may not be in the future, any market in such securities other than that made by NSI.
8. We (or others acting for our account) reserve the right to offer for sale and/or to sell from time to time as principal or agent an amount of the securities described on the face hereof in excess of the amount owed by us (or the seller for whom we act as agent) at the time such offers and/or sales are made. Such offers or sales (sometimes known as "short sales" or "overallotments") may or may not be made in conjunction with stabilizing transactions described in the preceding paragraph.
9. If this transaction is a repurchase transaction, it is agreed as part of this repurchase agreement that within 24 hours after our request you will return to us a sufficient amount of the securities subject to this agreement or post collateral in a form satisfactory to NSI so that the market value of the securities and the other collateral still so subject bears the same ratio to the dollar amount of the agreement as the ratio on this date taking into account interest accrued on such securities and under this repurchase agreement.
10. If this transaction is a reverse repurchase transaction, it is agreed as part of this reverse repurchase agreement that the securities subject to this agreement are deemed to be in our possession and that within 24 hours after our request, you will deliver to us additional securities satisfactory to us so that the market value of the securities then subject to the agreement bears the same ratio to the dollar amount of the agreement as the ratio on this date taking into account interest accrued on such securities and under this reverse repurchase agreement.
11. If this transaction relates to a debt security, call features may exist which could effect the yield thereof. Further information pertaining to the yield on debt securities is available upon request.
12. This contract shall be subject to the special requirements for such contracts, if any, of the market where executed. This contract shall be settled and payment therefor made only at such time and place, in such manner, and by delivery of such securities and/or property received by us as such market may require, or shall be cancelled if the proposal pursuant to which the securities were to be issued or distributed has been abandoned or materially changed or if the securities which are the subject of the contract have been materially changed. Pending settlement of this contract, you shall be obligated to deliver to us on demand cash equal to the excess of the contract value of securities sold by us over their market value or the excess of the market value of securities purchased by us over their contract value.
13. If a security delivered by you to us is or becomes subject to a notice of adverse claim received by the issuer of such security (or its agent) from or on behalf of the registered holder of such security, then upon our request and simultaneously with our transfer to you of such a disputed security (or any right to receive such a disputed security from the issuer or its agent if such disputed security is in the possession of the issuer or its agent), you shall pay to us an amount equal to the amount theretofore paid by us to you for such disputed security. All transfers and payments pursuant to this Section 12 shall be effected in the same manner as in the transaction in which such disputed security was transferred by you to us.
14. This Agreement shall inure to the benifit of NSI and its successors and assigns. NSI may assign this Agreement to any of its affiliates without your consent. This Agreement cannot be assigned by you without the consent of NSI. Any such assignment by you shall be void.
15. This confirmation (including the matters set forth on the face hereof), shall be deemed to have been correct and to have been accepted by you if not objected to in writing, or corrected by NSI within 2 days after receipt by you.
16. If any part of this Agreement is held to be voided or unenforceable, this shall not affect the validity or enforceability of the remaining parts of this Agreement.
17. The Securities Investor Protection Act of 1970, as amended, will not protect you with respect to a repurchase or other transaction hereunder.

NOMURA SECURITIES INTERNATIONAL

FORM NRI001 (10/90)

CONFIDENTIAL

NOM-FHFA_05783831

B3-20121500003