SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 25, 2014

Via E-mail and ECF

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street, Room 1610,
           New York, New York 10007-1312.

      Re:    *FHFA* v. *Nomura Holding America Inc.*, *et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

      Defendants move *in limine* to preclude plaintiff from presenting any evidence or making any argument seeking to blame them for the housing crisis or financial crisis, including through the testimony of plaintiff's expert James Barth. Plaintiff intends to offer Mr. Barth to rebut defendants' expert Dr. Kerry Vandell, who will testify about loss causation and opine that any decrease in value of the at-issue certificates was caused in large part by general market conditions and a decline in the housing market—that is, factors other than the misrepresentations plaintiff alleges. In his November 10, 2014 report, Mr. Barth purports to respond to Dr. Vandell not by rebutting defendants' loss causation defense—which would require a showing that the alleged misrepresentations caused plaintiff's claimed losses—but instead by opining that widespread misrepresentations and omissions by all participants in the securitization of mortgages caused the financial crisis. A loss causation defense by nature identifies factors not at issue in litigation that caused a plaintiff's alleged injuries, but blaming defendants (here, along with many others) for those causal factors does not rebut the defense. Any attempt by plaintiff to make this inflammatory argument—i.e., that defendants here are in some measure responsible for the financial crisis—should be precluded because it would be irrelevant and highly prejudicial.

## BACKGROUND

      Plaintiff makes claims under Sections 11 and 12 of the Securities Act (and the D.C. and Virginia Blue Sky laws) alleging misrepresentations in the offering documents for seven RMBS Certificates that Freddie Mac and Fannie Mae purchased

from defendants during the period 2005 to 2007.  The alleged misrepresentations concern approximately 15,000 loans in the supporting loan groups for the seven Certificates. (Ex. A (Amended Complaint), at ¶¶ 1-11.)  In particular, according to plaintiff:  (i) the LTV ratios disclosed in the offering materials were false due to dishonest appraisals; (ii) owner-occupancy statistics disclosed in the offering materials were incorrect because many buyers had no intention of living in the houses they proposed to buy; and (iii) representations in the offering documents concerning "general" adherence to underwriting guidelines were false.  (Ex. A (Amended Complaint), at ¶¶ 101-129.)

       This Court has emphasized on several occasions that the trial of this action will be about the seven Certificates and the specific claims and defenses at issue.  In denying defendants' request for discovery concerning Freddie Mac's and Fannie Mae's whole loan businesses, this Court noted that the further removed evidence is from plaintiff's specific claims, "the greater the danger the jury will be confused and its time wasted by evidence of acts other than those at issue at trial."  (*See* Ex. B (Dec. 17, 2012 Hearing Tr.), at 107:5-8.)  The Court has ruled that defendants are not entitled to discovery of documents concerning Freddie Mac's and Fannie Mae's "generalized knowledge" of originators—because defendants were required to show "actual . . . knowledge of the falsity of the statements at issue."  (Ex. C (June 28, 2013 Opinion and Order, Doc. No. 376), at 46-47.)  Likewise, when ruling on a motion for partial summary judgment, the Court held that the substantial evidence defendants presented concerning Freddie Mac's and Fannie Mae's "general knowledge" did "not create a triable issue of fact" about the agencies' "actual knowledge" of the alleged misstatements.  (Ex. D (July 25, 2014 Opinion and Order, Doc. No. 766), at 65.)  The Court has determined that evidence about Freddie Mac's and Fannie Mae's knowledge of the housing market in general is off limits.

       Plaintiff, however, now intends to offer similar general market evidence. Plaintiff seeks to offer evidence, through Mr. Barth's opinion, that the thousands of securitization market participants caused the housing and financial crises through misconduct "of the type" here alleged.  Barth opines in his report that there were widespread misrepresentations and omissions concerning millions of loans and thousands of securitizations throughout the mortgage industry from 2005 through 2007.  (Ex. E (November 10, 2014 Expert Report of James Barth) ("Barth Report"), at ¶ 8.)  Mr. Barth also there opines about what he calls the "Alleged Underwriting Defects," which he defines as "underwriting defects, misrepresentations and omissions *of the types FHFA alleges*"—that is, misrepresentations and omissions that are not at issue in this case— made throughout the industry, and that such underwriting defects, misrepresentations and omissions across the mortgage industry contributed to (i) "the housing price bubble," (ii) the "housing crisis that ensued when the housing bubble burst," and (iii) the "financial crisis and an ensuing severe recession, which, in turn, exacerbated the housing crisis." (*Id.*)  Barth never directs himself to the specific misrepresentations plaintiff has alleged here. Mr. Barth conceded at deposition last week that his opinions concern the "types of misrepresentations and omissions associated . . . with other private label securitizations." (Ex. F (Deposition of James Barth, November 19, 2014) ("Barth Tr."), at 56:25-57:15.)  Plaintiff thus apparently intends to use Mr. Barth to convey to the jury that defendants and others in the industry are to blame for the "housing crisis" and

subsequent "financial crisis and an ensuing severe recession." (Ex. E (Barth Report), at ¶ 8.)

For example, after repeating an opinion by plaintiff's expert John A. Kilpatrick that loans backing the Certificates had "substantially higher [LTV] ratios than represented," Barth opines that "[u]nderstated LTV ratios *like these* necessarily exacerbated the incidence and extent of negative equity that triggered the subsequent increases in delinquency and defaults," which "contributed to the housing crisis." (*Id.* at ¶ 20 (emphasis added).) Barth also opines that the misconduct of participants in the industry (the same generic underwriting defects and misrepresentations made over the same period) "directly contributed to the housing price boom by supplying credit to borrowers who otherwise would not have qualified for mortgage loans." (*Id.* at ¶ 14.) This Court should not permit plaintiff to tell the jury in any way, or through any witness, that defendants contributed to or are responsible in any part for the housing crisis or the financial crisis.

Defendants thus move under Rules 401, 402 and 403 to preclude plaintiff from introducing any evidence or argument, including from Mr. Barth, that seeks to blame defendants in any way or in any part for the housing or financial crises. All such evidence is irrelevant, unfairly prejudicial to defendants, and likely to inflame and mislead the jury.

## ARGUMENT

### I. EVIDENCE SEEKING TO PLACE BLAME FOR THE HOUSING AND FINANCIAL CRISES ON DEFENDANTS IS WHOLLY IRRELEVANT.

Evidence is admissible if it is relevant, meaning that it "make[s] a fact more or less probable than it would be without the evidence," and that fact is of material "consequence." Fed. R. Evid. 401, 402. At trial, plaintiff must prove that material misrepresentations were made in the offering documents for the seven securitizations at issue, and that those misrepresentations caused Freddie Mac and Fannie Mae to sustain damages. Rather than focus on the alleged misrepresentations at issue, Mr. Barth's proposed testimony seeks to link defendants to "underwriting defects, misrepresentations and omissions of the types FHFA alleges" (Ex. E (Barth Report), at ¶ 8)—i.e., generic defects and misrepresentations made by participants throughout the industry. Plaintiff thus apparently seeks to use Mr. Barth to tell the jury that defendants are responsible in some measure for the housing and financial crises by linking defendants to the conduct of others. Any such evidence (or argument) has no probative value, and is entirely irrelevant.

Mr. Barth's opinions on the performance of loans not at issue in this case are not relevant to any element of any claim that plaintiff must prove. Nor are they relevant to rebut defendants' loss causation evidence. Defendants are entitled to show that "factors other than misstatements and omissions that the jury finds to be a basis for liability" caused plaintiff's alleged losses. *See In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375314 at *7 (S.D.N.Y. Feb. 17, 2005). Here, in order to show that any alleged

losses were in fact caused by declines in home prices and illiquidity in the market, defendants intend to offer evidence that the decline in value of mortgage-backed securities due to market-wide factors contributed in large measure to plaintiff's losses. *See NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145, 167 n.15 (2d Cir. 2012) ("It may well be that, ultimately, [plaintiffs] will recover nothing because defendants will prove that any diminution in value is attributable to, *e.g.*, (1) illiquidity, (2) the global financial crisis, or (3) a widening of credit spreads rather than defendants' misrepresentations."). In order to rebut that defense, plaintiff may submit evidence to show that plaintiff's losses "actually resulted" from the misstatements here at issue (which pertain to seven securitizations and about 15,000 loans). *Akerman* v. *Oryx Commc'ns, Inc.*, 810 F.2d 336, 343 (2d Cir. 1987). Mr. Barth's opinions have no relevance because they seek to show that underwriting defects, misstatements, and omissions across the mortgage industry ("of the types" here alleged)[1]—not those at issue in this case—contributed to the housing bubble and ensuing housing crisis and financial crisis. (Ex. E (Barth Report), at ¶ 8.) That opinion does not rebut the loss causation defense. The essence of that defense is the showing that causes not at issue here were responsible for plaintiff's alleged losses. But the only permissible rebuttal is by reference to the particular misstatements and omissions that are at issue in this case. Barth's opinions are in the same category as the evidence that this Court has previously ruled is way off base (even denying discovery on the theory that the parties must stick strictly to the transactions here at issue).

## II.   EVIDENCE THAT DEFENDANTS HAD SOME ROLE IN, OR CONTRIBUTED TO, THE HOUSING AND FINANCIAL CRISES IS HIGHLY INFLAMMATORY AND LIKELY TO BE HIGHLY PREJUDICIAL.

Evidence such as Mr. Barth's testimony, which attempts to pin the blame for the housing and financial crises in some measure on defendants, is highly prejudicial and should be barred under Rule 403. An attempt to connect the allegations made against defendants in this case with the crises as a whole would run the risk of generating strong emotional reactions by the jury—reactions that have nothing to do with the facts in dispute in this case. That is likely to be extremely prejudicial.

Such inflammatory evidence—evidence which is "highly charged and emotional," *U.S.* v. *Al-Moayad*, 545 F.3d 139, 160 (2d Cir. 2008)—must be excluded when it is "irrelevant to the claims and defenses in this action . . . ." *L-3 Commc'ns Corp.*

---

[1] For instance, Mr. Barth cites to academic research papers to support his conclusion that underwriting defects, misrepresentations and omissions throughout the mortgage industry directly contributed to the housing price boom. (Ex. E (Barth Report), at ¶¶ 14-15, n.29.) Those papers, in turn, rely on data unrelated to the loans at issue in this case. (*See* Ex. G, at 9 (using a sample of approximately 18 million loans); Ex. H, at 10 (using a sample of over 1.5 million loans).) At deposition, Mr. Barth acknowledged that the data underlying these sources necessarily includes millions of loans not at issue in this case. (Ex. F (Barth Tr.), at 62:15-25; 64:16-23.)

v. *OSI Sys., Inc.*, 2006 WL 988143 at *8 (S.D.N.Y. April 13, 2006). In *L-3*, a breach-of-contract case, plaintiff was barred from presenting evidence that a key defense witness had been accused of sexual harassment because the evidence was "sufficiently inflammatory" to be "significantly prejudicial" to defendants. 2006 WL 988143 at *8. Likewise, in *Bohack Corp.* v. *Iowa Beef Processors, Inc.*, 715 F.2d 703 (2d Cir. 1983), an antitrust case, the Second Circuit upheld the district court's determination that evidence showing one of the defendants committing bribery was "inflammatory," when such evidence was "tangential" and had no relevance "to the issues as to which the jury ruled" against the plaintiff. *Id.* at 710; *see also U.S.* v. *Turoff*, 291 F.2d 864, 868 (2d Cir. 1961) (admission of irrelevant testimony identifying the defendant as a participant in a communist conspiracy was "highly prejudicial" reversible error). In the wake of a severe financial crisis and economic recession that likely affected jurors personally, it would be similarly prejudicial and inflammatory to allow plaintiff, whether through an "expert" such as Mr. Barth or otherwise, to submit evidence or make any argument seeking to blame defendants, in whole or in part, for the housing and financial crises. Admitting this type of evidence also would be contrary to the rule that evidence offered to "show the jury that defendants are bad people" is inadmissible. *Highland Capital Mgmt., LP* v. *Schneider*, 551 F. Supp. 2d 173, 192 (S.D.N.Y. 2008) (internal quotations omitted).

Indeed, courts in this District have consistently excluded evidence or argument seeking to blame a party for the financial crisis. *See Island Intellectual Prop. LLC* v. *Deutsche Bank AG*, 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) ("The financial crisis has deeply affected this country, and efforts to connect plaintiffs to that crisis may cause the jury to view them unfavorably."); *Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Americas*, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (prohibiting plaintiffs from "linking the Bondholders, or hedge funds in general, to the financial crisis"). These rulings follow the principle that litigants "are not permitted to argue to the fact finder's potential economic sympathies or prejudices." *Kinsey* v. *Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008).

Evidence or argument seeking to link defendants to the financial or housing crises (including Barth's reliance on alleged industry-wide misconduct pertaining to millions of loans not here at issue) would also be highly misleading and confusing. The issues here include whether defendants made misrepresentations in the offering materials for the seven securitizations at issue, and whether those alleged misrepresentations caused losses to Freddie Mac and Fannie Mae. A contention that widespread, industry-wide misrepresentations (conduct "of the type" plaintiff alleges) caused the housing or financial crises, and that defendants are thus partly to blame for those events, is inflammatory and inadmissible.

## CONCLUSION

Defendants respectfully request that the Court preclude plaintiff from introducing evidence or argument, including through the testimony of James Barth, that seeks to blame defendants in any way or in any part for the housing or financial crises.

Hon. Denise L. Cote -6-
Motion *in Limine* No. 1

                                         Respectfully submitted,

                                         /s/ David B. Tulchin

                                         David B. Tulchin

cc:     Counsel of Record via ECF