**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 25, 2014

Via E-mail and ECF

Hon. Denise L. Cote,
    United States District Judge,
        Daniel Patrick Moynihan United States Courthouse,
            500 Pearl Street, Room 1610,
                New York, New York  10007-1312.

    Re:    *FHFA* v. *Nomura Holding America Inc.*, *et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

    Defendants move *in limine* pursuant to Federal Rules of Evidence 402 and 403 to prohibit plaintiff from referring to itself as the "government" or the "United States," or otherwise claiming that it represents the interests of the United States, the public, or taxpayers.  Plaintiff, as conservator, stands in the shoes of two private institutions, Freddie Mac and Fannie Mae, and brings private claims on their behalf.  In doing so, plaintiff should not be allowed at trial to refer to itself as the government or to suggest that Freddie Mac's and Fannie Mae's claims belong to the government or the public, which would risk misleading the jury into believing that plaintiff is bringing claims on behalf of the United States government or that the trial involves criminal conduct.  Defendants further move to prohibit any reference to damages, if they are awarded, being paid to the United States or the United States Treasury Department, as any such reference would be irrelevant, prejudicial, and misleading.

### BACKGROUND

    Freddie Mac and Fannie Mae were chartered by Congress as corporations to participate in the private mortgage market.  *See* 12 U.S.C. §1451 *et seq.*; 12 U.S.C. § 1716 *et seq*.  In 1989, Congress privatized the management and operations of Freddie Mac, allowing the issuance of common stock to the public and the election of directors by private shareholders.  *See* U.S.C. § 1452(a)(2)(A).  Fannie Mae is similarly privately owned; its stock has been publicly traded since 1968, when Congress passed the Housing and Urban Development Act of 1968, Pub. L. 90-448, 82 Stat. 476.  As with Freddie

Hon. Denise L. Cote                                                                                          -2-
                                                                                              Motion *in Limine* No. 2

Mac, a majority of Fannie Mae's Board of Directors is elected by private shareholders. *See* 12 U.S.C. § 1723.  During the 2005-2007 time period, Freddie Mac and Fannie Mae operated as private entities, making profits for their private shareholders.  (*See* Ex. A (Fannie Mae 2005 Form 10-K), at 59 (yearly profit of over $6 billion); Ex. B (Freddie Mac 2005 Annual Report), at 19 (yearly profit of over $2 billion).)  Moreover, their CEOs were paid at the top of the private pay scale:  From 2006 to 2008, Fannie Mae's CEO, Daniel Mudd, earned almost $24 million in compensation,[1] and Freddie Mac's CEO, Richard Syron, earned $38 million in compensation from 2003 to 2008.[2]

Congress created the Federal Housing Finance Agency in 2008 pursuant to the Housing and Economic Recovery Act, 12 U.S.C. §§ 4511, 4617, in order to act as regulator and, if necessary, conservator for Freddie Mac and Fannie Mae (along with the Federal Home Loan Banks).  Plaintiff appears before this Court in its capacity as conservator for the two institutions and brings private claims belonging to Freddie Mac and Fannie Mae.

Throughout their conservatorship, Freddie Mac and Fannie Mae have maintained their private status.  Plaintiff's former Acting Director, Edward DeMarco, acknowledged before Congress that Freddie Mac and Fannie Mae "did not cease to be private legal entities when they were placed into conservatorship."  (Ex. C (May 25, 2011 Statement of Edward DeMarco to U.S. House of Representatives Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises) at 8-9.)  Indeed, as before conservatorship, they continue to be subject to federal corporate and local real estate taxes.  (*See* Ex. D (Fannie Mae 2009 Form 10-K), at 35.)

Nonetheless, plaintiff has repeatedly argued before the Court that it is acting in the public interest, on behalf of the government and taxpayers.  (*See* Ex. E (Dec. 2, 2011 Hearing Tr.) at 23:21-24:1 (plaintiff is "trying to vindicate public rights, public interests in the protection of the housing market"); Ex. F (Oct. 24, 2013 Hearing Tr.) at 12:3-5 ("As you know, the public interest of the litigation, FHFA is pursuing this on behalf of taxpayers.  In terms of cost, FHFA is pursuing this on behalf of taxpayers.").)  Plaintiff should not be permitted to make similar statements to the jury.  To do so would be irrelevant, misleading, and unfairly prejudicial to defendants.

---

[1] Ex-Fannie Chief Girds for Battle with SEC Over Disclosure, BLOOMBERG NEWS, Apr. 12, 2012, *available at* http://www.bloomberg.com/news/2012-04-12/ex-fannie-chief-girds-for-battle-with-sec-over-disclosure.html.

[2] At Freddie Mac, Chief Discarded Warning Signs, THE NEW YORK TIMES, Aug. 5, 2008, *available at* http://www.nytimes.com/2008/08/05/business/05freddie.html?pagewanted=all&_r=1&

## ARGUMENT

**I.   PLAINTIFF IS NOT ACTING IN THE PUBLIC INTEREST, AND THAT QUESTION IS IRRELEVANT IN ANY EVENT.**

Relevant evidence is evidence that has "any tendency to make a fact more probable or less probable than it would be without the evidence" and that "is of consequence in determining the action." Fed R. Evid. 401. Here, the claims asserted (i) belong to two private entities, Freddie Mac and Fannie Mae, (ii) are based on private rights of action arising out of conduct that occurred before plaintiff came into existence, and (iii) would, if successful, result in the payment of any damages to private parties. Plaintiff's status as an administrative agency does not bear on any claims or defenses in this action.

Freddie Mac and Fannie Mae have each long been considered "a private corporation, not a government entity." *See, e.g.*, *Liberty Mortg. Banking, Ltd.* v. *Fed. Home Loan Mortg. Corp.*, 822 F. Supp. 956, 958 (E.D.N.Y. 1993) ("The mere fact that Congress issued its corporate charter does not negate the fact that Freddie Mac is an essentially private entity."); *see also American Bankers Mort. Corp* v. *Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1409 ("Freddie Mac is not a government agency" for 5th Amendment purposes). That plaintiff is acting as conservator for Freddie Mac and Fannie Mae does not change this. As the court in *Herron* v. *Fannie Mae*, 857 F. Supp. 2d 87 (D. D.C. 2012), observed, "Fannie Mae was a private entity; when FHFA took over as conservator of Fannie Mae, it stepped into Fannie Mae's private role." *Id.* at 96. Indeed, in *Herron*, plaintiff itself argued that its conservatorship over Freddie Mac and Fannie Mae did not transform these essentially private entities into government actors. (Ex. G (June 27, 2011 Memorandum of Law), at 26 ("[t]he conservatorship/receivership model to resolve financial institutions cannot survive if entities in conservatorships or receiverships . . . are deemed to be federal actors with all the rights and limitations of the government").)

Moreover, the claims at issue in this case are private rights of action under the Securities Act and the D.C. Blue Sky laws. *See Hutchison* v. *Deutsche Bank Securities, Inc.*, 647 F.3d 479, 484 (2d Cir. 2011) (Section 11 claims are "private rights of action"). Unlike other provisions of the Securities Act, which create public rights enforceable by the Securities and Exchange Commission, claims under Sections 11 and 12 can only be brought by a "person acquiring such security"—that is, by an investor on its own behalf. 15 U.S.C. 77k(a); *see also* 15 U.S.C. 77l(a) (Section 12 claim available to "person purchasing such security"). Here, the investors are Freddie Mac and Fannie Mae, not plaintiff. And the investments at issue were made between 2005 and 2007, before plaintiff came into existence.

Damages in this case are to be paid to Freddie Mac and Fannie Mae. Even if any damages are later paid in some part to the United States Treasury, that too would not bear on any claims or defenses in the action. Those claims and defenses concern

whether defendants made any misstatements and whether those misstatements caused Freddie Mac's and Fannie Mae's alleged losses. Evidence or argument to the jury about who would eventually receive or benefit from any damages payments—for example, that such payments would benefit "taxpayers" or would in any way inure to the benefit of the public—would therefore be entirely irrelevant.

## II.   EVIDENCE OR ARGUMENT THAT PLAINTIFF IS ACTING IN THE PUBLIC INTEREST SHOULD BE PRECLUDED UNDER FED. R. EVID. 403.

Under Rule 403, the court may exclude evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (1972 Advisory Committee Notes). It would be highly prejudicial for plaintiff here to refer to itself as the United States Government, or to tell the jury that it is acting on behalf of the public or taxpayers. Such evidence or argument would also mislead and confuse the jury.

If jurors believed that plaintiff sought to recover for claims belonging to the United States or to taxpayers, that would have an "undue tendency to suggest a decision on an improper basis," *id.*, namely that jurors as taxpayers may have some direct or indirect stake in the outcome. Arguments "that appeal to jurors' pecuniary interests as taxpayers are, of course, generally improper." *Moore ex rel. Estate of Grady* v. *Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008). Indeed, in *Murray* v. *Town of Stratford*, 2014 WL 3700982 (D. Conn. July 25, 2014), the court, in an action by an individual against the local government, ruled *in limine* that "[a]ny argument to the jury that a verdict awarded would be paid by taxpayers, would place the jury, as taxpayers themselves . . . in the position of considering their personal interest," and was therefore inadmissible. *Id.* at *4; see Currie* v. *Cundiff*, 2012 WL 2254372 at *4 (S.D. Ill. June 15, 2012) (granting plaintiff's motion *in limine* to "bar arguments and references to jurors' pecuniary interests, including references to jurors, as taxpayers, and the financial condition of the State of Illinois or Williamson County"). Here, the risk of prejudice is based on the same principle—that, acting in their own pecuniary interests as taxpayers, the jury could be convinced to award damages where none would otherwise be awarded. Plaintiff accordingly should be precluded from presenting evidence or argument suggesting that it seeks to recover damages on behalf of the government or taxpayers.

A jury may also be misled into believing that the United States owns the claims against defendants, that taxpayers were allegedly harmed in some way, or that the claims, as with many actions brought by the United States, involve criminal wrongdoing. Any reference that would imply a criminal proceeding has the potential to improperly mislead the jury. *See Davis* v. *City of New York*, 296 F.R.D. 127, 130 (E.D.N.Y. 2013)

Hon. Denise L. Cote                                                                                          -5-
                                                                                      Motion *in Limine* No. 2

(holding that reference to "criminal proceedings must be kept to a minimum if the civil jury here is to exercise its judgment independently," and granting a motion to preclude any reference to defense counsel as the "City" or "City attorneys" under Rule 403).

                                                         Respectfully submitted,

                                                         /s/ David B. Tulchin

                                                         David B. Tulchin

cc:     Counsel of Record via ECF