# Exhibit G

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAROLINE HERRON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 10-00943 (RMC)** |
| **v.** ) | |
| ) | |
| **FANNIE MAE,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF INTERVENOR FEDERAL HOUSING FINANCE AGENCY'S
MOTION TO DISMISS THE *BIVENS* CLAIM UNDER RULE 12(b)(6)**

Howard N. Cayne (D.C. Bar # 331306)
Asim Varma (D.C. Bar # 426364)
Michael A.F. Johnson (D.C. Bar # 460879)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, DC  20004
Telephone:  202-942-5000
Facsimile:  202-942-5999
Email:  howard.cayne@aporter.com

Stephen E. Hart (D.C. Bar # 033379)
FEDERAL HOUSING FINANCE AGENCY
1700 G Street, N.W.
Washington, DC  20552
Telephone: 202-414-3800
Facsimile: 202-414-6504

*Attorneys for the Federal Housing Finance Agency*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

SUMMARY OF PERTINENT ALLEGATIONS AND STIPULATIONS ................................... 3

I.      FANNIE MAE ............................................................................................................. 4

II.     THE CONSERVATORSHIP AND THE TREASURY AGREEMENTS ......................... 5

ARGUMENT ...................................................................................................................... 10

I.      UNDER *LEBRON*, FANNIE MAE HAS AT ALL RELEVANT TIMES BEEN A
        PRIVATE ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS ................... 10

        A.      Under the *Lebron* Framework, before Conservatorship Fannie Mae Was a
                Private Actor for Purposes of Constitutional Claims ......................................... 11

                1.      Congress Converted Fannie Mae from a Public Enterprise to a Private
                        Enterprise in 1968 ................................................................................... 11

                2.      Post-*Lebron* Authority Holds that Freddie Mac Is a Private Actor for
                        Purposes of Constitutional Claims ........................................................... 13

                3.      In Pre-*Lebron* Decisions That Remain Valid, Pre-Conservatorship
                        Fannie Mae Was Consistently Held Private, Not Governmental, for
                        Purposes of Constitutional Claims ........................................................... 13

                4.      National Banks and Other Federally Chartered and Supervised
                        Financial Institutions That Serve a Public Mission Are Considered
                        Private Actors for Purposes of Constitutional Claims .............................. 14

        B.      Conservatorship Cannot Make Fannie Mae a Government Actor for Purposes
                of Constitutional Claims ................................................................................... 17

                1.      Conservatorship Preserves the Private Status of the Entity in
                        Conservatorship ...................................................................................... 18

                2.      *Lebron* Requires *Permanent* Government Control for an Otherwise
                        Private Entity to Be Deemed a Government Actor for Purposes of
                        Constitutional Claims .............................................................................. 22

                3.      The Fannie Mae Conservatorship Is Inherently and Necessarily
                        Temporary ............................................................................................... 23

4.    The Critical Supervisory Tools of Conservatorship and Receivership Could Not Survive if Subject Entities Were Deemed Government Actors for Purposes of Constitutional Claims ......................................... 26

II.    FANNIE MAE'S AGREEMENTS WITH THE U.S. TREASURY DO NOT CONVERT FANNIE MAE INTO A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS ......................................................................................... 27

A.    The Financial Agency Agreement Does Not Affect Fannie Mae's Status as a Private Actor for Purposes of Constitutional Claims ........................................... 27

B.    The Preferred Stock Purchase Agreement Does Not Affect Fannie Mae's Status as a Private Actor for Purposes of Constitutional Claims ......................... 29

CONCLUSION ..................................................................................................................... 32

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1185 Avenue of the Ams. Assocs. v. RTC,*
    22 F.3d 494 (2d Cir. 1994)......................................................................................23

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.,*
    75 F.3d 1401 (9th Cir. 1996) .............................................................................13, 14

*Am. Nat'l Ins. Co. v. FDIC,*
    No. 10-5245 (D.C. Cir. June 24, 2011)..............................................................20, 21

*Ameristar Fin. Servicing Co., LLC v. United States,*
    75 Fed. Cl. 807 (2007) ...........................................................................................22

*\*Andrews v. Fed. Home Loan Bank of Atlanta,*
    998 F.2d 214 (4th Cir. 1993) ............................................................................16, 17

*Apao v. Bank of New York,*
    324 F.3d 1091 (9th Cir. 2003) ..........................................................................15, 16

*Bailey v. Harleysville Nat'l Bank & Trust,*
    No. 05-4352, 2006 WL 2009329 (3rd Cir. July 18, 2006) ......................................16

*Branch v. United States,*
    12 Ct. Cl. 281 (Ct. Cl. 1876), aff'd 100 U.S. 673 (1880) .................................30, 31

*Debauche v. Trani,*
    191 F.3d 499 (4th Cir. 1999) ..................................................................................17

*FDIC v. Glickman,*
    450 F.2d 416 (9th Cir. 1971) ..................................................................................22

*Johnson v. Nat'l City Bank Corp.,*
    Civ. A. No. 3:09CV-490-S, 2010 WL 569844 (W.D. Ky. Feb. 12, 2010) ..............16

*Judicial Watch, Inc. v. Fed. Hous. Fin. Agency,*
    744 F. Supp. 2d 228 (D.D.C. 2010) .........................................................................9

*\*Lebron v. Nat'l R.R. Passenger Corp.,*
    513 U.S. 374 (1995).......................................................................................... passim

*Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.,*
    822 F. Supp. 956 (E.D.N.Y. 1993) .........................................................................15

*Morast v. Lance*,
   807 F.2d 926 (11th Cir. 1987) ...................................................................16, 17

*Nat'l Labor Relations Bd. v. Bildisco & Bildisco*,
   465 U.S. 513 (1984)........................................................................................23

*Nat'l Union Fire Ins. Co. v. City Sav. F.S.B.*,
   28 F.3d 376 (3d Cir. 1994).............................................................................23

*Northrip v. Fed. Nat'l Mortg. Ass'n*,
   527 F.2d 23 (6th Cir. 1975) ...........................................................................14

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994)....................................................................................20, 22

*Office & Prof'l Emps. Int'l Union Local 2 v. FDIC*,
   962 F.2d 63 (D.C. Cir. 1992) .........................................................................23

*Panis v. Mission Hills Bank, N.A.*,
   Civ. A. 92-2391-EEO, 1993 WL 390399 (D. Kan. Sept. 30, 1993)...................16

*Rannels v. Meridian Bancorp, Inc.*,
   718 F. Supp. 10 (E.D. Pa. 1989) ...................................................................15

*Roberts v. Cameron-Brown Co.*,
   556 F.2d 356 (5th Cir. 1977) ....................................................................14, 15

*Schock v. FDIC*,
   118 F. Supp. 2d 165 (D.R.I. 2000)............................................................21, 22

*Tiffany v. Nat'l Bank of Missouri*,
   85 U.S. 409 (1873)........................................................................................14

*United States v. Beszborn*,
   21 F.3d 62 (5th Cir. 1994) ..................................................................19, 20, 25

*United States v. Citizens & S. Nat'l Bank*,
   889 F.2d 1067 (Fed. Cir. 1989)................................................................28, 29

*Vill. of Oakwood v. State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ....................................................................20, 21

*Williams v. Infra Commerc Anstalt*,
   131 F. Supp. 2d 451 (S.D.N.Y. 2001)............................................................21

*Zhu v. Fed. Hous. Fin. Bd.*,
   389 F. Supp. 2d 1253 (D. Kan. 2005).............................................................16

STATUTES

12 U.S.C. § 1455(h) ....................................................................................................12

12 U.S.C. § 1717(a)(2) ...............................................................................................12

12 U.S.C. § 1719(b) ....................................................................................................12

12 U.S.C. § 1723a(d)(2) ..........................................................................................5, 12

12 U.S.C. § 1821(d)(2)(A)(i) ................................................................................18, 19

12 U.S.C. § 4617(b)(2)(A)(i) ...........................................................................6, 7, 18, 19

31 U.S.C. § 9101(3)(G) ...............................................................................................12

Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765
     (Oct. 3, 2008) .....................................................................................................9, 10

Housing and Urban Development Act of 1968, Pub. L. 90-448, 82 Stat. 476 (Jan. 15,
     1968) .......................................................................................................................12

National Bank Act of 1864, 38 Cong. ch. 106, 13 Stat. 99 (June 3, 1864)..................28

National Housing Act of 1934, Pub.L. 84-345, 48 Stat. 847 (June 28, 1934)..............12

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)..................................................................................................3

H.R. Rep. No. 90-1585 (1968) .....................................................................................12

## INTRODUCTION

Pursuant to Rule 12(b)(6), intervenor the Federal Housing Finance Agency ("FHFA"), in its capacity as Conservator for the Federal National Mortgage Association ("Fannie Mae"), respectfully moves to dismiss plaintiff Caroline Herron's *Bivens* claim against certain employees of Fannie Mae. As Ms. Herron concedes, the *Bivens* claim could be viable only if Fannie Mae were a government actor for purposes of the constitutional tort Ms. Herron alleges. Fannie Mae is not. Rather, Fannie Mae is a private entity, and appointment of a Conservator to oversee it has not transformed Fannie Mae into a government actor for purposes of constitutional claims.[1]

*First*, a continuous line of decisions following as well as predating *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995), confirms that the pre-conservatorship Fannie Mae—and a broad array of other federally chartered and supervised entities serving a wide variety of statutorily prescribed public missions—are private actors for purposes of constitutional claims.

*Second*, conservatorship as a matter of law did not effect a temporary transformation of Fannie Mae into a government actor for the undefined but limited duration of its operations in federal conservatorship. A conservator or receiver appointed by a federal financial institution regulatory agency becomes the statutory successor to the privately owned failing or failed federally chartered financial institution for which it has been appointed, that is, it steps into the shoes of the *private* institution for the duration of the conservatorship or receivership. The fact that the operations and/or liquidation of a failing or failed federally chartered financial institution

---

[1]   Pursuant to the Court's May 27, 2011 minute order, this motion addresses only the *Bivens* claim, and only the issue of whether Fannie Mae can appropriately be deemed a government actor for constitutional tort purposes. FHFA respectfully reserves its right to assert other dispositive arguments regarding the *Bivens* claim as well as the other claims, separately in appropriate circumstances.

are for an indefinite but limited period controlled by a conservator or receiver appointed by the appropriate federal financial regulatory agency does not transform the private financial institution into a government actor for the duration of conservatorship or receivership. The Court's recent observation concerning Washington Mutual ("WAMU") (a federally chartered savings association which was placed by the Office of Thrift Supervision into receivership with the FDIC) is apt here. As the Court noted, there was no question that WAMU did not become a public entity. *See* Transcript from May 25, 2011 Status Conference ("Tr.") at 28. In the same way as bankruptcy does not transform a corporation into a government actor and federal receivership does not transform a federally chartered financial institution into a government actor, conservatorship cannot transform Fannie Mae into a government actor for purposes of constitutional claims. In fact, the authority upon which Ms. Herron relies—*Lebron*—holds that government control of an otherwise-private entity must be *permanent* before constitutional claims like Ms. Herron's can plausibly be stated. Because conservatorship is inherently and necessarily *temporary*, *Lebron* mandates the conclusion that Fannie Mae remains a private entity while in conservatorship.

*Third*, Fannie Mae's agreements with Treasury do not convert Fannie Mae into a government actor for purposes of constitutional claims. Fannie Mae's agreement to provide services to Treasury pursuant to a Financial Agency Agreement ("FAA") establishes a principal-agent relationship. If Fannie Mae were a governmental entity, an agency agreement would be entirely unnecessary. Neither conservatorship nor the agreement transformed Fannie Mae from an agent into the principal. Indeed, Treasury has exercised its statutory authority to appoint financial agents for nearly 150 years with respect to countless entities without any contention that they thereby became part of the government. The Preferred Stock Purchase Agreement by

which Treasury provides funding to Fannie Mae is no different from the many investments that
Treasury and the Federal Deposit Insurance Corporation ("FDIC") have made in financial
institutions in exchange for preferred stock and warrants to purchase common stock. For
purposes of constitutional claims, these investments do not convert these institutions into
government actors under *Lebron*, which specifically holds that government ownership of an
otherwise private corporation does not make the corporation a government actor for such
purposes.

     Ms. Herron fundamentally misapprehends the effect of conservatorship on Fannie Mae's
status. Congress has mandated that failing and failed federally chartered financial institutions
may be taken over by federally appointed conservators or receivers. The exercise of this
statutory resolution authority to resuscitate or liquidate failing and failed federally chartered
financial institutions does not transform a private actor into a governmental actor for purposes of
constitutional claims. Thus, Fannie Mae was at all relevant times (and remains to this day) a
private actor for purposes of constitutional claims. Ms. Herron cannot state a viable *Bivens*
claim; therefore, FHFA respectfully requests that the Court dismiss the *Bivens* claim pursuant to
Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF PERTINENT ALLEGATIONS AND STIPULATIONS

     This is a dispute arising out of the termination of a consulting arrangement. Ms. Herron,
who once was employed as a Fannie Mae vice president, took a buyout and separated completely
from Fannie Mae in 2007. After FHFA placed Fannie Mae into conservatorship in 2008,
Ms. Herron began to provide consulting services to Fannie Mae. Ms. Herron did not provide her
consulting services as an employee of Fannie Mae: an outside vendor employed Herron under an
"open-ended" contract specifically for this purpose. Ms. Herron asserts that Fannie Mae
wrongfully terminated the consulting relationship. Her principal claims all arise under District of

Columbia law, and all allege (correctly) that Fannie Mae is a private actor.  *See* Compl. (Dkt.

No. 1) ¶¶ 83-113 & Prayer ¶ 1.  Ms. Herron has alternatively pled a *Bivens* claim against certain

Fannie Mae employees, asserting that they violated her rights under the U.S. Constitution.  *See*

*id*. ¶¶ 114-130.

## I.    FANNIE MAE

Fannie Mae operates in the secondary mortgage market, purchasing residential mortgages

and thereby providing mortgage lenders with capital that they can then use to fund additional

mortgage loans.  *See* Stipulation 1 (citing 12 U.S.C. § 1716).

Fannie Mae competes with a variety of private and public enterprises to earn profits.  As

Fannie Mae explained in a recent 10-K:

> Historically, our competitors have included Freddie Mac, FHA, Ginnie
> Mae (which primarily guarantees securities backed by FHA-insured
> loans), the FHLBs, financial institutions, securities dealers, insurance
> companies, pension funds, investment funds and other investors.  During
> 2008, almost all of our competitors, other than Freddie Mac, FHA, Ginnie
> Mae and the FHLBs, ceased their activities in the residential mortgage
> finance business, and we remained the largest single issuer of mortgage-
> related securities in the secondary market in 2009.
>
> We compete to acquire mortgage assets in the secondary market both for
> our investment portfolio and for securitization into Fannie Mae MBS.  We
> also compete for the issuance of mortgage-related securities to investors.

Stipulation 95 (quoting Fannie Mae, Form 10-K for 2009, at 43-44 (Feb. 26, 2010)).

In 1968, Congress privatized Fannie Mae by partitioning the Federal National Mortgage

Association as it then existed into one entity that would "remain in the Government" (the

Government National Mortgage Association, or "Ginnie Mae") and one entity that would

become a "private corporation" (Fannie Mae).  The relevant statute provides that:

> The purpose of this title includes the partition of the Federal National
> Mortgage Association as heretofore existing into two separate and distinct
> corporations, each of which shall have continuity and corporate succession
> as a separated portion of the previously existing corporation.  *One of such*

> *corporations, to be known as the Federal National Mortgage Association,
> will be a Government-sponsored **private corporation**,* will retain the assets
> and liabilities of the previously existing corporation accounted for under
> section 1719 of this title, and will continue to operate the secondary
> market operations authorized by such section 1719. *The other, to be
> known as the Government National Mortgage Association, **will remain in
> the Government**,* will retain the assets and liabilities of the previously
> existing corporation accounted for under sections 1720 and 1721 of this
> title, and will continue to operate the special assistance functions and
> management and liquidating functions authorized by such sections 1720
> and 1721.

Stipulation 2 (quoting 12 U.S.C. § 1716b) (emphasis added).

Employees of the newly privatized Fannie Mae were, by statute, to be hired and

compensated as private employees.  The relevant statute provides:

> The board of directors of the corporation shall have the power to select
> and appoint or employ such officers, attorneys, employees, and agents, to
> vest them with such powers and duties, and to fix and to cause the
> corporation to pay such compensation to them for their services, as the
> board of directors determines reasonable and comparable with
> compensation for employment in other similar businesses (including other
> publicly held financial institutions or major financial services companies)
> involving similar duties and responsibilities, except that a significant
> portion of potential compensation of all executive officers (as such term is
> defined in paragraph (3)(C)) of the corporation shall be based on the
> performance of the corporation; and any such action shall be without
> regard to the Federal civil service and classification laws.

12 U.S.C. § 1723a(d)(2).

Fannie Mae is not exempt from the payment of federal corporate income tax or local real

estate taxes.  Stipulation 15 (quoting Fannie Mae, Form 10-K for 2009, at 35 (Feb. 26, 2010)).

## II.    THE CONSERVATORSHIP AND THE TREASURY AGREEMENTS

In legislation enacted in 2008, Congress empowered FHFA to act as conservator or

receiver of Fannie Mae in certain circumstances for purposes of "reorganizing, rehabilitating, or

winding up [its] affairs."  Stipulation 34 (quoting 12 U.S.C. § 4617(a)(2)).

5

FHFA placed Fannie Mae (and a similar enterprise, the Federal Home Loan Mortgage

Corporation, or "Freddie Mac") into conservatorship on September 6, 2008.  FHFA's then-

Director, James Lockhart, explained:

> [I]n order to restore the balance between safety and soundness and
> mission, FHFA has placed Fannie Mae and Freddie Mac into
> conservatorship.  *That is a statutory process designed to stabilize a*
> *troubled institution with the objective of returning the entities to normal*
> *business operations*.  FHFA will act as the conservator to operate the
> Enterprises *until they are stabilized*.

Stipulation 46 (quoting FHFA, "Statement of FHFA Director James B. Lockhart," at 5-6 (Sept.

7, 2008)) (emphasis added).

That same day, FHFA issued a "Fact Sheet" about the conservatorships of Fannie Mae

and Freddie Mac, which stated:

> Q.    When will the conservatorship period end?
>
> A.    Upon the [FHFA] Director's determination that the Conservator's plan to
>       restore the Company to a safe and solvent condition has been completed
>       successfully, the Director will issue an order terminating the
>       conservatorship.  At present, there is no exact time frame that can be given
>       as to when this conservatorship may end.

Stipulation 38 (quoting FHFA, "Fact Sheet: Questions and Answers on Conservatorship," at 2

(Sept. 7, 2008), *available at* http://www.treasury.gov/press-center/press-releases/Documents/-

fhfa_consrv_faq_090708.pdf).

FHFA, as the statutory Conservator of Fannie Mae, has the authority to "take such action

as may be (i) necessary to put the regulated entity in a sound and solvent condition; and

(ii) appropriate to carry on the business of the regulated entity and preserve and conserve the

assets and property of the regulated entity."  Stipulation 51 (quoting 12 U.S.C. § 4617(b)(2)(D)).

The Conservator may "(i) take over assets of and operate [Fannie Mae] with all the

powers of the shareholders, the directors, and the officers of the regulated entity and conduct all

business of the regulated entity; (ii) collect all obligations and money due [Fannie Mae];

(iii) perform all functions of [Fannie Mae] in the name of [Fannie Mae] which are consistent

with the appointment as conservator or receiver; (iv) preserve and conserve the assets and

property of [Fannie Mae]; and (v) provide by contract for assistance in fulfilling any function,

activity, action or duty of the Agency as conservator."  Stipulation 52 (quoting 12 U.S.C.

§ 4617(b)(2)(B)).

In mid-2009, then-Director Lockhart explained that:

> As conservator, FHFA is responsible for the overall management of the
> institutions and *has delegated certain operational and other duties to the
> Enterprises' directors and officers as deemed appropriate*.  The
> Enterprises consult with and obtain approval of the Conservator before
> taking action on transactions involving capital; creation of any subsidiaries
> or affiliates; certain hiring, termination, and compensation decisions
> related to executive vice presidents and above; retention and termination
> of external auditors; and certain other actions that either involve
> transactions greater than $50 million, relate specifically to the
> conservatorship, or are likely to cause significant reputation risk.

Stipulation 76 (quoting Statement of James B. Lockhart III, FHFA Director, Before the House

Financial Services Committee Subcommittee on Capital Markets, Insurance and Government

Sponsored Enterprises, "The Present Condition and Future Status of Fannie Mae and Freddie

Mac," at 8 (June 3, 2009)) (emphasis added).

FHFA has stated that the "conservatorship [of Fannie Mae] has no specified termination

date."  Stipulation 67 (quoting Fannie Mae, Form 8-K filed with the U.S. Securities and

Exchange Commission, at 2 (Dec. 24, 2008)).

The Office of Management and Budget, in releasing the proposed Fiscal Year 2012

Budget of the U.S. Government, stated in the "Analytical Perspectives" section of the Budget

that:

> The Budget continues to reflect the GSEs [Fannie Mae and Freddie Mac]
> as non-budgetary entities in keeping with their temporary status in

7

> conservatorship.  However, all of the current federal assistance being
> provided to Fannie Mae and Freddie Mac, including capital provided by
> Treasury through the Senior Preferred Stock Purchase Agreements, is
> shown on-budget, and discussed below.

Stipulation 156 (quoting OMB, *Fiscal Year 2012: Analytical Perspectives, Budget of the U.S. Government*, at 373 (Feb. 14, 2011)).

In conjunction with the appointment of FHFA as Conservator, Fannie Mae (acting through the Conservator) entered into a Senior Preferred Stock Purchase Agreement pursuant to which the U.S. Department of Treasury committed to provide immediate funding from time to time, provided the aggregate amount funded by Treasury did not exceed $100 billion.  On a quarterly basis, the Conservator may draw on the Treasury commitment to ensure that Fannie Mae's net worth does not fall below zero (*i.e.*, its liabilities do not exceed its assets).  Stipulation 42 (citing Senior Preferred Stock Purchase Agreement, § 2 (Sept. 7, 2008)).

On May 6, 2009, the Senior Preferred Stock Purchase Agreement was amended to increase to $200 billion the maximum aggregate amount committed by Treasury.  *See* Stipulation 42 (citing Amendment to Amended and Restated Senior Preferred Stock Purchase Agreement, at 1-2 (May 6, 2009)).

On December 24, 2009, Fannie Mae and Treasury modified Treasury's funding commitment to provide that the aggregate amount shall not exceed the greater of $200 billion or $200 billion plus the cumulative total amount funded by Treasury through December 2012, less any surplus amount determined as of December 12, 2012.  *See* Stipulation 42 (citing Second Amendment to Amended & Restated Senior Preferred Stock Purchase Agreement, at 1-2 (Dec. 24, 2009)).

Treasury has explained that "[t]he senior preferred stock shall not be entitled to voting rights.  In a conservatorship, voting rights of all stockholders are vested in the Conservator."

Stipulation 55 (quoting Treasury, "Fact Sheet: Treasury Senior Preferred Stock Purchase Agreements," at 1-2 (Sept. 7, 2008), *available at* http://www.treasury.gov/press-center/press-releases/Documents/pspa_factsheet_090708%20hp1128.pdf).

During conservatorship, Fannie Mae continues to be subject to federal corporate and local real estate taxes.  Stipulation 15 (quoting Fannie Mae, Form 10-K for 2009, at 35 (Feb. 26, 2010)).

Fannie Mae and Freddie Mac are not subject to the Freedom of Information Act ("FOIA").  *See* Statement of Edward J. DeMarco, Acting Director, Federal Housing Finance Agency, Before the U.S. House of Representatives Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, "Transparency, Transition and Taxpayer Protection: More Steps to End the GSE Bailout," at 8-9 (May 25, 2011), *available at* http://www.fhfa.gov/webfiles/21318/De-marcotestimony52511.pdf (attached to Varma Declaration as Exhibit 1).  As Acting Director DeMarco explained when testifying before Congress about a proposal to subject the Enterprises to FOIA, FOIA's core purpose of enhancing public understanding of government activities "is not served by applying FOIA to Fannie Mae and Freddie Mac, which are still private companies operating in conservatorship.  *They did not cease to be private legal entities when they were placed into conservatorship*, nor did they become part of FHFA."  *Id.* at 8 (emphasis added).[2]

Under the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (Oct. 3, 2008) ("EESA"), Treasury designated Fannie Mae as a "financial agent of the United States" to provide services "including but not limited to the development, implementation, and administration of services relating to foreclosure prevention, private label

---

[2]    *See also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 744 F. Supp. 2d 228 (D.D.C. 2010), appeal argued on May 10, 2011.

mortgage-backed securities (PLS), Housing Finance Agency (HFA) activities, customer service call centers and other miscellaneous services."  To formalize this relationship, Treasury and Fannie Mae entered into a "Financial Agency Agreement" on February 18, 2009.  *See* Stipulation 145 (quoting Financial Agency Agreement, Ex. A, at 1 (Feb. 18, 2009)).

## ARGUMENT

### I.   UNDER *LEBRON*, FANNIE MAE HAS AT ALL RELEVANT TIMES BEEN A PRIVATE ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS

Ms. Herron has repeatedly asserted that the Supreme Court's decision in *Lebron* governs the question of whether Fannie Mae can appropriately be deemed a government actor for purposes of assessing the viability of Ms. Herron's *Bivens* claim.  *See, e.g.*, Tr. at 41 (Ms. Bernabei:  " . . . the only real issue is[,] is there permanent government control under *Lebron*…").  Under *Lebron*, however, Fannie Mae is plainly a private actor for purposes of constitutional claims.

In *Lebron*, the Supreme Court held that where "the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself *permanent authority* to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."  *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 400 (1995) (emphasis added).  Under *Lebron*, prior to conservatorship Fannie Mae was a private actor for purposes of constitutional claims because the government did not appoint the majority of its directors.  The exercise of FHFA's resolution authority over Fannie Mae—that is, the imposition of a conservatorship—did not transform Fannie Mae from a private actor into a government actor for purposes of constitutional claims.  Exercise of statutory resolution authority over federally chartered financial institutions is inherently temporary—the government takes over the financial institution for the purpose of either rehabilitating it or liquidating it.

10

Since by definition conservatorship is temporary, *Lebron* mandates that an entity that is private cannot become public by virtue of temporary custody by the government.

### A.   Under the *Lebron* Framework, before Conservatorship Fannie Mae Was a Private Actor for Purposes of Constitutional Claims

Unambiguous congressional enactments and extensive case law—including a post-*Lebron* decision involving Freddie Mac, a similar government-sponsored enterprise—establish conclusively that Fannie Mae's pre-conservatorship status for purposes of constitutional claims was that of a private, not a government, actor.  Indeed, prior to conservatorship, Fannie Mae was a private, profit-making entity that competed with other financial institutions in the mortgage industry.  *See* Fannie Mae, Form 10-K for 2005, at 19 (Mar. 13, 2006) ("Our competitors include the Federal Home Loan Mortgage Corporation, referred to as Freddie Mac, the Federal Home Loan Banks, financial institutions, securities dealers, insurance companies, pension funds and other investors."); *id.* at 36 ("We face increasing competition in the secondary mortgage market from other GSEs and from large commercial banks, savings and loan institutions, securities dealers, investment funds, insurance companies and other financial institutions.").  For instance, in 2005, Fannie Mae had net income of $6.3 billion, assets of $834 billion and approximately 971 million shares of outstanding common stock.  *Id.* at 59-60, 64, & 161.  Just like other private financial institutions, Fannie Mae was subject to extensive federal safety-and-soundness regulation—including the possibility of being placed into conservatorship under certain conditions—but did not thereby become a government actor for purposes of constitutional claims.

### 1.   Congress Converted Fannie Mae from a Public Enterprise to a Private Enterprise in 1968

For more than 40 years, pre-conservatorship Fannie Mae operated as a private corporation, whose common stock was publicly traded on the New York Stock Exchange

11

("NYSE").  Originally created by the National Housing Act of 1934, Congress transformed Fannie Mae's status from government entity into a private entity in 1968.  Housing and Urban Development Act of 1968, Pub. L. No. 90-448, 82 Stat. 476 (1968).  In the 1968 legislation, Congress partitioned the Federal National Mortgage Association into Ginnie Mae and pre-conservatorship Fannie Mae.  12 U.S.C. § 1717(a)(2).  In doing so, Congress retained Ginnie Mae as a government-controlled and government-operated entity, while making pre-conservatorship Fannie Mae a "Government-sponsored private corporation" that would be "entirely privately owned" to "operate the secondary market operations."  H.R. Rep. No. 90-1585, at 65-66 (1968).

After the 1968 Act, Fannie Mae functioned as a private corporation and not as a federal agency or other government actor.  Fannie Mae's stock was publicly traded on the NYSE, and the company was privately controlled by a Board of Directors, the majority of whom were elected annually by the corporation's shareholders.  After privatization, Fannie Mae was *not* one of the corporations subject to the Government Corporation Control Act, but Ginnie Mae was, further demonstrating Congress's intent to make Fannie Mae private.  31 U.S.C. § 9101(3)(G).  Furthermore, Congress expressly provided that Fannie Mae employees hired after January 31, 1972 would *not* be federal government employees subject to the civil service laws.  12 U.S.C. § 1723a(d)(2).[3]

---

[3]   Moreover, Congress took pains to make clear that the federal government *did not* guarantee pre-conservatorship Fannie Mae's securities or debt obligations.  By statute, securities issued by pre-conservatorship Fannie Mae (and its counterpart Freddie Mac) must contain an *explicit disclaimer* that they are "not guaranteed by the United States and do not constitute a debt or obligation of the United States."  12 U.S.C. § 1719(b) (as to certain Fannie Mae obligations); *id.* § 1719(d), (e) (as to Fannie Mae mortgage-backed securities and pre-conservatorship Fannie Mae subordinated or convertible obligations); *see also id.* § 1455(h) (as to Freddie Mac obligations and mortgage-backed securities).  In that respect, Fannie Mae appears even less "governmental" than national banks, whose deposit borrowings are expressly guaranteed by the FDIC.

2.    **Post-*Lebron* Authority Holds that Freddie Mac Is a Private Actor for Purposes of Constitutional Claims**

Although no court has had the opportunity to determine whether pre-conservatorship Fannie Mae was a government actor under the *Lebron* framework, the Ninth Circuit held that the similarly-situated pre-conservatorship Freddie Mac was, for purposes of a constitutional claim, *not* a government actor under *Lebron*.  In *American Bankers Mortgage Corporation v. Federal Home Loan Mortgage Corporation*, 75 F.3d 1401, 1405 (9th Cir. 1996), Freddie Mac terminated American Bankers as a mortgage loan seller/servicer and American Bankers filed suit alleging that Freddie Mac violated its Fifth Amendment due process rights.  The court observed that pre-conservatorship Freddie Mac was a congressionally chartered corporation whose purposes were "federal government objectives," in that the congressional purposes were "clearly designed to serve the public interest by increasing the availability of mortgages on housing for low- and moderate- income families and by promoting nationwide access to mortgages."  *Id.* at 1406-07. Despite the fact that Freddie Mac was created by Congress and served important public interests, the Ninth Circuit concluded that "upon an application of *Lebron*  principles, . . . Freddie Mac is not a government agency subject to the Fifth Amendment Due Process Clause."  *Id.* at 1409. There is no material distinction between pre-conservatorship Freddie Mac and pre-conservatorship Fannie Mae; under the Ninth Circuit's analysis in *American Bankers*, pre-conservatorship Fannie Mae could not be a government actor for purposes of constitutional claims under the *Lebron* framework.

3.    **In Pre-*Lebron* Decisions That Remain Valid, Pre-Conservatorship Fannie Mae Was Consistently Held Private, Not Governmental, for Purposes of Constitutional Claims**

Before *Lebron*, courts held that Fannie Mae—despite its congressional creation, public mission, and government regulation—was a private actor for purposes of constitutional claims.

13

For example, in *Northrip v. Federal National Mortgage Association*, 527 F.2d 23, 30 (6th Cir. 1975), the Sixth Circuit rejected a claim that pre-conservatorship Fannie Mae was a federal actor subject to the Due Process Clause of the Fifth Amendment.  Similarly, in *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359 (5th Cir. 1977), the Fifth Circuit rejected a due process claim brought by a borrower against pre-conservatorship Fannie Mae for commencing a non-judicial foreclosure.[4]  These decisions remain valid in light of *Lebron*.  Indeed, *American Bankers*—the post-*Lebron* Ninth Circuit decision holding Freddie Mac to be a private actor for purposes of constitutional claims (discussed *supra*)—relies expressly on *Northrip* and *Roberts*, confirming their continued vitality.  *See Am. Bankers*, 75 F.3d at 1408-09 (citing *Northrip*, 527 F.2d at 30; *Roberts*, 556 F.2d at 359).

### 4.  National Banks and Other Federally Chartered and Supervised Financial Institutions That Serve a Public Mission Are Considered Private Actors for Purposes of Constitutional Claims

As demonstrated by *American Bankers*, an entity may be created by Congress to serve important public purposes and be subject to extensive government regulation, and yet be a private actor for purposes of constitutional claims under *Lebron*.  The national banks are a prime example.[5]  Indeed, in *Rannels v. Meridian Bancorp, Inc.*, 718 F. Supp. 10, 11 (E.D. Pa. 1989), the district court concluded that "[t]he existence of federal and state banking regulations and [the bank's] purchasing FDIC insurance is not sufficient to transform the private conduct of [the bank] into state action," and noted that courts therefore "have uniformly held that conduct by banks is not state action."  *Id.* at 13.  Similarly, in *Apao v. Bank of New York*, 324 F.3d 1091 (9th

---

[4]  Pre-*Lebron* decisions similarly held that Fannie Mae's counterpart, Freddie Mac, was not a federal actor subject to constitutional restraints.  *See, e.g., Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.*, 822 F. Supp. 956, 957 (E.D.N.Y. 1993).

[5]  *See Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409, 413 (1873) ("National banks have been National favorites.  They were established for the purpose, in part, of providing a currency for the whole country, and in part to create a market for the loans of the General government.").

Cir. 2003), a borrower who lost her home to foreclosure asserted a Fourteenth Amendment due process claim against the bank. The court rejected the borrower's argument, holding that "the development of the extensively regulated secondary mortgage market does not convert the private foreclosure procedures at issue here into state action." *Id.* at 1095. As these decisions confirm, because national banks are not government entities, they are not subject to liability for constitutional torts.[6]

For similar reasons, Federal Home Loan Banks have been held to be private actors for purposes of constitutional claims despite their federal charters, public missions, and extensive government supervision. For example, in *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir. 1993), the Fourth Circuit held that the FHLB of Atlanta was not a government actor for purposes of constitutional claims. There, a former FHLB employee alleged that he was terminated from his position for criticizing the FHLB's policies, in violation of his First Amendment rights. The Fourth Circuit noted that "[i]n order to establish a violation of the First Amendment, [the plaintiff] must first show that the federal government was responsible for the termination of his employment." *Id.* at 216.[7] Rejecting plaintiff's argument that "the Bank was

---

[6]     *See also Bailey v. Harleysville Nat'l Bank & Trust*, No. 05-4352, 2006 WL 2009329, at *2 (3rd Cir. July 18, 2006) (unreported) (rejecting plaintiff's constitutional claim because the bank was "not a state actor by virtue of its regulation by the government and participation in the federal reserve system and Federal Deposit Insurance Corporation"); *Johnson v. Nat'l City Bank Corp.*, Civ. A. No. 3:09CV-490-S, 2010 WL 569844, at *2 (W.D. Ky. Feb. 12, 2010) (rejecting Fourteenth Amendment claim because "National City Bank is a private organization, not a government entity"); *Panis v. Mission Hills Bank, N.A.*, Civ. A. 92-2391-EEO, 1993 WL 390399, at *4 (D. Kan. Sept. 30, 1993) ("Although Mission Hills Bank is a national bank, it is a private organization, not a governmental entity. Courts have repeatedly rejected arguments that national banks are state actors for purposes of *Bivens* or section 1983 actions.").

[7]     Ms. Herron does not allege that anyone in the federal government played any role in the termination of Ms. Herron's consultancy. Rather, she alleges that Fannie Mae terminated the relationship. *See, e.g.*, Compl. (Dkt. No. 1) ¶ 9 ("Doe" defendants are all "Fannie Mae officials"); *id.* ¶ 97 (parties who allegedly conspired against Ms. Herron include Fannie Mae and Fannie Mae employees only); *id.* ¶ 116 ("Fannie Mae terminated [Ms. Herron's] employment and prevented her re-hire"). Ms. Herron thereby concedes that the *Bivens* claim must be

Footnote continued on next page

an agent or instrumentality of the federal government," the Fourth Circuit held that the plaintiff's

"termination was the act of the Bank, and it cannot be fairly attributed to the . . . federal

government" because the Bank was not a government actor for purposes of constitutional claims:

> Many of the indicia of the Bank's operations are characteristic of a private
> institution:  the Bank is privately funded, privately owned, and it pays out
> its profits to its shareholders in the form of quarterly dividends.  The Bank
> provides private banking services, such as lending money, issuing letters
> of credit, and serving as a trustee.  The Bank's employees are not in the
> civil service and are not employees of the federal government.  There is
> thus ample reason to conclude that, despite its federal charter, the Bank
> operates more like a private entity than as a part of the federal government
> . . . . It is clear that Congress intended that the Home Loan Bank system be
> owned and operated in the main by member institutions rather than the
> federal government.

*Id.*[8]; s*ee also Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253 (D. Kan. 2005) (applying *Lebron*

and dismissing *Bivens* claim because FHLB-Topeka not a federal actor for purposes of

constitutional claims).

As all of these decisions demonstrate, the attributes Ms. Herron has suggested she will

rely upon to support her claim that Fannie Mae is a government actor—a federal charter, a public

mission, and extensive government regulation—have been repeatedly held not to warrant treating

financial institutions generally similar to Fannie Mae as government actors for purposes of

constitutional claims.

*          *          *

---

Footnote continued from previous page

dismissed unless Fannie Mae is deemed a government actor for purposes of the claim.  *See
Morast v. Lance*, 807 F.2d 926, 931 (11th Cir. 1987) (former bank executive's *Bivens* claim
properly dismissed where "[t]he federal government played no part in the [other bank
executives'] decision to fire [plaintiff]").

[8]    Although the *Andrews* decision predates *Lebron*, the Fourth Circuit has cited it since for the
same proposition, confirming that *Andrews* remains good law.  *See Debauche v. Trani*, 191 F.3d
499, 507 (4th Cir. 1999) (citing *Andrews*).

16

In short, after its privatization in 1968, courts consistently held that pre-conservatorship Fannie Mae (and its counterpart, Freddie Mac) were not government actors for purposes of constitutional claims. Both before and after the Supreme Court's decision in *Lebron*, courts recognized that pre-conservatorship Fannie Mae—along with a wide variety of federally chartered and regulated institutions serving public goals and missions—were not sufficiently governmental as to become liable for constitutional torts like the ones Ms. Herron alleges.

Hence, when FHFA placed Fannie Mae into conservatorship in September 2008, the agency stepped into the shoes of a *private* corporation that is not a government actor for purposes of constitutional claims. As we demonstrate *infra* in section I.B, the imposition of conservatorship cannot as a matter of law impose government-actor status onto Fannie Mae; rather, Fannie Mae retained its pre-conservatorship status as a private actor for purposes of constitutional claims.

### B. Conservatorship Cannot Make Fannie Mae a Government Actor for Purposes of Constitutional Claims

When federally chartered financial institutions such as national banks, federal savings associations, and enterprises such as Fannie Mae are in critical financial distress, they do not go through bankruptcy; rather, they are placed in federal conservatorship or receivership. Analogous to the appointment of a federal bankruptcy trustee, a federal conservator or receiver assumes day-to-day operational control over a failing or failed federally chartered financial institution.[9] The conservator or receiver then assumes all the powers and responsibilities of the

---

[9]   While there is necessarily some overlap between the two, conservatorship is generally directed toward the eventual resumption of the entity's private business activity while receivership is generally directed toward cessation of the entity's business through liquidation or winding up. As one court explained, "a conservator is a person or entity, including a government agency, appointed by a regulatory authority to operate a troubled financial institution in an effort to conserve, manage, and protect the troubled institution's assets until the institution has stabilized or has been closed by the chartering authority," while "a receiver is an agent appointed

Footnote continued on next page

17

shareholders, board of directors, and management for purposes of either preserving or conserving

the assets of the failing financial institution if eventual restoration to financial viability is deemed

feasible, or liquidation and distribution of the failed institution's assets and liabilities.  The

conservator or receiver assumes the separate identity of the entity in conservatorship—*i.e.*, when

acting as conservator or receiver the agency "steps into the shoes" of the regulated corporation,

but not *vice versa*.  Hence, as Acting Director DeMarco explained to Congress—and as the legal

authorities discussed *infra* confirm—"Fannie Mae and Freddie Mac . . . are still private companies

operating in conservatorship.  They did not cease to be private legal entities when they were placed

into conservatorship, *nor did they become part of FHFA*."  Statement of Edward J. DeMarco, Acting

Director, Federal Housing Finance Agency, Before the U.S. House of Representatives Subcommittee

on Capital Markets, Insurance, and Government-Sponsored Enterprises, "Transparency, Transition

and Taxpayer Protection: More Steps to End the GSE Bailout," at 8-9 (May 25, 2011) (emphasis

added).

### 1.    Conservatorship Preserves the Private Status of the Entity in Conservatorship

The relevant provision of the Housing and Economic Recovery Act of 2008 ("HERA"),

12 U.S.C. § 4617(b)(2)(A)(i), provides that the Conservator, immediately upon the inception of

conservatorship, succeeds to "all rights, titles, powers, and privileges of the regulated entity, and

of any stockholder, officer, or director."  In *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87

(1994), the Supreme Court construed the materially identical language of 12 U.S.C.

§ 1821(d)(2)(A)(i), which applies to FDIC receiverships, as "indicat[ing] that the FDIC as

---

Footnote continued from previous page

by a failed institution's primary federal regulator to manage the orderly liquidation of the failed
institution."  *Ameristar Fin. Servicing Co., LLC v. United States*, 75 Fed. Cl. 807, 808 nn.2, 3
(2007) (quotation marks and citations omitted).  HERA grants conservators certain authority to
wind-up entities in conservatorship while nevertheless preserving the distinction in objectives
between conservatorships and receiverships.

receiver 'steps into the shoes' of the [pre-existing institution], obtaining the rights 'of th[e] institution' that existed prior to receivership."  Accordingly, the appointment of the FDIC as conservator or receiver of a financial institution does not convert the institution into part of the government.  Likewise, upon the inception of the Fannie Mae conservatorship, the FHFA Conservator assumed Fannie Mae's private attributes.  Fannie Mae did not thereby become a government actor for purposes of constitutional claims, and when FHFA acted in its capacity as Conservator it was not functioning as a government actor for such purposes.

Indeed, courts have repeatedly held that when a conservator or receiver acts in such capacity it is not a government actor, including for purposes of constitutional claims. Ms. Herron has pled her *Bivens* claim against employees of Fannie Mae—the entity in conservatorship—not against the FHFA as Conservator.  However, a claim against the entity in conservatorship is functionally a claim against the conservator.  *See O'Melveny*, 512 U.S. at 86 ("by operation of law, receiver succeed[s] to all rights, titles powers, and privileges of the insured depository institution.").  Hence, decisions holding that a government agency exercising its congressionally granted authority as conservator or receiver is properly deemed a non-government-actor confirm *a fortiori* that Fannie Mae remains a private actor notwithstanding the conservatorship—since the Conservator itself is not considered a government actor for purposes of constitutional claims, Fannie Mae cannot become a government-actor for such purposes by virtue of being in conservatorship.  For example, in *United States v. Beszborn*, 21 F.3d 62, 67-68 (5th Cir. 1994), the Resolution Trust Corporation ("RTC"), acting as receiver of and successor to a failed bank, pursued a civil action against former officers and directors of the bank, ultimately receiving a judgment that included an award of punitive damages.  When the government subsequently brought criminal charges against the same individuals relating to the same conduct,

19

the individuals asserted that the Double Jeopardy Clause barred the prosecution because the RTC

was a government actor.  The district court agreed, dismissing the indictment, but the Fifth

Circuit reversed on the specific grounds that the RTC receiver—acting as successor to the

bank—was not a government actor for purposes of constitutional claims.  As the Court of

Appeals explained:

> The RTC is an entity created by the Federal Government to handle the
> affairs of a failed financial institution.  *Although the RTC was created by
> the Government, it has a non-governmental function* in the initial stages of
> reorganization of a financial institution. . . .  The RTC took over the
> operations of the bank in its capacity as receiver or conservator.  It is well
> settled in the law that the RTC may function in a corporate or regulatory
> capacity or in a capacity as receiver.  The separateness of these dual
> identities has been well recognized in this circuit and others.  *The RTC as
> receiver of an insolvent financial institution stands in the shoes of the bank
> assuming all debts of the bank*.

*Id*. at 68 (emphasis added).  Hence, the Fifth Circuit concluded that when acting "*[i]n its

capacity as receiver, the RTC stands as a private, non-governmental entity, and is not the

Government* for purpose of the Double Jeopardy Clause."  *Id*. (emphasis added).

As the district court held in *Schock v. FDIC*, 118 F. Supp. 2d 165, 169-70 (D.R.I. 2000),

this is because "when the FDIC is acting as a receiver it is performing a function normally

accomplished by a private entity rather than a federal agency.  As a receiver, the FDIC does not

act on behalf of the United States government, and it does not perform any function unique to the

federal government.  Instead, it acts on behalf of the failed bank in the interest of that bank's

creditors."[10]  The D.C. Circuit's recent decision in *American National*—in which the court noted

that a "claim against the FDIC-as-receiver" is "a claim against the depository institution for

which the FDIC is receiver"—confirms the point.  *See Am. Nat'l Ins. Co. v. FDIC*, No. 10-5245

---

[10]  *See also FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir. 1971) ("Under the circumstances of
this case we hold that the United States Government and FDIC [as receiver] are not the same
person for purposes of making applicable the hearsay exception.").

(June 24, 2011) (slip op.) at 12 (discussing *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008); citing *O'Melveny*, 512 U.S. at 86).

The same conclusion applies with equal force to conservatorships, as the Court of Federal Claims confirmed in *Ameristar Financial Servicing Co., LLC v. United States*, 75 Fed. Cl. 807 (2007). There, the court noted that "as [a bank's] conservator, the FDIC 'stepped into the shoes' of [the bank] . . . and was not acting as the United States." *Id.* at 812.

Case law from other contexts in which a government officer becomes the temporary or indefinite successor to a private entity confirms that the entity is not thereby transformed into a government actor. For example, courts have recognized that when a state insurance commissioner takes over an insurance company in a capacity such as conservator, receiver, or liquidator, the commissioner and the company under its control do not become government entities. *See, e.g.*, *Williams v. Infra Commerc Anstalt*, 131 F. Supp. 2d 451, 458 (S.D.N.Y. 2001) (Delaware Insurance Commissioner, acting as receiver for an insurance company, could not rely on the rule that state statutes of limitations do not apply against the sovereign, because the receiver was enforcing the "private rights" of the company's "policyholders, stockholders and creditors," and "[t]he fact that [the company] is now in receivership neither changes it into a sovereign entity, nor elevates its rights to public status").

Likewise, when a corporation enters bankruptcy and becomes a debtor-in-possession, "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition," such that a debtor-in-possession may deal with its contracts and

property in the same manner as it could prior to filing. *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984).[11]

Applying these decisions here, it is clear that by placing Fannie Mae into conservatorship and acting in its capacity as Conservator of Fannie Mae, FHFA did not transform Fannie Mae into a government actor for purposes of constitutional claims.

### 2. *Lebron* Requires *Permanent* Government Control for an Otherwise Private Entity to Be Deemed a Government Actor for Purposes of Constitutional Claims

*Lebron* confirms that conservatorship does not transform Fannie Mae into a government actor for purposes of constitutional claims. In *Lebron*, the Supreme Court held that an arguably private corporation may appropriately be deemed a government actor for purposes of constitutional claims only when the government "retains for itself *permanent* authority to appoint a majority of the directors of that corporation." 513 U.S. at 400 (emphasis added). In holding that Amtrak was part of the government, the Court emphasized that "Amtrak is not merely in the *temporary* control of the Government (as a private corporation whose stock comes into federal ownership might be)," but rather was under *permanent* government control. *Id.* at 398 (emphasis added).

Ms. Herron has argued that because FHFA cannot identify a date certain when the conservatorship will end, the conservatorship and its concomitant control over Fannie Mae must

---

[11]   As the D.C. Circuit has recognized, the Bankruptcy Code may serve as a guide for interpreting FIRREA's conservatorship and receivership provisions, which are generally similar to those in HERA. *See Office & Prof'l Emps. Int'l Union Local 2 v. FDIC*, 962 F.2d 63, 68 (D.C. Cir. 1992) (Ruth Bader Ginsburg, J.) (although the "Bankruptcy Rules . . . do not govern of their own force in a FIRREA liquidation," "[i]f FIRREA's claim procedure needs to borrow from another statutory regime," then bankruptcy law is a "promising" course). *See also Nat'l Union Fire Ins. Co. v. City Savs. F.S.B.*, 28 F.3d 376, 387 (3rd Cir. 1994) ("in the absence of more specific legislative authority, in interpreting FIRREA we will apply the definition of 'claim' and 'creditor' contained in the Bankruptcy Code"); *1185 Avenue of the Ams. Assocs. v. RTC*, 22 F.3d 494, 497-98 (2d Cir. 1994) (deeming the Bankruptcy Code to be a "helpful analogy" for determining whether a receiver could repudiate a contract).

be considered permanent for purposes of applying *Lebron*. *See* Mem. in Support of Pl. Opp. to Defs' Motion to Dismiss (Dkt. No. 18, filed Oct. 15, 2011) at 42-43. But *Lebron* conclusively refutes that argument, noting that *temporally indefinite* control does not amount to *permanent* control for these purposes. While the government undoubtedly would have *temporally indefinite* control over "a private corporation whose stock comes into federal ownership," that is the precise example the Court uses to illustrate the *absence of permanent government control* over the corporation. *Lebron*, 513 U.S. at 398.

### 3. The Fannie Mae Conservatorship Is Inherently and Necessarily Temporary

Here, whatever might be argued (or speculated) about the possible duration of the conservatorship, Fannie Mae is not subject to *permanent* control by the government, as the conservatorship did not grant FHFA *permanent* authority to appoint a majority of Fannie Mae's directors. Rather, that authority will last only so long as the conservatorship remains in place. In legislation enacted in 2008, Congress empowered FHFA to act as conservator or receiver of Fannie Mae for purposes of "reorganizing, rehabilitating, or winding up [its] affairs." Stipulation 34 (quoting 12 U.S.C. § 4617(a)(2)). Thus, the governing statute provides that the Conservator exercise its authority pursuant to a resolution—not maintain permanent control over Fannie Mae.

Indeed, FHFA and Treasury have consistently affirmed that the conservatorship is *inherently temporary*:

- FHFA's September 7, 2008 "Fact Sheet" about the conservatorship stated that the conservatorship period will end "[u]pon the [FHFA] Director's determination that the Conservator's plan to restore the Company to a safe and solvent condition has been completed successfully . . . ." Stipulation 38 (citing FHFA, Fact Sheet: Questions and Answers on Conservatorship, at 2 (Sept. 7, 2008), *available at* http://www.treasury.gov-/press-center/press-releases/Documents/fhfa_consrv_faq_090708.pdf).

- On September 7, 2008, FHFA Director James B. Lockhart issued a statement saying that "FHFA will act as the conservator to operate the Enterprises ***until they are stabilized***." Stipulation 46 (citing FHFA, Statement of FHFA Director James B. Lockhart, at 5-6 (Sept. 7, 2008)) (emphasis added).

- On June 3, 2009, FHFA Director Lockhart testified in a congressional hearing that "[t]he form in which Fannie Mae and Freddie Mac exit from the conservatorships once the housing market is stabilized should be addressed by Congress and the Administration." Stipulation 73 (citing Statement of James B. Lockhart III, FHFA Director, Before the House Financial Services Committee Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises, The Present Condition and Future Status of Fannie Mae and Freddie Mac, at 2 (June 3, 2009)).[12] He outlined three options for the Enterprises' future: "government agency, GSE, or fully private firms" and indicated that he is "opposed" to the first option. Statement of James B. Lockhart, at 17. As this statement indicates, permanent government control over the Enterprises is not the existing state of affairs, but only one of multiple options that Congress could implement in the future.

- FHFA's 2009 Report to Congress stated that "[t]he Enterprises operating in conservatorship cannot be a long-term solution" and that "[t]he Enterprises' operational status in conservatorship ***cannot be a permanent state for the Enterprises***." FHFA, Report to Congress, at ii, vi (May 25, 2010) (emphasis added) (attached to Varma Declaration as Exhibit 4). FHFA explained that Fannie Mae had submitted plans "related to the process of emerging from conservatorship." *Id.* at 21.

- FHFA's 2010 Report to Congress reiterated that "[t]he Enterprises cannot remain in conservatorship permanently . . . ." FHFA, Report to Congress, at v (June 13, 2011) (attached to Varma Declaration as Exhibit 5).

- On March 31, 2011, FHFA Acting Director Edward J. DeMarco testified in a congressional hearing that Fannie Mae in conservatorship is "unlikely to continue to exist in its current form." Statement of Edward J. DeMarco Before the U.S. House of Representatives Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises, "Legislative Proposals: Overhaul of Housing-Related Government-Sponsored Enterprises," at 8 (Mar. 31, 2011) (attached to Varma Declaration as Exhibit 6).

Moreover, for budgetary purposes, Fannie Mae's conservatorship has been treated as

temporary. In the proposed Fiscal Year 2012 Budget of the U.S. Government, the Office of

---

[12] The full June 3, 2009 Statement of James B. Lockhart is attached to the Varma Declaration as Exhibit 3.

Management and Budget stated that "[t]he Budget continues to reflect the GSEs as non-budgetary entities in keeping with ***their temporary status in conservatorship***."  Stipulation 156 (quoting OMB, *Fiscal Year 2012: Analytical Perspectives, Budget of the U.S. Government*, at 373 (Feb. 14, 2011)) (emphasis added).[13]

The possibility that FHFA may at some future date place Fannie Mae in receivership to liquidate or "wind up" the company does not make whatever degree of control the Conservator has over Fannie Mae "permanent" for purposes of applying *Lebron*.  If the possibility—or even the certainty—of liquidation or other "winding up" of an entity in conservatorship converted such an entity into a government actor, then the literally hundreds of banks that the FDIC has placed in receivership over the course of the recent financial crises would, under plaintiff's theory, all have become government actors for purposes of constitutional claims.[14]  There is no legal support for such a theory, and the decisions recounted above plainly refute it.  For example, if the fact of receivership had converted the bank at issue in *Beszborn* into a government actor, then the Double Jeopardy Clause would have applied, and the criminal prosecution would have

---

[13]    Although the Congressional Budget Office ("CBO") has decided to include the Enterprises' operations in the federal budget and has said that they are "effectively part of the government" for CBO's purposes, it has not said that the existing government control will be permanent, which is the relevant factor in the *Lebron* analysis.  Stipulation 167 (quoting Congressional Budget Office, Statement of Deborah Lucas, "The Budgetary Cost of Fannie Mae and Freddie Mac and Options for the Future Federal Role in the Secondary Mortgage Market," Hearing before the Committee on the Budget, U.S. House of Representatives, at 2 (June 2, 2011), *available at* http://www.cbo.gov/ftpdocs/122xx/doc12213/06-02-GSEs_Testimony.pdf).  Moreover, the CBO has noted that Fannie Mae and Freddie Mac "are not legally government agencies, and their employees are not civil servants."  Stipulation 169 (quoting Statement of Deborah Lucas, at 7).

[14]    By definition "[a] receiver is an agent appointed by a failed institution's primary federal regulator to manage the orderly liquidation of the failed institution."  *Ameristar Fin. Servicing Co.,* 75 Fed. Cl. at 808 n. 2 (quotation marks and citation omitted).  If the entity who is tasked with the job of *liquidating* a financial institution is not considered to be a government actor, *see* discussion at §I.B.1 *supra*, then certainly a conservator that may restore the independent status of the entity cannot be deemed to be a government actor for constitutional purposes.

been barred, not authorized as the Fifth Circuit held.  Likewise, Washington Mutual would have been transformed into a government actor the minute the FDIC placed the bank into receivership.

>        **4.      The Critical Supervisory Tools of Conservatorship and Receivership Could Not Survive if Subject Entities Were Deemed Government Actors for Purposes of Constitutional Claims**

A determination that entities in conservatorship or receivership are government actors would severely undermine the important, congressionally mandated role of conservators and receivers in addressing troubled financial institutions, and would threaten the congressionally crafted statutory process for resolving troubled financial institutions.

As the Nation's responses to recent banking crises demonstrate, prompt and efficient resolution of troubled and failing financial institutions—almost always effectuated through the conservatorship or receivership process—is critical to the maintenance of public confidence in the Nation's financial system, and therefore to the health and stability of the national economy. Receiverships, for example, possess critical advantages over bankruptcy that permit a faster and more efficient wind-up of failed banks.  *See* FDIC Resolution Handbook, ch. 7, at 67-75, *available at* http://www.fdic.gov/bank/historical/reshandbook/ch7recvr.pdf (attached to Varma Declaration as Exhibit 7).

The conservatorship/receivership model to resolve financial institutions cannot survive if entities in conservatorships or receiverships (or conservators or receivers) are deemed to be federal actors with all the rights and limitations of the government.  Not only would this invite all manner of additional, unmeritorious claims that would reduce the proven benefits of receivership, but also it would almost certainly force Congress to revoke or restructure the receivership process, undermining or eliminating its proven, historic benefits, and limiting the government in its efforts to promptly and efficiently resolve troubled financial institutions and lead the Nation through financial crises.

II.    **FANNIE MAE'S AGREEMENTS WITH THE U.S. TREASURY DO NOT CONVERT FANNIE MAE INTO A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS**

Ms. Herron also has suggested that Treasury's appointment of Fannie Mae as administrator of the Home Affordable Modification Program ("HAMP") through a Financial Agency Agreement ("FAA") or Treasury's entry into a Preferred Stock Purchase Agreement with Fannie Mae somehow convert Fannie Mae into a government actor for purposes of constitutional claims.  That is wrong.

A.    **The Financial Agency Agreement Does Not Affect Fannie Mae's Status as a Private Actor for Purposes of Constitutional Claims**

The FAA that Fannie Mae and the Treasury entered on February 18, 2009 authorizes Fannie Mae to perform certain services related to the administration of HAMP.  Nothing in the Agreement suggests that Fannie Mae is a federal actor.  In fact, the FAA makes clear that Fannie Mae remains *distinct from the government*, with a "fiduciary duty of loyalty to the United States" and potential liability to the Treasury for various acts or omissions.  *See* FAA for a Homeownership Preservation Program under the EESA, §§ 5, 19.  The FAA simply creates a principal-agent relationship between Fannie Mae and Treasury.  Ms. Herron attempts to turn the FAA on its head by arguing that an agency agreement turns Fannie Mae into the government— that is, Fannie Mae becomes the principal.

Although the FAA identifies several requirements for Fannie Mae employees who work on HAMP matters, *see*, *e.g.*, *id.* §§ 3(B), 7(C), 10, it contains no suggestion that Fannie Mae employees involved in HAMP become government employees.  Moreover, with regard to the onboarding of contractors, the Agreement makes clear that contractors of Fannie Mae do not become subcontractors of, or otherwise affiliated with, the United States government:

> The Financial Agent must execute any agreement with a contractor in its own name and not on behalf of the United States or the Treasury and any

27

> such contractor does not become a subcontractor, agent, or subagent of the Treasury. The Treasury shall not be deemed a party to any arrangement or agreement the Financial Agent may enter into with another entity to perform any services under this FAA.

FAA for a Homeownership Preservation Program under the Emergency Economic Stabilization Act of 2008, ¶ 14(B).

The terms of the Agreement are consistent with the long-standing treatment of financial agents as private entities ever since Treasury gained the authority to appoint such agents in the National Bank Act of 1864. This Act permitted Treasury to designate national banks as "depositaries of public money" and "financial agents of the Government." *See* National Bank Act, 38 Cong. ch. 106, 13 Stat. 99, 113 (June 3, 1864). Such designations did not modify the banks' character as private institutions, however. As one court explained not long after the Act was passed:

> Designating a national bank as a depositary of public money under this provision does not change the character of its organization, or convert its managers into public officers, or give to the Government any additional control over the institution, or render the United States liable for any of the acts, contracts, or obligations of the bank. Nor does it constitute the bank a general financial agent of the Government, but when after such designation it is required by law or by direction of the Secretary of the Treasury to perform any financial duties for the United States, it then becomes a special agent for the particular purpose required, with no power to bind the Government beyond the special authority conferred upon it. In short, constituting a national bank a depositary of public money is an employment of the institution for business purposes, as it is employed by individual depositors, and not an assumption of its powers and liabilities by the National Government, nor the making of it, as an institution, a part of the United States Treasury.

*Branch v. United States*, 12 Ct. Cl. 281, 287 (1876), *aff'd*, 100 U.S. 673 (1880).

Over 100 years later, Treasury retains this power, and its appointment of a financial institution as a financial agent of the United States does not make that institution any more public than it did at the time of *Branch*. In *United States v. Citizens & S. National Bank*, 889 F.2d 1067

(Fed. Cir. 1989), commercial banks were appointed to be "financial agents" of the Treasury in order to implement a system of cash concentration and deposit. As the Federal Circuit explained, "the government as principal and in its sovereign capacity delegates to its financial agents some of the sovereign functions that the government itself would otherwise perform." *Id.* at 1069. In other words, the commercial banks performed some of the government's "sovereign functions," but there was no contention that as agent they actually became part of the government. Treasury currently has financial agency agreements with over a dozen financial institutions in connection with the implementation of the EESA, including The Bank of New York Mellon, Lazard Fréres & Co., AllianceBernstein L.P., and Morgan Stanley & Co., none of which is even arguably a government entity.[15] In short, the FAA reinforces the separate identity of the government and Fannie Mae. Indeed, no agreement would be necessary if Fannie Mae were a government entity.

### B. The Preferred Stock Purchase Agreement Does Not Affect Fannie Mae's Status as a Private Actor for Purposes of Constitutional Claims

The Senior Preferred Stock Purchase Agreement between Treasury and Fannie Mae (the "PSPA") does not convert Fannie Mae into a public entity. At the outset, it is important to establish exactly what the PSPA accomplishes. Contrary to what Ms. Herron has asserted, the government does not "own eighty percent of [Fannie Mae's] stock." Compl. ¶ 115. Rather, the PSPA provides Treasury with a warrant to purchase 79.9% of the total number of shares of

---

[15]   *See* Dep't of the Treasury, About Financial Stability (last visited June 25, 2011), http://www.treasury.gov/initiatives/financial-stability/about/procurement/faa/Pages/faa.aspx (attached to Varma Declaration as Exhibit 8). Treasury has "active" financial agreements with 14 institutions: Fannie Mae; Freddie Mac; AllianceBernstein L.P.; Bell Rock Capital, LLC; EARNEST Partners; FSI Group, LLC; Greenhill & Co., LLC; Howe Barnes Hoefer & Arnett, Inc.; Lazard Fréres & Co. LLC; Lombardia Capital Partners, LLC; Paradigm Asset Management Co., LLC; Perella Weinberg Partners LP; Piedmont Investment Advisors, LLC; and The Bank of New York Mellon. It has "inactive" financial agreements with Avondale Investments, LLC; KBW Asset Management, Inc.; and Morgan Stanley & Co. Inc.

29

Fannie Mae Common Stock outstanding on the date of exercise at a nominal price. *See*

Stipulation 93 (quoting Fannie Mae, Form 10-K for 2009, at 31-32 (Feb. 26, 2010)). As of the

date of this Motion, Treasury has not exercised this warrant and therefore does not "own" nearly

80% of Fannie Mae's common stock. The PSPA also requires Treasury to provide funding to

Fannie Mae to ensure a positive net worth, in exchange for shares of Senior Preferred Stock that

pay a 10% dividend to Treasury (or a 12% dividend if the dividends are not paid in cash). *See*

Stipulation 55 (quoting Treasury, "Fact Sheet: Treasury Senior Preferred Stock Purchase

Agreements," at 1-2 (Sept. 7, 2008)). Senior Preferred Stock confers no voting rights on

Treasury. *See id.*[16]

Treasury's warrant to purchase 79.9% of Fannie Mae's common stock and its ownership

of non-voting Senior Preferred Stock do not constitute government ownership of Fannie Mae.

During past financial crises, the government has invested in banks in exchange for warrants or

preferred stock, yet no court has held that such banks became government actors. During the

2008 financial crisis, Treasury, the FDIC and the Federal Reserve provided assistance to

institutions such as Citigroup and Bank of America in exchange for preferred stock and

warrants.[17] Similarly, during the savings and loan financial crisis of the 1980s, the Federal

---

[16]    The Senior Preferred Stock Purchase Agreement between Treasury and Fannie Mae creates enforceable rights against Treasury for holders of Fannie Mae's senior and subordinated debt and mortgage backed securities. *See* Stipulation 69 (citing Federal Housing Finance Agency, "Mortgage Market Note 09-1: U.S. Treasury Support for Fannie Mae and Freddie Mac," at 2 (Feb. 18, 2009), *available at* http://www.fhfa.gov/webfiles/1240/mmnote091_218091.pdf).

[17]    On January 15, 2009, Treasury, the FDIC and the Federal Reserve reached agreement to provide assistance to Citigroup. As part of the deal, the FDIC received 3,025 shares of Citigroup's designated cumulative perpetual preferred stock, with a liquidation preference of $1 million per share and quarterly dividends payable to the FDIC at a rate of 8% annually. On January 16, 2009, Treasury, the FDIC, and the Federal Reserve reached an agreement to provide assistance to Bank of America. In exchange for its assistance, the FDIC received a liquidated preference amount of $1 billion in Bank of America preferred stock (with an 8% dividend rate) and warrants. *See* FDIC, 2008 Annual Report, at 100 (June 4, 2009), *available at*

Footnote continued on next page

Savings and Loan Insurance Corporation ("FSLIC"), FDIC, and RTC invested in financial institutions in exchange for preferred stock and/or warrant, typically as part of an assisted acquisition of an institution that had been placed into receivership. Such acquisitions generally involved the infusion of new capital into the institution by both the government and the acquiring party, with the government sometimes obtaining warrants, preferred stock, or both in exchange for its contribution. Attached as Appendix A is a chart that shows samples of several such transactions that are discussed in reported judicial opinions.

The government's investment in these financial institutions did not convert the institutions into government entities. On the contrary, the purpose of the government investment was to ensure that the institution could be acquired by another *private* party. Here, similarly, government investment in Fannie Mae's preferred stock is intended to keep Fannie Mae solvent, and Treasury's compensation comes in the form of dividends, not in the form of permanent ownership of Fannie Mae.

Moreover, any argument that Treasury's ownership of warrants to purchase common stock and of non-voting senior preferred stock is the equivalent of common stock ownership is not only incorrect, but also beside the point because *Lebron* makes clear that even temporary government ownership of a controlling block of common stock is not enough to make an entity "public." *See Lebron*, 513 U.S. at 398 (emphasizing that "Amtrak is not merely in the *temporary* control of the Government (as a private corporation whose stock comes into federal ownership might be)," but rather was under permanent government control); *see also supra* Section I.B.2-3.

---

Footnote continued from previous page

http://www.fdic.gov/about/strategic/report/2008annualreport/ARfinal.pdf (attached to Varma Declaration as Exhibit 9).

Neither Treasury's possession of the warrants (which are void after September 7, 2028[18]) nor its ownership of the Senior Preferred Stock (which Fannie Mae can redeem whenever it has the funds to do so, with the dividends serving as an incentive to redeem the Stock promptly) is intended to be permanent.  Therefore, even if Ms. Herron's incorrect assumption that Treasury "owns" Fannie Mae through the Senior Preferred Stock and warrants were correct, Fannie Mae still would not be a government actor under *Lebron*.

Through EESA, Congress authorized the Treasury to infuse capital (through the Troubled Asset Relief Program) into certain kinds of firms as a means of stabilizing the financial system and protecting the national economy from ruin.  This is nothing new; in prior decades, as the decisions enumerated in Appendix A confirm, the government has similarly invested in financial institutions as a means of weathering serious financial crises.  If such investments converted the recipient institutions into government actors for purposes of constitutional claims, the federal government's liability would increase exponentially.  To avoid that outcome, the federal government in all likelihood would simply stop making such investments, thereby depriving the Nation of one of its most proven and practical tools for timely intervention to avert or at least mitigate severe harm to the national economy.  As a matter of policy and national interest, therefore—and as the Supreme Court unambiguously held in *Lebron*—government investment in an otherwise private firm cannot convert that firm into a government actor for purposes of constitutional claims.

## CONCLUSION

For all of the reasons set forth herein, Fannie Mae is not part of the government and, under *Lebron,* is not a government actor for purposes of constitutional claims.  Accordingly,

---

[18]  *See* PSPA, Ex. B (Sept. 7, 2008) (attached to Varma Declaration as Exhibit 10).

Ms. Herron's allegations fail to state a viable *Bivens* claim and FHFA respectfully urges the

Court to dismiss the *Bivens* claim.

Dated:  June 27, 2011                                    Respectfully submitted:

                                                          __/s/_____
                                                          Howard N. Cayne (D.C. Bar # 331306)
                                                          Asim Varma (D.C. Bar # 426364)
                                                          Michael A.F. Johnson (D.C. Bar # 460879)
                                                          ARNOLD & PORTER LLP
                                                          555 12th Street, N.W.
                                                          Washington, DC  20004
                                                          Telephone:  202-942-5000
                                                          Facsimile:  202-942-5999
                                                          Email:  howard.cayne@aporter.com

                                                          Stephen E. Hart (D.C. Bar # 033379)
                                                          FEDERAL HOUSING FINANCE AGENCY
                                                          1700 G Street, N.W.
                                                          Washington, DC  20552
                                                          Telephone: 202-414-3800
                                                          Facsimile: 202-414-6504

                                                          *Attorneys for the Federal Housing Finance Agency*

**Appendix A**

**Examples of Government Investments in Financial Institutions,
as Reflected in Reported Judicial Opinions**

| Financial Institution | Year of Transaction | Form of Equity | Agency Acquiring Equity Instrument | Opinion |
|---|---|---|---|---|
| Northeast Savings | 1987 | Preferred stock | FSLIC (succeeded by FDIC) | *Ne. Sav., F.A. v. United States*, 91 Fed. Cl. 264 (2010) |
| River Valley Savings Bank, F.S.B. | 1988 | Preferred stock in an amount not to exceed $5 million | FSLIC (succeeded by FDIC) | *Holland v. United States*, 75 Fed. Cl. 483 (2007) |
| Southwest Savings Association | 1988 | Preferred stock; warrants to purchase 382,247 shares of common stock (50% of stock of post-merger SSA) | FSLIC (succeeded by FDIC) | *Caroline Hunt Trust Estate v. United States*, 470 F.3d 1044 (Fed. Cir. 2006) |
| Anchor Savings Bank, FSB | 1990 | Cumulative preferred stock (exchanged by FDIC for senior notes and warrants to acquire the Anchor Bancorp holding company's common stock at $0.01 per share) | FSLIC (succeeded by FDIC) | *Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1 (2008) |
| Citizens Federal Bank | 1986 | Preferred stock (with below-market dividend rates) from Citizens' parent company | FSLIC (succeeded by FDIC) | *Citizens Fed. Bank v. United States*, 66 Fed. Cl. 179 (2005) |
| Continental Illinois Corporation (holding company of Continental Illinois National Bank) | 1984 | Non-voting preferred stock of holding company ($1 billion) | FDIC | *FDIC v. Morley*, 867 F.2d 1381 (11th Cir. 1989) |
| First Federal Savings & Loan Association of Rochester | 1986 | Warrants to purchase common shares equal to 25% of First Federal's issued and outstanding common stock | FSLIC (succeeded by FDIC) | *First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 76 Fed. Cl. 106 (2007) |

| MacAndrews & Forbes d/b/a Gibraltar Savings Association | [No date specified—before 1988] | Warrant to purchase 1,296,524 shares of common stock (exercised by FDIC) | FSLIC (succeeded by FDIC) | *Stowell v. MacAndrews & Forbes*, 956 F.2d 96 (5th Cir. 1992) |
|---|---|---|---|---|
| First Pennsylvania Bank | 1980 | Warrants to purchase common stock (13 million shares) | FDIC | *Zinman v. FDIC*, 567 F. Supp. 243 (E.D. Pa. 1983) |
| American Savings & Loan Association (Stockton, CA) | 1988 | Warrants for purchase of stock in American Savings' holding company | FSLIC (succeeded by FDIC) | *Am. Sav. Bank, F.A. v. United States*, No. 92-872C, 2011 WL 1206472 (Fed. Cl. Apr. 1, 2011) |

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 27th day of June 2011, I caused the foregoing to be electronically filed using this Court's ECF system, which will then send a notification of such filing by electronic mail to counsel of record for plaintiff and defendants:

Lynne Bernabei
David Wachtel
Alan Kabat
BERNABEI & WACHTEL, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7124

Ira T. Kasdan
Joseph D. Wilson
Brooke Fineberg
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007

Damien G. Stewart
FANNIE MAE
3900 Wisconsin Avenue, N.W.
Washington, D.C.  20016-2892



_____/s/_____
Michael A.F. Johnson

36