# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 25, 2014

Via E-mail and ECF

Hon. Denise L. Cote,
 United States District Judge,
  Daniel Patrick Moynihan United States Courthouse,
   500 Pearl Street, Room 1610,
    New York, New York 10007-1312.

     Re: *FHFA* v. *Nomura Holding America Inc.*, *et al.*, 11 Civ. 6201
       (S.D.N.Y.)

Dear Judge Cote:

    Defendants move *in limine* pursuant to Federal Rules of Evidence 402, 403, and 702 to preclude the testimony of plaintiff's re-underwriting expert, Robert Hunter, concerning certain loans backing five of the seven securitizations at issue in this case because Hunter did not re-underwrite those loans according to the standards described in the offering documents. The offering documents represent that these loans were originated "generally" in accordance with the specific "underwriting criteria described" in a two-page section titled "Underwriting Standards." The offering documents did not represent that the loans were originated in accordance with, or complied with, underwriting guidelines of particular originators. Hunter offers opinions only as to whether the loans comply with originators' guidelines, not whether they comply with the disclosure that the loans were originated "generally in accordance with the underwriting criteria described in this section" of the offering documents. His opinions in this respect are therefore irrelevant, would not aid the jury, and, if offered, would confuse the issues, mislead the jury and prejudice defendants.

## BACKGROUND

    Plaintiff's Amended Complaint alleges that the offering documents were false or misleading because the loans backing the securitizations were not underwritten in accordance with lenders' underwriting guidelines. (Ex. A (Amended Complaint) at ¶¶ 77, 78.) Hunter, who is plaintiff's "reunderwriting expert," intends to opine on "whether, with respect to each securitization, a sample of . . . mortgage loans . . . were originated or acquired in accordance with the originators' underwriting guidelines or with

underwriting guidelines approved by the originators." (Ex. B (Hunter Report ) at 1.) The prospectus supplements for five of the securitizations at issue, however, make no representations that certain loans met originator underwriting guidelines.

Instead, those prospectus supplements only describe the underwriting guidelines of originators whose loans comprised more than 20% of the principal balance of all loans backing the securitization. Specifically, the prospectus supplements only represent that the loans purchased from the disclosed originators were "generally originated" in accordance with originators' guidelines. (Ex. C (2006-HE3 Prospectus Supplement) at NOM-FHFA_04620964-972; *see also* Ex. D (2007-1 Prospectus Supplement) at NOM-FHFA_05142020-025; Ex. E (2007-2 Prospectus Supplement) atNOM-FHFA_05591412-415; Ex. F (2007-3 Prospectus Supplement) at NOM-FHFA_04732707-712.) For 2005-AR6, the offering documents made no representations about any originator's guidelines, as Hunter has acknowledged. (Ex. G (2005-AR6 Prospectus Supplement); Ex. H (Deposition of Robert Hunter, November 13, 2014) ("Hunter Tr.") at 159:11-13.)

Instead, for loans from originators whose loans comprised less than 20% of the principal balance of the securitization, each prospectus supplement contained a disclosure that the loans had been underwritten "generally in accordance with the underwriting criteria described in this section" of the prospectus supplement:

> All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and were originated generally in accordance with the underwriting criteria described in this section.

(Ex. C (2006-HE3 Prospectus Supplement) at NOM-FHFA_04620972; Ex. D (2007-1 Prospectus Supplement) at NOM-FHFA_05142025; Ex. E (2007-2 Prospectus Supplement) at NOM-FHFA_05591415; Ex. F (2007-3 Prospectus Supplement) at NOM-FHFA_04732712; *see also* Ex. G (2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894.)

Each prospectus supplement then states that "[g]enerally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower," and that "[i]n the case of certain borrowers with acceptable compensating factors, income and/or assets may not be required to be stated (or verified) in connection with the loan application." (Ex. G (2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894); Ex. C (2006-HE3 Prospectus Supplement) at NOM-FHFA_04620972-973; Ex. D (2007-1 Prospectus Supplement) at NOM-FHFA_05142026; Ex. E (2007-2 Prospectus Supplement) at NOM-FHFA_05591415-416; Ex. F (2007-3 Prospectus Supplement) at NOM-FHFA_04732712-713.) Each prospectus supplement also says that "modified standards" were used that "permit different underwriting criteria" such as higher loan amounts, higher loan-to-value ratios, and "certain other less restrictive parameters," including

"reduced documentation, no-documentation or no-ratio programs, which require less documentation and verification than do traditional full documentation programs."  (Ex. G (2005-AR6 Prospectus Supplement) at NOM-FHFA_04811895-896; Ex. C (2006-HE3 Prospectus Supplement) at NOM-FHFA_04620974; Ex. D (2007-1 Prospectus Supplement) at NOM-FHFA_05142027; Ex. E (2007-2 Prospectus Supplement) at NOM-FHFA_05591416-417; Ex. F (2007-3 Prospectus Supplement) at NOM-FHFA_04732713-714.)  For loans made by originators whose loans comprised less than 20% of the principal balance for a securitization, this section comprises the only disclosures in the offering documents concerning the underwriting criteria used in their origination.[1]

Hunter's report does not mention the representations in the prospectus supplements for 2005-AR6, 2006-HE3, 2007-1, 2007-2, and 2007-3 that certain loans "were originated generally in accordance with the underwriting criteria described" in the prospectus supplements themselves.  Hunter, however, admitted at deposition that he understood that the prospectus supplements "only specifically talked about lenders that met a certain [ ] percentage."  (Ex. H (Hunter Tr.) at 156:19-157:10.)  He further agreed that "[f]or other lenders the underwriting standards were described in a section of the prospectus supplement."  (*Id.* at 157:11-15.)  But Hunter never compared loans from those lenders to the underwriting criteria disclosed in the prospectus supplements.  (*Id.* at 161:10-16.)  His comparison was only to (irrelevant) underwriting criteria that the Offering Documents do not describe and do not represent were applied.

## ARGUMENT

### I.    HUNTER'S OPINIONS ABOUT LOANS FROM ORIGINATORS WHOSE GUIDELINES WERE NOT DISCLOSED IS IRRELEVANT.

Evidence is admissible if it is relevant, meaning that it "make[s] a fact more or less probable than it would be without the evidence," and that fact is of material "consequence."  Fed. R. Evid. 401, 402.  Plaintiff, through its expert Hunter, will attempt to prove at trial that disclosures in the offering documents concerning compliance with underwriting guidelines were false.

---

[1] For two securitizations (2006-FM1 and 2006-FM2), all of the loans backing the securitizations were originated by the same originator (Fremont).  For these deals, the offering documents represented that the loans backing the securitizations were underwritten "generally in accordance with" the guidelines of the originator, and provided a description of the "guidelines believed by the Depositor to have been applied, with some variation."  (Ex. I (2006-FM1 Prospectus Supplement) at NOM-FHFA_04729543; Ex. J (2006-FM2 Prospectus Supplement) at NOM-FHFA_04638395.)  This motion does not address Hunter's opinions as to the loans backing those securitizations.

Hon. Denise L. Cote                                                                      -4-
                                                            Motion *in Limine* No. 3

   For five of the securitizations, however, 2005-AR6, 2006-HE3, 2007-1, 2007-2, and 2007-3, there were no representations that loans made by originators whose guidelines were not disclosed in the offering documents complied with underwriting guidelines of particular originators.  Hunter conceded this at deposition, acknowledging that "no specific underwriter" was mentioned in the description of the applicable underwriting standards in the prospectus supplement for 2005-AR6, and that for the other four deals, the offering documents represented only that loans from originators whose guidelines were not disclosed complied with "the underwriting standards [that] were described in a section of the prospectus supplement."  (Ex. H (Hunter Tr.) at 158:18-159:13; 157:11-15.)

   Hunter also admitted that he did not re-underwrite any loans to the underwriting criteria described in the relevant sections of the offering documents.  (Ex. H (Hunter Tr.) at  157:24-158:17; 161:10-16.)  The opinions Hunter does offer—whether loans met underwriting guidelines of specific originators, or "minimum industry standards" for underwriting[2]—therefore do not address the relevant disclosures in the offering documents for loans whose originators' guidelines were never mentioned.

   Plaintiff's claims are, by definition, limited to false or misleading statements that were made in the offering documents.  *See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (claims under Sections 11 and 12(a)(2) of the Securities Act require false or misleading statement in offering documents); *J&R Mktg., SEP* v. *Gen. Motors Corp.*, 549 F.3d 384, 392-94 (6th Cir. 2008) (affirming dismissal of Securities Act claims where offering document (1) accurately stated issuer's credit rating and did not make representations about the accuracy of the rating agency's opinion, and (2) accurately stated the coupon rate on the bonds and made no representations about the fairness of the rate).  For originators not identified in the offering documents, Hunter's opinions regarding compliance with originator underwriting guidelines do not bear on whether statements actually made in the offering documents were false or misleading.  His opinions to this extent are therefore irrelevant and should be excluded.  Fed. R. Evid. 401, 402.

   Hunter's testimony is also inadmissible under Rule 702, which permits the use of expert testimony only where the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Because Hunter applies different underwriting criteria than were disclosed in the offering documents, his opinion cannot aid the jury in determining a fact of consequence and should be excluded.  *See LaSalle Bank Nat'l Ass'n* v. *CIBC Inc.*, 2012 WL 466785, at *16 (S.D.N.Y. Feb. 14, 2012) (excluding expert re-underwriting testimony as irrelevant when it applied "industry standards" instead of defendants' "compliance with its own guidelines").

---

[2] Defendants also intend to move to exclude, pursuant to Federal Rules of Evidence 402, 403 and 702, and *Daubert* v. *Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), Hunter's testimony as to "minimum industry standards."

Hon. Denise L. Cote                                                              -5-
                                                          Motion *in Limine* No. 3


**II.      IT WOULD BE HIGHLY PREJUDICIAL FOR HUNTER TO TESTIFY ABOUT COMPLIANCE WITH ORIGINATOR UNDERWRITING GUIDELINES ABOUT WHICH NO REPRESENTATIONS WERE MADE.**

             Permitting Hunter to testify about whether loans met originator underwriting guidelines—where the offering documents contained no disclosures about those guidelines—would only confuse the issues, mislead the jury and prejudice defendants.  Under Rule 403, "the court may exclude . . . evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.* (1972 Advisory Committee Notes).

             Here, if Hunter is allowed to opine about whether loans never represented to comply with originator guidelines failed to do so, a jury may improperly decide that those loans were somehow faulty based on criteria having nothing to do with the disclosures actually made in the offering documents.  Such an opinion would not only waste time, but would confuse the central issue before the jury—whether statements in the offering documents were false or misleading.  Because there is no probative value to Hunter's opinion about whether these loans met originator underwriting guidelines, and it presents a great danger of massive (and unfair) prejudice, Hunter's opinion should also be excluded under Fed. R. Evid. 403 and 702.  *See In re Electronic Books Antitrust Litig.*, 2014 WL 1282298, at *13 (S.D.N.Y. Mar. 28, 2014) (excluding expert testimony under Rule 702 where expert applied "misidentifie[d]" pricing standard).


                                                          Respectfully submitted,

                                                          /s/ David B. Tulchin

                                                          David B. Tulchin

cc:      Counsel of Record via ECF