UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                                        :
                         Plaintiff,     :      11cv6195 (DLC)
             -v-                        :
                                        :        CORRECTED
BANK OF AMERICA CORPORATION, et al.,    :      OPINION & ORDER
                                        :
                         Defendants.    :
---------------------------------------- X

APPEARANCES:

For the plaintiff:
Philippe Z. Selendy
Kathleen M. Sullivan
Christine H. Chung
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue, 22nd Floor
New York, New York 10010

For the entity defendants:
Brendan V. Sullivan, Jr.
David S. Blatt
Edward J. Bennett
John McNichols
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

For the individual defendants:
Daniel C. Zinman
Neil S. Binder
Richards Kibbe & Orbe LLP
One World Financial Center
New York, NY 10281

DENISE COTE, District Judge:

    An Order of November 28 denied defendants' August 17 motion

to dismiss the Amended Complaint in this action (the "August 17

Motion") on the ground that the Court's prior Opinions in the FHFA litigation "comprehensively address the arguments in support of dismissal raised by the defendants" in this case (the "November 28 Order").  On December 5, defendants moved for reconsideration of the November 28 Order, arguing that "none of the Court's prior opinions, including opinions issued after Defendants filed their Motion," addressed their argument "that Plaintiff's claims for ten of the certificates at issue are barred because Plaintiff alleges that the [GSEs] purchased those certificates before defendants made the allegedly actionable statements."  For the reasons that follow, defendants' December 5 motion for reconsideration is granted; their August 17 motion to dismiss is denied.[1]

BACKGROUND

This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period

---

[1] This Opinion is issued to replace and correct an Opinion issued on December 18, 2012.  The change is the elimination of the final paragraph in the final section of the Opinion addressing Section 12(a)(2).

between 2005 and 2007.[2]  As amended, the complaints in each of

the FHFA actions assert that the Offering Documents used to

market and sell Residential Mortgage-Backed Securities ("RMBS")

to one or both of the GSEs during the relevant period contained

material misstatements or omissions with respect to the owner-

occupancy status, loan-to-value ("LTV") ratio, and underwriting

standards that characterized the underlying mortgages.  On the

basis of these allegations, the complaints assert claims under

Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15

U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code

Ann. § 13.1-522(A)(ii), (C); and the District of Columbia

Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of

the cases, though not this one, the Agency has also asserted

---

[2] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11
Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ.
6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al.,
11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ
6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192
(DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193
(DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195
(DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA
v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v.
Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC);
FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201
(DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202
(DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC);
FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally
Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General
Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also
brought two similar actions, which are pending in federal courts
in California and Connecticut.  See FHFA v. Countrywide
Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.);
FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D.
Conn).

common law claims of fraud and aiding and abetting fraud against certain entity defendants (the "Fraud Claim Cases"). As pleaded, these fraud claims attach to each of the three categories of misstatements upon which the plaintiff's securities law claims are based.[3]

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[4] Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases. Briefing of defendants' motions to dismiss in the remaining

---

[3] As noted in previous Opinions, the plaintiff also pleads defendants' statements regarding the credit ratings of the Certificates as a separate category of misstatement under the Securities Act and, in the cases with fraud claims, fraudulent representation. The plaintiff's claims in this respect are largely derivative of the three core representations described above.

[4] FHFA v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); FHFA v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); FHFA v. JPMorgan Chase & Co., et al., No. 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., et al., No. 11 Civ. 6202 (DLC), 2012 WL 5351188 (S.D.N.Y. Nov. 8, 2012) ("Merrill"); FHFA v. Deutsche Bank, et al., No. 11 Civ. 6192 (DLC), 2012 WL 5471864 (S.D.N.Y. Nov. 12, 2012) ("Deutsche Bank"); FHFA v. Goldman Sachs & Co, et al., No. 11 Civ. 6198, 2012 WL 5494923 (S.D.N.Y. Nov. 12, 2012) ("Goldman"); FHFA v. Barclays Bank PLC, et al., No. 11 Civ. 6190 (DLC), 2012 WL 5844189 (S.D.N.Y. Nov. 19, 2012) ("Barclays"); FHFA v. Morgan Stanley, No. 11 Civ. 6739 (DLC), 2012 WL 5868300 (S.D.N.Y. Nov. 19, 2012).

fifteen cases has occurred in two phases, with the motions in
Fraud Claim Cases becoming fully submitted on October 11, 2012.
The motions in this case and the remaining nine cases were fully
submitted November 9, 2012.  Depositions are to begin in all
cases in January 2013, and all fact discovery in this matter, 11
Civ. 6195 (DLC), must be concluded by December 6, 2013.  Trial
in this matter is scheduled to begin in January 2015 as part of
the fourth tranche of trials in these coordinated actions.

This case concerns RMBS Certificates allegedly purchased by
the GSEs between September 2005 and October 2007.  Each of the
GSE Certificates pertains to one of 23 securitizations offered
for sale pursuant to one of nine shelf-registration statements.
The lead defendant is Bank of America Corporation ("BOA").
Several corporate affiliates of BOA and associated individuals
are also defendants.  BOA affiliates served as lead or co-lead
underwriter for each of the 23 securitizations at issue, as
depositor for 18 of them, and as sponsor for 17 of those.  Each
individual defendant signed one or more of the Offering
Documents.

DISCUSSION

The argument upon which the defendants seek reconsideration
concerns 10 Certificates issued pursuant to shelf registration
statements and base prospectuses filed between December 22, 2004

and December 22, 2005.[5]  Within days of the settlement of the GSES' contracts for purchase of each of the 10 Certificates, a final prospectus was filed with the SEC on Form 424B5 (the "Final Prospectus" or "424B5 Prospectus").  The Amended Complaint in this action asserts Securities Act claims on the basis of allegedly false statements contained within these Final Prospectuses.  As noted, defendants argue that the plaintiff may not recover under either Section 11 or Section 12(a)(2) for these "pre-committed Certificates."

This Court has repeatedly emphasized that neither Section 11 nor Section 12(a)(2) "requires allegations of scienter, reliance, or loss causation in order to state a claim."  UBS I, 858 F. Supp. 2d at 323 (emphasis supplied); see also Merrill, 2012 WL 5451188, at *4 ("[Section 12(a)(2)] does not require a showing of reliance."); Rombach v. Chang, 355 F.3d 164, 169 n.4 ("Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the . . . reliance element[] of a fraud action."); NECA-IBEW Health & Welfare Fund, 693 F.3d 145, 156

---

[5] The 10 certificates are: STALT 2005-1F (Settlement: 12/30/2005; Prospectus Supplement Filed: 1/5/2006); ABFC 2006-OPT2 – Tranche A1 (10/12/2006; 10/16/2006); ABFC 2006-OPT2 – Tranche A2 (same); ABFC 2006-OPT3 – Tranche A1 (11/14/2006; 11/15/2006); ABFC 2006-OPT3 – Tranche A2 (same); ABFC 2007-WMC1 (11/5/2007; 11/7/2007); ABFC 2006-HE1 (12/14/2006; 12/15/2006); BAFC 2006-H (9/29/2006; 10/2/2006); BAFC 2007-C (4/30/2007; 5/1/2007); and NSTR 2007-C (6/7/2007; 6/11/2007).

(2d Cir. 2012) ("Neither scienter, reliance, nor loss causation is an element of § 11 or § 12(a)(2) claims.")

I.   Section 11

Defendants do not dispute that a plaintiff asserting claims under Sections 11 or 12(a)(2) is not required to plead reliance. Rather, relying on Eleventh Circuit precedent, they suggest with regard to Section 11 that the statute creates a presumption that a person acquiring a security has been harmed by her reliance on a defective registration statement.  This presumption, they contend, may be overcome where the defendant can show that "reliance is rendered impossible by virtue of a pre-registration commitment" to purchase the securities at issue.  APA Excelsior III LP v. Premiere Technologies, Inc., 476 F.3d 1261, 1272-77 (11th Cir. 2007).

In Premier Technologies, investors with access to inside information made a legally binding investment commitment months before the filing of a registration statement.  Id. at 1277. The Eleventh Circuit held that Section 11 presumes an investor's reliance on a publicly filed registration statement, id. at 1272, and that the plaintiffs were "not entitled to the presumption in light of the timing of their investment decision and commitment."  Id. at 1273.

Defendants' argument finds no support in the law of this Circuit or in the text of the statute. Section 11 provides that, subject to certain limitations not relevant here,

> [i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact . . . , any person acquiring such security . . . may . . . sue."

15 U.S.C. § 77k(a). As the Second Circuit has recognized, this provision "provides the purchasers of registered securities with strict liability protection for material misstatements or omissions in registration statements filed with the SEC." In re Lehman Bros. Mortgage-Backed Secs. Litig., 650 F.3d 167, 175 (2d Cir. 2011).

Defendants' suggestion that Section 11 contains an implicit reliance requirement is unsupported by the statute's text, which authorizes a cause of action for "any person" acquiring a security sold pursuant to a defective registration statement, without any indication that reliance is generally required or presumed. Section 11 is not silent on the topic of reliance, however. Rather, the statute identifies reliance as an additional element that a plaintiff must prove in cases where she seeks to recover with respect to securities she purchased "after the issuer has made generally available to its security holders an earning statement" covering the period one-year after

the offering.  15 U.S.C. § 77k(a).[6]  As the GSEs' purchases do not fall within this exception, however, the reliance requirement is inapplicable.

Defendants' argument is also undercut by the fact that the text of Section 11 does reference a rebuttable presumption of the type they describe, but it is one that concerns loss causation rather than reliance.  As noted, in order to state a claim under Section 11, a plaintiff need not allege that any loss in value of her securities was caused by the defendant's misstatements.  Rather, Section 11 "presumes that any diminution in value is attributable to the alleged misrepresentations, and places the burden on defendants to disprove causation."  NECA-IBEW Health & Welfare Fund, 693 F.3d at 167.  But, as noted, this presumption, and the possibility of rebutting it, are explicitly referenced in the statute.  See 15 U.S.C. § 77k(e) ("[I]f the defendant proves that any portion or all of [plaintiff's] damages represents other than the depreciation in value of such security resulting from such part of the registration statement[ ] with respect to which [defendant's]

---

[6] Even where this requirement applies, however, a plaintiff may establish reliance "without proof of the reading of the registration statement."  15 U.S.C. § 77k.  Given that Section 11 permits a plaintiff to establish reliance by showing that her purchase was motivated by representations in a document she never read, it might well be argued that a plaintiff who commits to purchase securities based on representations regarding an as-yet-unfiled prospectus supplement could equally be said to have relied on that document.

liability is asserted, . . . such portion of or all such damages shall not be recoverable.").  The absence of any similar language with regard to reliance reinforces the conclusion that, contrary to the defendants' argument, Congress did not intend reliance to be a factor in assessing Section 11 claims of the type at issue here.

Defendants' effort to argue that FHFA's Section 11 claims are barred with respect to securities the GSEs agreed to purchase after the filing of a shelf registration statement but just days before the filing of a Final Prospectus is particularly ironic, because such a factual scenario became possible because of recent regulatory reforms designed, in part, to facilitate the offering process for issuers and underwriters. Section 5(b) of the Securities Act prohibits the sale or delivery after sale of any registered security by means of interstate commerce unless accompanied or preceded by a prospectus that meets SEC requirements.  15 U.S.C. § 77e(b). Prior to 2005, SEC rules permitted participants in a securities offering to make written offers only through a prospectus meeting all of the requirements of Section 10(a) of the Securities Act and on file with the SEC.  SEC Release No. 75, 85 S.E.C. Docket 2871, 2005 WL 1692642, at *17 (July 19, 2005) ("2005 Release").  This was a fairly onerous requirement, because, in order to satisfy Section 10(a), a prospectus must

make detailed disclosures about the securities at issue and, in the case of asset-backed securities, the underlying asset pools. See UBS II, 2012 WL 2400263, at *2; Regulation S-K, 17 C.F.R. § 229.10 et seq.; Regulation AB, 17 C.F.R. § 229.1100 et seq.

As explained in the 2005 Release, the reforms were intended to advance the SEC's continuing efforts "toward integrating disclosure and processes under the Securities Act and the Securities Exchange Act of 1934," 2005 Release, 2005 WL 1692642, at *1, with the hope that the added flexibility given to issuers and underwriters in the marketing of their securities would "promote efficient capital formation, without diminishing investor protection." Id. at *122.  Having determined that written communications during the offering process were "unnecessarily restricted," the SEC elected to expand upon its preexisting existing shelf-registration rules to allow certain issuers "to make written offers outside the statutory prospectus" -- i.e. without providing the full panoply of required disclosures -- and beyond those previously permitted by the Securities Act.  Id. at *22, *37; see 17 C.F.R. §§ 230.164, 230.433.  The rules define such a written offer, made after the filing of a registration statement but outside of the statutory prospectus, as a "free writing prospectus."  Id. at *37; see 17 C.F.R. § 230.405.

This liberalized regime is subject to certain important conditions, however.  Among those conditions are requirements that the free writing prospectus direct the recipient to the registration statement and base prospectus on file with the SEC, 17 C.F.R. § 230.433, and that a Final Prospectus containing all information required by statute or regulation be filed on SEC Form 424B5 "no later than the second business day following . . . the date of the determination of the offering price" for a particular security.  17 CFR § 230.424(b)(5) ("Rule 424(b)(5)"); see also 17 CFR § 230.173 (requiring, subject to certain exceptions, that a selling issuer or underwriter "provide to each purchaser from it, not later than two business days following the completion of such sale, a copy of the final prospectus"); 2005 Release, 2005 WL 169642, at *42, *49.

Because, under Section 5(b), the lawfulness of a sale of registered securities is contingent on the issuer's filing a Final Prospectus, the 2005 reforms also included the adoption of Rule 430B, which imposes Section 11 liability for all sales in connection with an offering, including those concluded before the filing of a final prospectus.  Specifically, the rule provides that information omitted from a base prospectus and filed after closing pursuant to Rule 424(b)(5) "shall be deemed to be part of and included in the registration statement on the earlier of the date such subsequent form of prospectus is first

used or the date and time of the first contract of sale of securities in the offering to which such subsequent form of prospectus relates."  17 C.F.R. § 230.430B(f)(1).[7]

The SEC has explained that its purpose in adopting this rule was to provide that "prospectus supplements required to be filed under Rule 424 . . . will, in all cases, be deemed to be part of and included in registration statements for purposes of Securities Act Section 11."  2005 Release, 2005 WL 1692642, at *84 (emphasis supplied); see also id. at *77 ("Information contained in a prospectus or prospectus supplement that is part of a registration statement that is filed after the time of the contract of sale will be part of and included in a registration statement for purposes of liability under Section 11 at the time of effectiveness, which may be at or before the time of the contract of sale.").  Thus, the Securities Act and regulations promulgated thereunder leave no doubt that the FHFA may assert Section 11 claims on the basis of statements included in the Final Prospectus, even for those Certificates the GSEs committed to purchase before those documents were filed.[8]

---

[7]  Defendants argue in their reply brief that this provision of Rule 430B serves only to "harmonize the concepts of registration and bona fide offering for statute of repose purposes," but that function is performed by a distinct subheading.  See 17 C.F.R. § 230.430B(f)(2).

[8] Because the disclosures in the Final Prospectuses were necessary to render the sales to the GSEs lawful, In re Refco,

II.  Section 12(a)(2)

Defendants' argument that the plaintiff's Section 12(a)(2)claims for the ten pre-committed Certificates are likewise barred differs somewhat from their argument with respect to Section 11.  They argue that Section 12(a)(2) imposes a temporal requirement that any communication alleged to contain an untrue statement have occurred before the contract of sale and that, accordingly, the plaintiff cannot assert Section 12(a)(2) claims on the basis of 424B5 Prospectuses filed after the sales of the 10 Certificates.

Section 12(a)(2) imposes liability, subject to certain limitations, on

> [a]ny person who . . . offers or sells a security
> . . . by the use of any means or instruments of
> transportation or communication in interstate commerce
> or of the mails, by means of a prospectus or oral
> communication, which includes an untrue statement of a
> material fact.

15 U.S.C. § 77*l*(a)(2).  Defendants contend that "when a party is committed to carrying out a transaction before the prospectus containing the alleged misrepresentations or omissions is filed, the security was not sold 'by means of' the prospectus."  But a sale procured through the issuance of a free writing prospectus

---

Inc. Sec. Litig., 503 F. Supp. 2d 611, 634-37 (S.D.N.Y. 2007), upon which the defendants rely for their alternative argument that the misstatements for the pre-committed securities were immaterial as a matter of law, is distinguishable on its facts.

is a sale made "by means of" a prospectus covered by Section 12(a)(2).  The sale is made "by means of" the free writing prospectus itself, and when it is filed pursuant to Rule 424(b)(5), by the Final Prospectus embodying the information contained in the free writing prospectus.  After all, the lawfulness of the purchase transactions at issue here was contingent on the defendants' supplementing their shelf registration statements and base prospectuses with the information at issue.  The final 424B5 Prospectuses were thus an essential "means" through which the defendants offered and sold these securities.

The defendants reject the idea that the statute intends the phrase "by means of" in this purely functional sense.  They insist that their temporal interpretation is supported by an SEC rule providing that "for purposes of determining whether a prospectus or oral statement included an untrue statement of a material fact" under Section 12(a)(2), "any information conveyed to the purchaser only after [the] time of sale (including [the] contract of sale) will not be taken into account."  17 C.F.R. § 230.159 ("Rule 159").  But they misread the rule and misunderstand its purpose.

The SEC adopted Rule 159 as part of the 2005 reforms to the securities offering regime discussed above.  As noted, among other things, those reforms liberalized the offering process by

permitting sellers to solicit buyers using free writing prospectuses that do not constitute a full and final prospectus. But, while free writing prospectuses are exempted from limitations on any particular content and from certain filing requirements, the SEC structured the reforms with an eye toward continued protection of investors.  As it explained, Section 12(a)(2) liability was an important component of that investor-protection regime:

> [W]e believe that the liability provisions applicable to free writing prospectuses, particularly Securities Act Section 12(a)(2), and the anti-fraud provision of the federal securities laws, provide protection against material misstatements in and material omissions from information contained in such free writing prospectus.

2005 Release, 2005 WL 169642, at *45.

While recognizing that free writing prospectuses are "subject to disclosure liability" under Section 12(a)(2), 2005 Release, 2005 WL 1692642, at *62, the Commission also concluded that sellers should not be held responsible under that provision for information conveyed to the buyer for the first time after sale but incorporated retroactively into the registration statement.  As the Commission noted, "[t]he date and time that the information is part of the registration statement and the time of effectiveness relate to an investor's rights under Section 11," while Section 12(a)(2) is concerned primarily with false statements in connection with solicitation.  Id. at *77;

16

see also id. at *62.  Rule 159 is intended to maintain that

distinction for information that is required to be disclosed but

may now be filed after the contract of sale.  The SEC has

recognized that one of the rule's consequences is that, in

certain circumstances, "[t]he class of investors that may have a

claim under Section 11 and Section 12(a)(2) may [] be

different."  Id.  Thus,

> [e]ven when filed, a free writing prospectus will not
> be part of a registration statement subject to
> liability under Securities Act Section 11, unless the
> issuer elects to file it as part of the registration
> statement.  Regardless of whether a free writing
> prospectus is filed, [however,] any seller offering or
> selling securities by means of the free writing
> prospectus will be subject to disclosure liability
> under Securities Act Section 12(a)(2).

Id. at *62.

Because, in the wake of the 2005 reforms, conduct creating

liability under Section 12(a)(2) need not create liability under

Section 11, and vice versa, FHFA might have pled its claims with

respect to these 10 Certificates differently.  Rather than

basing its Section 12(a)(2) claims on the final, 424B5

Prospectuses, the Agency might have based them on any free

writing prospectuses that the GSEs received in advance of

closing, as it did its fraud claims in a related action.  See

Deutsche Bank, 2012 WL 5471864, at *2.  See 2005 Release, 2005

WL 1692642, *74 (discussion of asset-backed securities sales).

But Rule 159 does not require that alternative method of

17

pleading.  Notably, the Rule's limitation on liability applies to new "information" communicated to the purchaser after sale, not new documents.  Indeed, the Release that accompanied the Rule indicates that the SEC intended to limit liability for a "final prospectus, prospectus supplement, or Exchange Act filing" only "where the information is not otherwise conveyed at or prior to [the] time" of sale.  2005 Release, 2005 WL 1692642, at *77.

Nor is there any indication that in promulgating Rule 159 the SEC intended to adjust the established pleading requirements for Section 12(a)(2) by requiring a plaintiff whose claim is based on the contents of a post-closing prospectus supplement to allege that the information at issue was conveyed to her prior to the time of sale.  Indeed, such a pleading requirement would come close to requiring a plaintiff to plead the broad form of reliance that, as discussed above, must be pled by a Section 11 plaintiff who purchases securities "after the issuer has made generally available to its security holders an earning statement" covering the period one-year after the offering.  15 U.S.C. § 77k(a).  Such a result cannot be squared with the text of the rule or with the well-established law in this Circuit that a Section 12(a)(2) plaintiff need not plead reliance.

18

CONCLUSION

Defendants' December 5 motion for reconsideration is granted.  The August 17 motion to dismiss is denied for the reasons stated herein and in the prior Opinions issued in this litigation.

SO ORDERED:

Dated:    New York, New York
          December 18, 2014

_____
            DENISE COTE
    United States District Judge