UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
FEDERAL HOUSING FINANCE AGENCY, etc., : **PLAINTIFF'S**
: **MEMORANDUM OF LAW**
Plaintiff, : **IN SUPPORT OF ITS**
v. : **MOTION TO EXCLUDE THE**
: **OPINION AND TESTIMONY**
NOMURA HOLDING AMERICA INC., et. al., : **OF DEFENDANTS' EXPERT**
: **TIMOTHY J. RIDDIOUGH**
Defendants. :
------------------------------------------------------------------ x
11 Civ. 6201 (DLC)


QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

Philippe Z. Selendy
Jordan A. Goldstein
Toby E. Futter

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,
as Conservator for Fannie Mae and Freddie Mac*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................7

I.    LEGAL STANDARD ..........................................................................................................7

II.    DR. RIDDIOUGH'S SECTION 11 CALCULATIONS SHOULD BE PRECLUDED .....................................................................................................................9

    A.    Dr. Riddiough Miscalculates The "Amount Paid For The Security" ......................9

    B.    Dr. Riddiough Arbitrarily Reduces FHFA's Section 11 Damages Based Upon A Self-Serving Marketing Article ................................................................10

III.    DR. RIDDIOUGH'S SECTION 12 AND BLUE SKY CALCULATIONS SHOULD BE PRECLUDED ................................................................................................12

    A.    Dr. Riddiough Miscalculates The "Consideration Paid" For The Certificates ..............................................................................................................12

    B.    Dr. Riddiough Improperly Reduces Damages By Interest That The GSEs *Might* Earn On Income They Actually Received On The Certificates ..................13

    C.    Dr. Riddiough Applies A Non-Existent Loss Causation Discount To FHFA's Blue Sky Claims ......................................................................................15

CONCLUSION ................................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .................................................................................................. 2, 7, 8

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
    988 F. Supp. 2d 363 (S.D.N.Y. 2013) ...................................................................... 2, 7, 15

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
    11 Civ. 6201 (DLC), Dkt. 992 (S.D.N.Y. Dec. 18, 2014) .................................................. 3

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) ........................................................................................... 8

*In re Elec. Books Antitrust Litig.*,
    Nos. 11 MD 2293 (DLC), 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ......................... 8

*In re Gap Stores Sec. Litig.*,
    79 F.R.D. 283 (N.D. Cal. 1978) ........................................................................................ 2

*In re Puda Coal Sec. Inc., Litig.*,
    No. 11-CV-2598 KBF, 2014 WL 2915880 (S.D.N.Y. June 26, 2014) .............................. 8

*In re Young Broadcasting Inc.*,
    430 B.R. 99 (Bankr. S.D.N.Y. 2010) ............................................................................. 7, 8

*KB Home v. Antares Homes, Ltd.*,
    CIV.A. No. 3-04-CV-1031-L, 2007 WL 1893370 (N.D. Tex. June 28, 2007) ................. 8

*Klein v. Computer Devices, Inc.*,
    602 F. Supp. 837 (S.D.N.Y. 1985) ................................................................................... 2

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014),
    *reconsideration denied*, 2014 WL 1909499 (S.D.N.Y. May 13, 2014) .......................... 15

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005) .............................................................................................. 8

*Paul J. Maton, P.C. v. Arthur Andersen & Co.*,
    No. 91 C 1885, 1991 WL 131184 (N.D. Ill. July 5, 1991) ............................................... 2

*United States v. Cunningham*,
    679 F.3d 355 (6th Cir. 2012) ............................................................................................ 8

*Wigand v. Flo-Tek, Inc.*,
    609 F.2d 1028 (2d Cir. 1979) ......................................................................................... 12

## **STATUTES**

15 U.S.C. § 77k .................................................................................................................. 1, 2, 3, 9

15 U.S.C. § 77*l* ................................................................................................................ 1, 2, 5, 6, 12

D.C. Code § 28-3302 ................................................................................................................ 12

D.C. Code § 31-5606.05 .................................................................................................... 1, 5, 12

Fed. R. Evid. 702 ......................................................................................................................... 8

Va. Code § 13.1-522 ........................................................................................................ 1, 5, 12, 13

## **OTHER AUTHORITIES**

Frank J. Fabozzi, THE HANDBOOK OF FIXED INCOME SECURITIES (8th ed. 2012) ...................... 3, 9

Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "GSEs"), respectfully submits this memorandum of law, and the accompanying Declaration of Jordan A. Goldstein, in support of its Motion to Exclude the Opinion and Testimony of Defendants' Expert Dr. Timothy J. Riddiough, including as expressed in his November 7, 2014, rebuttal report on behalf of the Nomura defendants (the "Riddiough Report") (Ex. 1).[1]

## PRELIMINARY STATEMENT

FHFA has asserted statutory claims under Sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2), and the Blue Sky laws of the District of Columbia and Virginia, D.C. Code § 31-5606.05; Va. Code Ann. § 13.1-522, arising from Defendants' misrepresentations and omissions as to seven residential mortgage-backed securities (the "Certificates") issued by Nomura Asset Acceptance Corp. and Nomura Home Equity Loan, Inc., and underwritten by Nomura Securities International, Inc. and RBS Securities Inc. ("RBSSI"). In support of its claims, on July 9, 2014, FHFA served the expert report of James K. Finkel (the "Finkel Report") (Ex. 2). In his report, Mr. Finkel calculates Section 11 damages of between $507 million and $567 million, Section 12 damages of between $670 million and $1.016 billion, and Blue Sky damages of $558 million. *Id.* ¶¶ 145, 147.[2] As Sections 11 and 12 do not require a

---

[1] Except where otherwise specified, references to "Ex." are to the exhibits to the accompanying Declaration of Jordan A. Goldstein.

[2] Mr. Finkel's damages calculations utilize a statutorily fixed prejudgment rate for FHFA's Blue Sky claims and three alternative interest rates that the Court has discretion to apply for FHFA's Section 11 and 12 claims. *Id.* Mr. Finkel's calculations assume, with respect to FHFA's Section 12 and Blue Sky claims, that the GSEs tender the Certificates in respect of those claims. *Id.* ¶ 125.

showing of loss causation, *see* 15 U.S.C. §§ 77k(e), 77*l*(b), and in light of this Court's ruling that loss causation is not a defense to FHFA's Blue Sky claims, *see FHFA v. HSBC N. Am. Holdings Inc.*, 988 F. Supp. 2d 363, 368-70 (S.D.N.Y. 2013),[3] Mr. Finkel's report does not include any adjustment to FHFA's claims based upon loss causation.

In his rebuttal report, Nomura's proffered damages expert, Dr. Timothy J. Riddiough,[4] recalculates FHFA's damages by adopting a flawed approach that falls well short of the standard governing the admission of expert testimony set forth by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592-95 (1993).[5]  Specifically, Dr. Riddiough makes the following errors:

---

At trial, FHFA will seek the maximum statutory damages under Section 11, Section 12 and the Blue Sky statutes to which it is entitled with respect to each Certificate.  *See, e.g.*, *Paul J. Maton, P.C. v. Arthur Andersen & Co.*, No. 91 C 1885, 1991 WL 131184, at *5 (N.D. Ill. July 5, 1991) ("[P]laintiffs are not precluded from seeking damages under section 11 merely because they seek an alternative remedy of rescission under section 12(2)."); *Klein v. Computer Devices, Inc.*, 602 F. Supp. 837, 843 n.10 (S.D.N.Y. 1985) (plaintiff may elect between Section 11 and 12 remedies); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 307 (N.D. Cal. 1978) ("[I]t is reasonable to assume that the plaintiff may pursue both [Section 11 and 12] remedies to judgment, electing his choice at the last possible moment.").

[3]  In its Blue Sky ruling, this Court held that "[n]owhere does the text of the [Virginia] statute allow a defendant to avoid liability for portions of the plaintiff's loss that it shows were not caused by the misrepresentations at issue," and "[n]othing in the D.C. Blue Sky law supports reaching a different result in interpreting that statute." *Id.* at 368, 369.

[4]  Dr. Riddiough has been retained in this Action solely by the Nomura defendants. Riddiough Report ¶ 8.  Defendant RBSSI has not served an expert report as to damages.

[5]  On December 9, 2014, in response to deficiencies raised by FHFA during Dr. Riddiough's November 20, 2014, deposition, Dr. Riddiough submitted supplemental analysis correcting certain methodological errors in his November 7, 2014, report.  Ex. 3.  As a result of correcting these errors that FHFA identified, Dr. Riddiough has *increased* the Section 11 damages he calculates by as much as $75 million.  *Id.*, Supp. Ex. 2, Panel A.

Nomura has recently agreed to a limited second deposition as to Dr. Riddiough's supplemental analysis.  Following that deposition, FHFA may move to preclude Dr. Riddiough's new analysis.  FHFA has limited the instant motion to Dr. Riddiough's November 7, 2014, report.

*Section 11.* Under Section 11, damages are calculated as the difference between "the amount paid for the security" and "the value thereof as of the time such suit was brought," provided that the plaintiff has retained the security (as the GSEs have for all seven Certificates). 15 U.S.C. § 77k(e). In applying Section 11, Dr. Riddiough fails to follow the statutory language with respect to the consideration paid and imposes an arbitrary "illiquidity discount" to FHFA's damages. As a result of these errors, Dr. Riddiough understates FHFA's Section damages by over $62.5 million.[6]

*First*, Dr. Riddiough calculates "the amount paid for the security" by looking *not* to the amount the GSEs actually paid for the Certificates, but instead by arbitrarily subtracting any accrued interest from "the amount paid."[7] *See* Riddiough Report ¶ 106 n.95; *id.*, Exs. 14A-14D. However, in the case of two of the Certificates (NAA 2005-AR6 3A1 and NHELI 2006-FM1 1A), the "amount paid for the security" included $357,433 in accrued interest. Nevertheless, Dr.

---

[6] On October 6, 2014, FHFA moved *in limine* for an order prohibiting Defendants from presenting evidence to the jury regarding post-suit principal payments to Certificateholders. *See* Dkt. 859, at 2-4. On December 18, 2014, this Court granted FHFA's motion and held, among other things, that post-suit principal payments do not offset FHFA's Section 11 damages. *See Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 11 Civ. 6201 (DLC), Dkt. 992, at 17-18 (S.D.N.Y. Dec. 18, 2014) (the "December 18 Opinion"). In his report, Dr. Riddiough calculates FHFA's Section 11 damages both *with* and *without* an offset for post-suit principal payments. *Compare* Riddiough Report, Ex. 14A.1 (Section 11 damages *with* removal of post-suit principal payments), *with id.*, Ex. 14A.2 (Section 11 damages *without* removal of post-suit principal payments). Pursuant to the December 18 Opinion, Dr. Riddiough should be prohibited from testifying that FHFA's Section 11 damages may be offset by post-suit principal payments.

[7] Residential mortgage-backed securities ("RMBS") and other fixed income securities accrue interest each month. When an RMBS purchase occurs other than at issuance or immediately following a coupon payment date, "[t]he buyer must compensate the seller for the portion of the next coupon interest payment the seller has earned but will not receive from the issuer because the issuer will send the next coupon payment to the buyer. This amount is called *accrued interest* and depends on the number of days from the last coupon payment to the settlement date." Frank J. Fabozzi, THE HANDBOOK OF FIXED INCOME SECURITIES 100 (8th ed. 2012). When a bond is purchased between coupon payment periods, "the price that the buyer pays the seller is the full price" and "includes the accrued interest that the seller is entitled to receive." *Id.* at 101.

3

Riddiough uses a "clean price" (which treats each security as having been purchased without accrued interest), rather than the "full price" (which includes accrued interest). Under the plain language of Section 11, Dr. Riddiough was required to base his Section 11 calculations on the "amount paid for the security" by the GSEs, which—for NAA 2005-AR6 3A1 and NHELI 2006-FM1 1A—included accrued interest. By relying for his damages calculation on something *other than* the actual "amount paid" by the GSEs, Dr. Riddiough misapplies Section 11.

*Second*, in contrast to Mr. Finkel, who calculates damages using the methodology employed by those who actually traded RMBS,[8] Dr. Riddiough relies on a computer model supported by Andrew Davidson & Co. (the "AD&Co. Model"). After calculating FHFA's Section 11 damages under the AD&Co. Model, Dr. Riddiough applies a blunderbuss 15 percent adjustment to the AD&Co. prices he calculates for the Certificates in a supposed attempt to account for market illiquidity as of the valuation date. Riddiough Report ¶¶ 13, 97. The effect of this adjustment is to reduce FHFA's Section 11 damages by $62.2 million. Riddiough Report, Ex. 14A.1, Panel A.

However, the only citation Dr. Riddiough offers in support of such a significant discount is a single self-serving marketing paper published by a hedge fund in February 2011 seeking to attract investments by touting RMBS as "a highly compelling investment opportunity." Jay Menozzi, "Non-Agency RMBS Continue to Offer Superior Return Potential," UCM Partners White Paper ("UCM White Paper"), at 1 (2011) (Ex. 4) (cited in Riddiough Report ¶¶ 54-55). The application of this across-the-board 15 percent increase to the price for each Certificate—resulting in a flawed $62.2 million reduction in FHFA's Section 11 damages based solely on a

---

[8] In his report, Mr. Finkel explains that he has "used the methodologies a trader in PLS at the time would have employed to value the Subject Securities based on information available at the date of claim." Finkel Report ¶ 60.

4

marketing paper—further underscores the lack of rigor in Dr. Riddiough's methodology, and his arbitrary "illiquidity discount" to FHFA's damages should be precluded at trial.

*Section 12 and Blue Sky*.  Under Section 12 and the applicable Blue Sky statutes, damages are calculated as "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77*l*(a)(2); *accord* D.C. Code § 31-5606.05(b)(1)(A); Va. Code § 13.1-522(A).  Yet rather than follow the straightforward statutory text—and this Court's unequivocal December 16, 2013, ruling that there is no loss causation defense to FHFA's Blue Sky claims—Dr. Riddiough adopts a host of untenable assumptions having no basis in the law, including an improper $269 million reduction to FHFA's Blue Sky damages.

*First*, Dr. Riddiough calculates "the consideration paid" for the Certificates by looking at the "clean price" of the Certificates, which does not include accrued interest.  Riddiough Report ¶ 106 n.95.  Dr. Riddiough's approach, however, ignores that "the consideration paid" for the NAA 2005-AR6 3A1 and NHELI 2006-FM1 1A Certificates undeniably *included* accrued interest.  *See* Finkel Report ¶ 54.  Contrary to Dr. Riddiough's calculations, application of a rescissory remedy requires a return to the purchaser of *all* consideration paid, plus prejudgment interest, less income received.  Dr. Riddiough's methodology therefore understates FHFA's damages by the $357,433 in accrued interest paid at purchase by the GSEs, together with prejudgment interest on that amount.

Moreover, at his deposition, Dr. Riddiough *conceded* that his approach to calculating FHFA's damages under Section 12 and the Blue Sky laws resulted in "a bit of an asymmetry," as his approach double-counted accrued interest by reducing FHFA's damages twice on account of the same interest payment.  11/20/2014 Riddiough Dep. Tr. ("Riddiough Tr.") at 125:24-126:6

5

(Ex. 5).  Under Section 12 and the Blue Sky statutes, FHFA's rescissory damages are calculated as the "consideration paid" by the GSEs (together with prejudgment interest thereon), "less the amount of any income received thereon, upon the tender of such security."  15 U.S.C. § 77*l*(a)(2).  Because accrued interest is part of the actual consideration paid by the GSEs at the time of purchase, accrued interest (along with the rest of the consideration paid) must be returned to FHFA at the time of judgment, together with prejudgment interest thereon, less any income received on the Certificates.

Dr. Riddiough, however, reduces FHFA's damages award by all interest that the GSEs received ("less the amount of any income received"), but then goes the further step of eliminating accrued interest from the "consideration paid."  Although the first of these adjustments is proper under Section 12 and the Blue Sky statutes (*i.e.*, reducing FHFA's damages based on income actually received), there is no basis for the second reduction (*i.e.*, reducing FHFA's damages based on accrued interest that was *actually paid by the GSEs* at the time of settlement).  Dr. Riddiough's approach is, as he conceded at deposition, "asymmetr[ical]" and, in any event, is contrary to the statutes' plain language, which requires a return of *all* consideration paid, together with prejudgment interest.

*Second*, Dr. Riddiough reduces FHFA's Section 12 and Blue Sky damages not only by all principal and interest payments *actually* received by the GSEs as holders of the Certificates, but also by interest that the GSEs *could* have earned from payments they received on the Certificates.  Riddiough Report ¶¶ 46, 105, 112; Riddiough Tr. at 118:23-119:4.  That is, rather than merely netting out of FHFA's damages all principal and coupon payments on the Certificates pursuant to the statutory requirement to reduce damages by "the amount of any income received thereon," 15 U.S.C. § 77*l*(a)(2), Dr. Riddiough inexplicably grosses up these

6

principal and coupon payments by the rate of prejudgment interest he applies to the consideration paid and uses this augmented "interest-on-income" figure to reduce FHFA's damages further. This reduction to FHFA's damages based upon speculative interest that *could* potentially have been earned on income received on the Certificates has no basis in the statute or caselaw. Moreover, Dr. Riddiough conceded at his deposition that he performed no analysis that would support any conclusions as to how much the GSEs actually earned on cashflows they received from the Certificates, and certainly nothing that would support his conclusion that the GSEs earned six percent on income from the Certificates every year from 2005 to the present, as Dr. Riddiough apparently concludes with respect to his Blue Sky calculations. Riddiough Tr. 139:20-140:7.

*Finally*, Dr. Riddiough reduces FHFA's Blue Sky damages by 98 percent, or over $269 million, through application of a loss causation discount, notwithstanding that this Court has unambiguously held that a loss causation defense is not available against FHFA's Blue Sky claims. *See HSBC N. Am. Holdings*, 988 F. Supp. 2d at 368-70; *compare* Riddiough Report, Ex. 16A, *with id.*, Ex. 19. Any testimony by Dr. Riddiough to a non-existent loss causation defense would be wholly improper.

In light of the above pervasive errors in Dr. Riddiough's report, his damages testimony should be precluded in its entirety.

## ARGUMENT

### I.  LEGAL STANDARD

"The proponent of the expert testimony at issue must establish its admissibility by a preponderance of evidence." *In re Young Broadcasting Inc.*, 430 B.R. 99, 121 (S.D.N.Y. 2010) (citing *Daubert*, 509 U.S. at 592 n.10). The Federal Rules require a court to exclude expert

7

testimony that will not be helpful to the trier of fact or that is based on unreliable principles or methods (or where such principals or methods have not been reliably applied to the facts of the case).  See Fed. R. Evid. 702; *see also In re Puda Coal Sec. Inc. Litig.*, --- F. Supp. 2d. ----, 2014 WL 2915880, at \*15 (S.D.N.Y. June 26, 2014) ("[T]his Court's inquiry into whether an expert meets Rule 702's requirements includes a review of (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact."); *In re Elec. Books Antitrust Litig.*, 2014 WL 1282298, at \*6-7 (S.D.N.Y. Mar. 28, 2014) (Cote, J.) (holding inadmissible expert analysis "based on demonstrably false assumptions"); *In re Young Broadcasting Inc.*, 430 B.R. at 127 (rejecting proposed valuation expert who purported to modify an otherwise peer-tested and accepted discounted cashflow valuation technique).

    Moreover, expert testimony that rests on an incorrect legal standard will, by definition, not assist the trier of fact, but will instead cause confusion and is thus *per se* inadmissible.  See *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *see also United States v. Cunningham*, 679 F.3d 355, 379-82 (6th Cir. 2012) (affirming District Court's exclusion of purported expert testimony that relied on incorrect statements of law); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law.  Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.") (citing *Daubert*); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at \*9 (N.D. Tex. June 28, 2007) (affirming determination of Magistrate Judge that "an expert witness must use a correct legal standard and that testimony that relies on an incorrect legal standard would 'confuse and mislead the jury'").

## II.     DR. RIDDIOUGH'S SECTION 11 CALCULATIONS SHOULD BE PRECLUDED

### A.     Dr. Riddiough Miscalculates The "Amount Paid For The Security"

Section 11 provides that where a plaintiff has retained a security (as the GSEs have with respect to all seven Certificates), damages equal the difference between "the amount paid for the security" and "the value thereof as of the time such suit was brought." 15 U.S.C. § 77k(e). Mr. Finkel calculated "the amount paid for the security" as the *actual amount* that the GSEs paid for the securities, *i.e.*, the $65,979,707 that Fannie Mae paid to Nomura for NAA 2005-AR6 3A1, and the $1,981,027,187 that Freddie Mac paid for the remaining six Certificates. These amounts included $357,433 in accrued interest that the GSEs paid at the time of settlement.[9]

By contrast, Dr. Riddiough has calculated "the amount paid for the security" as the "clean price," *i.e.*, the par value of the securities, and has ignored whatever portion of the actual purchase price was attributable to accrued interest. Riddiough Report, Exs. 14A-14D. In support of his approach, Dr. Riddiough has argued that "[a]ccrued interest is irrelevant to damages calculations and is therefore excluded from my analysis." *Id.* ¶ 106 n.95.

Under the plain language of Section 11, however, "the amount paid for the security" (*i.e.*, the first step in determining Section 11 damages) must be the amount that the GSEs *actually* paid for the securities. There is no statutory basis for ignoring the portion of the purchase price attributable to accrued interest based upon an expectation that the holder of a security will in fact receive back an accrued interest payment following the purchase, as future interest payments are uncertain and may not materialize.

---

[9] Specifically, Fannie Mae paid $316,245 in accrued interest for NAA 2005-AR6 3A1, and Freddie Mac paid $41,187 in accrued interest for NHELI 2006-FM1 1A. Finkel Report ¶ 54. As discussed above, accrued interest represents coupon payments that have accrued on an RMBS between the last coupon payment and the settlement date, and is expressed through the following formula: (amount of coupon payment)*[(number of days from last coupon payment date to settlement date)/(number of days in coupon period)]. *See* Fabozzi, *supra* n.7, at 100-01.

9

In any event, under the clear text of Section 11, the damages calculation requires a determination of the actual amount paid by the GSEs for the Certificates. For the NAA 2005-AR6 3A1 and NHELI 2006-FM1 1A Certificates, that purchase price included accrued interest. It is therefore appropriate to use the full purchase price of the Certificates in calculating FHFA's Section 11 damages, including any accrued interest, rather than the "clean price" (which excludes such accrued interest). Dr. Riddiough's damages calculation is flawed because it fails to follow the plain text of Section 11 and uses as a basis for FHFA's damages a price other than the full price the GSEs paid for two of the Certificates.

### B. Dr. Riddiough Arbitrarily Reduces FHFA's Section 11 Damages Based Upon A Self-Serving Marketing Article

In addition to miscalculating the amount paid by the GSEs for the Certificates, Dr. Riddiough miscalculates the value of those securities on the date of suit (*i.e.*, September 2, 2011). Dr. Riddiough has purportedly attempted to determine the value of the Certificates through application of a computer model distributed by Andrew Davidson & Co. Riddiough Report ¶ 75. Dr. Riddiough then increases those prices—for purposes of his damages calculation—by an across-the-board 15 percent premium. *Id.* ¶¶ 13, 97 & n.86 ("The adjustment is performed at the certificate level by increasing my estimated prices by 15 percent (to a maximum of a par value of 100) and recalculating Section 11 damages based on these intrinsic value estimates.").

According to Dr. Riddiough, this adjustment is necessary to reflect the intrinsic value of the Certificates on the date of suit, since—according to him—the market prices for these securities on the date of suit were at least 15 percent lower than their true value due to "dislocation and illiquidity of the RMBS market in 2011." *Id*. ¶¶ 13, 55, 140. Because FHFA's Section 11 damages are the *difference* between the purchase price of the Certificates and their

10

value on the date of suit, this 15 percent increase in the value of the Certificates on the date of suit results in a decrease in the Section 11 damages Dr. Riddiough calculates of approximately $62.2 million. Riddiough Report, Ex. 14A.2, Panel A.[10]

The only basis cited by Dr. Riddiough for his arbitrary "illiquidity discount" to FHFA's damages is a single marketing "white paper" by UCM Partners issued in February 2011.[11] *Id.* ¶ 55; Riddiough Tr. at 370:20-371:6, 372:8-373:10. The UCM White Paper, however, is not a scholarly or objective publication. Rather, it is marketing material published by an industry participant, and is clearly intended to encourage readers to invest in the RMBS market through UCM Partners, as evidenced by numerous statements therein:

- "We believe these factors, combined with our view that the non-agency RMBS market remains 15-20% undervalued, present a ***highly compelling investment opportunity***." (at 1)

- "This decoupling [of the Agency and non-Agency markets] and dislocation persists [sic] offers ***exciting opportunities for investors*** capable of evaluating the specific loans underlying non-agency RMBS on a case-by-case basis to realize ***very attractive risk-adjusted returns***." (at 8)

- "In general, this noise creates an air of uncertainty, which in and of itself creates ***more near term opportunities for buying non-agency RMBS cheaply relative to fundamental value and enhancing total return through active trading***." (at 13)

- "We believe that non-agency RMBS currently offer investors ***compelling opportunities to realize superior risk-adjusted returns*** relative to other fixed income asset classes including U.S. Treasury and government agency securities, agency RMBS, and corporate investment grade and high yield bonds." (at 14)

- "We believe that all these factors, when combined with currently attractive loss-adjusted yields and other risk-mitigating features, ***should result in strong relative***

---

[10] Because Dr. Riddiough limits the 15 percent increase he applies to his AD&Co. prices to the $100 par value of the Certificates, his 15 percent increase in prices results in a 14 percent decrease in Section 11 damages. *See id.* ¶ 97 n.86.

[11] UCM Partners describes itself as "a private, SEC registered, minority-owned and operated investment advisory boutique focused on mortgage-backed securities." Ex. 4, UCM White Paper, at 1.

11

> *and absolute total rates of return for non-agency RMBS investors over the foreseeable future*." (at 14)

Ex. 4, UCM White Paper (emphases added). To reduce FHFA's Section 11 damages by $62.2 million based solely on a hedge fund marketing paper falls well short of the standard required under *Daubert* for the admission of expert testimony, and further calls into question Dr. Riddiough's methodology and expertise. His Section 11 damages calculations are accordingly excludable on this basis as well.

### III. DR. RIDDIOUGH'S SECTION 12 AND BLUE SKY CALCULATIONS SHOULD BE PRECLUDED

#### A. Dr. Riddiough Miscalculates The "Consideration Paid" For The Certificates

Where a plaintiff can tender the security, damages under Section 12 are straightforward: the plaintiff receives "the consideration paid for such security with interest thereon, less the amount of any income received thereon." 15 U.S.C. § 77*l*(a)(2); *cf. Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1036 (2d Cir. 1979) (where a plaintiff paid money for a security, "the amount to be awarded [under Section 12] is simple to calculate"). The Blue Sky statutes provide for a similar damages calculation, except that the rate of prejudgment interest is fixed at six percent and attorneys' fees and costs must be awarded. D.C. Code § 31-5606.05(b)(1)(A), with the prejudgment rate of interest set forth in D.C. Code § 28-3302(a); Va. Code 13.1-522(A).[12]

---

[12] The applicable statutory language is as follows:

*Section 12*: Plaintiff may "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77*l*(a)(2).

*D.C. Code*: Plaintiff may "recover the consideration paid for the security, interest at the rate used in the Superior Court of the District of Columbia from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it." D.C. Code § 31-5606.05(b)(1)(A).

Here, again, Dr. Riddiough uses the "clean price" to calculate "the consideration paid for such security," and ignores accrued interest that was part of the full consideration paid. Riddiough Report ¶¶ 106 n.95, 112 n.101. As with Section 11, there is nothing in Section 12 or the Blue Sky statutes to suggest that "the consideration paid," for purposes of this damages calculation, excludes accrued interest that was part of the purchase price. Moreover, under Section 12 and the Blue Sky statutes, *all* income (including any accrued interest subsequently received by the GSEs) is subtracted from the damages award. To reduce "the consideration paid" by accrued interest and then to reduce the damages calculated under Section 12 and the Blue Sky statutes *again* by all interest that was actually received in effect reduces FHFA's damages twice based upon the exact same interest payment. There is no logical or statutory basis for such double-counting of accrued interest in reducing damages under Section 12 and the Blue Sky statutes.[13]  Dr. Riddiough's calculation of Section 12 and Blue Sky damages with respect to accrued interest is erroneous and should be precluded.

### B. Dr. Riddiough Improperly Reduces Damages By Interest That The GSEs *Might* Earn On Income They Actually Received On The Certificates

As described above, under Section 12 and the Blue Sky statutes, a plaintiff's damages, upon tendering a security, is "the consideration paid for such security with interest thereon, less the amount of any income received thereon." A plain reading of Section 12 and the Blue Sky

---

*Va. Code*: Plaintiff may "recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security." Va. Code § 13.1-522(A).

[13]   At his deposition, Dr. Riddiough conceded that his reduction of rescissory damages based on all coupon payments received, while at the same time using a clean price (rather than the full price) in calculating the "consideration paid" under Section 12 and Blue Sky statutes, was "asymmetr[ical]." Riddiough Tr. at 125:19-126:6.

13

statutes make clear that the reference to prejudgment interest applies only to the "consideration paid for such security," and not to "the amount of any income received thereon."

Nevertheless, Dr. Riddiough reduces FHFA's rescissory damages not only by the amount of principal and interest the GSEs actually received on the Certificates, but also by the amount of interest the GSEs *might* have earned on the principal and interest payments that were actually received. This "interest-on-income" approach to calculating Section 12 and Blue Sky damages has no textual or legal basis, and Dr. Riddiough has cited nothing in the statutory text to support his conclusion that the reference in the statutes to "interest thereon" applies to both "the consideration paid" *and* "any income received." Further illustrating the absurdity of this approach, Dr. Riddiough in effect assumes for purposes of his Blue Sky calculations that the GSEs earned six percent *every single year* since 2005 on the principal and interest they received on the Certificates, notwithstanding the complete lack of any evidence to that effect (and notwithstanding that there is no statutory basis for reducing FHFA's damages by "interest on income"). At his deposition, Dr. Riddiough in fact conceded that he had not analyzed whether the GSEs earned six percent annually on the income they received on the Certificates. Riddiough Tr. at 139:20-140:5. In any event, there is no basis in Section 12 or the Blue Sky statutes for reducing FHFA's damages based upon interest that *might* have been earned on income received on the Certificates. Here, again, Dr. Riddiough miscalculates FHFA's damages under Section 12 and the Blue Sky statutes by misapplying the applicable law.

### C. Dr. Riddiough Applies A Non-Existent Loss Causation Discount To FHFA's Blue Sky Claims

Dr. Riddiough calculates Blue Sky damages for FHFA of $275,208,716 (assuming the GSEs retain the Certificates). Riddiough Report, Ex. 16A.[14] Dr. Riddiough then reduces these damages by *98 percent*, to $5,803,439, through application of a loss causation discount. Riddiough Report, Ex. 19.[15] This $269 million discount is wholly indefensible in light of this Court's December 16, 2013, ruling that *no* loss causation defense is available against FHFA's Blue Sky claims. *HSBC N. Am. Holdings*, 988 F. Supp. 2d at 368-370; *accord Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co., Inc.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *3-7 (S.D.N.Y. Apr. 28, 2014), *reconsideration denied*, 2014 WL 1909499 (S.D.N.Y. May 13, 2014).

Dr. Riddiough makes no attempt to justify a 98 percent loss causation discount to Blue Sky claims that this Court has already held are not subject to such a defense. At his deposition, Dr. Riddiough testified that he applied a loss causation defense to FHFA's Blue Sky claims at the instruction of Nomura's counsel. Riddiough Tr. at 319:4-320:4. Nomura's instruction to its expert to apply a loss causation discount to FHFA's Blue Sky claims is inexplicable in light of the clear law of the case, and is sanctionable. At the very least, Dr. Riddiough's report should be

---

[14] As noted in Sections III.A. and III.B., *supra*, Dr. Riddiough also understates FHFA's Blue Sky damages by ignoring accrued interest in determining the "consideration paid" for the Certificates, and by improperly reducing FHFA's Blue Sky damages by income that *might* have been earned on the actual income received by the GSEs.

[15] As noted at Mr. Finkel's deposition, there is a typographical error in the final column of Tables 32-34 of Mr. Finkel's report, whereby the final summation line for the Blue Sky damages attributable to RBS incorrectly includes the Blue Sky damages attributable to Nomura. *See* 11/25/2014 Finkel Dep. Tr. at 213:11-217:25 (Ex. 6). This typographical error occurs only in the final summation line of the fifth column of Tables 32-34 of Mr. Finkel's report, and each of the security-specific rows in those tables is accurate.

15

precluded in light of its clear conflict with this Court's December 16, 2013, order and the Blue Sky statutes.

## CONCLUSION

For the reasons stated above, Dr. Riddiough's expert report is unreliable and falls far short of the *Daubert* standard governing the admission of expert testimony. FHFA respectfully requests that Dr. Riddiough be precluded from opining as to FHFA's statutory damages.

DATED:  December 19, 2014
           New York, New York


By:  /s/ Philippe Z. Selendy
Philippe Z. Selendy
Jordan A. Goldstein
Toby E. Futter
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,
as Conservator for Fannie Mae and Freddie Mac*