UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

        Plaintiff,

        -against-

NOMURA HOLDING AMERICA, INC.;
NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA HOME
EQUITY LOAN, INC.; NOMURA CREDIT
& CAPITAL, INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; RBS SECURITIES
INC. (f/k/a GREENWICH CAPITAL
MARKETS, INC.); DAVID FINDLAY;
JOHN MCCARTHY; JOHN P. GRAHAM;
NATHAN GORIN; and DANTE LAROCCA,

        Defendants.

No. 11 CIV. 6201 (DLC)

---

**PLAINTIFF FHFA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF LEONARD A. BLUM AND PETER D. RUBINSTEIN**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Philippe Z. Selendy
Adam M. Abensohn
Jonathan B. Oblak

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency, as Conservator for Fannie
Mae and Freddie Mac*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

FACTUAL BACKGROUND .................................................................................................1

ARGUMENT .................................................................................................................3

I.    MR. BLUM AND DR. RUBINSTEIN OFFER ADMISSIBLE TESTIMONY
THAT IS HELPFUL TO THE JURY AND RELEVANT TO THE FACTS OF
THE CASE ............................................................................................................3

        A.    Mr. Blum's testimony will assist the jury in understanding the facts, and
its probative value substantially outweighs any purported risk of
confusion...................................................................................................5

        B.    Dr. Rubinstein's testimony will assist the jury in understanding the facts,
and its probative value substantially outweighs any purported risk of
confusion...................................................................................................8

II.    MR. BLUM AND DR. RUBINSTEIN DO NOT OFFER LEGAL OPINIONS .............10

III.    MR. BLUM AND DR. RUBINSTEIN OFFER OPINIONS TO ASSIST THE
JURY IN UNDERSTANDING THE CREDIT RATING PROCESS AND ITS
ROLE IN RMBS TRANSACTIONS ......................................................................15

IV.    MR. BLUM PROPERLY RELIED ON OTHER FHFA EXPERTS' OPINIONS ..........20

CONCLUSION...............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*,
    2009 WL 1110577 (S.D.N.Y. 2009)..................................................13

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002).........................................20, 21

*Cary Oil Co. v. MG Ref. & Mktg., Inc.*,
    2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003).................................14

*Daubert v. Merrell Down Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................... *passim*

*Fiataruolo v. United States*,
    8 F.3d 930 (2d Cir. 1993)...................................................13, 14, 15

*In re Fosamax Products Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009).............................................3

*Gussack Realty Co. v. Xerox Corp.*,
    224 F.3d 85 (2d Cir. 2000)...........................................................20, 21

*Highland Capital Mgmt. L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)..........................................11

*Holman Enters. v. Fidelity & Guar. Ins. Co.*,
    563 F. Supp. 2d 467 (D.N.J. 2008) ..............................................13

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
    2012 WL 466785 (S.D.N.Y. Feb. 14, 2012)................................4, 11

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).............................................4

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    2012 WL 2568972 (S.D.N.Y. July 3, 2012) .................................19, 21

*Marmol v. Biro Mfg. Co.*,
    1997 WL 88854 (E.D.N.Y. Feb. 24, 1997)......................................4

*McCullock v. H.B. Fuller Co.*,
    61 F.3d 1038 (2d Cir. 1995)................................................. *passim*

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
    769 F. Supp. 2d 188 (S.D.N.Y. 2011).........................................6, 9

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F.
    Supp. 2d 448 (S.D.N.Y. 2010) .............................................. *passim*

*Quintel Corp., N.V. v. Citibank, N.A.,*
   606 F. Supp. 898 (S.D.N.Y. 1985) ......................................................................14

*Raskin v. Wyatt Co.,*
   125 F.3d 55 (2d Cir. 1997).......................................................................... *passim*

*In re Rezulin Prods. Liab. Litig.,*
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................13, 19

*Schlesinger v. United States,*
   898 F. Supp. 2d 489 (E.D.N.Y. 2012) ...............................................................20

*United States v. Bilzerian,*
   926 F.2d 1285 (2d Cir. 1991)...................................................................... *passim*

*United States v. Zolot,*
   968 F. Supp. 2d 411 (D. Mass. 2013) ...............................................................20

*In re Worldcom, Inc. Sec. Litig.,*
   346 F. Supp. 2d 628 (S.D.N.Y. 2004)..................................................12, 14, 15

*Worldwide Home Prods., Inc. v. Time Inc.,*
   2013 WL 5477480 (S.D.N.Y. Sept. 30, 2013)...................................................14

## Rules / Statutes

Fed. R. Evid. 702 ......................................................................................................3, 4, 17

## Other Authorities

Weinstein's Evidence Manual .................................................................................12

Wigmore's Treatise on Evidence .............................................................................13

Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs"), respectfully submits this memorandum in opposition to Defendants' November 26, 2014 motion to exclude certain expert testimony of Mr. Leonard A. Blum and Dr. Peter D. Rubinstein (the "Motion" or "Mot.").[1]  Defendants' Motion is a baseless attempt to preclude appropriate expert testimony proffered by FHFA's experts and should be denied.

## FACTUAL BACKGROUND

At issue in this Motion are the reports and testimony of two of FHFA's experts, Mr. Leonard A. Blum and Dr. Peter D. Rubinstein.  Mr. Leonard Blum submitted three expert reports on behalf of FHFA in this Action.[2]  On July 9, 2014, he submitted an expert report opining on the general securitization process for residential whole loans during 2005-2007, focusing on the roles of market participants and the general practices associated with a securities underwriter conducting due diligence for a residential mortgage-backed securities ("RMBS") offering (the "Blum Affirmative" (Ex. 1 to Mot.)).  Blum Affirmative, Sections II-III.  In this report, Mr. Blum also considered and relied on expert reports served by FHFA's reunderwriting expert, Robert Hunter, and valuation expert, Dr. John Kilpatrick, which included findings that the at-issue securitizations (the "Securitizations") contained a significant number of loans that did not comply with underwriting guidelines because they had inadequate compensating factors, or had overvalued appraisals, respectively.  *Id.* at Section IV(A)-(B).  Based on these findings, Mr.

---

[1]  "Defendants" include Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc. ("Nomura Securities"), David Findlay, John McCarthy, John P. Graham, Nathan Gorin, N. Dante LaRocca (collectively "Nomura"), and RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.) ("RBSSI").  Although not a named defendant in this action, The Royal Bank of Scotland Group PLC, together with RBSSI are referred to as "RBS."

[2]  Mr. Blum was awarded a Masters in Business Administration from the University of California at Los Angeles and has more than 27 years of investment banking and capital markets experience.

Blum opined in relevant part that Defendants would have had to correct the prospectus supplement disclosures and restructure the transactions to provide increased credit enhancement, and that rating agencies would have either refused to rate or assigned a lower rating to the securities.  *Id.* at Section V.

On November 10, 2014, Mr. Blum submitted two expert reports in rebuttal to the opinions of Defendants' purported due diligence expert, Charles Grice, relating to each of Nomura and RBSSI (the "Blum Nomura Rebuttal" (Ex. 8 to Mot.) and "Blum RBSSI Rebuttal" (Ex. 11 to Mot.)).  Principally, Mr. Blum responded to Mr. Grice's opinions concerning the reasonableness of Nomura's due diligence practices as sponsor for each of the Securitizations, and RBSSI's due diligence practices as the lead or co-underwriter for four of the Securitizations.  *See* Blum Nomura Rebuttal, Section I(D); Blum RBSSI Rebuttal, Section I(D).

On July 9, 2014, Dr. Rubinstein submitted an expert report on behalf of FHFA in this Action ("Rubinstein Report" (Ex. 2 to Mot.)).[3]  Rubinstein Report ¶¶ 4-7.  FHFA retained Dr. Rubinstein to "provide an expert opinion concerning the non-agency residential mortgage-backed securitization process and the financial incentives and functions of the participants in the process during the 2005-2007 time period." *Id.* ¶ 1.  In his report, Dr. Rubinstein opined generally on the processes of acquiring and securitizing residential whole loans, marketing and issuing securities, and the roles of the various Nomura entities at-issue in this Action.  *Id.* at Sections V-VI.  He also opined on potential conflicts of interest that can arise between affiliated entities in a vertically integrated securitization business, and when a sponsor or underwriter

---

[3]   Dr. Rubinstein holds a doctorate degree in Business Administration from the University of California at Berkeley and has approximately 40 years of relevant experience with a focus on mortgage markets and securitizations.

provides warehouse lines of credit to originators from which it purchases loans for securitization. *Id.* at Sections VII-VIII.

The opinions set forth in each of these expert reports will assist the jury in understanding the proof supporting FHFA's claims that Defendants misrepresented loan characteristics in offering materials filed with the Securities & Exchange Commission, provided to rating agencies, and distributed to potential investors (like the GSEs), as well as the impact of misrepresentations on the credit rating and securitization process. Defendants now seek to preclude Mr. Blum and Dr. Rubinstein from offering certain of these opinions at trial.

## ARGUMENT

## I.   MR. BLUM AND DR. RUBINSTEIN OFFER ADMISSIBLE TESTIMONY THAT IS HELPFUL TO THE JURY AND RELEVANT TO THE FACTS OF THE CASE

Defendants' first basis for exclusion is that Mr. Blum's and Dr. Rubinstein's "generalized testimony . . . fail to apply or connect to the facts of this case." Mot. at 5. It is well established, however, that "generalized testimony" is admissible under Rule 702 "to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 Advisory Comm. Notes (2000 Amendments); *see Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC* ("*Pension Comm.*"), 691 F. Supp. 2d 448 (S.D.N.Y. 2010) (denying motion to exclude expert opinion where testimony "will provide the jury with important background information" and citing Advisory Committee notes in relevant part). Generalized testimony must only "fit" the facts of the case—meaning that the testimony only needs to be relevant to the facts. *See In re Fosamax Products Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) ("Relevance can be expressed as a question of 'fit'— whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." (quotation omitted)); Fed. R. Evid. 702 Advisory

Comm. Notes (2000 Amendments) ("[E]xperts might instruct the factfinder . . . on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case.").  Defendants do not, however, seek to exclude testimony from Mr. Blum and Dr. Rubinstein on the basis that they are not "qualified" to offer this testimony or that their testimony is not "reliable," and FHFA does not address those issues here.[4]

Mr. Blum's and Dr. Rubinstein's opinions more than satisfy this liberal standard for admissibility.[5]  The challenged testimony will assist the jury in understanding the multifaceted securitization process, including the roles that multiple entities (*e.g.*, sponsor, depositor, underwriter) serve in acquiring residential whole loans, conducting due diligence, obtaining credit ratings, and marketing and selling securities to investors.  *See supra* Factual Background. Illustrating the need for this testimony, the isolated opinions that Defendants use to frame their Motion concern complex and unfamiliar terms, processes, and concepts.  *See* Mot. at 6-12. Defendants' Motion only bolsters FHFA's position on admissibility for Mr. Blum and Dr. Rubinstein's testimony because, "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also LaSalle Bank Nat. Ass'n v. CIBC Inc.*, 2012 WL 466785, at *5 (S.D.N.Y. Feb. 14, 2012) ("[E]xpert testimony describing relevant background information . . . is frequently admissible if it will be helpful to the jury.").

---

[4]   It is appropriate for experts to opine on general subjects in certain circumstances when they are qualified to do so.  *See* Fed. R. Evid. 702 & Advisory Comm. Notes (2000 Amendments) ("For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.").

[5]   The "Federal Rules of Evidence favor the admissibility of expert testimony, and [the court's] role as gatekeeper is not intended to serve as a replacement for the adversary system."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 561 (S.D.N.Y. 2007) (internal quotations omitted); *see Marmol v. Biro Mfg. Co.*, 1997 WL 88854, at *4 (E.D.N.Y. Feb. 24, 1997) ("[d]oubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility"); Fed. R. Evid. 702 Advisory Comm. Notes (2000 Amendments) ("[T]he rejection of expert testimony is the exception rather than the rule.").

Because the specific testimony at issue will be helpful to the jury and fits the facts of the case, Defendants' motion should be denied.

### A.   Mr. Blum's testimony will assist the jury in understanding the facts, and its probative value substantially outweighs any purported risk of confusion.

***Net Trade Value***.  Defendants argue that Mr. Blum's discussion of "Net Trade Value" should be excluded because the concept is not "connected to the facts of this case," including the purported fact that Nomura relied on residual interests "as its primary source of profits."[6] Mot. at 7.  Defendants' argument is meritless.  To begin, Defendants mischaracterize Mr. Blum's definition of "Net Trade Value" (Mot. at 6-7), as it specifically includes "the value of any securities retained" (Blum Affirmative ¶ 31).  In other words, "Net Trade Value" as used by Mr. Blum accounts for the value of Nomura's interest in the residual tranches.[7]

Putting aside its mischaracterization of "Net Trade Value," if Defendants wish to introduce evidence that the retention of residual interests provided Nomura with an incentive to "impose rigorous" diligence (Mot. at 7), then at most they have identified a factual dispute because FHFA will contend, among other things, that Nomura sold or otherwise reduced its residual exposure during the relevant period as soon as it was able to do so.  But factual disputes go to the weight, not admissibility, of evidence.  *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (holding that challenges to the weight and credibility of expert testimony are "properly explored on cross-examination" and do not concern admissibility); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (recognizing that "disputes as to the validity

---

[6]   *See* Blum Nomura Rebuttal, Section VII(C).  Mr. Blum addressed directly—and dismissed—Nomura's contention that its residual holdings in the Securitizations incentivized it to conduct robust due diligence.  *See id.*

[7]   Nomura acknowledges that it retained "residual certificates" for "the lowest tranches in a securitization." *See* Ex. 1 to Oblak Decl. (Declaration of Nita Nambiar In Opposition to Plaintiff's Motion for Partial Summary Judgment on Defendants' Due Diligence and Reasonable Care Defenses ¶ 2 ("During the 2005 to 2007 time period, Nomura's business strategy with respect to residential mortgage-backed securities ('RMBS') included holding of the 'residual' certificates, the lowest tranches in a securitization.")).  "Oblak Decl." refers to the accompanying declaration of Jonathan B. Oblak, dated December 11, 2014.

of the underlying data go to the weight of the evidence[] and are for the fact-finder to resolve"
(internal citations and footnotes omitted)).  Challenging the factual basis for an expert's discrete
opinion is not a proper basis for exclusion.

Defendants also claim that Mr. Blum's testimony on "generalized incentives" would
confuse or mislead the jury about the practices and incentives specific to Nomura.  Mot. at 8.
This is incorrect.  Nomura's economic incentives are highly probative to whether it conducted a
reasonable investigation in verifying the representations regarding compliance with underwriting
guidelines.  Further, Defendants are free to confront an expert with purported foundational
inaccuracies or assumptions at trial.  There, any potential for confusion or misleading the jury
can be mitigated through "[v]igorous cross examination, presentation of contrary evidence, and
careful instruction on the burden of proof."  *Daubert v. Merrell Down Pharm., Inc.*, 509 U.S.
579, 596 (1993); *see POM Wonderful LLC v. Organic Juice USA, Inc.*, 769 F. Supp. 2d 188, 201
(S.D.N.Y. 2011) (admitting expert testimony "[w]here there is 'sufficient indicia of reliability'"
and testimony is subject to "traditional and appropriate means of attack[]").  The probative value
of Mr. Blum's testimony regarding Nomura's incentives is not substantially outweighed by the
purported risks that Defendants cite.

***Scratch-and-dent loans.***  Defendants next contend that Mr. Blum's testimony regarding
scratch-and-dent loans is irrelevant and should be excluded.  Mot. at 8-9.  Mr. Blum, however,
discusses scratch-and-dent securitizations to provide comparative context for the RMBS
market's disclosure practices during the relevant period.  Blum Affirmative ¶ 44 ("Thus, even in
scratch-and-dent securitizations where there are recognized origination deficiencies, the
Disclosure Documents quantified and disclosed those deviations.").  These disclosure practices
emphasized certain types of collateral defects (*e.g.*, loans not conforming to applicable

underwriting guidelines (*id.*)) that adversely affected the economics of an RMBS transaction (*id.* ¶ 43 ("During the subject time frame, scratch-and-dent loans typically traded at discounts to par.")).  His opinions will thus "enable the jury to evaluate a defendant's conduct against the standards of accepted practice" concerning the disposition and disclosure of loans with scratch-and-dent characteristics, *Bilzerian*, 926 F.2d at 1295, such as the loans at issue here.

Contrary to Defendants' contention that Mr. Blum "failed to demonstrate" that the loans underlying the Securitizations were "scratch-and-dent" loans (Mot. at 8), Mr. Blum never purports to make loan-specific findings.  Rather, he opines that, assuming other experts' findings as true, the at-issue loans "more closely resemble scratch-and-dent securitizations in certain respects" that potentially "result[ed] in securities that could not obtain AAA ratings or result[ed] in securities that could not have been marketed pursuant to the Disclosure Documents provided to the GSEs at all."  Blum Affirmative ¶ 73.  Not only is this testimony relevant to a jury's understanding of why it was important to properly disclose characteristics for the at-issue mortgage loans, but the probative value of such testimony outweighs any conceivable potential for confusing and misleading the jury.  In any event, questioning the predicate facts underlying Mr. Blum's opinion is an improper basis for excluding his opinion.  *McCullock*, 61 F.3d at 1043; *Raskin*, 125 F.3d at 66.  Defendants may challenge Mr. Blum through cross examination and the presentation of contrary evidence.[8]  *See Daubert*, 509 U.S. at 59.  For these reasons, Mr. Blum's

---

[8]  Mr. Blum testified in a related action that his opinion regarding scratch-and-dent loans was limited to providing a comparison between offering document disclosures that were at-issue in that action, not to compare loan performance between scratch-and-dent loans and the at-issue mortgage loans.  7/28/14, Blum Tr. 419:25-420:21 (relevant excerpts attached as Ex. 2 to Oblak Decl.) ("Q. . . . If you're correct, would you expect the securitizations at issue in this case to perform roughly in line with scratch-and-dent securitizations from that time period? . . . A. Not necessarily. What I'm pointing out is that if you look at scratch-and-dent securitizations from that timeline, it will tell you what – in some cases what percentage of the loans don't comply with underwriting guidelines. And if you look at mainstream Alt-A and subprime securitizations, you'll generally see the uniform representation that the loans comply with underwriting guidelines unless a compensating factor is present.").

relevant testimony regarding the importance of offering document disclosures concerning collateral defects should not be excluded.

### B. Dr. Rubinstein's testimony will assist the jury in understanding the facts, and its probative value substantially outweighs any purported risk of confusion.

***Warehouse Lending.*** Defendants contend that Dr. Rubinstein's testimony regarding warehouse lending should be excluded because his opinions concern general practices in the RMBS industry during the 2005-2007 period. Mot. at 9-10. Not only is such generalized testimony helpful and admissible (as discussed above), but it is particularly relevant here because Nomura was hoping to extend a $350 million warehouse facility to Quick Loan Funding[9]—an originator that originated loans underlying supporting loan groups of the Securitizations—and RBS maintained a $1 billion warehouse facility with Fremont at the time RBSSI served as lead underwriter for the (Fremont loan-backed) NHELI 2006-FM2 Securitization.[10] Defendants do not contest whether warehouse lending relates to the facts of this case, only that Dr. Rubinstein's opinions are not linked directly enough to Nomura. Mot. at 10. The factual record, however, supports the relevance of Dr. Rubinstein's opinions regarding the incentives created by warehouse lending relationships, and those opinions thus should not be excluded.

Defendants further claim that Dr. Rubinstein's discussion of warehouse lending would confuse the issues or mislead the jury by causing it to "infer that Nomura acted in a way . . . it did not." *Id.* As discussed above, warehouse lending principles are probative of potential conflicts of interest that are clearly relevant to both Nomura and RBSSI, even if Nomura believes

---

[9]  Ex. 8 to Oblak Decl. (NOM-FHFA_05497992 (draft memorandum titled "Quick Loan Funding Inc.: Proposed $350 Million Warehouse Facility," dated Mar. 23, 2006) at NOM-FHFA_05497994).

[10]  *See* Ex. 9 to Oblak Decl. (RBS-FHFA-CT-4072104 (RBS Greenwich Capital Credit Risk Department: Monthly Management Report, dated Sept. 2006) at RBS-FHFA-CT-4072123, RBS-FHFA-CT-4072250 (approving renewal of $1 billion warehouse facility for Fremont)); Ex. 10 to Oblak Decl. (RBS-FHFA-SDNY-0546495 (RBS Greenwich Capital Credit Risk Department:  Monthly Management Report, dated Mar. 2006) at RBS-FHFA-SDNY-0546518, RBS-FHFA-SDNY-0546633 (approving increase in whole loan purchase limit to $3 billion and $1 billion warehouse facility for Fremont)).

it can dispute factually whether it fully acted upon those incentives.  Disputing the factual basis

on which Mr. Rubinstein rests his opinions is not a proper ground for seeking exclusion.

*McCullock*, 61 F.3d at 1043; *Raskin*, 125 F.3d at 66.  Rather, Defendants are entitled to and

capable of confronting the witness at trial through cross examination and competing expert

opinions.  *Daubert*, 509 U.S. at 596.  The probative value of such testimony is therefore not

substantially outweighed by Defendants' concerns.

     ***Vertical integration.***  Dr. Rubinstein's testimony regarding vertical integration will assist

the jurors in understanding how conflicts of interest arise in a vertically integrated securitization

structure, and should not be excluded as Defendants contend.  As both Dr. Rubinstein and Mr.

Blum confirm, conflicts of interest are present in securitization structures identical to those at

issue here:  Nomura Credit & Capital, Inc. (the sponsor) was affiliated with Nomura Asset

Acceptance Corporation and Nomura Home Equity Loan, Inc. (the depositors) and Nomura

Securities (the underwriter).  Rubinstein Report ¶¶ 82-85; Blum Nomura Rebuttal, Section

VII(A).[11]  The discussions concerning conflicts of interest between affiliated entities in the

RMBS market provides important context that will assist the jury in understanding whether

Nomura met its obligations under the securities laws (*e.g.*, whether Nomura Securities, as

underwriter, properly relied on the due diligence that Nomura Credit & Capital, Inc. conducted

as sponsor) and how market incentives may have influenced its conduct.  Here too, the probative

value of such generalized testimony is not substantially outweighed by any potential for

confusion or misleading the jury, and any purported danger can be appropriately addressed

through traditional credibility assessments and jury instructions.  *See Daubert*, 509 U.S. at 596;

*POM Wonderful*, 769 F. Supp. 2d at 201.

---

[11]  As Mr. Rubinstein testified, he inadvertently included in his expert report that Decision One was an
indirect subsidiary of Nomura.  11/17/14 Rubinstein Tr. 14:7-13 (relevant excerpts attached as Ex. 7 to Oblak
Decl.).

*Financial incentives.* Defendants seek to exclude Dr. Rubinstein's testimony regarding financial incentives because, in certain instances, he opines on the "revenues" rather than the "profits" that sponsors earned. Mot. at 11-12. Defendants at most raise a factual dispute by arguing that Nomura's residual holdings served as the primary profit source, but they ignore other revenue sources that contributed to Nomura's ability to profit from its RMBS transactions, such as "cash flows received from the loan pool awaiting securitization, and the sale of servicing rights." Rubinstein Report ¶ 27; *cf.* Mot. at 11-12. Defendants' disagreement with the facts upon which Dr. Rubinstein relies or the implications drawn from them, however, is not a proper ground for exclusion, as it concerns the weight of the evidence rather than its admissibility. *McCullock*, 61 F.3d at 1043; *Raskin*, 125 F.3d at 66.[12] As discussed above, any potential danger of confusion and misleading the jury can once again be appropriately addressed by confronting the witness through the traditional means enumerated in *Daubert*, 509 U.S. at 596.

For all the reasons stated above, FHFA respectfully requests that the Court deny Defendants' Motion to exclude Mr. Blum's and Dr. Rubinstein's "generalized testimony."

## II.    MR. BLUM AND DR. RUBINSTEIN DO NOT OFFER LEGAL OPINIONS

Nomura next seeks to exclude the opinions of Mr. Blum and Dr. Rubinstein on the ground that they purportedly offer "legal opinions" regarding Defendants' legal obligations in the securitization process and the legal standards at issue in this Action. Mot. at 13. This argument mischaracterizes Mr. Blum's and Dr. Rubinstein's opinions, misapprehends the relevant standards upon which the Defendants will be judged, and misapplies the relevant law.

---

[12] Defendants asserted in a footnote to their Motion that Mr. Blum's and Dr. Rubinstein's testimony constitutes impermissible state of mind testimony. Mot. at 11 n.1. Mr. Blum and Dr. Rubinstein offer expert testimony that relates to the securitization process and the RMBS industry during the relevant time period, as well as to what an underwriter could expect or assume to occur based on relevant and reliable data. *See supra* Factual Background. Their generalized testimony does not go to what Defendants "actually did expect or assume," *Pension Comm.*, 691 F. Supp. 2d at 467, and is therefore permissible.

Mr. Blum and Dr. Rubinstein do not offer opinions or testimony that will "usurp the function of the judge [or the jury]." *LaSalle Bank Nat'l Ass'n*, 2012 WL 466785, at *6 (alteration in original) (quoting *Highland Capital Mgmt. L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008)).  Their opinions are appropriately limited to the general roles of relevant market participants, the processes related to whole-loan securitization, and what steps an underwriter is expected to take in connection with issuing securities and verifying disclosures. As discussed below, while Defendants point to selected passages and testimony that passingly mention governing statutes and laws, each expert's opinion is predicated on their experience and expertise, and neither expert seeks to instruct the jury on the applicable legal standards or whether the facts at bar meet such standards.

First, as a threshold matter, both Mr. Blum and Dr. Rubinstein confirmed at deposition that they do not offer legal opinions and that their opinions are based on their experience and expertise in the RMBS industry.  As Mr. Blum testified in a related action, "I am basically telling you how a well-trained banker that is not an attorney understands what I am supposed to be doing when I do due diligence."  8/12/14 Blum Tr. 169:9-13 (relevant excerpts attached as Ex. 4 to Oblak Decl.).[13]  He was equally clear that his opinions are based on his expertise and experience, not a recitation of legal standards.  *See id.* at 163:5-12 ("I know I have had formal training, I have run a training program for investment bankers.  I have taught this subject.  I have been an investment banker for almost three decades.  And I know what I am supposed to do when I do due diligence, and this is my summary of what that is as a banker."); *id.* at 43:19-44:04 (explaining Requisite Due Diligence is what he learned "from my training and

---

[13]  *See* 11/24/14 Blum Tr. 386:4-7 (relevant excerpts attached as Ex. 5 to Oblak Decl.) ("I'm not an attorney. . . . I'm not trying to offer any kind of opinion on regulatory guidance."); 8/1/14 Blum Tr. 111:16-19 (relevant excerpts attached as Ex. 3 to Oblak Decl.) ("I'm not an attorney. . . . I didn't go to law school.  I don't have any intention of giving legal opinions . . . .").

experience, from my teaching, from my education, what I understand is the right way to do due diligence for any securities offering, any public securities offering"); *id.* at 39:14-40:10 (testifying that his understanding of the purpose of due diligence is based on what he was "taught *as a securities underwriter*") (emphasis added).

Dr. Rubinstein's deposition testimony is similarly clear that he offers no legal opinions. When asked whether he was "opining on the legal obligations of the underwriter under the securities laws," Dr. Rubinstein stated: "I am not a lawyer, so I am not giving you a legal opinion here. I am telling you from my practical experience from being a banker that – and underwriter, that these were the duties and responsibilities as I understand them and I believe it is typical in the industry that these are the responsibilities of the underwriter. I am not giving you a legal opinion." 11/17/14 Rubinstein Tr. 86:16-87:2.[14]

Second, despite Mr. Blum's clear testimony, Defendants contend that his citations to the Securities Act and *In re Worldcom, Inc. Securities Litigation* ("*In re Worldcom*"), 346 F. Supp. 2d 628 (S.D.N.Y. 2004), and use of certain terms that are similar to the legal standard somehow mean that "his testimony is his interpretation of a governing legal standard." Mot. at 14. It is well settled that an expert is not precluded "from closely approaching the language of the legal standard and even suggesting to the finder of fact the inference that it should draw on the basis of that close approach." Weinstein's Evidence Manual § 310.02[2]. For example, in *United States v. Bilzerian*, 926 F.2d at 1294, the Second Circuit found no abuse of discretion where the trial court allowed the government expert witness, a renowned professor of law, to testify regarding "general background on federal securities regulation and the filing requirements of Schedule

---

[14]   *See* 11/17/14 Rubinstein Tr. at 22:8-12 ("I have been in the market for a long time, I understand how securitization works, I was a banker so I put deals together and I have observed the market for a very long time."); 7/8/14 Rubinstein Tr. 135:11-15, 136:23-137:6 (relevant excerpts attached as Ex. 6 to Oblak Decl.).

13D."[15]  Here, Mr. Blum references certain statutes and *In re Worldcom* as background to his testimony about the roles that market participants served in the securitization process and his understanding of how a sponsor and underwriter should conduct due diligence in the RMBS industry.  As Mr. Blum clarified, because he is "not an attorney [and] didn't go to law school," he has no "intention of giving legal opinions [on the meaning of cases or statutes]," but he "ha[s] been through a lot of training, both formal and informal, [and he] hold[s] numerous securities licenses which [he had] to take tests to get, and the purpose of all that is so that [he] understand[s] the law in the context of [his] job."  8/1/14 Blum Tr. 111:11-112:7; *see* 7/28/14 Blum Tr. 24:22-25:12 (explaining that the definition of "requisite due diligence" is "based on my experience and my training and my education and it's how I was trained as a banker to understand due diligence."); 8/12/14 Blum Tr. 162:22-163:12.[16]

Third, Defendants fail to cite to any instance of Mr. Blum or Dr. Rubinstein offering an ultimate legal conclusion and, at most, point to testimony on mixed questions of fact and law— on which experts may permissibly opine.  *See Fiataruolo v. United States*, 8 F.3d 930, 941

---

[15]  Defendants relied on cases that are clearly distinguishable from the facts here.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547, 557 (S.D.N.Y. 2004) (excluding one expert opinion that defendants' "conduct . . . potentially constituted negligence"; excluding another expert opinion for opining on legal duties relating to patient rights); *United States* ex rel. *Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, 2009 WL 1110577, at *2-3 (S.D.N.Y. 2009) (excluding expert opinion for opining on defendant's knowledge and "reckless disregard," as such testimony invades the jury's province); *Holman Enters. v. Fidelity & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (granting motion to strike expert report, whose "major thesis" is that defendants "did not breach the covenant of good faith and fair dealing").

[16]  Insofar as Defendants object to Mr. Blum's use of the word "material" (Mot. at 14-15), he explains that he is using the word in a way that is "widely-used . . . in the securities industry" (Blum Affirmative ¶ 9 n.5) and does not claim to be defining a term "for purposes of the Securities Act," as Defendants assert (Mot. at 15).  There is no prohibition on Mr. Blum's use of the word in this context.  *See* Wigmore's Treatise on Evidence: Expert Evidence § 2.3, 58 (an expert may express an opinion "that is essentially factual in nature but that incorporates words or phrases with specific legal definitions . . . if the court believes that the legally defined words can be understood by the jury in a more familiar context that does not depend on the legal definition").  For example, the prospectus supplement for NHELI 2007-3, which is of course directed toward investors, uses the word "material" in the following manner: "If, as of the Closing Date, any material pool characteristic differs by 5% or more from the description in this prospectus supplement, revised disclosure will be provided either in a supplement or in a Current Report on Form 8-K."  *See* Ex. 12 to Oblak Decl. (NOM-FHFA_04732621 (Prospectus Supplement to NHELI 2007-2, dated Apr. 27, 2007) at NOM-FHFA_04732715).

(2d Cir. 1993) (holding that "[e]xperts may testify on questions of fact as well as mixed questions of fact and law" and affirming trial court's admission of expert testimony on the concept of a "responsible person" under the tax code).  It is well established that the Federal Rules of Evidence were amended to "provide[] trial courts with more latitude to allow experts to testify about issues that would help the jury understand concepts it needed to know to render a verdict despite the fact that the opinions may encroach on matters of law."  *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003).

Defendants argue, for example, that Mr. Blum inappropriately opines on Defendants' disclosure obligations under the Securities Act by concluding that, had Defendants known that many mortgage loans did not comply with underwriting guidelines, they "would have had to correct Disclosure Documents," among other suitable corrective action.  Mot. at 14.  Creating and filing disclosure documents, including in situations in which an underwriter becomes aware of certain defects in the underlying assets, is a core function of a securities underwriter and an appropriate subject for expert opinion.  *See, e.g.*, *Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 906 (S.D.N.Y. 1985) (holding expert's testimony "as to what most members of the industry would consider to be adequate fulfillment of an already established standard, *i.e.*, the requirement to disclose material facts" was not legal opinion, and that expert was properly qualified based on his personal procedures and observations of industry); *Worldwide Home Prods., Inc. v. Time Inc.*, 2013 WL 5477480, at *5 (S.D.N.Y. Sept. 30, 2013) (holding expert "reliably applied his knowledge of the facts and the law" in opining on "the adequacy of Plaintiff's disclosures to the PTO examiner, which is a question of mixed law and fact"); *Cary Oil*, 2003 WL 1878246, at *13 (upholding expert's opinion regarding "how such evidence may indicate that the relation between the Defendants exceeded the control a parent ordinarily

14

exercises over its subsidiary so as to justify veil-piercing" because it "would [not] tell the jury what decision to reach").

Lastly, Defendants' request for pre-trial exclusion of the challenged testimony is unnecessary. Even if either of Mr. Blum's or Dr. Rubinstein's testimony touches upon an issue of law, the Second Circuit has noted that a careful instruction to the jury can adequately protect against a jury assigning undue weight to an expert opinion. *See Bilzerian*, 926 F.2d at 1295 (finding no abuse of discretion where trial court provided limiting instruction regarding testimony of government's expert witness, a professor of law); *Fiataruolo*, 8 F.3d at 942 (similar).

In sum, the challenged testimony of Mr. Blum and Dr. Rubinstein is anchored appropriately in their personal knowledge and practices in the finance industry over the years. Such testimony does not opine on ultimate legal conclusions, and accordingly should not be excluded.[17]

## III. MR. BLUM AND DR. RUBINSTEIN OFFER OPINIONS TO ASSIST THE JURY IN UNDERSTANDING THE CREDIT RATING PROCESS AND ITS ROLE IN RMBS TRANSACTIONS

Defendants claim that Mr. Blum's and Dr. Rubinstein's testimony regarding how rating agencies would have responded to increased credit risk in a prospective securitization is an "improper effort to tell the jury how it should interpret and understand fact evidence."

---

[17] Under Defendants' reasoning, the opinions of their purported due diligence expert, Mr. Grice, would be inadmissible for the same reasons. Mr. Grice repeatedly references legal citations and standards in assessing the purported adequacy of Nomura's diligence. *See, e.g.*, Ex. 11 to Oblak Decl. (Expert Report of Charles Grice (Nomura), dated July 9, 2014 ¶ 61 (citing federal regulations issued by SEC regarding appropriate sample selection for diligence)); *id.* ¶ 172 ("Through this due diligence, Nomura was able to assess adherence to originators' underwriting guidelines and compliance with regulations."). Mr. Grice, in fact, goes further and appears to draw legal conclusions regarding the adequacy of Nomura's diligence process. *Compare id.* ¶ 157 ("The scrutiny that Nomura applied to loans during this process distinguished Nomura from other sponsors and allowed Nomura to confirm the quality of loans and verify the accuracy of disclosures regarding these loans.") *with In re WorldCom*, 346 F. Supp. 2d at 662 ("[A] defendant will not be liable upon a showing that *he had . . . reasonable ground to believe and did believe . . . that the statements* [in the offering documents] *were true*[.]"). FHFA reserves all rights to move to exclude Mr. Grice's opinions.

Mot. at 17.  Defendants' argument again mischaracterizes the opinions of FHFA's experts and misconstrues the law.

As noted, Mr. Blum's and Dr. Rubinstein's respective testimony on rating agencies will be helpful in assisting a jury to understand the role of rating agencies and credit ratings in the securitization process, including Nomura's provision of information upon which these agencies relied in rating the Securitizations.  For example, Mr. Blum's and Dr. Rubinstein's testimony will help the jury understand that the rating agencies did not independently verify the information provided to them by Nomura to calculate the Securitizations' credit ratings and that, if the "information in the loan tape was inaccurate, the ratings were not accurate."  Rubinstein Report ¶ 73.; *see* Blum Affirmative ¶ 22 ("The rating agencies, upon receiving a new loan tape from an underwriter, verified only that data fields were complete and properly formatted—not the accuracy of its contents.").  Mr. Blum's testimony will also assist the jury to understand the likely consequences of disclosing to the rating agencies the true characteristics of the loans underlying the Securitizations, as found by FHFA's reunderwriting and appraisal experts.  *See* Blum Affirmative, Section V.

Defendants' entire argument for excluding this expert testimony concerning rating agencies assumes that the subject matter is commonly understood and that the jury can easily infer the proper meaning of and draw correct conclusions about the role of rating agencies from the complex facts that will be introduced at trial.  *See* Mot. at 20 ("[E]xpert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.") (quotation omitted).  Given the complex nature of the securitization process generally and of the rating process specifically, Defendants' assumption is simply not true, and Mr. Blum's

and Dr. Rubinstein's opinions would provide invaluable assistance to the jury on this issue.  *See* Fed. R. Evid. 702.

Specifically, Defendants challenge Mr. Blum's and Dr. Rubinstein's opinions by calling them "pure speculation," charging each of them with having conducted no "independent analysis."  Mot. at 17-18; 20.  To the contrary, Mr. Blum's and Mr. Rubinstein's opinions are each firmly based on their experience and expertise, which Defendants do not seriously challenge.  Mr. Blum testified that his familiarity with rating agencies' models follows "from having underwritten many rated public securities, discussions with the rating agencies and review of very well-documented writings from the rating agencies as well as deposition testimony."  11/24/14 Blum Tr. 310:11-21.  In fact, Mr. Blum has underwritten hundreds of rated securities transactions (*id.* at 330:10-12), and communicated with rating agency representatives regarding the importance of ensuring that data provided in connection with a rated transaction is accurately reflected in offering documents (7/28/14 Blum Tr. 150:2-23 ("And I've even had experience with rating agencies where they've questioned me, 'Is this consistent with the prosupp?'  Or if I mention something, they immediately want to talk about the prosupp and is that what's in the prosupp.")).[18]  Dr. Rubinstein testified that he has "been involved in building rating agency models both at – Moody's" and "[a]t Morningstar," and that he has "actually investigated for other reasons some of the models being used at Standard & Poor's."  11/17/14 Rubinstein Tr. 71:19-72:2, 75:8-22.  Mr. Blum's and Dr. Rubinstein's significant experience and

---

[18]   7/28/14 Blum Tr. 150:2-23  ("A. . . . All securities have some probability of loss.  AAA securities, such as the ones purchased by [FHFA] in this action, have an extremely low probability of default . . . . And rating agencies assign those ratings with heavy reliance on the documents that are filed with the SEC and on other people's due diligence.  All three rating agencies are very clear and precise that they don't do diligence of – do diligence on their own.  They're all clear that they review the information and compare it to the pro – to the prosupp.  And I've even had experience with rating agencies where they've questioned me, 'Is this consistent with the prosupp?'  Or if I mention something, they immediately want to talk about the prosupp and is that what's in the prosupp.").

undeniable expertise fully support the reliability of their opinions, which Defendants are free to explore during cross-examination at trial.  *Pension Comm.*, 691 F. Supp. 2d at 464.

Mr. Blum and Dr. Rubinstein also firmly rooted their opinions regarding rating agencies in the record evidence.  Had they not, Defendants would surely have criticized their opinions for failing to provide a factual basis.  Mr. Blum considers rating agency publications and deposition testimony from rating agency representatives, among other things, in opining on how newly identified defects in a prospective securities offering would likely impact the rating process.  He relies not only on the facts adduced in this Action, but also on his relevant experience and expertise.  *See* Blum Affirmative, Section I(B) & ¶¶ 70, 73.  Similarly, Dr. Rubinstein relies on rating agency testimony and his industry experience to provide general testimony about how rating agencies analyzed data in determining credit enhancements for an RMBS securities offering.  *See* Rubinstein Report, Sections II(A)-(B) & ¶¶ 46, 50, 73.  Such testimony does not constitute an improper factual narrative, as each expert demonstrates an "inten[tion] to intertwine his factual narrative with his opinion testimony."  *See Pension Comm.*, 691 F. Supp. 2d at 466-67.

Defendants' other objections reflect, at most, disputes as to the weight of expert testimony, rather than its admissibility.  Defendants claim that Mr. Blum's opinions should be discarded merely because Defendants speculate that the rating agencies would not agree with Mr. Blum:  "[n]o rating agency witness testified that the agencies would, in fact, have taken the actions Blum opines about."  Mot. at 18.  If Defendants are arguing that the rating agencies should serve as *de facto* experts opining on the reliability of Mr. Blum's (and Dr. Rubinstein's) opinions, they cite no source to support the appropriateness of doing so.  Moreover, the rating agency witnesses in these Actions were deposed in their capacity as Rule 30(b)(6) witnesses, who were properly confined to testifying about policies and procedures, not about their response

18

to findings of experts whose analyses found that a large number of the underlying mortgage loans were materially defective or included biased valuations.  *See* 11/15/12 Hr'g Tr. at 22:21-25, *FHFA v. Nomura Holding Am. Inc.*, 11 Civ. 6201 (DLC) (S.D.N.Y.) (the Court instructed: "30(b)(6) witnesses have a very important role in a case.  Their testimony, of course, binds the entity that they represent.  I think the 30(b)(6) witnesses should principally be talking about policy and procedure issues for the institution.").

Defendants rely in part on *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 550 (S.D.N.Y. 2004), which found inadmissible an expert report because the expert "wrote his report before having the supporting data."  Mot. at 19.  Here, Mr. Blum relies on his experience and the factual record produced in this case to opine on general practices that likely would have occurred had Nomura disclosed to the rating agencies the increased credit risk found by Mr. Hunter and Dr. Kilpatrick.  *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *16 (S.D.N.Y. July 3, 2012) ("Experts routinely employ assumptions as part of their analysis, and any contentions that the assumptions are unfounded go to the weight of the testimony, not its admissibility.").  Unlike *In re Rezulin*, Mr. Blum had the "supporting data" in advance of forming the opinions now at issue, including Mr. Hunter's and Dr. Kilpatrick's findings and testimony from rating agency corporate representatives.  To the extent Defendants challenge the sufficiency of the data underlying Mr. Blum's opinion, such an argument is a credibility determination properly reserved for the jury.  *McCullock*, 61 F.3d at 1043; *Raskin*, 125 F.3d at 66.

In sum, Mr. Blum's and Dr. Rubinstein's testimony regarding rating agency operations is properly admissible and should not be excluded.

## IV.     MR. BLUM PROPERLY RELIED ON OTHER FHFA EXPERTS' OPINIONS

Defendants' last argument is that Mr. Blum should be precluded from offering opinions based on other experts' findings because he did not conduct an "independent assessment" to verify their reliability.  Defendants wildly misstate the applicable law.  *See* Mot. at 21.  There is no question that expert testimony is admissible even when experts do not "conduct their own tests and rel[y] only on data provided by [a party's] own experts."  *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000); *see Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 491 (S.D.N.Y. 2002) (denying motion to strike expert testimony and report that was properly based on another experts' admissible testimony and findings); *Schlesinger v. United States*, 898 F. Supp. 2d 489, 505 (E.D.N.Y. 2012) ("[E]xperts are permitted to rely on the reports of others, and there is no requirement that an expert conduct his own tests.").  In cases where the court excluded expert opinion for failing to conduct independent analysis, the expert merely parroted the opinions of others and had no independent basis for reaching his or her separate opinions.[19]

Here, Mr. Blum does not, as Defendants suggest, "simply rely on the work of other experts."  Mot. at 21.  Mr. Blum relies on specific findings of Mr. Hunter and Dr. Kilpatrick to offer his separate and independent opinion as to whether and to what extent increased credit risk would modify the structure, ratings, disclosures, and profits of the Securitizations.  *See* Blum Affirmative ¶¶ 70-74; Blum Nomura Rebuttal ¶¶ 339-42; Blum RBS Rebuttal ¶¶ 186-88.  Such conclusions are not only relevant to the issue of whether Nomura Securities and RBSSI, as

---

[19]     For example, Defendants rely on *United States v. Zolot*, 968 F. Supp. 2d 411, 426-27 & n.27 (D. Mass. 2013), Mot. 21, for the proposition that an expert must perform independent analysis in order to rely on another expert's work.  This is a misinterpretation of *Zolot* because in that case, the court excluded the opinion of a toxicologist that cardiovascular disease was an independent cause of death where the expert "simply repeat[ed] a medical examiner's opinion" and had *no* "expertise to independently reach that conclusion."  *Id.*  Here, Mr. Blum is fully qualified to rely on the work of other FHFA experts and reach his own, independent conclusions.

underwriters, conducted a reasonable investigation consistent with their obligations under the securities laws, but serve to aid the jury in navigating important RMBS principles, including those concerning credit ratings, financial incentives, and marketing and issuing securities.  *See* Blum Affirmative ¶¶ 70-74.

Mr. Blum is not required to recreate Mr. Hunter's and Dr. Kilpatrick's analyses in determining whether the data is reliable.[20]  *Gussack Realty*, 224 F.3d at 94-95; *Astra Aktiebolag*, 222 F. Supp. 2d at 491.  Mr. Blum not only read and understood those expert reports, but testified that the assumptions and conclusions contained therein were reasonable in light of his experience and expertise.  *See* 7/28/14 Blum Tr. 83:10-13, 113:25-114:12, 312:18-313:13.  He then relied on those results to draw new and independent conclusions about evidence relevant to the at-issue claims and defenses.  *Id.* at 82:6-18.  Mr. Blum's assessment of and reliance on other experts' findings was appropriate and consistent with prevailing legal standards.  *Gussack Realty*, 224 F.3d at 94-95; *Astra Aktiebolag*, 222 F. Supp. 2d at 491.

Setting aside Mr. Blum's independent assessment, the reliability of Mr. Hunter's and Dr. Kilpatrick's reports go to the weight of the evidence rather than the admissibility of Mr. Blum's testimony, which is a proper issue for the trier of fact.  *Patriarch Partners VIII*, 2012 WL 2568972, at *16 ("Whether the assumptions [the expert] relies upon are supported by the record or the opinions of other expert witnesses does not necessarily render the testimony unreliable, but rather goes to weight and credibility of the expert's testimony.").

Defendants' assertion that Mr. Blum failed to properly assess the reliability of Mr. Hunter's and Dr. Kilpatrick's expert reports is contrary to law and an improper basis for excluding his testimony.

---

[20]  As a  practical matter, Defendants' assertion would impose an admissibility standard for expert testimony that requires an expert to be an expert on everything.

**CONCLUSION**

For the reasons stated herein, FHFA respectfully requests that the Defendants' Motion be denied in its entirety.

DATED:  December 11, 2014
         New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: /s/ Philippe Z. Selendy
    Philippe Z. Selendy
    Adam M. Abensohn
    Jonathan B. Oblak


51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000