**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

December 15, 2014

Via E-mail and ECF

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street, Room 1610,
            New York, New York 10007-1312.

        Re:    <u>FHFA v. Nomura Holding America Inc., et al.</u>, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

        Defendants respectfully submit this reply in further support of their motion to preclude Robert Hunter from testifying about re-underwriting work he performed that did not meet the standards described in the prospectus supplements.

        Plaintiff's argument is that two very different kinds of disclosures in the prospectus supplements mean the same thing, even though they use entirely different language. Such a reading would violate the Second Circuit's admonition to read representations "together, and in context"—which, where disclosures differ, requires reading them differently. *DeMaria* v. *Anderson*, 318 F.3d 170, 180 (2d Cir. 2003) (internal quotation omitted). The prospectus supplements here state in plain language that loans from disclosed originators were originated "generally in accordance" with those originators' guidelines; they say in equally plain language that loans from undisclosed originators (those representing less than 20% of the total) were underwritten in accordance with "criteria described in this section"—a set of criteria far more limited and general than the actual guidelines of those undisclosed originators. (Mot. at 3-4; *see also* Appendix A.) Indeed, as plaintiff concedes, Regulation AB makes exactly this distinction, requiring different disclosures depending on the volume of loans contributed by an originator. (Opp. at 3.) For lenders originating more than 20% of the loans, "a description of the originator's origination program" is required. 17 C.F. R. § 229.1110(b)(2). For other lenders, issuers disclose only a "description . . . of the underwriting criteria used to originate" the loans, and issuers represent only that loans comply with the disclosed "criteria." 17 C.F.R. § 229.1111(a)(3).

        There is no dispute that Hunter did his re-underwriting work by comparing the loans from undisclosed originators with the actual guidelines from those originators or his own set of what he calls "minimum industry standards"—neither of which are set forth or described in the Prospectus Supplements. (*See* Ex. K (Def's Mot. to Exclude "Minimum Industry Standards"), at 3-5.) Hunter did not compare the loans from undisclosed originators with the actual disclosures (the "criteria described") in the prospectus supplements.

        Plaintiff is incorrect that the general descriptions of "underwriting criteria" applicable to loans from undisclosed originators are "similar in scope and level of detail" to disclosures about specific originators' underwriting guidelines. (Opp. at 2.) For example, the prospectus supplement for 2006-HE3 represented that People's Choice guidelines required a minimum credit score of 580 and described required documentation at each credit score. (Ex. L at

Hon. Denise L. Cote                                                                                                        -2-
                                                                              Reply to Motion *in Limine* No. 3

NOM-FHFA_04620971.)  The general disclosure in the same prospectus supplement concerning loans from undisclosed originators simply stated that "the borrower[s] generally will have furnished certain information with respect to [their] . . . credit history . . . ." (*Id.* at NOM-FHFA_04620972-973; *see also* Appendix A.)  No disclosure was made about the exact credit score required, or the documentation required at each credit score. The fact that defendants performed due diligence to assure compliance with standards more demanding than those disclosed in the prospectus supplements does not change what the disclosures say or mean.[1]

       Plaintiff claims that Hunter's testimony that compliance with an undisclosed originator's guidelines is still relevant to whether the "general 'underwriting criteria' described in the Prospectus Supplements have been met." (Opp. at 5.)  But plaintiff's acknowledgement that the two standards are different proves defendants' point.  Expert testimony that the loans did not comply with representations that were never made would be confusing, misleading and prejudicial. More fundamentally, it is also entirely irrelevant.

       Finally, plaintiff argues that Nomura is judicially estopped from moving to exclude Hunter's testimony. (Opp. at 4-5.)  This is nonsense.  Defendants' position on the meaning of those disclosures has never changed.  In their Answer, defendants denied plaintiff's allegation that general disclosures about "underwriting criteria" were actually disclosures about "originating entity underwriting standards." (Ex. M (Am. Compl.) ¶ 82 & Appx. A; Ex. N (Doc. No. 201), ¶ 82.) Defendants moved to dismiss the complaint for failure to adequately allege that loans were "not underwritten in accordance with the guidelines disclosed in the prospectus supplements." (Ex. O (Doc. No. 78), at 16.)  And at his first opportunity to respond to plaintiff's re-underwriting claims, defendants' expert Michael Forester pointed out that Hunter had failed to address compliance with the underwriting criteria disclosed in the prospectus supplements:

> Nomura's Prospectus Supplements contained disclosures concerning the underwriting guidelines of lenders that had originated more than 20% of the loans backing a deal, and otherwise only described the underwriting criteria generally applicable. . . .  Mr. Hunter does not claim that the sample loans failed to comply with these disclosed underwriting criteria, and I found no instances of noncompliance.  To the contrary, each loan I reviewed was originated consistent with the disclosed underwriting criteria.

(Ex. P (Forester Report) ¶ 246.)[2]  Defendants have never contended that the prospectus supplements represented that loans made by undisclosed originators complied with those originators' specific underwriting guidelines.

       At bottom, plaintiff's position is based on the strange assertion that straightforward language in the prospectus supplements should be interpreted to mean something quite different than what it says.  Hunter's testimony about whether loans met underwriting guidelines that were never the subject of any representation should be excluded.

---

[1] Although plaintiff cites language in Pooling and Servicing Agreements that mortgage loans were made "in accordance with the originator's underwriting guidelines" (Opp. at 3), this language was not incorporated into the prospectus supplements.  Similarly, the prospectus supplements contain no disclosures about such representations being made to ratings agencies. (*See* Opp. at 4.)

[2] The guideline matching stipulation says nothing about the meaning of representations in the prospectus supplements. (Ex. Q (Stipulation Regarding Loan File and Guideline Matching), ¶ 4.)

Hon. Denise L. Cote -3-
Reply to Motion *in Limine* No. 3

Respectfully submitted,

/s/ David B. Tulchin

David B. Tulchin

cc: Counsel of Record via ECF