UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>NOMURA HOLDING AMERICA INC., et al.,<br><br>Defendants. | No. 11-cv-6201 (DLC)<br><br>ECF Case |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO EXCLUDE THE TESTIMONY OF
<u>ROBERT W. HUNTER CONCERNING OWNER OCCUPANCY STATUS</u>**

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500
Facsimile: 202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000
Facsimile: 212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

December 24, 2014

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................................1

BACKGROUND ..................................................................................................................................2

ARGUMENT ........................................................................................................................................3

I.     Hunter's Opinions Concerning Owner Occupancy Status Are Not Helpful to the Trier of Fact Because They Address an Irrelevant Issue .......................................................3

     A.     Hunter's Testimony Does Not Assess the Intent of Borrowers to Occupy a Property ...........................................................................................................3

     B.     Hunter's Testimony Does Not Address the Occupancy Disclosures as of the Relevant Date in the Offering Documents .........................................................5

CONCLUSION .....................................................................................................................................8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) .................................................................................................... *passim*

*In re Fosamax Products Liability Litigation*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ....................................................................................5

*In re Rezulin Products Liability Litigation*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................................................................5

**Rule**

Fed. R. Evid. 702 ........................................................................................................... *passim*

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Action | *FHFA* v. *Nomura Holding America Inc.,* No. 11 Civ. 6201 (DLC) |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin and N. Dante Larocca |
| Ex. | Exhibit to the December 24, 2014 Declaration of Kunal J. Choksi submitted in support of this motion |
| Fannie Mae | Federal National Mortgage Association |
| Freddie Mac | Federal Home Loan Mortgage Corporation |
| Hunter Report | Expert Report of Robert W. Hunter, Regarding the Underwriting of Mortgage Loans Underlying the Nomura Securitizations, dated May 15, 2014 |
| Hunter Rebuttal Report | Rebuttal Expert Report of Robert W. Hunter, Regarding the Underwriting of Mortgage Loans Underlying the Nomura Securitizations, dated October 6, 2014 |
| Offering Documents | The offering materials for the Securitizations in the Action, including documents filed with the Securities and Exchange Commission |
| Sample Loans | The loans comprising the sample of approximately 100 loans per Securitization selected by plaintiff's expert Dr. Charles Cowan and re-underwritten by Robert W. Hunter |
| Securitizations | The seven residential mortgage-backed securities purchased by Freddie Mac and Fannie Mae from Nomura that are the subject of this Action |

Defendants respectfully submit this memorandum in support of their motion to exclude under Federal Rules of Evidence 702 and *Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the trial testimony of plaintiff's proffered expert, Robert W. Hunter ("Hunter"), concerning owner occupancy status.

## PRELIMINARY STATEMENT

The Court should exclude Hunter's opinions about the "occupancy status" of the properties that served as collateral for the Sample Loans because they are irrelevant.

Hunter's opinions about borrower occupancy are unconnected to the actual representations in the collateral tables for the prospectus supplements. Hunter formulated his opinions about the falsity of owner occupancy rates in the collateral tables by examining whether borrowers fulfilled an obligation in their mortgage notes to occupy the subject premises for at least "12 months after origination of the loan." (Ex. 1 (Hunter Report) at 100.) This opinion and related evidence should be excluded because the Offering Documents make no representation that borrowers will fulfill the terms of their mortgage notes, or that they will actually occupy the properties for 12 months after origination. Hunter therefore did not address whether the actual disclosures in the Offering Documents about borrowers' stated intent to occupy were true.

Hunter's analysis is also irrelevant because he fails to evaluate whether the statistical information in the prospectus supplements concerning owner occupancy was true as of the relevant date in the Offering Documents. Instead, Hunter evaluates whether borrowers actually occupied properties after the loans were originated, and even <u>after</u> the prospectus supplements were issued, as though a borrower's failure to occupy a premises could retroactively render false disclosures that were true when made. Hunter does not address the only question that is relevant—whether the disclosures in the Offering Documents about occupancy data were true. *See* FED. R. EVID. 702.

## BACKGROUND

Plaintiff engaged Hunter as an expert to reunderwrite a sample of loans underlying each of the seven Nomura Securitizations at issue in this Action.  The relevant prospectus supplements provided tables that "set forth certain statistical information" for the collateral loans, including the percentage that were "owner occupied."  (Appendix A.)

Hunter originally opined that for 18.69% of the Sample Loans in the Securitizations, "owner occupancy was incorrectly reflected in the Prospectus Supplements' collateral tables" because, in Hunter's view, the properties "did not, in fact, appear to be occupied by the owner of the subject property."  (Ex. 1 (Hunter Report) at 115-116.)  In his October 6, 2014 Rebuttal Report, Hunter corrected that number, and now says that for 7.41% of properties (41 Sample Loans), the owner did not actually occupy the premises.  (Ex. 2 (Hunter Rebuttal Report) at 3.)

Hunter's review of the occupancy tables in the prospectus supplements was distinct from his review of potential underwriting defects in the loan files.  For his owner occupancy review, Hunter reviewed:

> Borrower and property records, including public records, bankruptcy filings, and consumer credit reports, to see whether the borrower claimed a different primary residence than that of the subject property, or if there was a change of address within 12 months after origination of the Mortgage Loan.  Twelve months was chosen as the benchmark, because most of the Mortgage Loan files contained agreements certifying that the borrower would occupy the mortgaged property for at least one year.

(Ex. 1 (Hunter Report) at 100.)

All of Hunter's findings concerning occupancy status are based on documents obtained in this litigation.  *See* (Ex. 3 (Excerpts of Exhibit 2A to Hunter Rebuttal Report).)  None of the documents existed at the time of origination.  None were in the loan files.  Hunter did not rely on any specialized methodology or technique for determining whether the "borrower

claimed a different primary residence than that of the subject property." (Ex. 1 (Hunter Report) at 100.)  Instead, he reviewed credit reports and other information available only after origination to determine whether the borrower had been associated with another address. (*Id.*)

**ARGUMENT**

I. **HUNTER'S OPINIONS CONCERNING OWNER OCCUPANCY STATUS ARE NOT HELPFUL TO THE TRIER OF FACT BECAUSE THEY ADDRESS AN IRRELEVANT ISSUE.**

Federal Rule of Evidence 702 requires that expert opinions be helpful to the jury to be admissible.  FED. R. EVID. 702.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591.  Hunter's opinions on occupancy must be excluded because they are not relevant to the question of whether the Offering Documents misrepresented owner occupancy data.[1]

    A.    **Hunter's Testimony Does Not Assess the Intent of Borrowers to Occupy a Property.**

To support his opinion that the Offering Documents misrepresented owner occupancy statistics, Hunter evaluated whether there was "a change of address within 12 months after origination of the Mortgage Loan" because "most of the Mortgage Loan files contained agreements certifying that the borrower would occupy the subject property for at least one year." (Ex. 1 (Hunter Report) at 100.)  Hunter testified at deposition that he examined whether borrowers abided by a signed commitment that they "will live in the property within 60 days and [ ] will live in the property for 12 months." (Ex. 4 (Hunter Tr.) at 303:6-12.)

This inquiry is not relevant.  There are no representations in the Offering Documents that borrowers will fulfill the terms of their mortgage notes.  The Offering

---

[1]    Hunter also has opined that certain loans were not underwritten properly due to purported "red flags" concerning borrowers' intent to occupy the subject properties.  Those opinions are not the subject of this motion.

Documents do not purport to predict whether any borrower would occupy a property after signing a mortgage note.  Nor do they make any representations that borrowers will abide by a contractual commitment of this nature or that borrowers would actually live in the home after the securitizations were purchased by Freddie Mac or Fannie Mae.

Rather, the owner occupancy data in the Offering Documents reflect the percentages of borrowers who had indicated in their loan applications that they intended to occupy the premises.  Fannie Mae analyst Lin Cao agreed that owner occupancy statistics "referred to the percentage of borrowers who stated that they intended to occupy the home."  (Ex. 5 (Cao Tr.) at 644:12-645:6.)  Freddie Mac trader Perri Henderson testified that she couldn't "think of any other way, at that time, that you can verify" owner occupancy, other than the borrower's stated intent in the loan application.  (Ex. 6 (Henderson Tr.) at 185:8-189:24.)  Similarly, Fannie Mae trader Ashely Dyson agreed that owner occupancy statistics generally disclosed in offering documents were based on the borrower's stated intent in the loan application.  (Ex. 7 (Dyson Tr.) at 549:19-552:7.)  Plaintiff's due diligence expert, Leonard A. Blum, made the same point:  when asked "what his understanding of what" the occupancy representations means in the Offering Document for 2006-FM1, he testified that it meant "at the time of origination the borrower truthfully filled out a Form 1003, the application statement, [and] that [the] borrower intended to occupy that property for more than half of the time for the following 365 days . . . ."  (Ex. 8 (Blum Tr.) at 187:6-22.)

The question of a borrower's intent to occupy a property is especially important for purchase money mortgages.  Hunter agreed in his deposition that "in order to test whether the borrower is misrepresenting" occupancy in a purchase mortgage "one would have to inquire about his or her intent" because a borrower taking out a purchase mortgage "hasn't yet taken

ownership of the house." (Ex. 4 (Hunter Tr.) at 289:17-290:2.) Freddie Mac's Private Label Securities portfolio manager, Michael Aneiro, concurred, testifying that owner occupancy for a purchase money loan means "[t]here's an intent for the owner to occupy the premises." (Ex. 9 (Aneiro Tr.) at 305:13-307:1.)

Hunter offers no evidence concerning, and does not purport to opine on, whether borrowers intended to occupy the properties. Indeed, Hunter admitted that his opinions have nothing to do with borrower intent. (Ex. 4 (Hunter Tr.) at 303:6-18 ("Q. The key question when it comes to occupancy is intent, would you agree? A. . . . We are not investigating the intent.").) Hunter could not investigate intent; he never spoke to any borrowers. (Ex. 4 (Hunter Tr.) at 300:15-21.) Rather, Hunter opines on whether borrowers in fact occupied the subject properties for 12 months after closing. (Ex. 1 (Hunter Report) at 100.) That opinion does not address whether the occupancy representations in the Offering Documents were accurate, and it is therefore irrelevant and inadmissible.[2]

### B. Hunter's Testimony Does Not Address the Occupancy Disclosures as of the Relevant Date in the Offering Documents.

As shown above, the disclosures in the Offering Documents relate to borrowers' intent at the time of origination. Hunter, however, based opinions regarding purported occupancy misstatements on evidence that a borrower moved out of the subject property after

---

[2] Even if Hunter did offer an opinion on the intent of borrowers, such an expert opinion would be improper. *In re Fosamax*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) ("[T]he knowledge, motivations, intent, state of mind, or purposes" of a corporation or its employees is "not a proper subject for expert or even lay testimony.") As Judge Kaplan explained in *Rezulin*, "[i]nferences about the intent or motive of parties or others lies outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp 2d. 531, 547 (S.D.N.Y 2004). There, the court excluded expert testimony opining about the defendant's intent including, for example, testimony that the defendant removed a drug from the market due to safety concerns. *Id.* at 546-47. The court explained that the expert's testimony was inadmissible because "the question of intent is a classic jury question and not one for the experts." *Id.* at 547 (internal quotation marks omitted).

origination. (*See* Ex. 1 (Hunter Report) at 100.) For example, Hunter opines that the borrower for the NHELI_2006_FM2_2002233153, a loan backing the 2006-FM2 Securitization, misrepresented an intent to occupy that property because an ▮▮▮▮▮ ▮▮▮▮▮ (Ex. 10 (Excerpt of Exhibit 2A to Hunter Rebuttal Report for NHELI_2006_FM2_2002233153).) That loan was originated on ▮▮▮▮▮ ▮▮▮▮▮. (*Id.*) Evidence purporting to show a borrower ▮▮▮▮▮ ▮▮▮▮▮ is not relevant to—and could not possibly be relevant to—the truthfulness of the Offering Document's disclosure.

Even if the Offering Documents' disclosures concerning occupancy relate to occupancy information as of the "cut-off" date—a date in each prospectus supplement by which certain disclosed characteristics are expected to be accurate (Appendix B)[3]—Hunter's testimony does not address the right question. Hunter made no effort to evaluate whether the borrowers had occupied or intended to occupy the subject properties as of any date specified in the Offering Documents. As a result, for 17 loans—or 41% of the 41 Sample Loans Hunter claims were misrepresented as owner occupied—Hunter relies on evidence that a borrower moved out of the subject property after the "cut-off" date specified in the Offering Documents. (Ex. 11 (Excerpts of Occupancy Allegations from Past Cut-off Date from Exhibit 2A to Hunter Rebuttal Report.)

\* \* \*

Hunter's opinions concerning owner occupancy do not address the disclosures on which plaintiff bases its claims, and this cannot assist the trier of fact to understand the evidence

---

[3]   In its December 18, 2014 Opinion and Order on Nomura's due diligence defense, this Court stated that Nomura typically stated in the Offering Documents that mortgage loans would have certain characteristics, including owner occupancy, "as of the cut-off date" (which was prior to the closing date of the Securitization). Opinion and Order, Doc. No. 991, at 31-32.

or determine a fact in issue. Hunter should be excluded from testifying concerning owner occupancy at trial. *See Daubert*, 509 U.S. at 591; *see also* FED. R. EVID. 702.

-7-

# CONCLUSION

The Court should exclude the trial testimony of Robert W. Hunter concerning owner occupancy status under Federal Rules of Evidence 702 and *Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated:  New York, New York
        December 24, 2014

                                        Respectfully submitted,


/s/ Thomas C. Rice                              /s/ David B. Tulchin
Thomas C. Rice (trice@stblaw.com)               David B. Tulchin (tulchind@sullcrom.com)
David J. Woll (dwoll@stblaw.com)                Steven L. Holley (holleys@sullcrom.com)
Andrew T. Frankel (afrankel@stblaw.com)         Bruce E. Clark (clarkb@sullcrom.com)
Alan Turner (aturner@stblaw.com)                Bradley A. Harsch (harschb@sullcrom.com)
Craig S. Waldman (cwaldman@stblaw.com)          Katherine J. Stoller (stollerk@sullcrom.com)
SIMPSON THACHER & BARTLETT LLP                  SULLIVAN & CROMWELL LLP
425 Lexington Avenue                            125 Broad Street
New York, NY  10017                             New York, NY  10004
Telephone:  212-455-2000                        Telephone:  212-558-4000
Facsimile:  212-455-2502                        Facsimile:  212-558-3588

*Attorneys for Defendant RBS Securities Inc.*   Amanda F. Davidoff
                                                (davidoffa@sullcrom.com)
                                                Elizabeth A. Cassady
                                                (cassadye@sullcrom.com)
                                                SULLIVAN & CROMWELL LLP
                                                1700 New York Avenue, NW, Suite 700
                                                Washington, DC  20006
                                                Telephone:  202-956-7500
                                                Facsimile:  202-956-6993

                                                *Attorneys for Defendants Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca ("Nomura Defendants")*

# Appendix A

| Security | Owner Occupancy Statistics |
|---|---|
| Ex. 12 (2005-AR6 Prospectus Supplement) at NOM-FHFA_04811862 | **Occupancy Status of the Group III Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Cut-off Date Principal Balance | Percentage by Aggregate Cut-off Date Principal Balances |<br>|---|---|---|---|<br>| Owner-Occupied | 188 | $ 45,212,780.49 | 56.59% |<br>| Investor | 155 | 27,739,774.40 | 34.72 |<br>| Second Home | 33 | 6,937,353.23 | 8.68 |<br>| Total: | 376 | $ 79,889,908.12 | 100.00% | |
| Ex. 13 (2006-FM1 Prospectus Supplement) at NOM-FHFA_04729516 | **Occupancy Status of the Group I Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Aggregate Remaining Principal Balance | % of Aggregate Remaining Principal Balance | Gross Coupon (%) | FICO | LTV (%) | Stated Remaining Term (Months) | Full/Alt Doc (%) |<br>|---|---|---|---|---|---|---|---|---|<br>| Owner-Occupied | 2,248 | $359,350,173 | 88.63% | 7.658 | 609 | 80.84 | 355 | 54.85 |<br>| Investor | 260 | 41,773,681 | 10.30 | 8.028 | 643 | 82.91 | 355 | 54.54 |<br>| 2nd Home | 24 | 4,312,334 | 1.06 | 7.469 | 638 | 82.64 | 355 | 57.68 |<br>| Total: | 2,532 | $405,436,188 | 100.00% | 7.694 | 612 | 81.07 | 355 | 54.85 | |
| Ex. 14 (2006-FM2 Prospectus Supplement) at NOM-FHFA_04638365 | **Occupancy Status of the Group I Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Aggregate Remaining Principal Balance | % of Aggregate Remaining Principal Balance | Weighted Average Mortgage Rate (%) | Nonzero Weighted Average FICO | Weighted Average Original LTV (%) | Weighted Average Stated Remaining Term (Months) | Full/Alt Doc (%) |<br>|---|---|---|---|---|---|---|---|---|<br>| Owner-Occupied | 3,628 | $ 630,190,865 | 93.05% | 8.569% | 619 | 80.72% | 355 | 56.90% |<br>| Investor | 247 | 43,162,888 | 6.37 | 8.932 | 635 | 78.51 | 355 | 64.63 |<br>| 2nd Home | 16 | 3,883,941 | 0.57 | 8.099 | 637 | 80.99 | 355 | 49.95 |<br>| Total/Weighted Average: | 3,891 | $ 677,237,695 | 100.00% | 8.590% | 620 | 80.58% | 355 | 57.36% | |
| Ex. 15 (2006-HE3 Prospectus Supplement) at NOM-FHFA_04620933 | **Occupancy Status of the Group I Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Aggregate Remaining Principal Balance | % of Aggregate Remaining Principal Balance | Weighted Average Mortgage Rate (%) | Nonzero Weighted Average FICO | Weighted Average Original LTV (%) | Weighted Average Stated Remaining Term (Months) | Full/Alt Doc (%) |<br>|---|---|---|---|---|---|---|---|---|<br>| Owner-Occupied | 3,239 | $ 525,220,634 | 89.59% | 8.209% | 602 | 78.72% | 350 | 59.10% |<br>| Investor | 335 | 51,723,077 | 8.82 | 8.591 | 649 | 81.52 | 354 | 47.50 |<br>| 2nd Home | 44 | 9,305,436 | 1.59 | 8.503 | 627 | 79.36 | 353 | 34.55 |<br>| Total/Weighted Average: | 3,618 | $ 586,249,148 | 100.00% | 8.247% | 607 | 78.97% | 351 | 57.69% | |
| Ex. 16 (2007-1 Prospectus Supplement) at NOM-FHFA_05141991 | **Occupancy Status of the Group II Mortgage Loans**<br><br>| Occupancy Status | Percentage of Pool by Principal Balance | Number of Mortgage Loans | Aggregate Remaining Principal Balance | Weighted Average Mortgage Rate (%) | Non-zero Weighted Average FICO | Average Remaining Principal Balance | Weighted Average Original LTV(%) | Weighted Average Combined LTV(%) | Lo Doc* (%) | Investor Properties (%) |<br>|---|---|---|---|---|---|---|---|---|---|---|<br>| Owner Occupied | 72.12% | 1,093 | $ 432,721,434.86 | 7.069% | 697 | $ 395,902.50 | 77.41% | 91.12% | 45.16% | 0.00% |<br>| Second Home | 9.32 | 169 | 55,935,071.19 | 7.554 | 720 | 330,976.75 | 77.23 | 91.44 | 64.74 | 0.00 |<br>| Investor | 18.56 | 489 | 111,382,021.75 | 7.652 | 722 | 227,775.10 | 77.81 | 89.93 | 45.44 | 100.00 |<br>| Total/Weighted Average: | 100.00% | 1,751 | $ 600,038,527.80 | 7.223% | 704 | $ 342,683.34 | 77.47% | 90.93% | 47.03% | 18.56% | |
| Ex. 17 (2007-2 Prospectus Supplement) at NOM-FHFA_05591378 | **Occupancy Status of the Group I Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Aggregate Remaining Principal Balance | % of Aggregate Remaining Principal Balance | Weighted Average Mortgage Rate (%) | Nonzero Weighted Average FICO | Weighted Average Original LTV (%) | Weighted Average Stated Remaining Term (Months) | Full/Alt Doc (%) |<br>|---|---|---|---|---|---|---|---|---|<br>| Owner-Occupied | 2,731 | $ 437,629,409 | 90.86% | 8.267% | 618 | 81.87% | 355 | 66.15% |<br>| Investor | 228 | 36,248,500 | 7.53 | 8.735 | 647 | 80.93 | 352 | 42.58 |<br>| 2nd Home | 42 | 7,796,118 | 1.62 | 8.680 | 621 | 85.50 | 351 | 35.77 |<br>| Total/Weighted Average: | 3,001 | $ 481,674,027 | 100.00% | 8.309% | 621 | 81.86% | 354 | 63.89% | |

| Security | Owner Occupancy Statistics |
|---|---|
| Ex. 18 (2007-3 Prospectus Supplement) at NOM-FHFA_04732674 | **Occupancy Status of the Group I Mortgage Loans**<br><br>| Occupancy Status | Number of Mortgage Loans | Aggregate Remaining Principal Balance | % of Aggregate Remaining Principal Balance | Weighted Average Mortgage Rate (%) | Nonzero Weighted Average FICO | Weighted Average Original LTV (%) | Weighted Average Stated Remaining Term (Months) | Full/Alt Doc (%) |
|---|---|---|---|---|---|---|---|---|
| Owner-Occupied | 1,707 | $ 298,292,893 | 89.21% | 8.270% | 616 | 81.07% | 351 | 58.64% |
| Investor | 139 | 25,765,048 | 7.71 | 8.593 | 654 | 81.66 | 355 | 64.43 |
| 2nd Home | 50 | 10,328,643 | 3.09 | 8.306 | 663 | 85.83 | 355 | 35.79 |
| Total/Weighted Average: | 1,896 | $ 334,386,584 | 100.00% | 8.296% | 621 | 81.27% | 352 | 58.38% | |

A-2

**Appendix B**

| Security | Cut-Off Date |
|---|---|
| Ex. 12 (2005-AR6 Prospectus Supplement) | • Cut-off Date: November 1, 2005.  NOM-FHFA_04811807.<br><br>• "As of the Cut-off Date, the Mortgage Loans will have the characteristics as set forth in the table on Page S-8 of this prospectus supplement."  NOM-FHFA_04811808. |
| Ex. 13 (2006-FM1 Prospectus Supplement | • Cut-off Date: January 1, 2006.  NOM-FHFA_04729479.<br><br>• "As of the Cut-off Date, the Mortgage Loans will have the characteristics as set forth in the table on page S-10 of this prospectus supplement."  NOM-FHFA_04729480. |
| Ex. 14 (2006-FM2 Prospectus Supplement) | • Cut-off Date: October 1, 2006.  NOM-FHFA_04638320.<br><br>• "As of the Cut-off Date, the Mortgage Loans will have the characteristics as set forth in the table on pages S-11, S-12 and S-13 of this prospectus supplement."  NOM-FHFA_04638321. |
| Ex. 15 (2006-HE3 Prospectus Supplement) | • Cut-off Date: August 1, 2006.  NOM-FHFA_04620890.<br><br>• "As of the Cut-off Date, the Mortgage Loans will have the characteristics as set forth in the table on pages S-11, S-12 and S-13 of this prospectus supplement."  NOM-FHFA_04620891. |
| Ex. 16 (2007-1 Prospectus Supplement) | • Cut-off Date: January 1, 2007.  NOM-FHFA_05141919.<br><br>• "As of the Cut-off Date, the Group I Mortgage and Group II Mortgage Loans will have the characteristics as set forth in the tables on pages S-20, S-21, S-22 and S-23 of this prospectus supplement."  NOM-FHFA_05141920. |
| Ex. 17 (2007-2 Prospectus Supplement) | • Cut-off Date: January 1, 2007.  NOM-FHFA_05591330.<br><br>• "As of the Cut-off Date, the Mortgage Loans will have the characteristics as set forth in the tables on pages S-13, S-14 and S-15 of this prospectus supplement."  NOM-FHFA_05591331. |

B-2

| Security | Cut-Off Date |
|---|---|
| Ex. 18 (2007-3 Prospectus Supplement) | <ul><li>Cut-off Date: April 1, 2007.  NOM-FHFA_04732627.</li><li>As of the Cut-off Date, [the Mortgage Loans] will have the characteristics as set forth in the tables on pages S-12, S-13 and S-14 of this prospectus supplement.  NOM-FHFA_04732629.</li></ul> |