**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> -against- <br><br> NOMURA HOLDING AMERICA INC., *et al.*, <br><br> Defendants. | No. 11-cv-6201 (DLC) <br><br> <u>ECF Case</u> |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO EXCLUDE THE TESTIMONY OF**
<u>**ROBERT W. HUNTER CONCERNING OWNER OCCUPANCY STATUS**</u>

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC  20006
Telephone:  202-956-7500
Facsimile:  202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
Telephone:  212-455-2000
Facsimile:  212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

January 20, 2015

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................................1

I.    Hunter's Testimony Concerning Owner Occupancy Status is Irrelevant to the
      Disclosures in the Offering Documents .................................................................1

      A.    Hunter's Testimony About Compliance with the Terms of Certain Mortgage
            Documents is Irrelevant.................................................................................2

      B.    Hunter's Testimony Does Not Address Owner Occupancy Disclosures as of Any
            Relevant Date ................................................................................................6

CONCLUSION .....................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Concorde Funds, Inc.* v. *Value Line, Inc.*,
2006 WL 522466 (S.D.N.Y. Mar. 2, 2006) .................................................................6

*Daubert* v. *Merrell Dow Pharmaceuticals Inc.*,
509 U.S. 579 (1993) ...................................................................................................1, 8

*FHFA* v. *UBS Americas, Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012) ..........................................................................5

*Harsco Corp.* v. *Segui*,
91 F.3d 337 (2d Cir. 1996) ...........................................................................................6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) .........................................................................................1

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp 2d. 531 (S.D.N.Y 2004) ............................................................................6

**Rule**

Federal Rule of Evidence 702 ..................................................................................1, 8

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Action | *FHFA* v. *Nomura Holding America Inc.*, *et al.*, No. 11 Civ. 6201 (DLC) |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca |
| Def. Br. | Defendants' Memorandum of Law in Support of Their Motion to Exclude Testimony of Robert W. Hunter Concerning Owner Occupancy Status, dated December 24, 2014, in this Action |
| Ex. | Exhibit to the December 24, 2014 Declaration of Kunal J. Choksi submitted in support of Defendants' Motion to Exclude Testimony of Robert W. Hunter Concerning Owner Occupancy Status |
| Hunter Report | Expert Report of Robert W. Hunter, Regarding the Underwriting of Mortgage Loans Underlying the Nomura Securitizations, dated May 15, 2014 |
| Offering Documents | The offering materials for the Securitizations, including documents filed with the Securities and Exchange Commission |
| Opp. | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Exclude Testimony of Robert W. Hunter Concerning Owner Occupancy Status, dated January 8, 2015, in this Action |
| Pl. Ex. | Exhibit to the January 8, 2015 Declaration of Manisha M. Sheth in Opposition to Defendants' Motion to Exclude Testimony of Robert W. Hunter Concerning Owner Occupancy Status |

Defendants respectfully submit this reply memorandum in support of their motion under Federal Rule of Evidence 702 and *Daubert* v. *Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 597 (1993), to exclude the trial testimony and opinions of plaintiff's designated expert Robert W. Hunter concerning owner occupancy status.

**ARGUMENT**

**I.     HUNTER'S TESTIMONY CONCERNING OWNER OCCUPANCY STATUS IS IRRELEVANT TO THE DISCLOSURES IN THE OFFERING DOCUMENTS**

Hunter's proposed testimony that 7.41% of the Sample Loans were made to borrowers who did not occupy the subject properties at some point long after origination is irrelevant to the issue of whether any statement in the Offering Documents was false or misleading.  *See, e.g., In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010).  The factual record uniformly shows that the occupancy statistics in the Offering Documents represent the stated intent of borrowers at the time of origination to occupy the subject property.  (Def. Br. at 4-5.)  Hunter addresses only the different question of whether borrowers had fulfilled an agreement with their lenders to occupy the properties for a period of 12 months after origination absent "lender consent or extenuating circumstances." (Opp. at 15.)  The Offering Documents contain no representations about such contractual obligations.

Hunter's testimony about owner occupancy is also irrelevant because it fails to address any time period relevant to the Offering Documents.  (Def. Br. at 3-4.)  Hunter's testimony about owner occupancy should thus be excluded under Federal Rule of Evidence 702 and *Daubert* v. *Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**A.      Hunter's Testimony About Compliance with the Terms of Certain Mortgage Documents is Irrelevant.**

The question of whether borrowers satisfied the terms of certain agreements they signed when they applied for loans has no relevance to any issue in this action.  As plaintiff admits, Hunter purported to analyze borrowers' compliance with occupancy agreements which provide that a borrower "shall continue to occupy the Property as [the] Borrower's principal residence for at least one year after the date of occupancy," and that a "failure to occupy the property . . . will constitute a default" absent "lender consent or extenuating circumstances." (Opp. at 3-4, 15.)  According to plaintiff, Hunter "applied th[e] definition" from these occupancy agreements as his basis for concluding that a borrower misrepresented his or her occupancy status whenever Hunter claims to have evidence that "it was more likely than not that the borrower [did not] live[ ] in the subject property during the required occupancy term."  (Opp. at 7, 15; Ex. 1 (Hunter Report) at 100.)  Hunter's opinion that the Offering Documents were false thus depends, as plaintiff concedes, on his assertion that a borrower did not "live in the property for the requisite time period" specified in an occupancy agreement.  (Opp. at 15.)

The Offering Documents make no mention of occupancy agreements or compliance with them.  (Def. Br. 3-4.)  The Offering Documents also do not make any representation about whether any of the mortgage loans later were (or could be) in default due to a breach of the terms of an occupancy agreement.  (*Id.*)  As a result, the occupancy agreements that form the basis for Hunter's conclusions are entirely irrelevant.

For example, Hunter contends that occupancy statistics were misrepresented because 17 borrowers defaulted on their mortgage notes after the relevant Cut-Off Date set forth in the Offering Document.  (Ex. 11 (Excerpts of Occupancy Allegations from Past Cut-off Date from Exhibit 2A to Hunter Rebuttal Report); Opp. at 15.)  Plaintiff argues that this opinion is

-2-

"entirely proper" because the mortgage notes "require that a borrower use the property as his

primary residence for a period of twelve months after closing . . . ." (Opp. at 15.)  But plaintiff

never confronts the obvious flaw in its position:  The Offering Documents represent the facts as

of the Cut-Off Date only.  Those representations do not become retroactively false if the borrower

no longer "uses the property as his primary residence" at some point after the Cut-Off Date.

Plaintiff offers nothing to contradict the point that all the evidence shows that the

collateral tables in the Offering Documents refer to the percentage of loans backing the

Securitizations for which borrowers had stated at the time of origination that they intended to

occupy the subject properties.  (Def. Br. at 4-6.)  Plaintiff presents no other plausible meaning for

those occupancy statistics.[1]

Plaintiff cites only Hunter's deposition testimony where he affirms that he is not

investigating borrowers' intent but that he considered instead whether borrowers abided by their

agreements with lenders to "live in the property within 60 days" and "live in the property for 12

months." (Opp. at 3.)  This testimony confirms that Hunter addressed the wrong question.[2]  And,

although plaintiff asserts that Hunter testified that "[i]n the residential mortgage industry, a

property is considered to be owner occupied when the borrower uses the mortgage property as his

---

[1]    Plaintiff's argument that Nomura's Offering Documents did not contain an explicit
"disclaimer" that occupancy statistics reflected borrower representations does not change the
meaning of the statistics.  Opp. at 1.  Plaintiff offers no reading of the occupancy statistics other
than the obviously flawed and illogical theory that they make representations about borrowers'
future compliance with contractual commitments to occupy a property.  The Offering Documents
never say anything about those contractual provisions.

[2]    Even if compliance with occupancy agreements were the correct question here (it is not),
Hunter's testimony does not reliably test a borrower's compliance with the terms of such
agreements.  The terms of the occupancy agreements, as plaintiff admits, allowed a borrower to
move before the 12 month period with "consent from the lender" or a showing of "extenuating
circumstances." Opp. at 4 n.4; Pl. Ex. 4.  Hunter never purports to assess whether any borrowers
received such consent or whether extenuating circumstances existed.

or her primary residence for a specific period of time" (*id*. (citing Hunter Tr. at 303:9-12)), Hunter never said as much in either his testimony or his report.  When the Offering Documents refer to occupancy statistics, they are clearly reporting the stated intent of borrowers at loan origination.

Plaintiff attempts to explain away the clear testimony of Freddie Mac and Fannie Mae traders (who dealt with offering documents as part of their responsibilities) that occupancy statistics in offering documents represent borrowers' stated intent by noting that the traders did not specifically testify about Nomura's Offering Documents.  (Opp. at 11-12.)  Plaintiff provides no evidence (through an affidavit, declaration or otherwise) that the traders' interpretations of the same or similar disclosures in Nomura's Offering Documents would have been different. Further, deposition testimony taken jointly by defendants in all related actions applies to all offering documents, because deposition limitations prevented defendants from asking every witness about each of their offering documents.  That is especially true of Nomura, which was one of the smallest defendants and thus had very little time to question Freddie Mac and Fannie Mae traders at their depositions.

Plaintiff also fails to meaningfully address the testimony of its own due diligence expert, Leonard Blum, that the occupancy statistics set forth in the Offering Document for 2006-FM2 represented borrowers' "intent[ ] to occupy" the subject property.  (Ex. 8 (Blum Tr.) at 187:6-22.)  Blum recognized the point that the Offering Documents plainly refer only to the stated intent of borrowers, not to whether borrowers complied with contractual obligations to live in the properties for a stated period of time (a subject to which the Offering Documents never refer).  Even the plain terms of the occupancy agreements on which Hunter relies show that occupancy statistics refer to  a borrower's intent to occupy the property.  The terms of the

-4-

occupancy agreement plaintiff attached to its Opposition state that the "[b]orrower *intends* to

occupy the property as the [b]orrower's primary residency" and "*intends* to occupy the property"

for a year. (Pl. Ex. 4. (emphasis added).) The fact that a borrower is simply stating his or her

intention to occupy the property when entering into that agreement is fully in accord with

defendants' position on this motion.[3]

This Court's May 2012 decision denying UBS defendants' Motion to Dismiss did

not, as plaintiff states, relieve plaintiff of its burden to prove the falsity of borrowers' stated intent

to occupy a property. (Opp. at 2.) In that decision, this Court rejected the UBS defendants'

argument on a motion to dismiss that they were not liable for incorrect occupancy statistics in the

prospectus supplements merely because the prospectus supplements disclosed that the data was

"as reported by the" borrower. *FHFA* v. *UBS Americas, Inc.,* 858 F. Supp. 2d 306, 329

(S.D.N.Y. 2012). Defendants' argument here—that the occupancy statistics were not incorrect,

because they truthfully reflect the stated intent of borrowers (Def. Br. at 4-5)—is entirely

different. The Court's opinion in *UBS* never interpreted the disclosures in the Nomura prospectus

supplements and certainly never rejected the fact—which is now well supported in the record

(Def. Br. at 4-5)—that occupancy statistics reflect borrowers' stated intent. To the contrary, the

Court reserved judgment on whether "defendants are correct with regard to the proof that would

be required at trial" to show falsity of the owner occupancy statistics. 858 F. Supp. 2d at 330.

It is undisputed that Hunter's testimony does not—and cannot—assess a

borrower's intent. (Opp. at 8 n.13 (conceding that "an expert may not opine on intent or state of

---

[3]     Indeed, for purchase money mortgages, occupancy agreements must represent a borrower's intent at the time of origination because a purchasing borrower does not own the property at the time he or she signs the mortgage application and occupancy agreement documents. Def. Br. at 4-5; Ex. 4 (Hunter Tr.) at 303:6-18.

mind"); Def. Br. at 5 n.2.)  *See also In re Rezulin Prods. Liab. Litig.,* 309 F. Supp 2d. 531, 547

(S.D.N.Y 2004).  Further, even if Hunter could show that a small number of borrowers defaulted

on their mortgage notes, that fact would have no bearing on whether those borrowers accurately

stated their intent to occupy the respective properties at the time of origination.  Instead,

statements of future intention are actionable only "when a person 'state[s] that something was to

be done when he kn[ows] all the time it was not to be done and that his representations were

false.'"  *Harsco Corp.* v. *Segui*, 91 F.3d 337, 346 n.7 (2d Cir. 1996) (alterations in original);

*Concorde Funds, Inc.* v. *Value Line, Inc.,* 2006 WL 522466, at \*5 n.9 (S.D.N.Y. Mar. 2, 2006)

("In order to plead [falsity] when the statements relied upon were ones of future intent, 'a plaintiff

must also show that the person making the promise had no intention of performing at the time he

made the promise.'" (citations omitted)).

Hunter's testimony about future compliance with the terms of occupancy

agreements is not relevant to any disclosure in the Offering Documents.

### B.    Hunter's Testimony Does Not Address Owner Occupancy Disclosures as of Any Relevant Date.

The fact that Hunter's testimony concerning occupancy is not directed to any time

period related to the Offering Documents also makes his testimony irrelevant.  Because

occupancy statistics reflect borrowers' stated intent at the time they applied for their mortgage

loans, the time of origination is the only relevant time for an inquiry into the accuracy of the

occupancy statistics.[4]  There is no dispute that Hunter's inquiry was not directed to borrowers'

stated intention at the time of origination.  (Opp. at 13-15.)

---

[4]    Plaintiff is incorrect to assert that defendants do not "challenge the evidence or methodology used by Mr. Hunter."  Opp. at 11 n.16.  In fact, defendants challenged Hunter's use in his occupancy review of information not available at the time of origination in Defendants'

(*footnote continued*)

Plaintiff claims that the occupancy statistics set forth in the Offering Documents were represented to be accurate as of the Cut-off Dates.  (Opp. at 2, 13; Def. Br. at App'x B.) This does not come close to saving Hunter's testimony.  First, the accuracy of statistics about borrowers' stated intent at the time of origination—whether assessed as of a Cut-off Date or any other date—depends on information available when the borrowers made those representations. When Hunter relies on evidence that borrowers did not occupy properties during a later time period (within one year after closing), he relies on facts that are irrelevant for measuring compliance with any representation in the Offering Documents.  Second, Hunter never even purports to assess the occupancy statistics as of the Cut-off Dates.  Indeed, Hunter opines that 17 loans—more than 40% of the 42 loans for which he alleges occupancy information was misstated—were misrepresented as owner occupied where there was purportedly evidence arising *after* the relevant Cut-Off Dates that the borrowers were not living in the subject properties.  (Ex. 11 (Excerpts of Occupancy Allegations from Past Cut-off Date from Exhibit 2A to Hunter Rebuttal Report); Opp. at 15.)  Hunter never limited himself to the facts as of the Cut-Off Date and instead wrongfully measured the accuracy of representations in the Offering Documents with reference to events that took place even after the Cut-Off Date.

---

(*footnote continued*)

January 5, 2015 Motion to Exclude Testimony of Robert W. Hunter Based on Information Not Available at Origination.

**CONCLUSION**

The Court should exclude the testimony of Robert W. Hunter concerning owner

occupancy status under Federal Rule of Evidence 702 and *Daubert* v. *Merrill Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: New York, New York
January 20, 2015

Respectfully submitted,

| /s/ Thomas C. Rice | /s/ David B. Tulchin |
|---|---|
| Thomas C. Rice (trice@stblaw.com) | David B. Tulchin (tulchind@sullcrom.com) |
| David J. Woll (dwoll@stblaw.com) | Steven L. Holley (holleys@sullcrom.com) |
| Andrew T. Frankel (afrankel@stblaw.com) | Bruce E. Clark (clarkb@sullcrom.com) |
| Alan Turner (aturner@stblaw.com) | Bradley A. Harsch (harschb@sullcrom.com) |
| Craig S. Waldman (cwaldman@stblaw.com) | Katherine J. Stoller (stollerk@sullcrom.com) |
| SIMPSON THACHER & BARTLETT LLP | SULLIVAN & CROMWELL LLP |
| 425 Lexington Avenue | 125 Broad Street |
| New York, NY  10017 | New York, NY  10004 |
| Telephone:  212-455-2000 | Telephone:  212-558-4000 |
| Facsimile:  212-455-2502 | Facsimile:  212-558-3588 |

*Attorneys for Defendant RBS Securities Inc.*

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC  20006
Telephone:  202-956-7500
Facsimile:  202-956-6993

*Attorneys for Defendants Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca ("Nomura Defendants")*