UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
FEDERAL HOUSING FINANCE AGENCY, etc., : **PLAINTIFF'S REPLY IN**
: **FURTHER SUPPORT OF ITS**
           Plaintiff, : **MOTION TO EXCLUDE THE**
    v. : **OPINION AND TESTIMONY**
: **OF DEFENDANTS' EXPERT**
NOMURA HOLDING AMERICA INC., et. al., : **TIMOTHY J. RIDDIOUGH**
           Defendants. :
: 11 Civ. 6201 (DLC)
:
------------------------------------------------------------------- x


QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

Philippe Z. Selendy
Jordan A. Goldstein
Toby E. Futter

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,
as Conservator for Fannie Mae and Freddie Mac*

**TABLE OF CONTENTS**

                                                                      **Page**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ...................................................................................................................................3

I.     LEGALLY INCORRECT OR UNRELIABLE TESTIMONY IS INADMISSIBLE .................................................................................................3

II.    DR. RIDDIOUGH DOES NOT FOLLOW THE SECTION 11 FORMULA OF USING THE "AMOUNT PAID" TO CALCULATE DAMAGES ....................................4

III.   DR. RIDDIOUGH'S $62 MILLION DISCOUNT TO FHFA'S SECTION 11 CLAIMS IS ARBITRARY AND IMPROPER .................................................................5

IV.   DR. RIDDIOUGH DOES NOT FOLLOW THE FORMULAS IN SECTION 12 AND THE BLUE SKY LAWS .......................................................................................7

        A.    Nomura Concedes That Dr. Riddiough Cannot Apply a Non-Existent Loss Causation Defense To FHFA's Blue Sky Claims......................................................7

        B.    Dr. Riddiough Incorrectly Calculates The "Consideration Paid" For The Certificates ...............................................................................................................7

        C.    Dr. Riddiough Improperly Reduces FHFA's Section 12 And Blue Sky Recoveries By Interest On Income The GSEs Received .........................................8

CONCLUSION ................................................................................................................................9

## **TABLE OF AUTHORITIES**

**Page**

**Cases**
*FHFA v. HSBC N. Am. Holdings Inc.*,
  988 F. Supp. 2d 363 (S.D.N.Y. 2013) ...................................................................................... 7
*Hebert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996) .................................................................................................. 3
*KB Home v. Antares Homes, Ltd.*,
  2007 WL 1893370 (N.D. Tex. June 28, 2007) ........................................................................ 3
*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
  No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014), *reconsideration
  denied*, 2014 WL 1909499 (S.D.N.Y. May 13, 2014) .............................................................. 7
*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ..................................................................................................... 3

**Statutes**
15 U.S.C. § 77k(e) ........................................................................................................................ 4
15 U.S.C. § 77*l*(a)(2) ................................................................................................................ 8, 9
D.C. Code § 28-3302(a) ................................................................................................................ 9
D.C. Code § 31-5606.05(b)(1)(A) ............................................................................................ 8, 9
Va. Code § 13.1-522(A) ............................................................................................................ 8, 9

Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "GSEs"), respectfully submits this memorandum of law in further support of its Motion to Exclude the Opinion and Testimony of Defendants' Expert Dr. Timothy J. Riddiough (the "Motion"), including as expressed in his November 7, 2014, rebuttal report on behalf of the Nomura defendants (the "Riddiough Report") and December 9, 2014, supplement.[1]

## PRELIMINARY STATEMENT

FHFA has moved to preclude Dr. Riddiough's testimony regarding FHFA's statutory damages. As set forth in the Memorandum, FHFA has identified four instances in which Dr. Riddiough ignored the applicable statutory text in determining FHFA's damages. Specifically, Dr. Riddiough in his report: (i) failed to use the actual "amount paid for the security" to determine Section 11 damages; (ii) failed to use the actual "consideration paid for such security" to determine Section 12 and Blue Sky recoveries; (iii) reduced Section 12 and Blue Sky recoveries based upon interest on income received on the Certificates; and (iv) applied a 98 percent loss causation discount to FHFA's Blue Sky recoveries, contrary to this Court's December 16, 2013, ruling that such a discount is impermissible. FHFA also moved in the Motion to preclude Dr. Riddiough's testimony because he applied an unsupported 15 percent adjustment to the price of the Certificates, resulting in an over $62 million reduction in FHFA's

---

[1] Except where otherwise specified, references to "Ex." are to the exhibits to the Declaration of Jordan A. Goldstein filed by FHFA on December 19, 2014, in support of the Motion, and references to "Mem." or "Memorandum" are to the Memorandum of Law filed by FHFA on December 19, 2014, in support of the Motion. Terms not otherwise defined shall have the meanings set forth in the Memorandum.

Section 11 damages. This discount is not supported by a reliable methodology, and Dr. Riddiough's testimony should be precluded for this reason as well.[2]

In its Memorandum in Opposition to the Motion (the "Opposition"), Nomura *agrees* with FHFA that Dr. Riddiough should not testify to a loss causation defense to FHFA's Blue Sky claims, and further *concedes* that Dr. Riddiough erred in excluding accrued interest from his calculation of Section 12 and Blue Sky recoveries. With respect to FHFA's two other challenges to Dr. Riddiough's application of the statutory damages formulas—*i.e.*, (i) his exclusion of accrued interest from Section 11 damages, and (ii) his subtracting from FHFA's Section 12 and Blue Sky recoveries interest on income the GSEs received from the Certificates—Nomura simply fails to respond to FHFA's argument that Dr. Riddiough's approach violates the plain language of the statutes. Instead, Nomura spends the bulk of its Opposition on FHFA's challenge to Dr. Riddiough's purported 15 percent "illiquidity discount" without adequately addressing the actual point of FHFA's *Daubert* challenge, which is that Dr. Riddiough's 15 percent adjustment is unsupported, arbitrary, and thus unreliable.

Because Nomura has failed to articulate any legitimate basis for its damages calculation, and in fact *concedes* two of the five issues FHFA has raised, Dr. Riddiough's damages testimony is unreliable and its admission would prejudice FHFA. FHFA respectfully requests that Dr. Riddiough's damages opinion and testimony be precluded.

---

[2] On January 12, 2015, FHFA moved for leave to amend its complaint to withdraw its Section 11 claims. Dkt. 1072. If that motion is granted, the instant *Daubert* will be mooted with respect to FHFA's Section 11 claims.

**ARGUMENT**

I.     **LEGALLY INCORRECT OR UNRELIABLE TESTIMONY IS INADMISSIBLE**

Expert testimony that rests on an incorrect legal standard will, by definition, not assist the trier of fact, but will instead cause confusion, and is thus *per se* inadmissible. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *see also* Mem. 8 (citing additional cases). Permitting Dr. Riddiough to testify to damages that were calculated based on his misreading of the applicable statutes, or based on an unreliable and arbitrary methodology, would serve no productive purpose and would prejudice FHFA, in contravention of the *Daubert* standard and Federal Rule of Evidence 403.

In response, Nomura actually *invites* such confusion, arguing that Dr. Riddiough's testimony—even if legally incorrect—should be admitted, and the jury should be asked to "sort it out." *See* Opp. 1 ("Plaintiff is free to press those criticisms (which are meritless) on cross-examination and let the jury decide what portions of Dr. Riddiough's testimony to credit …."). That approach is impermissible under *Daubert*. *See, e.g.*, *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law. Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.") (citing *Daubert*); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at *9 (N.D. Tex. June 28, 2007) (affirming determination of Magistrate Judge that "an expert witness must use a correct legal standard and that testimony that relies on an incorrect legal standard would 'confuse and mislead the jury'"). Expert testimony based on a misreading of the relevant statutes must be excluded, and Nomura asserts no plausible basis for permitting the introduction of such testimony.

3

## II. DR. RIDDIOUGH DOES NOT FOLLOW THE SECTION 11 FORMULA OF USING THE "AMOUNT PAID" TO CALCULATE DAMAGES

As described in the Motion, Section 11 provides that—where a plaintiff has retained the security at issue—damages are "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and … the value thereof as of the time such suit was brought." 15 U.S.C. § 77k(e). Calculating damages under Section 11 thus requires a determination of two factors: "the amount paid for the security" and "the value thereof as of the time such suit was brought." For two of the Certificates, the amount paid by the GSEs included accrued interest.[3]

Under the plain language of Section 11, "the amount paid for the security" includes whatever the GSEs paid for the securities, regardless of whether they eventually expected to receive some of that payment back in the form of principal or interest. Nothing in the statutory formula permits the trier of fact to exclude accrued interest—where that is part of the "amount paid" at the time of purchase—from its Section 11 damages calculation.

Dr. Riddiough's position is apparently that accrued interest must be excluded from the Section 11 calculation because the GSEs eventually received back that accrued interest as part of their first coupon payments. Riddiough Report ¶ 106 n.95. But this is inconsistent with Dr. Riddiough's approach elsewhere, in which he accepts that coupon payments do *not* reduce Section 11 damages. Riddiough Report, Exs. 14A.1 - 14D.2. And regardless of whether a purchaser *hopes* to receive back accrued interest that was paid to the seller at the time of purchase, there is no guarantee that the purchaser will in fact receive these funds.

---

[3] Accrued interest is the portion of the first coupon payment that the buyer expects to receive relating to the period prior to the settlement date. *See generally* Mem. 3 n.7, 9 n.9.

4

In any event, Section 11 defines damages as the difference between "the amount paid for the security" and its value on the date of suit. The only legitimate interpretation of "the amount paid for the security" is the amount that was *actually* paid at the time of purchase for the security, which includes any accrued interest. Because Dr. Riddiough fails to follow the clear language of Section 11, and instead *excludes* accrued interest from his damages calculation, his testimony as to FHFA's Section 11 damages with respect to the two Certificates with accrued interest should be precluded.

### III. DR. RIDDIOUGH'S $62 MILLION DISCOUNT TO FHFA'S SECTION 11 CLAIMS IS ARBITRARY AND IMPROPER

As described in the Motion, Dr. Riddiough calculates a price for the Certificates using a computer model distributed by Andrew Davidson & Co. (the "AD&Co. Model") and then applies an across-the-board 15 percent premium to the prices he calculates to account for purported illiquidity in the RMBS market on the date of valuation. Riddiough Report ¶¶ 13, 97 & n.86. This 15 percent increase in Dr. Riddiough's valuation of the Certificates as of the lawsuit date (to a maximum par value of $100) results in a $62.2 million reduction in the Section 11 damages Dr. Riddiough calculates. Riddiough Report, Ex. 14A.2, Panel A.

Even after spending half of its Opposition pages responding to this one argument, Nomura cannot cite more than a single article supporting Dr. Riddiough's 15 percent price adjustment, namely, a marketing "white paper" published in February 2011 by the UCM Partners hedge fund. As the quotations set forth on pages 11-12 of Plaintiff's Memorandum demonstrate, the purpose of this white paper was not disinterested academic research—it was to drum up investments in the RMBS market. *See, e.g.*, Ex. 4, UCM Partners White Paper, at 1 (non-agency RMBS markets "present a highly compelling investment opportunity"); *id.* at 8 (non-agency RMBS markets offer "very attractive risk-adjusted returns"); *id.* at 13 ("this noise creates an air

5

of uncertainty, which in and of itself creates more near term opportunities for buying non-agency RMBS cheaply"); *id.* at 14 ("non-agency RMBS currently offer investors compelling opportunities to realize superior risk-adjusted returns"). To permit Dr. Riddiough to argue for an over $62 million discount to FHFA's Section 11 claims based *solely* on a self-interested marketing piece is improper, and Dr. Riddiough's testimony advocating such a discount is unreliable and excludable under *Daubert*.

Moreover, Nomura's attempt to buttress Dr. Riddiough's application of a 15 percent price adjustment by pointing to the post-lawsuit performance of the Certificates is improper. As an initial matter, this Court has already held that "defendants have not shown that the Certificates' post-filing performance has much if any relevance to an analysis of market liquidity as of the filing date." Dkt. 992, at 16. Further, Dr. Riddiough's proffered post-lawsuit support for his damages discount falls well short of the admissibility standard required under *Daubert*. For example, Dr. Riddiough cites in support of his 15 percent price adjustment his own market study, which purports to show that Certificate prices have appreciated between 28 and 81 percent since FHFA filed suit. Opp. 8. But even if this post-lawsuit evidence were admissible, the fact that Dr. Riddiough picked 15 percent as his damages discount factor—when that is not even within the range he calculated for how much the Certificates have purportedly appreciated—only emphasizes just how arbitrary his purported illiquidity discount is.

Because neither Nomura nor Dr. Riddiough has justified his arbitrary imposition of a blunderbuss 15 percent price adjustment, Dr. Riddiough's testimony on FHFA's Section 11 damages is unreliable and should be precluded.

## IV. DR. RIDDIOUGH DOES NOT FOLLOW THE FORMULAS IN SECTION 12 AND THE BLUE SKY LAWS

In its Motion, FHFA identified three ways in which Dr. Riddiough failed to follow the formulas in Section 12 and the Blue Sky laws. *First*, Dr. Riddiough improperly applied a loss causation discount to FHFA's Blue Sky claims, notwithstanding this Court's ruling on December 16, 2013, that *no such* defense exists. *Second*, Dr. Riddiough excluded accrued interest from his calculation of FHFA's Section 12 and Blue Sky recoveries. *And third*, Dr. Riddiough reduced FHFA's Section 12 and Blue Sky recoveries by interest on principal and coupon payments, in contravention of the statutory text.

### A. Nomura Concedes That Dr. Riddiough Cannot Apply a Non-Existent Loss Causation Defense To FHFA's Blue Sky Claims

In its Opposition, Nomura *agrees* that, in light of the Court's prior Blue Sky ruling (which this Court has twice reaffirmed in other actions),[4] "Dr. Riddiough will exclude from his testimony about blue sky damages any references to a loss causation calculation."  Opp. 21. Accordingly, by Nomura's own admission, Dr. Riddiough has failed to follow this Court's December 16, 2013, Blue Sky order.  Nomura's use of an expert report that relies on a legal defense that this Court has already barred is improper.

### B. Dr. Riddiough Incorrectly Calculates The "Consideration Paid" For The Certificates

Where a plaintiff can tender the security, calculating recoveries under Section 12 and the Blue Sky laws are straightforward:  the plaintiff receives "***the consideration paid for such security with interest thereon***, less the amount of any income received thereon." 15 U.S.C.

---

[4] *See FHFA v. HSBC N. Am. Holdings Inc.*, 988 F. Supp. 2d 363, 368-70 (S.D.N.Y. 2013); *accord Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co., Inc.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *3-7 (S.D.N.Y. Apr. 28, 2014), *reconsideration denied*, 2014 WL 1909499 (S.D.N.Y. May 13, 2014).

7

§ 77*l*(a)(2) (emphasis added); *accord* D.C. Code § 31-5606.05(b)(1)(A); Va. Code § 13.1-522(A).  In reliance on this clear language, FHFA's damages expert, James K. Finkel, calculates Section 12 and Blue Sky recoveries by:  (i) multiplying the amount the GSEs paid for the Certificates by an appropriate prejudgment interest rate, and then (ii) subtracting all principal and interest payments the GSEs received.  Finkel Report ¶¶ 126-135, 141.  Dr. Riddiough, on the other hand, calculates Section 12 and Blue Sky recoveries by:  (i) multiplying the amount the GSEs paid for the Certificates (*excluding* any accrued interest that was part of the purchase price) by a prejudgment interest rate, and then (ii) subtracting all principal and interest payments the GSEs received *after multiplying those cashflows by the same prejudgment interest rate*.  Riddiough Report ¶¶ 13, 46, 105, 106 n.95.

With respect to the first part of that calculation (*i.e.*, calculating "the consideration paid for such security"), Nomura *admits* that Dr. Riddiough's calculation is incorrect:

> However, because Dr. Riddiough used the "clean price" as the "consideration paid" in his Section 12 and blue sky damages calculations, Dr. Riddiough's deduction of "accrued interest" payments from the consideration paid (for purposes of Section 12 and the blue sky laws) was ***an oversight.  Accordingly, Dr. Riddiough's aggregate damages calculations under these respective statutes would increase ….***

Opp. 19  (emphasis added).  As explained in the Motion, Nomura has not set forth any basis to support Dr. Riddiough's use of a "clean price" (*i.e.*, one that excludes accrued interest) in calculating FHFA's Section 12 and Blue Sky recoveries, and has in fact conceded that Dr. Riddiough's methodology is based on a misreading of the applicable statutes that renders his calculations incorrect.

### C. Dr. Riddiough Improperly Reduces FHFA's Section 12 And Blue Sky Recoveries By Interest On Income The GSEs Received

As noted above, Section 12 and the Blue Sky laws entitle a plaintiff "to recover the consideration paid for such security with interest thereon, less the amount of any income

8

received thereon, upon the tender of such security." 15 U.S.C. § 77*l*(a)(2).[5] Under the plain language of all three statutes, prejudgment interest is applied *only* to "the consideration paid for such security." Nothing in the statutory text permits a court to also apply prejudgment interest to "the amount of any income received thereon." By also applying prejudgment interest to income the GSEs have received, Dr. Riddiough misreads the applicable statutes.

In its Opposition, Nomura invokes various policy rationales purportedly supporting its argument that a court should apply prejudgment interest to both the purchase price of a security as well as to all cashflows received by the purchaser. But none of these arguments overrides the clear statutory text, which limits prejudgment interest *only* to "the consideration paid for such security." Moreover, Dr. Riddiough has produced no evidence to suggest that the GSEs earned a return even roughly commensurate with the 6 percent interest rate he applies to principal and interest payments the GSEs received, with respect to his Blue Sky calculations. In any event, because Dr. Riddiough's Section 12 and Blue Sky calculations are contrary to the statutes, his testimony on these subjects should be precluded.[6]

## CONCLUSION

Because Dr. Riddiough has applied an arbitrary and unsupported $62.2 million discount to FHFA's Section 11 damages, and because he has failed to follow the text of Sections 11, 12 and the Blue Sky laws, FHFA respectfully requests that his damages testimony be precluded.

---

[5] The Blue Sky laws further provide for the mandatory award of fees and costs, in addition to fixing prejudgment interest at 6 percent. *See* D.C. Code § 31-5606.05(b)(1)(A), with the prejudgment rate of interest set forth in D.C. Code § 28-3302(a); Va. Code 13.1-522(A).

[6] Contrary to Nomura's claim, Mr. Finkel did not err by declining to apply prejudgment interest to the portion of the coupon payments received by the GSEs that included accrued interest. Opp. 19 n.8. Rather, Mr. Finkel applied prejudgment interest only to the purchase price, and not to any cashflows received, which is consistent with the plain language of Section 12 and the Blue Sky laws.

DATED:  January 15, 2015
         New York, New York


By: /s/ Philippe Z. Selendy
Philippe Z. Selendy
Jordan A. Goldstein
Toby E. Futter
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,
as Conservator for Fannie Mae and Freddie Mac*