UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>NOMURA HOLDING AMERICA, INC.; NOMURA ASSET ACCEPTANCE CORPORATION; NOMURA HOME EQUITY LOAN, INC.; NOMURA CREDIT & CAPITAL, INC.; NOMURA SECURITIES INTERNATIONAL, INC.; RBS SECURITIES INC. (f/k/a GREENWICH CAPITAL MARKETS, INC.); DAVID FINDLAY; JOHN MCCARTHY; JOHN P. GRAHAM; NATHAN GORIN; and DANTE LAROCCA,<br><br>Defendants. | No. 11 CIV. 6201 (DLC) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO
<u>EXCLUDE EXPERT TESTIMONY OF STEPHEN G. RYAN</u>**

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

Philippe Z. Selendy
Adam M. Abensohn
Jonathan B. Oblak
Tyler G. Whitmer

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency, as Conservator for Fannie
Mae and Freddie Mac*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. PROFESSOR RYAN'S TESTIMONY ON FAIR VALUE ACCOUNTING SHOULD BE EXCLUDED.................................................................................................2

    A. Professor Ryan's Opinion Is A Completely Novel And Unsupported Attempt To Prove A Loss Causation Defense ...........................................................2

    B. Professor Ryan's Opinion Is Unsupported By Independent Analysis; He Merely Speculates As To The GSEs' Beliefs On Loss Causation Based on Their Accounting Disclosures................................................................................5

II. PROFESSOR RYAN'S TESTIMONY ON PRE-SETTLEMENT PURCHASE COMMITMENTS SHOULD BE EXCLUDED...................................................................7

CONCLUSION...............................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Arista Records LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011) ......................................................................... 6, 7

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ................................................................ 6

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012) ........................................................................................... 5

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .................................................................................................. 5, 6

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
    14 F. Supp. 2d 391 (S.D.N.Y. 1998) .............................................................................. 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ....................................................................................................... 5

*Levinson v. Westport Nat'l Bank*,
    2013 WL 3280013 (D. Conn. June 27, 2013) ................................................................ 5

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    2014 WL 2998524 (S.D.N.Y. July 3, 2014) .................................................................. 4

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    2000 WL 310352 (S.D.N.Y. Mar. 24, 2000) .................................................................. 3

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................................ 4, 6

*Sciallo v. Tyco Int'l Ltd.*,
    2012 WL 2861340 (S.D.N.Y. July 9, 2012) .................................................................. 4

*United States v. Gushlak*,
    728 F.3d 184 (2d Cir. 2013) ........................................................................................... 3

*WM High Yield Fund v. O'Hanlon*,
    2013 WL 3230667 (E.D. Pa. June 27, 2013) .................................................................. 6

*In re Worldcom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) ............................................................................ 7

## **Statutes**

Fed. R. Evid. 402 ...................................................................................................................... 4

Fed. R. Evid. 702 ...................................................................................................................... 4

Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae" or "Fannie") and the Federal Home Loan Mortgage Association ("Freddie Mac" or "Freddie" and, collectively with Fannie Mae, the "GSEs") respectfully submits this reply memorandum of law in support of its motion to exclude from trial the testimony of Nomura's proffered expert witness, Professor Stephen G. Ryan.[1]

## PRELIMINARY STATEMENT

Nomura opposes FHFA's motion to exclude Professor Ryan's expert opinion on fair value accounting with circular reasoning that does not withstand legal scrutiny.  Nomura insists Professor Ryan's proposed testimony is not a loss causation opinion while admitting its only relevance is to loss causation.  Attempting to circumvent the requirement that an expert offering a loss causation opinion provide some independent analysis of the securities at issue—which Nomura admits Professor Ryan has not done—Nomura portrays Professor Ryan solely as an interpreter of the GSEs' fair value accounting disclosures.  But Professor Ryan has testified that nothing required the GSEs to account for or disclose causes of losses through their fair value accounting.  His "interpretation" is therefore nothing more than speculation about the GSEs' subjective beliefs based on statements in public disclosures and a few internal documents, none of which relate specifically to any At-Issue Certificate.

The opinion that Professor Ryan offers about pre-settlement purchase commitments is similarly mere speculation on the separate issue of whether the GSEs relied on prospectus supplement disclosures when purchasing the At-Issue Certificates.  Nomura's attempt to salvage this opinion by re-casting it as evidence of materiality flies in the face of this Court's order prohibiting Nomura from shoehorning improper reliance arguments into materiality arguments.

---

[1] This reply memorandum uses the same forms of abbreviation and citation as FHFA's opening brief.

Opinion & Order, *FHFA v. Nomura Holding Am., Inc.*, 11 Civ. 6201, at *16 (S.D.N.Y. Dec. 18, 2014) (Dkt. 995) (the "MIL Order").  It is therefore subject to exclusion even if it were not an improper opinion about the GSEs' states of mind and legal obligations, which it is.

## ARGUMENT

### I. PROFESSOR RYAN'S TESTIMONY ON FAIR VALUE ACCOUNTING SHOULD BE EXCLUDED

#### A. Professor Ryan's Opinion Is A Completely Novel And Unsupported Attempt To Prove A Loss Causation Defense

Nomura's opposition argues that Professor Ryan's opinion on fair value accounting is mischaracterized by FHFA as a loss causation analysis.  (Opp. at 1, 4.)  But Nomura itself describes the opinion as "explain[ing] what Freddie Mac's and Fannie Mae's public filings and security-specific internal work papers[2] reveal about their own determinations of the *causes of their alleged losses*."  (*Id*. at 4, emphasis added.)  Nomura does not identify any issue that Professor Ryan's proposed testimony would be relevant to *other than* loss causation, and there are none.[3]

As a loss causation opinion, Professor Ryan proffers an unprecedented methodology and approach.  Nomura's opposition sets up a straw man, contending that FHFA argues that a traditional event study is necessary in this case.  (*Id.* at 9-10.)  FHFA's argument is not that a specific type of event study is required, but instead that there are established methods of demonstrating loss causation, such as conducting an event study, and that the use of fair value

---

[2]  Nomura does not identify the "security-specific internal work papers" it refers to, and the Ryan Report does not reference any contemporaneous GSE documents describing the GSEs' fair value accounting for the At-Issue Certificates on a security-by-security basis.

[3]  This is further confirmed by the reference to the Ryan Report in the report of Nomura's loss causation expert, Kerry D. Vandell, who stated that he had "reviewed the Expert Report of Stephen G. Ryan, and his opinions support my own."  (Exhibit 4 to the Declaration of Tyler Whitmer in Support of Plaintiff's Motion to Exclude Expert Testimony of Stephen G. Ryan ("Whitmer Decl.") (Dkt. 1038).)

accounting to divine purported causes of losses is not one of them.  Nomura cites to no case addressing the use of fair value accounting to support a loss causation defense, and the authorities Nomura does cite only bolster FHFA's position.  For example, in *United States* v. *Gushlak*, 728 F.3d 184 (2d Cir. 2013), the appellant-defendant unsuccessfully challenged a government expert's regression analysis proffered to show loss causation on grounds that the analysis failed to account for factors influencing changes in stock value.  *Id.* at 201.  The Second Circuit, recognizing that it is customary to conduct an event study, upheld the validity of the regression analysis as "[o]ne essential component of such a[n event] study" that was "designed to separate out price movements resulting from market- or industry-based factors."  *Id.*  Nomura also cites *RMED International, Inc.* v. *Sloan's Supermarkets, Inc.*, 2000 WL 310352, at *1 (S.D.N.Y. Mar. 24, 2000), in which the trial court admitted a damages expert's seventy-page "Event Analysis" that provided "a textual summary of each event placed next to the daily closing price of [defendants'] stock for a seven-year period" to assess the value of the stock at the time of sale absent the alleged fraud.  *Id.* at *7-8.[4]

Professor Ryan, unlike the experts in *Gushlak* and *RMED*, performed no analysis to correlate market events with the value of each of the At-Issue Certificates.  Indeed, he offers no independent assessment of what caused losses on the Certificates. (Opp. at 4 ("Dr. Ryan does not, and never purports to, make his own determination of the actual causes of plaintiff's alleged losses on the Certificates . . . .").)  And Professor Ryan himself testified that he had never heard of impairment accounting being used as part of a damages analysis.  (7/18 Tr. at 52:13-53:19 (Whitmer Decl., Ex. 3).)  Because he fails to offer a reliable methodology for proving Nomura's

---

[4] Nomura frames the requirement of an event study to argue it is inapplicable to this case.  (Opp. at 9-10.)  But Nomura ignores that the cases addressing loss causation opinions, including those it relies upon, require some analysis of the specific security or securities at issue to isolate different factors affecting value.

loss causation defense, Professor Ryan's opinions and testimony should be excluded. Fed. R. Evid. 702; *Sciallo v. Tyco Int'l Ltd.*, 2012 WL 2861340, at *5 (S.D.N.Y. July 9, 2012) (excluding novel loss causation approach and noting that "[t]here are no cases of which this Court is aware, and plaintiffs have failed to bring any to the Court's attention, in which loss causation can be accomplished using a methodology similar to that employed by [the expert]"); *see In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539-40 (S.D.N.Y. 2004) (enumerating *Daubert* reliability factors, including "whether the theory has general acceptance" (quotation omitted)).[5]

Nomura's circular reasoning regarding the importance of Professor Ryan's testimony underscores its irrelevance to this case. Nomura asserts that Professor Ryan's testimony is necessary to understand the "critical issue" of what the GSEs "themselves disclosed about the cause of their alleged losses on the Certificates" (Opp. at 2), but it fails to explain why the GSEs' disclosures are factually or legally relevant. Because FHFA does not rely on accounting disclosures or statements in determining damages, Nomura plainly seeks to offer such testimony to bolster its loss causation defense. In the absence of an admissible loss causation analysis based on fair value accounting, however, the GSEs' accounting statements and the purportedly "highly technical" concepts Nomura would have Professor Ryan explain are of no bearing. (*Id.*) Because Professor Ryan offers an untested, unreliable loss causation analysis and its only purported relevance is as to damages, his opinions and testimony are inadmissible and merit exclusion from trial. Fed. R. Evid. 402.

---

[5] Nomura cites to *In re Longtop Financial Technologies Ltd. Securities Litigation*, --- F. Supp. 2d ----, 2014 WL 2998524, at *7 (S.D.N.Y. July 3, 2014), for the proposition that "testimony about the meaning of accounting standards is routinely found admissible." (Opp. at 6.) Unlike this case, however, the accuracy of the accounting in *Longtop* was in question. *Longtop*, 2014 WL 2998524, at *3. Nomura cites to no case where an accounting expert opines on the purported meaning of accounting disclosures in support of a loss causation defense.

4

### B. Professor Ryan's Opinion Is Unsupported By Independent Analysis; He Merely Speculates As To The GSEs' Beliefs On Loss Causation Based on Their Accounting Disclosures

Nomura readily admits that Professor Ryan performed no independent analysis of the cause of any loss for any At-Issue Certificate, and acknowledges Professor Ryan's admission that conducting an impairment accounting analysis from the ground up would be beyond his expertise. (Opp. at 14.) Having failed to conduct any supporting analysis, Nomura is instead attempting to use Professor Ryan to interpret what the GSEs' accounting measures imply about their beliefs on the causes of reported losses for the At-Issue Certificates.[6] (*Id*. at 4 (characterizing Professor Ryan's opinion as an examination of the GSEs' "own determinations of the causes of their alleged losses").) The disclosures Professor Ryan "interprets" in reaching his opinions address the GSEs' entire private-label RMBS portfolios, however, and Nomura offers no support for Professor Ryan's assumption that the portfolio-wide disclosures apply specifically to the At-Issue Certificates, which comprise a tiny fraction of the GSEs' total RMBS holdings. This lack of independent analysis and inherent unreliability are fatal to Professor Ryan's testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("'[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'") (quoting *General Elec. Co. v.*

---

[6] The accounting statements that Professor Ryan purports to "interpret," were they even relevant, are intended to be understood by reasonable investors without the assistance of an accounting professor. Many of the disclosures on which he seeks to offer testimony concern commonly understood concepts, such as housing price declines, loan defaults, and unemployment. As the documents speak for themselves, it is inappropriate and unnecessary for Professor Ryan to restate disclosures in public financial statements to the trier of fact. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 161 (2d Cir. 2012) (upholding exclusion of expert testimony that "would not have provided assistance to the trier of fact beyond that afforded by the arguments of counsel"); *Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *7 (D. Conn. June 27, 2013) (expert "may not proffer opinions which do not draw on his expertise but merely restate otherwise properly admitted evidence").

*Joiner*, 522 U.S. 136, 146 (1997)); *WM High Yield Fund v. O'Hanlon*, 2013 WL 3230667, at \*13 (E.D. Pa. June 27, 2013) ("Expert opinion evidence is not admissible if it is without a sufficient factual basis and is speculative or conjectural.").

Furthermore, Nomura concedes—as does Professor Ryan—that "neither GAAP nor the SEC *requires* companies to discuss or explicitly partition 'the drivers of losses' in their financial statements." (*Id.* at 8, emphasis added; *see* 7/18 Tr. at 118:14-119:4 (Whitmer Decl., Ex. 3).) By Nomura's own admission, the accounting rules do not necessarily dictate the conclusions Professor Ryan puts forth. As such, he cannot reliably opine that, or to what extent, the GSEs' Temporary and OTT non-credit allocations compel particular conclusions about the GSEs' beliefs as to the discrete causes of losses for the At-Issue Certificates.[7] It is well established that Professor Ryan may not testify about the GSEs' subjective beliefs, *see, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 547 (rejecting expert testimony in part because it attempted to opine on the intent and state of mind of a party); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) (expert testimony about a party's state of mind is improper); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at \*8 (S.D.N.Y. Dec. 15, 2011) ("There is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion."), and the inferences he seeks to offer "cross the line into unreliable speculation about the intended purpose" of the GSEs' disclosures, *Arista Records LLC v. Lime*

---

[7] The lack of a direct connection between fair value accounting and loss causation is magnified by the imprecision of Professor Ryan's proposed testimony. He has admitted that his "interpretation" of the GSEs' disclosures can only connect fair value accounting to loss causation at best tenuously—stating that the "predominantly" language he uses in his report means only "not 100 percent, and not 51 percent; somewhere in between." (7/18 Tr. at 182:15-183:4 (Whitmer Decl., Ex. 3).) "[T]here is simply too great an analytical gap between the data and the opinion proffered," *General Elec.*, 522 U.S. at 146, and his opinion should thus be excluded.

*Grp. LLC*, 784 F. Supp. 2d 398, 414 (S.D.N.Y. 2011).  His testimony should therefore be barred from trial.

## II.   PROFESSOR RYAN'S TESTIMONY ON PRE-SETTLEMENT PURCHASE COMMITMENTS SHOULD BE EXCLUDED

Finally, Nomura argues that Professor Ryan's separate opinion that the GSEs "deemed themselves obligated to purchase" the at-issue certificates "before receiving the prospectus supplements" should be admitted notwithstanding the Court's order barring evidence that the sale of any of the At-Issue Certificates "was consummated before the 'settlement date' as listed in FHFA's Amended Complaint."  (Opp. at 16, quotations omitted .)  Nomura claims Professor Ryan's testimony is relevant to materiality, citing to a single case for the undisputed proposition that materiality involves what investors consider important.  (*Id.*)  Nomura then asserts, without any explanation or support, that Professor Ryan's testimony that the GSEs' practice of accounting for the purchase of the At-Issue Certificates as derivatives prior to receiving the prospectus supplements "is probative of what [the GSEs] considered important in making their investment decisions."  (*Id.* at 16-17.)  Nomura provides no basis to support that assertion and ignores that the Court has already ruled on this issue.  MIL Order at 21-22.  There, the Court noted that "defendants appear to be shoehorning an improper reliance argument into an argument as to materiality."[8]  *Id.* at 16.  The same is true of Professor Ryan 's opinion, and it should accordingly be excluded.

---

[8]   Furthermore, this Court recognized that, "outside of circumstances not at issue here, actual reliance is irrelevant to the materiality analysis."  MIL Order at 16.  Indeed, the materiality standard turns on "whether defendants' representations, taken together and in context, would have misled a *reasonable investor* about the nature of the investment."  *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 657-58 (S.D.N.Y. 2004) (emphasis added) (quotation omitted).  Nomura, however, offers Professor Ryan's testimony on the irrelevant point of "what [the GSEs] considered important in making their investment decisions."  (Opp. at 16-17.)  The GSEs' considerations are not relevant to the objective materiality standard, and exclusion is warranted on this basis as well.

Moreover, Professor Ryan's opinion would be inadmissible even in the absence of the MIL Order.  While arguing that Professor Ryan's opinion does not go to the GSEs' states of mind, Nomura unequivocally establishes the opposite by using the language of subjective understanding, asserting that Professor Ryan would opine that the GSEs "necessarily considered [themselves] obligated to close the transaction."  (Opp. at 17.)  And while Nomura states that Professor Ryan's opinion is not a legal one, it ignores Professor Ryan's own testimony that the "obligation" he would be testifying about is "a legal obligation."  (7/18 Tr. at 320:2-15 (Whitmer Decl., Ex. 3).)  As explained *supra* Section I(B), Nomura may not present an expert opinion on the GSEs' states of mind or legal obligations.  (*See also* Br. at 16-17.)

## CONCLUSION

For the foregoing reasons, FHFA requests that its motion to exclude the testimony of Professor Stephen G. Ryan be granted, and that Professor Ryan be precluded from testifying at trial.

DATED:   New York, New York
           January 15, 2015

Respectfully submitted,

By:  Philippe Z. Selendy
Philippe Z. Selendy
Adam M. Abensohn
Jonathan B. Oblak
Tyler G. Whitmer

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency, as Conservator for Fannie Mae and Freddie Mac*