# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 8, 2015

Via E-mail and ECF

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street, Room 1610,
           New York, New York 10007-1312.

        Re:    *FHFA* v. *Nomura Holding America Inc., et al.*, 11-cv-6201 (SDNY)

Dear Judge Cote:

        On December 5, 2014, defendants moved to exclude the testimony of plaintiff's appraisal expert, John Kilpatrick, in its entirety because his opinions are impermissible testimony about another person's honesty and credibility, and are based on models that are fundamentally flawed and unreliable. (*See* Defendants' December 5, 2014 Motion to Exclude Expert Testimony of John Kilpatrick.) In the event that that motion is denied in whole or in part, defendants also move *in limine* pursuant to Federal Rules of Civil Procedure 26 and 37, and this Court's May 23, 2013 Stipulation and Order Regarding Expert Disclosure Protocol (the "Disclosure Protocol"), to exclude Kilpatrick's testimony as to Questions 7, 8 and 9 of his "Credibility Assessment Model" because plaintiff failed to provide the data that serves as the basis for that testimony.

        Kilpatrick purports to provide "an expert opinion as to whether the original appraisals used to value the collateral and generate the LTV ratios . . . were accurate and credible." (Ex. 1 (May 15, 2014 Expert Report of John Kilpatrick) ("Kilpatrick Report") at 1-2.) By this, he means whether "a reasonable appraiser . . . could have believed the original appraisals were accurate." (*Id.* at 2.) To do so, Kilpatrick claims to have "developed and validated a Credibility Assessment Model," a series of 31 questions by which Kilpatrick purports to "evaluate[] and score[] the frequency and magnitude of the appraisal reports' deviation from settled appraisal standards and practice." (*Id.* at 3, 13.) Negative answers to those questions are then weighted, based on Kilpatrick's subjective opinions. Kilpatrick adds up these "points" to derive a single numeric score that supposedly allows him to judge whether "a reasonable

appraiser adhering to the appraisal standards and practices applicable at the time could have believed the original appraisals were accurate." (*Id.* at 2.)

Questions 7, 8 and 9 of the Credibility Assessment Model are as follows: "Did the appraiser report supply/demand correctly?" (Question 7); "Did the appraiser report property value trend correctly?" (Question 8); and "Did the appraiser report marketing time correctly?" (Question 9). (Ex. 1 (Kilpatrick Report) at 42; Ex. 2 (Appendix 4-6 to Kilpatrick Report).) These questions account for 14% of the total points assigned by the Credibility Assessment Model, and of the 202 appraisals Kilpatrick subjected to the Credibility Assessment Model, he assigned a negative answer to at least one of Questions 7, 8 or 9 to 152 appraisals. (*See* Ex. 3 (Appendix 5-1 to Kilpatrick Report); *see also* Appendix B to Defendants' December 5, 2014 Motion to Exclude Expert Testimony of John Kilpatrick.)

To generate answers to Questions 7, 8 and 9, Kilpatrick's Credibility Assessment Model applies mathematical formulas to data from the Multiple Listing Service for the local real estate market. In applying Question 7, the Credibility Assessment Model evaluates the ratio of expired or withdrawn listings to sold homes in the prior year within a "Subject Neighborhood." (Ex. 4 (Appendix 4-1a to Kilpatrick Report) at 1, 12-13.) For Question 8, the Credibility Assessment Model applies a regression analysis to the median sales prices for listings in the Subject Neighborhood for each of four three-month periods in the year prior to the appraisal (0 to 3 months, 4 to 6 months, 7 to 9 months, and 10 to 12 months). (*Id.*) And for Question 9, the model calculates average days on the market for listings within each of four three-month periods in the prior year. (*Id.* at 14-15.)

Kilpatrick's researchers summarized the data that formed the basis for Questions 7, 8 and 9 in a form called the Greenfield Advisors Residential Data Research Form. (Ex. 5 (Appendix 4-2 to Kilpatrick Report).) For example, for one property located at ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ one of Kilpatrick's researchers reported that the ▇▇▇▇▇▇ Multiple Listing Service showed 34 listings in the prior year that were expired or withdrawn, ranging in price from $225,000 to $400,000. (*See* Ex. 6 (Appendix 4-5a to Kilpatrick Report, excerpt for Loan Number NHELI_2007_3_2002213811) at 2.) The researcher also reported that 31 sales had occurred from 0 to 3 months prior, with an average of 29 days on the market, and a median sales price of $246,500. (*Id.*) Similar summary data is reported for listings 4 to 6 months prior, 7 to 9 months prior, and 10 to 12 months prior. (*Id.*) For another property, in ▇▇▇▇▇▇▇▇▇▇, the researcher reported that 27 listings were expired or withdrawn in the prior year, ranging in price from $240,000 to $680,000, and reported 51 sales in the year prior to the appraisal. (Ex. 7 (Appendix 4-5a to Kilpatrick Report, excerpt for Loan Number NAA_2005_AR6_1001904838) at 3.)

The Court's Disclosure Protocol required plaintiff to provide defendants with "all data relied upon, including any underlying data calculations and analysis, and the sources of such data." (Ex. 8 (Disclosure Protocol) at ¶ 3.) Plaintiff has not done so. Although plaintiff provided defendants with forms in which Kilpatrick's researchers summarized data from various Multiple Listing Services, plaintiff failed to provide the data itself. With respect to 405 Beech Avenue, for example, plaintiff failed to identify any of the 34 listings that purportedly were expired or withdrawn within the previous year, or any of the 31 sales that purportedly occurred 0

Hon. Denise L. Cote                                                                                          -3-
                                                                                        Motion *in Limine* No. 5

to 3 months prior. Plaintiff has failed to provide such listings for any properties. In response to a request from defendants to provide the data underlying Questions 7, 8, and 9 (Ex. 9 (12/3/2014 Ltr. from B. Harsch to S. Rand) at 1-2), plaintiff refused to provide the underlying data. (*See* Ex. 10 (12/6/2014 Email from J. Eser to P. Brest) at 3-4 ("the data utilized to evaluate [Questions 7, 8 and 9] was provided in Appendices 4-5a and 4-5b to Dr. Kilpatrick's May 15, 2014 report . . . .").) Defendants then specified that their request was for the underlying listings—and were again denied the data by plaintiff. (Ex. 10 (12/22/2014 Email from J. Eser to J. Congdon) at 1-3.)

       Plaintiff's failure to disclose the underlying data impairs defendants' ability to effectively cross-examine Kilpatrick at trial, in the event the Court denies defendants' motion to exclude his testimony. Without this data, defendants are unable to verify the calculations that Kilpatrick's researchers performed concerning local market conditions, such as median sales prices, average days on the market, and the numbers of expired and withdrawn listings. Defendants also cannot compare that data to other potentially more pertinent information. Plaintiff's failure to produce the underlying data is especially prejudicial because plaintiff's own expert, Donald Epley, testified that any evaluation of these questions should use comparable properties. (Ex. 11 (Deposition of Donald Epley, November 30, 2014) at 193:3-194:5, 195:7-16.) Without knowing which listings are summarized in Kilpatrick's data research forms, defendants have no way of establishing whether the listings on which Kilpatrick relies for his "answers" to Questions 7, 8 and 9 are indeed comparable.

       As this Court recognized in its Disclosure Protocol, Rule 26 obligates an expert "to disclose all data they relied upon, including any underlying data, calculations and analysis, and the sources of such data." (Ex. 8 (Disclosure Protocol) at ¶ 3.) It is not sufficient for plaintiff to provide summary or conclusory data—the disclosures must be more than "vague[] references" or "bald conclusions" and instead must allow the opposing party to "adequately prepare for cross-examination." *Jinghong Song* v. *Yao Bros. Group LP*, 2012 WL 1557372, at *1-2 (S.D.N.Y. May 2, 2012) (precluding expert from testifying at trial where the expert failed to "adequately identify the 'facts or data'" underlying the expert's opinions); *see also Maurizio* v. *Goldsmith*, 2002 WL 535146, at *3 (S.D.N.Y. April 9, 2012) (excluding expert testimony where expert failed to identify specific "comparisons" made to support the expert's conclusions); *Great White Bear, LLC* v. *Mervyns, LLC*, 2008 WL 2220662, at *3 (S.D.N.Y. May 27, 2008) (precluding expert testimony under Rule 37 because "vague explanation[s] . . . without any supporting calculations" did not satisfy disclosure requirements of Rule 26). Here, defendants are unable to cross-examine Kilpatrick fully as to his "answers" to Questions 7, 8, and 9 because plaintiff has failed to provide the critical information underlying his opinions—the comparable properties. Under Rule 37, the proper remedy is the exclusion of the testimony. Fed. R. Civ. P. 37(c)(1) (a "party is not allowed to use" any information that it "fails to provide . . . as required by Rule 26" unless "the failure was substantially justified or harmless"); *Robinson* v. *Suffolk County Police Dept.*, 544 Fed. Appx. 29, 32 (2d Cir. 2013).

Hon. Denise L. Cote -4-
Motion *in Limine* No. 5

    Defendants respectfully request that the Court preclude plaintiff's expert Kilpatrick from (i) testifying concerning, or (ii) offering any opinions at trial that rely in any way on, the answers to Questions 7, 8 and 9 of his Credibility Assessment Model.

              Respectfully submitted,

              /s/ David B. Tulchin

              David B. Tulchin

cc:  Counsel of Record via ECF