# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 8, 2015

<u>Via E-mail and ECF</u>

Hon. Denise L. Cote,
    United States District Judge,
        Daniel Patrick Moynihan United States Courthouse,
            500 Pearl Street, Room 1610,
                New York, New York  10007-1312.

        Re:    *FHFA* v. *Nomura Holding America Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

        Defendants move *in limine* pursuant to Federal Rules of Evidence 401, 402 and 403 to preclude the testimony of plaintiff's expert, Robert Hunter, regarding alleged inaccuracies in "pre-closing loan tapes."  Hunter's pre-closing loan tape claims constitute just under 25 percent of Hunter's defect allegations.  Yet Hunter's testimony about pre-closing loan tapes is entirely irrelevant.  Plaintiff does not allege any false or misleading statement in the Offering Documents concerning the loan tapes.  Further, the loan tapes were created after the loans underlying the Securitizations were underwritten, and thus have nothing to do with any opinion testimony concerning how loans "were originated."  Hunter's testimony should be excluded from trial because it is irrelevant and will mislead the jury, confuse the issues, and prejudice defendants.

## BACKGROUND

        Plaintiff retained Hunter to provide an expert opinion as to the underwriting and credit quality of the loans backing the Securitizations and described in the Offering Documents.  (Ex. 1 (Hunter May 15, 2014 Report) at 1.)  Hunter purports to have analyzed a sample of the loans from the Securitizations to determine whether those loans were originated generally in accordance with applicable underwriting guidelines.[1]

---

[1] In fact, Hunter in many instances did not compare the loans to the relevant underwriting criteria—those disclosed in the Offering Documents—and defendants have

(*footnote continued*)

Hon. Denise L. Cote                                                                                                   -2-
                                                                                                Motion *in Limine* No. 6

In addition to re-underwriting loans, Hunter also claims to have examined the accuracy of data contained in what he calls "pre-closing loan tapes," which are lists of loans on a spreadsheet created after the loans were originated, as part of the process of structuring a securitization.  (Ex. 1 (Hunter Report) at 116; *see also* Ex. 2 (Williams November 8, 2013 Deposition) at 68:19-70:11.)  Hunter purports to identify errors in pre-closing loan tapes concerning debt-to-income ratio, occupancy status, loan-to-value ratio, FICO score, property type, purpose, and document type.  The Offering Documents make no representation of any kind about the pre-closing loan tapes Hunter reviewed or any other loan tapes.  The Offering Documents never even mention any of the loan-level information contained in the pre-closing loan tapes.  Instead, the Offering Documents contain tables which provide aggregate, rather than loan-level, data about the loans underlying the Securitizations.  (*E.g.*, Ex. 3 (Collateral Tables).)

The pre-closing loan tapes did not even exist when the loans were originated. Hunter nevertheless includes as part of his re-underwriting findings alleged defects premised on purported errors he found in the loan tapes.  He claims that the loan tapes contain errors with respect to 343 loans, or 47.44 percent of the Sample Loans.  (Ex. 4 (Hunter October 6, 2014 Rebuttal Report Exhibit 2C).)  Hunter's pre-closing loan tape claims "constitute just under a quarter of Mr. Hunter's" defect allegations.  (Ex. 5 (Forester August 14, 2014 Report) at 48.)

Hunter uses these findings to inflate his claimed number of defects by counting what he deems to be underwriting defects twice—as purported underwriting defects and as errors he claims were in the loan tapes.  For example, loan NHELI_2007_1_2002056810 was issued with a reported debt-to-income (DTI) ratio of ▮ percent.  Hunter opines, on the basis of an audit credit report created at least ▮ after the loan's origination, that the DTI ratio reported by the underwriter was incorrect.  (Ex. 6 (Excerpt of Hunter Rebuttal Report Exhibit 2A); Ex. 7 (Forester November 18, 2014 Response Ex. 443) at 5.)  Hunter proceeds to offer two overlapping bases for his claim that the loan was not originated in accordance with underwriting guidelines:  first, because the loan had an "Excessive DTI," and second, because the loan tape did not reflect Hunter's recalculated DTI, created seven years after the loan tape was prepared.  (Ex. 6 (Hunter Rebuttal Report Exhibit 2A).)

Similarly, Hunter asserts that the underwriter for loan NHELI_2006_HE3_2001915223 did not properly report the borrower's intent to occupy the

---

(*footnote continued*)
thus moved to exclude Hunter's testimony that is based not on applicable underwriting guidelines but instead on the guidelines he created for purposes of this case.  Motion to Exclude Testimony of Robert W. Hunter Based on Purported "Minimum Industry Standards" (Nov. 26, 2014).

Hon. Denise L. Cote                                                                                          -3-
                                                                                            Motion *in Limine* No. 6

subject property. On that basis, Hunter opines that the loan was not originated in accordance with underwriting guidelines because, first, it was not "owner occupied," and second, the loan tape states that the borrower intended to occupy the home. (Ex. 8 (Excerpt of Hunter Rebuttal Report Exhibit 2A).)

## ARGUMENT

### I.   HUNTER'S TESTIMONY ABOUT LOAN TAPES IS IRRELEVANT.

Any purported errors in pre-closing loan tapes are entirely irrelevant to plaintiff's claims. Plaintiff did not allege in its complaint that the pre-closing loan tapes contained false or misleading information, and the pre-closing loan tapes are not part of, or referenced in, the Offering Documents. Hunter's testimony about the loan tapes is thus irrelevant and inadmissible because his opinion on the accuracy of the information in the loan tapes is not probative of any fact that is "of consequence in determining [this] action." FED. R. EVID. 401. The Offering Documents make no representations about the loan tapes or loan-level information.

Moreover, Hunter's opinions concerning the pre-closing loan tapes are irrelevant to any opinion Hunter intends to offer concerning how the loans in the seven Securitizations at issue "were originated." (Ex. 9 (Prospectus Supplements).) Defendants have moved to exclude any testimony by Hunter concerning how the loans "were originated" that relies on information that did not exist at the time of origination. Motion to Exclude the Testimony of Robert W. Hunter Based on Information Not Available at Origination (Jan. 5, 2015). In any event, to the extent Hunter intends to testify that purported errors in pre-closing loan tapes relate to how the loans "were originated," that testimony also should be excluded because the pre-closing loan tapes were undisputedly created after loans were originated. No underwriter of a loan could have used the loan tapes in the origination process. Hunter's testimony about the loan tapes thus has nothing to do with whether the loans underlying the Securitizations "were originated" generally in accordance with applicable underwriting guidelines or criteria.

### II.  HUNTER'S TESTIMONY ABOUT LOAN TAPES WILL PREJUDICE DEFENDANTS, CONFUSE THE ISSUES, AND MISLEAD THE JURY.

Hunter's testimony about alleged errors in loan tapes should also be excluded under Federal Rule of Evidence 403. Rule 403 provides that evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, Hunter's opinion about loan tapes has no probative value, as the loan tapes are irrelevant to plaintiff's claims. Allowing Hunter to testify about errors in pre-closing loan tapes poses a serious risk that the jury will be misled, that Hunter's testimony about such errors will confuse the issues in the case, and that his testimony about such

Hon. Denise L. Cote                                                                                           -4-
                                                                                        Motion *in Limine* No. 6

errors will prejudice defendants.  This action concerns whether defendants made material misstatements in the Offering Documents.  Testimony from an expert concerning purported loan tape errors would appear to the jury to relate to that question, even though the pre-closing loan tapes are not part of the Offering Documents or referenced therein.  Moreover, Hunter purports to offer opinions about how the loans in the Securitizations "were originated."  (*See* Ex. 1 (Hunter Report) at 1.)  Testimony about the pre-closing loan tapes—none of which were in existence when the loans were originated—may cause the jury to assume mistakenly that alleged loan tape errors are defects having to do with the origination of the loans.

       Finally, Hunter's testimony about purported errors in pre-closing loan tapes would prejudice defendants by artificially inflating the number of purported defects identified by Hunter, due to Hunter's double counting of alleged defects as errors in pre-closing loan tapes.  The likelihood of prejudice is particularly high given that Hunter's purported loan-tape defects constitute almost 25 percent of Hunter's alleged defects.  Such testimony, which artificially inflates Hunter's purported defect numbers in a substantial way, should be excluded from trial.  *See United States* v. *Herrera*, 788 F. Supp. 2d 1026, 1034 (N.D. Cal. 2011) (excluding expert testimony that was merely "a gimmick to inflate the error rate").

                                          Respectfully submitted,

                                          /s/ David B. Tulchin

                                          David B. Tulchin

cc:     Counsel of Record via ECF