UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
 FEDERAL HOUSING FINANCE AGENCY,        :        11cv6201 (DLC)
                                        :        MEMORANDUM
                      Plaintiff,        :        OPINION & ORDER
                                        :
           -v-                          :
                                        :
                                        :
 NOMURA HOLDING AMERICA, INC., et al.,  :
                                        :
                     Defendants.        :
                                        :
---------------------------------------X
APPEARANCES:

For plaintiff:

Philippe Z. Selendy
Adam M. Abensohn
Jonathan B. Oblak
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants:

David B. Tulchin
Steven L. Holley
Bruce E. Clark
Bradley A. Harsch
Katherine J. Stoller
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Amanda F. Davidoff
Elizabeth A. Cassacy
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW, Suite 700
Washington, DC 20006

Thomas C. Rice
David J. Woll
Andrew T. Frankel
Alan Turner
Craig S. Waldman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017


    On November 26, 2014, the defendants moved pursuant to
Federal Rule of Evidence 702 and Daubert v. Merrill Dow Pharms.,
Inc., 509 U.S. 579 (1993), to exclude certain expert testimony
that plaintiff Federal Housing Finance Agency ("FHFA") intends
to offer through two experts, Leonard A. Blum ("Blum") and Peter
D. Rubinstein ("Rubinstein").  FHFA had asked Blum to describe
how residential mortgage backed securities ("RMBS" or
"securitizations") are issued and underwritten and the impact on
such issuance and underwriting where the loans underlying the
RMBS have collateral characteristics that are inaccurately
disclosed or where the loans were defectively originated.  To
provide his opinions, Blum reviewed and relied upon expert
reports issued by other FHFA experts, including John Kilpatrick
and Robert Hunter.[1]

_____

[1]  FHFA also submitted two expert reports from Blum on November
10, 2014, to rebut expert testimony from defendants' due
diligence expert.  This Opinion does not address the defendants'
motion regarding the November 10 Blum reports.  Since FHFA's
summary judgment motion addressed to the due diligence defense
was granted on December 18, 2014, FHFA v. Nomura Holding Am.

FHFA asked Rubinstein to provide an expert opinion concerning the private-label RMBS[2] securitization process and the financial incentives and functions of the participants in the process during the period of 2005 to 2007. Rubinstein's report describes the mechanics of securitizing residential loans, including how entities like the defendants structured transactions and sourced mortgage loans, how the transactions generated cash flows, the construction of risk structure, and how RMBS were marketed.

Defendants first contend that the two experts should not be permitted to give background testimony about the securitization process and the role of institutional participants in that process without also being able to provide specific testimony linking their descriptions to the defendants. They offer several examples of such testimony. For example, they complain that Blum is offering testimony about Net Trade Value[3] and

---

Inc., --- F. Supp. 3d ---, 2014 WL 7232443, at *40 (S.D.N.Y. Dec. 18, 2014), it is assumed that FHFA is no longer intending to offer testimony from Blum that tracks the opinions contained in his November 10 rebuttal reports. If FHFA does intend to offer any such opinions, it shall promptly identify them to the defendants, and the defendants may renew any portion of this Daubert motion which is affected by that identification.

[2] Private label RMBS are distinguished from "agency RMBS," which are sold by federal agencies like the GSEs.

[3] Blum explains that a Net Trade Value is the difference between "the proceeds received by the bank (and affiliates) from sold

underwriters' financial incentives without informing himself
sufficiently about Nomura's profit structure or incentives.[4]
They also complain that Rubinstein offers a description of the
ways in which investment banks secured access to a supply of
loans without referring to any evidence that Nomura engaged in
such practices; that he opines about the conflicts of interest
that arise from vertical integration of the participants in the
securitization process without tying this testimony to Nomura;
and that he offers opinions regarding the extension by
underwriters of warehouse lines of credit[5] to originators without
discussing the role of RBS Securities Inc., which acted as an
underwriter for four of the RMBS at issue here.

    Background evidence regarding the securitization process as
well as the role and incentives of the different participants in
that process is essential in a trial like this.  None of that
information is common knowledge.  A fact finder, whether a judge

---

securities, plus the value of any securities retained" and "what
the bank paid for the loans plus all marginal expenses of the
securitization."

[4] The defendants explain that all of Nomura's profit on these
RMBS transactions was tied to the performance of its residual,
that is, its retention of the riskiest tranche of each of the
seven RMBS.

[5] Rubenstein explains that a warehouse line of credit is a
"short-term lending facility provided by an investment bank to a
mortgage loan originator" that the originator "uses as needed to
purchase or originate mortgage loans."

or jury, would depend on an expert with specialized knowledge to provide such critical background information about this highly specialized business activity.  Because this testimony is appropriately given through an expert, it is unnecessary to engage further with the parties' separate disputes over the extent to which these two experts have relevant evidence regarding the specific practices and motives of the defendants. Those topics may be explored on cross-examination.

Next, the defendants complain that Blum is offering testimony regarding "scratch-and-dent" loans[6] and comparing such loans to the seven RMBS at issue here without any showing that they are comparable.  Blum principally discusses scratch-and-dent loans to explain why it is important to the market that offering documents for a securitization accurately describe the extent to which the loans in a securitization conform (or not) to an originator's underwriting guidelines.  This is relevant, admissible testimony.

Defendants also complain of Blum's conclusion that the securitizations here closely resemble scratch-and-dent securitizations, at least in "certain respects."  In giving this opinion, it appears that Blum is largely relying on the analysis

---

[6] Blum explains that "scratch-and-dent" loans are those that "(a) violated the underwriting guidelines or program guidelines under which they were intended to have been originated; (b) had document deficiencies; or (c) became delinquent."

of underwriting defects that appears in opinions rendered by
FHFA experts Hunter and Kilpatrick, both of whom will be
testifying at trial.  Defendants may, of course, examine Blum at
trial to establish in more detail the extent to which he is
relying on the conclusions reached by these other testifying
experts.  The explicit reliance on the analysis of another
testifying expert is entirely proper.  If the testimony given by
Hunter or Kilpatrick is undercut by their examination at trial
or other trial evidence, then the defendants will have an
opportunity to demonstrate the extent to which Blum's testimony
is also affected.

The defendants next argue that the opinions given by the
experts regarding the steps ratings agencies might have taken if
accurately informed about the quality of the loans in the RMBS
must be excluded because the opinions constitute improper
speculation and are not based on any independent analysis.  Blum
opines, for instance, that where pools of loans backing a
securitization had "more risky characteristics than were
actually disclosed," the rating agencies "would typically have
required greater credit enhancement, such as through larger
subordinate tranches."  At another point in his report, Blum
explains the likely response of credit agencies if presented
with a corrected loan tape that discloses higher expected
default and loss rates.  Blum opines that "rating agencies very

likely may have refused to rate the transactions altogether and/or withdrawn any existing rating."

One of the representations upon which FHFA has brought suit concerns the ratings given by credit rating agencies to the RMBS at issue here.  The Amended Complaint alleged that "the ratings for the Securitizations were inflated as a result of Defendants' provision of incorrect data concerning the attributes of the underlying mortgage collateral to the rating agencies, and, as a result, Defendants sold and marketed the GSE Certificates as AAA (or its equivalent) when, in fact, they were not."  The Offering Documents represented that the Certificates sold to the GSEs would "not be offered unless they receive[d] ratings at least as high as" AAA or its equivalent from rating agencies, and each Certificate at issue did in fact receive that rating.

Testimony that explains the role of credit agencies in the securitization process and the range of actions they may take when informed either initially or eventually about the compromised quality of the asset pool will be of assistance to the fact-finder.  FHFA will be required to show at trial that the defendants provided false descriptions of the loans within the supporting loan groups to the credit agencies and to prove that such misrepresentations affected the ratings given by the agencies to these securities.  The defendants' application to strike this testimony is therefore denied.

**CONCLUSION**

The defendants' November 26, 2014 motion to exclude certain testimony of Leonard Blum and Peter Rubinstein is denied.


SO ORDERED:

Dated:    New York, New York
          February 13, 2015

                         _____
                              DENISE COTE
                         United States District Judge