SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 28, 2015

By E-mail and ECF

The Honorable Denise L. Cote,
　United States District Judge,
　　Daniel Patrick Moynihan United States Courthouse,
　　　500 Pearl Street, Room 1610,
　　　　New York, New York  10007-1312.

　　　　Re:　　*FHFA* v. *Nomura Holding America, Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

　　　　Defendants respectfully submit this reply in support of their Motion *in Limine* No. 6 ("Motion" or "Mot."), which seeks to exclude Robert W. Hunter's testimony regarding alleged pre-closing loan-tape discrepancies.

### ARGUMENT

**I.　　LOAN TAPES WERE NOT PART OF THE COLLATERAL TABLES.**

　　　　There is no dispute on this motion that (i) the loan tapes were neither referred to nor incorporated by reference in the Offering Documents, and (ii) the contents of pre-closing loan tapes were not reproduced in the collateral tables.  The loan tapes contained loan-level data, whereas the collateral tables contained aggregate data.  Plaintiff also does not attempt to show that any alleged loan-tape discrepancy actually affected the aggregate data in the collateral tables.  As a result, only errors allegedly contained in the collateral tables themselves—not the loan tapes— are relevant to plaintiff's claims.

**II.　　PLAINTIFF HAS NOT SHOWN THAT THE ALLEGED LOAN-TAPE DISCREPANCIES AFFECTED THE CREDIT RATINGS OF THE CERTIFICATES.**

　　　　Plaintiff asserts that the alleged loan-tape discrepancies are relevant to its claim that the offering documents misrepresented the credit ratings of the Certificates.  (Plaintiff's Opposition ("Opp.") at 2-3.)  In support of this contention, plaintiff cites snippets of deposition testimony for the proposition that changes in collateral characteristics for a deal could theoretically affect the outputs of the rating agencies' credit models.  (*See id*. at 2-3.)  But the only relevant question is whether the specific loan-tape discrepancies to which Hunter points actually affected the credit ratings for the Certificates at issue.  Plaintiff identifies no evidence of any such

Case 1:11-cv-06201-DLC   Document 1269   Filed 02/13/15   Page 2 of 2

Hon. Denise L. Cote                                                                                                      -2-

impact, and none of the deposition testimony or trial exhibits identified by plaintiff (designations for which have now been exchanged) supports that proposition. Likewise, none of plaintiff's disclosed trial witnesses can or will testify to the purported impact of Hunter's loan-tape discrepancies on the credit ratings for the seven Certificates. The alleged loan-tape discrepancies should be excluded as irrelevant.[1]

### III.   PLAINTIFF ADMITS THE ALLEGED LOAN-TAPE DISCREPANCIES ARE DUPLICATIVE OF ALLEGED COLLATERAL-TABLE DEFECTS.

Plaintiff does not deny that Hunter's alleged loan-tape discrepancies merely duplicate other alleged loan defects—resulting in an artificial inflation of the error rate—and instead defends the duplication by claiming that not *all* loan-tape discrepancies are double-counted. (Opp. at 4 ("Mr. Hunter did not double count *all* pre-closing loan tape findings as underwriting defects.") (emphasis added).) This statement makes defendants' point. To the extent the loan-tape discrepancies duplicate other alleged defects, they are irrelevant double-counting. To the extent the loan-tape discrepancies do not duplicate other "findings" by Hunter, that is because (as plaintiff concedes) they did not cause the loans to "exceed the guidelines limits." (*Id*.) In either case, loan-tape discrepancies have no bearing on compliance with originator underwriting guidelines, and as a result are irrelevant.

Respectfully submitted,

/s/ David B. Tulchin

David B. Tulchin

cc:    Counsel of Record via ECF

---

[1]   Although one of plaintiff's proffered experts, G. William Schwert, asserts generally, based on an analysis of all private-label securities purchased by Freddie Mac and Fannie Mae, that loan-to-value ratios and owner-occupancy statistics affect the amount of credit enhancement for those securities, he never connects those claims to the purported loan-tape discrepancies alleged by Hunter. Ex. 10 (Schwert Report) at 5.