```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY,         :     11cv6201 (DLC)
                                        :
                 Plaintiff,             :     OPINION & ORDER
                                        :
       -v-                              :
                                        :
                                        :
NOMURA HOLDING AMERICA, INC., et al.,   :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X
```

APPEARANCES:

For plaintiff Federal Housing Finance Agency:

Philippe Z. Selendy
Jon Corey
Zachary Williams
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants Nomura Holding America, Inc., Nomura Asset Acceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca:

David B. Tulchin
Steven L. Holley
Bruce E. Clark
Bradley A. Harsch
Katherine J. Stoller
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Amanda F. Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006

For defendant RBS Securities Inc.:

Thomas C. Rice
David J. Woll
Andrew T. Frankel
Alan Turner
Craig S. Waldman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

    This Opinion addresses the distinction between materiality, which is an element of a Securities Act claim, and reliance, which is not.  It addresses plaintiff Federal Housing Finance Agency's ("FHFA") January 8, 2015 motion to exclude the testimony of defendants'[1] expert witness John J. Richard ("Richard").  Defendants retained Richard, a professional investor, to serve broadly as an expert on the residential mortgage back securities ("RMBS") industry.  For the reasons discussed below, the motion to exclude is granted in part.  Those portions of Richard's expert report that assert that there was no reliance on any misrepresentations that appeared in the Offering Documents for the RMBS may not form the basis of Richard's trial testimony.  To the extent that Richard is able

---

[1] Defendants are Nomura Holding America, Inc., Nomura Asset Acceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca ("Nomura"); and RBS Securities Inc. ("RBS") (collectively, "defendants").

to address the materiality of pertinent disclosures to investors in RMBS, that testimony will be permitted.

**BACKGROUND**

FHFA, acting as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), filed suit on September 2, 2011 against defendants alleging that the Offering Documents used to market and sell seven certificates ("Certificates") to the GSEs associated with RMBS contained material misstatements or omissions.  RMBS are securities entitling the holder to income payments from pools of residential mortgage loans ("Supporting Loan Groups" or "SLGs") held by a trust.

FHFA brought these claims pursuant to Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), as well as Virginia's and the District of Columbia's Blue Sky laws.  This lawsuit is the sole remaining action in a series of similar, coordinated actions litigated in this district by FHFA against banks and related individuals and entities to recover losses experienced by the GSEs from their purchases of RMBS.  A description of the litigation and the types of misrepresentations at issue in each of these coordinated actions, including the instant case, can be found in FHFA v. Nomura Holding Am., Inc., --- F. Supp. 3d ---, 11cv6201 (DLC), 2014 WL 6462239, at *3-6, *16-17 (S.D.N.Y. Nov. 18, 2014), as

well as FHFA v. UBS Americas, Inc. ("UBS"), 858 F. Supp. 2d 306, 323-33 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013).

Broadly speaking, FHFA alleges three categories of misstatements: (i) the Offering Documents misstated the extent to which the loans in the SLGs for the seven Certificates complied with relevant underwriting guidelines; (ii) the loan-to-value ("LTV") ratios disclosed in the Offering Documents were too low because of inflated appraisals of the properties; and (iii) the Offering Documents misrepresented the number of borrowers who occupied the properties that secured the mortgage loans.  FHFA also alleges that credit rating agencies gave inflated ratings to the Certificates as a result of defendants' providing these agencies with incorrect data concerning the attributes of the loans.

On January 15, 2015, FHFA was granted leave to withdraw its claims under Section 11 of the Securities Act.  On FHFA's strict liability claims under Section 12(a)(2) of the Securities Act as well as the Blue Sky laws, which will be tried to the Court, only four issues remain for trial: the falsity of the alleged misrepresentations, the materiality of the alleged misrepresentations, the loss causation defense as to the Section 12 claim only, and damages.

As set forth in his November 10, 2014 report, Richard was "asked to describe the pre-acquisition analyses typically

4

conducted by [RMBS] investors during the 2005 through 2007 time period and opine on how the analyses conducted by Freddie Mac and Fannie Mae prior to their RMBS acquisitions compared to those of a typical RMBS investor during this period." He was also retained "to evaluate and respond to certain analyses in the" July 9, 2014 expert reports of three of FHFA's experts: Leonard A. Blum ("Blum"), Peter D. Rubinstein ("Rubinstein"), and G. William Schwert ("Schwert").[2] Richard's report is divided into four substantive sections titled, (1) "The RMBS Market," (2) "RMBS Investors' Practices," (3) "Freddie Mac's and Fannie Mae's Pre-Acquisition Analyses Were Typical of Those Performed by RMBS Investors," and (4) "Freddie Mac and Fannie Mae Were Unique in That They Sought Out New Offerings of Housing Goals Rich Securities."

Richard reaches several conclusions. One is that "RMBS investors were generally sophisticated institutional investors with the requisite knowledge, experience, and analytical tools to evaluate the various types of investment offerings. Investors in RMBS typically included institutional investors such as large banks, Freddie Mac and Fannie Mae, pension funds, and asset management firms, rather than small retail investors."

---

[2] Blum and Rubinstein are the subject of a separate Daubert motion brought by defendants. That motion was denied in an Opinion of February 13, 2015.

Another is that "Freddie Mac's and Fannie Mae's pre-acquisition analyses of RMBS reflected the processes of typical sophisticated RMBS investors."  That being said, Richard also concludes that, "[a]lthough the investment processes of Freddie Mac and Fannie Mae were typical relative to RMBS investors generally, Freddie Mac and Fannie Mae were unique in that they sought AAA-rated non-agency MBS backed principally by loans eligible for Department of Housing and Urban Development ('HUD') housing goals credit."  In Richard's opinion, they did not make acquisition decisions based "only on the few data points that are alleged by Plaintiff to have been misrepresented."  As for his rebuttal of FHFA's experts Blum and Rubinstein, Richard generally criticizes them for failing to assert that the disclosure of the alleged misrepresentations in the Offering Document "would have caused [the GSEs] to make any different investment decisions with respect to the Securitizations."  Finally, with respect to Schwert, who claims that, had the Offering Documents reported higher LTV ratios and higher percentages of properties not occupied by their owners, the Certificates could not have been issued with AAA ratings unless the subordination levels had been higher than the levels at which the Certificates were actually issued, Richard's criticism is that Schwert "has not shown . . . that the misrepresentations

6

[FHFA]'s experts claim to have identified would have affected the ratings of the Securitizations."

## DISCUSSION

FHFA challenges three broad aspects of Richard's expert testimony: his opinions regarding the PLS market in general and the practices of RMBS investors; his opinions regarding Fannie Mae and Freddie Mac in particular; and his criticisms of Blum, Rubinstein, and Schwert.  FHFA grounds its motion primarily in the law under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), governing expert testimony, and the relevancy requirements of Fed. R. Evid. 401 and 402.

The applicable rules of law pertaining to exclusion of expert testimony under Fed. R. Evid. 702 and Daubert are set out in this Court's January 28, 2015 Opinion regarding defendants' motion to exclude the testimony of FHFA's expert Dr. John A. Kilpatrick, and that discussion is incorporated by reference here.  FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 353929, at *3-4 (S.D.N.Y. Jan. 28, 2014) ("Kilpatrick Opinion").  Under Fed. R. Evid. 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  See Contreras v. Artus, --- F.3d ---, No. 13-1117, 2015 WL 294239, at *8 (2d Cir. Jan. 23, 2015).  "Irrelevant evidence is not admissible."  Fed. R.

7

Evid. 402; United States ex rel. Feldman v. van Gorp, 697 F.3d 78, 97-98 (2d Cir. 2012).

Defendants offer Richard's testimony as relevant to the issue of materiality.  FHFA has the burden at trial of proving that any misrepresentations in the Offering Documents were material.  "For a misstatement or omission to qualify as material, there must be a substantial likelihood that a complete and truthful disclosure would have been viewed by a reasonable investor as having significantly altered the total mix of information made available."  N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 126 (2d Cir. 2013) (citation omitted); Rombach v. Chang, 355 F.3d 164, 178 n.11 (2d Cir. 2004) ("The test for whether a statement is materially misleading under Section 12(a)(2) is . . . whether representations, viewed as a whole, would have misled a reasonable investor."); see also FHFA v. Nomura Holding Am., Inc., ("Housing Goals Opinion") No. 11cv6201 (DLC), 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014) ("Materiality is an objective standard, determined with reference to a reasonable PLS trader -- not a reasonable GSE, or a reasonable PLS trader with plaintiff's idiosyncratic regulatory restrictions and purchasing goals." (citation omitted)).

FHFA has no burden of showing that it relied on any material misrepresentation in making a decision to invest in the

8

Certificates.  Reliance is an element of a private claim under Section 10 of the Securities Exchange Act.  "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a . . . statement and engaged in a relevant transaction -- e.g., purchasing common stock -- based on that specific misrepresentation."  Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014) (citation omitted).  It is well-established that reliance is not an element of Securities Act claims.  City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 182-83 (2d Cir. 2014).  Securities Act Section 12 is a strict liability statute.  NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 148 (2d Cir. 2012); see also FHFA v. HSBC N. Am. Holdings Inc., 33 F. Supp. 3d 455, 479-80 (S.D.N.Y. July 25, 2014).

Consequently, the parties may offer evidence at trial that tends to establish that the disclosure of the type of information at issue here was or was not material to investment decisions made by investors in RMBS, including the GSEs.  Defendants may not, however, offer evidence or argument for the purpose of proving that the GSE's did not rely on any specific misrepresentations that FHFA succeeds in proving were contained in the Offering Documents for the seven Certificates.

9

### I. Richard's Opinions Regarding the PLS Market Generally and the Practices of RMBS Investors

With respect to the subjects that comprise the portions of his report titled, (1) "The RMBS Market," and (2) "RMBS Investors' Practices," Richard's testimony satisfies the requirements of Fed. R. Evid. 702 and Daubert.  FHFA first contends that Richard's experience is too narrow to permit him to testify about the RMBS market.  It is true that Richard has greater experience investing in commercial mortgage-backed securities.  Nonetheless, Richard is sufficiently qualified to testify regarding the RMBS market and the pre-acquisition practices of PLS investors during the 2005 to 2007 time period.  FHFA will have the opportunity at trial to cross-examine Richard about his qualifications and the bases for his opinions.

With respect to the helpfulness of Richard's testimony, FHFA contends that he fails on this score because he does not opine on whether the representations at issue were true or false or on their materiality.  His testimony will not be excluded on this ground.  Richard's report does address materiality.  Indeed, Richard admits that RMBS investors "considered the characteristics of the loans backing a securitization in their investment decision-making processes."

FHFA argues next that admission of Richard's testimony would violate prior rulings in this case.  The Kilpatrick

Opinion recognized that the term "credibility" as used in the Uniform Standards of Professional Appraisal Practice "reflects an objective assessment of an appraisal" requiring an appraiser "to support an appraisal by evidence and logic."  2015 WL 353929, at *6.  Nonetheless, Richard opines that "sophisticated investors understood that the appraised value of a home is based on the subjective opinion of the appraiser."  As recognized in UBS, an appraisal is a statement of opinion.  858 F. Supp. 2d at 326.  The opinion of an appraiser is actionable as a false statement if it is both false and not sincerely held.  Id.  Accordingly, Richard's report does not contravene a prior ruling in this litigation.  The section of the Kilpatrick Opinion cited by FHFA concerns the falsity of the appraisal, and circumstantially, the state of mind of the appraiser.

Similarly, FHFA is wrong in suggesting that Richard's opinion is in tension with this Court's Opinion regarding the owner occupancy disclosures in the Offering Documents.  A recent Opinion denied defendants' motion to exclude certain trial testimony of FHFA's expert Robert Hunter ("Hunter") regarding the owner occupancy statistics in the Offering Documents by rejecting "defendants' contention that the Offering Documents do no more than reflect information about borrowers' intentions at the time they apply for their mortgages."  FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 394072, at *3

11

(S.D.N.Y. Jan. 29, 2015) ("Owner Occupancy Opinion").  The Opinion held that those "statistics on owner occupancy refer to occupancy status as of the Cut-Off Date, not simply to borrowers' intentions at origination." Id. at *4.[3]  Richard opines that "[o]wner occupancy data reflect borrowers' intended use of the mortgaged property."  (Emphasis supplied.)  He then explains that investors understood that information concerning owner occupancy began with a representation from borrowers on their loan applications regarding their intended use of the property, and opines further that at least sophisticated investors understood that such representations may not have been verified "by independent analyses or the due diligence conducted by the issuers or underwriters."  Again, Richard's testimony does not contravene a prior ruling in this litigation.  While the section of the Owner Occupancy Opinion cited by FHFA concerns the falsity of representations related to owner occupancy as they appear in the Offering Documents, Richard's report does not necessarily take issue with that ruling.  It can be read as a description of the loan application process and an assertion that investors understood that issuers and

---

[3] "The Cut-Off Date refers to the date for establishing the composition of the asset pool in a Securitization." FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 568788, at *1 n.2 (S.D.N.Y. Feb. 11, 2015) (citation omitted).

12

underwriters may fail to act with the care required by securities laws.

## II. Richard's Opinions Regarding Fannie Mae and Freddie Mac

FHFA has shown, however, that Richard's proposed testimony regarding the GSEs is not admissible, at least in its present form.  Richard has no experience that qualifies him to testify as an expert regarding the GSEs.  Most if not all of the two sections of Richard's report titled "Freddie Mac's and Fannie Mae's Pre-Acquisition Analyses Were Typical of Those Performed by RMBS Investors" and "Freddie Mac and Fannie Mae Were Unique in That They Sought Out New Offerings of Housing Goals Rich Securities" is a recitation of passages from the GSEs' documents and depositions that defendants obtained through their discovery in this case.  Moreover, much of it is irrelevant.  These portions of Richard's report are a thinly veiled effort by defendants to put before the factfinder their contention that the GSEs did not in fact rely on any misrepresentations that may have infected the Offering Documents when the GSEs made their investment decisions.  Thus, this material is largely if not entirely irrelevant to the issues to be tried, but if it were relevant and admissible, it would not constitute expert testimony that Richard could competently give.

Recognizing this infirmity, defendants' opposition to the instant motion explains that Richard will only offer testimony

13

relevant to the materiality standard as articulated by the Court, and that Richard will not offer an opinion as to the nature of Freddie Mac's and Fannie Mae's pre-acquisition practices standing alone.  The Court understands this to mean that Richard will not testify on material comprising the sections of his report titled "Freddie Mac's and Fannie Mae's Pre-Acquisition Analyses Were Typical of Those Performed by RMBS Investors" and "Freddie Mac and Fannie Mae Were Unique in That They Sought Out New Offerings of Housing Goals Rich Securities."  Defendants have not identified any passages from these two sections of Richard's report that they believe might be admissible to support his more general expert testimony on the issue of materiality, and the Court will not review the two stricken sections of Richard's report in an effort to locate any passage or snippet that might be salvageable.

This Opinion should not be read, however, as excluding from Richard's trial testimony any reference to the GSEs even though Richard does not have any personal knowledge about their practices to inform his expert testimony.  Richard may use evidence about GSE practices that defendants gleaned through discovery in this litigation if Richard uses that evidence to support his well-founded expert opinions about general industry practices and the materiality (or lack thereof) of loan characteristics to RMBS investment decisions.  FHFA will have an

14

opportunity to renew its objections should Richard's testimony address issues of reliance rather than materiality, or should Richard's testimony become untethered to subjects about which he is an expert.

**III. Richard's Criticisms of FHFA's Experts**

Richard's critique of the three FHFA experts is also stricken. Richard criticizes FHFA experts Blum and Rubinstein for failing to explain how the investment decisions made by the GSEs would have been different in light of the misrepresentations in the Offering Documents that the two experts discuss. Similarly, he points out that Schwert fails to assert that the GSEs relied solely on the Certificates' credit ratings when making their investment decisions.

It is unnecessary to address whether Richard's area of expertise is sufficiently close to that of each of the three FHFA experts to qualify him to give his own opinion on the topics that they each address. Richard's discussion of these three experts' opinions must be excluded for the separate reason that it is addressed to the issue of the GSEs' reliance on the alleged misrepresentations. As described above, their reliance is not at issue here and Richard's opinions regarding reliance run afoul of Fed. R. Evid. 401 and 403.

Defendants explain in their opposition to the instant motion that, based on the Housing Goals Opinion's ruling that

15

materiality is based on an objective standard, "at trial Richard will criticize [FHFA]'s experts only for failing to account for issues of materiality as defined by the Court with respect to 'a reasonable PLS trader.'"  There was nothing novel in the <u>Housing Goals Opinion</u> that can explain the choice made by defendants and Richard to argue about the extent to which the GSEs relied on the representations made in the Offering Documents.  The description of materiality as an element judged by an objective standard is longstanding.  <u>See, e.g.</u>, <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 445 (1976) ("The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor.").  Nonetheless, if Richard can give testimony about the three FHFA experts that falls within the scope of his own expertise and that is addressed to the issue of materiality, he will be permitted to do so.  FHFA will have a further opportunity to object at trial.

## CONCLUSION

FHFA's January 8 motion to exclude the expert testimony of Richard is granted in part.  The two sections of Richard's report addressed to GSE practices, and the portions of Richard's report that present a critique of the three FHFA experts, are

16

stricken without prejudice to Richard giving trial testimony that conforms to the rulings herein.

SO ORDERED:

Dated:   New York, New York
         February 16, 2015

```
                          _____
                                DENISE COTE
                          United States District Judge
```