**Defendants' Reply in Support of Their Motion *in Limine* No. 7**

February 17, 2015

**VIA ELECTRONIC MAIL**
The Honorable Denise L. Cote
United States District Judge
500 Pearl Street, Room 1619
New York, NY 10007-1312

Re: <u>*FHFA v. Nomura Holdings Am., Inc., et al.*, No. 11-cv-6201 (S.D.N.Y.) (DLC).</u>

Dear Judge Cote:

      Defendants submit this reply in support of their motion *in limine* No. 7. Respectfully, the motion should be granted. While FHFA contends that the evidence at issue is generally probative of falsity and materiality, it has utterly failed to demonstrate that this is so.[1] Further, even if there was minimal relevance to this evidence (which there is not), it is outweighed by the danger of waste and delay that would accompany its use at trial. *See* Dkt. No. 1270 at 24.

      First, FHFA does not even try to show the relevance of the opinions of Messrs. Blum and Rubenstein that Defendants purportedly had, and failed to satisfy, affirmative obligations to conduct due diligence on the at-issue securitizations. These aspects of their opinions (which were not addressed in the Court's February 13 ruling, Dkt. No. 1265) do not go to falsity or materiality, nor do they provide "important background" to those questions. Opp. 3. Instead, these opinions misstate the law, *cf.* Dkt. No. 1272 at 7 (excluding expert opinions that are "incorrect as a matter of law"), and in any event address issues that the Court has resolved.

      Second, FHFA's arguments in support of its effort to introduce evidence of diligence done on securitizations not at issue in this case are fundamentally flawed. FHFA's theory that such evidence will show that originators whose loans backed the at-issue securitizations "systematically . . . did not comply with [their] guidelines," Opp.2, ignores that much of this evidence pertains to originators, like Option One and IndyMac, whose loans do not back any of the at-issue securitizations. Moreover, FHFA's position is at odds with its contention, endorsed by the Court, that no "reasonable inference" can be drawn from an originator's general practices to the origination of the at-issue loans. *See, e.g.*, Dkt. No. 727 at 2; Dkt. No. 376 at 66 ("[I]t is hard to see how an Originator's general adherence to its guidelines with respect to a universe of *other loans* would be useful in evaluating the falsity of the representations made regarding the *specific pools of loans at issue here*.") (emph. added).[2] FHFA's next theory of relevance—that

---

[1] The identity of the evidence at issue on this motion is not "vague" as FHFA claims, Opp. 1 n.1, and the numerous specific exhibits and testimony to be excluded will readily be determinable once the Court rules.

[2] *See also, e.g.*, Dkt. No. 766 at 62 ("[T]here is no necessary relationship between deficiencies in an Originator's underwriting practices and the falsity of a Defendant's particular representations in the Offering Documents supporting a Securitization about a set of particular Mortgage Loans"); Dkt. No. 931 at 59 (evidence that originators generally departed from guidelines did not indicate that "the particular loans [in the SLGs] had been materially misrepresented"). Defendants do not "conflate their burden" of proving the GSEs' knowledge with "FHFA's burden to simply prove that the representations" were materially false. Opp. 5. That the GSEs may not have had access to the loan files for the at-issue loans, *id.*, does not make evidence of originators' and Defendants' general practices probative of whether the offering documents here were materially false.

Defendants' general diligence procedures were not designed to "weed out" "defective" loans, Opp. 2—is equally flawed. The Court has already ruled that the diligence practices applied to the securitizations at issue *in this case* were insufficient,[3] so it is irrelevant what procedures Defendants employed in *other* securitizations and/or for loans originated by *other* mortgage lenders. FHFA's final theory—that Defendants' due diligence on other loans is relevant to "corroborating the re-underwriting methodology" of FHFA's expert, Mr. Hunter, Opp. 3, 4—likewise fails. FHFA does not cite any portion of Mr. Hunter's report or deposition testimony that relies on the results of due diligence on loans or originators not at issue. Moreover, FHFA makes no effort to show that the processes employed and grading of loans in *other* securitizations of loans originated at *different times* pursuant to *different guidelines* by *different originators* and the subject of *different disclosures* could support the methods employed and results purportedly obtained by FHFA's expert in this case.[4]

Third, FHFA sidesteps the portion of this motion that seeks to exclude evidence of the reunderwriting *results* for loans from originators whose loans do not back the at-issue securitizations. The results of reunderwriting of Option One or IndyMac loans in no way are relevant to whether the mortgage loans at issue that were originated by Fremont or OwnIt or People's Choice complied with their guidelines, and FHFA makes no argument to the contrary.[5]

Finally, FHFA does not dispute that it plans to adduce evidence of the compensation of individuals who had nothing to do with any of the securitizations at issue but argues that such evidence "is relevant to the extent it shows the incentives of RBSSI employees when conducting due diligence." Opp. 4. This argument ignores the Court's ruling that the diligence for the at-issue securities was inadequate, rendering irrelevant the reasons why other or further diligence may not have been performed. But FHFA has also failed to show any link between the compensation of persons who did not work on these deals or even in the diligence area and the incentives of those who did. Robert McGinnis, for example, (a) was not involved in diligence for these or any other securitization, (b) explained that by "adding new businesses" he was referring to how his own compensation benefited from his hiring a group from Bank One to work on non-mortgage related ABS; and (c) left the RMBS area in early 2006, long before the at-issue securitizations. His testimony in no way shows that RBSSI diligence personnel were financially motivated to approve "defective" loans for the at-issue securitizations.

---

[3] FHFA is wrong that the testimony from RBSSI's former credit officer Brian Farrell is "of core relevance." Opp. 4. Mr. Farrell testified at deposition that he does not recall working on any Nomura Securitization here, and "his failure to recall the details of that diligence" conducted 8 years ago is not a fact issue for trial, as state of mind is irrelevant to the remaining claims.

[4] FHFA highlights the testimony of RBSSI ex-employee Frank Camacho as showing "the ineffectiveness of Defendants' general due diligence procedures," Opp. 4, but the testimony cited relates to RBSSI's diligence when *acquiring* loans, which is not at issue, and in any event, relates the irrelevant point that someone other than Mr. Camacho selected samples for review. The other part of Mr. Camacho's cited testimony pertains to the significance of owner occupancy in reunderwriting a mortgage loan, and not to the materiality of aggregate occupancy statistics to investors, which is an objective standard and not determined by what Mr. Camacho found important.

[5] Notably, the evidence FHFA relies on here further demonstrates the irrelevance of the process by which these other lenders' loans were underwritten. Thus, a line in an email from Mr. Camacho (who did not work on any deal here) about a review of loans at Option One (which did not originate any loans here) that in diligence RBSSI seeks to "figure out whether the loans in the deal are as good as the seller said they were" is in no way "circumstantial evidence" that loans by totally different originators are sometimes "not as good as the seller said they were," let alone evidence of falsity in the offering documents at issue here, as FHFA incorrectly contends. Opp. 4.

        Respectfully submitted,

        /s/ Thomas C. Rice

        Thomas C. Rice
        SIMPSON THACHER & BARTLETT LLP
        *Attorney for Defendant RBS Securities Inc.*

cc: All counsel