UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
 FEDERAL HOUSING FINANCE AGENCY,      :        11cv6201 (DLC)
                                      :
                    Plaintiff,        :        OPINION & ORDER
                                      :
        -v-                           :
                                      :
                                      :
 NOMURA HOLDING AMERICA, INC., et al.,:
                                      :
                    Defendants.       :
                                      :
--------------------------------------X

APPEARANCES:

For plaintiff Federal Housing Finance Agency:

Philippe Z. Selendy
Jon Corey
Zachary Williams
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants Nomura Holding America, Inc., Nomura Asset
Acceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit &
Capital, Inc., Nomura Securities International, Inc., David
Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N.
Dante LaRocca:

David B. Tulchin
Steven L. Holley
Bruce E. Clark
Bradley A. Harsch
Katherine J. Stoller
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Amanda F. Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006

For defendant RBS Securities Inc.:

Thomas C. Rice
David J. Woll
Andrew T. Frankel
Alan Turner
Craig S. Waldman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

This Opinion addresses plaintiff Federal Housing Finance Agency's ("FHFA") January 23, 2015 motion <u>in limine</u> for an order excluding evidence, testimony, and argument at trial that relates solely to the Single Family business activities of Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs").  For the reasons discussed below, the motion is granted.

## BACKGROUND

FHFA, acting as conservator for the GSEs, filed suit on September 2, 2011 against defendants[1] alleging that the Offering Documents used to market and sell seven certificates ("Certificates") to the GSEs associated with residential mortgage-backed securities ("RMBS") contained material

---

[1] Defendants are Nomura Holding America, Inc., Nomura Asset Acceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca ("Nomura"); and RBS Securities Inc. ("RBS") (collectively, "defendants").

misstatements or omissions.  RMBS are securities entitling the
holder to income payments from pools of residential mortgage
loans ("Supporting Loan Groups" or "SLGs") held by a trust.

FHFA brought these claims pursuant to Sections 11 and
12(a)(2) of the Securities Act of 1933 (the "Securities Act"),
as well as Virginia's and the District of Columbia's Blue Sky
laws.  This lawsuit is the sole remaining action in a series of
similar, coordinated actions litigated in this district by FHFA
against banks and related individuals and entities to recover
losses experienced by the GSEs from their purchases of RMBS.  A
description of the litigation and the types of
misrepresentations at issue in each of these coordinated
actions, including the instant case, can be found in FHFA v.
Nomura Holding Am., Inc., --- F. Supp. 3d ---, 11cv6201 (DLC),
2014 WL 6462239, at *3-6, *16-17 (S.D.N.Y. Nov. 18, 2014), as
well as FHFA v. UBS Americas, Inc., 858 F. Supp. 2d 306, 323-33
(S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013).

Broadly speaking, FHFA alleges three categories of
misstatements: (i) the Offering Documents misstated the extent
to which the loans in the SLGs for the seven Certificates
complied with relevant underwriting guidelines; (ii) the loan-
to-value ("LTV") ratios disclosed in the Offering Documents were
too low because of inflated appraisals of the properties; and
(iii) the Offering Documents misrepresented the number of

borrowers who occupied the properties that secured the mortgage loans.  FHFA also alleges that credit rating agencies gave inflated ratings to the Certificates as a result of defendants' having provided these agencies with incorrect data concerning the attributes of the loans.

On January 15, 2015, FHFA was granted leave to withdraw its claims under Section 11 of the Securities Act.  On FHFA's strict liability claims under Section 12(a)(2) of the Securities Act as well as the Blue Sky laws, which will be tried to the Court, only four issues remain for trial: the falsity of the alleged misrepresentations, the materiality of the alleged misrepresentations, the loss causation defense as to the Section 12 claim only, and damages.

This Court has previously discussed the GSEs' Single Family businesses on more than one occasion.  See, e.g., FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 539489, at *2 n.5 (S.D.N.Y. Feb. 10, 2015).  As has been explained before, Fannie Mae and Freddie Mac were created to ensure liquidity in the mortgage market.  Their primary business is to purchase mortgage loans from originators that conform to the GSEs' standards ("conforming loans") and then either hold those loans on their own books or securitize them for offer to the public.  This side of their business is known as the "Single Family" side.  In their Single Family businesses, the GSEs review certain loans

before purchasing them; the GSEs also monitor loans after purchasing them.

In 2000, the GSEs began to purchase quantities of Alt-A and subprime loans.[2]  Fannie Mae held these loans on its books; Freddie Mac held some of these loans and used others as collateral for guaranteed Structured Pass-Through Certificates ("T-Deals"), which were sold to investors.  Freddie Mac guaranteed payments on its T-Deals, which were not governed by the Securities Act or Blue Sky laws.  Both GSEs had the right to "put back" loans to loan originators that did not comply with seller representations.

During this period, some portion of the Alt-A and subprime loans the GSEs purchased were non-conforming loans -- that is, they were underwritten to the seller's guidelines (with certain modifications), not to the GSEs'.  "The GSEs purchased these loans either in bulk ('bulk purchases') or individually, through a 'flow' of single loans ('flow purchases')."  FHFA v. HSBC N. Am. Holdings Inc., 33 F. Supp. 3d 455, 470 (S.D.N.Y. 2014).

Each GSE also conducts a second business, purchasing and holding Private Label Securities ("PLS").  This is a substantially smaller portion of their activities.  It is the

---

[2] Mortgage loans are often divided, by credit risk, into three classes.  In order of ascending risk, they are "prime" loans, "Alt-A" loans, and "subprime" loans.

PLS that the GSEs purchased from defendants that prompt the claims in this lawsuit.

Throughout this coordinated litigation, the Court has repeatedly considered the relevance of the GSEs' Single Family businesses.  Defendants in this coordinated litigation were granted extensive discovery of the GSEs' business, including its PLS operations and the committees overseeing the operations of both the Single Family and PLS operations.  Targeted discovery requests reaching additional Single Family documents were permitted; general requests for discovery about Single Family operations were denied.  FHFA v. UBS Americas Inc., 11cv5201 (DLC), 2013 WL 3284118, at *25 (S.D.N.Y. June 28, 2013).  On June 28, 2013, the Court noted that "the GSEs principally bought whole loans under different standards and constraints than those that applied to defendants' PLS collateral."  Id. at *22 (citation omitted).  The Court explained that "there is no reason to think that the types of (often non-public) information a Single Family employee would consider material in deciding whether to purchase a whole loan is illuminating in determining what a PLS trader would consider material in deciding whether to buy a security backed by a pool of loans."  Id. at *23.  As noted above, Fannie Mae purchased subprime and Alt-A loans to hold, not securitize, and it had the ability -- which it exercised -- to monitor loan performance and put back defective

loans to the seller.  Freddie Mac retained the credit risk associated with the subprime and Alt-A loans it securitized, as it guaranteed payment on T-Deals.  Neither GSE purported to exercise due diligence or reasonable care under Sections 11 or 12(a)(2) of the Securities Act or under the Blue Sky laws.

In addition, the GSEs were subject to affordable housing goals set by the U.S. Department of Housing and Urban Development ("HUD") that required, for example, the purchase of "loans to lower income borrowers that are owner occupied and in metro areas."  HSBC, 33 F. Supp. 2d at 464 n.15.  The GSEs' decisions to purchase whole loans were, at times, influenced by the GSEs' desire to purchase loans that met these housing goals.

On December 18, 2014, the Court issued two Opinions granting motions in limine brought by FHFA pertaining to the Single Family side of the GSEs' businesses: one "prohibit[ed] defendants from introducing evidence relating to the [HUD] housing goals set for Fannie Mae and Freddie Mac," FHFA v. Nomura Holding Am., Inc. ("Housing Goals Opinion"), No. 11cv6201 (DLC), 2014 WL 7229361, at *1 (S.D.N.Y. Dec. 18, 2014), and the other "prohibit[ed] defendants from presenting evidence concerning Fannie Mae's and Freddie Mac's Single Family businesses' whole-loan due diligence."  FHFA v. Nomura Holding Am., Inc. ("Single Family Diligence Opinion"), No. 11cv6201 (DLC), 2014 WL 7234593, at *1 (S.D.N.Y. Dec. 18, 2014).

On January 23, 2015, FHFA filed the instant motion <u>in
limine</u> for an order excluding evidence, testimony, and argument
at trial that relates solely to the GSEs' Single Family business
activities.  The motion was fully submitted on February 10.

## DISCUSSION

FHFA complains that defendants have proposed exhibits
related solely to the GSEs' Single Family business activities --
including (1) emails between employees with solely Single Family
responsibilities, (2) internal memoranda related solely to
Single Family whole-loan purchases, and (3) internal memoranda
related solely to the Single Family businesses -- and have
designated deposition testimony of GSE witnesses on topics
related solely to the GSEs' Single Family business activities.
FHFA argues that this evidence is irrelevant under Fed. R. Evid.
401 (contending that it is relevant to neither falsity nor
materiality) and that, even if it were relevant, it should be
excluded under Fed. R. Evid. 403 for its potential to create an
undue burden and waste time.

Under Fed. R. Evid. 401, "[e]vidence is relevant if (a) it
has any tendency to make a fact more or less probable than it
would be without the evidence; and (b) the fact is of
consequence in determining the action."  See <u>Contreras v. Artus</u>,
--- F.3d ---, No. 13-1117, 2015 WL 294239, at *8 (2d Cir. Jan.
23, 2015).  "Irrelevant evidence is not admissible."  Fed. R.

Evid. 402; U.S. ex rel. Feldman v. van Gorp, 697 F.3d 78, 97-98 (2d Cir. 2012).

Pursuant to Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Accord United States v. Dupree, 706 F.3d 131, 138 (2d Cir. 2013). A court must "conscientiously balance[] the proffered evidence's probative value with the[se] risk[s]." United States v. Massino, 546 F.3d 123, 132 (2d Cir. 2008) (citation omitted). Moreover, Fed. R. Evid. 403 has a role to play whether the case is to be tried to a jury or to a judge. See, e.g., United Brands Co. v. M.V. Isla Plasa, No. 85cv0491 (SS), 1994 WL 114825, at *1 n.2 (S.D.N.Y. Mar. 31, 1994) (Sotomayor, J.) (excluding evidence under Fed. R. Evid. 403 at a bench trial based on burden to the court); S.E.C. v. Morelli, No. 91cv3874 (LAP), 1993 WL 603275, at *2 (S.D.N.Y. Dec. 21, 1993) (excluding evidence under Fed. R. Evid. 403 at a bench trial based on undue delay).

Defendants oppose the instant motion by arguing, first, that the evidence to which FHFA refers does not relate solely to the Single Family side of the GSEs' businesses. They also contend that evidence from the Single Family businesses is

relevant not only to materiality, and, in one case, to falsity, but also to the loss causation defense, which FHFA's motion does not anticipate.

## I.  Falsity

The falsity point is easily disposed of.  In a footnote in their opposition to the instant motion, defendants assert that evidence from Freddie Mac's and Fannie Mae's Single Family businesses, especially evidence concerning whole-loan due diligence, is relevant to falsity and seek reconsideration of the December 18 Single Family Diligence Opinion.  That Opinion granted FHFA's motion in limine to exclude evidence concerning the GSEs' Single Family businesses' whole-loan due diligence. 2014 WL 7234593, at *5.  Defendants contend that reconsideration is warranted because the Single Family Diligence Opinion concluded that the probative value of such evidence was substantially outweighed by a danger of jury confusion, but, since that time, it has been decided that this case will be tried to the Court, not to a jury.

In its reply brief in support of the instant motion, FHFA contends that defendants' reconsideration request is untimely (as it was made outside of Local Rule 6.3's fourteen-day window following the Single Family Diligence Opinion), is waived (as defendants never before argued that Single Family due diligence was relevant to falsity), and is meritless.  Even if defendants'

reconsideration request could be made in a footnote, and even if it were timely and preserved, there would be no reason to reconsider the Single Family Diligence Opinion.  While the particular Fed. R. Evid. 403 danger that the Single Family Diligence Opinion addressed most directly was the danger of confusing and misleading the jury, see id., that Opinion made it clear that the probative value of evidence concerning the GSEs' Single Family businesses' whole-loan due diligence to each of the arguments suggested at that time by defendants was so minimal that it could be easily substantially outweighed by any of the Fed. R. Evid. 403 dangers, including undue delay and wasting time.  In other words, the fact that this case will now be tried to the Court does not prompt reconsideration of the Single Family Diligence Opinion; nor does it counsel in favor of the admissibility -- for purposes of proving falsity -- of Single Family evidence.  In their footnote request, defendants do not explain how evidence from the GSEs' Single Family businesses makes it either more or less true that the Offering Documents for the seven Certificates contained false statements about the loans in their SLGs.  Nor do defendants indicate that there is any ground for finding that the Single Family Diligence Opinion contains an error in its analysis.  Thus, it remains true that the exceedingly limited probative value of evidence from the Single Family businesses is substantially outweighed by

the waste of time and undue delay that it would cause.

Defendants' request for reconsideration is denied.

## II.  Loss Causation

Defendants also argue in their opposition to the instant motion that the evidence FHFA seeks to exclude is relevant to the Section 12 loss causation defense, which FHFA's motion did not anticipate, as it argued irrelevance only with respect to falsity and materiality.  Pursuant to the defense,

> if the person who offered or sold [the] security proves that any portion or all of the amount recoverable . . . represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted . . . , then such portion or amount, as the case may be, shall not be recoverable.

15 U.S.C. § 77l(b).

Since February 2, when defendants filed their opposition to this motion, several Opinions have addressed defendants' evidence concerning loss causation.  A February 10 Opinion granted FHFA's motion to exclude the expert testimony and opinions of defendants' proffered expert, Kerry Vandell ("Vandell"), relating to his benchmarking analysis, and those aspects of Timothy Riddiough's ("Riddiough") loss causation damages calculation that rely on Vandell's analysis.  FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 539489, at *1 (S.D.N.Y. Feb. 10, 2015).

12

Vandell was retained "to provide expert testimony on loss causation." Id. at *2. "[T]o assess whether the categories of alleged defects in the Offering Documents -- as opposed to other factors, such as market-wide economic changes that affected mortgage loans generally -- caused losses to the GSEs as holders of the seven Certificates, Vandell conducted regression analyses that compared the performance of the loans backing the Certificates to the performance of three benchmark groups of loans." Id. The Opinion excluded Vandell's benchmarking analysis under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and Fed. R. Evid. 702 because of an insufficient showing that his benchmarks could serve as control groups. Id. at *4.

Subsequently, a February 13 Opinion granted FHFA's motion to exclude the testimony of defendants' expert witness Stephen Ryan ("Ryan"), an accounting expert, who was retained, among other things,

> to determine whether the manner in which the GSEs accounted for the losses of fair value indicates that the GSEs determined that some portion of these losses was attributable to changes in financial markets or other relevant economic conditions that affected non-agency mortgage-related securities generally, rather than to factors specific to the origination or sale of the mortgages underlying the At-Issue Certificates.

FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 629336, at *2 (S.D.N.Y. Feb. 13, 2015) (citation omitted). The

Opinion excluded Ryan's testimony under Fed. R. Evid. 401, 402, and 403, explaining that Ryan's expert testimony on the GSEs' accounting practices, at best, had minimal probative value to the loss causation defense. Id. at *10.

In its reply brief in support of the instant motion, FHFA for the first time makes an argument grounded in Fed. R. Evid. 701 and 702, contending that speculation about the performance of loans backing PLS requires expert testimony and cannot be offered as lay opinion from the GSE witnesses whose deposition testimony has been designated by defendants. In a separate motion in limine brought by FHFA, the parties debate more fully the implications of these two evidence rules on the admission at trial of lay testimony offered by defendants in support of their loss causation defense. FHFA's argument, made in its reply here, will be addressed in the context of that companion motion. In any event, defendants have not shown that the evidence obtained by defendants from the GSEs' Single Family businesses and identified by FHFA in this motion may be admitted as relevant to loss causation.

### III. Materiality

At trial, FHFA will have the burden of proving that any misrepresentations in the Offering Documents were material. "For a misstatement or omission to qualify as material, there must be a substantial likelihood that a complete and truthful

disclosure would have been viewed by a reasonable investor as
having significantly altered the total mix of information made
available." N.J. Carpenters Health Fund v. Royal Bank of
Scotland Grp., PLC, 709 F.3d 109, 126 (2d Cir. 2013) (citation
omitted); Rombach v. Chang, 355 F.3d 164, 178 n.11 (2d Cir.
2004) ("The test for whether a statement is materially
misleading under Section 12(a)(2) is . . . whether
representations, viewed as a whole, would have misled a
reasonable investor."). As this Court has said in the context
of this case, "[m]ateriality is an objective standard,
determined with reference to a reasonable PLS trader -- not a
reasonable GSE, or a reasonable PLS trader with plaintiff's
idiosyncratic regulatory restrictions and purchasing goals."
FHFA v. Nomura Holding Am., Inc., ("Housing Goals Opinion") No.
11cv6201 (DLC), 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014)
(citation omitted). This prior pronouncement, standing alone,
gives significant guidance. For evidence pertaining to the
Single Family side of the GSEs' businesses to be at all relevant
on the issue of materiality, it must shed light on what a
reasonable trader would do on the other side, the PLS side, of
the GSEs' businesses.

## IV. Specific Examples

Turning to the specifics of the instant motion, as
representative examples of the type of evidence that it says

should be excluded, FHFA points to seven exhibits listed on
defendants' exhibit lists and to four GSE witnesses whose
deposition testimony defendants have designated.  In their
opposition, defendants explicitly address two of the exhibits
and three of the GSE witnesses.

One of the exhibits is a collection of slides constituting
a June 27, 2005 Fannie Mae presentation entitled "Single Family
Guaranty Business: Facing Strategic Crossroads."  According to
defendants, this exhibit does not relate solely to the Single
Family side of the business because one of its forty-six pages
includes a graph in support of the statement that "[h]igh home
price growth tends to reduce credit losses."  Defendants say
that this statement and the data offered in support thereof bear
on loss causation.  This selective quotation of the exhibit is
not enough to save it.  As its title suggests, the presentation
is entirely directed to the Single Family side of Fannie Mae's
business.  That certain sentences from a presentation slide,
read in isolation, might apply to the housing market generally
or even to trends in the subprime market, does not serve to
transform the exhibit into one with relevance outside the Single
Family context or relevance to a loss causation defense offered
to respond to claims of misrepresentations in PLS offering
documents.  In any event, any limited probative value is easily
outweighed by the waste of time that would accompany laying a

foundation for an exhibit that is, at base, about a side of
Fannie Mae's business that is not at issue in this action.  This
exhibit and others like it are excluded.

The only other exhibit of the seven exemplars offered by
FHFA that defendants explicitly discuss is a collection of
slides constituting a May 23, 2006 Fannie Mae Steering Group
meeting entitled, "Subprime New Business Initiative."  This
initiative represents a proposal for a Single Family program
involving only bulk transactions.  According to defendants, this
exhibit does not relate solely to the Single Family side because
one of its eleven slides identifies as one of the six "[r]easons
sub-prime grew" the following: "[r]ecord home price appreciation
driving cash-out refinances while buffering default rate and
loss severity."  To connect this statement to the PLS side of
the GSE's business, defendants point to the deposition testimony
of Joseph Paul Norris ("Norris"), Fannie Mae's head PLS trader,
who explained that he had some involvement in pricing the
interest rates of subprime whole-loan packages in the new
business initiative.  Again, defendants' attempt to cherry-pick
isolated statements from lengthy Single Family materials and
claim their relevance to the PLS side of the GSE business or to
their loss causation defense is unavailing.  Any minimal
probative value is substantially outweighed by the waste of time
of having a witness lay a foundation for the exhibit and the

17

isolated passage on which defendants wish to rely.  This exhibit
and others like it are excluded.

Defendants do not explicitly respond to the other five
proposed exhibits to which FHFA has pointed as representative
examples of the type of evidence that should be excluded.  Two
of the proposed exhibits are email threads featuring Eric
Rosenblatt ("Rosenblatt"), Fannie Mae's Vice President of Credit
Risk Analytics and Modeling (discussed again below with respect
to deposition designations) and other GSE employees with Single
Family responsibilities.  A third exhibit is a collection of
slides constituting an August 2006 Fannie Mae Business and
Strategy Development presentation entitled, "Sub Prime Market
and Fannie Mae Participation."  Aside from one slide that
presents dollar-figure data reflecting Fannie Mae's
participation in the subprime market on both the Single Family
and the PLS sides, the presentation is dedicated entirely to the
Single Family business's participation in the subprime market.
Another exhibit is an email to Donald Bisenius ("Bisenius"),
Freddie Mac's Senior Vice President in charge of risk management
(also discussed below with respect to deposition designations)
and others attaching various "presentations and reports that are
related to the SF [Single Family] business."  The final exhibit
is a June 2012 Freddie Mac fact sheet about Home Value
Calibrator, an appraisal quality control tool Freddie Mac

licensed to lenders.  There is no indication from the face of
the exhibit that it has relevance to any of the issues remaining
in this case.

FHFA's unopposed applications to exclude these proposed
exhibits are granted; these proposed exhibits, and the others
for which they serve as representative examples, are excluded.
Assuming that this type of evidence is even relevant to open
issues, its probative value is so minimal as to be substantially
outweighed by the undue burden and waste of time that would
accompany its admission.  See Fed. R. Evid. 403.

As for the four GSE witnesses whose deposition testimony
defendants have designated, defendants do not oppose FHFA's
application to exclude deposition testimony from Devajyoti
Ghose, a Freddie Mac risk management designer who discussed the
watch lists used to monitor Single Family counterparties.  They
also do not oppose FHFA's application to exclude testimony from
Rosenblatt appearing at pages 32 to 34 of his deposition
transcript.[3]  These unopposed applications for exclusion are
granted.

---

[3] In addition to specifying pages 32 to 34 for exclusion, FHFA at
one point in its opening brief makes a "see also generally"
reference to Rosenblatt's deposition testimony.  The Court does
not interpret this as a request to exclude the Rosenblatt
testimony in its entirety.

The parties do dispute, however, whether the testimony at pages 450 to 451 of the deposition of Lesia Bates Moss ("Bates Moss"), Fannie Mae's Vice President and Head of Counterparty Risk for the Single Family and PLS businesses during the relevant period, is relevant to loss causation.[4]  In that passage, Bates Moss discusses the risks associated with loans originated by New Country and Ameriquest.  Defendants have failed to show a connection between this testimony and any of the live issues for trial.  Accordingly, the disputed testimony of Bates Moss, and other testimony like it, is excluded.

The parties also dispute whether testimony at pages 44 to 45 of the deposition of Bisenius is relevant to the materiality of the loan characteristics disclosed in the Offering Documents. In that passage Bisenius discusses his responsibility over Loan Prospector, a tool that Freddie Mac used to evaluate the riskiness of a mortgage loan.  Bisenius nowhere links Freddie Mac's use of Loan Prospector to the PLS side of the business, and defendants offer no reason to think that Bisenius's testimony relates to anything outside the Single Family side. Equally important, a December 18, 2014 Opinion granted FHFA's motion in limine "to prohibit defendants from introducing documents or testimony related to Fannie Mae's or Freddie Mac's

---

[4] Defendants do not oppose the motion to exclude testimony from pages 448 to 449 and at 452.

automated underwriting systems [("AUS")] or from relying on recommendations from those systems in arguments concerning falsity or materiality of the misrepresentations alleged in this action." FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2014 WL 7229458, at *1 (S.D.N.Y. Dec. 18, 2014).  Loan Prospector is one such AUS that was explicitly discussed in the December 18 Opinion.  As that Opinion explained:

> The AUS were rules-based tools to be used with conforming prime loans, not the nonconforming subprime and Alt-A loans at issue in these actions.  Whether a rules-based implementation of a GSE's guidelines for conventional prime loans set certain standards says very little about industry standards for underwriting guidelines addressing the riskiest nonconforming loans.

Id. at *4.  The disputed testimony of Bisenius, and other testimony like it, is excluded.

## CONCLUSION

FHFA's January 23 motion in limine for an order excluding evidence, testimony, and argument at trial that relates solely to the GSEs' Single Family business activities is granted.  This includes proposed exhibits such as (1) emails between employees with solely Single Family responsibilities, (2) internal memoranda related solely to Single Family whole-loan purchases, and (3) internal memoranda related solely to the Single Family businesses, as well as designated deposition testimony of GSE

21

witnesses on topics related solely to the GSEs' Single Family

business activities.

SO ORDERED:

Dated:      New York, New York
            February 18, 2015

                        _____
                              DENISE COTE
                    United States District Judge