```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
 FEDERAL HOUSING FINANCE AGENCY,        :    11cv6201 (DLC)
                                        :    MEMORANDUM
                 Plaintiff,             :    OPINION & ORDER
                                        :
       -v-                              :
                                        :
                                        :
 NOMURA HOLDING AMERICA, INC., et al.,  :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X
```

APPEARANCES:

For plaintiff:

Philippe Z. Selendy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants:

David B. Tulchin
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Thomas C. Rice
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

　　　Plaintiff Federal Housing Finance Agency ("FHFA"), the conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), moved in limine on January 8, 2015 to preclude the defendants from offering two

1

categories of evidence that the defendants gathered from the GSEs in the course of discovery.  First, FHFA seeks to exclude evidence that postdates the final "settlement date" for the Certificates purchased by each GSE.  For Fannie Mae, that date is November 30, 2005; for Freddie Mac, it is April 30, 2007.  FHFA also seeks to exclude all evidence from the GSEs that the defendants seek to offer on the issue of loss causation.  FHFA contends that any loss causation defense must be proven through retained experts.  For the following reasons, FHFA's motions are denied, with the guidance provided herein.

1. Post-Settlement Evidence

    FHFA argues that post-settlement evidence "can neither prove nor disprove any claim or defense that remains to be tried," and therefore that it cannot be relevant.  But evidence "need not be conclusive in order to be relevant.  An incremental effect is sufficient."  United States v. Certified Envtl. Servs., Inc., 753 F.3d 72, 90 (2d Cir. 2014) (citation omitted).  "It is universally recognized that evidence . . . [need] only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  McKoy v. N. Carolina, 494 U.S. 433, 440 (1990) (quoting Fed. R. Evid. 401).

As this Court recently held, "evidence gleaned from any point in time" could be used "to prove the truth or falsity of a representation of fact about a past event." FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 568788, at *8 (S.D.N.Y. Feb. 11, 2015).  This same standard will be applied to each of the issues that remain to be decided at trial.  On principle, there is no reason why information postdating settlement should be per se irrelevant or inadmissible, regardless of whether it pertains to loss causation or any other subject.  If the evidence relates to the relevant period of time and is otherwise admissible pursuant to Fed. R. Evid. 401 and 403 it will not be excluded solely on the ground that it is post-settlement evidence.

2. Expert Testimony & Loss Causation

FHFA argues that defendants may not introduce "GSE documents and lay testimony" on the issue of loss causation because evidence regarding loss causation must be provided by experts.  According to FHFA, a GSE employee, or any layperson, lacks the requisite knowledge and training that would permit the person to apply a reliable methodology to reach an informed conclusion.  Moreover, to the extent the person was "unaware" of the alleged misrepresentations associated with the GSE's seven Certificates at issue here, then the person would not be in a position to form an assessment of loss causation.  Defendants

respond that "straightforward fact testimony" and "lay opinion testimony" by employees and former employees of the GSEs is appropriate to show loss causation because employees are testifying "about topics squarely within the scope of their employment."

Section 12(a)(2) of the Securities Act provides a defendant with an affirmative defense of loss causation.  This defense, which is referred to as "negative loss causation," permits a defendant to reduce or eliminate the obligation to pay damages for its violation of Section 12(a)(2) if the defendant proves "that any portion or all of the amount recoverable . . . represents other than the depreciation in value of the subject security resulting from" the misrepresentation or falsehood.  15 U.S.C. § 77l(b); see FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 629336, at *10 (S.D.N.Y. Feb. 13, 2015).  While Section 10(b) under the Exchange Act requires plaintiffs to prove loss causation to recover for misrepresentations, see 15 U.S.C. § 78u-4, Section 12 of the Securities Act places the burden on defendants to prove that something other than the misrepresentations was responsible for the damages.  Thus, "the negative causation defense in Section [12] and the loss causation element in Section 10(b) are mirror images" of one another.  In re WorldCom, Inc. Sec. Litig., No. 02cv3288 (DLC), 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005).

Because of their complementarity, the loss causation analysis conducted under Section 10 is informative of the analysis under Section 12.  At its core, each analysis requires a determination of the proximate cause of a loss.  As described by the Second Circuit, plaintiffs may plead loss causation by asserting that "loss was foreseeable and caused by the materialization of the risk concealed by [a] fraudulent statement."  Carpenters Pension Trust Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 232-33 (2d Cir. 2014).[1]  Loss causation represents "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff," and is "related to the tort law concept of proximate cause."  Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 157 (2d Cir. 2007) (citation omitted).  "A misrepresentation is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations."  In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 513 (2d Cir. 2010) (citation omitted).  Therefore, to prevail on its Section 12 defense a defendant must carry its burden of showing that the loss in the value of the securities at issue was proximately caused by events unrelated to the

---

[1] Section 10(b) also allows a showing of loss causation "on the ground that the market reacted negatively to a corrective disclosure of the fraud."  Carpenters, 750 F.3d at 232.

5

defendants' alleged misconduct.  See FHFA v. Nomura Holding Am. Inc., No. 11cv6201 (DLC), 2014 WL 7232590, at *10 (S.D.N.Y. Dec. 18, 2014).

The admission of testimony regarding the proximate cause of loss is governed by the Federal Rules of Evidence.  Those Rules "allow the admission of fact testimony so long as the witness has personal knowledge."  United States v. Cuti, 720 F.3d 453, 457 (2d Cir. 2013), cert. denied, 135 S. Ct. 402 (2014).  Defendants contend that the testimony of GSE or other non-expert witnesses on the issue of loss causation constitutes fact testimony.  It does not; no witness directly observed or experienced whatever caused any loss in the value of the Certificates.  Instead, such testimony is opinion testimony.  Opinion testimony may, in the ordinary case, "be presented by either a lay or expert witness."  Id. at 457-58.  The issue here is whether opinions regarding loss causation may properly be received as lay opinions or only as expert opinions.

The Federal Rules provide the necessary guidance to resolve that issue.  Federal Rule of Evidence 701 provides that

> [i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

This rule was amended in 2000, "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004) (citation omitted). The distinctions drawn between Rules 701 and 702 "prevent[] a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements" set forth in the Rules. United States v. Haynes, 729 F.3d 178, 195 (2d Cir. 2013).

Accordingly, lay opinion testimony may be received if it results "from a process of reasoning familiar in everyday life." United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) (citation omitted). In addition, lay opinion testimony based on "knowledge and participation in the day-to-day affairs of [a] business" may be admitted, if it was an opinion formed "not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701 advisory committee's note. Thus, where a witness used his specialized knowledge in carrying out an investigation for his employer, the employee may provide

7

lay opinion testimony "as long as it [is] based on his investigation and reflected his investigatory findings and conclusions and was not rooted exclusively in his expertise." Rigas, 729 F.3d at 224 (citation omitted). See also Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 764 (2d Cir. 1991). In contrast, if the witness's testimony "was not a product of his investigation, but rather reflected his specialized knowledge, then it [is] impermissible expert testimony." Rigas, 729 F.3d at 224 (citation omitted).

While Rule 701 governs the receipt at trial of lay opinion testimony, Rule 702 provides the basis for the admission of opinions by experts. In Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579 (1993), and its progeny the application of Rule 702 has been addressed at length. "The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702," United States v. Farhane, 634 F.3d 127, 158 (2d Cir. 2011), and a court must conduct a rigorous inquiry to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007) (citation omitted).

Applying these principles to the FHFA motion permits the following conclusions. The parties may proffer at trial expert opinions regarding loss causation from witnesses they timely

8

disclosed as their experts pursuant to this Court's Scheduling Orders.  For instance, the defendants disclosed Vandell as an expert on loss causation, and FHFA's motion pursuant to Rule 702 and Daubert addressed to Vandell's testimony has been decided. See FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2015 WL 539489, at *11 (S.D.N.Y. Feb. 10, 2015).

The defendants may not seek to offer opinion testimony from non-expert witnesses on the issue of loss causation without the following showing.  If the witness performed an investigation during the course of her employment addressed to the issue of loss causation, then the witness may be examined about that investigation and her findings.  If the witness did not perform any such investigation during the regular course of her business activities, then she may not be examined regarding her opinion on what caused any loss to the value of the seven Certificates at issue here or more broadly about losses sustained by the GSEs' PLS holdings or by others who held PLS.  If, however, the lay opinion testimony may be properly received under these principles, it will not be excluded because the witness did not at that time have knowledge of the existence of the misrepresentations in the Offering Documents which FHFA may prove at trial existed, or because the investigation and the opinions that were formed as a result of that investigation

9

concerned the cause of loss on PLS securities other than the seven at issue here.

The parties have not addressed whether any lay opinion testimony must seek to identify the cause of a loss that has already been experienced in a PLS portfolio, or whether it may more broadly include speculation about what might cause the portfolio to experience a loss.  They will be given an opportunity to address this distinction and whether the latter testimony should be excluded under Fed. R. Evid. 401 and 403 as well as 701.

One further cautionary note is warranted.  It will be difficult (if not impossible) for the defendants to sustain their burden of showing loss causation without persuasive expert testimony.  After all, to make out a successful defense a party must prove not the mere possibility that some other factor caused the plaintiff's loss but rather that all or an identified portion of plaintiff's loss <u>was</u> caused by that other factor.  <u>See, e.g.</u>, <u>In re Omnicom Grp., Inc. Sec. Litig.</u>, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008), <u>aff'd</u>, 597 F.3d 501 (2d Cir. 2010) (Section 10) (where expert report failed to adequately "disaggrega[te] . . . confounding factors . . . there [was] simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs' loss"); <u>Adair v. Kaye Kotts Associates, Inc.</u>, No. 97cv3375, 1998 WL 142353, at *6 (S.D.N.Y.

Mar. 27, 1998) (Sotomayor, J.) (Section 11) (where "no expert analysis of the price issue [was] provided," court could draw no conclusion on loss causation).

**CONCLUSION**

FHFA's January 8 motion to exclude evidence regarding Fannie Mae that postdates November 30, 2005 and regarding Freddie Mac that postdates April 30, 2007 is denied.  Similarly, FHFA's motion to exclude all lay opinion evidence on the issue of loss causation is denied.  For such lay opinion evidence to be admissible, however, the defendants will have to show that the witness rendered an opinion on the cause of loss in a PLS portfolio pursuant to an investigation undertaken in the normal course of her duties for her employer.

SO ORDERED:

Dated:    New York, New York
          February 18, 2015

                              _____
                              DENISE COTE
                              United States District Judge

11