UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY,         :        11cv6201 (DLC)
                                        :          MEMORANDUM
                Plaintiff,              :        OPINION & ORDER
                                        :
        -v-                             :
                                        :
                                        :
NOMURA HOLDING AMERICA, INC., et al.,   :
                                        :
                Defendants.             :
                                        :
----------------------------------------X

APPEARANCES:

For plaintiff:

Philippe Z. Selendy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants:

David B. Tulchin
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Thomas C. Rice
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

        On January 30, 2015, Federal Housing Finance Agency

("FHFA"), acting as conservator for Fannie Mae and Freddie Mac

(together, the "Government Sponsored Enterprises" or "GSEs"),

moved in limine to prohibit defendants from offering evidence

regarding the FHFA conservatorship of the GSEs and the GSEs'
profitability, among other things.  FHFA's motion is brought
pursuant to Fed. R. Evid. 402 and 403.  This Opinion provides
guidance to the parties with respect to the issues raised by
this motion.

FHFA explains that FHFA director James Lockhart placed the
GSEs into conservatorships in September 2008, roughly a year
after the last Certificate at issue in this action was
purchased.  FHFA seeks to preclude defendants from calling
Lockhart to testify regarding the conservatorship of the GSEs.
Defendants explain that evidence from Lockhart and the decision
to place the GSEs into conservatorship is relevant to both loss
causation and materiality.

According to defendants, the documents will show that the
GSEs were placed into conservatorship in part because known
risks to the PLS portfolio materialized.  They cite general
statements in these documents that concern relaxed lending
standards for subprime and Alt-A loans and deteriorating housing
price trends.  They also point to several statements addressed
more directly to the PLS subprime portfolio and the latent risk
in that portfolio.  A September 6, 2008 FHFA memorandum asserted
that the GSEs purchased the PLS "during a time that credit
quality in the sector was manifest and was deteriorating."
According to defendants, this is inconsistent with FHFA's

"current attempt to blame defendants' alleged misrepresentations for 100% of the GSEs' losses on the seven at-issue Certificates."  As for materiality, defendants contend this evidence shows that a reasonable investor "would have focused on those same risk factors."

This evidence has relevance, if any, only to the issue of loss causation.  It is not sufficiently addressed to what a reasonable PLS trader would have viewed as important given the total mix of information to be received as relevant to the issue of materiality.  To the extent that there are statements analyzing any loss in the PLS portfolio and attributing that loss to any particular cause, that evidence will be received. Documents addressed more generally to the reasons the GSEs were placed into conservatorship are irrelevant, or of such minimal relevance that they should be excluded under Fed. R. Evid. 403. For defendants to prevail on their affirmative defense of loss causation, they must show that "the depreciation in value of the subject security" results from something other than the misrepresentations at issue here.  15 U.S.C. § 77l(b).  The reasons the GSEs were placed into conservatorships and the analysis of their entire financial structure is too remote from the issues to be resolved at trial.

FHFA contends that evidence from 2008 regarding losses in the PLS portfolio must be excluded because the GSEs did not have

access to the loan files then and could not have understood the
extent of the misrepresentations that infected the Offering
Documents.  This will affect the weight to be given such
evidence, but it does not prevent its admission.

FHFA next moves to preclude defendants from offering at
trial publications authored by FHFA expert Leonard Blum
regarding the adequacy of capitalization and government
intervention at the GSEs, or questioning Blum on those topics.
Blum will testify regarding RMBS underwriting and rating
processes.  Defendants explain that they may use Blum's prior
writings to cross-examine him.  Decision on this issue must
await defendants' cross-examination of Blum.

FHFA also moves to exclude SEC filings by the GSEs that
indicate that they recently reported profits.  Defendants do not
oppose that portion of this motion, but argue that evidence from
those filings is relevant to the extent that the GSEs attribute
their profitability in part to more favorable house price trends
and improving economic conditions.  According to defendants,
this indicates that the value of the Certificates depends on
factors that have nothing to do with the misrepresentations in
the Offering Documents.  To the extent that SEC-filed documents
contain analysis of the cause of loss, or profit and recovery,
specifically in the PLS portfolio of a GSE, those statements
will be received.  To the extent that the documents speak more

generally about the impact of economic conditions on the GSEs or parts of their businesses other than their PLS holdings, they will not.

Finally, FHFA seeks to preclude evidence that the GSEs have ongoing relationships through their Single Family businesses with any defendant or other party who played a role in the securitization of the seven Certificates at issue here. Defendants contend that the existence of continuing relationships with due diligence providers such as Clayton and AMC undermines FHFA's contention in this litigation that they were "dishonest or unreliable."

This evidence has no probative value to the live issues in this case.  It sheds no light on whether the representations in the Offering Documents were true or false at the time the Offering Documents were issued or the loans originated.  It has no relevance to issues of materiality as of the time the Certificates were sold.  It does not affect the calculation of damages, and it has no relevance to the affirmative defense of loss causation, where defendants will attempt to show that the loss in value to the seven Certificates was caused by something other than the misrepresentations.  While defendants may have prepared to present this evidence at a time when they hoped to present a due diligence defense, that defense will not be tried, and to the extent that evidence would have been relevant then,

and the Court is making no finding that it would have been, it no longer is.  Defendants' argument here (and in other portions of their papers) suggests that FHFA has some burden to show defendants' scienter.  It does not.  Accordingly, any probative value that might exist for this evidence, and the Court can find none, is substantially outweighed by the waste of time that would accompany exploring the details of the business relationships of the GSEs.  See Fed. R. Evid. 403.  Moreover, some of this evidence is excluded by the December 18, 2014 Opinion granting FHFA's motion in limine "to prohibit defendants from presenting evidence concerning Fannie Mae's and Freddie Mac's Single Family businesses' whole-loan due diligence."  FHFA v. Nomura Holding Am., Inc., No. 11cv6201 (DLC), 2014 WL 7234593, at *1 (S.D.N.Y. Dec. 18, 2014).

## CONCLUSION

FHFA's January 30 motion in limine is governed by the standards articulated herein.

SO ORDERED:

Dated:   New York, New York
         February 20, 2015

_____
DENISE COTE
United States District Judge