UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>      Plaintiff,<br><br>      -against-<br><br>NOMURA HOLDING AMERICA INC., et al.,<br><br>      Defendants. | No. 11-cv-6201 (DLC)<br><br>ECF Case |

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
THE TESTIMONY OF DEFENDANTS' EXPERT JOHN J. RICHARD

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500
Facsimile: 202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000
Facsimile: 212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

January 23, 2015

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

BACKGROUND .................................................................................................3

    A.    Mr. Richard's Qualifications ...............................................................3
    B.    Mr. Richard's Opinions .......................................................................4

ARGUMENT ......................................................................................................7

I.    MR. RICHARD IS QUALIFIED TO TESTIFY ABOUT THE RMBS MARKET
AND THE BEHAVIOR OF RMBS INVESTORS, INCLUDING FREDDIE
MAC AND FANNIE MAE ...............................................................................9

II.    MR. RICHARD'S METHODS FOR DEVELOPING OPINIONS ABOUT THE
PRACTICES OF REASONABLE INVESTORS IN PRIVATE-LABEL RMBS
ARE RELIABLE ...........................................................................................10

III.    MR. RICHARD'S OPINIONS ABOUT THE RMBS MARKET AND RMBS
INVESTORS ARE RELEVANT AND WILL ASSIST THE FACTFINDER ...............13

IV.    EVEN UNDER AN OBJECTIVE STANDARD, MR. RICHARD'S OPINIONS
ABOUT FREDDIE MAC AND FANNIE MAE ARE RELEVANT AND WILL
ASSIST THE FACTFINDER .............................................................................14

V.    MR. RICHARD'S CRITICISMS OF PLAINTIFF'S EXPERTS ARE
RELEVANT AND WELL FOUNDED ................................................................16

CONCLUSION .................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*702 Lex Acquisition LLC* v. *Guess? Retail, Inc.*,
2014 WL 4184691 (S.D.N.Y. Aug. 22, 2014) .......................................................8

*Bank of N.Y. Mellon Trust Co., Nat'l Ass'n* v. *Solstice ABS CBO II, Ltd.*,
910 F. Supp. 2d 629 (S.D.N.Y. 2012) ...............................................................10

*Canino* v. *HRP, Inc.*,
105 F. Supp. 2d 21 (N.D.N.Y. 2000) .................................................................8

*Daubert* v. *Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......................................................................................7

*ECA, Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ...........................................................................13

*FHFA* v. *Nomura Holding Am., Inc.*,
2014 WL 7229361 (S.D.N.Y. Dec. 18, 2014) ...........................................7, 14, 16

*FHFA* v. *UBS Ams. Inc.*,
2013 WL 3284118 (S.D.N.Y. June 28, 2013) ....................................................15

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009) ..............................................................7, 8

*In re Gen. Elec. Co. Secs. Litig.*,
856 F. Supp. 2d 645 (S.D.N.Y. 2012) ...........................................................13, 14

*Halperin* v. *eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002) ...........................................................................13

*Int'l Bhd. of Teamsters* v. *United States*,
431 U.S. 324 (1977) ......................................................................................12

*Joseph S.* v. *Hogan*,
2011 WL 2848330 (E.D.N.Y. July 15, 2011) ....................................................12

*Kumho Tire Co., Ltd.* v. *Carmichael*,
526 U.S. 137 (1999) .......................................................................................8

*Latino Officers Ass'n* v. *City of New York*,
2003 WL 21638165 (S.D.N.Y. July 14, 2003) ..................................................12

## TABLE OF AUTHORITIES
**(continued)**

Page(s)

### Cases

*McCollock* v. *H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) ....................................................9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  2008 WL 1971538 (S.D.N.Y. May 7, 2008) .................................8, 10

*Olin Corp.* v. *Certain Underwriters at Lloyd's London*,
  468 F.3d 120 (2d Cir. 2006) ...................................................17

*U.S. Info. Sys., Inc.* v. *Int'l Bhd. of Elec. Workers Local Union No. 3*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) .........................................10

*United States* v. *Am. Express Co.*,
  2014 WL 2879811 (E.D.N.Y. June 24, 2014) .............................8, 9, 12

*Valentin* v. *New York City*,
  1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) .............................8, 11

*Victoria's Secret Stores Brand Mgmt., Inc.* v. *Sexy Hair Concepts, LLC*,
  2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ....................................8

### Rule

Fed. R. Evid. 702 ...........................................................7, 11

### Other Authorities

Christopher Mayer, et al., *The Rise in Mortgage Defaults*, 23 J. Econ.
  Perspectives (Winter 2009) ..................................................11

The Handbook of Mortgage-Backed Securities (Frank J. Fabozzi ed., 6th ed.
  2006) ....................................................................4, 11

Karl. E. Case & Robert J. Shiller, *Mortgage Default Risk and Real Estate Prices:*
  *The Use of Index-Based Futures and Options in Real Estate*, 7 J. Housing
  Research (1996) ..........................................................5, 11

*The State of the Nation's Housing:  2007*, Joint Center for Housing Studies of
  Harvard University (2007) ...................................................11

## TABLE OF ABBREVIATIONS

| Action | *FHFA* v. *Nomura Holding America Inc.*, et al., No. 11 Civ. 6201 (DLC) |
|---|---|
| Blum Report | July 9, 2014 Expert Report of Leonard A. Blum in this Action |
| Certificates | The seven securitizations at issue in this Action, NAA 2005-AR6, NHELI 2006-FM1, NHELI 2006-FM2, NHELI 2006-HE3, NHELI 2007-1, NHELI 2007-2, and NHELI 2007-3 |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca |
| Pl. Br. | Plaintiff's Memorandum of Law in Support of Motion to Exclude the Testimony of Defendants' Expert John J. Richard, dated January 8, 2015 in this Action |
| Richard July Dep. | Transcript of the deposition of John J. Richard, taken July 28, 2014 in Case No. 11 Civ. 6198 (DLC) and Case No. 11 Civ. 7010 (DLC) |
| Richard Nov. Dep. | Transcript of the deposition of John J. Richard, taken November 20, 2014 in this Action |
| Report | November 10, 2014 Expert Report of John J. Richard in this Action |
| Rubinstein Report | July 9, 2014 Expert Report of Peter D. Rubinstein in this Action |

Defendants submit this memorandum in opposition to plaintiff's January 8, 2015 Motion to Exclude the Testimony of Defendants' Expert John J. Richard.

## PRELIMINARY STATEMENT

John Richard is a professional investor with more than a decade of experience in the field of residential mortgage-backed securities ("RMBS"). Defendants retained Richard to opine on the pre-acquisition practices of investors in private-label RMBS, the type of securities at issue here. RMBS are complicated securities that were purchased in large denominations by sophisticated investors. Richard's testimony is relevant because it identifies the types of information that reasonable investors purchasing private-label RMBS during the period 2005 to 2007 considered important. Faced with such straightforward expert testimony, plaintiff musters an array of meritless arguments. These arguments—many of which center on the prospect of jury confusion—all fall short of the mark, especially in light of the relaxed *Daubert* standard that applies in bench trials.

*First*, plaintiff asserts that Richard is not qualified to testify to the pre-acquisition practices of investors in private-label RMBS. This argument ignores Richard's professional and educational qualifications. Richard has experience at various firms that were active participants in the market for mortgage-backed securities, and he has taken part in industry-wide conferences for more than a decade. Furthermore, the degree of Richard's experience with Freddie Mac and Fannie Mae in relation to RMBS is irrelevant. He does not purport to testify about their practices standing alone, but rather identifies their practices as one piece of evidence of what standard industry practices were during the relevant period.

*Second*, plaintiff argues that Richard's methodology is unreliable because he purportedly generalizes from his experiences at a single investment firm in opining on general

industry practices.  This contention ignores the fact that experience can serve as a foundation for

expert testimony and, more importantly, overlooks the broad support Richard marshals for his

opinions.  Richard's opinions on pre-acquisition practices of RMBS investors were formed based

on years of personal participation in the market for such securities, including extensive

interaction with other market participants—as well as investigation conducted for this case.

   *Third*, Richard's opinions regarding the pre-acquisition practices of RMBS

investors during the period 2005 to 2007 are directly relevant to the issue of materiality.  Pre-

acquisition practices of RMBS investors show the information they considered important.

General industry practices therefore shed light on the type of information a reasonable investor

would find material.  The fact that (as Richard explains) RMBS investors considered a wide

range of information in making purchasing decisions supports defendants' argument that the

alleged misrepresentations on the limited number of subjects at issue here were not material.

   *Fourth*, plaintiff contends that Richard's testimony regarding Freddie Mac's and

Fannie Mae's pre-acquisition practices is irrelevant to the objective materiality standard.  This

contention similarly misconceives the nature of his testimony, which is relevant not because

materiality is plaintiff-specific, but because Freddie Mac and Fannie Mae were two of the largest

purchasers of RMBS in the United States.  As a result, their pre-acquisition practices shed light

on the types of information a reasonable investor considered important during the relevant time

period.

   *Finally*, plaintiff argues that Richard's criticism of its experts Leonard Blum,

Peter Rubinstein, and G. William Schwert misreads the materiality standard and constitutes

improper advocacy.  These arguments are meritless for the reasons discussed above, and because

courts routinely admit expert testimony that relies on specialized knowledge to expose the

deficiencies in an opposing party's arguments.  Plaintiff has offered no reason why Richard's expert testimony should be treated any differently.

## BACKGROUND

### A.    Mr. Richard's Qualifications

Richard is highly qualified, on the basis of his experience and education, to testify regarding the pre-acquisition practices of investors in private-label RMBS during the 2005 to 2007 time period.  He has worked as a financial professional for almost 20 years, specializing in fixed income portfolio management, structured finance instruments, and real estate finance and investment.  (Ex. 1 (Report) at 2.)  He started his career "originating residential loans and preparing loans for submission to underwriting." (*Id*.)  He was subsequently hired as a portfolio manager, a position he held at three different firms from 1996 until 2011.  (*Id*. at 2-3.)  During his time at the second of these firms—State Street Global Advisors—he traded extensively in private-label RMBS.  (*Id*. at 4-5.)  In this role, he interacted with dozens of other investment professionals on a daily basis, thus acquiring broad insight into market practices across the industry.  (*Id*. at 4.)  During the period 2009 to 2011, Richard was the managing partner and fund manager of a commercial mortgage-backed securities investment fund he helped form, and he also co-founded a subscription database service specializing in commercial real estate loans.  (*Id*. at 3-4.)  Over the course of his career, Richard regularly attended broker-dealer events and industry conferences, which provided him with opportunities to interact with and learn from other professionals involved in the RMBS market, including representatives of Freddie Mac and Fannie Mae.  (*Id*. at 6.)

Richard's practical experience is buttressed by formal education.  He earned a Bachelor of Arts in Economics and a Masters of Business Administration; his coursework for the latter included instruction on the real estate securities markets.  He has also been a Chartered

Financial Analyst since 1999.  (*Id*. at 2.)  Obtaining that certification requires candidates to pass a rigorous series of examinations focused on fixed income and equity security analysis, portfolio management, financial accounting, economics, and statistics.  (*Id*.)

### B.    Mr. Richard's Opinions

Richard relies on his extensive investment experience with RMBS to opine on the pre-acquisition practices of investors in private-label RMBS from 2005 to 2007.  Those practices are tailored to obtain the types of information that investors in RMBS find significant in determining whether to purchase a particular security.  As a result, those practices are directly relevant to the issue of materiality.

Richard begins by opining that as the RMBS market grew in the decade preceding 2005 (*id*. at 10), investors participating in that market became increasingly sophisticated.  This trend, which Richard witnessed during his time at State Street, was driven in part by the securitization of more complicated loan types, such as hybrid adjustable-rate mortgages and pay option adjustable-rate mortgages.  (*Id*. at 12 & n.14 (citing The Handbook of Mortgage-Backed Securities 93 (Frank J. Fabozzi ed., 6th ed. 2006)).)  Investors in private-label RMBS during this time included "banks, insurance companies, mutual funds, pension funds, and Freddie Mac and Fannie Mae"—*i.e.*, those with the resources necessary to evaluate the complex securities being offered.  (*Id*. at 12-14.)

Richard opines that these sophisticated investors in RMBS considered a broad spectrum of information prior to making a purchase, including:  the macroeconomic environment; credit enhancement and return; other characteristics of a deal; and loan characteristics.  (*Id*. at 20, 22, 23, 24.)

Richard relies on academic articles and contemporaneous RMBS offering documents to show that economic trends, such as home prices, unemployment rates and interest

rates, were important to RMBS investors because those trends affected mortgage default rates. (*Id*. at 20-22 (citing, *e.g.*, Karl. E. Case & Robert J. Shiller, *Mortgage Default Risk and Real Estate Prices: The Use of Index-Based Futures and Options in Real Estate*, 7 J. Housing Research 243-58 (1996)).)  Based on his experience, Richard also opines that RMBS investors considered  a security's credit enhancement, which serves to protect purchasers of the top tranche—like the securities Freddie Mac and Fannie Mae bought—against the risk of loss through mechanisms like subordination, overcollateralization, excess spread, and monoline guarantees.  (*Id*. at 23.)  Investors in RMBS also used outside knowledge to evaluate the data contained in offering documents.  For example, "[i]t was common practice for investors to consider the mortgage originators whose loans contributed to a deal or to conduct due diligence on these mortgage originators," which typically involved "an assessment of the originators' underwriting guidelines, performance history, financial condition, management, and control and compliance procedures."  (*Id*. at 18.)  Additionally, investors often "directly discussed offerings with broker-dealers in conference calls or during 'road show' presentations."  (*Id*.)

With respect to loan characteristics, Richard explains that investors in RMBS considered summary information about the loans backing a security in their pre-acquisition analyses, including data on loan-to-value ratios; owner occupancy status; compliance with the originator's underwriting guidelines; FICO scores; geographic dispersion; and type of loan product.  (*Id*. at 17.)  RMBS investors were aware of the limitations of certain disclosures included in offering documents.  For example, RMBS buyers knew that loan-to-value ratios were based on appraisals obtained at the time a loan was made that reflected the subjective views of the appraisers about the value of the mortgaged property.  (*Id*. at 25; *see also* Ex. 2 (Richard Nov. Dep.) at 49:22-50:21 (testifying to his personal experience with the subjectivity of

appraisals as a factor in purchasing decisions during his time at State Street).)  RMBS investors also understood that owner occupancy statistics were based on representations of intent made by borrowers at the time they applied for a mortgage.  (Ex. 1 (Report) at 26.)  Using summary data about loans underlying a securitization in the offering documents, "investors could then utilize third-party analytics tools such as Intex or proprietary analytics to undertake a variety of analyses, such as modeling the expected performance of the underlying collateral and identifying the effects of changes in certain variables on RMBS performance."  (*Id*. at 23-24.)  Relevantly, "investors generally used data on the collateral characteristics of the loans backing a securitization as a whole, as well as those of specific loan groups."  (*Id*. at 24; Ex. 2 (Richard Nov. Dep.) at 182:21-183:11 (explaining that this was necessary "[b]ecause there could be credit-related events or prepayment-related events that would lead to the diversion of the cash flows from one supporting loan group to another supporting loan group").)  RMBS investors did not rely solely on the information contained in offering documents.

In identifying the pre-acquisition practices of RMBS investors, Richard also considers the purchase analyses performed by Freddie Mac and Fannie Mae.  (Ex. 1 (Report) at 28-67.)  Based on his industry expertise and an extensive record review, Richard determines that many of Freddie Mac's and Fannie Mae's pre-acquisition practices were similar to those of RMBS investors generally, which supports his opinions concerning general industry practices.  (*Id*. at 28, Appendix B at 1-6 (cataloguing record documents reviewed).)  Given their significance in the marketplace, Richard appropriately considers record evidence of Freddie Mac's and Fannie Mae's specific practices as evidence of general industry practices.[1]  (*See* Ex. 2

---

[1]     On December 18, 2014, this Court held that materiality should be determined from the perspective of a "reasonable PLS trader," without regard to Freddie Mac's and Fannie Mae's

*(footnote continued)*

(Richard Nov. Dep.) at 83:10-19 ("So in my report I define what were the typical investment processes of sophisticated RMBS investors, and I compared the processes of Freddie Mac and Fannie Mae to the typical RMBS process, and, you know, as one of the larger investors in the marketplace, they were part of that definition of what is a typical process in the investment management process.").)

In light of the broad spectrum of information that sophisticated investors in RMBS considered before making a purchase, Richard ultimately opines that "the decision to invest in RMBS generally cannot be simplified to an analysis of a small subset of loan characteristics, nor can it be simplified to an analysis of the loan characteristics of only those loans in a single loan group of a securitization."  (Ex. 1 (Report) at 24.)

## ARGUMENT

For a witness to offer expert opinions at trial, "the witness must be qualified as an expert, the testimony must be reliable, and the testimony must assist the trier of fact."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 172 (S.D.N.Y. 2009) (citing Fed. R. Evid. 702).  The Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), enumerates four criteria for assessing the reliability of proffered expert testimony.[2]  No single element of the test is dispositive or required, as "the factors identified in *Daubert* may

---

(*footnote continued*)
specific regulatory mandates.  *FHFA* v. *Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014) (internal quotation marks omitted).  Although defendants respectfully disagree with the Court's ruling on the materiality standard, Richard will only offer testimony relevant to that standard.

[2]  The four factors are (1) how extensively a proffered theory has been tested; (2) the extent of relevant peer review; (3) the existence of established error rates; and (4) the extent of general acceptance of the theory or analytical method in the relevant field.  *Daubert*, 509 U.S. at 593-94.

or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co., Ltd.* v. *Carmichael,* 526 U.S. 137, 150 (1999) (internal quotation marks and alteration omitted).

An expert's qualifications should be "viewed liberally," and may be supported by "a broad range of knowledge, skills, and training."  *In re Fosamax*, 645 F. Supp. 2d at 172 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2008 WL 1971538, at *5 (S.D.N.Y. May 7, 2008) ("Courts within the Second Circuit have liberally construed expert qualification requirements.") (internal quotation marks omitted).  An expert must have "education and experience in a relevant field," *Canino* v. *HRP, Inc.*, 105 F. Supp. 2d 21, 27 (N.D.N.Y. 2000), but "need not have complete knowledge about the field in question" in order for his testimony to be admissible.  *Valentin* v. *New York City*, 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997).

This standard is particularly relaxed in the context of a bench trial, where the danger of jury confusion is absent.  "Under these circumstances, unless the disputed evidence is wholly irrelevant or so speculative as to have no probative value, it is appropriate for the Court to take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology."  *702 Lex Acquisition LLC* v. *Guess? Retail, Inc.*, 2014 WL 4184691, at *10 (S.D.N.Y. Aug. 22, 2014) (internal quotation marks omitted); *see also United States* v. *Am. Express Co.*, 2014 WL 2879811, at *2 (E.D.N.Y. June 24, 2014) ("[T]he *Daubert* dynamic is slightly altered in a bench trial as there is little risk that the factfinder will be bamboozled by technical evidence of questionable merit.") (internal quotation marks omitted); *Victoria's Secret Stores Brand Mgmt., Inc.* v. *Sexy Hair Concepts, LLC*, 2009 WL 959775, at *6 n.3 (S.D.N.Y.

Apr. 8, 2009) ("[W]here a bench trial is in prospect, resolving *Daubert* questions at a pretrial

stage is generally less efficient than simply hearing the evidence . . . .").

## I.     MR. RICHARD IS QUALIFIED TO TESTIFY ABOUT THE RMBS MARKET AND THE BEHAVIOR OF RMBS INVESTORS, INCLUDING FREDDIE MAC AND FANNIE MAE.

Plaintiff contends that Richard is not qualified to testify as to pre-acquisition

practices of RMBS investors generally or to Freddie Mac's and Fannie Mae's practices

specifically.  (Pl. Br. at 6, 11.)  Both arguments are mistaken.  First, as discussed above, Richard

has extensive experience in the private-label RMBS market.  He has worked at a mortgage

originator, as a portfolio manager at three firms (including as a portfolio manager of funds with

an allocation to RMBS), and as an entrepreneur in the commercial mortgage finance markets.

(Ex. 1 (Report) at 2-4.)  Throughout his career, Richard has been closely involved with the

industry through participation in trade conferences.  (*Id.* at 6.)  These experiences provided him

with a breadth and depth of knowledge regarding the pre-acquisition practices of RMBS

investors.  Furthermore, Richard's firsthand knowledge has been supplemented through formal

education—including an MBA program and the coursework necessary for certification as a

Chartered Financial Analyst.  (*Id.* at 2.)  In any event, criticisms of this nature go to the weight,

not the admissibility, of Richard's testimony.  *Am. Express Co.*, 2014 WL 2879811, at *2

("Disputes as to the strength of an expert's credentials . . . go to 'the weight, and not the

admissibility' of an expert's testimony.") (quoting *McCollock* v. *H.B. Fuller Co.*, 61 F.3d 1038,

1044 (2d Cir. 1995)).

Plaintiff further criticizes Richard on the ground that he supposedly is unqualified

to opine on Freddie Mac's and Fannie Mae's pre-acquisition practices.  (Pl. Br. at 6.)  Plaintiff

misconstrues Richard's opinions.  Richard will not offer an opinion as to the nature of Freddie

Mac's and Fannie Mae's pre-acquisition practices standing alone.  Instead, he will testify that the record evidence about their practices, which conform with pre-acquisition practices in the RMBS market more broadly, are strong evidence of general industry practices.  This is simply an application of Richard's expertise (general practices in the RMBS market) to the facts of this case (the specific practices of Freddie Mac and Fannie Mae)—a classic expert function.  *See, e.g.*, *Bank of N.Y. Mellon Trust Co., Nat'l Ass'n* v. *Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 640 (S.D.N.Y. 2012) ("[A]n expert's opinion must be based upon his own application of principles within his expertise to the facts of the case.") (internal quotation marks omitted); *In re Methyl*, 2008 WL 1971538, at *6 ("Reynolds' considerations of cost, supply and demand are part of his overall analysis of ethanol production capacity rather than separate conclusions about facts of the case outside his area of expertise."); *U.S. Info. Sys., Inc.* v. *Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp. 2d 213, 236 (S.D.N.Y. 2004) ("Here, although much of Dr. Dunbar's report does rely on deposition testimony of various parties, he has not merely assumed the role of counsel.  Rather, he has applied his expertise to the facts of the case, and drawn conclusions from those facts.").

## II.    MR. RICHARD'S METHODS FOR DEVELOPING OPINIONS ABOUT THE PRACTICES OF REASONABLE INVESTORS IN PRIVATE-LABEL RMBS ARE RELIABLE.

In addition to attacks on his qualifications, plaintiff also criticizes the reliability of Richard's methodology, asserting that Richard's opinions are predicated exclusively on his "experience at State Street between 2005 and 2007," which plaintiff contends makes his opinions "facially unreliable."  (Pl. Br. at 15.)  This argument fails for several reasons.  First, plaintiff misrepresents the basis for Richard's opinions and the methodology he followed to develop them.  Richard's opinions about the pre-acquisition practices of investors in private-label RMBS

are based on far more than his experience at State Street (which exposed him to a broad range of investment professionals and practices). Instead, those opinions are also based on his work at a mortgage loan originator, his experience as a portfolio manager at other firms, his role in forming an investment fund, his co-founding of an information services firm, his educational accomplishments, and his attendance at various trade and industry conferences. *See* pp. 3-4, *supra*. In addition, Richard conducted research specifically for the purposes of preparing his report in this action, relying on, for example, The Handbook of Mortgage-Backed Securities (Frank J. Fabozzi ed., 6th ed. 2006); *The State of the Nation's Housing: 2007*, Joint Center for Housing Studies of Harvard University (2007); Karl. E. Case & Robert J. Shiller, *Mortgage Default Risk and Real Estate Prices: The Use of Index-Based Futures and Options in Real Estate*, 7 J. Housing Research (1996); Christopher Mayer, et al., *The Rise in Mortgage Defaults*, 23 J. Econ. Perspectives (Winter 2009). (Ex. 1 (Report) Appendix B (listing sources).)

Second, to the extent Richard's opinions rely on his experience, that is a perfectly proper and well-accepted basis for expert testimony. *See, e.g.*, Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ."); *Valentin*, 1997 WL 33323099, at *15 ("[O]ne may become qualified as an expert based on practical experience; professional education is not a prerequisite.").

Indeed, two of plaintiff's own experts, Leonard Blum and Peter Rubinstein, similarly rely on their professional experiences in opining on the structure of the RMBS market from 2005 to 2007. For example, Blum states that the basis for his opinion is "my education, training, and experience in mortgage-backed securities and related activities" and "my review of information that has been made available to me as of the date of this report." (Ex. 3 (Blum

Report) at 2.)  This description is virtually indistinguishable from the bases for Richard's

testimony.  Rubinstein also relies almost exclusively on his professional experiences in forming

his opinions.  (Ex. 4 (Rubinstein Report) at 1-5, Exhibit 2 at 2 (listing only a single non-litigation

source used to prepare his report).)  His experience, moreover, apparently fails to satisfy

plaintiff's own standard for reliability, since during the period 2005 to 2007 he focused primarily

on the commercial—not residential—mortgage-backed securities market.  (*Id*. at 4-5.)

   In any event, plaintiff's reliability argument goes to the weight, not the

admissibility, of Richard's testimony.  Even the cases on which plaintiff relies make this point.

For example, plaintiff quotes *International Brotherhood of Teamsters* v. *United States*, 431 U.S.

324, 339 n.20 (1977), for the proposition that "small sample size may . . . *detract from the value*

of [statistical] evidence." (Pl. Br. at 15 (emphasis added).)  Plaintiff's (meritless) claim that

Richard's testimony is predicated on the assumption that his experience at State Street matched

the experience of all other traders in the industry (*id.*) also goes to the weight to be accorded his

testimony, not to admissibility.  *See Am. Express Co.*, 2014 WL 2879811, at *2 (citing *Latino

Officers Ass'n* v. *City of New York*, 2003 WL 21638165, at *2 (S.D.N.Y. July 14, 2003), for the

proposition that "argument relating to expert's reliance on incorrect assumptions goes to weight

of evidence, not admissibility").

   In short, none of plaintiff's arguments comes close to demonstrating that

Richard's testimony should be excluded altogether—particularly in a bench trial.  *See, e.g.*,

*Joseph S.* v. *Hogan*, 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011) ("Of course if the expert

testimony amounts to pure speculation, it would have no probative value and would not assist the

fact finder, be it the Court or the jury.  But short of that, expert testimony should be admitted" in

a bench trial) (citation omitted).[3]

## III.   MR. RICHARD'S OPINIONS ABOUT THE RMBS MARKET AND RMBS INVESTORS ARE RELEVANT AND WILL ASSIST THE FACTFINDER.

Plaintiff argues that Richard's testimony is "completely disconnected from the

legal standard that the jury must apply to answer the factual materiality question."  (Pl. Br. at

20.)  "[A] misstatement is material if 'there is a substantial likelihood that a reasonable

shareholder would consider it important in deciding how to act.'"  *In re Gen. Elec. Co. Secs.*

*Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) (quoting *ECA, Local 134 IBEW Joint Pension*

*Trust of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (citation omitted)).

"The touchstone of the inquiry is . . . whether defendants' representations or omissions,

considered together and in context, would affect the total mix of information and thereby mislead

a reasonable investor regarding the nature of the securities offered."  *Halperin* v. *eBanker*

*USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

---

[3]     Plaintiff also argues that Richard's methodology for identifying pre-acquisition practices of investors in private-label RMBS must have been faulty because Richard supposedly was unaware that such investors used "statistical models" to evaluate "supporting loan-group characteristics" during the relevant time period.  Pl. Br. at 17-18.  This assertion, based on snippets of deposition testimony taken out of context, is false.  Richard's report cites Freddie Mac's credit default model, DEFCAP.  Ex. 1 (Report) at 34.  At his deposition, Richard explicitly testified to his awareness that other investors, including his colleagues at State Street, used statistical models to evaluate supporting loan-group characteristics.  *See* Ex. 5 (Richard July Dep.) at 39:15-40:10 ("We were performing an analysis at State Street to try to determine how . . . particular securitizations would perform.  We would look at a range of pool level characteristics.  Sometimes that was regression analysis . . . ."); *see also id.* at 20:12-21:21 (describing State Street's use of statistical models to evaluate collateral characteristics of RMBS); Ex. 2 (Richard Nov. Dep.) at 70:5-6 ("We had a credit model that we used at State Street Global.").

The trier of fact must therefore determine whether any misstatements found to exist would have been "important" to a reasonable investor considering a purchase of private-label RMBS.  *In re Gen. Elec. Co. Secs. Litig.*, 856 F. Supp. 2d at 653.  In order to make that determination, the trier of fact will first have to understand how RMBS investors made their purchase decisions.  That complex issue—the pre-acquisition practices of investors in the market for private-label RMBS from 2005 to 2007—is exactly what Richard's testimony addresses.[4] (*See, e.g.*, Ex. 1 (Report) at 20 ("A sophisticated investor's analysis of a prospective RMBS investment included the consideration of a multitude of variables as well as the potential interactions between these variables.").)  Only with that foundation can the trier of fact determine whether the alleged misrepresentations in this case would have been important to the decision by a reasonable investor in private-label RMBS about whether to purchase the at-issue certificates.

## IV.     EVEN UNDER AN OBJECTIVE STANDARD, MR. RICHARD'S OPINIONS ABOUT FREDDIE MAC AND FANNIE MAE ARE RELEVANT AND WILL ASSIST THE FACTFINDER.

Plaintiff contends that Richard's testimony regarding the pre-acquisition practices of Freddie Mac and Fannie Mae is irrelevant and should be excluded.  (Pl. Br. at 7-9.)  Citing the Court's prior ruling on materiality, plaintiff argues that proof of materiality must be "objective" rather than "plaintiff-specific."  (Pl. Br. at 8 (citing *FHFA* v. *Nomura Holding Am., Inc.*, 2014

---

[4]     Richard's recognition of investor-specific criteria does not imply, as plaintiff suggests, that he "rejects the concept of the 'reasonable investor.'"  (Pl. Br. at 2, 20.)  To the contrary, the general industry practices he details describe precisely the generic "reasonable investor."

WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014)).)[5]  Once again, plaintiff misconceives the nature of Richard's testimony.

Evidence of Freddie Mac's and Fannie Mae's pre-acquisition practices is relevant to the issue of materiality for the simple reason that those entities were two of the largest purchasers of RMBS during the time period at issue.  (*See, e.g.*, Ex. 1 (Report) at 68 ("As reported by Inside Mortgage Finance, Freddie Mac and Fannie Mae together held 16.9 percent and 16.3 percent, at year-end 2006 and 2007, respectively, of the total value of non-agency MBS then outstanding.").)  The information Freddie Mac and Fannie Mae considered important—as reflected in their pre-acquisition practices—is thus highly probative of the information a reasonable RMBS investor would have considered important.

The Court endorsed this principle in a 2013 ruling, noting with approval defendants' argument that "the magnitude of [Freddie Mac's and Fannie Mae's] involvement in the market makes their individual views and practices relevant in establishing what an objective investor would view as material."  *FHFA* v. *UBS Ams. Inc.*, 2013 WL 3284118, at *23 (S.D.N.Y. June 28, 2013); *see also* Hr'g Tr., 70:18-71:5, Dec. 17, 2012 (11 Civ. 5201) (DLC) (stating that industry standards could "be informed to some extent by the practices of major player[s] in the industry, like either Fannie Mae or Freddie Mac").  Whether the alleged misrepresentations would have affected Freddie Mac's and Fannie Mae's decisions to purchase the at-issue certificates is thus a reasonable proxy for assessing whether the alleged misrepresentations would

---

[5]      Defendants respectfully disagree with the Court's ruling that materiality should be assessed from the perspective of a reasonable PLS trader, but will be guided by that ruling at trial.

have significantly altered the "total mix of information" from the perspective of a reasonable investor.[6]

Plaintiff makes the additional argument that Richard's testimony as to Freddie Mac's and Fannie Mae's pre-acquisition practices is likely to mislead and confuse the jury about whether reliance is a required element of plaintiff's claims.  In light of plaintiff's motion to withdraw its Section 11 claims in order to avoid a jury trial (Letter from Philippe Selendy, Doc. No. 1072 (Jan. 12, 2015)), and the Court's ruling that the case would be tried without a jury, this argument is moot.

## V.   MR. RICHARD'S CRITICISMS OF PLAINTIFF'S EXPERTS ARE RELEVANT AND WELL FOUNDED.

Finally, plaintiff makes two arguments against the admissibility of Richard's criticism of its experts Rubinstein, Blum, and Schwert.  (Pl. Br. at 21-22.)  First, plaintiff asserts that Richard's primary criticism—that these experts fail to opine on whether the alleged misrepresentations would have affected the investment decisions of Freddie Mac and Fannie Mae or a reasonable investor in general—relies on the wrong definition of materiality to the extent it focuses on Freddie Mac and Fannie Mae.  As plaintiff acknowledges (Pl. Br. at 21), the Court recently enunciated the standard for materiality that it would apply in this action— "[m]ateriality is an objective standard, determined with reference to a reasonable PLS trader." *FHFA*, 2014 WL 7229361, at *3 (internal quotation marks omitted).  Based on that ruling, at trial

---

[6]     Plaintiff criticizes Richard for relying on evidence of Freddie Mac's and Fannie Mae's pre-acquisition practices that post-dates their last purchases (respectively) of the certificates at issue in this case.  (Pl. Br. at 9-10.)  This argument is meritless, as shown in defendants' opposition to plaintiff's Motion *in Limine* No. 6, filed on January 20, 2015.  Freddie Mac's and Fannie Mae's practices during the period 2005 to 2007 are relevant to show general industry practices during the relevant time.

Richard will criticize plaintiff's experts only for failing to account for issues of materiality as defined by the Court with respect to "a reasonable PLS trader." (*See, e.g.*, Ex. 2 (Richard Nov. Dep.) at 137:21-25 ("What their analysis lacks is how the alleged misrepresentations would have been viewed by an investor as being relevant or significant in the investment decision-making process.").)

Second, plaintiff contends that Richard's testimony highlighting the deficiencies in the methodologies of plaintiff's experts is "pure advocacy, not proper opinion testimony." (Pl. Br. at 22.)  This assertion is baseless.  A classic function of expert testimony is to illuminate, on the basis of specialized expertise, the errors in the opposing party's case.  *See, e.g.*, *Olin Corp.* v. *Certain Underwriters at Lloyd's London*, 468 F.3d 120, 134 (2d Cir. 2006) ("The district court was aware that the weaknesses in Rovers's opinion would be pointed out to the jury by [the opposing party's] cross-examination and experts, and that such a technique is an appropriate way of attacking weak expert testimony . . . .").  Plaintiff has not suggested that Richard is doing anything other than this exact function, and its argument that Richard cannot properly expose errors in plaintiff's case is meritless.

## CONCLUSION

The Court should deny plaintiff's motion to exclude the expert testimony of John Richard.

Dated:  New York, New York
      January 23, 2015

Respectfully submitted,

/s/ Thomas C. Rice                       /s/ David B. Tulchin

Thomas C. Rice (trice@stblaw.com)      David B. Tulchin (tulchind@sullcrom.com)
David J. Woll (dwoll@stblaw.com)       Steven L. Holley (holleys@sullcrom.com)
Andrew T. Frankel (afrankel@stblaw.com)  Bruce E. Clark (clarkb@sullcrom.com)
Alan Turner (aturner@stblaw.com)       Bradley A. Harsch (harschb@sullcrom.com)
Craig S. Waldman (cwaldman@stblaw.com)  Katherine J. Stoller (stollerk@sullcrom.com)
SIMPSON THACHER & BARTLETT LLP   SULLIVAN & CROMWELL LLP
425 Lexington Avenue                  125 Broad Street
New York, NY  10017               New York, NY  10004
Telephone:  212-455-2000          Telephone:  212-558-4000
Facsimile:  212-455-2502           Facsimile:  212-558-3588

*Attorneys for Defendant RBS Securities Inc.*   Amanda F. Davidoff
                             (davidoffa@sullcrom.com)
                             Elizabeth A. Cassady
                             (cassadye@sullcrom.com)
                             SULLIVAN & CROMWELL LLP
                             1700 New York Avenue, NW, Suite 700
                             Washington, DC  20006
                             Telephone:  202-956-7500
                             Facsimile:  202-956-6993

                             *Attorneys for Defendants Nomura Holding*
                             *America Inc., Nomura Asset Acceptance*
                             *Corporation, Nomura Home Equity Loan, Inc.,*
                             *Nomura Credit & Capital, Inc., Nomura*
                             *Securities International, Inc., David Findlay,*
                             *John McCarthy, John P. Graham, Nathan*
                             *Gorin, and N. Dante LaRocca*