# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,

      Plaintiff,

      -against-

NOMURA HOLDING AMERICA INC., *et al.*,

      Defendants.

No. 11-cv-6201 (DLC)

ECF Case

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL HEDDEN

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500
Facsimile: 202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000
Facsimile: 212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

January 23, 2015

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................2

    A.    Kilpatrick's Report ..................................................................................2

    B.    Hedden's Rebuttal ..................................................................................4

ARGUMENT .........................................................................................................6

I.    HEDDEN'S USE OF IMS DATA TO FORMULATE HIS OPINIONS WAS PROPER ...........................................................................................................7

    A.    Hedden's Use of IMS Was Permissible .................................................7

    B.    Hedden's Use of IMS Is Indistinguishable from Kilpatrick's Use of Forsythe and Valocity ........................................................................11

CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*720 Lex Acquisition LLC* v. *Guess? Retail, Inc.*,
2014 WL 4184691 (S.D.N.Y. Aug. 22, 2014) ...................................................6

*Astra Aktiebolag* v. *Andrx Pharmaceuticals, Inc.*,
222 F. Supp. 2d 423 (S.D.N.Y. 2002) ....................................................1, 7, 8, 12

*Bank of New York Mellon Trust Co., Nat'l Ass'n* v. *Solstice ABS CDO II, Ltd.*,
910 F. Supp. 2d 629 (S.D.N.Y. 2012) .................................................11

*Bd. Of Trs. Of AFTRA Ret. Fund* v. *JPMorgan Chase Bank, N.A.*,
2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ....................................10

*Cedar Petrochemicals, Inc.* v. *Dongbu Hannong Chem. Co.*,
769 F. Supp. 2d 269 (S.D.N.Y. 2011) .................................................11

*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .........................................................................1, 6

*Dura Auto Sys. of Indiana* v. *CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ...........................................................7, 9

*Faulkner* v. *Arista Records LLC*,
2014 WL 4547824 (S.D.N.Y. Sept. 15, 2014) .............................7, 9, 10

*FHFA* v. *UBS Americas, Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012) ..................................................2

*Malletier* v. *Dooney & Burke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007) ..............................................9, 10

*United States* v. *Grey Bear*,
883 F.2d 1382 (8th Cir. 1989) ..............................................................7

*Wald* v. *Costco Wholesale Corp.*,
2005 WL 425864 (S.D.N.Y. Feb. 22, 2005) ..........................................6

## Rules

Fᴇᴅ. R. Eᴠɪᴅ. 702 .......................................................................................6

Fᴇᴅ. R. Eᴠɪᴅ. 703 ................................................................................2, 7, 8

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Action | *FHFA* v. *Nomura Holding America Inc.*, No. 11 Civ. 6201 (DLC) |
| Amended Complaint | Plaintiff's June 28, 2012 Amended Complaint in this Action |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin and N. Dante LaRocca |
| Ex. | Exhibit to the January 23, 2015 Declaration of James H. Congdon submitted in opposition to this motion |
| Fannie Mae | Federal National Mortgage Association |
| Freddie Mac | Federal Home Loan Mortgage Corporation |
| Hedden Decl. | Declaration of Michael P. Hedden, dated January 23, 2015 |
| Hedden Report | Expert Report of Michael P. Hedden, dated August 14, 2014 |
| Kilpatrick Report | Expert Report of John A. Kilpatrick, Ph.D., Concerning Adherence of Appraisals to Appraisal Standards and Practice, dated May 15, 2014 |
| Offering Documents | The offering materials for the Securitizations, including documents filed with the Securities and Exchange Commission |
| Plaintiff | Federal Housing Finance Agency |
| Pl. Br. | Memorandum in Support of Plaintiff FHFA's Motion to Exclude Expert Testimony of Michael Hedden, dated January 8, 2015, in this Action |
| Pl. Ex. | Exhibit to the January 8, 2015 Declaration of Jonathan C. Eser in Support of Plaintiff FHFA's Motion to Exclude Expert Testimony of Michael Hedden |
| Securitizations | The seven RMBS purchased by Freddie Mac and Fannie Mae from Nomura that are the subject of this Action |
| USPAP | Uniform Standards of Professional Appraisal Practice |

Defendants respectfully submit this memorandum in opposition to plaintiff's motion to exclude the trial testimony and opinions of defendants' expert Michael Hedden.

## PRELIMINARY STATEMENT

Plaintiff's expert John Kilpatrick created a "Credibility Assessment Model" for this litigation in order to offer opinions about the appraisals performed at the time of origination of the mortgage loans.[1]  Kilpatrick claims that his Credibility Assessment Model, a series of 31 questions which have never been applied outside this litigation, is "based on" USPAP standards, but admits that none of his specific 31 questions appears in USPAP or any industry publications. *See* Kilpatrick Motion at 20-21.  In performing his work, Kilpatrick used two independent firms, Forsythe and Valocity, to collect data and identify purportedly comparable sales properties. Defendants' expert Michael Hedden, who has worked in the residential real estate industry for 41 years, including 33 years in the field of real estate appraisal (Pl. Ex. 2 (Hedden Report) at 4), has issued a report rebutting Kilpatrick's opinions.

Plaintiff now seeks to exclude Hedden's testimony to the extent it is based on work by a third-party firm, iMortgage Services, LLC ("IMS"), which provided Hedden with responses to discrete questions Hedden formulated with respect to 40 appraisals.  Hedden used IMS's responses as part of the basis for his critique of Kilpatrick's Credibility Assessment Model.  This is entirely proper.  An expert "is entitled to rely upon the work of his colleagues," *Astra Aktiebolag* v. *Andrx Pharmaceuticals, Inc.*, 222 F. Supp. 2d 423, 492 (S.D.N.Y. 2002), and

---

[1]      Defendants have moved to exclude Kilpatrick's testimony in its entirety under Rules 401, 402, 403 and 702, and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See* Defendants' December 5, 2014 Motion to Exclude Expert Testimony of John Kilpatrick ("Kilpatrick Motion"), Doc. No. 1151.

may rely on the work of others that he "has been made aware of" when those facts or data are of a type on which "experts in the particular field would reasonably rely." FED. R. EVID. 703. Further, Hedden's use of IMS is indistinguishable from Kilpatrick's use of Forsythe and Valocity.  Plaintiff's motion is meritless.

## BACKGROUND

Plaintiff alleges, among other things, that the loan-to-value ("LTV") ratios represented in the Offering Documents were false because the denominators of the ratios (the "value") were, in many instances, too high.  (Ex. 1 (Amended Complaint) at ¶¶ 90-95.)  In denying defendants' motion to dismiss in 2012, this Court held that because the appraisals that served as the denominators for some of the LTV ratios are statements of opinion by the appraisers, plaintiff must show that appraisals "were both false and not honestly believed" by the appraisers at the time the appraisals were performed.  *FHFA* v. *UBS Americas, Inc.*, 858 F. Supp. 2d 306, 328 (S.D.N.Y. 2012) (quoting *Fait* v. *Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011)) (internal quotation marks omitted).  That is, plaintiff must show that "appraisers did not actually believe that the homes underlying the LTV ratios were worth as much as the appraisers reported that they were worth."  *Id.* at 326.  That ruling is the law of the case.

### A.    Kilpatrick's Report

Plaintiff adduced no evidence in discovery that any appraiser did not honestly believe any appraisal (estimate of value) he or she rendered.  Instead, plaintiff relies on Kilpatrick's Credibility Assessment Model as a substitute for actual evidence of subjective falsity.  As set forth more fully in defendants' December 5, 2014 Motion to Exclude Expert Testimony of John Kilpatrick, Kilpatrick's Credibility Assessment Model reflects nothing more than Kilpatrick's idiosyncratic views rather than any generally accepted professional standards.

In performing his work, Kilpatrick provided a set of questions to third-party firms Forsythe and

Valocity, which used licensed appraisers (whom Kilpatrick refers to as "data researchers") to

provide Kilpatrick with information to which he applied his Credibility Assessment Model.[2]  The

responses provided by Forsythe and Valocity included the compilation of "all listings of the

subject property within 1 year prior to the effective date of value," and the determination of

"sales price, number of sales, and average days on market" for properties within the

neighborhood of the subject property.  Kilpatrick also used Forsythe and Valocity to select

comparable properties, which required the researchers to determine properties "of a similar style

as the Subject Property," "of a similar construction as the Subject Property," and which "have

the similar location amenities as the Subject Property—a reasonable buyer using common sense

would consider these to be similar."  (Ex. 2 (Appendix 4-2 to Kilpatrick Report) at 3.)  The

Forsythe and Valocity researchers, using their judgment and discretion, selected for Kilpatrick

data on comparable properties.  They also filled out Kilpatrick's "Residential Data Research

Form," detailing their findings.  (*See* Ex. 3 (Excerpt of Appendix 4-5a to Kilpatrick Report).)

Kilpatrick used this data about comparable properties and the findings Forsythe and Valocity

provided in the Residential Data Research Forms as the input for his Credibility Assessment

Model, which then applies mechanical rules that are not required by USPAP, and that allow for

---

[2]      Kilpatrick also utilized the services of a firm named Recovco to provide "independent validation" of his Credibility Assessment Model by conducting a "standard detailed collateral review" of the appraisals with no input from Kilpatrick or his staff.  Pl. Ex. 3 (Kilpatrick Report) at 15-16.  Kilpatrick thus used Recovco not to gather data, but instead as an outside expert to provide opinions to purportedly bolster his own credibility.  After defendants moved to preclude Kilpatrick's testimony as to Recovco, *see* Defendants' January 8, 2015 Motion *in Limine* No. 4, plaintiff announced that Kilpatrick would "not testify as to Recovco's findings and conclusions." *See* Plaintiff's January 20, 2015 Opposition to Defendants' Motion *in Limine* No. 4, at 2.

none of the judgment and discretion USPAP requires in conducting an appraisal review.  (Pl. Ex. 3 (Kilpatrick Report) at 101.)

### B.     Hedden's Rebuttal

Michael Hedden will testify for defendants about certain of the appraisal issues that Kilpatrick raises.  Mr. Hedden has 41 years of experience in residential real estate, including 33 years in the field of real estate appraisals.  (Pl. Ex. 2 (Hedden Report) at 4.)  Mr. Hedden is a licensed appraiser in 13 states, and is a member of the Appraisal Institute.  (*Id.*)  Mr. Hedden has conducted or supervised thousands of appraisals and appraisal reviews, and is the author of several publications relating to real estate valuations and appraisals.  (*Id.*)

Among other things, Hedden selected a set of 40 appraisals (a subset of the 205 appraisals Kilpatrick reviewed using his Credibility Assessment Model) and "developed research questions" designed "to provide additional information on the specific issues and attributes for which Dr. Kilpatrick failed these appraisals."  (Pl. Ex. 2 (Hedden Report) at 9.)  Hedden sent these questions to a "third party research firm," IMS, and directed IMS to provide answers to the specific questions Hedden devised.  (*Id.* at 8-9.)  Hedden and his staff "crafted" questions "specifically addressing the issues" in Kilpatrick's appraisals, which Hedden personally reviewed before sending them to IMS.  (Pl. Ex. 1 (Hedden Tr.) at 24:21-25:20.)  IMS then hired "local competent licensed appraisers in the immediate market area of the property" to investigate the facts.  (*Id.* at 33:12-21.)  IMS was instructed not to disclose to the appraisers "the purpose of [the] assignment, the intended use of their responses, or the identity of any end recipients of the appraisers' responses."  (Pl. Ex. 2 (Hedden Report) at 8.)  The appraisers were not made aware of Kilpatrick's opinions about the appraisals, nor were they told what answers were desirable or anything about Hedden's ultimate opinions.  (Hedden Decl. at ¶ 8.)

IMS provided the information collected by local appraisers, consisting of reports by the licensed appraisers who had investigated the facts, to Hedden.   (*See* Ex. 4 (Appendix C to Hedden Report).)  For example, in one response to the question whether the "sale or transfer history for the subject property and comparable properties" were correctly stated in the original appraisal, an IMS reviewer responded that "[p]er review of tax records, the prior sales of the subject and the comparables have been reported accurately and completely." (Ex. 4 (Appendix C to Hedden Report) at 9.)  The IMS reviewers also gave factual information regarding the comparable sales identified in the original appraisal.  For instance, in response to a question whether the comparables selected by the original appraiser were "appropriate locationally, physically, and functionally," one IMS appraiser responded that a comparable was similar because it "sold within 12 months of the effective date, has similar appeal, similar GBA [gross buildable area] as the subject, 3-family dwelling, same bathroom count, similar age, and located within 1 mile of the subject." (*Id.* at 7.)

Hedden then reviewed these reports, and by matching them up with Kilpatrick's findings, used the information contained therein to formulate his opinion that "Dr. Kilpatrick and his team implemented and applied [the Credibility Assessment Model] in an unreliable manner that renders his findings unusable," and that Dr. Kilpatrick "answers the CAM's own questions incorrectly or applies the questions unreliably."  (Pl. Ex. 1 (Hedden Tr.) at 26:10-12; Pl. Ex. 2 (Hedden Report) at 11.)  Among other things, Hedden used data from IMS to confirm that the original appraisers had correctly reported the sales history of the subject property.  This responds directly to Dr. Kilpatrick's Question 11 of his model, which asks whether "the appraiser report[ed] the sales history correctly," and shows that Dr. Kilpatrick reported inaccurate answers to his own questions.  (Pl. Ex. 2 (Hedden Report) at 50-52.)  As another example, data from IMS

confirmed that the original appraisers had correctly reported marketing time, which according to USPAP is "an opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value level during the period immediately after the effective date of an appraisal." (Pl. Ex. 2 (Hedden Report) at 46-48.)  This pertains directly to Kilpatrick's "answers" to Question 9 of the Credibility Assessment Model, and is part of the basis for Hedden's opinion "that a statistically based analysis is only one of the many ways an appraiser can form an opinion with respect to marketing time."  (*Id*. at 47.)

## ARGUMENT

Determining the admissibility of expert testimony under Rule 702 and *Daubert* requires a district court to "determine that (1) the expert is qualified, (2) the testimony is relevant, and (3) that the testimony is reliable."  *Wald* v. *Costco Wholesale Corp.*, 2005 WL 425864, at *5 (S.D.N.Y. Feb. 22, 2005).  Where there is no jury, "unless the disputed evidence is wholly irrelevant or so speculative as to have no probative value, it is appropriate for the Court to 'take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology.'"[3] *720 Lex Acquisition LLC* v. *Guess? Retail, Inc.*, 2014 WL 4184691, at *10 (S.D.N.Y. Aug. 22, 2014).  Plaintiff does not dispute that Hedden's testimony is relevant, nor does plaintiff dispute any aspect of Hedden's opinions other than his use of data from IMS.

Hedden's use of data from IMS is perfectly in line with what experts are permitted to do.  Indeed, it is nearly identical to what Kilpatrick did with Forsythe and Valocity. The Court should deny plaintiff's motion.

---

[3]     On January 15, 2015, this Court ruled, over defendants' objection, that it would try the case without a jury.  *See* Doc. No. 1095.

I.      **HEDDEN'S USE OF IMS DATA TO FORMULATE HIS OPINIONS WAS PROPER.**

Plaintiff fundamentally misconstrues the role that IMS played in assisting Hedden.  It is false to say that IMS rendered "subjective" opinions "concerning the specific issues raised by Dr. Kilpatrick in regard to an individual appraisal."  (Pl. Br. at 9.)   The IMS appraisers had no knowledge whatsoever of Kilpatrick's opinions, and rendered no "opinions" as to Kilpatrick's conclusions, findings or opinions.  Rather, the IMS local appraisers supplied Hedden, based in part on their knowledge of the local market, with information about specific appraisals—and Hedden then performed the expert work of comparing that data to Kilpatrick's findings and rendering an opinion.

A.      **Hedden's Use of IMS Was Permissible.**

It is axiomatic that experts "may rely on assistants or the opinions of other experts in formulating their own expert opinions."  *Faulkner* v. *Arista Records LLC*, 2014 WL 4547824, at *18 (S.D.N.Y. Sept. 15, 2014) (citing *Dura Auto Sys. of Indiana* v. *CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Astra Aktiebolag*, 222 F. Supp. 2d. at 492 (an expert is "entitled to rely upon the work of his colleagues").  An expert is entitled to rely on the work of others that he "has been made aware of" when that work is "of a type reasonably relied upon by experts in the particular field."  FED. R. EVID. 703.  Expert testimony is inadmissible when an expert seeks to show simply "that other experts, not present in the courtroom, corroborate his views."  *United States* v. *Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989).  But where an assistant or any other independent party merely helps gather information, the testimony is inadmissible.  *See Dura*, 285 F.3d at 612-13.

In *Astra Aktiebolag*, the court ruled that a testifying expert was entitled to testify as to the results of laboratory analysis performed by other scientists where that work was

-7-

"performed under [the expert's] direction and by appropriate personnel." 222 F. Supp. 2d at

491-92.  The testifying expert "designed" the experiments on which he relied, and they were thus

conducted at his direction.  *Id.* at 492.  The same is true here.  Hedden used the local appraisers

to answer "specific questions" he designed by performing a limited review meant to unearth

factual information.  As Hedden makes clear, he and his staff "selected 40 geographically

dispersed appraisals" that Kilpatrick had analyzed with his Credibility Assessment Model.  (Pl.

Ex. 2 (Hedden Report) at 9.)  Hedden then developed research questions that were designed to

obtain information about "specific issues and attributes" of these properties.  (*Id.*)  After

designing the questions for the 40 appraisals that Kilpatrick relies on, Hedden provided those

questions to IMS appraisers so they could collect the data.  The local appraisers provided by IMS

then performed the analysis requested, answering Hedden's questions with (i) no knowledge of

the ultimate purpose of the assignment, or (ii) no knowledge of Kilpatrick's opinions.  (*Id.* at 8.)

They supplied Hedden with the results of their factual research in the form of letters; those letters

expressed no opinion as to the accuracy of Kilpatrick's work—nor could they—because they had

not been made aware of Kilpatrick's work.  (*See* Ex. 4 (Appendix C to Hedden Report).)  The

limited analysis by IMS was thus performed "under [Hedden's] direction."  Moreover, plaintiff

does not dispute that IMS is a respected firm whose work is "of a type reasonably relied upon by

experts in the particular field."  FED. R. EVID. 703.[4]

---

[4]     While plaintiff argues that Hedden did not personally vet each individual appraiser, that
is irrelevant.  The contractual arrangement between Hedden and IMS required that IMS use
licensed appraisers active in the local market.  Hedden Decl. at ¶ 5.  Plaintiff has submitted no
evidence to the contrary.

Hedden's use of IMS differs from the circumstances in *Faulkner* v. *Arista Records*, on which plaintiff relies.  In *Faulkner*, the testifying expert was <u>not</u> "the designer" of the model being applied, and did <u>not</u> "construct[] the model based on her own expertise."  2014 WL 4547824, at *19.  Here, the facts are otherwise—Hedden and his staff "constructed" the questions for the local appraisers to answer, and Hedden applied his own expertise in analyzing the IMS answers and applying them to form his own opinions.  (Hedden Decl. at ¶ 10).  In addition, the testifying expert in *Faulkner* did not supervise the other person's work because "he did not have knowledge of the field."  2014 WL 4547824, at *19.  That is also true of each of the other cases cited by plaintiff.  *See Dura*, 285 F.3d at 613 (excluding reliance on another expert's opinion that was "beyond the [testifying] expert's ken"); *Malletier* v. *Dooney & Burke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) (same).  By contrast, Hedden has extensive knowledge of the appraisal field (*see* Pl. Ex. 2 (Hedden Report) at 4), allowing him to properly direct IMS's work, assess its reliability, and apply his expertise to the information collected by IMS.

Plaintiff argues that Hedden "expressly relied on the opinions" of the IMS appraisers.  (Pl. Br. at 5.)  *First*, the IMS letters do not set forth opinions—they provide factual data, *see* pp. 4-5, *supra*, which Hedden reviewed in formulating his opinions.  (Pl. Ex. 2 (Hedden Report) at 11.)[5]  Plaintiff cites no examples of the IMS letters setting forth "subjective, conclusory, opinions." (Pl. Br. at 9.)  Instead, it is clear that the analysis performed by IMS in

---

[5]      The contrast to Kilpatrick's use of Recovco, which plaintiff has now conceded was improper, is instructive.  Whereas Kilpatrick had Recovco complete full reviews of every appraisal to "provide independent validation of the credibility of the original appraisal" (*i.e.*, to bolster his own opinion by showing that another "expert" agrees with him), Pl. Ex. 3 (Kilpatrick Report) at 16, Hedden designed specific questions meant to give him factual data he could then factor into his analysis and use in forming his own opinion.

responding to Hedden's specific questions was factual in nature.  For instance, IMS appraisers researched the sales history of the subject properties and the size, characteristics and sales histories of comparable properties.  *See* pp. 4-5, *supra*.  This is of the same character as the work performed by Kilpatrick's "data researchers," and comprises fact-gathering that an expert is entitled to rely on in formulating his opinions.

        *Second*, even if the reports did set forth "opinions," the cases plaintiff cites show that an expert may in some circumstances rely on others' opinions.  *Faulkner*, 2014 WL 4547824 at *18 ("Indeed, an expert may rely on assistants or the opinions of other experts in formulating their own expert opinions.") (citing *Dura*, 285 F.3d at 612; *Malletier*, 525 F. Supp. 2d at 666.)  The standard is that "[i]n the end, the expert must be giving his own opinion."  *Malletier*, 525 F. Supp. 2d at 666.  Here, that is undoubtedly the case.  The local appraisers did not know anything about Kilpatrick's opinions, and did not purport to opine on the validity of Kilpatrick's methods.  *See* p. 4, *supra*.  Their role was to provide information about specific appraisals.  It is Hedden's opinion that will be presented at trial—that Kilpatrick "implemented and applied [the Credibility Assessment Model] in an unreliable manner that renders his findings unusable," and that Dr. Kilpatrick "answers the CAM's own questions incorrectly or applies the questions unreliably." (Pl. Ex. 2 (Hedden Report) at 11.)  The IMS appraisers merely gathered data that Hedden used.

        Plaintiff bases much of its argument on the claim that "Hedden did not supervise the IMS appraisers in the preparation of their reviews,"  or "oversee [I]MS' work during the reviews."  (Pl. Br. at 10.)  But relying on data gathered by others does not require the sort of looking over the appraisers' shoulders that plaintiff seeks to require of Hedden.  *See Bd. of Trs. of AFTRA Ret. Fund* v. *JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at *10 (S.D.N.Y. Dec. 15, 2011) ("There is nothing improper about an expert relying on third-parties for data

collection."); *Bank of New York Mellon Trust Co., Nat'l Ass'n* v. *Solstice ABS CDO II, Ltd.*, 910 F. Supp. 2d 629, 644-45 (allowing expert opinion based on data gathered by others); *Cedar Petrochemicals, Inc.* v. *Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 284 (S.D.N.Y. 2011) (allowing expert opinion based on tests conducted by third parties).[6]  Plaintiff here has not challenged the reliability of the underlying analysis performed by the local appraisers, and has pointed to no flaws in the data provided.  Hedden and his team have worked closely with IMS in the past, and actively consulted with the Quality Assurance department at IMS to ensure the reliability of the data being provided.  (Hedden Decl. at ¶ 6.)

   **B.     Hedden's Use of IMS Is Indistinguishable from Kilpatrick's Use of Forsythe and Valocity**

         Kilpatrick himself uses independent firms (Forsythe and Valocity) for the same purpose as Hedden used IMS—to collect data and select purportedly comparable properties. (*See* Pl. Ex. 3 (Kilpatrick Report) at 13-14.)[7]  Hedden had his third-party researchers answer specific questions by gathering relevant data from comparable properties (*see* Ex. 4 (Appendix C to Hedden Report)—in the same way that Kilpatrick had Forsythe and Valocity researchers collect comparable sales data and answer questions about them.  (*See* Ex. 2 (Exhibit 4-2 to Kilpatrick Report).)  Kilpatrick asked his researchers to use their discretion in picking comparable properties—for example, he asked them to consider properties "of a similar condition as the Subject Property—a reasonable buyer using common sense would consider this to be similar."

---

[6]     Plaintiff's own experts did not engage in such close observation.  There is no evidence that Kilpatrick "supervised" or "oversaw" the work of the data researchers from Forsythe and Valocity as they were conducting it.

[7]     Kilpatrick admitted that some of the "inspectors" used by Forsythe and Valocity to obtain information were not, in fact, licensed appraisers.  Ex. 5 (Kilpatrick July 14, 2014 Tr.) at 99:2-100:6.  Hedden relies on data from licensed appraisers only.  Hedden Decl. at ¶ 5.

(*Id.*).  Kilpatrick's researchers thus performed similar work as the IMS researchers, who were asked, "Are the comparable sales selected appropriate locationally, physically, and functionally?"  (Ex. 4 (Appendix C to Hedden Report).)  The fact that the researchers in both cases had some limited discretion in selecting comparables does not make the ultimate opinion of the testifying expert inadmissible, simply because some limited discretion was shown on the part of another party in assisting him.  *See Astra Aktiebolag*, 222 F. Supp. 2d at 491-92.[8]

---

[8]     Kilpatrick conceded that "some judgment would enter into" the work his data researchers were doing.  (Ex. 5 (Kilpatrick July 14, 2014 Tr.) at 104:12-105:15.

## CONCLUSION

The Court should deny plaintiff's motion to exclude the expert testimony of

Michael Hedden.

Dated:  New York, New York
        January 23, 2015

                                          Respectfully submitted,


/s/ Thomas C. Rice_____        /s/ David B. Tulchin_____
Thomas C. Rice (trice@stblaw.com)         David B. Tulchin (tulchind@sullcrom.com)
David J. Woll (dwoll@stblaw.com)          Steven L. Holley (holleys@sullcrom.com)
Andrew T. Frankel (afrankel@stblaw.com)   Bruce E. Clark (clarkb@sullcrom.com)
Alan Turner (aturner@stblaw.com)          Bradley A. Harsch (harschb@sullcrom.com)
Craig S. Waldman (cwaldman@stblaw.com)    Katherine J. Stoller (stollerk@sullcrom.com)
SIMPSON THACHER & BARTLETT LLP            SULLIVAN & CROMWELL LLP
425 Lexington Avenue                      125 Broad Street
New York, NY  10017                       New York, NY  10004
Telephone:  212-455-2000                  Telephone:  212-558-4000
Facsimile:  212-455-2502                  Facsimile:  212-558-3588

*Attorneys for Defendant RBS Securities Inc.*   Amanda F. Davidoff
                                          (davidoffa@sullcrom.com)
                                          Elizabeth A. Cassady
                                          (cassadye@sullcrom.com)
                                          SULLIVAN & CROMWELL LLP
                                          1700 New York Avenue, NW, Suite 700
                                          Washington, DC  20006
                                          Telephone:  202-956-7500
                                          Facsimile:  202-956-6993

                                          *Attorneys for Defendants Nomura Holding*
                                          *America Inc., Nomura Asset Acceptance*
                                          *Corporation, Nomura Home Equity Loan, Inc.,*
                                          *Nomura Credit & Capital, Inc., Nomura*
                                          *Securities International, Inc., David Findlay,*
                                          *John McCarthy, John P. Graham, Nathan*
                                          *Gorin, and N. Dante LaRocca*