```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
 FEDERAL HOUSING FINANCE AGENCY,         :      11cv6201 (DLC)
                                         :
                 Plaintiff,              :      MEMORANDUM
                                         :      OPINION & ORDER
         -v-                             :
                                         :
                                         :
 NOMURA HOLDING AMERICA, INC., et al.,   :
                                         :
                 Defendants.             :
                                         :
-----------------------------------------X
```

APPEARANCES:

For plaintiff:

Philippe Z. Selendy
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

For defendants:

David B. Tulchin
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

Thomas C. Rice
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

On January 30, 2015, defendants moved in limine to restrict FHFA from presenting at trial evidence related to their due diligence.  This Opinion provides the parties with guidance on issues raised in this motion.

On December 18, 2014, this Court granted FHFA's motion for summary judgment addressed to defendants' due diligence and reasonable care defenses.[1]  FHFA v. Nomura Holding Am. Inc., --- F. Supp. 3d ---, No. 11cv6201 (DLC), 2014 WL 7232443, at *40 (S.D.N.Y. Dec. 18, 2014).  Since their due diligence defense can no longer be litigated at trial, defendants contend that four categories of evidence that FHFA seeks to offer at trial should be excluded pursuant to Fed. R. Evid. 401 and 403.  FHFA responds that the evidence will assist in determinations of material falsity and the reliability of the methodology used by expert witnesses.

First, defendants contend that testimony of FHFA's experts Leonard Blum ("Blum") and Peter Rubinstein ("Rubinstein") to the effect that defendants had a duty to conduct due diligence should be stricken.  It is the Court's duty to articulate the legal standards that will govern the resolution of the issues in this case, and no expert will be permitted to dictate or opine on the content of those standards.  See, e.g., United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006) ("[A]n opinion that purports to explain the law . . . trespasses on the trial

---

[1] The term "due diligence" is used in this Opinion even though the only federal claim that remains to be tried here is a Section 12 claim and its corollary affirmative defense is reasonable care.  See Nomura, --- F. Supp. 3d at ---, 2014 WL 7232443, at *30.

judge's exclusive territory."); United States v. Scop, 846 F.2d 135, 140 (2d Cir.), on reh'g, 856 F.2d 5 (2d Cir. 1988) (expert may not "invade the province of the court to determine the applicable law" (citation omitted)).  To the extent that Blum, Rubinstein, or any other expert testifies as to what the securities laws require, that testimony will be stricken.  Such stricken testimony would include, for example, the underscored statements from Blum's expert report such as, "[a] broker-dealer acting in the capacity of securities underwriter (as did [d]efendants in the instant matter) has an obligation, pursuant to the Securities Act of 1933 as amended (the "33 Act"), to conduct a reasonable investigation," and, "[t]o the extent that defective loans are found during [r]equisite [d]ue [d]iligence, pursuant to the securities laws, the underwriter must cure, remove, or disclose such defects."

Next, defendants move to preclude evidence of their due diligence practices insofar as they relate to transactions other that those linked to the seven Securitizations at issue here.  They also seek to exclude evidence regarding reunderwriting results that related to loans from mortgage lenders that did not originate any of the loans backing the seven Securitizations, specifically Option One and IndyMac.  Defendants do not appear to dispute that evidence about the origination process and due diligence process associated with the loans that entered the

seven Securitizations is relevant and admissible, or that evidence regarding those entities that originated the loans that appear in the SLGs for the seven Certificates ("Originators"), including defendants' evaluations and experiences with them, is also relevant and admissible.

The difficulty with drawing fine lines here stems in part from the nature of the Nomura due diligence program.  There are over fifteen thousand loans within the seven SLGs.  They were drawn from 194 trade pools containing more than fifty thousand loans.  Nomura's examination of the loans that ended up in the seven SLGs occurred at the stage that it purchased the loans in the trade pools.  It did not create a due diligence program to confirm the accuracy of the representations in the Offering Documents regarding the loans in the SLGs.  For two of the seven SLGs, however, RBS conducted a review of the loans in the SLGs.  See Nomura, --- F. Supp. 3d at ---, 2014 WL 7232443, at *3-4.

Another complicating factor in addressing this dispute is that the parties are hotly contesting the extent to which the representations in the Offering Documents are false and the materiality of the representations, and defendants' due diligence processes may have yielded evidence relevant to these two issues.  To the extent that defendants are contesting the materiality of representations about owner-occupancy status, loan-to-value ("LTV") ratios, FICO scores, or debt-to-income

("DTI") ratios, then FHFA wants to point to the ways in which defendants focused on those criteria when conducting due diligence. In addition, to the extent that the due diligence program uncovered inaccuracies in figures reported by Originators, or red flags that such inaccuracies existed, then FHFA wants to offer that evidence to support its claims of falsity. Finally, to the extent that defendants are critical of the FHFA expert review processes, FHFA apparently wants to show that defendants themselves relied on similar sources of evidence and processes when performing their loan reviews. Specifically, FHFA wants to show: what defect categories and numerical thresholds defendants and their agents used, when they found that compensating factors were sufficient to offset credit risk from underwriting defects, and the tools they used to assess accuracy.

In general, FHFA has described grounds to find that at least elements of defendants' review processes are relevant to issues that remain to be tried. As noted, defendants do not seem to contest the relevance or admissibility of reviews of loans that were ultimately put into the SLGs or of evidence regarding Originators. Where the evidence concerns an originator whose loans were not incorporated within an SLG, that evidence will be excluded unless FHFA can point to an independent reason supporting its admissibility. Similarly,

evidence offered only to show that defendants' diligence practices were inadequate to weed out defective loans is inadmissible.  As a general matter, evidence from defendants' employees who were not involved in the securitization process that ultimately created the SLGs and Offering Documents for the seven Certificates will be presumed to be irrelevant.  Thus, for these categories of evidence, FHFA must provide a reason to find that the evidence is relevant and sufficiently probative to overcome Rule 403 concerns.  See Fed. R. Evid. 403.

One example that the parties discuss may be of assistance here.  FHFA explains that an email from RBS employee Frank Camacho describes his process for evaluating diligence results regarding appraisals, including an acknowledgment of the risk that the original appraisals were not accurate.  Defendants seek to have this excluded because the discussion occurred in the context of a review of loans from an originator who did not contribute to the SLGs.  But the email concerns the risk of false appraisal values generally, and is not addressed to the particular originator.  It is relevant to the issues of falsity and materiality, and is admissible.

Finally, defendants seek to preclude evidence of compensation of defendants' employees who "had nothing to do with" the Securitizations, including in particular Bob McGinnis. McGinnis left RBS in March 2006, before the Nomura

6

Securitizations for which RBS acted as an underwriter.  FHFA points to testimony from McGinnis which they contend confirms that RBS employees in his department (in fact, Greenwich Capital employees) were "financially incentivized to approve as many loans for securitization as possible without regard to whether such loans were defective."  While testimony about compensation from employees who did not work on the Securitizations is generally inadmissible, FHFA has shown that this particular testimony is relevant to the issue of falsity and admissible.  In addition, evidence of the compensation received by any particular employee who is not testifying will not be received without a showing of relevance.

## CONCLUSION

Defendants' January 30 motion <u>in limine</u> is governed by the standards articulated herein.  Where this general guidance is insufficient, the parties will have an opportunity to obtain rulings on particular items of evidence.

SO ORDERED:

Dated:   New York, New York
         February 20, 2015

_____
DENISE COTE
United States District Judge