# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 17, 2015

Via E-mail

Hon. Denise L. Cote,
  United States District Judge,
    Daniel Patrick Moynihan United States Courthouse,
      500 Pearl Street, Room 1610,
        New York, New York 10007-1312.

    Re:   *FHFA* v. *Nomura Holding America Inc., et al.*, 11-cv-6201 (SDNY)

Dear Judge Cote:

Defendants submit this reply in support of their motion *in limine* No. 8 to preclude plaintiff from presenting any evidence or making any argument regarding certain emails that are unrelated to the loans underlying the seven Securitizations at issue in this action.

In its February 9, 2015 Opposition ("Opposition" or "Opp."), plaintiff asserts that it can prove falsity in the Offering Documents by relying on evidence about loans that were not included in the Securitizations, and about which no representations were made in the Offering Documents. (Opp. at 1, 4.) This argument plainly conflicts with the Court's prior rulings that evidence about Nomura's disclosures in the Offering Documents must be connected to the loans that supported the Certificates. (July 25, 2014 Opinion and Order, Doc. No. 766, at 65-66; November 18, 2014 Opinion and Order, Doc. No. 931, at 25, 27.)

In apparent recognition of this fact, plaintiff tries to link the January 2007 emails that are the subject of this motion to a trade pool that contributed loans to the Securitizations, OwnIt SP02, but misrepresents the facts. According to plaintiff, Christopher Scampoli of Nomura's due diligence group reported on due diligence results from the OwnIt 03 trade pool (which did not contribute loans to the Securitizations), and "[b]ased on the results of this diligence," Neil Spagna of Nomura asked for additional second liens to be added to the sample for OwnIt SP02 (which did contribute loans to the Securitizations). (Opp. at 1, 3.) This is false. Mr. Spagna suggested increasing the number of second liens in the OwnIt SP02 sample in an email sent at 6:35 AM on November 15, 2006, which was *before* Mr. Scampoli relayed to him the diligence results from OwnIt 03 at 7:28 AM on November 15. (Pls.' Ex. 1 at NOM-

Hon. Denise L. Cote                                                                                          -2-
                                                                                   Motion *in Limine* No. 8

FHFA_05811156.)  When the error in the chronology is fixed, the link plaintiff seeks to draw is broken and its argument fails.[1]

        Plaintiff also claims that evidence regarding loans from trade pools that did not contribute to the supporting loan groups for the Securitizations provides circumstantial support for the findings of its expert, Robert Hunter, concerning loans from trade pools that are at issue in this case.  (Opp. at 3.)  This argument conflicts with the Court's rulings that evidence about loans that are not at-issue is irrelevant.  For example, in addition to the rulings noted above, this Court has held that "[t]he representations in the prospectus supplements were about pools of loans, meaning that awareness of problems with a particular loan or Originator does not necessarily translate into awareness that a particular percentage of the loans in a specific pool was inaccurately described as owner-occupied properties, for example . . . .  There is, in other words, no necessary equivalence between a Supporting Loan Group containing loans from an Originator and the general universe of loans being offered for sale to the Single Family side [of Freddie Mac or Fannie Mae] by that same Originator."  *FHFA* v. *UBS Americas, Inc.*, 2013 WL 3284118, at *18 (S.D.N.Y. June 28, 2013).  Similarly, here "the general universe of loans being offered for sale" by OwnIt has no relevance to the "Supporting Loan Group containing loans from" OwnIt.  Plaintiff's argument is also illogical.  Mr. Hunter did not reunderwrite any loans from OwnIt 03.  Evidence of due diligence on a trade pool that does not contain any loans reviewed by Mr. Hunter has nothing to do with his conclusions about other loans.

        Plaintiff's proposed trial exhibits 482 and 700 are irrelevant.  They refer to loans that did not underlie the Securitizations, from trade pools that did not contribute loans to the Securitizations.  These documents cannot show that Nomura made material misstatements or omissions in disclosures about the loans that actually did underlie the Securitizations, and they should be excluded.

        Respectfully submitted,

        /s/ David B. Tulchin

        David B. Tulchin

---

[1] Plaintiff also claims that Mr. Spagna "request[ed] that Nomura upsize the diligence on this pool [OwnIt SP02] beyond the 25% originally agreed to with Nomura" (Opp. at 2), "but that additional diligence was never conducted." (Opp. at 3.)  This argument has nothing to do with whether documents concerning OwnIt 03 and the related January 2007 loan review are relevant, and it is also misleading.  Mr. Spagna did not request an increase beyond the 25% sample size, but rather sought to increase the number of second lien loans in that sample.  (Pls.' Ex. 1 at NOM-FHFA_05811156.)  This is precisely what Nomura did.  The initial sample for OwnIt SP02 shows that Nomura planned to include 152 second lien loans in the sample.  (Reply Ex. A at NOM-FHFA_05070934.)  The due diligence reports issued by Nomura's vendor, American Mortgage Consultants, show that 180 second lien loans ultimately were included in the sample for OwnIt SP02.  (Reply Ex. B at NOM-FHFA_05214768.)  Thus, Nomura followed Mr. Spagna's request by increasing the number of second lien loans in the sample.