# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 17, 2015

Via E-mail and ECF

Hon. Denise L. Cote,
    United States District Judge,
        Daniel Patrick Moynihan United States Courthouse,
            500 Pearl Street, Room 1610,
                New York, New York 10007-1312.

      Re:     FHFA v. Nomura Holding America Inc., et al., 11-cv-6201 (SDNY)

Dear Judge Cote:

        Defendants respectfully submit this reply in support of their Motion *in limine* No. 9 ("Motion" or "Mot."), which seeks to preclude plaintiff from presenting any evidence or making any argument relating to trending reports created by Clayton Holdings LLC ("Clayton"). Clayton, through its Rule 30(b)(6) witness Vicki Beal, deemed the trending reports unreliable and untrustworthy—a problem that proved to be the "fatal flaw" for the project. (Reply Ex. A (Beal 30(b)(6) Tr.) at 413:9-415:7.) Plaintiff never addresses this point or even once mentions Ms. Beal's testimony about the unreliability of the trending reports. The touchstone for exceptions to the hearsay rule is whether the hearsay statement "possess[es] circumstantial guarantees of trustworthiness." FED. R. EVID. 803 (notes of advisory committee on proposed rules). Although plaintiff offers six theories about why the trending reports are not inadmissible hearsay, plaintiff never gets to the heart of the issue: Clayton's Rule 30(b)(6) witness explained with no ambiguity that this hearsay is not, and should not be considered to be, trustworthy.

        Plaintiff first claims that the trending reports are admissible because defendants "adopted or believed [them] to be true" by submitting a trending report to the Court once in connection with a request for discovery. (Opp. at 4.) Defendants submitted the trending report not to prove the truth of the statements in the report, but rather to request discovery reasonably calculated to lead to admissible evidence. *See Bass* v. *Grottoli*, 1996 WL 455016, at *6 (S.D.N.Y. Aug. 12, 1996) ("[R]elevancy in discovery is far broader than the standard applied at trial."). Plaintiff also claims that the trending reports are adoptive admissions because the reports supposedly exposed defendants to liability and defendants "did not contemporaneously protest that the reports were inaccurate." (Opp. at 4). This is also far-fetched; there is no evidence that defendants "did not contemporaneously protest that the statement was untrue" (Opp. at 4) and, more importantly, the reports do *not* expose defendants to liability because the waiving in of "3s" was perfectly proper. (Reply Ex. A (Beal 30(b)(6) Tr.) at 66:20-67:18 (because of client

Hon. Denise L. Cote -2-
Motion *in Limine* No. 9

overlays, a loan "could meet originator guidelines, but, for whatever reason, the client said if this, then make it a 3.").)

   Plaintiff next claims the trending reports are admissible under the business record exception, but incorrectly claims that "Nomura does not dispute that the data aggregated *within* the reports" was recorded in the regular course of business. (Opp. at 4.)  Beal also testified that the reports are unreliable not only to draw comparisons between different Clayton clients, but also unreliable as to a single client because the reports were never standardized across different projects.  (Reply Ex. A (Beal 30(b)(6) Tr.) at 130:24-131:21.)  Moreover, the trending reports are Clayton's analysis of the data, and plaintiff has not shown that creation of the reports was ever a regularly conducted activity (which it was not).

   Plaintiff's claim that the trending reports are "a compilation of statements made by Nomura and RBSSI" is also completely unsupported by the record, as demonstrated by the fact that plaintiff cites no record evidence.  (Opp. at 5.)  The reports clearly are statements by Clayton, not defendants.  Plaintiff's related argument that the trending reports are admissions because Clayton was defendants' "authorized" agent fails for the same reason—plaintiff again cites no evidence in the record to support its claim.  Plaintiff's six arguments are not only flimsy, but in some cases pure inventions.  Contrary to plaintiff's claim, Ms. Beal affirmed that Clayton initiated the trending report project; it was not a project undertaken at the request of defendants, and defendants never authorized Clayton to make the statements plaintiff seeks to admit.  (Reply Ex. A (Beal 30(b)(6) Tr.) at 126:14-127:19, 329:5-12.)

   In addition to the fact the trending reports are inadmissible hearsay, they must also be excluded as irrelevant. Plaintiff argues that the reports are "circumstantial evidence of falsity" because they purportedly show that "originators were systemically originating defective loans" and that Nomura and RBSSI "waived in . . . 58% and 53%" of purportedly "defective loans."  (Opp. at 1-2.)  This is untrue, and in any event is exactly the kind of evidence plaintiff has sought to exclude in virtually every other context—evidence that does not relate specifically to the loans in the supporting loan groups.  (*See, e.g.*, Aug. 25, 2014 Memorandum in Support of Partial Summary Judgment on the Statute of Limitations, Doc. No. 838, at 11-13.)  And use of the reports to show origination of purportedly defective loans is precisely the purpose for which Clayton's Rule 30(b)(6) witness said the reports are the most unreliable—they do not show the number of "defective" loans because Clayton's grades reflect a multitude of different criteria.  (*See* Mot. at 3-4.)  The "fatal flaw" identified by Clayton goes to the admissibility, not the weight, of these reports.  *See United States* v. *Tellier*, 83 F.3d 578, 580 (2d Cir. 1996) ("[H]earsay statements are presumptively unreliable.").  Nor can plaintiff justify admission of the reports by seizing on a spreadsheet associated with the trending reports with data purportedly concerning 259 loans in the Supporting Loan Groups, or by claiming the trending reports are relevant to materiality because they demonstrate a review of credit factors like LTV and DTI ratios.  If anything, identifying 259 loans from a spreadsheet with 10,199 rows of loan-level data shows the exceedingly tenuous connection between the trending reports and the Supporting Loan Groups relevant to this action.  The very purpose for which plaintiff seeks to use the reports (supposedly because they show some "systematic" defect, though not one that can be linked to the at-issue loans) is exactly what Clayton said makes the reports entirely untrustworthy.

Hon. Denise L. Cote -3-
Motion *in Limine* No. 9

Respectfully submitted,

/s/ David B. Tulchin

David B. Tulchin

cc: Counsel of Record via ECF