**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 20, 2015

By E-mail and ECF

The Honorable Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Court House,
         500 Pearl Street, Room 1610,
           New York, New York 10007-1312.

      Re:    *FHFA* v. *Nomura Holding America, Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

      Defendants respectfully submit this opposition to plaintiff's Motion *in Limine* No. 6 ("Mot." or "Motion"), which seeks to exclude what it calls "post-settlement documents and testimony." (Mot. at 1.) Plaintiff's Motion should be denied.

## BACKGROUND

      Freddie Mac and Fannie Mae purchased seven certificates that are the subject of this action. Fannie Mae purchased one certificate in a trade settling on November 30, 2005. (Mot. at 1.) Freddie Mac purchased six certificates; the last trade settled on April 30, 2007. (*Id.*) Plaintiff seeks (i) to exclude all documents "relating to the post-settlement time period," (ii) to exclude all "post-settlement testimony," and (iii) to prevent defendants from calling (presumably by deposition or in person) "FHFA witnesses whose sole involvement with PLS was post-settlement." (Mot. at 1.) If granted, this request would exclude all documents from Fannie Mae after November 30, 2005 and from Freddie Mac after April 30, 2007, all documents (from any source) created after April 30, 2007, and all testimony "relating to" the post-settlement periods.[1] Despite the sweeping ruling it seeks, plaintiff attempts to explain its radical position only with respect to evidence from Freddie Mac and Fannie Mae—it makes no argument about post-settlement documents from other sources of any kind. Because many of the documents and much of the testimony plaintiff seeks to exclude go directly to loss causation, materiality, and damages—central issues before the Court at trial—the Motion should be denied.

---

[1]    The exclusion of "post-settlement" evidence concerning Freddie Mac, coupled with Freddie Mac's widespread destruction of e-mails prior to late 2007, would leave little documentary evidence from Freddie Mac. Declaration of Yavar Bathaee, executed on Jan. 20, 2015 ("Bathaee Decl.") (exhibits cited as "Ex. __"), Ex. 19 (Kehoe Tr.) at 259-60.

Hon. Denise L. Cote                                                                                                        -2-

## ARGUMENT

I.   **EVIDENCE RELATING TO THE POST-SETTLEMENT TIME PERIOD IS ADMISSIBLE AND HIGHLY RELEVANT TO LOSS CAUSATION.**

Evidence post-dating the settlements of the trades is admissible and highly relevant to defendants' loss causation defense. Defendants are entitled to prove that plaintiff's claimed losses are attributable to factors other than the alleged misrepresentations. 15 U.S.C. § 77l(b). As this Court held last month, the loss causation defense recognizes that a security's loss in value "may be attributed" to factors other than the alleged misstatements "such as 'changed economic circumstances, changed investor expectations, [or] new industry-specific or firm-specific facts, [or] conditions.'" *Fed. Hous. Fin. Agency* v. *Nomura Holding Am. Inc.*, 2014 WL 7232590, at *5 (S.D.N.Y. Dec. 18, 2014) (quoting *Acticon AG* v. *China N.E. Petro. Holdings Ltd.*, 692 F.3d 34, 40 (2d Cir. 2012)). For Section 12 and the blue sky claims, these losses occurred, if at all, during the period between settlement of the trades and the present—and all judgments, determinations and analyses by Freddie Mac and Fannie Mae employees concerning those losses occurred during that same (post-settlement) period. Many of these employees' job responsibilities included identifying the causes of Freddie Mac's and Fannie Mae's losses, and their judgments and analyses as to that issue are admissible and highly relevant.

A.   **Evidence From Freddie Mac and Fannie Mae Witnesses Whose Job Responsibilities Included Analyzing Alleged Losses Is Admissible.**

Plaintiff argues that the testimony of Freddie Mac and Fannie Mae witnesses is "inadmissible, lay witness, post-hoc speculation about GSE losses on PLS." (Mot. at 4.) That is wrong. A number of Freddie Mac and Fannie Mae witnesses—including persons whose job responsibilities included assessing the causes of Freddie Mac's and Fannie Mae's losses on private label securities, and assessing the impact of housing prices on such securities—testified based on their firsthand observation and analysis about the causes of Freddie Mac's and Fannie Mae's losses. (Bathaee Decl. ¶¶ 3-13.) Statements made with that foundation by persons whose job responsibilities included making such analyses are not speculation. *See Folio Impressions, Inc.* v. *Byer California*, 937 F.2d 759, 764 (2d Cir. 1991) (finding that "a reasonable trier of fact could believe the witness had personal knowledge" when the witness had job "responsibilities" for the issue to which her testimony related); *McKenna* v. *Chilton Co.*, 1991 WL 18142, at *4 (S.D.N.Y. Feb. 6, 1991) (allowing testimony where employee was "involved in implementing" the policies described in testimony).

For example, several Freddie Mac and Fannie Mae witnesses were charged with determining the causes of their employer's losses as they occurred. (Bathaee Decl. ¶¶ 3-13) Gary Kain was not "speculating" (*see* Mot. at 5) about the causes of Freddie Mac's losses, but instead was speaking based on his own analysis and observation. Mr. Kain was responsible, as Senior Vice President for Mortgage Investments and Structuring during the period 2005 through 2008, for evaluating "whether or not impairments should be taken on securities within Freddie Mac's portfolio," and specifically whether losses were the result of "credit losses." (Ex. 1 (Kain Tr.) at 701:7-20; *see also id.* at 711:14-713:20; Ex. 3 (FHFA03886206).) His testimony that price declines in the private-label securities owned by Freddie Mac were primarily due to market conditions is based on knowledge within the scope of his employment. (Ex. 1 (Kain Tr.) at 750:21-752:16.) Freddie Mac Executive Vice President of Investments and Capital Markets Patti Cook closely

monitored housing prices and their effect on Freddie Mac's securities—writing about housing prices in a weekly column distributed across the organization. (*E.g.*, Ex. 5 (Message from Patti Cook), at FHFA03703593.) Her testimony attributing defaults in mortgages underlying Freddie Mac's private-label securities to "house price declines that hadn't been observed since the Great Depression" rather than other possible causes (Ex. 4 (Cook Tr.) at 294:3-295:20) was based on knowledge obtained as a Freddie Mac executive overseeing a portfolio of private-label securities.

Fannie Mae employees Eric Rosenblatt and CJ Zhao were responsible during the period 2005 through 2007 for studying the correlation between housing prices and the performance of home loans and securities. (Ex. 12 (Zhao Tr.) at 179:24-180:21; Ex. 10 (Rosenblatt Tr.) at 188:20-189:14.) Mr. Rosenblatt was Vice President for Credit Risk Analytics and Modeling from 2006 to 2014; CJ Zhao was a Director of Credit Analytics from 2006 through 2008. (Bathaee Decl. at ¶ 10.) Mr. Rosenblatt's testimony that the drop in housing prices was "incredibly significant[]" in causing losses to Fannie Mae's private label securities (Ex. 10 (Rosenblatt Tr.) at 187:18-188:8), and Ms. Zhao's testimony that declining home prices caused significant loan performance deterioration (Ex. 12 (Zhao Tr.) at 297:16-21, 319:18-320:6), are standard fact testimony by witnesses based on their personal experience. Similarly, Fannie Mae's Executive Vice President for Portfolio Strategy, whose responsibilities included overseeing the surveillance of Fannie Mae's portfolio of private-label securities, agreed that the "decline in home prices" in 2008 "would cause a loss" to private label securitizations. (Ex. 18 (Niculescu Tr.) at 68:21-73:11.) Fannie Mae credit analyst Lin Cao, who was responsible for surveillance of Fannie Mae's private-label securities portfolio during the period 2006 to 2010, testified that Fannie Mae "observed huge home price depreciation" during that period, which Fannie Mae determined "is highly correlated to the behavior of defaults." (Ex. 20 (Cao Tr.) at 270:13-271:10 (Fannie Mae credit analyst).) These witnesses were in the best position to analyze, observe and make judgments about what caused Freddie Mac and Fannie Mae's losses—and their testimony is highly relevant. This is straightforward fact testimony by lay witnesses. *See U.S.* v. *Rigas*, 490 F.3d 208, 222-24 (2d Cir. 2007) (lay witnesses able to testify based on the "observations" and "personal knowledge" learned during employment).[2]

Even if some of this evidence constitutes lay opinion, that is admissible too. Fed. R. Evid. 701 makes clear that a lay witness can testify "in the form of an opinion" where that testimony is (a) "rationally based on the witness's perception," (b) "helpful to clearly understand the witness's testimony or to determine a fact in issue," and (c) "not based on scientific, technical, or other

---

[2]  The evidence cited here is among many examples of relevant evidence from Freddie Mac and Fannie Mae witnesses and documents concerning loss causation. For example, a report from the Special Litigation Committee formed by the Board of Directors of Freddie Mac in February 25, 2011 found that "[t]he consensus among the current and former officers and directors of Freddie Mac interviewed [] was that the primary cause of [Freddie Mac's] recent losses was an 'exogenous macro-economic event[]'; namely, the unprecedented decline in the housing market." Ex. 21 (Romano Deposition Ex. 20256) at 31. Similarly, Freddie Mac and Fannie Mae submitted annual Form 10-K reports to the Securities and Exchange Commission in 2010, in which they identified losses in private label securities as "due to the decline in home prices and the weak economy" and as a result of "market conditions." Ex. 22 (Freddie Mac 2009 10-K, filed Feb. 24, 2010) at 62; Ex. 23 (Fannie Mae 2009 10-K, filed Feb. 26, 2010) at 51. These admissions are also highly relevant to any determination by the fact-finder of loss causation.

specialized knowledge within the scope of Rule 702." Plaintiff does not explain why testimony by professionals whose job responsibilities at Freddie Mac and Fannie Mae included assessing the causes of Freddie Mac's and Fannie Mae's losses on private label securities and the impact of housing prices on such securities (*see* Bathaee Decl. ¶¶ 3-13), about the reason or reasons for the losses suffered by Freddie Mac and Fannie Mae is inadmissible under Fed. R. Evid. 701. Nor does plaintiff explain why the testimony and statements of these witnesses—about topics squarely within the scope of their employment—is not attributable to Freddie Mac and Fannie Mae. If there are snippets of testimony—and plaintiff has identified none—that contain true speculation, the Court can deal with such an objection at trial. That is an entirely different issue from a blanket *in limine* ruling that all testimony by Freddie Mac and Fannie Mae employees about loss causation is inadmissible.

### B.  Evidence From Lay Witnesses Is Relevant to Loss Causation.

Evidence is relevant under Fed. R. Evid. 401 if it "has any tendency to make a fact more or less probable" than it otherwise would be. Plaintiff does not attempt to argue that the evidence set forth above does not make it more probable that plaintiff's claimed losses were caused by something other than the alleged misrepresentations. Instead, plaintiff makes the radical argument that this evidence is irrelevant because loss causation can only "be proven by experts." (Mot. at 4.) Not one of the three cases cited by plaintiff stands for this proposition. To the contrary, each decision (none of which relates to Section 12 or blue sky laws) states that loss causation may be proven by expert opinion and sometimes requires at least the testimony of an expert—not that no other evidence is relevant to what caused a plaintiff's alleged losses. Indeed, it is clear that a loss causation defense can be established when defendants "have not only submitted expert testimony, but have provided and discussed evidence attributing the decline to factors other than their own disclosure." *Adair* v. *Kaye Kotts Associates, Inc.*, 1998 WL 142353, at *7 (S.D.N.Y. Mar. 27, 1998) (listing cases where loss causation defense was proven by both fact and expert testimony); *see also Akerman* v. *Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 370-72 (S.D.N.Y. 1984), *aff'd*, 810 F.2d 336 (2d Cir. 1987) (granting summary judgment to defendants on loss causation based on both fact and expert evidence); *In re Fortune Systems Sec. Litig.*, 680 F. Supp. 1360, 1365-68 (N.D. Cal. 1987) (same).

## II.  EVIDENCE POST-DATING THE SETTLEMENT OF FANNIE MAE'S LAST TRADE IS RELEVANT TO MATERIALITY.

Evidence from Fannie Mae post-dating the settlement of the last Fannie Mae trade is also relevant to materiality. The standard for materiality is "[w]hether the defendants' misrepresentations, taken together and in context, would have misled a reasonable investor." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (internal citations omitted). Materiality is a "fact-intensive inquiry . . . '[that] necessarily depends on all relevant circumstances of the particular case.'" *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012). As plaintiff recognizes (Mot. at 3-4), this Court ruled last month that materiality "is determined with reference to a reasonable PLS trader." *FHFA* v. *Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014).

Evidence and testimony about what "reasonable PLS traders" at Fannie Mae actually did consider in purchasing residential mortgage-backed securities during the period 2005 to 2007— whether that evidence predates the settlement of the last Fannie Mae trade or not—is highly relevant to what a "reasonable PLS trader" would have considered material during that time or earlier. According to plaintiff, however, post-settlement evidence cannot "inform the mix of information a reasonable investor considered when the Representations were made." (Mot. at 3.) Notably, plaintiff

Hon. Denise L. Cote                                                                                                              -5-

recently made the opposite argument in its reply memorandum in support of its *Daubert* motion to exclude the testimony of Michael Forester. There, plaintiff argued that "'later occurring evidence' can be probative of historical fact," including materiality. (Reply Mem. in Support of Plaintiff's Motion to Exclude Expert Testimony and Opinions of Michael Forester, dated Jan. 16, 2015, at 3.) Indeed, one of the cases plaintiff quoted in that memorandum makes clear that "[s]imply stating that materiality and scienter are determined based on the facts at the time of the alleged misstatement does not mean that later occurring evidence is irrelevant." (*Id.* (quoting *Rmed Int'l, Inc.* v. *Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *2 (S.D.N.Y. Dec. 11, 2002).) As a matter of logic, post-settlement evidence can be highly relevant in assessing materiality.

Plaintiff's argument is also contrary to the "reasonable PLS trader" standard adopted by the Court. Freddie Mac and Fannie Mae were among the most active and sophisticated participants in the mortgage industry. (Ex. 24 (Lockhart Tr.) at 238:13-14; 270:11-14; 386:12-13.) The factors considered by, and important to, traders at those entities are directly relevant to the question of what a reasonable trader of residential mortgage-backed securities would consider material. There is no basis for a ruling that "reasonable PLS traders" by definition excludes the traders at Freddie Mac or Fannie Mae.

### III.   POST-SETTLEMENT EVIDENCE IS NOT RELEVANT TO FALSITY.

By this motion, plaintiff asks the Court to "exclude documents, testimony and argument that post-date the settlement of the last Certificate purchased by each GSE . . . ." (Mot. at 5.) That request necessarily includes all testimony from plaintiff's re-underwriting expert Robert Hunter based on information that was not available to an underwriter at the time the loans at-issue in this case were originated—which defendants have already moved to exclude. (Defendants' Motion to Exclude Testimony of Robert W. Hunter Concerning Information Not Available at Origination, dated Jan. 5, 2015.) Given plaintiff's position on the instant motion, all post-settlement evidence plaintiff seeks to offer through Hunter (or otherwise) with respect to falsity should be excluded.

### IV.   PLAINTIFF'S MOTION IS TOO BROAD TO RULE ON *IN LIMINE*.

Plaintiff's request is severely overbroad—it seeks to exclude *all* documents and testimony as of a certain date, without the benefit of the context in which those documents would be used at trial. This is simply "too sweeping in scope to be decided *in limine*." *National Union Fire Ins. Co.* v. *L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court should "reserve judgment on the evidence identified by plaintiff's motion until trial when admission of particular pieces of evidence is in an appropriate factual context."[3]  *Id.*

---

[3] Plaintiff also argues that post-settlement evidence should be excluded under Fed. R. Evid. 403, because such evidence would "confuse the jury." (Mot. at 5.) Given the Court's January 15, 2015 ruling that plaintiff's claims will be tried to the Court, not a jury, this argument is moot. *See* Order of Jan. 15, 2015 (Doc. No. 1095). In any event, a great deal of post-settlement evidence is highly relevant to the claims and defenses in this Action.

Hon. Denise L. Cote                                                                                                             -6-

                                              Respectfully submitted,

                                              /s/ David B. Tulchin

                                              David B. Tulchin

cc:     All Counsel

Case 1:11-cv-06201-DLC   Document 1386   Filed 03/08/15   Page 6 of 6