**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 9, 2015

By E-mail and ECF

The Honorable Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Court House,
         500 Pearl Street, Room 1610,
            New York, New York  10007-1312.

         Re:    *FHFA* v. *Nomura Holding America, Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

      Defendants respectfully submit this opposition to plaintiff's January 30, 2015 Motion *in Limine* No. 8 ("Mot." or "Motion"), which seeks to exclude what plaintiff calls "GSE pre-settlement documents and testimony."  (Mot. at 1.)  Despite this reference to "pre-settlement" evidence, much of the evidence listed in the appendices to the Motion pertains to, or is from, periods after the settlement dates of some of the Securitizations.[1]  Plaintiff's Motion is thus directed not at excluding true "pre-settlement" evidence (which would be evidence that predates December 2005, when the first of the seven Securitizations at issue settled), but at excluding evidence from or pertaining to the period before April 2007, when the last of the seven Securitizations settled, and deposition testimony about periods after that date.  Such evidence nearly always postdates some or all other deals.  There is no logic to this approach.  The Motion is one in a series of efforts by plaintiff to exclude from trial nearly all evidence about the purchases of the securities at issue and the context in which the purchases were made.  Plaintiff's radical position—that evidence as to the circumstances surrounding the seven Securitizations at issue is not admissible at trial—should be rejected.

---

[1]    *See*, *e.g.*, Mot. App'x A (seeking to exclude DX 263, 269, 271, 272, 275, 295 and other documents dated after some Securitizations Freddie Mac purchased); App'x B, at 176 (seeking to exclude testimony of Lin Cao, who joined Fannie Mae after its purchase of the security at issue).

**ARGUMENT**

I.   **THE EVIDENCE PLAINTIFF SEEKS TO EXCLUDE IS RELEVANT TO LOSS CAUSATION.**

Section 12(b) of the Securities Act provides that any portion of damages that "represents other than the depreciation in value of the subject security resulting from such part of the prospectus . . . with respect to which the liability of that person is asserted, not being true . . . shall not be recoverable."  15 U.S.C. § 77l(b).  Defendants are thus entitled to show that most or all of plaintiff's alleged losses are attributable to the decline in housing prices or other external factors.

Plaintiff argues that pre-settlement evidence is irrelevant to loss causation because "no 'depreciation in value' could occur before settlement." (Mot. at 2.)  There is, however, no support for the proposition that the buyer's recognition (even before the trades took place) of the factors that would potentially be the cause of any losses does not or cannot bear on the question of what actually caused the losses that were later incurred.  For example, Freddie Mac and Fannie Mae observed before purchasing many of the securities at issue that a decline in housing prices would cause poor loan performance.  As a May 16, 2006 presentation to the Asset, Liability & Funding Management Committee observed, "the relationship [between housing prices and loan performance] is obvious and dramatic" because "losses are strongly related to HPA [housing price appreciation] in a nonlinear way."  (Ex. 1 (DX 881B, "Aligning Market and Credit Risk Management:  The Goldbook") at FHFA06387268.)  Freddie Mac made the same observation in its 2006 Annual Report, which was prepared and filed after all but one of the Certificates Freddie Mac purchased had settled, stating:  "A general decline in U.S. housing prices or changes in the U.S. housing market could negatively impact our business and earnings. . . .  A continued reversal of this strong home price appreciation in any of the geographic markets we serve could result in an increase in delinquencies or defaults and a higher level of credit-related losses, which could reduce our earnings."  (Ex. 2 (DX 43, Freddie Mac Annual Report for the fiscal year 2006, dated March 23, 2007) at 14.)  This evidence of the correlation between macro events (*e.g.*, a decline in housing prices) and the performance of loans backing the securities is directly relevant to loss causation.  It does not matter whether housing prices had yet declined or whether Freddie Mac or Fannie Mae had yet purchased a particular Securitization—the fact of the correlation is highly relevant.

Plaintiff also puts forth the plainly incorrect argument that proof of loss causation "requires specialized and technical knowledge outside the province of lay GSE witnesses."  (Mot. at 2.)  There is no basis whatsoever for the argument that loss causation may be proven only through the testimony of experts.  Indeed, courts routinely consider both fact and expert testimony in assessing loss causation.  *Adair* v. *Kaye Kotts Associates, Inc.*, 1998 WL 142353, at *7 (S.D.N.Y. Mar. 27, 1998) (loss causation proven by both fact and expert testimony); *see also Akerman* v. *Oryx Communications, Inc.*, 609 F. Supp. 363, 370-72 (S.D.N.Y. 1984) (granting summary judgment to defendants on loss causation based on both fact and expert evidence), *aff'd*, 810 F.2d 336 (2d Cir. 1987); *In re Fortune Systems Sec. Litig.*, 680 F. Supp. 1360, 1365-68 (N.D. Cal. 1987) (same).

Hon. Denise L. Cote                                                                                                      -3-

Moreover, as explained in defendants' January 20, 2015 opposition to Plaintiff's Motion *in Limine* 6 ("MIL 6 Opp."), several Freddie Mac and Fannie Mae witnesses were in a position to have an informed view as to what caused plaintiff's alleged losses, including as to risks that existed before the Securitizations and that ultimately materialized (and caused plaintiff's alleged losses). (MIL 6 Opp. at 1-4; Declaration of Yavar Bathaee in Support of MIL 6 Opp., dated Jan. 20, 2015 ("Bathaee Decl.") ¶¶ 3-13.) For example, Fannie Mae's Eric Rosenblatt and CJ Zhao were responsible during 2006 and 2007 for analyzing the correlation between housing prices and the performance of mortgage loans and securities backed by such loans. (Ex. 3 (Rosenblatt Tr.) at 188:20-189:14; Ex. 4 (Zhao Tr.) at 179:24-180:21.) Mr. Rosenblatt was Vice President for Credit Risk Analytics and Modeling from 2006 to 2014; Ms. Zhao was a Director of Credit Analytics from 2006 through 2008. (Bathaee Decl. at ¶¶ 9-10.) Both were charged with making judgments about risks to Fannie Mae. Mr. Rosenblatt's testimony that the drop in housing prices was "incredibly significant[]" in causing losses to Fannie Mae's private label securities (Ex. 3 (Rosenblatt Tr.) at 187:18-188:8), and Ms. Zhao's testimony that declining home prices caused significant loan performance deterioration (Ex. 4 (Zhao Tr.) at 297:16-298:10, 319:18-320:6), are admissible, especially because both witnesses were testifying based on their own personal knowledge and information they obtained as part of their job responsibilities. These and other witnesses were entrusted by Freddie Mac and Fannie Mae with analyzing, observing and making judgments about what caused Freddie Mac's and Fannie Mae's losses—and their testimony is highly relevant. *See U.S.* v. *Rigas*, 490 F.3d 208, 222-24 (2d Cir. 2007) (government witness allowed to offer lay opinion about accounting records under Fed. R. Evid. 701 "based on his observation during his twenty months" as an employee at the company); *Folio Impressions, Inc.* v. *Byer California*, 937 F.2d 759, 764 (2d Cir. 1991) (fact witness allowed to testify under Fed. R. Evid. 602 where she "had significant [job] responsibilities" that gave her the experience necessary to offer a view about how a particular design was created); *McKenna* v. *Chilton Co.*, 1991 WL 18142, at *4 (S.D.N.Y. Feb. 6, 1991) (testimony in an age discrimination case by a former company executive about personnel practices admissible under Fed. R. Evid. 602).

II.   **THE EVIDENCE PLAINTIFF SEEKS TO EXCLUDE IS RELEVANT TO MATERIALITY AND FALSITY.**

Pre-settlement evidence is also highly relevant to both materiality and falsity. As the Second Circuit has held, "[m]ateriality is determined in light of the circumstances existing at the time the alleged misstatement occurred." *Ganino* v. *Citizens Utilities Co.*, 228 F.3d 154, 165 (2d Cir. 2000). Pre-settlement evidence—such as Freddie Mac and Fannie Mae policies, procedures, and counterparty reviews—can be probative of the "circumstances existing" at the time the Certificates were purchased.

The standard for materiality is "whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Halperin* v. *eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). Because materiality is a fact-specific inquiry, it "necessarily depends on all relevant circumstances of the particular case." *Ganino*, 228 F.3d at 162. "In other words, a particular misrepresentation or omission significant to a reasonable investor in one document or circumstance may not influence a reasonable investor in another."

*In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) (citing *I. Meyer Pincus & Assocs.* v. *Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991)).

The evidence plaintiff seeks to exclude provides important context to the materiality inquiry. For example, plaintiff's expert, John A. Kilpatrick, claims that certain appraisals that were the basis of loan-to-value ratios disclosed in the Offering Documents were incorrect because Kilpatrick's automated valuation model ("AVM") found an average variance of 8.92% between the appraisals and the outputs of Kilpatrick's AVM. (Ex. 5 (May 15, 2014 Expert Report of John Kilpatrick, Ph.D., Concerning Accuracy of Appraisals) at 63.) Freddie Mac's review of originators, however, shows that variances of less than 10% or even 15% between appraisals and AVM outputs were considered to be within an acceptable tolerance. (*See, e.g.*, Ex. 6 (DX 119, Freddie Mac AMO Review of Fremont, dated August 31, 2005) at FHFA00129495 (AVM "maximum variance" of 15%); Ex. 7 (DX 107, Freddie Mac AMO Review of ResMae, dated April 15, 2004) at FHFA12992189 (ResMae "accept[s] a variance of 10% between origination appraisal and review appraisal"); *see also, e.g.*, Ex. 8 (DX 128, Freddie Mac AMO Review of WMC Mortgage, dated January 24, 2007) at FHFA03485134 ("AMO obtained independent AVM's from CoreLogic on all the files selected for our review, and the results were favorable. The WMC appraisals had a mean value variance (appraisal versus AVM) of 11.26%. This is slightly better than the cumulative results we have seen from previous operational reviews where the average variance has been 13.73%."); Ex. 9 (DX 124, Fannie Mae Non-Traditional Counterparty Operational Review of Fremont, dated June 13, 2006) at FHFA01096598 (allowing 15% variance for LTVs less than 80%).)

Thus, (a) originators, (b) issuers of securities, (c) Freddie Mac's counterparty review personnel, and (d) the PLS traders who consulted Freddie Mac's AMO reviews all found AVMs that varied from appraisals by as much as 15% to be acceptable. This is strong evidence that an 8.92% variance was not or could not have been "material" to a reasonable investor reviewing an individual loan—let alone when a loan is included as part of a Securitization with subordination and credit enhancement features that protected purchasers of the top tranches, which is what Freddie Mac and Fannie Mae purchased in the seven at-issue Securitizations. It makes no difference that these AMO reviews pre-date the settlement of some of the trades—they show the circumstances and context at the time that the Certificates at issue were purchased, and thus bear directly on materiality. The same reasoning applies to pre-settlement evidence of Freddie Mac's and Fannie Mae's knowledge of originator practices, Freddie Mac's and Fannie Mae's understanding that underwriting guidelines were loosening, that subprime and Alt-A loans posed serious risks, and the factors Freddie Mac and Fannie Mae considered in making PLS investment decisions. All of this provides context for what a reasonable PLS investor would consider material.[2]

---

[2] Plaintiff argues that evidence about (a) Freddie Mac and Fannie Mae's selection of the loans in the Securitizations for housing goals purposes, (b) due diligence performed by Freddie Mac for its own PLS, and (c) automated underwriting systems are irrelevant because of the Court's prior "*in limine* rulings." Mot. at 5. Those rulings, however, were made prior to the Court's decision to dispense with a jury, and were based on the Court's view that the evidence in

(*footnote continued*)

This same evidence also bears on falsity. For example, the evidence above shows that originators, issuers of securities, and Freddie Mac accepted appraisals even when an AVM yielded a valuation that was 15% lower than the appraiser's valuation. This undermines the opinion of plaintiff's expert Kilpatrick that the outputs of his made-for-litigation AVM—which are on average only 8.92% higher than the original appraised values—prove that the appraisals are not "credible."

### III.  PLAINTIFF'S MOTION IS FAR TOO BROAD.

The relief plaintiff seeks in its current motion—exclusion of about 175 documents and hundreds of pages of deposition testimony—is indisputably overbroad. A motion to exclude all pre-settlement evidence, without considering how that evidence would be used at trial, is simply "too sweeping in scope to be decided *in limine*." *National Union Fire Ins. Co.* v. *L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Much of the evidence pertains directly to the important issues of materiality, falsity and loss causation. The Court should deny the motion outright, or at least reserve judgment on the evidence in question "until trial when admission of particular pieces of evidence is in an appropriate factual context." *Id*.

Respectfully submitted,

/s/ David B. Tulchin

David B. Tulchin

cc:  Counsel of Record via ECF

---

(*footnote continued*)

question could create juror confusion or would "burden [] the jury's time." *See*, *e.g.*, Order of Dec. 18, 2014, at 14 (Doc. No. 997). Defendants respectfully request that the Court reconsider those decisions in light of the fact that the case will now be tried to the Court. Defendants also respectfully disagree that the materiality standard applicable here should not be specific to Freddie Mac and Fannie Mae.