**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 9, 2015

By E-mail and ECF

The Honorable Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Court House,
         500 Pearl Street, Room 1610,
           New York, New York 10007-1312.

        Re:    *FHFA* v. *Nomura Holding America, Inc., et al.*, 11 Civ. 6201 (S.D.N.Y.)

Dear Judge Cote:

      Defendants respectfully submit this opposition to plaintiff's Motion *in Limine* No. 11 ("Mot." or "Motion"), which seeks to exclude "any documents, testimony, and argument related to the GSEs' public financial statements and accounting," in particular (i) Freddie Mac's and Fannie Mae's publicly filed financial statements, (ii) Freddie Mac's and Fannie Mae's earnings call transcripts, (iii) all other internal Freddie Mac and Fannie Mae documents relied upon by defendants' expert Dr. Stephen G. Ryan, and (iv) Dr. Ryan's exhibits to his report. (Mot. at 1.)[1] Plaintiff's Motion should be denied because the documents at issue bear directly on loss causation, materiality, and damages—central issues before the Court at trial.

## ARGUMENT

### I.   THE EVIDENCE PLAINTIFF SEEKS TO EXCLUDE IS RELEVANT.

**A.   Freddie Mac's and Fannie Mae's Financial Statements and Earnings Call Transcripts, and Related Internal Documents, Are Relevant to Loss Causation.**

      Plaintiff does not even attempt to argue that the documents it seeks to exclude are irrelevant to loss causation. (*See* Mot. at 2 (arguing only that the evidence is not relevant to falsity or

---

[1] One of the exhibits plaintiff seeks to exclude, DX-727 (DX-725 on defendants' amended list), is neither mentioned in plaintiff's motion nor relied upon by Dr. Ryan—and does not relate solely (or even primarily) to issues of accounting. *See* Ex. 1 (DX-725 FHFA16918341). Instead, it is a February 28, 2008 "Analysis of Freddie Mac's Asset-Backed Securities Portfolio" that describes the structure of Freddie Mac's PLS, the credit enhancement features of those securities, and the losses Freddie Mac expected to experience as of February 2008. *Id.* Because this document does not fit into any of the categories identified by plaintiff in its motion *in limine*, and is plainly relevant to loss causation and materiality, the Court should not consider precluding its admission on this motion.

materiality).)  A "court will 'exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds.'"  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (quoting *United States* v. *Ozsusamiar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)).

Defendants are entitled to prove that plaintiff's claimed losses are attributable to factors other than the alleged misrepresentations.  15 U.S.C. § 77l(b).  As this Court held less than two months ago, the loss causation defense recognizes that a security's loss in value "may be attributed" to factors other than the alleged misstatements "such as 'changed economic circumstances, changed investor expectations, [or] new industry-specific or firm-specific facts, [or] conditions.'"  *Fed. Hous. Fin. Agency* v. *Nomura Holding Am. Inc.*, 2014 WL 7232590, at *5 (S.D.N.Y. Dec. 18, 2014) (quoting *Acticon AG* v. *China N.E. Petro. Holdings Ltd.*, 692 F.3d 34, 40 (2d Cir. 2012)).  The documents plaintiff seeks to exclude—filings by Freddie Mac and Fannie Mae with the Securities and Exchange Commission ("SEC"), annual reports and earnings call transcripts, and related internal documents—contain important admissions by Freddie Mac and Fannie Mae about the causes of their losses.

Freddie Mac, for instance, reported in its 2010 and 2011 SEC Form 10-K filings that "home prices declined significantly, after extended periods during which home prices appreciated.  As a result, the fair value of [non-agency mortgage-backed securities] has declined significantly since 2007 and we have incurred substantial losses through other-than-temporary impairments."  (Ex. 2 (DX-72 Freddie Mac 2010 10-K) at 45; Ex. 3 (DX-81 Freddie Mac 2011 10-K) at 54.)  Fannie Mae's 2010 and 2011 SEC Form 10-K filings contain similar statements.  (Ex. 4 (DX-73 Fannie Mae 2010 10-K) at 55; Ex. 5 (DX-80 Fannie Mae 2011 10-K) at 61.)  These SEC filings and annual reports are highly relevant to loss causation and damages.  The earnings call transcripts also contain admissions regarding the causes of Freddie Mac's and Fannie Mae's losses.  For example, in the fourth quarter 2007 earnings call, Richard Syron, then CEO of Freddie Mac, told investors that "continuing adverse trends in house prices, mortgage credit and fixed income markets contributed to significant losses in the fourth quarter."  (Ex. 6 (DX-726 2007 Q4 Earnings Call) at 2.)  This is evidence of what caused Freddie Mac's losses.

Freddie Mac's and Fannie Mae's accounting documents are also relevant to loss causation.  For example, a July 7, 2009 memorandum from members of Freddie Mac's accounting division—including Jack Myers, a Vice President at Freddie Mac—states that Freddie Mac's non-credit losses "typically relate to market factors such as liquidity and uncertainty" and "will not impact the ultimate realizability of the future expected cash flows."  (Ex. 7 (DX-846 FHFA13242072) at FHFA13242076.)  A February 9, 2011 memorandum from the impairments team at Fannie Mae, states that the recording of further losses "was due to a decline in the home price forecast."  (Ex. 8 (DX-900 FHFA13012332) at FHFA13012334.)  Freddie Mac's and Fannie Mae's accounting policies (*see, e.g.*, Ex. 9 (DX-857 FHFA09589593) at FHFA09589594) describe their accounting decisions, which demonstrate that Freddie Mac and Fannie Mae attributed their losses to macroeconomic "market" factors and not any alleged misrepresentations in the offering documents.

    **B.**    **Freddie Mac's and Fannie Mae's Publicly-Filed Financial Statements and Earnings Call Transcripts Are Relevant to Materiality.**

In determining whether an alleged misstatement was material, the finder of fact considers "[w]hether the defendants' misrepresentations, taken together and in context, would have

misled a reasonable investor." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (internal citations omitted).  Materiality is a "fact-intensive inquiry . . . '[that] necessarily depends on all relevant circumstances of the particular case.'" *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012) (internal citations omitted).  This Court has ruled that materiality is "determined with reference to a reasonable 'PLS trader.'" *Fed. Hous. Fin. Agency* v. *Nomura Holding Am. Inc.*, 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014).

    The factors considered by, and important to, Freddie Mac and Fannie Mae—two of the most active and sophisticated participants in the mortgage industry during the relevant period (Ex. 10 (Lockhart Tr.) at 238:13-14; 270:11-14; 386:11-13.)—in their decisions to purchase PLS are important circumstantial evidence of what factors a reasonable trader of residential mortgage-backed securities considered important during the relevant period.  The financial statements challenged by plaintiff on this Motion disclose a number of factors Freddie Mac and Fannie Mae considered important, all of which (coming from two of the most important market participants) is circumstantial evidence of what mattered to investors in PLS.  (*See, e.g.*, Ex. 11 (DX-50 Freddie Mac 2007 Annual Report) at 13-22 (interest rate variability and house price declines); Ex. 12 (DX-45 Fannie Mae 2006 10-K) at 22-33 (interest rate variability and house price declines).)  This evidence bears on what a reasonable PLS trader considered important during the relevant time period.[2]

  **C.**  **There is No Basis for Excluding Freddie Mac's and Fannie Mae's Publicly-Filed Financial Statements and Earnings Call Transcripts Under Rule 403.**

    Plaintiff cursorily argues that the documents should be excluded by the Court pursuant to Rule 403 because the documents are irrelevant and thus there is a danger of undue delay and waste of time.  As explained above, these documents are clearly relevant to the issues remaining in this case.  Further, there is no basis for plaintiff's request for a broad ruling excluding more than 100 documents under Rule 403 prior to trial.  The cases relied on by plaintiff are inapposite.  In *United Brands Co.* v. *M.V. Isla Plasa*, 1994 WL 114825, at *1 n.2 (S.D.N.Y. Mar. 31, 1994), the court excluded exhibits presented to the court after the trial because "their late submission . . . would prejudice the defendants and burden the Court," and in *SEC* v. *Morelli*, 1993 WL 603275, at *2 (S.D.N.Y. Dec. 21, 1993), the court excluded character evidence because the circumstances had not

---

[2] The financial statements also explain Freddie Mac's and Fannie Mae's decisions to purchase PLS.  *See, e.g.*, Ex. 11 (DX-50 Freddie Mac 2007 Annual Report) at 56 (describing the decision to purchase PLS as supporting its affordable housing mission); Ex. 12 (DX-45 Fannie Mae 2006 10-K) at 16 (describing taking on deals with lower economic returns to meet increased housing goals and subgoals).  Such evidence is relevant to materiality.  On December 18, 2014, the Court excluded evidence concerning "the housing goals set for Fannie Mae and Freddie Mac by the United States Department of Housing and Urban Development" on the basis that the probative value of that evidence was outweighed by the danger of jury confusion.  Doc. No. 994.  Less than a month later (January 15, 2015), the Court allowed plaintiff to withdraw its Section 11 claims and held that the remaining claims would be tried before the Court, not a jury.  Doc. Nos. 1095, 1119.  For the reasons set forth in defendants' October 24, 2014 opposition to plaintiff's motion *in limine* on this issue, Doc. No. 932, defendants respectfully request that the Court reconsider its decision to exclude such evidence from trial in light of the fact that the claims will now not be tried to a jury.

yet arisen where it would be admissible.  Here, the documents are relevant to the issues remaining in this case and there is no basis for excluding them pursuant to Rule 403.[3]

## II.  ANY POTENTIAL EXCLUSION OF DR. RYAN'S TESTIMONY (WHICH SHOULD NOT OCCUR) WOULD NOT AFFECT THE ADMISSIBILITY OF EVIDENCE CITED IN HIS REPORT.

Plaintiff argues that because Dr. Ryan's testimony is purportedly inadmissible (which it is not) the documents on which he relied to form the opinions expressed in his July 9, 2014 report are also inadmissible.[4]  (Mot. at 1-2.)  This does not follow.  Even if Dr. Ryan's testimony were excluded (which, again, it should not be), that would not make relevant documents cited in his report inadmissible.  The two cases upon which plaintiff relies say no such thing.  Both deal with exclusion of the opinions and testimony of an expert, not the documents on which the expert relied.  *See Travelers Indem. Co.* v. *Northrop Grumman Corp.*, 2014 WL 464769, at *5-6 (S.D.N.Y. Jan. 28, 2014); *Arista Records LLC* v. *Lime Grp. LLC*, 2011 WL 11674796, at *18-19 (S.D.N.Y. May 2, 2011).  In fact, the Court in *Travelers Indemnity Co.* acknowledged that another witness could testify about the documents relied on by the expert whose testimony it excluded.  2014 WL 464769, at *5.

Dr. Ryan's report relies on Freddie Mac and Fannie Mae annual reports and SEC filings, as well as accounting work papers and policies, and internal memoranda concerning accounting.  As shown above, this evidence is relevant to loss causation and damages.[5]  The exhibits to Dr. Ryan's report are likewise relevant and admissible.  They are summary evidence of "voluminous writings"—accounting work papers—that "cannot be conveniently examined in Court."  Fed. R. Evid. 1006.  These exhibits show that Freddie Mac and Fannie Mae determined that at least $220 million of $401 million in total cumulative write downs on the Certificates, or 55% of the total decrease in fair value for the at-issue securities, was due to market factors, not attributes of the Certificates.  (Ex. 13 (Ryan Report) ¶ 98, Appendices A, C, Exs. 1, 2A-B, 3A-B, 4A-B (DX-943 through DX-952).)  Moreover, plaintiff has sought to exclude Dr. Ryan's testimony as "a series of irrelevant inferences drawn from public statements" that "a jury can understand without expert

---

[3]  To the extent plaintiff is arguing that any of the documents are "prejudicial" (Mot. at 2), such an argument has no force in the context of a bench trial.  *Schultz* v. *Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial.").  *See also United States* v. *Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) ("We traditionally assume that judges, unlike juries, are not prejudiced by impermissible factors.").

[4]  Plaintiff's *Daubert* motion concerning Dr. Ryan has no merit.  *See* Defendants' January 5, 2015 Memorandum in Opposition to Plaintiff's Motion to Exclude the Expert Testimony of Stephen G. Ryan (Doc. No. 1175.)  Dr. Ryan's opinions about Freddie Mac's and Fannie Mae's fair value accounting are reliable and highly relevant to the important issue of loss causation.  *Id.* at 7-14.

[5]  Defendants have never asserted that Dr. Ryan's opinions do not relate to loss causation; on the contrary, defendants expressly stated that Dr. Ryan's testimony will "explain what Freddie Mac's and Fannie Mae's public filings and security-specific internal work papers reveal about their own determinations of the causes of their alleged losses."  Defendants' January 5, 2015 Memorandum in Opposition to Plaintiff's Motion to Exclude the Expert Testimony of Stephen G. Ryan, at 4 (Doc. No. 1175).

assistance." Plaintiff's December 19, 2014 Memorandum in Support of Plaintiff's Motion to Exclude Expert Testimony of Stephen G. Ryan, at 2 (Doc. No. 1037).  If his testimony were excluded on that basis (which it should not be), summary evidence of Freddie Mac's and Fannie Mae's accounting statements would be more relevant, not less.

### III.     PLAINTIFF'S MOTION IS TOO BROAD TO RULE ON *IN LIMINE*.

Plaintiff's motion should be denied for the additional reason that its request is severely overbroad—it seeks to exclude more than 100 documents and any related testimony and argument, without the benefit of the context in which those documents would be used at trial.  Plaintiff itself recognizes that these documents are of a "voluminous size." (Mot. at 3.)  This is simply "too sweeping in scope to be decided *in limine*." *National Union Fire Ins. Co.* v. *L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).  If the Court does not deny the motion outright, as it should, it should "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 476.

Respectfully submitted,

/s/ David B. Tulchin

David B. Tulchin

cc:     All counsel of record (via e-mail)