UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY, AS
CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

    Plaintiff,

    -against-

NOMURA HOLDING AMERICA INC., *et al.*,

    Defendants.

No. 11-cv-6201 (DLC)

ECF Case

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO STRIKE CERTAIN TESTIMONY OF JAMES K. FINKEL**

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500
Facsimile: 202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000
Facsimile: 212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

February 27, 2015

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ...................................................................................................................3

    A.    The Complaint, Amended Complaint, and Initial Disclosures ..............................3

    B.    Plaintiff's Damages Expert Report and Deposition ...............................................4

    C.    Plaintiff's October 6, 2014 Statements ..................................................................6

    D.    Plaintiff's December 19, 2014 Statements .............................................................6

    E.    Plaintiff's February 20, 2015 Submissions ............................................................7

ARGUMENT ........................................................................................................................9

I.    MR. FINKEL'S NEW OPINIONS WERE NOT TIMELY DISCLOSED ........................9

    A.    Mr. Finkel's New Analysis and Opinions Were Not Disclosed in Accordance with Federal Rule of Civil Procedure 26(a) or the Expert Discovery Order ...................................................................................................9

II.    EVEN IF MR. FINKEL'S TESTIMONY WERE TIMELY, IT RESTS ON AN UNFOUNDED LEGAL THEORY ...................................................................................11

    A.    All "Income Received" Must Be Returned in Any Section 12 Recovery ............11

    B.    Plaintiff's Reading Is Contrary to the Rescissionary Purpose of Section 12 ........13

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chen* v. *New Trend Apparel, Inc.*,
    8 F. Supp. 3d 406 (S.D.N.Y.) ....................................................................................10

*Colon* v. *Diaz-Gonzalez*,
    2009 WL 3571974 (D.P.R. Oct. 26, 2009) ...........................................................12, 13

*FHFA* v. *Merrill Lynch & Co.*,
    903 F. Supp. 2d 274 (S.D.N.Y. 2012) .........................................................................1

*FHFA* v. *Nomura Holding America, Inc.*,
    2014 WL 7232590 (S.D.N.Y. Dec. 18, 2014) ....................................................1, 5, 13

*Goldkrantz* v. *Griffin*,
    1999 WL 191540 (S.D.N.Y. Apr. 6, 1999) ................................................................12

*Haas* v. *Delaware & Hudson Ry. Co.*,
    282 F. App'x 84 (2d Cir. 2008) .................................................................................10

*Randall* v. *Loftsgaarden*,
    478 U.S. 647 (1986) ..................................................................................................11

*Wigand* v. *Flo-Tek, Inc.*,
    609 F.2d 1028 (2d. Cir. 1979) .............................................................................11, 13

**Statutes and Rules**

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ...............................................2, 5

Section 12 of the Securities Act of 1933, 15 U.S.C. §77*l*(a)(2) .......................... *passim*

Fed. R. Civ. P. 26 ...........................................................................................................9, 10

Fed. R. Civ. P. 37 .....................................................................................................9, 10, 14

D.C. Code § 31-5606.05 ..................................................................................... *passim*

Va. Code Ann. § 13.1-522 ................................................................................. *passim*

# TABLE OF ABBREVIATIONS

| Action | *FHFA* v. *Nomura Holding America Inc., et al.*, No. 11 Civ. 6201 (DLC) |
|---|---|
| Nomura | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., and Nomura Securities International, Inc. |
| RBS | RBS Securities Inc. |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca |
| Securities | NAA 2005-AR6, NHELI 2006-FM1, NHELI 2006-FM2, NHELI 2006-HE3, NHELI 2007-1, NHELI 2007-2, and NHELI 2007-3 |
| Riddiough Report | November 7, 2014 Expert Report of Timothy J. Riddiough in this Action |
| Finkel Report | July 9, 2014 Expert Report of James K. Finkel in this Action |

Defendants submit this memorandum in support of their motion to strike certain testimony of plaintiff's expert James K. Finkel.

**PRELIMINARY STATEMENT**

Plaintiff filed this Action on September 2, 2011, regarding seven debt securities, and seeking recovery, *inter alia*, pursuant to Section 12 of the Securities Act of 1933, 15 U.S.C. §77*l* ("Section 12"), as well as the blue sky laws of the District of Columbia, D.C. Code § 31-5606.05 (the "D.C. blue sky law"), and Virginia, Va. Code Ann. § 13.1-522 (the "Virginia blue sky law" and collectively with the D.C. blue sky law, the "blue sky laws" or "blue sky"). Section 12(a)(2) provides a rescissionary remedy that permits a successful plaintiff "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security"—and less the portion of that recovery proven not to be caused by the alleged misstatements. 15 U.S.C. § 77*l*. The blue sky laws "adopt the Section 12(a)(2) measurement" of recovery. *FHFA* v. *Nomura Holding Am., Inc.*, 2014 WL 7232590, at *1 (S.D.N.Y. Dec. 18, 2014); *FHFA* v. *Merrill Lynch & Co.*, 903 F. Supp. 2d 274, 280 (S.D.N.Y. 2012) ("The Blue Sky statutes contain substantially identical provisions." (citing D.C.Code § 31–5606.05(b)(1)(A); VA Code Ann. § 13.1–522(A))). This Court has held that unlike Section 12, however, there is no loss causation defense to the blue sky laws. *FHFA* v. *HSBC N. Am. Holdings Inc.*, 988 F. Supp. 2d 363, 370 (S.D.N.Y. 2013).

Plaintiff hired James K. Finkel to provide his analysis and opinion as to the amount recoverable by plaintiff, should it successfully prove its claims. Mr. Finkel submitted an expert report in this Action on July 9, 2014 in which he calculated the recovery available to plaintiff based on the assumption that plaintiff will tender the Securities on the judgment date. (Ex. 1 (Finkel Report) ¶ 136 & footnotes 119, 120, 121, 123, 124, and 125.) Mr. Finkel stated in

his report that he had been "advised by Counsel that the [S]ecurities were not accepted by defendants when they were constructively tendered and thus rescission may not occur in this litigation until payment of any judgment." (Ex. 1 (Finkel Report) ¶ 136.) Further, he maintained that unlike damages under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, "for which damages are fixed as of the date of claim, post-claim principal payments are considered for purposes of Section 12 damages." (Ex. 1 (Finkel Report) ¶ 127.) Mr. Finkel did not provide any analysis or opinions that considered any date besides the judgment date as the date of rescission. Likewise, from the time it filed this Action on September 2, 2011 until the day it served Mr. Finkel's direct testimony, plaintiff never argued that recovery under Section 12 or the blue sky laws should be calculated as of the filing date, or any date other than the judgment date.

On February 20, 2015, plaintiff submitted Mr. Finkel's direct testimony ("Finkel Decl."), which included for the first time analysis and calculations of recovery as of a date other than the judgment date—September 2, 2011, the date plaintiff filed this Action.[1] (Finkel Decl. ¶ 5.) Mr. Finkel's calculations as of September 2, 2011 resulted in considerably higher recovery than the amounts recoverable when calculated as of January 31, 2015, the "judgment date" for the purposes of Mr. Finkel's testimony. (Finkel Decl. ¶¶ 5, 38-39.) The difference between Mr. Finkel's recovery amounts as of the filing date and judgment date were attributable to an incorrect legal theory that if the Securities were tendered on September 2, 2011 (which they were not), plaintiff would not have to return the $172,170,119.95 of "income received" in principal and interest payments it has received since the filing date.

---

[1] On February 20, 2015, plaintiff submitted to the Court and served on defendants, among other things, its Proposed Findings of Fact ("Pl.'s FOF"), Proposed Conclusions of Law ("Pl.'s COL"), and declarations constituting the direct testimony of its trial witnesses. Collectively, these documents are referred to herein as "plaintiff's February 20 submissions."

Mr. Finkel's testimony, analysis, and calculations of recovery as of any date other than the date of judgment should be stricken.

## BACKGROUND

**A.     The Complaint, Amended Complaint, and Initial Disclosures**

In its initial complaint (filed September 2, 2011) and its Amended Complaint (filed June 28, 2012), plaintiff demanded, among other relief, "[a]n award in favor of [p]laintiff against all [d]efendants . . . in an amount to be proven at trial, but including: [r]escission and recovery of the consideration paid for the [Securities], with interest thereon." (Doc. No. 1 (Complaint) at 75; Doc. No. 60 (Amended Complaint) at 72.) Plaintiff did not mention any reduction for income received, did not offer to tender the Securities to Nomura in either the Complaint or the Amended Complaint, and did not otherwise engage in any discussions with Nomura about the return of these Securities.

Over the course of 2012 and 2013, plaintiff continued to represent that it owned the Securities, and never argued that it had tendered—or attempted to tender—the Securities to Nomura. In fact, plaintiff made representations directly to the contrary. For example, in plaintiff's Third Amended Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), dated September 9, 2013 ("Pl.'s Initial Disclosures"), attached hereto as Exhibit 2, plaintiff "provided the following computations" with respect to its Section 12 and blue sky claims, for which it "seeks rescissory damages or rescission of its purchases" of the Securities: "[p]laintiff seeks equal to the difference between (a) the consideration paid for the [Securities], as described in the [Amended Complaint] (as reduced by any subsequent repayments of principal), plus prejudgment interest thereon, and (b) the cumulative income received thereon, all such interest amounts accruing <u>until the time [p]laintiff tenders those securities.</u>" (Ex. 2 (Pl.'s Initial

Disclosures) at 15 (emphasis added).) As recently as February 16, 2015, in granting plaintiff's motion to exclude in part expert testimony of defendants' expert Timothy J. Riddiough, this Court observed, "[i]n an RMBS,[2] investors' original investment is repaid in regular increments, not a lump sum at a fixed future date. Accordingly, each month, [Freddie Mac or Fannie Mae] was to be paid a return of principal and a coupon reflecting an interest payment." (2/16/2015 Opinion & Order, Doc. No. 1272, at 3.)

### B. Plaintiff's Damages Expert Report and Deposition

On July 9, 2014, plaintiff served Mr. Finkel's expert report in this Action. Mr. Finkel set forth his opinions concerning the "amounts owed" as of March 31, 2014, which was "the most recent quarter end date for which data [about the Securities] was available." (*See* Ex. 1 (Finkel Report) at ¶ 136 n.112.) Mr. Finkel's report for the first time in this Action mentioned "constructive tender," in passing, but nonetheless stated, "I have been advised by Counsel that the [S]ecurities were not accepted by defendants when they were constructively tendered, and thus rescission may not occur, in this litigation, until payment of any judgment." (Ex. 1 (Finkel Report) ¶ 136.) Consistent with this statement, for purposes of plaintiff's Section 12 and blue sky claims, Mr. Finkel calculated recovery as of the date of "payment of any judgment." (Ex. 1 (Finkel Report) ¶ 136.) In particular, Mr. Finkel explained that prejudgment interest would "need to be included through the date that judgment is satisfied (and similarly, principal and coupon payments through that date would act as an offset to [plaintiff]'s damages under Section 12)." (Ex. 1 (Finkel Report) ¶ 136.) Thus, Mr. Finkel recognized, "under this remedy, the buyer (plaintiff) must return the security along with <u>all</u> principal and interest received from the security." (Ex. 1 (Finkel Report) ¶ 125 (emphasis added).) Mr. Finkel never

---

[2] "RMBS" stands for residential mortgage-backed security.

once asserted that tender had occurred on September 2, 2011, nor did he perform any calculations reflecting that position.[3]

In short, Mr. Finkel calculated recovery under Section 12 and the blue sky laws[4] by (i) reducing the "consideration paid" by Freddie Mac and Fannie Mae for the Securities by the amount of principal returned to Freddie Mac and Fannie Mae through the "judgment date" (which he "treated as" March 31, 2014 for the purposes of his report), (ii) applying prejudgment interest to outstanding principal, each month, and (iii) subtracting the coupon payments received by Freddie Mac and Fannie Mae through the "judgment date." (Ex. 1 (Finkel Report) at ¶¶ 124-147.)

On November 25, 2014, defendants deposed Mr. Finkel in this Action. He stood by his report, and never once claimed that rescission had occurred on the date this lawsuit was filed. (Ex. 3 (Deposition of James K. Finkel, dated Nov. 25, 2014 ("Finkel Tr.")).)

---

[3] Mr. Finkel also served as plaintiff's damages expert in three of the other related actions brought by plaintiff in this Court: (1) on January 23, 2014, plaintiff served Mr. Finkel's expert report in *FHFA* v. *Merrill Lynch & Co., Inc., et al.*, Case No. 11-cv-6201 (S.D.N.Y.); (2) on March 27, 2014, plaintiff served Mr. Finkel's expert report in *FHFA* v. *Goldman Sachs & Co., et al.*, Case No. 11-cv-6198 (S.D.N.Y.); and (3) on April 23, 2014, plaintiff served Mr. Finkel's expert report in *FHFA* v. *HSBC North America, Inc., et al.*, Case No. 11 CV 6189 (S.D.N.Y.). In these reports, Mr. Finkel used the same methodology, calculating recovery as of the "judgment date," and never suggested that tender had occurred on September 2, 2011, nor did he perform any calculations of recovery as of that date.

[4] Section 12(a)(2) provides a rescissionary remedy permitting a successful plaintiff "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security", less the portion of that recovery proven not to be caused by the alleged misstatements. 15 U.S.C. § 77*l*. The blue sky laws "adopt the Section 12(a)(2) measurement" of recovery, *FHFA* v. *Nomura Holding Am., Inc.*, 2014 WL 7232590, at *1 (S.D.N.Y. Dec. 18, 2014), although this Court has held without a loss causation defense, *FHFA* v. *HSBC N. Am. Holdings Inc.*, 988 F. Supp. 2d 363, 370 (S.D.N.Y. 2013).

### C. Plaintiff's October 6, 2014 Statements

On October 6, 2014, before plaintiff withdrew its claims pursuant to Section 11 of the Securities Act of 1933, it filed a motion *in limine* ("Pl.'s MIL No. 1") seeking to prevent defendants from presenting evidence to the jury concerning principal and interest payments on the Securities received by Freddie Mac and Fannie Mae after the filing of this Action on September 2, 2011 ("post-claim payments"). (Pl.'s MIL No. 1 (Doc. No. 859) at 1.) In the first paragraph of that motion, plaintiff conceded that "evidence concerning 'Post-Claim Payments' is relevant to the calculation of [plaintiff]'s remedies under Section 12 and the Blue Sky laws." (Pl.'s MIL No. 1 at 1.) Plaintiff further argued that because "it is for this Court, not the jury, to decide the measure of a plaintiff's equitable relief under Section 12, evidence of principal and interest payments received by Freddie Mac and Fannie Mae after September 2, 2011 would be "relevant solely to the Court's determination as to the proper measure of [plaintiff]'s recovery under Section 12 and the Blue Sky provisions." (MIL No. 1 at 4.)

### D. Plaintiff's December 19, 2014 Statements

On December 19, 2014, just two months ago, plaintiff filed its Memorandum of Law in Support of Plaintiff's Motion to Exclude the Opinion and Testimony of Defendants' Expert Timothy J. Riddiough in this Action ("Pl.'s Dec. 19 Br."), in which it explained that Mr. Finkel's calculations, "assume, with respect to FHFA's Section 12 and Blue Sky claims, that [Freddie Mac and Fannie Mae] tender the [Securities] in respect of those claims." (*Id.* at p. 1 n.2 (citing Finkel Report ¶ 125).) Plaintiff did not mention "constructive tender" or claim that the date of rescission was the complaint date. To the contrary, it stated that "accrued interest (along with the rest of the consideration paid) must be returned to [plaintiff] <u>at the time of judgment</u>, together with prejudgment interest thereon, <u>less any income received on the Certificates</u>." (Pl.'s Dec. 19 Br. at 6 (emphasis added).)

-6-

### E. Plaintiff's February 20, 2015 Submissions

In its February 20 submissions, plaintiff asserts that Freddie Mac and Fannie Mae have owned and received principal and interest payments on the Securities continuously since plaintiff filed this Action on September 2, 2011. (Pl.'s FOF ¶¶ 89, 94, 99, 103, 107, 112, 115, 720; Declaration of Christ Li ("Li Decl."), dated Feb. 18, 2015 ¶¶ 5-6; Declaration of Kenneth Johansen ("Johansen Decl."), dated Feb. 20, 2015 ¶ 5.) Nevertheless, plaintiff's February 20 submissions, including Mr. Finkel's direct testimony, for the first time since this Action was filed, include two proposed rescission dates—September 2, 2011, the date on which plaintiff originally filed this Action, and January 31, 2015, which Mr. Finkel stated he would update to the "judgment date." (Pl.'s FOF ¶¶ 720-729; Pl.'s COL ¶¶ 149-153; Finkel Decl. ¶¶ 5, 38-39; PX 1505 – PX 1507.)

Mr. Finkel testified that "[a]t the direction of Counsel" he used September 2, 2011 "as the date of tender" for the purposes of his "calculations based on [plaintiff] having constructively tendered the [Securities] on the date [plaintiff] filed suit in this Action (*i.e.*, September 2, 2011)." (Finkel Decl. ¶ 5.) Mr. Finkel's new methodology calculates Section 12 and blue sky recovery by adding (i) "consideration paid" by Freddie Mac and Fannie Mae for the Securities and (ii) prejudgment interest on the consideration paid (reduced by principal returned to Freddie Mac and Fannie Mae as of each month) through September 2, 2011, and then (iii) reducing that amount by principal and interest payments received by Freddie Mac and Fannie Mae from the date of purchase but only through September 2, 2011. (Finkel Decl. ¶¶ 22, 30.) This approach ignores that Fannie Mae received $6,540,353.94 in principal payments and $3,056,676.13 in interest payments—and Freddie Mac received $154,033,342.66 in principal

payments and $8,539,747.22 in interest payments—since September 2, 2011. (*See* DX 2906 (Riddiough Aff. Ex. 8) at 2-8.) That $172,170,119.95 would simply be a windfall.[5]

Further, in its February 20, 2015 Conclusions of Law, for the first time since this Action was filed, plaintiff argues that because it demanded rescission in the complaint it filed on September 2, 2011 (Doc. No. 1 at 75), it constructively tendered the Securities to defendants as of that date, and, accordingly, for each Security, the "'consideration paid' is the purchase price less principal payments received as of September 2, 2011." (Pl.'s COL ¶ 152 (citing *Goldkrantz* v. *Griffin*, 1999 WL 191540, at *6 (S.D.N.Y. Apr. 6, 1999); *Colon* v. *Diaz-Gonzalez*, 2009 WL 3571974, at *4 (D.P.R. Oct. 26, 2009)).) Plaintiff also argued (for the first time) that under this approach, plaintiff's "recovery will not be reduced by the amount of principal payments received by [Freddie Mac and Fannie Mae] after the lawsuit date" because "these amounts are outside of the statutory formulae, which require determination of consideration paid as of the date of constructive tender, not the date of judgment." (Pl.'s COL ¶ 153.)

Using the methodology newly employed in Mr. Finkel's direct testimony, the recovery amounts are considerably greater in every instances. The following chart sets forth the increase in Mr. Finkel's recovery caused by changing his approach.[6] The increases differ by assumed pre-judgment interest rate and are as high as $160 million:

---

[5] Also at the "request of Counsel," Mr. Finkel provided "an alternative calculation" in which he "treats the [Securities] as being tendered on the date of judgment," which for the purposes of his declaration, he treated as January 31, 2015, but will "update as of the trial or actual judgment date in this Action." (Finkel Decl. ¶ 5.)

[6] Appendix A, attached hereto, shows a side-by-side comparison of Mr. Finkel's recovery amounts for each certificate, at each rate of prejudgment interest, and provides the same information as to Mr. Finkel's blue sky calculations.

| Increase in Section 12 Recovery Caused by Change in Finkel Methodology (by Prejudgment Interest Rate) | | | |
|---|---|---|---|
| | **IRS Penalty Rate** | **3% Rate** | **Coupon Rate** |
| **TOTAL:** | $50,725,528 | $99,303,365 | $160,573,700 |

## ARGUMENT

### I. MR. FINKEL'S NEW OPINIONS WERE NOT TIMELY DISCLOSED.

**A. Mr. Finkel's New Analysis and Opinions Were Not Disclosed in Accordance with Federal Rule of Civil Procedure 26(a) or the Expert Discovery Order.[7]**

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

> Rule 26(a)(1)(c) provides:
>
> a party must, without awaiting a discovery request, provide to other parties: . . . a <u>computation</u> of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Rule 26(a)(1)(c)(emphasis added). Rule 26(a)(2)(B) sets forth certain requirements with respect to expert witnesses. In pertinent part, it requires a party to disclose to the other parties a written report that contains "(i) a complete statement of all opinions the witness will express and the basis and reasons for them" and "(ii) the facts or data considered by the witness in forming them" in accordance with any schedule set by the Court. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Additionally, the Expert Discovery Order required plaintiff to serve its "non-reunderwriting

---

[7] The "Expert Discovery Order" refers to the June 16, 2014 Stipulation and Order Regarding Expert Discovery in this Action.

expert reports on any issues for which [it bore] the burden of proof," which included Mr. Finkel's expert report, by July 9, 2014. (12/19/14 Opinion & Order, Doc. No. 705, at 2.)

Permitting plaintiff to present Mr. Finkel's previously undisclosed testimony would be contrary to Rule 26. *First*, the "computation" of damages disclosed by plaintiff under Rule 26(a)(1)(c) stated that "the consideration paid" for the Securities would be "reduced by any subsequent payments of principal" and the "cumulative income received thereon." (Ex. 2 (Pl.'s Initial Disclosures) at 15.) *Second*, pursuant to the Expert Discovery Order, the deadline for disclosure of Mr. Finkel's expert opinions was July 9, 2014. (12/19/14 Opinion & Order, Doc. No. 705, at 2.) His February 20, 2015 disclosure of entirely new opinions and calculations was far too late.

The purpose of Rule 37 "is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Haas*, 282 F. App'x at 86 (citing *Ebewo* v. *Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). Because Mr. Finkel's new opinions do just that, they should be excluded. That is the appropriate remedy under Rule 37(c) "[u]nless non-compliance with Rule 26(a) is substantially justified or is harmless." *Chen* v. *New Trend Apparel, Inc*., 8 F. Supp. 3d 406, 434 (S.D.N.Y. 2014) (citations and internal quotation marks omitted).[8] Neither excuse applies here. Trial is two weeks away, and Mr. Finkel seeks to present a new damages theory on

---

[8] "In determining whether the district court acted within its discretion, this Court considers (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Haas* v. *Delaware & Hudson Ry. Co*., 282 F. App'x 84, 86 (2d Cir. 2008) (citing *Patterson* v. *Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)) (internal quotation marks omitted) (alteration in original).

which he was never deposed, and on which defendants' expert has offered no direct testimony. Permitting him to do so would severely prejudice defendants.

## II. EVEN IF MR. FINKEL'S TESTIMONY WERE TIMELY, IT RESTS ON AN UNFOUNDED LEGAL THEORY.

### A. All "Income Received" Must Be Returned in Any Section 12 Recovery.

The rescissionary remedy under Section 12 permits recovery of "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, less the portion of the recovery proven not to be caused by the alleged misstatements." 15 U.S.C. 77*l*. As the Second Circuit has explained, this "tender" requirement means that tender is a "condition to liability under Section 12(a)(2)." *Wigand* v. *Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d. Cir. 1979). The statute does not say at what point tender is required. *Id.* at 1034. The statute also does not say that the recovery available under Section 12 is determined as of the date of tender—and the Second Circuit has reached the opposite conclusion.

In *Commercial Union Assurance Co.* v. *Milken*, the Second Circuit considered a Section 12 claim by holders of partnership interests in Ivan Boesky's risk-arbitrage business. 17 F.3d 608, 610 (1994). The suit was filed in March 1987. As of that date, the plaintiffs had received no distributions. While the action was pending, however, the plaintiffs received distributions amounting to the full value of their investments plus a 14.1% return—"and they still own[ed] their partnership interests." *Id.* at 610-11. The Second Circuit calculated the plaintiffs' potential recovery as "a return of the consideration paid for the partnership interests plus prejudgment interest, less any income received on the interests" through the last date on which funds were distributed. *Id.* at 615. As the court explained, any recovery under Section 12 "must be offset by appellants' recovery of that amount from the distributions . . . ." *Id.* There was no

-11-

limitation to distributions made as of the date of the complaint (or any other purported tender). *See also Randall* v. *Loftsgaarden*, 478 U.S. 647, 660 (1986) (Section 12 recovery is offset to the extent "money or property is returned to the investor"). This Court likewise has held that Section 12(a)(2) and blue sky recovery is equal to "consideration paid for [a] security with interest thereon, less the amount of any income received thereon"—without any reference to the date on which plaintiff's complaint was filed. (Feb. 16. 2015 Order, Doc. No. 1271, at 3.)

The cases cited by plaintiff, which involve equity securities, are not to the contrary. (Pl.'s COL ¶¶ 152, 153, 161.) In *Goldkrantz* v. *Griffin*, the complaint alleged that misstatements in a registration statement had caused losses to shareholders during a one-year period. 1999 WL 191540, at *3 (S.D.N.Y. Apr. 6, 1999) (Cote, J.), *aff'd*, 201 F.3d 431 (2d Cir. 1999). Defendants moved for summary judgment on their loss causation defense under Section 12 based on undisputed evidence that the losses occurring during the relevant one-year period had been caused by factors other than the alleged misstatements. *Id.* at *6. "The relevant times for this analysis" were the periods between the alleged misstatement and the filing of the complaint. *Id*. The Court's statement that the "'amount recoverable' is the difference between the consideration [plaintiffs] originally paid for the shares and the value of the shares at the time of filing the complaint, minus any income received," *id.*, must be read in light of the analysis the Court had undertaken—an analysis of the loss causation defense as applied to the period between alleged misstatement and filing.

In any event, *Goldkrantz* is distinguishable because "[t]he parties ha[d] not provided any evidence of income received." *Goldkrantz*, 1999 WL 191540, at *6 n.3. Income received is a significant factor here, where Freddie Mac and Fannie Mae have received $1,416,981,427.55 of principal payments and $174,769,573.92 in interest payments,

$172,170,119.95 of which was received after September 2, 2011. (Li Decl. ¶¶ 5-6, Ex. B; Johansen Decl. ¶ 5, Ex. B.)

The second case on which plaintiff relies, *Colon* v. *Diaz-Gonzalez*, 2009 WL 3571974, at *4 (D.P.R. Oct. 26, 2009), is distinguishable from this Action as well. First, as of the date the court rendered its decision, the plaintiffs no longer owned the securities. The court therefore determined that "[t]he remedy of rescission is not viable at this time," but "insofar as [d]efendants' liability has been established, the [p]laintiffs are still entitled to damages." *Id.* at *3. Second, there is no indication that the securities at issue provided the plaintiff with the right to principal and interest payments over time, or that plaintiff actually received any income. The facts of *Colon* have nothing to do with this case.

### B. Plaintiff's Reading Is Contrary to the Rescissionary Purpose of Section 12.

As the *Wigand* court explained "[t]he meaning of rescission is an exchange meant to put the parties in a status quo." *Wigand*, 609 F.2d at 1035. The "income received" clause of Section 12(a) in particular "is clearly intended to insure that the plaintiff in a section 12(2) rescission case returns the dividends he has received on the stock he is tendering to his vendor." *Id.* at 1036. This Court has made the same points, holding that the rescission remedy under Section 12 and blue sky "seek[s] [to] place[] [the parties] in [the] status quo" and secure the "return of the parties to their pre-contract positions." *Fed. Hous. Fin. Agency* v. *Nomura Holding Am. Inc.*, 2014 WL 7232590, at *10 (S.D.N.Y. Dec. 18, 2014) (internal quotation marks and citations omitted) (alterations in original).

Since September 2, 2011, Freddie Mac and Fannie Mae have collected $160,573,696.60 of principal payments and $11,596,423.35 in interest payments. In order to effectuate "an exchange" that will "put the parties in a status quo" *Wigand*, 609 F.2d at 1035, plaintiff will have to give back the Securities and *all* "income received," including the

-13-

$160,573,696.60 in principal payments since September 2, 2011. (Li Decl. ¶¶ 5-6, Ex. B; Johansen Decl. ¶ 5, Ex. B.)

Thus, even if the Court decides that plaintiff's non-compliance with Rule 26(a) does not warrant striking Mr. Finkel's testimony, the Court should preclude Mr. Finkel from testifying about his new methodology and opinions because they are based on incorrect legal principles. The "conclusions drawn therefrom cannot 'help the trier of fact . . . to determine a fact in issue.'" (2/16/15 Opinion & Order, Doc. No. 1272, at 7 (citing Fed. R. Evid. 702).)

## CONCLUSION

The Court should strike certain testimony of James K. Finkel.

Dated: New York, New York
February 27, 2015

Respectfully submitted,

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502

*Attorneys for Defendant RBS Securities Inc.*

/s/ David B. Tulchin
David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000
Facsimile: 212-558-3588

Amanda F. Davidoff (davidoffa@sullcrom.com)
Elizabeth A. Cassady (cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Telephone: 202-956-7500
Facsimile: 202-956-6993

*Attorneys for Defendants Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca*