UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　-against-<br><br>NOMURA HOLDING AMERICA INC., *et al.*,<br><br>　　　　　　　Defendants. | No. 11-cv-6201 (DLC)<br><br>ECF Case |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO STRIKE CERTAIN TESTIMONY OF JAMES K. FINKEL**

Amanda F. Davidoff
(davidoffa@sullcrom.com)
Elizabeth A. Cassady
(cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC  20006
Telephone:  202-956-7500
Facsimile:  202-956-6993
*Attorneys for Nomura Defendants*

David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
*Attorneys for Nomura Defendants*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  212-455-2000
Facsimile:  212-455-2502
*Attorneys for Defendant RBS Securities Inc.*

March 6, 2015

## TABLE OF CONTENTS

    **Page**

ARGUMENT ..................................................................................................................................1

I.     THE JUDGMENT DATE IS THE DATE FOR CALCULATING RECOVERIES UNDER SECTION 12 AND THE BLUE SKY LAWS ........................................................1

    A.     A Claim for Rescission Is an "Offer to Tender," Not a Tender ...............................2

    B.     Even if Plaintiff Tendered the Securities on the Lawsuit Date, the Judgment Date Is the Date for Calculating Recoveries Under Section 12 and the Blue Sky Laws .................................................................................................2

II.     NEITHER MR. FINKEL NOR ANY OTHER EXPERT EVER TIMELY DISCLOSED THIS NEW THEORY ..................................................................................5

CONCLUSION ................................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Colon* v. *Diaz-Gonzalez*,
   2009 WL 3571974 (D.P.R. Oct. 26, 2009) ...........................................................................3

*Commercial Union Assur. Co.* v. *Milken*,
   17 F.3d 608 (2d Cir. 1994) .........................................................................................2, 3, 4

*FHFA* v. *Nomura Holding Am. Inc.*,
   2014 WL 7232590 (S.D.N.Y. Dec. 18, 2014) ....................................................................4, 5

*Goldkrantz* v. *Griffin*,
   1999 WL 191540 (S.D.N.Y. Apr. 6, 1999) ..............................................................................4

*In re APA Assessment Fee Litig.*,
   766 F.3d 39 (D.C. Cir. 2014) ...................................................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003) .....................................................................................2

*Kratz* v. *Countrywide Bank*,
   2009 WL 3063077 (C.D. Cal. Sept. 21, 2009) .........................................................................4

*McLaughlin* v. *Cohen*,
   686 F. Supp. 454 (S.D.N.Y. 1988) ...........................................................................................6

*Randall* v. *Loftsgaarden*,
   478 U.S. 647 (1986) ...........................................................................................................2, 3

*Wigand* v. *Flo-Tek, Inc.*,
   609 F.2d 1028 (2d Cir. 1979) ..................................................................................................2

**Statutes and Rule**

15 U.S.C. § 77*l* ..........................................................................................................................2

15 U.S.C. § 1601 ........................................................................................................................4

26 U.S.C. § 6622(a) ...................................................................................................................5

Fed. R. Civ. P. 26(a) ...........................................................................................................5, 6, 7

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ....................................................................................2

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Action | *FHFA* v. *Nomura Holding America Inc., et al.*, No. 11 Civ. 6201 (DLC) |
| Nomura | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., and Nomura Securities International, Inc. |
| RBS | RBS Securities Inc. |
| Defendants | Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., RBS Securities Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca |
| Securities | NAA 2005-AR6, NHELI 2006-FM1, NHELI 2006-FM2, NHELI 2006-HE3, NHELI 2007-1, NHELI 2007-2, and NHELI 2007-3 |
| Finkel Decl. | Direct Testimony of James K. Finkel in this Action, dated February 20, 2015 |
| Pl.'s COL | Plaintiff's Proposed Conclusions of Law (Corrected), dated February 20, 2015 |
| Defs.' Br. | Defendants' Memorandum in Support of Their Motion to Strike Certain Testimony of James K. Finkel, dated February 27, 2015 |
| Pl.'s Opp. | Plaintiff's Opposition to Defendants' Motion to Strike Certain Testimony of James K. Finkel, dated March 4, 2015 |
| Reply Ex. | Exhibit to the Reply Declaration of Hilary R. Huber in Support of Defendants' Motion to Strike Certain Testimony of James K. Finkel, dated March 6, 2015 |

Defendants submit this reply in support of their motion to strike the testimony of plaintiff's expert James K. Finkel.  Under Section 12(a)(2) of the Securities Act of 1933 ("Section 12"), a plaintiff must return "any income received," as well as the at-issue securities, in order to receive any recovery.  Mr. Finkel offers new opinions—never put forward before February 20, 2015—concerning Section 12 recovery that would allow plaintiff to retain more than $172 million in payments of principal and interest that it has received since the complaint in this Action was filed.  Those opinions are both wrong and untimely.

## ARGUMENT

### I. THE JUDGMENT DATE IS THE DATE FOR CALCULATING RECOVERIES UNDER SECTION 12 AND THE BLUE SKY LAWS.

On February 20, 2015—for the first time in this lengthy litigation—plaintiff propounded a new theory of recovery arguing that September 2, 2011 (the date on which this Action was filed) is the date as of which any Section 12 recovery must be calculated.  Under that theory, plaintiff is entitled to retain any "income received" during the last three and one-half years supposedly because these "amounts are outside of the statutory formulae, which require determination of consideration paid as of the date of constructive tender, not the date of judgment."  (Pl.'s Opp. 4-5; Pl.'s COL ¶ 153.)  There is no basis for this position.  Between the date on which the complaint was filed and the end of February 2015, plaintiff received more than $172 million in principal and interest payments (Reply Ex. 1 (Declaration of Qing Li, dated Mar. 4, 2015) ¶ 6; Reply Ex. 2 (Declaration of Kenneth Johansen, dated Feb. 20, 2015) ¶ 5), and all of that must be included in the calculation of any recovery under Section 12.  Mr. Finkel includes not a penny.

Plaintiff rests its assertion that recovery must be calculated as of the date of its complaint on the notion that it tendered the Securities on that date, and that recoveries under

Section 12 and the blue sky laws are calculated as of the date of tender. Both propositions are incorrect.

### A. A Claim for Rescission Is an "Offer to Tender," Not a Tender.

Plaintiff cites two authorities for the proposition that "a claim for rescission under Section 12 constitutes a tender of the security" (Pl.'s Opp. at 4), but neither supports that proposition. In *Wigand* v. *Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1979), the Second Circuit held that "a demand for rescission contains an implicit offer to tender." Similarly, in *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003) (Cote, J.), this Court explained that "[a] complaint's demand for rescission is construed as an implicit offer to tender." Under these authorities, a demand for rescission is an "implicit offer to tender"—not an actual tender. The two are different; an offer is "a statement that one is willing to do something for another person or to give that person something," Black's Law Dictionary (10th ed. 2014)—so that an offer to tender is a statement that one is willing to tender, not an actual tender.[1]

### B. Even if Plaintiff Tendered the Securities on the Lawsuit Date, the Judgment Date Is the Date for Calculating Recoveries Under Section 12 and the Blue Sky Laws.

Section 12 permits a successful plaintiff to recover (before accounting for loss causation) "the consideration paid for [a] security with interest thereon, less the amount of any

---

[1] Moreover, plaintiff's complaint in this Action did not make an effective tender because it did not demand the rescission provided for in Section 12. Instead, plaintiff demanded "[a]n award . . . in an amount to be proven at trial, but including [] Rescission and recovery of the consideration paid . . . with interest thereon." (Am. Compl. at ¶ 72.) Additionally, in its "Second Cause of Action" alleging violations of Section 12, plaintiff did not make a demand for rescission, but instead stated that Freddie and Fannie have "the right to rescind and recover the consideration paid for the GSE Certificates, with interest thereon." (Am. Compl. ¶ 169.) Plaintiff omitted any reference to the statutory credit to which defendants are entitled for payments of principal and interest received by Freddie Mac and Fannie Mae.

income received thereon, upon the tender of such security." 15 U.S.C. § 77*l*; *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 408 (S.D.N.Y. 2003) (citing *Commercial Union Assur. Co.* v. *Milken*, 17 F.3d 608, 615 (2d Cir. 1994); *Randall* v. *Loftsgaarden*, 478 U.S. 647, 655 (1986)). Plaintiff never addresses this plain statutory language, which requires the return of "any income received thereon." 15 U.S.C. § 77*l*. That language can only mean one thing: a plaintiff seeking to rescind the purchase of securities must return any income it received while the securities were in its possession.

Plaintiff's theory rests instead on the proposition that "[o]nce a security is tendered, the Supreme Court has held that defendants bear the burden of any decline in value after that time." (Pl.'s Opp. at 4 (citing *Randall*, 478 U.S. at 659).) This allocation of risk is inherent in rescission; to the extent there are any losses on securities after date of tender, it will be defendants who bear the burden of that decline in value when the securities are returned. *Randall*, 478 U.S. at 659. Who bears that burden, however, has nothing to do with a plaintiff keeping income that it has received on the security over time. Thus, contrary to plaintiff's assertion, it is not necessary, in order to ensure that defendants shoulder the risk of a post-tender decline in value, to find that "Section 12 in effect freezes its rescissory remedy as of the tender date." (Pl.'s Opp. at 5.) That rule is not stated in the text of Section 12 or in any case of which defendants are aware.

Plaintiff cites *Colon* v. *Diaz-Gonzalez*, 2009 WL 3571974, at *3 (D.P.R. Oct. 26, 2009), but that decision merely illustrates the standard rule that a Section 12 defendant bears "the risk of an intervening decline in the value of the security." *Randall*, 478 U.S. at 659. The court in *Colon* held that a decline in value of the plaintiffs' investment after the lawsuit was filed would not be deducted from rescissory damages awarded to plaintiff, because "a defendant is

responsible for any decline in the value of the security after plaintiff tenders the same, whether or not that decline was actually caused by the fraud." 2009 WL 3571974, at *4 (citing *Randall*, 478 U.S. at 659). The court had no occasion to decide whether principal and interest payments made to the plaintiff after the securities were tendered had to be returned, because there were no such payments.

The authorities make clear, however, that the return of such payments is required. (*See* Defs.' Br. at 11-13.) That was the holding in *Commercial Union Assurance Co.* v. *Milken*, where the Second Circuit affirmed dismissal of the plaintiffs' Section 12 claim because the distributions they received after the complaint was filed fully compensated them. 17 F.3d 608, 610-11 (1994). Plaintiff asserts that the Second Circuit's decision can be disregarded, because the "issue of when to assess the date of tender was not presented to the court." (Pl.'s Opp. at 5.) In fact, both the complaint and the amended complaint in *Milken* demanded rescission under Section 12 (Reply Ex. 3 (*Milken* Complaint) ¶¶ 155, 159; Reply Ex. 4 (*Milken* Amended Complaint) ¶¶ 259, 264), which plaintiff asserts constitutes tender. (Pl.'s Opp. at 4.) If the law were that such a "tender" freezes the calculation of Section 12 recoveries—so that a plaintiff may keep any subsequent payment without crediting those payments against the calculation of the recovery—the post-tender income received by the plaintiffs in *Milken* would not have been deducted from their recovery. 17 F.3d at 615. But that is precisely what happened; as the Second Circuit explained, any recovery under Section 12 "must be offset by appellants' recovery of that amount from the distributions . . . ." *Milken*, 17 F.3d at 615; *see also Goldkrantz* v. *Griffin*, 1999 WL 191540, at *6 n.3 (S.D.N.Y. Apr. 6, 1999), *aff'd*, 201 F.3d 431 (2d Cir. 1999) (any income received "would reduce the amount of plaintiff's damages."). Similarly, courts considering rescissory remedies under other statutes, such as the Truth in Lending Act, 15 U.S.C.

§§ 1601, *et seq.*, have held that "rescission is not effective unless and until the Court determines the right to rescind in Plaintiffs' favor." *Kratz* v. *Countrywide Bank*, 2009 WL 3063077, at *7 (C.D. Cal. Sept. 21, 2009).

Plaintiff's position is also contrary to the purpose of rescission.  As this Court has explained, "[i]nherent in the remedy of rescission is the return of the parties to their pre-contract positions.  As a result, a party seeking rescission must restore the other party to that party's position at the time the contract was made." *FHFA* v. *Nomura Holding Am. Inc.*, 2014 WL 7232590 (S.D.N.Y. Dec. 18, 2014) (citing *In re APA Assessment Fee Litig.*, 766 F.3d 39, 56 (D.C. Cir. 2014)).  The only way to accomplish the "return of the parties to their pre-contract positions" is to offset plaintiff's recovery by the principal and interest payments received by Freddie Mac and Fannie Mae from the date of purchase to the date of judgment. *See id.*  That includes the more than $172 million in principal and interest payments that plaintiff has received since the complaint was filed.  (Reply Ex. 1 (Declaration of Qing Li, dated Mar. 4, 2015) ¶ 6; Reply Ex. 2 (Declaration of Kenneth Johansen, dated Feb. 20, 2015) ¶ 5.)

## II. NEITHER MR. FINKEL NOR ANY OTHER EXPERT EVER TIMELY DISCLOSED THIS NEW THEORY.

The first time Mr. Finkel ever disclosed his new theory of damages was February 20, 2015, the date his trial testimony was submitted.[2]  Prior to that, plaintiff had represented that, should it prevail on its Section 12 and blue sky claims, the computation of the "rescissory damages or rescission of its purchases" would be made as of "<u>the time of judgment</u>." (*See* Defs.' Br. at 3-5  (emphasis added) (citing statements of plaintiff and Mr. Finkel).)  Finkel's failure to

---

[2] Mr. Finkel's testimony was submitted via declaration, dated February 20, 2015 ("Finkel Decl."). The Court's Individual Practices, Section 5(C)(i), required an affidavit.

-5-

disclose this new theory in his report or at deposition is a clear violation of Federal Rule of Civil Procedure 26(a)(1).

Plaintiff argues that "Mr. Finkel used the same methodology in his trial testimony as he did in his report," and the "date to which those calculations run alters the outcome only arithmetically." (Pl.'s Opp. at 7.) The "arithmetic" is the whole shooting match for an expert on damages. The differences in Finkel's "arithmetic" increase significantly the recovery under Section 12 and the blue sky laws; depending on the assumed pre-judgment interest rate, Finkel's new method increases Section 12 recoveries by $50,725,528 to $160,573,700. (Defs.' Br. at 8-9.)[3]

Plaintiff also argues that the fact that Mr. Finkel "d[id] not opine on" this new method for calculating Section 12 damages is of no consequence because Mr. Finkel "nowhere stated that the particular tender date he used in the report formed part of his expert opinion," and "stated that the date was provided by counsel." (Pl.'s Opp. at 2.) In other words, plaintiff argues that an expert is permitted to "do-over" his work any time counsel asks the expert to use a different assumption. This is not the law. Rule 26 requires an expert to provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2). Mr. Finkel opines on the Section 12 recovery that should be awarded at trial, and the "basis and reasons for" that opinion include the date as of which the recovery is

---

[3] Plaintiff also argues for the first time in its opposition brief that the Court could apply interest "with daily compounding" based on 26 U.S.C. § 6622(a). (Pl.'s Opp. at 14.) This, again, is totally new; even Finkel's direct testimony, served February 20, 2015, states that he applies prejudgment interest "without compounding." (Reply Ex. 5 (Finkel Direct) ¶¶ 21, 30.) Moreover, "section 6622 applies expressly only to internal revenue tax cases and post-judgment interest allowed on money judgments in civil cases in a district court." *McLaughlin* v. *Cohen*, 686 F. Supp. 454, 458 (S.D.N.Y. 1988) (citation omitted) (emphasis added). Simple pre-judgment interest is the only type of interest that can apply here—and is the only method of calculating interest identified in Finkel's report and direct testimony.

calculated. If the lawsuit date is the correct date (which it is not), Mr. Finkel neither provided his opinions nor the basis and reasons for them until February 20, 2015—seven months after the July 9, 2014 deadline. (12/19/14 Opinion & Order, Doc. 705 (the "Discovery Order").) In other words, if plaintiff is correct on the law, it offered *no* timely, admissible expert testimony on the issue of recovery, and cannot offer any such testimony at trial.

In an effort to show that defendants were aware of Mr. Finkel's new methodology prior to his February 20 testimony, plaintiff refers to a March 19, 2014 expert report submitted in "a fourth coordinated action," *FHFA* v. *Ally Financial Inc., et al.*, Case No. 11-cv-7010 (S.D.N.Y.), in which Mr. Finkel calculated "Section 12 recoveries at the lawsuit date." (Pl.'s Opp. at 2.) Mr. Finkel's use of his alternative method in the *Ally* case makes clear that the two methods are different—but has no bearing on whether plaintiff complied with Rule 26(a) and the Discovery Order in this Action. It did not.[4]

Mr. Finkel did not timely disclose his new method, and plaintiff now asserts that the method he actually disclosed was incorrect. Mr. Finkel's testimony should be stricken in its entirety.

---

[4] Plaintiff's assertion that Mr. Finkel may change his opinions because he stated in his report that he would update his Section 12 recovery calculations to the date of judgment (Pl.'s Opp. at 7) is disingenuous. It was not possible, when Mr. Finkel submitted his expert report in July 2014, for him to calculate Section 12 damages as of a future date, the date of judgment. In contrast, he easily could have calculated damages as of the lawsuit date.

## CONCLUSION

The Court should strike the testimony of James K. Finkel.

Dated:  New York, New York
        March 6, 2015

Respectfully submitted,

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
Craig S. Waldman (cwaldman@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
Telephone:  212-455-2000
Facsimile:  212-455-2502

*Attorneys for Defendant RBS Securities Inc.*

/s/ David B. Tulchin
David B. Tulchin (tulchind@sullcrom.com)
Steven L. Holley (holleys@sullcrom.com)
Bruce E. Clark (clarkb@sullcrom.com)
Bradley A. Harsch (harschb@sullcrom.com)
Katherine J. Stoller (stollerk@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588

Amanda F. Davidoff (davidoffa@sullcrom.com)
Elizabeth A. Cassady (cassadye@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC  20006
Telephone:  202-956-7500
Facsimile:  202-956-6993

*Attorneys for Defendants Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca*