UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

            Plaintiff,

          -against-

NOMURA HOLDING AMERICA, INC.;
NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA HOME EQUITY
LOAN, INC.; NOMURA CREDIT &
CAPITAL, INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; RBS SECURITIES
INC. (f/k/a GREENWICH CAPITAL
MARKETS, INC.); DAVID FINDLAY; JOHN
MCCARTHY; JOHN P. GRAHAM; NATHAN
GORIN; and DANTE LAROCCA,

            Defendants.

11 Civ. 6201 (DLC)

---

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
### TO STRIKE CERTAIN TESTIMONY OF JAMES K. FINKEL

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Philippe Z. Selendy
Richard I. Werder, Jr.
Jonathan B. Oblak
Sascha N. Rand
Manisha M. Sheth
Jordan A. Goldstein
Andrew R. Dunlap
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Richard A. Schirtzer
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Jon Corey
777 6th Street NW, 11th Floor
Washington, D.C. 20001

*Attorneys for Plaintiff Federal Housing Finance Agency, as Conservator for Fannie Mae and Freddie Mac*

## TABLE OF CONTENTS

        **Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................1

I.     FHFA'S REMEDIES SHOULD BE CALCULATED "UPON THE TENDER" OF THE CERTIFICATES, AND THE CERTIFICATES WERE TENDERED AS OF THE LAWSUIT DATE ...................................................................................3

     A.     To "Tender" A Security Is To Offer It For Repurchase .........................................3

     B.     FHFA's Recoveries Under Section 12 And The Blue Sky Statutes Are Calculated As Of The Lawsuit Date ........................................................................4

II.    MR. FINKEL'S DIRECT TESTIMONY IS TIMELY .........................................................6

CONCLUSION...................................................................................................................................8

# TABLE OF AUTHORITIES

**Page**

### Cases

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*,
 866 F. Supp. 2d 257 (S.D.N.Y. 2012)..................................................................................6

*Colon v. Dian-Gonzales*,
 2009 WL 3571974 (D.P.R. Oct. 26, 2009) ...................................................................3, 4, 5

*Commercial Union Assurance Co. v. Milken*,
 17 F.3d 608 (2d Cir. 1994)....................................................................................................5

*Goldkrantz v. Griffin*,
 1999 WL 191540 (S.D.N.Y. Apr. 6, 1999)...........................................................................4

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
 753 F.3d 395 (2d Cir. 2014)..................................................................................................4

*Patterson v. Balsamico*,
 440 F.3d 104 (2d Cir. 2006)..................................................................................................7

*Randall v. Loftsgaarden*,
 478 U.S. 647 (1986)..........................................................................................................4, 5

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991)................................................................................................6

*United States v. Jacques Dessange, Inc.*,
 2000 WL 294849 (S.D.N.Y. Mar. 21, 2000) ........................................................................6

*Wigand v. Flo-Tek, Inc.*,
 609 F.2d 1028 (2d Cir. 1979)............................................................................................4, 5

*In re WorldCom, Inc.*,
 723 F.3d 346 (2d Cir. 2013)..................................................................................................3

*In re WorldCom, Inc. Sec. Litig.*,
 294 F. Supp. 2d 392 (S.D.N.Y. 2003)...................................................................................4

### Statutes

15 U.S.C. § 77*l*(a) ...........................................................................................................................1, 3

26 U.S.C. § 6622(a) ..........................................................................................................................6

D.C. Code § 31-5606.05(a)(1) ..........................................................................................................1

D.C. Code § 31-5606.05(b)(1)(A) ....................................................................................................3

D.C. Code § 31-5606.05(d)..................................................................................................4

Va. Code § 13.1-522(A).................................................................................................1, 3

Va. Code § 13.1-522(E) ......................................................................................................4

## **Miscellaneous**

Black's Law Dictionary (3d ed. 1933)................................................................................ 3

Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"), respectfully submits this Opposition to Defendants' Motion to Strike Certain Testimony of James K. Finkel ("Defs. Mem.").[1]

## PRELIMINARY STATEMENT

Defendants have no valid rebuttal to the long-settled precedent that the date of tender for FHFA's statutory recoveries under Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(a)(2) and the Blue Sky laws of the District of Columbia and Virginia, D.C. Code § 31-5606.05(a)(1); Va. Code § 13.1-522(A), is anything other than the lawsuit date, in this case September 2, 2011.  Instead, Defendants try to fabricate a dispute involving the calculations by FHFA's damages expert, James K. Finkel, based on that date.  However, because the date of tender is a purely legal issue, and not one upon which an expert should opine, Mr. Finkel did not do so.  Rather, in his proffered trial testimony, Mr. Finkel used the methodology disclosed in his expert report, based on a tender date provided by counsel.  There is therefore no prejudice to Defendants, and their motion to strike Mr. Finkel's testimony is meritless.

## BACKGROUND

Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(a)(2), and the Blue Sky laws of the District of Columbia and Virginia, D.C. Code § 31-5606.05(a)(1); Va. Code § 13.1-522(A), all provide that a prevailing plaintiff that owns a security is entitled to recession upon "tender" of that security.  Mr. Finkel will testify regarding FHFA's statutory remedies, including an analysis of those remedies based upon a tender date of September 2, 2011—the date that FHFA filed its Complaint in this Action demanding rescission of the seven at-issue certificates (the "Certificates").

---

[1] References to "Exhibit" or "Ex." are to the Exhibits to the accompanying Declaration of Jordan A. Goldstein.

Mr. Finkel articulated his methodology for calculating FHFA's Section 12 and Blue Sky recoveries in his expert report of July 9, 2014 (the "Finkel Report") (Ex. 1). He did not opine on the legal definition of the word "tender" in the relevant statutes, but instead used a hypothetical security to illustrate the calculation of FHFA's rescissory recoveries utilizing a tender date of January 25, 2008. Finkel Report ¶¶ 132-35. Mr. Finkel calculated the recoveries of the seven Certificates as of March 31, 2014, which was the most recent quarter-end date for which Mr. Finkel had data at the time he prepared his report. *Id.* ¶ 19. Mr. Finkel nowhere stated that the particular tender date he used in the report formed part of his expert opinion.

In the affidavit of his proposed trial testimony offered on February 20, 2015 (the "Finkel Affidavit") (Ex. 2), Mr. Finkel employs the same methodology for calculating FHFA's statutory recoveries under Section 12 and the Blue Sky statutes that he did in the Finkel Report. *Compare* Finkel Report ¶¶ 127-34, *with* Finkel Aff. ¶¶ 19-22. Mr. Finkel calculates those recoveries as of two alternative tender dates—the lawsuit date (September 2, 2011), and the judgment date (taken as January 31, 2015, the most recent date for which Mr. Finkel had data). Finkel Aff. ¶ 5. Once again, Mr. Finkel does not opine as to which tender date is proper, and makes clear that he used these two potential tender dates at the direction of counsel. *Id.*

As Defendants note, Mr. Finkel has provided prior expert reports in three other coordinated FHFA actions in which he calculated FHFA's remedies as of a hypothetical date of judgment. *See* Defs. Mem. 5 n.3 (citing Mr. Finkel's prior expert reports in *FHFA v. Merrill Lynch*, *FHFA v. Goldman Sachs*, and *FHFA v. HSBC*). As Defendants fail to note, Mr. Finkel also submitted an expert report in a fourth coordinated action, *FHFA v. Ally Financial* (the "*Ally* Report") (Ex. 3), in which he calculated FHFA's Section 12 recoveries as of the lawsuit date.[2]

---

[2] *See, e.g.*, *Ally* Report ¶ 136 ("I have included Section 12 calculations that contemplate both a tender date of September 2, 2011 and the occurrence of rescission at judgment."); *id.* ¶ 145 n.117 & Figure 30 (calculating Section 12 damages as of both the lawsuit date and the date of judgment, and stating that "Section 12 damages are shown under two scenarios: (i) the Subject Securities were effectively tendered to the Defendants on the date of claim (September 2, 2011) and (ii) rescission did not occur on that date, but rather upon judgment (in this case, through December 31, 2013)."); *id.* ¶ 145 n.118 & Figure 31 (same); *id.* ¶ 145 n.119 & Figure 32 (same).

2

The *Ally* Report was served on the defendants in that action, including on Defendant RBS Securities Inc. ("RBSSI"), which was represented by RBSSI's present counsel in this Action, on March 19, 2014 (*see* Ex. 4), over seven months before Defendants' damages expert, Dr. Timothy Riddiough, submitted a report in this Action.

## ARGUMENT

**I.     FHFA'S REMEDIES SHOULD BE CALCULATED "UPON THE TENDER" OF THE CERTIFICATES, AND THE CERTIFICATES WERE TENDERED AS OF THE LAWSUIT DATE**

### A.     To "Tender" A Security Is To Offer It For Repurchase

Section 12 provides that a plaintiff may "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, *upon the tender* of such security." 15 U.S.C. § 77*l*(a) (emphasis added). The Blue Sky statutes provide for comparable relief, except that the prejudgment interest rate is fixed at 6 percent and costs and reasonable attorneys' fees must be awarded. D.C. Code § 31-5606.05(b)(1)(A); Va. Code § 13.1-522(A).

Both historical and present usage of the word "tender" confirm that the date of tender under Section 12 and the Blue Sky statutes is *not* the date of judgment, but rather is the date that a plaintiff makes an offer for the defendant to repurchase the security. For example, the 1933 edition of Black's Law Dictionary states that the word "tender" means "[a]n *offer* of money" and "the act by which one produces and *offers* to a person holding a claim or demand against him the amount of money which he considers and admits to be due." Black's Law Dictionary 1714 (3d ed. 1933) (emphases added) (Ex. 5); *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 410 n.6 (2d Cir. 2014) (using contemporaneous dictionary to shed light on meaning of statutory text); *In re WorldCom, Inc.*, 723 F.3d 346, 354 (2d Cir. 2013) (same).

Consistent with this understanding, courts applying the 1933 Act have interpreted the word "tender" to refer to the *offer* by a plaintiff of securities in satisfaction of a Section 12 claim, rather than the actual transfer of such securities at the time of judgment. For example, in *Colon*

3

*v. Dian-Gonzales*, 2009 WL 3571974 (D.P.R. Oct. 26, 2009), the court repeatedly used the word tender to reference an *offer* to repurchase a security, rather than the completion of that repurchase. *See, e.g.*, *id.* at *3 ("[T]his Court notes that at the date of the filing of the complaint, [Plaintiffs] owned the security in question, had tendered the same to Defendants, and sought rescission accordingly."); *id.* at *4 ("Most importantly, prior to filing this suit, Plaintiffs tendered the security to Defendants first in May 2004, and then again in December 2004, and Defendants refused to accept the same.").

Courts in this Circuit have repeatedly held that a claim for rescission under Section 12 constitutes a tender of the security. *See, e.g.*, *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1979) ("a demand for rescission [in a complaint] contains an implicit offer to tender, sufficient to satisfy [Section 12]"); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003) (Cote, J.) ("A complaint's demand for rescission is construed as an implicit offer to tender."). And the Blue Sky statutes specifically provide that the date of tender is *not* the date of judgment, as those statutes expressly state that a tender may be made *prior to* judgment. *See* D.C. Code § 31-5606.05(d) ("A tender specified in this section may be made *at any time before* entry of judgment.") (emphasis added); Va. Code § 13.1-522(E) (same).

Because FHFA demanded rescission in respect of its Section 12 and Blue Sky claims in the *Nomura* Complaint, *see, e.g.*, Dkt. 1 ¶ 167; Dkt. 60 ¶ 169, FHFA tendered the Certificates, for purposes of Section 12 and its Blue Sky claims, on September 2, 2011.

### B. FHFA's Recoveries Under Section 12 And The Blue Sky Statutes Are Calculated As Of The Lawsuit Date

Once a security is tendered, the Supreme Court has held that defendants bear the burden of any decline in value after that time. *See Randall v. Loftsgaarden*, 478 U.S. 647, 659 (1986). Both this Court, in *Goldkrantz v. Griffin*, 1999 WL 191540 (S.D.N.Y. Apr. 6, 1999) (Cote, J.), and the *Colon* court explained that any Section 12(b) loss causation adjustment runs, if at all, only through the date of tender, and that—consistent with *Randall*—defendants bear the burden of any post-tender decline in the value of the security. *See, e.g.*, *Colon*, 2009 WL 3571974, at *4

4

("Most importantly, prior to filing this suit, Plaintiffs tendered the security to Defendants first in May 2004, and then again in December 2004, and Defendants refused to accept the same.  As a result, Defendants cannot argue that Plaintiffs' actions after the tendering of the security is the proximate cause of Plaintiffs' losses.  Pursuant to *Randall*, any decline in value [after tender] is attributable to Defendants."); *see also Randall*, 478 U.S. at 659 ("Indeed, by enabling the victims of prospectus fraud to demand rescission upon tender of the security, Congress shifted the risk of an intervening decline in the value of the security to defendants, whether or not that decline was actually caused by the fraud.  Thus, rescission adds an additional measure of deterrence as compared to a purely compensatory measure of damages.") (citation omitted).

As *Randall* and *Colon* make clear, the rescissory remedy under Section 12 is not "purely compensatory"—it is intended to make *defendants* bear the risk of any change in value after the lawsuit/tender date.  Just as Section 11 transfers the risk of a post-lawsuit decline in value from a plaintiff security holder to the defendant issuer or underwriter, so too does Section 12 when tender is made upon filing a Section 12 claim (as *Wigand* instructs it is).  *See, e.g.*, *Randall*, 478 U.S. at 659; *see also Colon*, 2009 WL 3571974, at *4 (holding that the PSLRA did not disturb *Randall*'s holding on this point).  Thus, Section 12 in effect freezes its rescissory remedy as of the tender date where a plaintiff retains the security.  For a plaintiff who continues to hold a security and has both Section 11 and 12 claims, its remedy is therefore either damages as of the lawsuit date (under Section 11) or rescission with the amount received fixed as of the lawsuit/tender date (under Section 12).

The central authority upon which Defendants rely, *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608 (2d Cir. 1994), is not to the contrary, as the issue of when to assess the date of tender was not presented to the court.  Rather, the Second Circuit held that the plaintiffs could not recover under Section 12 in the absence of actual damages, as they had already received a full recovery from a liquidation trustee set up to compensate the victims of the defendants' fraud, and "[a]llowing [plaintiffs] to maintain a cause of action under such circumstances would constitute a waste of judicial resources."  *Id.* at 609-11, 615.  Here, by contrast, there is no

5

dispute that, whatever the tender date, FHFA has significant claims against Defendants. Accordingly, fixing the date of tender as the lawsuit date is fully consistent with the approach this Court, and the Supreme Court, have approved for calculating Section 12 recoveries.[3]

## II.     MR. FINKEL'S DIRECT TESTIMONY IS TIMELY

Unable to rebut the clear law showing that remedies should be calculated upon the date FHFA demanded rescission, Defendants devote over 10 of their 14 pages of briefing to arguing that FHFA did not timely disclose Mr. Finkel's calculation of remedies.  *See* Defs. Mem. 1–11. These arguments are meritless.  To start with, the determination of the date of tender under Section 12 and the Blue Sky laws is a question of statutory construction, and the interpretation of a statute is not a proper subject of expert testimony.  *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); *accord United States v. Jacques Dessange, Inc.*, 2000 WL 294849, at *1 (S.D.N.Y. Mar. 21, 2000) (Cote, J.).  Defendants offer no authority supporting their apparent position that a party might waive a legal argument if its expert does not opine on it.  *Cf. BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 273-74 (S.D.N.Y. 2012) (party may amend a pleading to add an entirely new legal theory during trial, or even after it).

In any event, Mr. Finkel used the same methodology in his trial testimony as he did in his report, and Defendants fully deposed him on it.  The date to which those calculations run alters

---

[3]  Defendants incorrectly claim that, "[u]sing the methodology newly employed in Mr. Finkel's direct testimony, the recovery amounts are considerably greater in every instances [sic]." Defs. Mem. 8.  In fact, Defendants' own Appendix A demonstrates that the lawsuit date tender results in *lower* recoveries for the NHELI 2006-FM2 certificate when either the IRS underpayment rate or the mandatory 6 percent Blue Sky prejudgment interest rate is used.

Moreover, were this Court to apply the IRS underpayment rate with *daily compounding*, as Congress specified in 26 U.S.C. § 6622(a) ("In computing the amount of any interest required to be paid under this title … such interest and such amount shall be compounded daily."), FHFA's recovery across the seven Certificates would be maximized with a *judgment date* tender, rather than a lawsuit date tender.  Thus, contrary to Defendants' claim, FHFA's *highest recovery* in this Action would be realized if the Court were to apply the IRS underpayment rate for large corporate underpayments with daily compounding to FHFA's Section 12 claims (and 6 percent interest to the Blue Sky claims), while treating the *judgment date* as the date of tender.

6

the outcome only arithmetically, and Mr. Finkel stated that the date was provided by counsel. It is therefore unclear what additional questions Defendants' counsel could have asked Mr. Finkel had he used the same calculation dates in his report as in his trial testimony.

Moreover, Mr. Finkel plainly stated in his report that he would update the tender date that he used in that report in his testimony at trial, hence Defendants cannot be heard to complain now that he has done just that. This is especially true as RBSSI's counsel received a report from Mr. Finkel on March 19, 2014, in the coordinated *Ally* action in which Mr. Finkel calculated FHFA's Section 12 remedies as of the lawsuit date. (Ex. 4) Defendants' motion to strike therefore fails, as they have shown no "prejudice" resulting from Mr. Finkel's trial testimony. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

Finally, Defendants' claim of prejudice is especially surprising given that their own damages expert's trial testimony contains innovations not found in his report. In his February 20, 2015, direct testimony, Dr. Riddiough for the first time uses Bloomberg and IDC prices as a basis for assessing the "current market value" of the Certificates, Riddiough Aff. ¶ 65 (Ex. 6); DX 2906 (Ex. 7), while he assessed that value using the Andrew Davidson & Co. ("AD&Co.") computer model in Exhibits 18A-18C & 19 of his November 7, 2014, report (the "Riddiough Report") (Ex. 8).[4] It is inconsistent, to say the very least, for Defendants to advance a substantive change by Dr. Riddiough, of which FHFA received no notice, while seeking to strike a non-substantive one by Dr. Finkel, of which Defendants received full notice.

In sum, Defendants' motion to strike fails, as they have shown no "prejudice" resulting from Mr. Finkel's trial testimony. *Patterson*, 440 F.3d at 117.

---

[4] *Compare* Riddiough Back-up to 11/7/2014 Report, "NOMURA_results.xlsx" (Ex. 9), *with* Riddiough Back-up to 11/7/2014 Report, "Exhibits 18A-C Exhibit 19.xlsx, Tab Actual_3" (Ex. 10) (demonstrating that Dr. Riddiough in the Riddiough Report "nets out" of his rescissory calculations the "current market values" of the Certificates as generated by the AD&Co. computer model).

**CONCLUSION**

For the reasons stated above, FHFA respectfully requests that Defendants' Motion to Strike be denied, and that Mr. Finkel be permitted to testify at trial to both a lawsuit and a judgment date of tender in respect of FHFA's Section 12 and Blue Sky claims.

DATED:　New York, New York
　　　　　March 4, 2015　　　　　　　　　　QUINN EMANUEL URQUHART &
　　　　　　　　　　　　　　　　　　　　　　　SULLIVAN, LLP


By: /s/ Philippe Z. Selendy

　　Philippe Z. Selendy
　　Richard I. Werder, Jr.
　　Jonathan B. Oblak
　　Sascha N. Rand
　　Manisha M. Sheth
　　Jordan A. Goldstein
　　Andrew R. Dunlap
　　51 Madison Avenue, 22nd Floor
　　New York, New York 10010

　　Richard A. Schirtzer
　　865 South Figueroa Street, 10th Floor
　　Los Angeles, California 90017

　　Jon Corey
　　777 6th Street NW, 11th Floor
　　Washington, D.C. 20001

　　*Attorneys for Plaintiff Federal Housing Finance Agency, as Consdervator for Fannie Mae and Freddie Mac*

8