UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE
AGENCY, AS CONSERVATOR FOR THE
FEDERAL NATIONAL MORTGAGE
ASSOCIATION AND THE FEDERAL
HOME LOAN MORTGAGE
CORPORATION,

          Plaintiff,

v.

NOMURA HOLDING AMERICA, INC.;
NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA HOME
EQUITY LOAN, INC.; NOMURA
CREDIT & CAPITAL, INC.; NOMURA
SECURITIES INTERNATIONAL, INC.;
RBS SECURITIES INC. (f/k/a
GREENWICH CAPITAL
MARKETS, INC.); DAVID FINDLAY;
JOHN MCCARTHY; JOHN P. GRAHAM;
NATHAN GORIN; and DANTE
LAROCCA,

          Defendants.

11 Civ. 6201 (DLC)

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO EXCLUDE THE
<u>TESTIMONY OF DEFENDANTS' EXPERT JOHN J. RICHARD</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     THE RULES OF EVIDENCE APPLY TO THE UPCOMING TRIAL ................................2

II.    MR. RICHARD IS NOT QUALIFIED TO RENDER THE PROFFERED
       OPINIONS .................................................................................................................3

III.   DEFENDANTS DO NOT OFFER A SINGLE FACT IN SUPPORT OF
       MR. RICHARD'S OPINIONS ON OTHER INVESTORS' CREDIT ANALYSIS .............5

IV.    MR. RICHARD'S OPINIONS WILL NOT HELP THE TRIER OF FACT DECIDE
       WHETHER DEFENDANTS' MISREPRESENTATIONS WERE MATERIAL .................6

       A.     Defendants' Argument That the GSEs Are a Proxy for the Reasonable
              Investor Is Neither Credible Nor Based on the Correct Legal Standard......................6

       B.     Mr. Richard's Opinion That PLS Pre-Purchase Considerations Were
              Entirely Investor- and Securitization-Specific Will Not Help the Trier of
              Fact .........................................................................................................................8

V.     MR. RICHARD'S CRITICISMS OF FHFA EXPERTS RUBINSTEIN, BLUM,
       AND SCHWERT ARE BASED ON THE WRONG LEGAL STANDARD AND
       ARE NOT PROPER EXPERT REBUTTAL ..................................................................10

CONCLUSION ..............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Med. Sys. v. Laser Peripherals, LLC*,
   712 F. Supp. 2d 885 (D. Minn. 2010) ................................................................................... 7

*In re Brittania Bulk Holdings Sec. Litig.*,
   665 F. Supp. 2d 404 (S.D.N.Y. 2009) .................................................................................... 9

*Commerce Funding Corp. v. Comp. Hab'n Servs., Inc.*,
   2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ......................................................................... 2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 6

*FHFA v. Nomura Holding Am., Inc.*,
   2014 WL 7229361 (S.D.N.Y. Dec. 18, 2014) ................................................................. 7,10

*FHFA v. Nomura Holding Am., Inc.*,
   2015 WL 353929 (S.D.N.Y. Jan. 28, 2015) ................................................................ *passim.*

*FHFA v. Nomura Holding Am., Inc.*,
   2015 WL 394072 (S.D.N.Y. Jan. 29, 2015) ........................................................................ 10

*FHFA v. UBS Ams., Inc.*,
   585 F. Supp. 2d 306 (S.D.N.Y. 2012) ................................................................................. 10

*FHFA v. UBS Ams. Inc.*,
   2013 WL 3284118 (S.D.N.Y. June 28, 2013) .................................................................. 7, 8

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) .............................................................................................. 7

*In re ICN/Viratek Sec. Litig.*,
   1996 WL 34448146 (S.D.N.Y. July 15, 1996) ..................................................................... 9

*InTouch Techs., Inc. v. VGO Comm'ns, Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014) ............................................................................................ 7

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) ................................................................................................. 5

*Olin Corporation v. Certain Underwriters of Lloyd's London*,
   468 F.3d 120 (2d Cir. 2006) ............................................................................................... 10

*SEC v. Pasternak*,
   2008 WL 2281627 (D.N.J. May 29, 2008) ........................................................................... 4

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ................................................................................... 4

*United States v. American Express Company*,
  2014 WL 2879811 (E.D.N.Y. June 24, 2014) .............................................................................5

*United States v. Jacques*,
  784 F. Supp. 2d 59 (D. Mass. 2011) .........................................................................................6

*United States v. Lumpkin*,
  93 F.3d 280 (2d Cir. 1999)......................................................................................................10

## **Statutes**

Fed. R. Evid. 402 ............................................................................................................................6

Fed. R. Evid. 403 ............................................................................................................................2

Fed. R. Evid. 702 ............................................................................................................................3

Fed. R. Evid. 1101 ..........................................................................................................................2

## **Other Authorities**

Karl E. Case, Robert J. Shiller, & Allan N. Weiss, *Mortgage Default Risk
  and Real Estate Prices: The Use of Index-Based Futures and Options in
  Real Estate* (May 1995) .............................................................................................................3

Christopher Mayer, et al., *The Rise in Mortgage Defaults*, 23 J. Econ.
  Perspectives (Winter 2009)........................................................................................................3

The State of the Nation's Housing:  2007, Joint Center for Housing Studies of
  Harvard University (2007).........................................................................................................3

**PRELIMINARY STATEMENT**

Defendants fall well short of carrying their burden of proving that their proffered materiality expert, John J. Richard, is qualified to offer either general PLS investor or GSE-specific opinions. They fail to show that the opinions are supported by adequate data or are the result of reliable methods, or that the opinions would assist the trier of fact. Indeed, Defendants simply do not address most of the deficiencies FHFA identified, including:

- Mr. Richard's admitted ignorance about "what [other PLS investors]were doing" for their PLS purchase procedures;
- His admitted refusal to gather facts to support his general PLS opinions and his related admission that he saw no "need[] to go embark on a factfinding mission in terms of who was specifically doing what in 2007 or 2005";
- His lack of substantive information to support either his expertise or opinions from casual conversations at trade shows and unspecified job interviews;
- His "method" of extrapolating to all PLS investors from his singular experience at State Street between 2005 and 2007;
- His failure to validate his memory of State Street's PLS analysis process or to confirm that it was not completely subjective;
- His failure to connect his memory of State Street's PLS analysis process to that of any other investor through documentation of any kind, including from Nomura or RBS;
- His implausible suggestion that no reasonable investor exists, because each PLS investor subjectively considered a range of criteria for each purchase that varied from investor to investor and from deal to deal;
- His admitted ignorance of the accurate representations or misrepresentations of each Certificate's collateral characteristics;
- His admitted failure to consider the impact of FHFA's expert findings about the accuracy of the representations on the total mix of information available to a reasonable investor;
- His lack of qualifications to opine on the GSEs' PLS purchase considerations, which opinion constitutes most of his report;
- His near-exclusive reliance on irrelevant post-settlement GSE documents and testimony, particularly from Fannie Mae, to inform his opinions their respective PLS purchase considerations; and
- His lack of qualifications or knowledge sufficient to permit him to opine on PLS market expansion or PLS investor sophistication over time.

Any number of these deficiencies would warrant wholesale exclusion of Mr. Richard's opinions. FHFA respectfully submits that, taken together, they compel that result.

Independently, having lost their argument about GSE-specific proof of materiality, Defendants abandon Mr. Richard's opinion that the GSEs were "unique" among PLS investors.

Proving the GSEs were unique was the crux of Defendants' argument for a GSE-specific materiality standard.  In a complete about-face, Defendants now claim Mr. Richard's GSE-specific opinions are relevant to prove materiality because the GSEs are not unique at all, but so indistinguishable from other PLS investors that the Court should consider them a proxy for all "reasonable investors."  Setting aside the transparent change of position, that is not Mr. Richard's opinion.  *See* Ex. 1 ¶¶ 18, 143-150.[1]

Defendants ask the Court to accept Mr. Richard's opinions regarding "the pre-acquisition practices of investors in the market for private-label RMBS from 2005 to 2007."  Defs.' Br. 14.  They pay lip service to the law and the Court's rulings that materiality must be proven objectively, not relative to a specific plaintiff or to investors in the GSEs' unique position.  The Court should recognize that the only *facts* supporting Mr. Richard's opinions, general or GSE-specific, are from Freddie Mac and Fannie Mae documents and testimony (in contrast to the vague and unverified memories of his time at State Street).  Opinions with only GSE-specific underpinnings are not, by definition, opinions about "reasonable investors," the "market," or directed to objective materiality.  FHFA respectfully requests that the Court grant the Motion and exclude Mr. Richard's opinions in their entirety.

## ARGUMENT
### I.     THE RULES OF EVIDENCE APPLY TO THE UPCOMING TRIAL

Defendants rely heavily on the contention that a "relaxed *Daubert* standard" governs the admission of expert testimony in a bench trial.  Defs.' Br. 1; *see id.* 12, 16.  The Federal Rules of Evidence contain no exception for bench trials.  They apply to all "civil cases and proceedings" before "United States district courts."  Fed. R. Evid. 1101(a)-(b).  The Court maintains its "gatekeeper" role in determining whether expert testimony becomes part of the trial record. *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *3 (S.D.N.Y. Jan. 28, 2015); *see also*

---

[1] In this reply memorandum, FHFA's exhibit references refer to the exhibits submitted with its opening brief.  *See* Decl. of Zachary Williams in Supp. of Pl.'s Mot. to Exclude Testimony of Defs.' Expert John J. Richard, Dkt. No. 1042.

2

*Commerce Funding Corp. v. Comp. Hab'n Servs., Inc.*, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) ("[T]he Rules of Evidence apply with equal force in jury and non-jury trials.").

## II.   MR. RICHARD IS NOT QUALIFIED TO RENDER THE PROFFERED OPINIONS

Defendants bear the burden of proving Mr. Richard is qualified to testify regarding PLS purchase practices followed by reasonable PLS investors or the "market" between 2005 and 2007. Fed. R. Evid. 702.  Defendants recite Mr. Richard's resume, but make no credible attempt to connect his narrow experience as an investment advisor from 2005 to 2007 pursuing a client-directed liquidity strategy in accounts where PLS never exceeded $3 billion in total assets, to his sweeping opinions regarding the investment and risk evaluation practices of pension funds, municipalities, hedge funds, foreign entities, investment banks, and asset managers, each with diverse risk appetites (purchasing bonds rated from AAA to unrated) and investment strategies (holding, active trading, liquidity, re-purposing into CDOs).  *See* Ex. 1 ¶ 23; Pl.'s Br. 11-12 (describing market participants and investment strategies).  Defendants do not justify how Mr. Richard's pre-2005 experience (which was not PLS-specific, *see* Def.'s Br. 9) could qualify him to opine on what he characterized as a rapidly changing market with increasing specialization, much less market-wide PLS purchase practices.  Ex. 1 ¶¶ 21-63.  Defendants claim his "participation in trade conferences. . . provided him with a breadth and depth of knowledge regarding the pre-acquisition practices of RMBS investors."  Defs.' Br. 9.  That assertion cannot be squared with Mr. Richard's complete lack of recollection of any substantive conversation regarding other PLS investors' pre-acquisition practices at any trade conference and his admitted ignorance about other PLS investors' pre-acquisition practices.  *See* Ex. 3 at 251:3-260:7, 322:25-325:16.  In short, Mr. Richard is not qualified to offer these opinions.

Defendants claim Mr. Richard's report-specific research qualifies him to render these opinions.  *See* Defs.' Br. 11.  Three of the four publications Defendants claim he "researched" have nothing to do with PLS investor pre-purchase analysis procedures between 2005 and 2007.[2]

---

[2]   Joint Center for Housing Studies of Harvard University, *The State of the Nation's Housing: 2007* (2007), *available at* http://www.jchs.harvard.edu/sites/jchs.harvard.edu/files/son2007.pdf (surveying the United States

3

The fourth, *The Handbook of Mortgage-Backed Securities*, addresses pre-purchase analysis.  As FHFA explained in its opening memorandum, however, this publication not only contradicts Richard's testimony, but it confirms his admitted ignorance of other PLS investors' credit risk analyses.  *See* Pl.'s Br. 18-19.

*SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), is instructive.  In *Tourre*, the court excluded the testimony of an experienced finance expert witness who opined on the materiality of disclosures associated with a collateralized debt obligation ("CDO") offering, because the expert lacked qualifications in the "very specific type of security" on which he sought to opine.  *Id.* at 677-78.  Similarly, in *SEC v. Pasternak*, 2008 WL 2281627 (D.N.J. May 29, 2008), the court excluded an expert with "forty-plus years in the securit[ies] industry" designated to "explain industry standards and customs" in the trading of "high-volume, highly-volatile stocks," because the expert lacked "particular expertise, knowledge, or experience in the nature and type of trading that [was] the focal point" of the SEC's charges.  *Id.* at *2-3.

Defendants' comparison of Mr. Richard's experience to FHFA experts Leonard Blum and Peter Rubinstein highlights Mr. Richard's lack of qualifying experience.  *See* Defs.' Br. 11-12.  Mr. Rubinstein, who opines on the role of loan-level data in the ratings agencies' projection of loss severities and foreclosure frequencies, taught courses on residential mortgage securitization, served as Chief Mortgage Economist at Moody's, managed the residential mortgage securitization platform at Chase Securities, and oversaw non-agency mortgage research at Donaldson, Lufkin & Jenrette, PaineWebber Inc., Prudential Securities, and Morningstar Credit Ratings, LLC.  Ex. 5 ¶¶ 8-17.  Mr. Blum, who opines on how PLS are issued and underwritten and the impact of

---

housing market as of 2007, including, *inter alia*, home price trends, the relationship between immigration and housing availability, and the rate of home ownership); Christopher Mayer, et al., *The Rise in Mortgage Defaults*, 23 J. Econ. Perspectives (Winter 2009), *available at* http://pubs.aeaweb.org/doi/pdfplus/10.1257/jep.23.1.27 (surveying possible causes of decreasing home price appreciation through 2008); Karl E. Case, et al., *Mortgage Default Risk and Real Estate Prices: The Use of Index-Based Futures and Options in Real Estate* (May 1995) (Discussion Paper, Cowles Foundation for Research in Economics, Yale University), *available at* http://cowles.econ.yale.edu/P/cd/d10b/d1098.pdf (arguing that the value of a mortgage loan portfolio correlates with changes in home prices).  Even if Mr. Richard did consult research on PLS, that does no more than make him, at best, "simply an intelligent man, well read in the area, . . . who holds an opinion on the topic" of PLS purchasers' pre-purchase credit analyses.  *United States v. Jacques*, 784 F. Supp. 2d 59, 61-62 (D. Mass. 2011).

inaccurate collateral representations or defective origination on PLS issuance and underwriting, has been involved in over 100 offerings of RMBS. Ex. 6 ¶ 2. Unlike the experience of Mssrs. Rubinstein and Blum, Mr. Richard's experience is too narrow and deficient to permit reliable opinions about the broad subject area on which he seeks to testify.[3]

### III. DEFENDANTS DO NOT OFFER A SINGLE FACT IN SUPPORT OF MR. RICHARD'S OPINIONS ON OTHER INVESTORS' CREDIT ANALYSIS

An expert's testimony must be "based on sufficient facts or data." *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *4 (quoting Fed. R. Evid. 702). Defendants do not identify one fact to support Mr. Richard's unreliable extrapolation of his own foggy memory of his time at State Street to any other PLS investor between 2005 and 2007. Defendants make no attempt to show that State Street's subjective, securitization-by-securitization credit analysis was prevalent at the time. Defendants made no effort to identify a single document, snippet of testimony, report, peer-reviewed article, or non-peer-reviewed contemporaneous article on best practices to corroborate Mr. Richard's memory of his time at State Street and to show that its practices, in any respect, reflected those of other PLS investors. Nor could they after Mr. Richard admitted, with respect to other PLS investors, "I don't know specifically what they were doing," Ex. 3 at 240:4-5; *see also id.* at 58:7-8 ("I don't know specifically how [the ratings agencies] ran their models."), and after he testified he had no "need[] to go embark on a factfinding mission in terms of who was specifically doing what in 2007 or 2005," *id.* at 320:19-22. Defendants' only response is to claim, contrary to law, that Mr. Richard does not need facts or data for his market opinion, but is permitted to rely upon his narrow experience. Defs.' Br. 10-11. Repeated recitation of Mr. Richard's resume, however, does not cure his admitted ignorance of the pre-

---

[3] Contrary to Defendants' argument, *United States v. American Express Company*, 2014 WL 2879811 (E.D.N.Y. June 24, 2014), does not support the proposition that disputes about an unqualified expert's credentials go to weight. There, the court simply noted that a dispute about the "*strength*" of an expert's credentials goes to weight when the expert's qualification is established in the area in which he seeks to testify. 2014 WL 2879811, at *2 (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043-44 (2d Cir. 1995) (holding that "[d]isputes as to the strength" of the credentials of an ear, throat, and nose doctor opining on "a throat ailment and its causes" went to weight, not admissibility)) (emphasis added). But Mr. Richard is not qualified to offer the opinions set out in his Report. There is no authority supporting the proposition that Rule 702 permits an unqualified expert to offer expert testimony.

purchase considerations and processes of other PLS investors, the very opinion Defendants ask him to offer.[4]

## IV. MR. RICHARD'S OPINIONS WILL NOT HELP THE TRIER OF FACT DECIDE WHETHER DEFENDANTS' MISREPRESENTATIONS WERE MATERIAL

### A. Defendants' Argument That the GSEs Are a Proxy for the Reasonable Investor Is Neither Credible Nor Based on the Correct Legal Standard

The Court may exclude opinion testimony that does not "assist the trier of fact to understand the evidence or to determine a fact in issue." *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *3 (quoting Fed. R. Evid. 402). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)). Mr. Richard's GSE-specific opinions, now inaccurately recast by Defendants, are not relevant. Defendants initially argued the GSEs' pre-purchase processes were relevant to materiality because the GSEs had "unique mission[s] and goals," "were [not] ordinary investors," and were "the only investors with the unique federally mandated missions of supporting liquidity and affordability [in] the housing market, unlike any other purely private RMBS investor." Defs.' Opp'n to Pl.'s Housing Goals Mot. *in Limine* 3-4, Dkt. No. 932. Defendants intended Mr. Richard to opine on, and two-thirds of his report addresses, the "the unique position of Freddie Mac and Fannie Mae and what factors drove their PLS purchases." *Id.* at 5. These opinions about the GSEs' differences from other PLS investors

---

[4] Mr. Richard's passing reference to "regression analysis" he claims someone else may have performed at State Street does not detract from his testimony he did not understand and expressly rejected statistical modeling as a tool to predict pool-level performance. *See* Defs.' Br. 13 n.3 (citing Ex. 3 at 39:15-40:10). In the same answer Defendants' cite, he rejected the concept as a method of modeling default rates across loan pools. Ex. 3 at 39:25-40:10 ("I just don't agree with the premise of the question [about determining the collateral factor most predictive of default]. I don't—it's so foreign to me . . . I don't think anyone in the industry was sitting down and saying this is the best predictor of mortgage default and we've got to zero in on this factor."). Mr. Richard never performed a regression analysis to assess the collateral risk of a prospective PLS purchase. *See id.* at 20:8-24 ("Q. So people in the credit group did the regression analysis? A. I think it was credit and it was also a group that was just focused primarily on building models, people with programming skills, if you will."). To the extent someone at State Street performed a regression analysis, "we didn't perform any sort of analysis to try to ascertain which variables were the best predictors of loan default." *Id.* at 23:2-5; *see id.* at 37:11-17 ("I don't think investors were looking at a securitization and saying, ah, we've performed an analysis before and think that variable XYZ is the best predictor of default and so we're going to zero in on that characteristic.").

were intended to bolster their faulty argument that the materiality of Defendants' misrepresentations should "be assessed from the perspective of a reasonable investor in the plaintiff's position, *i.e.*, a government sponsored enterprise." *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (Dec. 18, 2014); *see also* Ex. 1 ¶ 18 at 10 ("Freddie Mac and Fannie Mae were unique in that they sought AAA-rated non-agency MBS backed principally by loans eligible for [HUD] housing goals credit."). The Court rejected that argument when it excluded housing goals evidence and reiterated that materiality is "'objective' . . . determined with reference to a reasonable 'PLS trader.'" *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (quoting *FHFA v. UBS Ams. Inc.* ("*UBS III*"), 2013 WL 3284118, at *13, *23 (S.D.N.Y. June 28, 2013)).

Unfettered by their prior representations to the Court, or Mr. Richard's opinions why the GSEs are different from all other PLS investors, Defendants blithely argue the exact opposite point on the basis of the same Report. Defendants now claim Mr. Richard's GSE-specific opinions are relevant and admissible because the GSE are not unique, but so closely aligned with all other PLS investors that the Court should recognize the GSEs as "a reasonable proxy" for the market. Defs.' Br. 15. This reversal is a transparent attempt to persuade the Court to embrace the repackaged "reasonable GSE" standard for materiality, which the Court previously rejected, ruling that "the GSEs' motivations in purchasing the Certificates are [not] relevant here." *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3-4. Mr. Richard's GSE-specific opinions would not assist the trier of fact because they apply the wrong materiality standard. *See, e.g.*, *InTouch Techs., Inc. v. VGO Comm'ns, Inc.*, 751 F.3d 1327, 1348-49 (Fed. Cir. 2014) (excluding expert's testimony in patent action because expert failed to apply rules governing nonobviousness standard); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."); *Am. Med. Sys. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010) (excluding expert opinion "based on incorrect legal standards").

Defendants mischaracterize the Court's June 2013 opinion in an effort to cover their reversal.  Defendants represent that the Court "not[ed] with approval" Defendants argument that the GSEs' "views and practices" are relevant to materiality.  Defs. Br. 15 (quoting *UBS III*, 2013 WL 3284118, at *23).  That opinion says no such thing.  The Court explicitly acknowledged, but did not accept, Defendants' argument that the "GSEs' involvement in the market" informs the standard of materiality.  Rather, the Court denied Defendants' discovery request, ruling that "there is no reason to think that the types of (often non-public) information a Single Family employee would consider material in deciding whether to purchase a whole loan is illuminating in determining what a *PLS trader* would consider material in deciding whether to buy a security backed by a pool of loans."  *UBS III*, 2013 WL 3284118, at *23 (emphasis added).  Defendants also represent the Court conceded "that industry standards could 'be informed to some extent by the practices of major player[s] in the industry, like either Fannie Mae or Freddie Mac.'"  Defs.' Br. 15 (quoting Dec. 17, 2012 Hr'g Tr. at 70:18-71:5).  In resolving a discovery dispute, the Court no more than recognized that the defendants would make that argument and specifically did not rule on that question, but "put that to one side," and denied Defendants' discrete request for Single Family discovery on burden grounds.  Dec. 17, 2012 Hr'g Tr. at 70:18-71:5, 74:3-12.  Mr. Richard's GSE-specific opinions are irrelevant, apply the wrong legal standard, will not assist the trier of fact, and, if admitted, would unduly waste the time and resources of the Court.  Fed. R. Evid. 402, 403, 702.

### B. Mr. Richard's Opinion That PLS Pre-Purchase Considerations Were Entirely Investor- and Securitization-Specific Will Not Help the Trier of Fact

Defendants propose to offer Mr. Richard's opinions to challenge FHFA's claim that Defendants' misrepresentations were material.  But Defendants must concede that Mr. Richard renders no opinion that accurate representations of the characteristics of the loans supporting the Certificates would have substantially altered the total mix of information available to a reasonable PLS investor.  Ex. 4 at 131:23-132:12.  Mr. Richard does not know whether the alleged misrepresentations were accurate or not, nor was he asked to make any such assumption.  *Id.* at

8

143:8-144:10, 188:2-190:17.  Far from opining on the impact that accurate representations may have had on a reasonable investor, Mr. Richard rejected the very concept of a reasonable investor.

The reasonable PLS trader is equivalent to the market.  *See In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *4 (S.D.N.Y. July 15, 1996) (describing the reasonable investor as "equivalent to the market itself").  However, Mr. Richard opines instead that the importance of any collateral characteristic "is very investor[-]specific" and "securitization[-]specific."  Ex. 3 at 47:25-48:3; *see id.* at 73:12-22 ("[A] securitization would come [an investor's] way, an investor would look at it and they would evaluate the factors associated with that pool and perhaps place emphasis on variables A, B, C.  An investor would look at a different securitization and place emphasis on variables X, Y, Z.  I think it was very investor specific and I think it was very pool specific as well.").  According to Mr. Richard, no two investors ever weighed collateral characteristics, or any other consideration, the same way.  Ex. 1 ¶ 41 ("[T]he factors to be considered important would vary by investor, as well as by security.").  He has nothing to say about the Certificates at issue.  Ex. 4 at 188:2-190:17.  He offers no opinion about Defendants' specific representations or their importance to a reasonable PLS investor.  *Id.*  Given his adamant position that all PLS investors approach investments uniquely, his gross (and uninformed) generalizations about the types of information PLS investors may or may not have considered cannot permit the trier of fact to determine what information would substantially alter the total mix of information for a reasonable investor.[5]  *See In re Brittania Bulk Holdings Sec. Litig.*, 665 F. Supp. 2d 404, 413 (S.D.N.Y. 2009).

---

[5] Mr. Richard's opinions about sophisticated investors' view of occupancy representations and appraisals conflict with this Court's rulings and, therefore, are also irrelevant and inadmissible.  Mr. Richard opines that "sophisticated investors understood that the appraised value of a home is based on the subjective opinion of the appraiser."  Ex. 1 ¶ 54.  In an order denying Defendants' motion to exclude the opinions of FHFA's appraisal expert, Dr. John Kilpatrick, the Court recognized that the term "credibility" as used in the Uniform Standards of Professional Appraisal Practice "reflects an objective assessment of an appraisal" requiring an appraiser "to support an appraisal by evidence and logic."  *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *6 (S.D.N.Y. Jan. 29, 2015).  Mr. Richard further opines that "[o]wner occupancy data [represented in PLS offering documents] reflect borrowers' intended use of the mortgaged property."  Ex. 1 ¶ 57.  In an order denying Defendants' motion to exclude the occupancy findings of FHFA's re-underwriting expert, Bob Hunter, the Court "swiftly rejected . . . [t]he defendants' contention that the Offering Documents do no more than reflect information about borrowers' intentions at the time they apply for their mortgages."  *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 394072, at *3 (S.D.N.Y. Jan. 29,

## V. MR. RICHARD'S CRITICISMS OF FHFA EXPERTS RUBINSTEIN, BLUM, AND SCHWERT ARE BASED ON THE WRONG LEGAL STANDARD AND ARE NOT PROPER EXPERT REBUTTAL

Defendants' fail to rebut Plaintiff's arguments that Mr. Richard does not offer admissible testimony about FHFA experts Mssrs. Rubinstein, Blum, and Schwert. First, contrary to Defendants' argument, Mr. Richard's criticism is irrelevant because it "focuses on Freddie Mac and Fannie Mae" and, therefore, applies the incorrect legal standard. Defs.' Br. 16. The governing legal standard is that of "a reasonable 'PLS trader'—not a reasonable GSE," but Mr. Richard's opinions on FHFA's experts apply an incorrect, *subjective* materiality standard. *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3; *see also supra* § IV.A.

Second, Mr. Richard does not "illuminate . . . the errors in the opposing party's case" but faults them for failing to examine each GSE's PLS purchase process for their reports. Defs.' Br. 17. An expert is not permitted to testify that an opposing party's experts' opinions are flawed because they did not apply a particular legal standard (particularly where, as here, the expert's criticism of other experts is based on the *wrong* legal standard). *See FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *3 (quoting *United States v. Lumpkin*, 93 F.3d 280, 289 (2d Cir. 1999)) ("Testimony that 'will usurp . . . the role of the trial judge in instructing the jury as to the applicable law' . . . must be excluded."). Mr. Richard's mistaken criticism of FHFA's experts for not offering a particular opinion is advocacy properly reserved for opposing counsel.[6]

### CONCLUSION

For the reasons stated above, FHFA requests that the Court prohibit all testimony of Defendants' designated expert witness John J. Richard.

---

2015) (citing *FHFA v. UBS Ams., Inc.*, 585 F. Supp. 2d 306, 329-30 (S.D.N.Y. 2012)). The Court's orders preclude Mr. Richard's testimony about appraisals and occupancy representations in the Offering Documents.

[6] *Olin Corporation v. Certain Underwriters of Lloyd's London*, 468 F.3d 120 (2d Cir. 2006), does not validate Mr. Richard's criticisms. There, in response to an insurer's challenge to the reliability of opinions offered by a proposed expert on environmental contamination remediation, the district court ruled, and the Second Circuit affirmed, that the opposing expert could rebut the affirmative expert's opinions. *Id.* at 133-34 ("[Defendants] argue that Rovers's testimony should not have been admitted because it was not sufficiently reliable."). Here, Mr. Richard does not challenge the reliability of FHFA's experts' opinions.

DATED: February 2, 2015
New York, New York


QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By: */s/ Philippe Z. Selendy*
   Philippe Z. Selendy
   Jon Corey
   Zachary Williams

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000