Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

that "as the effective age of a property increases, the reliability of the cost approach may decrease because the depreciation estimates may be subjective." [221]

194.    The fact that neither USPAP nor Fannie Mae require the completion of a cost approach calls into question the logic that led Dr. Kilpatrick to conclude that a cost approach is necessary for all non-condominium properties. Further, the requirement that he imposes contradicts his own observation that the sales comparison approach is the primary method by which residential properties are valued.

195.    In addition, Dr. Kilpatrick failed to account for instances where the cost approach does not apply, failing appraisals for which the cost approach was not appropriate due to age:

- **NHELI_2007_1_2002019940 -** ▮▮▮▮▮▮▮ Dr. Kilpatrick failed this appraisal on this question becaus ▮▮▮▮▮▮ ndominium and no cost approach was performed. The a▮ raiser comments that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ [222] This property was constructed in ▮▮ and was ▮▮▮ old at the time the property was appraised. In my experience, the age of this property would likely have been an appropriate reason not to perform a cost approach.

- **NHELI_2007_2_2002010004 -** ▮▮▮▮▮▮: Dr. Kilpatrick also failed this appraisal on this question because it is not a condominium and no cost approach was performed. The appraiser estimated the site value, but did not perform the full cost approach noting that, "▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ This property was constructed in ▮▮ and was ▮▮▮ old at the time the property was appraised.  Again, the age of the p▮▮ is an appropriate reason not to perform a cost approach, for the reasons outlined above.

196.    Dr. Kilpatrick also incorrectly failed appraisals for this question when they actually had used the cost approach:

- **NHELI_2007_1_2002011212** ▮▮▮▮▮▮▮ Dr. Kilpatrick failed this appraisal for the exclusion of a cost approach. Contrary to Dr. Kilpatrick's

---

[221] 2006 Fannie Mae Selling Guide - XI, 407: Cost Approach to Value (06/30/02)
[222] Appraisal Report: NHELI_2007_1_2002019940
[223] Appraisal Report: NHELI_2007_2_2002010004

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

findings, this appraisal in fact includes a cost approach, which the appraiser indicates has been given less weight than the sales comparison approach.[224]

- **NHELI_2007_2_2001855635** ▮▮▮▮▮▮▮ Dr. Kilpatrick also failed this appraisal for the exclusion of a cost approach. Contrary to Dr. Kilpatrick's findings, this appraisal also includes a cost approach.[225]

### 16.    CAM Question 16 - Did the appraiser calculate the physical depreciation correctly?

197.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this standard were given a score of 7.615. In total, Dr. Kilpatrick has found that 102 of the 205 appraisals at issue did not meet this criterion.

198.    CAM Question 16 is not based on a USPAP requirement.

199.    Dr. Kilpatrick indicates that the intent of this question is to evaluate "whether there is a violation of Standards Rule 1-4(b)(iii)," which he says can lead to "a failure to correctly adjust for effective age and condition in the sales adjustment grid, as required under Standards Rule 1-4(a)."[226] He further indicates that an error in the calculation of physical depreciation "has a direct, but only modest-magnitude, impact on value."[227] However, Dr. Kilpatrick is unable to cite a "correct" method of calculating depreciation because there is no single accepted method.

200.    Neither standard cited by Dr. Kilpatrick specifies a method for calculating depreciation; hence they offer no basis for an evaluation for whether depreciation was calculated correctly. Standards Rule 1-4(b)(iii) indicates that "when a cost approach is applicable, an appraiser must analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation)."[228] In practice, accrued depreciation may be calculated in a variety of ways, including the economic age-life, modified economic age-life and breakdown methods, all of

---

[224] Appraisal Report: NHELI_2007_1_2002011212
[225] Appraisal Report: NHELI_2007_2_2001855635
[226] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 82
[227] Id.
[228] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(b)(iii), p. 19

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

which include the application of the appraiser's judgment or may be based on cost manuals, such as the Marshall & Swift Cost Handbook.[229]

201.    The economic age-life method is a "method of estimating depreciation in which the ratio between the effective age of a building and its total economic life is applied to the current cost of the improvements to obtain a lump-sum deduction."[230] The modified economic age-life method is a "method of estimating depreciation in which the ratio between the effective age of a building and its total economic life is applied to the current cost of the improvements after the costs to cure curable physical and functional items are deducted."[231] The breakdown method is a "method of estimating depreciation in which the total loss in the value of a property is estimated by analyzing and measuring each cause of depreciation (physical, functional, and external) separately." [232]

202.    Fannie Mae describes the various forms of depreciation, which include physical (curable and incurable), functional and external depreciation, but also makes no statements with respect to the correct way to estimate depreciation. [233]

203.    In several instances, Dr. Kilpatrick incorrectly or unreliably applied Question 16, failing loans without any basis for doing so.  For example, Dr. Kilpatrick failed the following appraisals where depreciation was reasonably estimated with techniques that are widely accepted by the industry.

- **NAA_2005_AR6_1002171703 -** ▮▮▮▮▮▮▮▮▮  The appraiser states that physical depreciation is estimated based on the age-life method and applies a 15% deduction to the estimated cost new. Per the appraisal, the property's estimated effective age i▮▮▮▮▮▮▮ and its estimated remaining economic life is ▮▮▮▮▮▮▮[234] The ranges indicate that physical depreciation is expected to be in the range of 10% to 18%, which supports the appraiser's use of a 15% estimate.

- **NHELI_2007_1_2002211714 -** ▮▮▮▮▮▮▮  The appraiser deducted ▮▮▮▮ for physical depreciation, noting that the property was not impacted by "▮▮▮▮▮▮▮▮▮▮▮▮" The appraisal indicates that cost figures were derived from the Marshall &

---

[229] Appraisal Institute, *The Appraisal of Real Estate* (13th ed.), p. 408
[230] Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Chicago: Appraisal Institute, 2010)
[231] Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Chicago: Appraisal Institute, 2010), p. 127
[232] Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Chicago: Appraisal Institute, 2010), p. 22
[233] 2006 Fannie Mae Selling Guide - XI, 407: Cost Approach to Value (06/30/02)
[234] Appraisal Report: NAA_2005_AR6_1002171703

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al



Swift cost manual, local market and appraiser's files.[235] The appraisal does not state what method was used by the appraiser to estimate physical depreciation, but this was not required by USPAP.  As a result, there is no basis for Dr. Kilpatrick's claim that the appraiser incorrectly estimated the property's physical depreciation. In fact, considering the age of the property, which was built in ███    the estimated effective age of ██████ and the estimated remaining economic life of ██████ the ███████ depreciation estimate appears to be a reasonable conclusion reached by the appraiser, and was accepted in a Residential Appraisal Final Review Report (prepared ████████.[236]



- **NHELI_2007_2_2001931628** - ████████: The appraiser made a ██████ deduction for  h sical de reciation, which equates to ██████ he indicated ███████████████████████████████████████ ' The appraisal reported that the home was in average/good condition and was ██████ old with an estimated effective age of ██████ There was no reported estimate of remaining economic life, but this was only required for Housing and Urban Development and Veterans Affairs appraisal assignments (i.e., not this assignment) as clearly indicated on the form used by the appraiser (Fannie Mae Form 1004 – March 2005).[237] Dr. Kilpatrick had no basis to conclude that the appraiser incorrectly estimated the property's physical depreciation.  In fact, given the age and condition of the property, the estimated depreciation is within the range of what an experienced appraiser would consider reasonable.

204.    Dr. Kilpatrick also failed appraisals of recently constructed homes that would have suffered minimal or no physical depreciation because the appraisals properly reflected that fact:

- **NAA_2005_AR6_1002238436** ██████████  The subject of this appraisal is "████████", as are the comparables considered in the sales comparison approach. No deduction for physical depreciation was warranted; as such, there is no deduction indicated in the appraisal.[238] Dr. Kilpatrick had no basis to fail this appraisal for this question.

- **NAA_2005_AR6_1002238862** ██████  The subject of this appraisal was a year old, and a deduction of ██ was applied for physical depreciation, which is a reasonable exercise of the appraiser's judgment

---

[235] Appraisal Report: NHELI_2007_1_2002211714
[236] *Id.*
[237] Appraisal Report: NHELI_2007_2_2001931628
[238] Appraisal Report: NAA_2005_AR6_1002238436

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

given the subject's age and condition.[239] Dr. Kilpatrick had no basis to fail this appraisal for this question.

### 17.    CAM Question 17 - Did the appraiser report external obsolescence correctly?

205.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 7.615. In total, Dr. Kilpatrick found that 46 of the 205 appraisals at issue did not meet this criterion.

206.    CAM Question 17 is not based on a USPAP requirement.

207.    External obsolescence is "an element of depreciation; a diminution in value caused by negative externalities and generally incurable on the part of the owner, landlord, or tenant."[240] It can be caused by a variety of factors, including neighborhood decline, a property's location (*e.g.*, proximity to a highway or rail line), market conditions or environmental conditions (*e.g.*, contamination, landfills, etc.) and may be temporary or permanent.

208.    Like Question 16, this question was derived by Dr. Kilpatrick "from a violation of Standards Rule 1-4(b)(iii)."[241] He states that if an appraisal does not include a correct discussion of external obsolescence that "the value opinion of that appraisal report is suspect."[242] But Standards Rule 1-4(b)(iii) states only that an appraiser must "analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation)."[243] Neither this standard nor any other section of USPAP describes a "correct" manner in which external obsolescence must be reported or calculated.

209.    With respect to the sales comparison approach, Dr. Kilpatrick states that this "question pertains to the failure to adjust correctly for location in the sales adjustment grid as required under Standards Rule 1-4(a), and it may also lead to failures under Standards Rule 1-

---

[239] Appraisal Report: NAA_2005_AR6_1002238862
[240] Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Chicago: Appraisal Institute, 2010)
[241] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, pp. 82-83
[242] *Id.*, p. 83
[243] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(b)(iii), p. 19

3(a) and (b)."[244] Dr. Kilpatrick ignores the fact that appraisers will, when possible, select comparables that are impacted by the same externalities as the subject property, negating the need for an adjustment on this basis.

210.     Standards Rule 1-4(a) states, "In developing a real property appraisal, an appraiser must collect, verify, and analyze all information applicable to the appraisal problem, given the scope of work identified in accordance with Standards Rule 1-2(f): when a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion."[245]

211.     Standards Rules 1-3(a) and (b) state, "When the value opinion to be developed is market value, and given the scope of work identified in accordance with Standards Rule 1-2(f), an appraiser must (a) identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends; and develop an opinion of the highest and best use of the real estate." [246]

212.     Standards Rule 1-2(f) states, "In developing a real property appraisal, an appraiser must identify the scope of work necessary to complete the assignment."[247]

213.     Appraisers typically report on market conditions and neighborhood characteristics, and note observed externalities that may have an adverse impact on a property's value; however, there is no prescribed manner in which an appraiser must report and consider any externalities that may impact the subject of their appraisal.

214.     In order to properly identify and assess externalities that could have an adverse impact on a property, appraisers typically do one or more of the following: conduct site visits of the subject and comparables, conduct detailed analyses of local market conditions or interview market participants. Dr. Kilpatrick's team, which did not visit the subject or comparable properties, did not conduct the most basic and common level of diligence that would be expected of an appraiser; instead, his team appears to have been wholly reliant on

---

[244] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, pp. 82-83
[245] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(a), p. 19
[246] *Id.,* Standards Rules 1-3(a)(b), p. 19
[247] *Id.,* Standards Rules 1-2(f), pp. 17-18

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

aerial photographs that were not necessarily known to have been taken on or around the effective date of the appraisal.

215.    In my professional opinion, Dr. Kilpatrick did not review sufficient information to make a determination as to whether the appraiser addressed external obsolescence in a manner that would be considered compliant with USPAP.

216.    In addition, his process resulted in the incorrect citation of numerous appraisals for not having "correctly" reported external obsolescence, as in the following three examples.

217.    First, Dr. Kilpatrick concludes that the appraiser for NHELI_2006_FM1_2002167725 did not correctly report external obsolescence. The appraiser reported that "there are no unfavorable conditions" in the Neighborhood section of the appraisal and that there were "no apparent physical, functional, or external inadequacies" in the Comments section on page 1 of the appraisal.[248] Further, the appraiser reported that property values were increasing and there was a shortage of supply and marketing times under three months.  These factors indicate that there was no external obsolescence and none is reported in the cost approach. Dr. Kilpatrick's assertion that the appraiser incorrectly reported external obsolescence is therefore incorrect.

218.    In addition, the property was 58 years old at the time of the appraisal, which led the appraiser to place primary reliance on the sales comparison approach. The comparables considered in the sales comparison approach are 0.19, 0.26, 0.52 and 0.33 miles from the subject; they were not adjusted for location and would likely have been impacted by the same externalities as the subject property, if any externalities existed at the time.

219.    Second, Dr. Kilpatrick concludes that the appraiser for NHELI_2006_FM1_2002234190 did not correctly report external obsolescence. The appraiser clearly states that there were "no items of deferred maintenance" nor any "functional or external obsolescence noted at the time of inspection" in the Comments section of the appraisal. Further, the appraiser reported that property values are increasing, there is a shortage of supply and marketing times are under three months.[249] These facts indicate that there was no external obsolescence (and none was reported in the cost approach).

---

[248] Appraisal Report: NHELI_2006_FM1_2002167725
[249] Appraisal Report: NHELI_2006_FM1_2002234190

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

220.    In addition, the property was more than 100 years old (built in 1900) at the time of the appraisal, which led the appraiser to place primary reliance on the sales comparison approach. The comparables considered in the sales comparison approach, which are located both east and west of the subject, are 0.48 to 0.93 miles from the subject; they were not adjusted for location,[250] and would likely have been impacted by the same externalities as the subject property, if any existed.

221.    Third, Dr. Kilpatrick again concludes that the appraiser for NHELI_2006_FM1_2002238583 did not correctly report external obsolescence. The appraiser reported external obsolescence that is attributable to the subject's location within a manufacturing district and made an adjustment of $10,000 in the cost approach. No other external factors are noted and the property is reported to be "located in an established residential neighborhood." The appraiser reported that property values are stable, supply and demand are in balance and marketing times are three to six months.[251] There is no basis for Dr. Kilpatrick to have concluded that external obsolescence was reported incorrectly.

222.    Also, the property was 90 years old at the time of the appraisal, which led the appraiser to place primary reliance on the sales comparison approach. The comparables considered in the sales comparison approach are 0.23, 0.42 and 0.32 miles from the subject; despite their proximity to the subject, they were adjusted downward for location/externalities to reflect the subject's location in a manufacturing district.[252] Dr. Kilpatrick has provided no evidence that supports his conclusion that the adjustment made to reflect the externalities impacting the subject was inappropriate.

### 18.    CAM Question 18 - Did the appraiser confirm a broker/builder source for comparables using a disinterested third party source?

223.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 3.815. In total, Dr. Kilpatrick found that 1 of the 205 appraisals at issue did not meet this criterion.

224.    CAM Question 18 is not based on a USPAP requirement.

---

[250] Appraisal Report: NHELI_2006_FM1_2002234190
[251] Appraisal Report: NHELI_2006_FM1_2002238583
[252] Appraisal Report: NHELI_2006_FM1_2002238583

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

225.    Dr. Kilpatrick states that "[a]n appraiser's failure to confirm comparables in an objective manner would be a clear violation" of USPAP Standards Rule 2-2(b)(vii), which "requires that the appraiser report the scope of work as developed under Standards Rule 1-2(f)."[253]

226.    Dr. Kilpatrick cites no professional standard or guideline that requires an appraiser to confirm data on comparable properties with a source other than MLS databases, assessor records, deeds or secondary reporting service, which, in accordance with industry practice, are generally the sources relied upon in the appraisals that are at issue. USPAP has no requirement to confirm information from a broker/builder source with information from another third party.  USPAP Standards Rule 2-2(b)(vii) requires that "the content of a Summary Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum summarize sufficient information to disclose to the client and any intended users of the appraisal the scope of work used to develop the appraisal."[254] This standard addresses requirements for the content of a summary appraisal, but does not address the means by which an appraiser is required to confirm the data that is relied upon within the appraisal.

227.    Standards Rule 1-2(f) requires that "in developing a real property appraisal, an appraiser must identify the scope of work necessary to complete the assignment."[255]  This standard makes the scope of work discretionary; it simply does not dictate that all data from brokers and builders must be confirmed by another source.

228.    Dr. Kilpatrick also asserts that the use of "information provided by interested parties may be less reliable than information provided by disinterested parties," which may lead an appraiser to be in violation of the Ethics Rule of USPAP. Referring to this rule, he specifically notes that "an appraiser must not accept an assignment that includes the reporting of predetermined opinions and conclusions."[256] The use of information provided by brokers and builders is not an indication of an ethics violation and has no direct link to the portion of the Ethics rule cited by Dr. Kilpatrick. In fact, due to time lags between sales and MLS

---

[253] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 83
[254] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 2-2(b)(vii), pp. 22, 26
[255] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-2(f), pp. 17-18
[256] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, pp. 83-84

Expert Report of Michael P. Hedden
*FHFA v. Nomura Holding America Inc., et al*

reporting, brokers and builders in some instances provide better information than other sources. Finally, Dr. Kilpatrick states that even if the comparables were correct, "the failure to use a disinterested source for confirmation would call into question the credibility of the appraiser's work."[257] This assertion is naïve.  As noted, brokers and builders may provide a more complete picture than public data alone.

229.    Dr. Kilpatrick's single finding for this question is illogical.  For NHELI_2006_FM1_2002168258, the appraiser relies on three comparables: information pertaining to Sale 1 was based on the appraiser's office file, inspection and county records; information pertaining to Sale 2 was based on the realtor's records and the appraiser's observations; and information pertaining to Sale 3 was based on county records, the appraiser's observations and MLS data.[258] Dr. Kilpatrick thus faults the appraiser for relying, with respect to a single comparable, on realtor records.  As shown above, the appraiser's approach was entirely reasonable.  It is Dr. Kilpatrick who applies his invented standard in an unreasonable manner, as this appraisal clearly shows that the appraiser exercised proper diligence.

### 19.    CAM Question 19 - For condominiums, was at least one of the comparables outside of the subject's condominium project?

230.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this standard were given a score of 5.415. In total, Dr. Kilpatrick has found that 2 of the 205 appraisals at issue do not meet this criterion.

231.    CAM Question 19 is not based on a USPAP requirement.

232.    Dr. Kilpatrick says this question is derived from USPAP Standards Rule 1-4(a), which requires that, "when a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion."[259] Again, this claim is false and overreaching. That standard provides no specific guidelines or requirements for the selection of comparables when appraising condominium units or any other type of property.

---

[257] *Id,*. p. 84
[258] Appraisal Report: NHELI_2006_FM1_2002168258
[259] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 84; The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(a), p. 19

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

233.    Dr. Kilpatrick claims that, for condominiums, FNMA/FHLMC guidelines require the use of at least one comparable outside of the subject's condominium project, but this claim is incorrect. Fannie Mae indicates that for properties that are in established condominium projects that have resale activity, the appraiser should use comparable sales from within the same project as the subject property, if there are any available. [260] The guide states that "resale activity from within the subdivision or project should be the best indicator of value." [261] It is only for new condominium projects that Fannie Mae stipulates that "the appraiser must compare the subject property to other properties in its general market area as well as to properties within the subject subdivision or project." [262]

234.    In addition, Dr. Kilpatrick incorrectly applied Question 19 in both instances where he failed appraisals for that Question.  In fact, the appraisals were in compliance with Fannie Mae's requirements.

- **NHELI_2006_FM2_2001836188**                             The subject is a new condominium located at                Sales 1 and 2 are both located in the same building as the subject and were constructed by                Sale 3 is also located just inside                but is located in a different building (                and was developed and sold by a competing builder. [263] Therefore, the appraiser satisfied the Fannie Mae requirement for new condominium projects with the selection of a comparable that was outside the subject building (and developed by a competing builder).

- **NHELI_2007_1_2002018499** -                The subject is a                and the appraisal relied upon re-sales of three condominium units within the same complex, which sold for                (superior view); other than the superior view of Sale 3, no other adjustments were required and the subject was appraised for                [264] As noted above, because the condominium was established, the appraiser was required by Fannie Mae guidelines to use comparables within the complex.

---

[260] 2002 Fannie Mae Selling Guide - XI, 406.02: Selection of Comparable Sales (06/30/02)
[261] 2002 Fannie Mae Selling Guide - XI, 406.02: Selection of Comparable Sales (06/30/02)
[262] 2002 Fannie Mae Selling Guide - XI, 406.02: Selection of Comparable Sales (06/30/02)
[263] Appraisal Report: NHELI_2006_FM2_2001836188
[264] Appraisal Report: NHELI_2007_1_2002018499

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

## 20.   CAM Question 20 - Did the appraiser correctly report comparable sale transaction data?

235.   Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 6.625. In total, Dr. Kilpatrick found that 12 of the 205 appraisals at issue did not meet this criterion.

236.   CAM Question 20 is not based on a USPAP requirement.

237.   Dr. Kilpatrick states that he derived this question "from requirements under FNMA/FHLMC guidelines, which are incorporated into USPAP under Statement 10 and the Supplemental Standards Rule."[265] This is another overreaching statement, as neither the GSEs nor USPAP provide specific requirements that must be satisfied in order for a comparable sale transaction to have been reported correctly. Dr. Kilpatrick also offers no specifics as to what criterion must be satisfied in order for a sale to be judged to have been correctly reported.

238.   In my experience, appraisers sometimes make unintentional errors in reporting comparable transaction data, such as closing date, loan amount, loan type, and seller concessions,  without impacting the reliability of the appraisal. Dr. Kilpatrick opines, "If the comparable sales transaction data are incorrect, any analysis that may be implemented in reliance upon that incorrect data would be incorrect."[266] This assertion gives no consideration to the type or magnitude of potential errors, all of which cannot and should not be considered equal. It is the responsibility of an appraisal reviewer to apply judgment and consider whether a single error may have impacted the credibility of an appraisal that is the subject of their review, and Dr. Kilpatrick's findings indicate that he has failed to do so.

239.   In addition, Dr. Kilpatrick unreliably applied Question 20 in several instances. Based on my review of the information reported in the following examples, I can find no justifiable basis for Dr. Kilpatrick to have failed the appraisals with respect to this question. Particularly egregious errors in Dr. Kilpatrick's CAM findings for this Question involve two separate appraisals with $500 discrepancies in the sale prices of comparables, where neither of these discrepancies have an impact on the respective values or make the respective appraisals unreliable.

---

[265] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 85
[266] *Id.*, p. 86

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al.



- **NHELI_2006_FM1_2001981699** - ████████████████ Based upon third party research of tax records and data reported by the MLS,[267] the appraiser correctly reported comparable sale transaction data and information specific to the comparables, with the exception of the data reported for Sale 3, at ████████████ This property was reported to have sold for ████████ but the appraiser reported the sale price at ████████[268] In my experience such a minor error, which was ████ off the recorded sale price, would not have an impact on the value conclusion reached by the appraiser.

- **NHELI_2006_FM2_2002122939** - ████████ Based upon third party research of data reported by the MLS, the appraiser correctly reported comparable sale transaction data and information specific to the comparables.[269]

- **NHELI_2007_2_2001932613** - ████████: Based upon third party research of tax records and data reported by the MLS, I have noted inconsistencies between the two data sources, with respect to two sale dates being one and six days off for Sale 1 and 3, respectively, and the square footage of Sale 1 being different by 3 square feet.[270] The appraiser consistently relied on the MLS data in reporting the comparable data.[271]

### 21. CAM Question 21 - If a previous sale of a comparable exists, is the current unadjusted price of that comparable less than 10% higher than the prior sale price on an annualized basis?

240.     Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 8.825. In total, Dr. Kilpatrick has found that 62 of the 205 appraisals at issue did not meet this criterion.

241.     CAM Question 21 is not based on a USPAP requirement.

242.     Dr. Kilpatrick considers this situation "another 'red flag' suggesting illegal flipping."[272] He further states that, "using comparables with such a material increase in unadjusted price over a short time may lead to bias in the sales adjustment grid developed

[267] IMS Letter: NHELI_2006_FM1_2001981699
[268] Appraisal Report: NHELI_2006_FM1_2001981699
[269] IMS Letter: NHELI_2006_FM2_2002122939
[270] IMS Letter: NHELI_2007_2_2001932613
[271] Appraisal Report: NHELI_2007_2_2001932613
[272] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 86

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

under Standards Rule 1-4(a)."[273] He softens his statement by stating that, "at the very least, use of such a [comparable] would require a significant analysis and explanation to reconcile the very large increase in price with other market indicators."[274] However, this does not stop him from failing appraisals without the benefit of the knowledge that would be necessary to judge the comparables unusable.

243.    Neither USPAP Standards Rule 1-4(a) nor any other USPAP standards require appraisers to limit their reliance to only comparables that, if previously sold, sold for an unadjusted price less than 10% higher than the prior sale on an annualized basis. In fact, USPAP has no requirements with respect to the selection of comparables with the exception of requiring that "an appraiser must analyze such comparable sales data as are available to indicate a value conclusion."[275]

244.    Dr. Kilpatrick also cites no other professional standards or guidelines, including those of Fannie Mae, that would support the requirements imposed by this question. Moreover, Dr. Kilpatrick has not provided any evidence that failing CAM Question 21 is a reliable indicator of illegal property flipping scams.

245.    Dr. Kilpatrick states, "the presumption of property values increasing at substantially greater double-digit rates is not reasonable" versus the single-digit increases that he considers more reasonable.[276] This is unfounded. Dr. Kilpatrick ignores the fact that, at the time the appraisals in this matter were completed, there were markets experiencing double-digit appreciation, according to the Case-Shiller Home Price Index.[277] One such market was Phoenix, Arizona, which experienced a 21% increase in home prices from December 2003 to December 2004 and a 45% increase from December 2004 to December 2005.[278] In fact, 11 of the 20 metro areas covered by the Case-Shiller Index experienced appreciation of more than

---

[273] *Id.*

[274] *Id.*

[275] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(a), p. 19

[276] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 87

[277] The S&P/Case-Shiller Home Price Indices are the leading measures of U.S. residential real estate prices, tracking changes in the value of residential real estate both nationally as well as in 20 metropolitan regions.

[278] FTI calculation based on Case-Shiller data, Additional Info - Home Price Tiered Index Levels (http://us.spindices.com/index-family/real-estate/sp-case-shiller)

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

10% per year during the same time period as indicated in this example.[279] It could have been entirely reasonable to use and rely on comparables that do not satisfy the criterion imposed by this question. In fact, it would have been unreasonable, and not reflective of the relevant comparable sales data, to exclude comparable sales simply because they reflected the high rate of home price increases experienced in a particular market. Thus, by complying with Dr. Kilpatrick's invented standard by using only comparables that had experienced no more than 10% annualized price increases, an appraiser could *violate* USPAP by failing to consider relevant market conditions.

246.    As indicated in my analysis of CAM Question 12, USPAP does not require the appraiser to analyze prior sales of comparables, and Fannie Mae only requires the analysis of prior sales of comparables used in the appraisal report if they closed within the twelve months prior to the date of the sale of the comparable. There is no requirement to report all prior sales of the comparables.

247.    The following examples show that Dr. Kilpatrick's one-size-fits-all approach ignored several reasons that would justify an annual appreciation rate of more than 10% for comparables. These reasons, some of which are exemplified below, include (1) the latest sale's reflection of improvements or renovations to the property, (2) the distressed nature of the prior sale (e.g., foreclose, REO, quick sale, etc.), (3) the non-arm's length nature of the prior sale or (4) rapidly increasing market prices.

- **NHELI_2007_2_2001930630** ▮▮▮▮▮▮▮▮▮▮ On an annualized basis, the unadjusted price for sale comparable 4 is 13% higher than the prior sale price. The property sold for ▮▮▮▮▮ on ▮▮▮▮▮ and had previously sold for ▮▮▮▮▮ on ▮▮▮▮▮ The appraiser notes that ▮ro_ert_values are increasin_ and the "▮▮▮▮▮▮▮▮▮▮"[280] ▮▮▮▮▮▮▮▮▮▮ to reach a different conclusion.

- **NHELI_2006_FM2_2002233153** - ▮▮▮▮▮▮▮▮▮▮ The appraiser reported recent prior sales for Comparables 1 and 2, but no sales activity for Comparable 3. Comparable 1's recent prior sale (▮▮▮▮▮ for ▮▮▮▮▮ versu ▮▮▮▮▮ for ▮▮▮▮▮) was reported to have not been an arm's length transaction; Comparable 2's ▮▮▮▮▮ sale

---

[279] FTI calculation based on Case-Shiller data, Additional Info - Home Price Tiered Index Levels (http://us.spindices.com/index-family/real-estate/sp-case-shiller)
[280] Appraisal - NHELI_2007_2_2001930630

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al.

price of ▮▮▮▮ reflected an increase of ▮▮▮ over its recent prior sale in ▮▮▮ for ▮▮▮, which was reported by the appraiser to be the result of updates made to the property.[281] Moreover, according to the Case-Shiller Index, the Miami metropolitan area experienced 24% appreciation from December 2003 to December 2004 and 32% appreciation from December 2004 to December 2005. Again, Dr. Kilpatrick ignores the appraiser's analysis of the comparables and concluded, without evidence, that the appraisal did not satisfy his requirements.

### 22. CAM Question 22 - Is the appraised value of the subject within the range of the unadjusted comparable sales prices?

248.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this question were given a score of 7.000. In total, Dr. Kilpatrick has found that 28 of the 205 appraisals at issue did not meet this criterion.[282]

249.    CAM Question 22 is not based on a USPAP requirement.

250.    Dr. Kilpatrick indicates that "market comparison is the primary valuation tool employed" in a residential appraisal.[283] According to him, "market comparison involves evaluating the subject property in relationship to the sales of comparable properties" in order to value the subject property by "adjusting the attributes and features of the comparable sales properties."[284] He further states, "Failure to do so properly constitutes a violation of Standards Rules 1-4(a) as well as 1-6(a)."[285]

251.    Standards Rule 1-4(a), which has been previously cited, requires only that the appraiser analyze the sales available to indicate a value conclusion.[286] This standard addresses the analysis of the comparables, but makes no mention and is not related to the appraiser's value reconciliation.

252.    Standards Rule 1-6(a) states, "In developing a real property appraisal, an appraiser must reconcile the quality and quantity of data available and analyzed within the approaches used."[287] While this standard does address the appraiser's reconciliation process, it

---

[281] Appraisal Report: NHELI_2006_FM2_2002233153
[282] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 87 and Appendix 5-1 - Credibility Modeling Data and Scoring
[283] *Id.*, p. 87
[284] *Id.*, pp. 87-88
[285] *Id.*, pp. 87-88
[286] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(a), p. 19
[287] *Id.* Standards Rule 1-6(a), at p. 21

includes no requirement that the appraiser reach an opinion of value that is bracketed by the unadjusted sale prices of the comparables.

253.     Fannie Mae also has no requirement that the appraised value of the subject be within the range of the unadjusted comparable sales prices.

254.     The use of comparables that, according to Dr. Kilpatrick, "are all skewed relative to the subject"[288] does not render an appraisal invalid. The purpose of the adjustment process is to equate the comparables to the subject. Dr. Kilpatrick ignores the fact that perfect comparables do not always exist or that some properties may be unique, which can affect the adjustment process. While it is the responsibility of the appraiser to select comparables that are located within the subject's competitive market and have similar characteristics, selecting comparables based purely on price is neither required nor acceptable.

255.     Several examples demonstrate the rigidity of the CAM and the failure of Question 22 to provide any meaningful information about credibility..

- Dr. Kilpatrick failed four appraisals on this question where the value opinion fell outside (above) the range of the comparables by less than 3.0%. The appraised values reached in these appraisals were 2.5%, 1.0%, 0.7% and 0.2% above the highest comparables, respectively.[289]

- Dr. Kilpatrick failed two appraisals on this question where the value opinion fell outside (below) the range of the comparables by less than 3.0%. These appraised values were 0.8% and 2.7%, below the lowest comparables, respectively.[290]

- All but one of the appraisals that failed this question concluded to a value that was within the range of 5.2% below the lowest comparable to 5.3% above the highest comparable.

256.     In addition, Dr. Kilpatrick failed one appraisal, NHELI_2006_HE3_2001846528, on this question even though the value opinion was within the unadjusted range of comparables.  The subject property was appraised for ▮▮▮▮▮▮ and

---

[288] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 88
[289] Appraisal Reports: NHELI_2006_FM2_2002202724; NHELI_2006_HE3_2002173834; NHELI_2006_HE3_2002235924; NHELI_2007_1_2001929177
[290] Appraisal Reports: NAA_2005_AR6_1002235660; NHELI_2006_FM1_2002233784

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al.

the unadjusted range of the comparables was ███████ to ██████.[291] This simply indicates another error by Dr. Kilpatrick's team.

### 23.    CAM Question 23 - Is the appraised value of the subject within the range of the adjusted comparable sales prices?

257.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 7.000. In total, Dr. Kilpatrick has found that 4 of the 205 appraisals at issue did not meet this criterion.

258.    CAM Question 23 is not based on a USPAP requirement.

259.    Like Question 22, Dr. Kilpatrick states, "a negative answer to this question derives from violations of Standards Rules 1-4(a) and 1-6(a)."[292] As with Question 22, there is no requirement that the appraiser reach an opinion of value that is bracketed by the adjusted sale prices of the comparables.

260.    Again, Fannie Mae has no requirement that the appraised value of the subject be within the range of the adjusted comparable sales prices.

261.    Dr. Kilpatrick states, "A gross price adjustment can exert a major impact on the ultimate valuation conclusion," which means "that the larger the adjustment, the larger the impact upon the valuation conclusion for minor gross adjustments have minor value impacts, while major gross adjustments have major valuation impacts."[293] He goes on to state, "In the market comparison valuation process, the probable market value is bounded by the higher and lower adjusted comparable sales prices for the comparable sales properties considered in that neighborhood."[294] Ultimately he concludes, "The indicated property value conclusion may be somewhere in the middle, tilted toward the higher or perhaps toward the lower end of the adjusted comparable sales price range" and that "an appraisal value conclusion that is outside—rather than being within—the range of the comparable sales is inherently suspect."[295]

262.    There is no requirement that the appraised value of property be within the range of the adjusted comparable sales.  As with Question 22, Dr. Kilpatrick ignores the fact

---

[291] Appraisal Report: NHELI_2006_HE3_2001846528
[292] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 88
[293] *Id.*
[294] *Id.*
[295] *Id.*, p. 89

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

that perfect comparables rarely exist, and the fact that some properties may be unique. The selection and adjustment of comparables is not a science, and the appraiser has the latitude to reach an opinion of value that he or she believes to be credible.

### 24.   CAM Question 24 - If income approach, do the mix of units for the comparables match the mix of units for the subject?

263.    Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 9.200. In total, Dr. Kilpatrick has found that 11 of the 205 appraisals at issue did not meet this criterion.

264.    CAM Question 24 is not based on a USPAP requirement.

265.    Dr. Kilpatrick claims that "this violation is so singularly substantial that a negative answer to this assessment question, by itself, calls into question the credibility of an appraisal report."[296] It is his opinion that "the 'core' of the appraisal report is the market rent estimate times the gross rent multiplier ('GRM'),"[297] which leads him to say that "to the extent that the mix of units is not compatible, this results in an 'apples-to-oranges,' dissimilar comparison, which undermines the foundational premise of comparability, and in turn, the reliability of the appraisal."[298] He concludes that an appraisal will be in direct violation of Standards Rule 1-4(c)(i) and 1-6(a) if the "market rent estimate is not supported by an appropriate and comparable mix of units." [299]

266.    Standards Rule 1-6(a), which has already been touched on numerous times, addresses the reconciliation of the quality and quantity of data.[300] It does not address any requirement for the mix of units of the comparables to match that of the subject.

267.    Standards Rule 1-4(c)(i) requires that, "When an income approach is applicable, an appraiser must analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property."[301] Here, Dr. Kilpatrick has again overreached. An analysis of the available data is required, but there is no requirement limiting what data must be relied on or indicating what

---

[296] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 89
[297] *Id.*
[298] *Id.*
[299] *Id.*, p. 90
[300] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-6(a), p. 21
[301] *Id., Standards Rule 1-4(c)(i), at pp. 19-20*

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

guidelines an appraiser must follow in the selection of the data that is to be considered. The standard allows the appraiser to exercise best judgment in the selection of comparables, rather than establishing rigid guidelines. Further, Dr. Kilpatrick ignores the fact that appraisers can and do routinely make adjustments for dissimilarities between the comparables and the subject properties.

268.    Generally, the income capitalization approach is reserved for investors looking for income generating residential property.  This approach assists investors in evaluating the income-generating ability of a property, and is often helpful when income is a motivating factor in their decision to make an investment. "The income approach to value is based on the assumption that market value is related to the market rent or income that a property can be expected to earn. Its use generally is appropriate in neighborhoods that consist of one-family properties when there is a substantial rental market, and it can be an important approach in the valuation of two- to four-family properties."[302]  When the income approach is applicable,  one of the accepted methods of valuation provides for "the appraiser [to] multiply the total gross estimated monthly market rent for the subject property by a reconciled gross monthly rent multiplier."[303]

269.    Fannie Mae also does not impose strict requirements on appraisers with respect to the selection of comparables based on unit mix; instead, as the cited definition of estimated market rent implies, appraisers are expected to make adjustments to comparable properties and to reconcile those adjusted values to develop a market rent estimate for the subject.[304]

270.    In addition, Dr. Kilpatrick incorrectly and unreliably applied Question 23 in several instances.  The following examples show that Dr. Kilpatrick scored appraisals incorrectly (failing appraisals that did satisfy the requirement of this question) and did not apply reasonable judgment in deciding to fail appraisals that did not meet his overly rigid criterion.

- **NHELI_2006_FM2_2001905263** - ███████████  The subject property is comprised of ████████████████████████████ All three of the comparables considered are two-family properties with unit mixes that are exactly the same (███████ as that of the subject.[305] This

---

[302] 2002 and 2006 Fannie Mae Selling Guide - XI, 408: Income Approach to Value (06/30/02)
[303] *Id.*
[304] *Id.*
[305] Appraisal Report: NHELI_2006_FM2_2001905263

HIGHLY CONFIDENTIAL

appraisal actually meets Dr. Kilpatrick's criterion, yet it was unexplainably failed on this question.

- **NAA_2005_AR6_1002008905** - ▓▓▓▓▓▓ The subject ▓ro▓ert is comprised of ▓▓▓▓▓▓ which are all the same size ▓▓, but the layouts include one 3 BR/1 Bath unit and two 4 BR/1 Bath units. Actual rents are month-to-month and are ▓▓▓▓ for one of the units and ▓▓▓▓ for the other two units.[306] The three comparables include two, three and four bedroom units, are of a similar vintage and are all located within ▓▓▓ miles of the sub▓ect; the rents of the com▓arables ran▓e from ▓▓▓▓▓▓▓▓, bracketing the rent conclusions (▓▓▓▓▓▓▓▓▓▓ for the subject's units.[307] This property also meets Dr. Kilpatrick's criterion (because the comparables include rental units of the same size and layout of the subject property), but was failed on this question.

- **NAA_2005_AR6_1001831518** ▓▓▓▓▓▓ The sub▓ect ▓ro▓ert is comprised of ▓▓▓▓▓, which are the same size, but one is a ▓▓▓▓ unit and the other is a ▓▓▓▓ the actual rents of these units are the same at ▓▓▓ per month.   The three comparables include one, two and three bedroom units, are of a similar vintage and are all located within ▓▓▓ miles of the subject; the rents of the comparables range from ▓▓▓▓▓▓▓▓▓▓ units, consistent with (though higher than) the rent conclusion (▓▓▓) for the subject's units.[309] Even though the judgment applied by the appraiser resulted in a supportable opinion of market rent, Dr. Kilpatrick's rigid and unjustified standard still caused the appraisal to fail this CAM Question.

> 25. **CAM Question 25 - If income approach, does the gross rent multiplier ("GRM") used fall within the range of unadjusted GRMs for first 3 comparables in the appraisal report?**

271.   Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 9.200. In total, Dr. Kilpatrick has found that 7 of the 205 appraisals at issue did not meet this criterion.

272.   CAM Question 25 is not based on a USPAP requirement.

---

[306] Appraisal Report: NAA_2005_AR6_1002008905
[307] Appraisal Report: NAA_2005_AR6_1002008905
[308] Appraisal Report: NAA_2005_AR6_1001831518
[309] Appraisal Report: NAA_2005_AR6_1001831518

273.    Dr. Kilpatrick identifies this assessment question as being, "at the core of the valuation for income-producing properties."[310] However, it is not an acceptable practice to adjust GRMs. He goes on to state, "If the [unadjusted] GRM is not supported by the comparable data, and it cannot be explained by the market, then the appraisal analysis simply lacks credibility."[311] Yet, he gives no foundation for his claim that a GRM that is not within the range of unadjusted GRMs for the first three comparables cannot be supported or explained. He further states that, "basing the calculation of value for the subject property on a metric outside of the range of the comparables—absent substantial qualifying explanation—calls into question the suitability of the comparables selected—and even the objectivity of the appraiser."[312] He fails to define or explain what would meet his standard of a substantial qualifying explanation, but he does state that this error would be a violation of Standards Rule 1-4(c)—specifically 1-4(c)(iii) and (iv)—as well as a violation of Standards Rule 1-6(a).[313]

274.    Standards Rules 1-4(c)(iii) and (iv) require that "when an income approach is applicable, an appraiser must analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount and base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence."[314] Neither standard requires what Dr. Kilpatrick claims they require; rather, they only require that the appraiser analyze the available data and base projections on market evidence.

275.    Standards Rule 1-6(a), which Dr. Kilpatrick references again, does not require the GRM used to fall within the range of unadjusted GRMs for first three comparables in the appraisal report.[315]

276.    Fannie Mae also does not require that the reconciled GRM fall within the range of unadjusted GRMs for first three comparables in the appraisal report.[316]

277.    Dr. Kilpatrick, by applying his guidelines in a rigid manner, also fails to consider that the GRMs of the comparables may be impacted by factors that warrant their not

---

[310] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 90
[311] *Id.*
[312] *Id.*
[313] *Id.*
[314] The Appraisal Foundation, USPAP 2006 Edition, Standards Rule 1-4(c)(iii)(iv), p. 20
[315] *Id.,* Standards Rule 1-6(a), p. 21
[316] 2002 and 2006 Fannie Mae Selling Guide

being considered in the development of a GRM for the subject. In some cases, rental units
may have been owner occupied or leased to a related party, may have been vacant on the sale
date or may have been subject to rent control guidelines.

278.   Dr. Kilpatrick's belief that GRMs must fall within the range of the unadjusted
GRMs of the first three comparables in the appraisal report is misguided and is another
example of his opposition to an appraiser exercising professional judgment within the
constraints that are actually provided by USPAP.

279.   Moreover, Dr. Kilpatrick incorrectly applied Question 25 in several instances.
The appraisals in the following examples all met the criterion established by Dr. Kilpatrick in
Question 25, yet Dr. Kilpatrick fails them all.

- **NHELI_2006_FM2_2002202724 -** ██████████ The first three GRMs of the comparables ranged from ██████ and the GRM of the subject was ██[317]

- **NAA_2005_AR6_100223** ████████ The first three GRMs of the comparables ranged from ██████ and the GRM of the subject was ██[318]

- **NAA_2005_AR6_1002195590 -** ██████████: The first three GRMs of the comparables ranged from ██████ and the GRM of the subject was ██[319]

- **NAA_2005_AR6_1001976675 -** ██████████ The first three GRMs of the comparables ranged from ██████ and the GRM of the subject was ██[320]

- **NHELI_2006_HE3_2002205406 -** █████████ The first three GRMs of the comparables ranged from ██████ and the GRM of the subject was ██[321]

---

[317] Appraisal Report: NHELI_2006_FM2_2002202724
[318] Appraisal Report: NAA_2005_AR6_1002235651
[319] Appraisal Report: NAA_2005_AR6_1002195590
[320] Appraisal Report: NAA_2005_AR6_1001976675
[321] Appraisal Report: NHELI_2006_HE3_2002205406

HIGHLY CONFIDENTIAL

Expert Report of Michael P. Hedden
FHFA v. Nomura Holding America Inc., et al

26.     **CAM Question 26 - If income approach is used, do the market rent estimates for each unit mix fall within the range of rents reported for each unit mix for the first three comparables?**

280.     Based on Dr. Kilpatrick's CAM methodology, appraisals that did not satisfy this Question were given a score of 6.625. In total, Dr. Kilpatrick has found that 16 of the 205 appraisals at issue did not meet this criterion.

281.     CAM Question 26 is not based on a USPAP requirement.

282.     Dr. Kilpatrick indicates that it is a violation of Standards Rules 1-4(c)(i) and 1-6(a) for the appraiser to skew the results in a biased direction,[322] but provides no support for the proposition that reaching a market rent estimate for each unit mix that falls outside the range of rents reported for each unit mix for the first three comparables is an indication of intent by the appraiser to skew the results of his or her analysis.

283.     Standards Rule 1-4(c)(i) requires that, "when an income approach is applicable, an appraiser must analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property."[323] This standard requires analysis, but does not address the appraiser's reconciled value estimate (market rent in his case) nor does it require that the market rent estimates for each unit mix fall within the range of rents reported for each unit mix for the first three comparables. What this standard does do is contradict Dr. Kilpatrick's requirement that the appraiser must consider only rental data from the first three comparables and limit his or her possible conclusions to the range set by those three properties. The appraiser is expected to apply professional judgment and to "analyze such comparable rental data as are available," not to limit his or her consideration to a small set of data when additional data warrants consideration.

284.     Standards Rule 1-6(a), which Dr. Kilpatrick references again also does not address any requirement for the reconciled conclusions of market rent for the subject units to be within the range established by the comparables.[324]

---

[322] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 91
[323] The Appraisal Foundation, USPAP 2005 Edition, Standards Rule 1-4(c)(i), pp. 19-20
[324] *Id.,* Standards Rule 1-6(a), p. 21

285.    According to Dr. Kilpatrick, "[t]he most fundamental economic relationship in an income property is the rent for space in that property," which leads him to opine that "properties that rent at a certain level should be compared to properties that rent at a similar level."[325] He continues by stating that "[p]roperties that have spaces renting at different rent levels are considered less than similar and, therefore, less than comparable,"[326] and that "[i]f the market rents for the subject property do not fall within the range of the market rents for the sales comparables, then the sales comparables are deemed to be less than comparable."[327] He finally observes that "an appraisal based on such non-standard market rents could be significantly misleading,"[328] but does not draw a link between this statement and the requirement established by his question. As a result, it is not clear what he means by the term non-standard market rents.

286.    In addition, Dr. Kilpatrick incorrectly or unreliably applied Question 26 in the following examples.

- **NAA_2005_AR6_1002008905** ██████████: The subject ███ ██ is comprised of ████████ which are all the same size (████), but the layouts include ████. Actual rents are month-to-month and are ████ for one of the units and ████ for the other two units. The rents of the comparables range from ████████████████. The rent conclusions of the subject, which are ████████████ are within the ranges of the comparables.    This meets Dr. Kilpatrick's criterion, but nonetheless was inexplicably failed on this question.

- **NAA_2005_AR6_1001831518** ██████████. The sub███ ███ ██ is comprised of ████████ which are the same size, but one is ████ and the other is a ████████; the actual rents of these units are the same at ████ per month.    The comparables, which include a mix of one-, two- and three-bedroom units, do not bracket the market rent conclusion of the subject units, which i ████[331] Dr. Kilpatrick applied his rigid standard, but failed to consider whether the

---

[325] Expert Report of John Kilpatrick Ph.D. Concerning Adherence of Appraisals to Appraisal Standards and Practice, May 15, 2014, p. 91
[326] Id.
[327] Id.
[328] Id.
[329] Appraisal Report: NAA_2005_AR6_1002008905
[330] Appraisal Report: NAA_2005_AR6_1001831518
[331] Appraisal Report: NAA_2005_AR6_1001831518