UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

               Plaintiff,

               -against-

NOMURA HOLDING AMERICA, INC.;
NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA HOME
EQUITY LOAN, INC.; NOMURA CREDIT
& CAPITAL, INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; RBS SECURITIES
INC. (f/k/a GREENWICH CAPITAL
MARKETS, INC.); DAVID FINDLAY;
JOHN MCCARTHY; JOHN P. GRAHAM;
NATHAN GORIN; and DANTE LAROCCA,

               Defendants.

**No. 11 CIV. 6201 (DLC)**

---

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF FHFA'S MOTION TO
EXCLUDE THE EXPERT TESTIMONY OF MICHAEL P. HEDDEN**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Philippe Z. Selendy
Sascha N. Rand
Jonathan C. Eser

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency, as Conservator for Fannie
Mae and Freddie Mac*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................1

I.  DEFENDANTS' OPPOSITION AND MR. HEDDEN'S DECLARATION
    CANNOT OVERCOME THE UNDISPUTED FACTS THAT DICTATE
    PRECLUSION ...................................................................................................................1

II. DR. KILPATRICK'S USE OF FORSYTHE/VALOCITY APPRAISER-
    RESEARCHERS TO COLLECT DATA IS ENTIRELY DISTINCT FROM
    MR. HEDDEN'S BLIND ADOPTION OF THE IMS APPRAISERS' OPINIONS..........5

CONCLUSION .............................................................................................................................6

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>CASES</u>

*Faulkner v. Arista Records LLC*,
    No. 07 CIV. 2318 LAP, 2014 WL 4547824, at *18-19 (S.D.N.Y. Sept. 15, 2014) .......... 4

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................... 4

*Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*,
    993 F.2d 1201 (5th Cir. 1993) ............................................................................ 4

*Quiles v. Bradford-White Corp.*,
    No. 10-CV-747, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012) .............................. 4

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008) ............................................................................... 4

Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"), respectfully submits this reply memorandum in support of its Motion to Exclude the Expert Testimony of Michael Hedden.[1]

## PRELIMINARY STATEMENT

In its opening brief, FHFA established that Defendants' appraisal expert Michael Hedden did not evaluate or contribute in any way to the reviews performed by the third-party appraisers, upon which he now purports to base many of his expert opinions. *See* FHFA Br. 1-2.

Though Defendants try unsuccessfully in their opposition brief and an attached three page declaration from Mr. Hedden to restate the nature of Mr. Hedden's blind reliance on appraisal opinions rendered by anonymous third-party appraisers, the undeniable fact is that Mr. Hedden intends to serve as no more than a mouthpiece for these opinions at trial. Mr. Hedden should be precluded from providing any opinions or testimony that relies on the reviews performed and opinions provided by these anonymous and unsupervised iMS appraisers.[2]

## ARGUMENT

## I. DEFENDANTS' OPPOSITION AND MR. HEDDEN'S DECLARATION CANNOT OVERCOME THE UNDISPUTED FACTS THAT DICTATE PRECLUSION

While Defendants try to recast Mr. Hedden's reliance on the iMS appraisers as a testifying expert's mere reliance on support staff or on other experts who collected data or performed analysis under the testifying expert's direct supervision, Mr. Hedden's expert report and deposition testimony irrefutably concede that was not the case.

---

[1]   Citations to "Br." are to the Mem. of Law in Supp. of Pl. FHFA's Mot. to Exclude the Expert Testimony of Michael Hedden, dated Jan. 8, 2015. Citations to "Opp." are to Defendants' Opposition to Plaintiff's Motion to Exclude the Testimony of Michael Hedden, dated Jan. 23, 2015.

[2]   iMS opinion letters are provided in Appendix C to Mr. Hedden's August 14, 2014 Report and are cited throughout the body of the report as "third party research." Ex. 1 (Hedden Report) at n. 125, 139, 162, 164, 169, 175, 177, 179, 182, 190, 191, 196, 202, 267, 269, 270, 346, 355, 366, 372, 434, 443, 446, 482, 485, 507 and associated text.

First, the iMS opinion letters and Mr. Hedden's deposition testimony unquestionably establish that the iMS letters were not designed to merely collect data.  As a review of the letters establishes, the purpose of the letters was to set forth the appraisal review opinions about the various aspects of the appraisals that the anonymous iMS appraisers were asked to evaluate.  *See* Ex. 2 (Hedden Report) Appendix C ("Is the opinion of market rent reasonable and appropriate?"; "Are the comparable sales selected appropriate locationally, physically, and functionally?"; "Is the information reported in the sales comparison approach, including any adjustments, correctly stated?").  Mr. Hedden conceded this fact at his deposition.  *See, e.g.*, Ex. 3 (Hedden Tr.) at 41:7-10 ("Q. And you would agree with me that the IMS letters set forth opinions, right, sir? Appraisal opinions?  A.  Yes."); *id*. at 46:18-47:7 ("The review that those IMS appraisers performed on those 40 appraisals, those are their opinions, right? Under USPAP they're required to be their opinions, right, sir?  A. That is correct.  Q. All right. Those are not your opinions, right, sir?  A. That's correct.  Q. You did not do that work, right, sir?  A. That's correct.").

Second, although in his declaration Mr. Hedden disingenuously adopts the language "at my direction and under my supervision" to describe his relationship with iMS, (Hedden Decl. ¶ 3), Mr. Hedden's deposition testimony unequivocally establishes that Mr. Hedden played no role whatsoever in the development of the iMS opinions.  *See* Ex. 3 (Hedden Tr.) at 33:23-34:9 (did not select the appraisers or set standards for their qualifications); *id*. at 34:15-35:2 (no instruction to iMS on how to undertake reviews); *id*. 35:10-36:6 (did not know, inquire or evaluate how the iMS appraisers performed their reviews apart from presuming they adhered to their licensing obligations); *id*. at 39:9-40:14 (did not review any underlying iMS work product).

Nor, as Mr. Hedden's deposition makes clear, did anyone on Mr. Hedden's team ever even evaluate the accuracy or reliability of the iMS appraisers' review opinions.  *See* Ex. 3 (Hedden Tr.) at 47:13-48:15 ("Q. Your team -- no one on your team looked at those IMS letters and performed any additional analysis on the information and opinions set forth in those letters to ensure that they were accurate and credible, as that term is used in USPAP, correct, sir? A. That's my understanding.  Q. You didn't give the direction to anybody else for them to look over

the letters and ensure they were accurate and credible, right, sir? A. That's correct. Q. And you didn't ask Mr. Shapiro to do that, right sir? A. That's right. Q. And to your knowledge Mr. Shapiro didn't do that, right sir? A. To my knowledge, that's correct.").[3]

Mr. Hedden's suggestion in his declaration that he was involved in the "questions we developed," (Hedden Decl. ¶ 7) is also inconsistent with his deposition testimony.  Ex. 3 (Hedden Tr.) at 29:20-25 ("Q. So you are relying upon Mr. Shapiro's decisions and expertise in making those decisions [concerning iMS] in connection with providing your expert opinion here today, sir? A. Yes."); *id*. at 30:9-31:8 ("Q. So my question again is: If I need to understand how this part of your expert assignment was performed, I would need to go depose Mr. Shapiro, correct? Or talk to Mr. Shapiro? A. Mr. Shapiro would be the one that would answer those questions.").[4]

Nonetheless, despite his failure to do anything to evaluate or otherwise ensure the reliability of the iMS appraisal review opinions, Mr. Hedden purports to be able to blindly rely on them as a central component of his rebuttal of Dr. Kilpatrick's CAM methodology and findings.  *See* Ex. 3 (Hedden Tr.) at 210:10-22 ("Q. And that's the basis you rely upon; illustratively, you say Dr. Kilpatrick's analysis and methodologies in those three questions were flawed, right, sir?  A. His methodologies and opinions were contrary to those held by the local appraisers in that marketplace.  Q. And your basis for saying that is because the IMS letters, from the IMS appraisers, based on the questions you asked them, indicate that he's wrong?  A. Correct.").

---

[3]   As noted in FHFA's moving brief, Mr. Hedden further testified that he delegated all responsibility for obtaining the iMS opinion letters to his colleague Marc Shapiro, whom Mr. Hedden confirmed would be the right person to answer questions about the reviews. Ex. 3 (Hedden Tr.) at 30:9-31:8 ("Q. So my question again is: If I need to understand how this part of your expert assignment was performed, I would need to go depose Mr. Shapiro, correct? Or talk to Mr. Shapiro?  A. Mr. Shapiro would be the one that would answer those questions.").

[4]   Mr. Hedden's suggestion that the iMS letters are somehow reliable based on the reputation of the firm, (*see* Hedden Decl. ¶ 6), is also belied by his clear deposition testimony that he had never even heard of iMS. Ex. 3 (Hedden Tr.) at 22:2-9. Similarly, while Mr. Hedden refers in his declaration to details of the "FTI contract with iMS" and the "business arrangement between FTI and iMS," (Hedden Decl. ¶¶ 4, 5), at his deposition Mr. Hedden confirmed he had never seen the engagement letter and was unfamiliar with its terms. Ex. 3 (Hedden Tr.) at 37:16-23.

As set forth in FHFA's moving brief, the above concessions warrant the exclusion of any of Mr. Hedden's opinions and trial testimony that in any way rely on the iMS appraisers' review opinions.  *See Faulkner v. Arista Records LLC*, No. 07 CIV. 2318 LAP, 2014 WL 4547824, at *18-19 (S.D.N.Y. Sept. 15, 2014) (excluding expert testimony about an assistant's work where the assistant was inadequately supervised and "exercised far more discretionary judgment than an assistant gathering data"); *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007).  Mr. Hedden's failure to prepare, supervise, or otherwise verify the underlying iMS appraisal opinions forecloses him from testifying regarding those opinions.  *See United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) (admission of portions of a non-testifying expert's report relied on by a testifying expert was improper where there was no "opportunity to cross-examine [non-testifying expert] regarding the methodology he employed, statistical discrepancies in his report, or any other matters which might illuminate shortcomings in his work").  To allow Mr. Hedden to blindly rely on the iMS appraisers' opinions, thereby effectively adopting them as his own, would "circumvent the rules prohibiting hearsay," because he would "simply transmit . . . hearsay to the [fact finder]" and serve as "a conduit for the opinion of an unproduced expert."  *See Mejia*, 545 F.3d at 197 (citation omitted); *Dooney & Bourke,* 525 F. Supp. 2d at 661-664; *see also, e.g.*, *Quiles v. Bradford-White Corp.*, No. 10-CV-747, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012) (An expert "must give his own opinion based upon his own expert analysis.").[5]

---

[5]  Defendants' attempt to distinguish *Faulkner*, (Defs.' Opp. 9), is equally unavailing.  Mr. Hedden's blind reliance on expert analyses and opinions that he had no role in supervising or validating, in any shape or form, is no different than the testifying expert's blind reliance in *Faulkner*. *Faulkner*, No. 07 CIV. 2318 LAP, 2014 WL 4547824, at *18-19 (granting motion to exclude report of testifying expert, who "did not supervise her [colleague's] work" and where the colleague "exercised far more discretionary judgment than an assistant gathering data").

## II.   DR. KILPATRICK'S USE OF FORSYTHE/VALOCITY APPRAISER-RESEARCHERS TO COLLECT DATA IS ENTIRELY DISTINCT FROM MR. HEDDEN'S BLIND ADOPTION OF THE IMS APPRAISERS' OPINIONS

In a last ditch effort, Defendants attempt to compare Dr. Kilpatrick's use of appraiser-researchers that he hired and managed through Forsythe/Valocity to Mr. Hedden's blind reliance on the iMS appraisers. This argument is a fundamentally flawed and unconvincing comparison.

In stark contrast to Mr. Hedden's wholesale adoption of the iMS appraisers' appraisal opinions, Dr. Kilpatrick used individual appraiser-researchers he selected and managed through Forsythe/Valocity to collect, under his direction and control, factual data that he evaluated and utilized to reach his own appraisal review opinions through his CAM methodology. In sharp contrast to the iMS appraisers, the Forsythe/Valocity appraiser-researchers were given clear instructions, directly supervised by Dr. Kilpatrick and his team, and had their data collection results analyzed and verified through a quality control process established by Dr. Kilpatrick.[6] Further, these appraiser-researchers did not, like the iMS appraisers, render appraisal review opinions. To the contrary, they merely collected local data that Dr. Kilpatrick utilized to form his own appraisal review opinions.[7] There is simply no comparison between Dr. Kilpatrick's proper use of the Forsythe/Valocity appraiser-researchers to collect data for his consideration and use with his CAM methodology and Mr. Hedden's blind and wholesale adoption of the anonymous iMS appraisers' appraisal review opinions.

---

[6]  Ex. 4 (Kilpatrick 7/14 Tr.) at 87:9-88:21 ("Q. And who are the folks outside of Greenfield working at your direction? A. We engaged a team of inspectors from two organizations, Forsythe Appraisal and Valocity []Corporation. They acquired appraisers for us in local communities, all of those appraisers, of course, vetted by us and vetted by FHFA. And they, subject to a couple of layers of QC, assisted us on the outside. Q. Did . . . you provide instructions to those individuals as to how to gather data to complete -- how to gather data for this project? A. Yes. Q. Did you quality control their work? A. Yes."); *id.* at 89:2-4 ("Q. Did folks at Greenfield QC the work done by Forsythe and Valocity? A. Yes."); Ex. 5 (Kilpatrick 7/15 Tr.) at 62:2-6 ("I mean, [] the Forsythe/Valocity people did a good job and followed instructions. But we had an appropriate and rigorous QC process.").

[7]  Ex. 6 (Credibility Report) Appendix 4-4 ("Please note that your involvement is not to be construed as anything other than a request for data."); Ex. 4 (Kilpatrick 7/14 Tr.) at 102:11-103:9 ("Q. When you state that these individuals are "Providing material assistance," what did you mean? A. Well, I simply wanted to inform them that they were not conducting an appraisal review. I was conducting an appraisal review and they were assisting me in the conduct of that. . . . Material assistance is not clerical assistance. They're not just typing something or running a copy machine, but rather they're actually assisting with the gathering of data."); *id.* at 103:10:104:11 ("Q. Did their work, the work of the [Forsythe/Valocity] inspectors, require the exercise of judgment? A. I tried to limit that as much as possible. . . . [I]t was my purpose to narrow the scope of their work in such a fashion that minimal, if any, judgment would have to be rendered.").

5

**CONCLUSION**

For the reasons stated above, FHFA respectfully requests that the Court grant FHFA's Motion to Exclude the Expert Testimony of Michael Hedden to the extent any such testimony or opinions rely on or make reference to the work performed by the iMS appraisers, including, but not limited to, Appendix C to Mr. Hedden's August 14, 2014 expert report.


DATED:  February 2, 2015
        New York, New York


  _/s/ Philippe Z. Selendy_____
Philippe Z. Selendy
Sascha N. Rand
Jonathan C. Eser
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency,*
*as Conservator for Fannie Mae and Freddie Mac*