**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7260**

WRITER'S INTERNET ADDRESS
**philippeselendy@quinnemanuel.com**

February 9, 2015

**VIA ELECTRONIC MAIL**

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA v. Nomura Holding America, Inc., et al.*, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

FHFA respectfully requests that Defendants' Motion *in Limine* No. 8 ("Mot.") be denied. While Defendants seek to preclude FHFA's trial exhibits 482 and 700 as irrelevant, those exhibits provide compelling circumstantial evidence that Nomura's representations regarding the Mortgage Loans collateralizing the Securitizations were materially false.

## BACKGROUND

In November 2006, Nomura conducted diligence on OwnIt 03—a loan pool that did not feed into the relevant SLGs, but that Nomura wished to purchase from OwnIt in order to securitize the underlying loans—and found that, although the loans in the pool were described as Alt-A, "the[ir] characteristics [were] more subprime. 100% CLTV on just about everything." (Ex. 1 (Px. 1062 at NOM-FHFA_05811155)). Christopher Scampoli, a contract employee who worked in Nomura's diligence group, noted that, within OwnIt 03, Nomura found "a significant number of loans with recent bankruptcies and delinquencies after the bankruptcy." *Id*. at NOM-FHFA_05811156. Based on the results of this diligence, Neil Spagna, the director of Nomura's diligence group from the middle of 2006 through November 2007, stated that Nomura "need[ed] to upsize the due diligence on the 2nd [lien loans]" in its contemporaneous diligence review of another OwnIt acquisition pool, OwnIt SP02, an at-issue loan pool, from which Nomura securitized 1,438 loans into the relevant SLG of the NHELI 2007-2 Securitization.[1] *Id*. Despite

---

[1] OwnIt was by far the largest originator in the NHELI 2007-2 SLG, and because of this, any evidence relating to OwnIt is more likely to be relevant. Defendants own expert, David Mishol, does not dispute that out of the 3,001

quinn emanuel urquhart & sullivan, llp

NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Mr. Spagna's request that Nomura upsize the diligence on this pool beyond the 25% originally agreed to with Nomura (Ex. 4 (Px. 193 at NOM-FHFA_04479134)), there is no evidence that it ever did so, as the Court has recognized. *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7232443, at *35 (S.D.N.Y. Dec. 18, 2014).

In January 2007, roughly one month after OwnIt went out of business, Nomura reviewed certain second-lien loans in three OwnIt pools that did not feed into the relevant SLGs but that that Nomura had purchased—OwnIt 01, 02 and 03. Specifically, Nomura looked at second-lien loans in those pools that it had not reviewed before purchase. (Ex. 5 (Px. 485 at NOM-FHFA_05073033)). This review was referred to as the "Ownit SP02 Part 2" review, even though the OwnIt SP02 pool was not one of the three pools that Nomura reviewed. *Compare* (Ex. 6 (Px. 271 at NOM-FHFA_04671106, spreadsheet entitled Nomura Complete Reconciliation) at NOM-FHFA_04671106 (showing list of loans in the Ownit SP01, SP02, 01, 02, and 03 loan pools))) *with* (Ex. 7 (Px. 484 at NOM-FHFA_05072974, spreadsheet dated February 6, 2007 titled Nomura Extract (listing all loans subject to diligence as part of the Ownit SP02 Part 2 pool that did not include loans in the OwnIt SP02 pool, but did include loans in the not-at-issue OwnIt 01, 02 and 03 pools))). Importantly, however, the OwnIt 03 pool—which led Mr. Spagna to request additional diligence on the OwnIt SP02 pool—*was* part of the "Ownit SP02 Part 2" review. *Id.*

On January 31, 2007, Mr. Spagna and Mr. Sabo discussed the results of this review, prompting Mr. Sabo to ask: "Is this getting worse or something??!!?" (Exs. 8, 9 (Px. 482 at NOM-FHFA_05072690, Px. 700 at NOM-FHFHA_05479219)). Mr. Spagna responded by asking: "These all seconds?", to which Mr. Sabo replied affirmatively. Mr. Spagna's response was: "What crap[.]" *Id.*[2] Less than two minutes later, Mr. Sabo agreed: "Yessir[.]" *Id.* Later that same day, Nomura issued the NHELI 2007-2 Securitization, which contained 1,438 loans from the OwnIt SP02 pool. (Ex. 2 (Ex. 1 to the Cipione Dec. (Row 135 "Ownit SP02," Column J "NHELI 20072"))).

## ARGUMENT

### I.   The Exhibits At Issue Are Probative Of Falsity And Materiality

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence of a fact at issue can be either direct or circumstantial, and "circumstantial evidence … can be just as probative as direct evidence." *FHFA v. HSBC N. Am. Holdings, Inc.*, 2014 WL 3702587, at *21 (S.D.N.Y. July 25, 2014) (the "Knowledge Opinion").

---

total loans in the SLG, 1,438 were OwnIt loans. Ex. 2 (Ex. 1 to the Cipione Declaration); *accord* Ex. 3 (Ex. 8 to the Mishol Decl).

[2]  Even Defendant RBSSI's vice president of credit risk management, Brian Farrell, agreed with Mr. Spagna and Mr. Sabo that the loans in the NHELI 2007-2 Securitization were "crap." Ex. 10 (Px. 1258 at RBS-FHFA-SDNY-0487343 (Mr. Farrell requesting "to review 25% of the total loan population" for NHELI 2007-2 because the pool was "crap")).

At trial, FHFA will present direct evidence that the relevant representations in the Prospectus Supplements for the relevant underlying securities were materially false, including through the testimony of its re-underwriting expert, Robert Hunter. FHFA also intends to present circumstantial evidence that materially defective loans were either intentionally placed into, or improperly not filtered out of, the SLGs, including by showing that (i) originators of SLG loans were systematically originating loans that were defective (i.e., loans that did not comply with underwriting guidelines, had inaccurate appraisals, etc.); and (ii) that Nomura's and RBSSI's securitization and diligence procedures were not designed to identify the vast majority of these defective loans, or to prevent such loans from being securitized into the SLGs.

*First,* the exhibits at issue are part of this circumstantial evidence. Mr. Spagna's emails from November 2006 show that he requested additional diligence for the OwnIt SP02 pool based on negative diligence results for the OwnIt 03 pool but that additional diligence was never conducted. Mr. Spagna's emails further reveal that both he and Mr. Sabo agreed that the OwnIt 03 loans were "crap." These emails tend to show that OwnIt was systematically originating defective loans that were included in multiple loan pools because Nomura's diligence process was unable to isolate and exclude these loans before securitization. *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,* 902 F. Supp. 2d 476, 488 (S.D.N.Y. 2012) (descriptions of government and private investigations that revealed underwriting failures by originators "provide a basis to assert that there was a systematic failure by the defendants in their packaging and sale of RMBS").

*Second,* the exhibits also show that Nomura failed to screen out defective loans before securitizing them, as the loans referred to in the exhibits were ones that Nomura had *not* reviewed before purchase or securitization. As the Court previously noted in discussing this same issue, while "Defendants suggest that the Court should excuse a 'single instance of a relaxation of standard[s],'" this incident is "illustrative, not exceptional." *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7232443, at *35 (S.D.N.Y. Dec. 18, 2014). Moreover, because Mr. Spagna showed a direct link between the OwnIt 03 and SP02 pools—such that defects in the former indicated similar defects in the latter—these emails tend to show that material defect rates in the OwnIt 03 pool indicated similar defect rates in the OwnIt SP02 pool, and thus such defects in the relevant SLG of the NHELI 2007-2 Securitization.

The circumstantial evidence that OwnIt was originating defective loans, and that Nomura was not screening these defective loans out of its securitizations, bolsters and confirms the findings of Mr. Hunter. Of the 98 sample loans in the NHELI 2007-2 Securitization, OwnIt originated 48. Of these 48 sample loans, Mr. Hunter found that 46 had underwriting defects, and the underwriting defects for 33 of those loans substantially and meaningfully increased the credit risk of the loan. (Ex. 11 (Ex. 2A, 2014.10.06 Hunter Report)).

## II.   Defendants' Arguments That The Exhibits At Issue Are Irrelevant Are Without Merit

*First*, Defendants' suggestion that Mr. Spagna's description of the loans in the "Ownit SP02 Part 2" as "crap" was a benign reference to the credit quality of the loans, Mot. at 3, is disingenuous. Mr. Spagna was plainly reacting to a post-purchase, loan-level diligence review performed for Nomura. Mr. Sabo's question based on those results—"Is this getting worse or

3

something??!!?"—shows that he and Mr. Spagna were discussing results that were far from "readily apparent to any investor." Mot. at 2. Defendants' characterization is also belied by the cited Nomura emails questioning the quality of OwnIt's loans at the end of 2006 and beginning of 2007. Moreover, while the nature of Mr. Spagna's comments are beyond serious dispute, to the extent that they are disputed, it is up to the fact-finder to consider which party's interpretation of the documents is more persuasive. *Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Drawing inferences from direct and circumstantial evidence is a routine and necessary task of any factfinder. The very essence of [the factfinder's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Decisions as to ... which of competing inferences to draw are entirely within the province of the trier of fact.") (internal citations and quotations omitted).

*Second*, Defendants argue that Mr. Spagna's comments in the exhibits at issue are irrelevant because they were partially prompted by the fact that the loans being examined were all second-lien loans. Mot. at 3. But 496 of the 2,557 loans purchased in the entire OwnIt SP02 NHELI 2007-2 pool, and 196 of the 1,464 OwnIt SP02 loans in the relevant NHELI 2007-2 SLG, were second-lien loans, thus any discussion of OwnIt second-lien loans is plainly relevant. *Compare* Ex. 12 (Px. 565 at NOM-FHFA_05231812 (Column AR)) *with* Ex. 13 (Px. 148 at NOM-FHFA_00000005 (NHELI 2007-2 pre-closing loan tape, containing 194 of those second-lien loans)).

*Finally*, Defendants argue that, because the Court ruled that the GSEs' knowledge of weaknesses in some originator's practices did not support a finding of GSE knowledge regarding specific Mortgage Loans, and because the Court found that the GSEs were not on notice for statute of limitations purposes even though they were generally aware of the risk of appraisal bias, only evidence regarding the Mortgage Loans and Securitizations is relevant. Mot. at 2. This argument conflates Defendants' burden of proving the GSEs' *knowledge* that specific representations were false, Knowledge Opinion, at *5, and of proving that the GSEs' were on *notice* of facts sufficient to plead their claims based on such falsity, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2014 WL 6462239, at *1 (S.D.N.Y. Nov. 18, 2014), with FHFA's burden of proving the *existence* of falsity, 15 U.S.C. § 77*l*(a)(2). Defendants were unable to prove that the GSEs actually knew or were on notice of falsity, in part, because the GSEs were entitled to reasonably rely on Defendants' purported diligence, *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, No. 11 CIV. 5201 DLC, 2013 WL 3284118, at *18 (S.D.N.Y. June 28, 2013); Knowledge Opinion, at *20, and they did not have access to the relevant loan files, Knowledge Opinion, at *5, 17. Here, by contrast, FHFA is entitled to present circumstantial evidence that Nomura placed defective loans into the SLGs. *UBS Americas Inc.*, 2013 WL 3284118, at *21 (S.D.N.Y. June 28, 2013).

For the reasons stated, FHFA respectfully requests that Defendants' motion be denied.

Very truly yours,

/s/ Philippe Z. Selendy

Philippe Z. Selendy

4