**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

February 9, 2015

**BY ELECTRONIC MAIL**

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:    *FHFA v. Nomura Holding America, Inc., et al.*, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

  FHFA respectfully requests that the Court deny Defendants' Motion *in Limine* No. 10 ("Mot."), which seeks to preclude FHFA from introducing evidence or argument regarding a petition sent by 11,000 appraisers to the Appraisal Subcommittee of the Federal Financial Institutions Examination Council (the "Appraiser Petition" or "Petition"). The petition is relevant because thirty-three of the appraisers who signed it performed appraisals for thirty-five of the Nomura properties in the relevant SLGs, and the Appraiser Petition supports an inference that these appraisers did not subjectively believe their valuations.

## BACKGROUND

  As recounted in a 2009 New York Times article: "Before real estate prices went out of control, appraisal work was straightforward. The appraiser examined a property inside and out, judging it against the prices that similar properties in the neighborhood were fetching. If the appraisal value matched the sales price, the lender financed the loan." Ex. 1 (David Streitfeld, *In Appraisal Shift, Lenders Gain Power and Critics*, N.Y. Times, Aug. 18, 2009). However, "lending standards collapsed during the housing boom," creating a dangerous incentive for brokers, banks, and even homeowners to pressure appraisers to inflate values in order to ensure that deals closed. *Id.* As an example, the article cites an appraiser's account of receiving daily phone calls from lenders asking him to deliver values on properties sight-unseen. *Id.*

  The Appraiser Petition, Defs.' Ex. 1, provided an early warning of this conduct. "From 2000 to 2007, a coalition of appraisal organizations circulated and ultimately delivered to Washington officials a public petition; signed by 11,000 appraisers and including the name and address of each, it charged that lenders were pressuring appraisers to place artificially high prices on properties.". Ex. 2 (FCIC Rpt.) at 18. Thirty-three of the appraisers who signed the Petition performed appraisals relevant in this Action, and these individuals valued a total of 35 Nomura sample properties. Ex. 3 (Kilpatrick May 15, 2014 Credibility Report) at 123-24.

  The Petition stated that, "on a daily basis" "banks, savings and loans, mortgage brokers, credit unions, [ ] loan officers" and "real estate agents" exerted "pressure" on appraisers to "hit or exceed a predetermined value" in conducting appraisals. Defs.' Ex. 1 at 1. It also stated that this "pressure" included withholding business from appraisers who refused to "inflate values,"

"guarantee a predetermined value," or "ignore deficiencies in the property," as well as "black listing" honest appraisers in favor of "'rubber stamp'" appraisers. *Id.* These concerns were echoed in a survey of 1,200 appraisers, released in February 2007, which found that 90 percent of appraisers reported that they had been pressured to inflate appraisal values, and more than 75 percent reported "'negative ramifications' if they refused to cooperate and come in with a higher valuation." Ex. 4 (Kenneth R. Harney, *Appraisers Under Pressure to Inflate Values*, Wash. Post, Feb. 3, 2007). In a parallel survey conducted several years earlier in 2003, just 55% of appraisers reported similar pressure. *Id.* In 2007, the Appraiser Petition was submitted to the Appraisal Subcommittee, which sits under the Federal Financial Institutions Examination Council and is charged with protecting the "[f]ederal financial and public policy interests in real estate related transactions" by ensuring that real estate appraisers are competent, professional, and effectively supervised. 12 U.S.C. § 3331.

## ARGUMENT

### I. The Appraiser Petition Is Probative Of The Appraisers' Subjective Beliefs In Their Appraisals

As Defendants recognize, to establish the falsity of the LTV representations, FHFA must present evidence from which the fact finder can infer that the Nomura appraised values "were both false and not honestly believed by [the appraisers] when made." Mot. 2 (quoting *FHFA v. UBS Ams., Inc.*, 858 F. Supp 2d. 306, 328 (S.D.N.Y. 2012)) (brackets in original) (further quotation marks omitted). In proving the subjective falsity prong of this standard, FHFA is entitled to present "circumstantial evidence that sheds light on" the relevant appraisers' "state of mind" when they generated the values reflected in the Prospectus Supplements. *FHFA v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *5 (S.D.N.Y. Jan. 28, 2015); *accord Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092-93 (1991) (proof of subjective falsity may include "circumstantial evidence bearing on the facts that would reasonably underlie the reasons claimed and the honesty of any statement that those reasons are the basis for a recommendation or other action").

The Petition evidences the industry-wide pressure appraisers were placed under during the relevant time, including 33 appraisers who performed original appraisals on 35 subject Nomura properties. This is circumstantial evidence from which the Court, coupled with the extent of the Nomura appraisals' inflation and deviation from Uniform Standards of Professional Appraisal Practice ("USPAP"), can infer subjective disbelief. Moreover the Petition provides context for and corroborates the conclusions of FHFA's appraisal expert, Dr. John Kilpatrick, that a substantial number of appraisals underlying the SLG loans—including appraisals performed by the appraisers who signed the petition—were not "credible" as defined by USPAP and appraisal practice. The Petition is plainly relevant under Fed. R. Evid. 401.

Defendants' arguments, accordingly, ring hollow. *First*, as 33 of the appraisers who signed the Petition performed appraisals for 35 loans included in the SLGs, Defendants are wrong that the Petition is not tied "to the specific loans at issue." *See* Mot. 3.[1] Indeed, of the 11

---

[1] These 33 Nomura appraisers valued a total of 35 Nomura subject properties, as disclosed almost a year ago in Dr. John Kilpatrick's expert report. *See* Ex. 3 (Kilpatrick May 15, 2014 Credibility Report) at 123-24; *see also* Ex. 5 (Appendix 7-1 to Kilpatrick May 15, 2014 Credibility Report).

2

Nomura sample appraisals prepared by these appraisers that he evaluated for credibility, Dr. Kilpatrick concluded that 10 of the 11 were not credible.[2]

*Second*, Defendants' objection that the Petition does not specify with particularity when each appraiser experienced pressure, or state that any particular appraiser succumbed to that pressure similarly misses the mark. Mot. 3. FHFA is not offering the Petition as direct evidence that any specific appraisal was false. Rather, the Petition is being offered as circumstantial evidence that appraisers across the country at the relevant time were pressured to render "dishonest appraisals" "on a daily basis," Defs.' Ex. 1 at 1, which supports an inference that numerous appraisals throughout the mortgage industry were subjectively false when made. The Petition thus is directly relevant to and probative of the issue it is being offered for—whether appraisers in the industry believed during the relevant time that they were expected to provide inflated value opinions. *See Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 147 (2d Cir. 1981) ("[E]vidence need not be conclusive in order to be relevant. An incremental effect . . . is sufficient."); *cf. United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) (reversing district court's exclusion of a conversation that took place five years before charged conspiracy as temporally irrelevant because "the definition of relevance . . . is very broad," and the conversation "concerned the nature of an ongoing [ ] requirement") (internal citation omitted).[3]

At most, Defendants' arguments "reflect on the *weight* of the evidence, not its *relevance,* and therefore have no bearing on whether" the Petition is admissible. *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) ("[T]he task of choosing among competing, permissible inferences is for the fact-finder"); *United States v. Ashburn*, 2015 WL 136098, at *4 n.6 (E.D.N.Y. Jan. 9, 2015) (emphasis in original).

*Third*, Defendants are misguided to suggest that FHFA cannot present the petition as circumstantial evidence of falsity because Defendants failed to provide sufficient evidence—direct or circumstantial—that the GSEs' actually knew or were on notice of actual falsity. *See* Mot. 2. The Court's knowledge decision was, in part, based on the showing that the GSEs lacked access to the underlying loan files and were entitled to reasonably accept that Defendants' diligence ensured that the SLG loans were more creditworthy than the general set of loans in the

---

[2] Dr. Kilpatrick is prepared to testify at trial that 90% of the relevant appraisals prepared by these petitioners lacked credibility. From the pool of 35 appraisals prepared by the 33 petitioners, Dr. Kilpatrick had sufficient information to assess the credibility of 11 appraisals. Dr. Kilpatrick evaluated these 11 appraisals with his Credibility Assessment Model, a deterministic model that assessed the degree to which the original Nomura sample appraisals deviated from established appraisal standards and practices based on the answers to 31 yes or no questions . His opinion is that 10 of 11 were non-credible. Ex. 3 (Kilpatrick May 15, 2014 Credibility Report) at 124.

[3] Defendants are also incorrect that the First Circuit's holding in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 774 (1st Cir. 2011) is instructive. *See* Mot. 2. The First Circuit's decision in *Plumbers' Union* stands merely for the proposition that, to survive a motion to dismiss, an RMBS plaintiff must allege facts "suggestive of, rather than merely consistent with, a finding of misconduct[]". *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013) (adopting First Circuit's standard). That a "linkage to individual certificates"—or trusts, or aggregators—which, is present here, is needed to survive a motion to dismiss, does not mean that FHFA is constrained at trial to *only* proffer property-specific evidence concerning the pressures placed on appraisers to inflate appraisal values during the relevant time frame. The Petition is circumstantial evidence that provides relevant context for its specific, "loan-level" evidence of subjective falsity.

Case 1:11-cv-06201-DLC   Document 1504   Filed 03/22/15   Page 4 of 6

Opposition to Defendants' Motion *in Limine* No. 10

market. *See FHFA v. HSBC N. Am. Holdings, Inc.*, 2014 WL 3702587, at *22 (S.D.N.Y. July 25, 2014). FHFA's ability to rely on Defendants' representations and due diligence has nothing whatsoever to do with the question of whether the appraisal values upon which the LTVs disclosed in the Prospectus Supplements were based were subjectively believed by the appraisers that performed the original appraisals.

Further, in granting summary judgment to FHFA on Defendant's limitations defense, this Court did not acknowledge that the GSEs "were generally aware of the risk of appraisal bias" in the SLGs, as Defendants assert. Mot. 2 (quoting *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 6462239, at *9, *10 (S.D.N.Y. Nov. 18, 2014)) (further quotation marks omitted). Rather, recognizing that the GSEs were permitted to rely on Defendants' representations, the Court held that Defendants had "offer[ed] no evidence that the loan tapes could have been gathered, the sampling performed, [and] the AVM run on each sampled loan" in time to trigger the statute of limitations. *Id.* at *18, 24. The Court's reasoning on this point has nothing to do with FHFA's ability to proffer relevant, circumstantial, evidence of the pressure appraisers believed they were under in the relevant period. *See Nomura Holding Am.*, 2015 WL 353929, at *5.

## II. The Appraiser Petition Is Not Inadmissible Hearsay

The Petition will be offered as circumstantial evidence that appraisers, and specifically 33 appraisers that performed appraisals on the Nomura sample properties, *believed* during the relevant period that they were under pervasive pressure to inflate values. The petition is, thus, offered for state of mind, not the truth that such inflation in fact occurred. *United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986) (lower court erred by excluding out of court statements, as they were "admissible as circumstantial evidence of [a relevant actor's] state of mind"); *see also*, *e.g.*, *Certified Envtl*, 753 F.3d at 89 (district court erred in excluding as hearsay evidence that "was not offered for its truth but to show that the statements occurred and that, given their effect on the defendants' state of mind, they provided a . . . basis for the defendants' actions."); *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) ("Where, as here, the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted.") (quotation marks omitted); *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 129 (E.D.N.Y. Dec. 31, 2013) (in Fair Housing Act case, internet postings and news articles reflecting hostility to Latinos were admissible as non-hearsay, because "[w]hat matters is not that the concern and hostility, as reflected in these materials, were real or accurate, but that their mere expression could have set the tone and thus shaped the Village's discriminatory purpose").

Further, the fact that 11,000 appraisers signed the Petition, despite apparently believing that they might be blacklisted, Defs.' Ex. 1 at 1, supports an inference that those appraisers widely believed that they were being pressured to inflate values during the relevant period, even if no such pressure was actually applied. *Cf.* Ex. 1 (N.Y. Times article by Streitfeld) ("Banks and appraisal management companies say appraisers can be hypersensitive. 'To some appraisers, the fact that we call you and ask a question is pressure,' said Mr. [Donald] Blanchard of Lender Processing Services.").[4]

---

[4] The Petition's enormous number of supporters from across the country indicates that appraisers who did not sign had the same belief, and that the belief was far-reaching. *Cf. ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (allegations of motive support inference of *scienter*); (footnote continued)

### III. The Appraiser Petition Meets The Test For Authenticity

Defendants finally argue that the Petition cannot be authenticated because FHFA does not intend to call any of its signatories at trial. *See* Mot. at 3 (relying solely on *United States v. Vayner*, 769 F.3d 125(2d Cir. 2014), in which the Second Circuit held that the prosecution had not properly authenticated defendant's purported personal profile page on a social networking website). *Vayner* itself refutes this argument, as it confirms the well-settled rule that authentication need not be proved by the testimony of a witness with knowledge. *See Vayner*, 769 F.3d at 133 ("We express no view on what kind of evidence would have been sufficient to authenticate the VK page. … Evidence may be authenticated in many ways … [and] the type and quantum of evidence necessary to authenticate a web page will always depend on context.") (quotation marks omitted); *see also* Fed. R. Evid. 901 (testimony of witness with knowledge is only one example of evidence that satisfies authentication requirements). Further, the prosecution in *Vayner* sought to admit the defendant's social media profile based solely on the appearance of defendant's name and picture—information that was also possessed by others who "may have had reasons to create a profile page falsely attributed to the defendant". *Id.* at 132.

Here, Defendants have not identified any reason to suspect the Appraiser Petition has been falsified, and copious evidence supports and underscores its patent authenticity. *First*, the Petition was presented to a Congressional Committee by the representatives of various appraisal bodies, Ex. 2 (FCIC Rpt.) at 18, and is listed in the FCIC Report: it has "11,000" signatures, "including the name and address of each," and "it charge[s] that lenders were pressuring appraisers to place artificially high prices on properties," *Id*. *Second*, numerous experts testified in these coordinated Actions that the Appraiser Petition is exactly what it appears to be, as did appraiser Brian Masterson, a signatory of the Petition. Ex. 6 (summary exhibit collecting testimony). As "[t]he bar for authentication of evidence is not particularly high," and "proof of authentication may be direct or circumstantial," *Vayner*, 769 F.3d at 130, this evidence is more than sufficient to authenticate the Appraiser Petition. *See also Del Valle v. City of New York*, 2013 WL 444763, at *8 n.10 (S.D.N.Y. Feb. 6, 2013) (Cote, J.) (authenticating report based on its "internal characteristics … in conjunction with … deposition testimony").[5]

For the reasons stated, FHFA respectfully requests that Defendants' motion be denied.

---

*Abbey's Transp. Servs., Inc. v. N.L.R.B.*, 837 F.2d 575, 579 (2d Cir. 1988) ("[T]he element of knowledge may be shown by circumstantial evidence from which a reasonable inference may be drawn.").

[5] At the court's request, FHFA is prepared to make a FOIA request to the Federal Financial Institutions Examination Council for the copy of the Petition that was submitted to them and referenced in their report. The production in response to such a request would qualify as a self-authenticating official publication. *See* Fed. R. Evid. 902(5); *see also Williams v. Long*, 585 F. Supp. 2d 679, 690 (D. Md. 2008) (FOIA production of an exhibit referenced in a restricted portion of a government website is self-authenticating under Rule 902(5)).

Respectfully submitted,


/s/ Philippe Z. Selendy_____
Philippe Z. Selendy
(philippeselendy@quinnemanuel.com)
Sascha N. Rand
(sascharand@quinnemanuel.com)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency*

cc:  All Counsel of Record