DX
2940

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY, AS
CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION AND
THE FEDERAL HOME LOAN MORTGAGE
CORPORATION,

       Plaintiff,

       -against-

NOMURA HOLDING AMERICA INC., *et al.*,

       Defendants.

No. 11-cv-6201 (DLC)

ECF Case

STATE OF NEW YORK    )
                    )   ss.:
COUNTY OF SUFFOLK  )

## AFFIDAVIT OF WILLIAM SCHALL

William Schall, being duly sworn, deposes and says:

       1.    My name is William Schall.  I am 54 years old, am employed as a certified

residential real estate appraiser in the State of New York and provide this affidavit as my direct

testimony at trial.

### Background

       2.    I live at ▮▮▮▮▮▮▮▮▮, in ▮▮▮▮▮▮▮▮▮▮.

       3.    I have been a certified appraiser in New York since 2000.  For the last 15

years, my work as an appraiser has primarily involved one- to four-family family properties,

including condominiums and cooperatives, located in ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮, New

York.  I estimate that on average I conduct about 250 appraisals in a year.

       4.    An appraisal is an opinion of value that represents an estimate of value in

the professional judgment of the appraiser.  Over my many years of experience as an appraiser, I

have become familiar with the Uniform Standards of Professional Appraisal Practices ("USPAP"), which provides the general governing standards for conducting appraisals. I have always conducted my appraisals in accordance with USPAP, and especially the most fundamental principle of USPAP, which is that an appraisal be credible, meaning worthy of belief and well-supported by evidence. I have never issued an appraisal, or signed an appraisal as a supervisory appraiser, that I did not believe was credible and accurate.

Appraisal at Issue

5.      It is my understanding that I was the supervisory appraiser for an appraisal that is at issue in this lawsuit—the appraisal for the property located at ███████████

████████████. The appraisal for that property is attached hereto as Defense Exhibit 2668 ("DX-2668"), and my signature appears on pages 3, 11, 12, and 13 of DX-2668.

6.      I was a supervisory appraiser for this review—meaning that an appraiser who was not yet certified in New York conducted the original appraisal, and I supervised his work and signed off on the final opinion of value. To perform a supervisory review, I would, among other things, review the original appraiser's report in detail to determine if it was complete and accurate. I also would check the Multiple Listing Service (a database of information about properties available to real estate professionals, including appraisers) to evaluate whether the original appraiser's selection of comparable properties (that is, properties that are similar to the subject property, whose sale prices are used to estimate a value for the subject property) was appropriate, and to verify information about market conditions that was included in the original appraiser's report. I also would review the original appraiser's adjustments to comparables to verify that they were reasonable and accurate. An adjustment is made to the sales price of a comparable to account for any difference in characteristics that

would result in the comparable selling for a higher or lower price than would be expected for the subject property.

7.      The original appraiser, Seth Smith, worked for me before receiving his license and starting his own appraisal company. I had no reason then, and have no reason now, to doubt his competency or credibility or honesty as an appraiser.

8.      Mr. Smith appraised the property in August 2005 as having a value of $380,000. I reviewed the appraisal and came to the same conclusion. I believed at the time that the appraisal was an accurate opinion of value, based on my professional judgment, and upon review of DX 2668 today, I see no reason to believe it was inaccurate at the time.

9.      The appraisal is found within the  Individual Condominium Unit Appraisal Report for ███████████████████████████ which begins on page 2 of DX-2668. The Individual Condominium Unit Appraisal Report is a commonly used form for completing appraisals which is accepted by both Freddie Mac and Fannie Mae. As shown in that report, the subject property is a condominium in ██████████████  The opinion of value for the property as of August 2005 was based largely on the comparison of the subject property with comparables. The use of comparables in forming an opinion of value is known as the "sales comparison approach," and is, in my judgment and experience, the preferred method for rendering an appraisal.

10.     In this instance, it was very easy to select appropriate comparables because the subject property was a condominium located in a large complex—meaning that the best comparables would be other condominiums in the same complex that had sold in the relatively recent past. As shown by the Individual Condominium Unit Appraisal Report, Mr. Smith used three such "comparables" in coming to his opinion as to the value of the subject

property, two of which were virtually identical to the subject property.  The three comparables

were located at: ███████████████████████ ("Comparable Sale #1"); ████████

███████████████████ ("Comparable Sale #2"); and ██████████████████

██████████████ ("Comparable Sale #3").  Comparable Sale #1 and Comparable Sale #2

had sold within eight months prior to the effective date of the appraisal, for amounts of $405,000

and $390,000, respectively.  Comparable Sale #3 had sold for $230,000 one month before the

effective date of the appraisal.  Mr. Smith appraised the subject property as having a value of

$380,000, and I agreed with that appraised value.   The sale dates and prices of the subject

property and comparables are shown in the following chart, which summarizes information

found on page 3 of DX-2668:



| | Subject | Comparable Sale #1 | Comparable Sale #2 | Comparable Sale #3 |
|---|---|---|---|---|
| **Sale Date** | ██████ (date of appraisal) | █████ | █████ | █████ |
| **Appraised Value/Adjusted Price** | $380,000 (appraised value) | $405,000 | $390,000 | $317,500 |

11.     The three comparable properties were similar to the subject property in several

important ways.  The similarities are shown in the following chart, which summarizes

information found on page 3 of DX-2668:

| Feature | Subject | Comparable Sale #1 | Comparable Sale #2 | Comparable Sale #3 |
|---|---|---|---|---|
| **Proximity to Subject** | -- | ▮ | ▮ | ▮ |
| **Gross Living Area** | ▮ Sq. Ft. | ▮ Sq. Ft. | ▮ Sq. Ft. | ▮ Sq. Ft. |
| **Total Room Count** | 6 | 6 | 6 | 5 |
| **Bedrooms** | 2 | 2 | 2 | 2 |
| **Bathrooms** | 2.5 | 2.5 | 2.5 | 1 |
| **Project/Size** | 3-Story Townhouse | 3-Story Townhouse | 3-Story Townhouse | 2-Story Townhouse |
| **Design** | Condo | Condo | Condo | Condo |
| **Actual Age** | ▮ | ▮ | ▮ | ▮ |
| **Condition** | Average | Average | Average | Fair |
| **Functional Utility** | Average Typical | Average Typical | Average Typical | Average Typical |
| **Heating/Cooling** | Elec/CAC | Elec/CAC | Elec/CAC | GHW/CAC |
| **Garage/Carport** | None | None | None | None |
| **Porch/Patio/Deck** | Patio | Patio | Patio | Patio |

12.     Because this was a condominium in a large complex, the first two comparables were virtually identical to the subject property, and required no adjustments. The third comparable was not as similar, and so adjustments needed to be made. The adjusted sales price, which includes any adjustments made by the appraiser, can then be used as a more accurate comparison of value for the subject property.

13.     For Comparable Sale #3, the original appraiser made adjustments based on the size of the property, as it was a two-story townhouse and the subject property was a three-story townhouse. Mr. Smith thus made a positive adjustment to Comparable Sale #3 of $50,000, to account for this difference. Comparable Sale #3 was also in "fair" condition, unlike the subject property, which was in "average" condition. "Average" was considered a better condition than "fair," and so Mr. Smith made a positive adjustment of $15,000 to Comparable

Sale #3. Mr. Smith also made smaller, positive adjustments to Comparable Sale #3 based on the fact that it did not have a basement, had one less room (and fewer bathrooms) than the subject property, and did not have a patio. I agreed with the adjustments that Mr. Smith made.

14.     Once the adjustments to the third comparable were accounted for, the adjusted sales price of the comparables was as follows:  $405,000 (Comparable Sale #1), $390,000 (Comparable Sale #2), and $317,500 (Comparable Sale #3). I agreed with the appraised value of the subject property at $380,000 because I understood that Mr. Smith had weighted Comparable Sales #1 and #2 more heavily in his analysis, which made sense because they were the most comparable to the subject property.

15.     Mr. Smith also reported in the appraisal (p. 3 of DX-2668) that neighborhood growth was stable, that property values were stable, that supply and demand was in balance, and that average marketing time was between 3-6 months. Mr. Smith described the market as "stable to upward" with "an abundance of potential purchasers." I concurred with this assessment based on my own review of the Multiple Listing Service at the time. I regularly used the Multiple Listing Service at the time to gather relevant information about the market, and to my knowledge Mr. Smith did the same.

16.     Mr. Smith and I reviewed the prior sales of the subject property and the comparable properties. For both the subject property and the comparables, there were no prior sales within the past 36 months, which was noted on the appraisal form on page 3 of DX-2668.

17.     The appraisal did not include an estimate based on the "Cost Approach to Value." This is because the property was a condominium—there is no purpose in using the cost approach method when a person cannot construct an individual condominium, and there is no land value for an individual condominium unit.

18.     In sum, Mr. Smith's appraisal value of $380,000 was well supported at the time Mr. Smith rendered it and I reviewed it, as of March 2006.

Dr. Kilpatrick's Criticisms

19.     I understand that an expert witness for plaintiff, Dr. John A. Kilpatrick, has opined or will opine that this appraisal (DX-2668) was substantially overvalued. I do not agree with the value Dr. Kilpatrick arrives at.

20.     I understand that Dr. Kilpatrick ran an automated valuation model ("AVM") on the subject property in 2013 or 2014 and arrived at a value of $279,983.

21.     In my experience, AVMs are not particularly reliable tools for producing estimates of value for a property. An AVM cannot apply the same judgment as a professional appraiser in determining whether a sale is comparable to the property it is valuing. An AVM does not produce an estimate of value as reliable as a professional appraiser who applies his or her experience and judgment in conducting a full appraisal.

22.     I also understand that Dr. Kilpatrick's AVM uses tax assessed values. In my experience as an appraiser, tax assessed values are not a reliable indicator of actual market value. Properties are generally not reassessed every year, and so they cannot reliably reflect the current market value of a property.

23.     Here, I believe Dr. Kilpatrick's supposed "true value" is considerably below the market value of the subject property at the time, as shown by a comparison to comparable sales. The three comparable properties were for sold for $405,000 (              ), $390,000              ), and $230,000 (              Yet Dr. Kilpatrick's AVM generated a "true value" for the subject property of $279,983 as of August 2005. As far as I know, that value is not supported by analysis of comparable properties. As discussed above, Comparable Sale #3

was not weighted nearly as heavily in the analysis because it was not directly comparable like Comparable Sales #1 and #2. It was a two-story townhouse, as opposed to the subject property and Comparable Sales #1 and #2, which were three-story townhouses. When Comparable Sales #1 and #2 are appropriately weighted, Dr. Kilpatrick's AVM value does not appear appropriate or supported.

Conclusion

24.    The appraisal I supervised for ███████████████████████████████ ████, was accurate and fully supported at the time it was rendered in August 2005. I honestly believed then that the appraisal was an accurate value, and I still believe now that the appraisal was an accurate opinion of value.

_____
William Schall

SWORN to before me
this 19 day of February 2015

_____
Notary Public

ELIZABETH K. MCLEAN
NOTARY PUBLIC, State of New York
No. 01MC6290356
Qualified in New York County
Certificate filed in New York County
Commission Expires October 07, 2017