UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

   Plaintiff,

-against-

NOMURA HOLDING AMERICA INC.,
NOMURA ASSET ACCEPTANCE
CORPORATION, NOMURA HOME
EQUITY LOAN, INC., NOMURA CREDIT
& CAPITAL, INC., NOMURA SECURITIES
INTERNATIONAL, INC., RBS
SECURITIES INC. (f/k/a GREENWICH
CAPITAL MARKETS, INC.), DAVID
FINDLAY, JOHN MCCARTHY, JOHN P.
GRAHAM, NATHAN GORIN, AND N.
DANTE LAROCCA,

   Defendants.

11 Civ. 6201 (DLC)

### REVISED DIRECT TESTIMONY OF JAMES K. FINKEL

I, James K. Finkel, declare as follows:

I.   **INTRODUCTION AND SUMMARY OF OPINIONS**

   1.   I am a Managing Director at Duff & Phelps, LLC ("Duff & Phelps") based in New York, and serve as Duff & Phelps' National Practice Leader for Financial Crisis Disputes. I have been retained by Quinn Emanuel Urquhart & Sullivan, LLP ("Counsel") on behalf of its client The Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation


PLAINTIFF'S EXHIBIT
PX 01781

("Freddie Mac," and together with Fannie Mae, the "GSEs"), as an expert in structured financial products.

2. I have over 28 years of experience in the securities industry, covering the areas of structured and securitized products, derivatives, government and municipal debt, corporate debt, high yield and distressed debt, private equity and listed equities. I have particular expertise in the area of residential mortgage-backed securities ("RMBS"), beginning with my legal career in 1986, continuing in 1992 for ten years as a capital markets banker with three major financial institutions, and as an investment manager starting in 2003. Over the course of my career, I have actively participated in the origination of many fixed income structured and securitized products, and I am familiar with the various data sources, modeling techniques, and market conventions in the formation, sales and trading, and valuation of these products. My *curriculum vitae*, **Plaintiff's Exhibit ("PX") 1325**, identifies my professional accomplishments, as well as my prior deposition testimony within the past four years.

3. I have been asked in this Action to opine as to the calculation of FHFA's statutory recoveries under Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(a)(2) (the "Section 12 Recoveries"), and the Blue Sky laws of Virginia (Va. Code 13-1.522(A)(ii)) and the District of Columbia (D.C. Code 31-5606.05(a)(1)(B)) (collectively, the "Blue Sky Recoveries," and together with the Section 12 Recoveries, the "Recoveries") relating to the offering and/or sale of seven residential mortgage-backed securities (the "Subject Securities") to the GSEs by Defendant Nomura Holding America Inc. and certain of its affiliates (and together with all of the Nomura affiliated entities and persons named in this Action, "Nomura"), and the offering and sale of four of the seven Subject Securities to Freddie Mac by Defendant RBS Securities Inc.

("RBSSI"). I have also been asked to provide a general overview as to the structure of RMBS and how it affects my calculation of the Recoveries.

4. I calculate FHFA's Recoveries in this Action according to what Counsel has instructed me are the formulas set by statute. Pursuant to these formulas, FHFA's statutory recoveries are: (a) the total consideration paid by the applicable GSE at the time of purchase, *plus* (b) prejudgment interest applied on a monthly basis to the total consideration paid less principal payments, *minus* (c) all coupon and principal payments received on the security by the applicable GSE through the date that the security is tendered to Defendants. Counsel has informed me that the Court will have discretion to set the applicable interest rate for the Section 12 Recoveries, and that the applicable interest rate for the Blue Sky Recoveries is 6% simple interest.

5. At the direction of Counsel, I use September 2, 2011 as the date of tender for purposes of my calculations based upon FHFA having constructively tendered the Subject Securities on the date FHFA filed suit in this Action (*i.e.*, September 2, 2011). At the request of Counsel, I also provide an alternative calculation in which I treat the Subject Securities as being tendered on the date of judgment, which for purposes of this Declaration I treat as February 28, 2015, which is the most recent date for which I have data, and I am prepared to provide further updated calculations as of the trial or actual judgment date in this Action.

6. I further understand that FHFA has asserted claims under the Virginia and District of Columbia Blue Sky statutes for the cost of investigating and litigating its claims in this Action, and for its reasonable attorneys' fees. I do not include such costs and fees in my calculations, which I understand will be determined by the Court at the time of judgment.

## II.     DESCRIPTION OF THE SUBJECT SECURITIES

7.     The Subject Securities consist of seven senior private-label securities ("PLS") with an original unpaid principal balance ("UPB") of approximately $2.05 billion (six of the Subject Securities were purchased by Freddie Mac and one was purchased by Fannie Mae). All of the Subject Securities purchased by the GSEs had both a AAA rating from S&P and a Aaa rating from Moody's, at the time of purchase, and were purchased from seven separate PLS issuances between November 30, 2005 and April 30, 2007.[1] Counsel has informed me that the GSEs continue to hold the Subject Securities. The amount paid for the securities was between 100.00 and 101.60 cents on the dollar.[2] Two of the purchases included accrued interest.[3]

---

[1] These dates refer to the "settlement date" and not "trade date" of the Subject Securities, as the settlement date is the time at which the sale was completed.

[2] In the case of RMBS, the amount paid can be expressed as a percentage of the then-current principal balance of the securities, or purchase price. For example, if the GSEs paid $95 million for a security with a UPB of $100 million at the time, this sale would be expressed by a purchase price of 95.00 (cents on the dollar).

[3] Accrued interest is the portion of a particular period's coupon payment not available to be collected by the seller at the time of sale (*i.e.*, upon the settlement date). For example, suppose a security pays a $100 coupon twice a year, once on January 1 and once on July 1, and if the security is sold by Bank A to a GSE on April 1, then the GSE pays "accrued interest" to Bank A of approximately $50 (of interest earned from January 1 through April 1, but as of April 1 unpaid), in addition to the remaining purchase price of the security.

4

8.    **Plaintiff's Exhibit 1501** below details the purchases of the Subject Securities by the GSEs.

### PX 1501: Summary of GSE Purchases of Subject Securities

| GSE | CUSIP | Certificate | Purchase Settlement Date | UPB at Purchase | Accrued Interest at Purchase | Total Paid By GSEs | Price Paid (including accrued interest) |
|---|---|---|---|---|---|---|---|
| FNM | 65535VRJ9 | NAA 2005-AR6 3A1 | 11/30/2005 | 64,943,000 | 316,245 | 65,979,707 | 101.59633 |
| FRE | 65536HBT4 | NHELI 2006-FM1 1A | 1/31/2006 | 309,550,000 | 41,187 | 309,591,187 | 100.01331 |
| FRE | 65537FAA9 | NHELI 2006-FM2 1A1 | 10/31/2006 | 525,197,000 | - | 525,197,000 | 100.00000 |
| FRE | 65536QAA6 | NHELI 2006-HE3 1A1 | 8/31/2006 | 441,739,000 | - | 441,739,000 | 100.00000 |
| FRE | 65537KAA8 | NHELI 2007-1 II1A | 1/31/2007 | 100,548,000 | - | 100,548,000 | 100.00000 |
| FRE | 65537MAA4 | NHELI 2007-2 1A1 | 1/31/2007 | 358,847,000 | - | 358,847,000 | 100.00000 |
| FRE | 65537NAA2 | NHELI 2007-3 1A1 | 4/30/2007 | 245,105,000 | - | 245,105,000 | 100.00000 |
|  |  |  | Total: | 2,045,929,000 | 357,433 | 2,047,006,894 |  |

9.    **Plaintiff's Exhibit 1502** below provides detail on the collateral and certain characteristics for each Subject Security.

### PX 1502: Represented Collateral Statistics of Subject Securities at Purchase Date

| Cusip | Certificate | Purchase Settlement Date | Collateral Type | Original Ratings (Moody's, S&P, Fitch) | Original Credit Support (%) (1) | Weighted Avg. FICO | Weighted Avg. LTV | % ARM Product (2) |
|---|---|---|---|---|---|---|---|---|
| 65535VRJ9 | NAA 2005-AR6 3A1 | 11/30/2005 | Alt-A ARM | Aaa/AAA/- | 18.71 | 703 | 72.60 | 81 86 |
| 65536HBT4 | NHELI 2006-FM1 1A | 1/31/2006 | Subprime | Aaa/AAA/- | 23.65 | 625 | 79.20 | 54.44 |
| 65537FAA9 | NHELI 2006-FM2 1A1 | 10/31/2006 | Subprime | Aaa/AAA/AAA | 22.45 | 625 | 78.70 | 48.44 |
| 65536QAA6 | NHELI 2006-HE3 1A1 | 8/31/2006 | Subprime | Aaa/AAA/AAA | 24.65 | 615 | 79.10 | 37 27 |
| 65537KAA8 | NHELI 2007-1 II1A | 1/31/2007 | Alt-A ARM | Aaa/AAA/- | 7.20 | 694 | 75.40 | 47 20 |
| 65537MAA4 | NHELI 2007-2 1A1 | 1/31/2007 | Subprime | Aaa/AAA/- | 25.50 | 625 | 80.60 | 58.17 |
| 65537NAA2 | NHELI 2007-3 1A1 | 4/30/2007 | Subprime | Aaa/AAA/- | 26.70 | 616 | 79.30 | 74.74 |

(1) Original Credit Support (%) = percentage of RMBS transaction structure subordinate to the bonds purchased. This credit support represents a percentage of the original UPB of the entire RMBS transaction, and must be exhausted before any losses are experienced by an investor to the tranche.
(2) The "%ARM" column indicates the percentage of the collateral that consists of a variety of loans that have floating rate characteristics, including Option-ARMs.

10.    According to the prospectus supplements for each of the securitizations at issue, both Nomura and RBSSI played key roles in the issuance and sale of the Subject Securities. Nomura acted as the sole-lead underwriter and seller to the GSEs for two Subject Securities (NAA 2005-AR6 3A1 and NHELI 2006-FM1 1A), the co-lead underwriter for one Subject Security (NHELI 2006-HE3 1A1), as well as the sponsor and depositor for all seven Subject Securities. RBSSI acted as the sole-lead underwriter for three Subject Securities (NHELI 2006-

5

FM2 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1), the co-lead underwriter for one Subject Security (NHELI 2006-HE3 1A1), and the seller to Freddie Mac for four Subject Securities (NHELI 2006-FM2 1A1, NHELI 2006-HE3 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1).

11. It is my understanding from Counsel that FHFA has asserted Section 12 claims against Nomura with respect to each of the seven Subject Securities (based upon Nomura's status as the issuer and/or seller to the GSEs of each Subject Security), and that FHFA has asserted Blue Sky claims against Nomura with respect to NAA 2005-AR6 3A1, for which Nomura acted as both issuer and seller to Fannie Mae. It is also my understanding from Counsel that FHFA has asserted Section 12 claims against RBSSI with respect to the four Subject Securities that RBSSI sold to Freddie Mac (*i.e.*, NHELI 2006-FM2 1A1, NHELI 2006-HE3 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1), and that FHFA has asserted Blue Sky claims against RBSSI with respect to three of those securities (*i.e.*, NHELI 2006-FM2 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1).

12. **Plaintiff's Exhibit 1503** below summarizes FHFA's claims against Nomura and RBSSI with respect to each Subject Security:

### PX 1503: Summary of Claims

| GSE | Certificate | Sponsor | Depositor | Lead Underwriter(s) | Seller to GSE | Section 12 Claim | Blue Sky Claim |
|---|---|---|---|---|---|---|---|
| FNM | NAA 2005-AR6 3A1 | Nomura | Nomura | Nomura | Nomura | YES (Nomura) | YES (Nomura) |
| FRE | NHELI 2006-FM1 1A | Nomura | Nomura | Nomura | Nomura | YES (Nomura) | NO |
| FRE | NHELI 2006-FM2 1A1 | Nomura | Nomura | RBSSI | RBSSI | YES (Nomura/RBSSI) | Yes (RBSSI) |
| FRE | NHELI 2006-HE3 1A1 | Nomura | Nomura | Nomura & RBSSI | RBSSI | YES (Nomura/RBSSI) | NO |
| FRE | NHELI 2007-1 II1A | Nomura | Nomura | RBSSI | RBSSI | YES (Nomura/RBSSI) | Yes (RBSSI) |
| FRE | NHELI 2007-2 1A1 | Nomura | Nomura | RBSSI | RBSSI | YES (Nomura/RBSSI) | Yes (RBSSI) |
| FRE | NHELI 2007-3 1A1 | Nomura | Nomura | Lehman | Lehman | YES (Nomura) | NO |

6

## III. SECTION 12

13. Counsel has instructed me that Section 12 provides that—where a plaintiff has not sold a security—it may seek rescission. Under this remedy, I understand that the buyer (plaintiff) must return the security along with all principal and interest received from the security through the date of tender, and the seller (defendant) must return the original amount paid for the security, together with prejudgment interest to, among other things, compensate the buyer for having lost use of the money prior to rescission of the transaction and to deter further violations of the securities laws. Calculating a Section 12 recovery therefore requires the determination of three inputs: (i) the total consideration paid; (ii) the application of prejudgment interest to the total consideration paid through the date of tender; and (iii) the sum of principal and coupon payments received through the date of tender.[4]

14. In the context of a Section 12 recovery on the Subject Securities, due to the principal payments received, the "consideration paid" by the purchaser may be viewed as a declining balance over time. Unlike stocks, RMBS amortize, meaning that portions of the original consideration paid are expected to be returned as principal payments each month. Thus, the calculation here should reduce, each month, the amount of the original consideration paid for each security, according to principal payments received. Accordingly, I calculate prejudgment interest on the consideration paid by applying the prejudgment rates described in the next paragraph to the total consideration paid *less* principal payments, as of each month, beginning on the date of purchase, and ending on the date of tender.

---

[4] I have not applied prejudgment interest to the principal or coupon payments received by the GSEs (which are to be returned to the applicable Defendant), consistent with this Court's February 16, 2015 Order that FHFA's Section 12 Recovery is not reduced by the application of prejudgment interest to income received on the Certificates.

15. With respect to the calculation of prejudgment interest, Counsel has informed me that the prejudgment interest rate to be applied under Section 12 will be determined by the Court. Counsel has instructed me to apply ~~four~~ three alternative prejudgment interest rates to my calculations. I therefore calculate FHFA's Section 12 Recoveries using the following ~~four~~ three alternative interest rates (using simple interest, without compounding): (i) the IRS underpayment rate for large corporate underpayments, which is the Applicable Federal Rate ("AFR") plus 5% interest;[5] (ii) ~~6% interest; (iii)~~ 3% interest; and (~~iv~~iii) the respective monthly coupon rate of each Subject Security.[6]

16. I calculate FHFA's Section 12 Recovery for each Subject Security, assuming the security is tendered, as follows:[7]

| Total Consideration Paid By GSE At Purchase (Including Any Accrued Interest)[8] | + | Prejudgment Interest On Total Consideration Paid *Less* Principal Payments, As Of Each Month, From Purchase Date Through Tender Date | - | Principal And Coupon Payments Received By GSE On Security From Purchase Date Through Tender Date |
|---|---|---|---|---|

---

[5] The IRS underpayment rate for large corporate underpayments is the AFR plus 5%. Between 2005 (when the first Subject Security was purchased) and February 2015, the monthly AFR ranged from 0.0% to 5.0%, rounded to the nearest whole percentage point.

[6] The scenario setting prejudgment interest to equal the respective coupon rate of each Subject Security effectively nets out coupons received with prejudgment interest, and can also be calculated as the initial amount paid minus all principal payments received through the date of tender.

[7] I obtained the values for the original consideration paid, principal payments received, and interest payments received for each security from Counsel (who I understand obtained that data through stipulations among the parties), and have verified the accuracy of that data using Intex, which is a recognized data source in the RMBS industry.

[8] As explained in Footnote 3, accrued interest represents coupons that have accrued on an RMBS between the last coupon payment date and the settlement date of the security's transfer. Any accrued interest is part of the consideration paid by a GSE at purchase.

*Illustrative Example*

17.     As a simple example, suppose that a $100 million security was bought at par with no accrued interest and the trade settled on January 25, 2007.  Further, suppose the security returns $1 million per month in principal payments, and pays 0.4% per month (or 4.8% annually) in coupon payments (while most securities in the portfolio are floating rate, I use a fixed rate example for ease of demonstration).  Suppose also, that the Court specifies that the prejudgment interest rate will be a simple 0.5% per month (or a simple annual interest rate of 6.0%).

18.     **Plaintiff's Exhibit 1504** below illustrates the cash flows for the hypothetical security.  For each period, the Starting Proceeds Balance matches the Ending Proceeds Balance of the previous period.  Prejudgment interest is calculated on the Starting Proceeds Balance, and the Ending Proceeds balance is the Starting Proceeds Balance minus Principal Received for that period.

### PX 1504: Illustrative Section 12 Example

| Date | Starting Proceeds Balance | Coupons Received | Principal Received | Pre-judgment Interest | Ending Proceeds Balance |
|---|---|---|---|---|---|
| 1/25/2007 | - | - | - | - | 100,000,000.00 |
| 2/25/2007 | 100,000,000.00 | 400,000.00 | 1,000,000.00 | 500,000.00 | 99,000,000.00 |
| 3/25/2007 | 99,000,000.00 | 396,000.00 | 1,000,000.00 | 495,000.00 | 98,000,000.00 |
| 4/25/2007 | 98,000,000.00 | 392,000.00 | 1,000,000.00 | 490,000.00 | 97,000,000.00 |
| 5/25/2007 | 97,000,000.00 | 388,000.00 | 1,000,000.00 | 485,000.00 | 96,000,000.00 |
| 6/25/2007 | 96,000,000.00 | 384,000.00 | 1,000,000.00 | 480,000.00 | 95,000,000.00 |
| 7/25/2007 | 95,000,000.00 | 380,000.00 | 1,000,000.00 | 475,000.00 | 94,000,000.00 |
| 8/25/2007 | 94,000,000.00 | 376,000.00 | 1,000,000.00 | 470,000.00 | 93,000,000.00 |
| 9/25/2007 | 93,000,000.00 | 372,000.00 | 1,000,000.00 | 465,000.00 | 92,000,000.00 |
| 10/25/2007 | 92,000,000.00 | 368,000.00 | 1,000,000.00 | 460,000.00 | 91,000,000.00 |
| 11/25/2007 | 91,000,000.00 | 364,000.00 | 1,000,000.00 | 455,000.00 | 90,000,000.00 |
| 12/25/2007 | 90,000,000.00 | 360,000.00 | 1,000,000.00 | 450,000.00 | 89,000,000.00 |
| 1/25/2008 | 89,000,000.00 | 356,000.00 | 1,000,000.00 | 445,000.00 | 88,000,000.00 |
| Subtotal: | | 4,536,000.00 | 12,000,000.00 | 5,670,000.00 | |

| | |
|---|---|
| 1/25/2008 Balance: | 88,000,000.00 |
| Pre-judgment Interest: | 5,670,000.00 |
| Return of Coupons: | (4,536,000.00) |
| **Damages as of 1/25/08:** | **89,134,000.00** |

19. If rescission were to occur on January 25, 2008 in the example above, the buyer would return the security on that date, and the seller would pay the Ending Proceeds Balance at that date, plus the sum of the prejudgment interest thereon, minus the coupons received, or $89.134 million in exchange.

20. It is important to note that, under the above statutory formula for Section 12, write-downs to the security and any shortfalls of interest payments do not affect the Section 12 recovery.[9] The consideration paid is amortized only by actual principal received, and the sum of coupon (*i.e.*, interest) payments received is returned upon rescission. In the example above, even if the security experienced write-downs due to losses, the Section 12 recovery would be unaffected, remaining at $89.134 million.

21. This illustrative example was simplified in several regards. For example, actual principal and interest payments may vary each month for the Subject Securities. In addition, the prejudgment interest rate can be a variable rate (*e.g.*, to the extent the IRS underpayment rate or a floating coupon rate of the securities is utilized). In addition, in my calculations below, I treat the Subject Securities as having been constructively tendered on the lawsuit date, and also provide an alternative calculation in which the Subject Securities are tendered on the judgment date (taken here as February 28, 2015, which is the most recent date for which I have data, but which will be updated at trial or judgment).

22. Counsel has informed me that FHFA's Section 12 claims extend to the actual seller, as well as the issuer, for each Subject Security. Accordingly, I calculate Section 12 Recoveries against Nomura for each of the seven Subject Securities, and calculate Section 12

---

[9] Write-downs occur when the trustee determines that the principal balance of a tranche has decreased without a corresponding payment of principal (hence, the balance of the tranche is "written down").

Recoveries against RBSSI for the four Subject Securities it sold to Freddie Mac.[10]  My Section 12 calculations for each Subject Security are set forth in **Plaintiff's Exhibits 1932**-**, 1934–1936, 1938, and** 1939 below.

## IV. BLUE SKY

23. Counsel has informed me that the Blue Sky laws under which FHFA has brought its claims provide for the same calculation of recoveries as Section 12, with the following differences:  (i) the prejudgment interest rate under the Blue Sky laws is fixed at 6%; and (ii) the Blue Sky laws provide for the mandatory award of costs and attorneys' fees.  As discussed above, I do not include in my calculation costs and attorneys' fees, which I understand will be assessed at the time of judgment.

24. I calculate FHFA's Blue Sky Recoveries pursuant to the Section 12 formula described in Paragraph 16, but with 6% "simple" prejudgment interest (without compounding), rather than under the alternative rates of interest identified in Paragraph 15.

25. Counsel has informed me that FHFA's Blue Sky claims under District of Columbia law are coterminous with its federal claims, and that FHFA therefore has D.C. Blue Sky claims against Nomura with respect to the one Subject Security sold to Fannie Mae (*i.e.*, NAA 2005-AR6 3A1).  Because Nomura was both the issuer and seller of this security, no D.C. Blue Sky claim exists against RBSSI with respect to NAA 2005-AR6 3A1.

26. Counsel has also informed me that FHFA has asserted Blue Sky claims under Virginia law only with respect to those Subject Securities sold to Freddie Mac within two years of FHFA's September 6, 2008 conservatorship of Freddie Mac, and that such claims extend only to the actual seller of the Subject Security, but do not extend to the issuer.  Accordingly, I

---

[10] The four Subject Securities RBSSI sold Freddie Mac are NHELI 2006-FM2 1A1, NHELI 2006-HE3 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1.

11

calculate Virginia Blue Sky recoveries for the three Subject Securities that RBSSI sold to Freddie Mac on or after September 6, 2006.[11]  Because Nomura did not sell any Subject Securities to the GSEs on or after September 6, 2006, I do not include any recoveries for Virginia Blue Sky claims against Nomura.  My Blue Sky calculations for each Subject Security (where applicable) are set forth in **Plaintiff's Exhibits 1932, 1934–1936, 1938, and 1939** below.

## V. REMEDIES SUMMARY

27.  The tables below summarize Recoveries under two tender-date scenarios: (i) the Subject Securities were effectively tendered to Defendants on the September 2, 2011 filing date of the complaint in this Action, and alternatively (ii) rescission did not occur on that date, but rather upon judgment (taken here as February 28, 2015, which is the most recent date for which I have data, which can be updated at trial or judgment).

28.  With respect to each tender-date scenario, I calculate FHFA's Recoveries against Defendants using the ~~four~~ three alternative prejudgment interest rates addressed above with respect to FHFA's Section 12 claims (*i.e.*, the IRS underpayment rate, ~~6%,~~ 3%, and the coupon rate), and using 6% interest for FHFA's Blue Sky claims.  In each scenario, I assign zero Blue Sky recovery with respect to the three securities for which Counsel has informed me that FHFA has not asserted Blue Sky claims.[12]

29.  Counsel has also informed me that FHFA may determine, at the time of judgment, which of Section 12 or the Blue Sky statutes provide the highest recovery for each security, and may elect to recover, on a per security basis, the highest available recovery.  Accordingly, I

---

[11]  The three Subject Securities that RBSSI sold to Freddie Mac for which FHFA asserts Virginia Blue Sky claims are NHELI 2006-FM2 1A1, NHELI 2007-1 II1A, and NHELI 2007-2 1A1.

[12]  The three Subject Securities for which Counsel has informed me that FHFA has not asserted Blue Sky claims are NHELI 2006-FM1 1A, NHELI 2006-HE3 1A1, and NHELI 2007-3 1A1.

include a column in each table below that identifies the maximum available recovery, on a per security basis, for each scenario illustrated below.

30. I also include in each table below a column that identifies the Defendant (or Defendants) that Counsel has advised me are liable for whichever statutory recovery is highest under a given tender date/interest rate scenario. Thus, for example, if the Section 12 recovery for a given security produces a higher recovery than the Blue Sky recovery for that security under a particular interest rate scenario, I identify which Defendant (or Defendants) are liable to FHFA under Section 12 for that security. Conversely, if the applicable Blue Sky statute produces a higher recovery than Section 12 for a given security under a particular interest rate scenario, I identify which Defendant (or Defendants) are liable to FHFA under its Blue Sky claims for that security. Where multiple Defendants are identified as having liability on a given security, I have not apportioned liability between them.[13]

31. Finally, as noted in Paragraph 6, Counsel has advised me that FHFA has asserted claims under the Blue Sky statutes for the cost of investigating and litigating its claims in this Action, and for attorneys' fees. Although I do not include such costs and fees in my calculations, Counsel has advised me that any such costs and fees will be added to the recovery at the time of judgment.

---

[13] I note that **Plaintiff's Exhibits 1932, 1934–1936, 1938, and 1939** identify only those Defendants liable for whichever claim produces the highest recovery for FHFA, on a per security basis. However, as described more fully in Paragraphs 11 and 12, FHFA has asserted Section 12 claims with respect to each Subject Security, and has asserted Blue Sky claims with respect to four of the seven Subject Securities. Accordingly, the full scope of each Defendant's liability on a per claim and per security basis is set forth in **Plaintiff's Exhibit 1503**, whereas **Plaintiff's Exhibits 1932, 1934–1936, 1938, and 1939** identify, under each tender-date and interest rate scenario, which Defendant (or Defendants) are liable for the *highest* recovery on each security.

A.     **Lawsuit Date Tender**

32.     The calculations set forth in **Plaintiff's Exhibits 1932, 1934, and 1935** treat the September 2, 2011 filing date of the complaint in this Action as the date of tender for each Subject Security pursuant to FHFA's remedies under Section 12 and the Blue Sky statutes.  For each security, these tables show: (i) the applicable Recoveries under each of Section 12 and the Blue Sky statutes with respect to the alternative interest rate scenarios described above (*i.e.*, the IRS underpayment rate, 6%, 3%, and the coupon rate, for FHFA's Section 12 claims; and 6% for FHFA's Blue Sky claims); (ii) the maximum available recovery for each security; and (iii) the Defendant (or Defendants) liable to FHFA with respect to the maximum available recovery for each security under each respective interest rate scenario.

**PX 1932: Recoveries as of Lawsuit Date: Section 12 at AFR + 5%; Blue Sky at 6%**

| Certificate | CUSIP | Section 12 (Tender on Lawsuit Date) | Blue Sky (Tender on Lawsuit Date) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 35,570,774 | 30,729,638 | 35,570,774 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 62,873,956 | - | 62,873,956 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 270,635,699 | 247,772,851 | 270,635,699 | Nomura & RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 203,421,166 | - | 203,421,166 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 79,033,189 | 74,747,697 | 79,033,189 | Nomura & RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 223,518,431 | 208,974,852 | 223,518,431 | Nomura & RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 178,361,909 | - | 178,361,909 | Nomura |
| | Total: | 1,053,415,124 | 562,225,038 | 1,053,415,124 | |

14



**PX 1934: Recoveries as of Lawsuit Date: Section 12 at 3%; Blue Sky at 6%**

| Certificate | CUSIP | Section 12 (Tender on Lawsuit Date) | Blue Sky (Tender on Lawsuit Date) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 23,040,992 | 30,729,638 | 30,729,638 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 30,923,927 | - | 30,923,927 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 204,840,497 | 247,772,851 | 247,772,851 | RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 150,729,161 | - | 150,729,161 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 63,717,692 | 74,747,697 | 74,747,697 | RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 175,910,242 | 208,974,852 | 208,974,852 | RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 146,790,869 | - | 146,790,869 | Nomura |
| | Total: | 795,953,380 | 562,225,038 | 890,668,995 | |

**PX 1935: Recoveries as of Lawsuit Date: Section 12 at Coupon Rate; Blue Sky at 6%**

| Certificate | CUSIP | Section 12 (Tender on Lawsuit Date) | Blue Sky (Tender on Lawsuit Date) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 29,750,557 | 30,729,638 | 30,729,638 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 37,090,924 | - | 37,090,924 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 201,689,446 | 247,772,851 | 247,772,851 | RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 150,490,816 | - | 150,490,816 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 60,974,928 | 74,747,697 | 74,747,697 | RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 170,027,612 | 208,974,852 | 208,974,852 | RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 140,574,879 | - | 140,574,879 | Nomura |
| | Total: | 790,599,162 | 562,225,038 | 890,381,657 | |

B.  **Judgment Date Tender**

33.  The calculations set forth in **Plaintiff's Exhibits 1936 , 1938, and 1939** treat the judgment date in this Action (taken here as February 28, 2015, which is the most recent date for which I have data, but which will be updated at trial or judgment) as the date of tender for each Subject Security pursuant to FHFA's remedies under Section 12 and the Blue Sky statutes.  For each security, these tables show:  (i) the applicable Recoveries under each of Section 12 and the Blue Sky statutes with respect to the alternative interest rate scenarios described above (*i.e.*, the IRS underpayment rate, 6%, 3%, and the coupon rate, for FHFA's Section 12 claims; and 6% for FHFA's Blue Sky claims); (ii) the maximum available recovery for each security; and (iii) the Defendant (or Defendants) liable to FHFA with respect to the maximum available recovery for each security under each respective interest rate scenario.

**PX 1936: Recoveries as of Judgment Date: Section 12 at AFR + 5%; Blue Sky at 6%**

| Certificate | CUSIP | Section 12 (Tender on 2/28/2015) | Blue Sky (Tender on 2/28/2015) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 30,440,701 | 26,511,846 | 30,440,701 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 58,023,869 | - | 58,023,869 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 278,911,524 | 262,746,652 | 278,911,524 | Nomura & RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 183,789,028 | - | 183,789,028 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 74,396,724 | 72,006,496 | 74,396,724 | Nomura & RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 200,322,200 | 190,881,388 | 200,322,200 | Nomura & RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 175,525,764 | - | 175,525,764 | Nomura |
| | Total: | 1,001,409,809 | 552,146,382 | 1,001,409,809 | |

16

[redacted]

## PX 1938: Recoveries as of Judgment Date: Section 12 at 3%; Blue Sky at 6%

| Certificate | CUSIP | Section 12 (Tender on 2/28/2015) | Blue Sky (Tender on 2/28/2015) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 16,086,356 | 26,511,846 | 26,511,846 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 23,854,313 | - | 23,854,313 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 199,720,368 | 262,746,652 | 262,746,652 | RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 122,023,232 | - | 122,023,232 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 55,290,698 | 72,006,496 | 72,006,496 | RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 142,508,478 | 190,881,388 | 190,881,388 | RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 134,920,737 | - | 134,920,737 | Nomura |
| | **Total:** | **694,404,184** | **552,146,382** | **832,944,665** | |

## PX 1939: Recoveries as of Judgment Date: Section 12 at Coupon Rate; Blue Sky at 6%

| Certificate | CUSIP | Section 12 (Tender on 2/28/2015) | Blue Sky (Tender on 2/28/2015) | Maximum Recovery | Defendant(s) Liable for Maximum Recovery |
|---|---|---|---|---|---|
| NAA 2005-AR6 3A1 | 65535VRJ9 | 23,178,380 | 26,511,846 | 26,511,846 | Nomura |
| NHELI 2006-FM1 1A | 65536HBT4 | 27,180,004 | - | 27,180,004 | Nomura |
| NHELI 2006-FM2 1A1 | 65537FAA9 | 178,794,079 | 262,746,652 | 262,746,652 | RBSSI |
| NHELI 2006-HE3 1A1 | 65536QAA6 | 109,801,618 | - | 109,801,618 | Nomura & RBSSI |
| NHELI 2007-1 II1A | 65537KAA8 | 47,276,119 | 72,006,496 | 72,006,496 | RBSSI |
| NHELI 2007-2 1A1 | 65537MAA4 | 123,146,326 | 190,881,388 | 190,881,388 | RBSSI |
| NHELI 2007-3 1A1 | 65537NAA2 | 117,180,217 | - | 117,180,217 | Nomura |
| | **Total:** | **626,556,743** | **552,146,382** | **806,308,222** | |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions in this Action.

Executed on this 26th day of March, 2015 in New York, New York.

*[signature]*
James K. Finkel