DX
3344

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL HOUSING FINANCE AGENCY, AS
CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION AND
THE FEDERAL HOME LOAN MORTGAGE
CORPORATION,

                Plaintiff,

v.

NOMURA HOLDING AMERICA INC., *et al.*,

                Defendants.

No. 11-cv-6201 (DLC)

ECF Case

## CORRECTED AFFIDAVIT OF DAVID FINDLAY

STATE OF NEW YORK    )
                      )  ss.:
COUNTY OF NEW YORK  )

David Findlay, being duly sworn, deposes and says:

1.    I am the President and Chief Executive Officer of Nomura Holding America Inc.

("Nomura Holding America") and Nomura Securities International, Inc. ("Nomura Securities"),

and provide this affidavit as my direct testimony at trial.

Background

2.    I graduated from the London School of Economics and Political Science with a

bachelor's degree in law (LL.B. Hons.) in 1979. I qualified as a Barrister-at-Law at the Inns of

Court School of Law, 1980. I was admitted to the California bar in October 1982; the bar of the

Supreme Court of the United States in June 1987; the bar of the United States District Court for

the Northern District of California in November 1989; and the bar of the District of Columbia in

March 2002. I was also admitted as a solicitor to the Supreme Court of England and Wales in June 1995.

3.      During the period 1981 to 1986, I was an associate at the law firm Brobeck, Phleger & Harrison LLP in San Francisco, California. I was a partner of the law firm Mosher, Pooley, Sullivan & Hultquist in Palo Alto, California from 1986 to 1988. Beginning in 1988 and carrying through to 1999, I was a partner at the Graham & James, LLP law firm in London, England, while simultaneously serving (during the 1995 to 1999 period) as a partner at Taylor Joynson Garrett in London, England.

4.      I joined Capital Company of America, a subsidiary of Nomura Holding America, in June 1999, serving as a Managing Director and later as Chief Legal Officer. I joined Nomura Holding America in October 2000 as Chief Legal Officer, a position I currently hold. In 2012, I also became President and Chief Executive Officer of Nomura Holding America, and I continue to hold those positions.

5.      During the 2002 to 2012 period, I was Chief Legal Officer of Nomura Securities. In 2011 and 2012, I was a Co-Chief Executive Officer of Nomura Securities, and I became the President and Chief Executive Officer of Nomura Securities in 2012. I currently hold those positions.

6.      During the period 2005 to 2007, I was a member of the Boards of Directors of both Nomura Asset Acceptance Corporation ("NAAC") and Nomura Home Equity Loan, Inc. ("NHELI").

My Role With Respect to Residential Mortgage-Backed Securities as a Director of
NAAC and NHELI, and as an Officer of Nomura Securities

7.      NAAC served as the depositor for one of the securitizations at issue in this action, NAA 2005-AR6. In that role, NAAC received loans from Nomura Credit & Capital, Inc.

("NCCI"), and then transferred them to a specially-created trust for the securitization. The members of the NAAC board—who, in addition to myself, were Shunichi Ito and John T. McCarthy—issued board resolutions authorizing the receipt of loans from NCCI and the transfer of the loans to the trust. The trust then issued certificates representing interests in the payments made by the borrowers that were received by NAAC, and NAAC in turn transferred those certificates to underwriters for sale to investors. NAAC did not sell the securities directly to investors. The members of the Board decided whether NAAC would authorize the receipt of the loans and the transfer of the loans to the trust. If there was any disagreement among the directors, the by-laws required a majority vote, meaning that I alone did not have the power to veto any of these transactions.

8.      NHELI served as the depositor for six of the securitizations at issue in this action, NHELI 2006-FM1, NHELI 2006-HE3, NHELI 2006-FM2, NHELI 2007-1, NHELI 2007-2, and NHELI 2007-3. With respect to each of these securitizations, NHELI received loans from NCCI, and then transferred them to a specially-created trust for that securitization. The members of the NHELI Board—who, in addition to myself, were Shunichi Ito and John T. McCarthy— issued board resolutions authorizing the receipt of loans from NCCI and the transfer of the loans to the trust. The trust then issued certificates representing interests in the payments made by the borrowers that were received by NHELI, and NHELI in turn transferred those certificates to underwriters for sale to investors. NHELI did not sell the securities directly to investors. The members of the Board decided whether NHELI would authorize the receipt of the loans and the transfer of the loans to the trust. If there was any disagreement among the directors, the by-laws required a majority vote, meaning that I alone did not have the power to veto any of these transactions.

9.      During the 2005 to 2007 period, NCCI purchased mortgage loans from loan originators before transferring them to NHELI or NAAC, including for the securitizations at issue here.  I had no participation in the purchase of mortgage loans from loan originators during that period.  During the 2002 to 2004 time period, I had some involvement in the establishment of NCCI's processes for pre-purchase due diligence on mortgage loans.  My role was mainly limited to retaining outside counsel and due diligence professionals to advise the company on how to structure that process.  I was not involved at all with that process during the following three years, however.  At no point did I manage the activities of the employees responsible for purchasing mortgage loans.  I also did not control the policies, procedures, or practices that governed NCCI's purchases of mortgage loans.

10.     NCCI structured residential mortgage-backed securitizations during the 2005 to 2007 period, including the securitizations at issue here.  I had no participation in the structuring of mortgage loans into residential-mortgage backed securitizations during that time (or at any other time).  I did not manage the activities of the employees responsible for structuring residential mortgage-backed securitizations.  I also did not control the policies or procedures that governed NCCI's structuring of residential mortgage-backed securitizations.

11.     I had no participation in the sale to investors of the certificates issued by the trusts by Nomura Securities (or by anyone else).  Nor did I participate in the marketing of those certificates, except to the extent I may have rendered legal advice related to those topics in my capacity as the Chief Legal Officer of Nomura Securities.  I do not specifically recall providing legal advice on the sale to investors of residential mortgage-backed securities, however, and we typically used outside counsel for substantive questions regarding the securities laws.  I did not manage the work of the employees who performed sales or marketing activities in connection

with residential mortgage-backed securities.  I did not manage Nomura Securities' policies or procedures with respect to the sale or marketing of residential mortgage-backed securitizations.

12.     I signed a Registration Statement dated July 22, 2005 in my capacity as a director of NAAC.  I signed Registration Statements dated July 7, 2005, and February 28, 2006, in my capacity as a director of NHELI.  I did not sign the prospectus supplements at issue in this action, or, for that matter, any residential mortgage-backed securitizations.

13.     I believed at the time the at-issue securitizations were issued, and still believe, that NCCI had a robust due diligence process with respect to the acquisition of mortgage loans.  I also believed at the time and still believe that this due diligence process, which was used by the Nomura entities involved in the process, enabled Nomura Securities to make materially accurate statements about those loans to investors.  Based on my familiarity with NCCI's and Nomura Securities' processes, procedures, and practices, I believed then, and believe now, that the offering documents Nomura Securities sent to investors were materially true, correct, and complete.  I never had any reason then, and I do not have any reason now, to doubt that the offering documents were materially true, correct, and complete, or to believe that NCCI and Nomura Securities failed to follow their robust procedures for ensuring the accuracy of those offering documents.

The Role of Nomura Holding America

14.     Nomura Holding America is the ultimate parent company of the Nomura entities that are parties to this action.  Nomura Holding America is the direct corporate parent of Nomura Securities and of NCCI, and an indirect parent of NAAC and NHELI.  I understand and believe that the direct corporate parent of NAAC and NHELI was Nomura Asset Capital Corporation

until October 2006, at which time the parent company of NAAC and NHELI became Nomura America Mortgage Finance.

15.     Nomura Holding America had no direct involvement in the residential mortgage-backed securities business during the 2005 to 2007 time period.  Nomura Holding America had no role in the purchase of loans, the structuring of the loans into residential mortgage-backed securities, or the sale and marketing of certificates to investors.

16.     Nomura Holding America had no direct role in the activities carried out by NAAC and NHELI, and Nomura Holding America was not the direct corporate parent of either entity.  It had no involvement in NAAC's and NHELI's receipt of mortgage loans from NCCI or the issuance of securitization certificates backed by those loans.  Nomura Holding America did not set the policies and procedures of those entities.

The Role of NCCI

17.     NCCI was the Nomura entity that purchased residential mortgage loans from mortgage originators, and NCCI conducted a pre-purchase due diligence review of those loans. NCCI was also the entity that structured securitizations and created offering documents for investors, such as prospectus supplements.  As part of that process, NCCI worked closely with outside counsel and outside accounting firms to ensure the accuracy of the information reported in the prospectus supplements.

18.     NCCI was not the corporate parent of Nomura Securities, and it did not have the ability to direct or control the activities of Nomura Securities or its employees, including with respect to the sale and marketing of securitization certificates to investors.  NCCI also did not have the ability to direct or control the policies, procedures, or practices of Nomura Securities.

NCCI was not the corporate parent of NAAC or NHELI.  NCCI did not have the ability to direct

or control the activities of NAAC or NHELI, or the activities of the officers or Boards of

Directors of those entities.  NCCI did not have the ability to direct or control the policies,

procedures, or practices of NAAC or NHELI.

David Findlay

Sworn to before me this
30 day of March 2015.

Notary Public

COLIN O. HILL
NOTARY PUBLIC, State of New York
No. 01HI6203654
Qualified in New York County
Certificate filed in New York County
Commission Expires September 09, 2017