UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY, )
AS CONSERVATOR FOR THE FEDERAL )
NATIONAL MORTGAGE ASSOCIATION AND )   11 Civ. 6201 (DLC)
THE FEDERAL HOME LOAN MORTGAGE )
CORPORATION, )
)
              Plaintiff, )
)
             -against- )
)
NOMURA HOLDING AMERICA INC. et al., )
)
             Defendants. )
)
---

## CORRECTED DIRECT TESTIMONY OF ROBERT W. HUNTER


EXHIBIT PX 01772

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | Qualifications and Experience | | 4 |
| II. | Representations in the Offering Documents | | 6 |
| | A. | Representations Regarding Compliance With Underwriting Guidelines And Criteria | 6 |
| | B. | Representations Regarding LTV/CLTV Ratios | 53 |
| | C. | Representations Regarding Owner Occupancy Status | 56 |
| | D. | Credit Ratings | 59 |
| III. | General Principles of Underwriting Residential Mortgage Loans | | 61 |
| | A. | Purpose of Underwriting | 61 |
| | B. | The Three C's Of Lending | 63 |
| | C. | Process of Underwriting A Mortgage Loan At Origination | 67 |
| IV. | Requirements Of The Applicable Underwriting Guidelines | | 88 |
| V. | General Principles of Mortgage Re-underwriting | | 123 |
| VI. | Re-underwriting Review Conducted In This Litigation | | 131 |
| VII. | Results of My Re-underwriting Review | | 162 |
| VIII. | Results Of My LTV/CLTV Review | | 216 |
| IX. | Results of My Owner Occupancy Review | | 219 |
| X. | Results of My Pre-Closing Loan Tape Review | | 222 |
| XI. | Examples of Materially Defective Loans | | 225 |
| XII. | Summary | | 254 |

## DIRECT TESTIMONY OF ROBERT W. HUNTER

I, Robert W. Hunter, declare as follows:

1.  I am a consultant with more than forty years of experience in the financial services industry, primarily in banking and mortgage lending. I have worked in every phase of mortgage lending, including loan processing, loan underwriting, loan servicing, secondary marketing, and investment management. I have been actively engaged in residential mortgage lending and related work since 1972. I have originated, underwritten, and serviced mortgage loans; managed the analysis, pricing, and trading of mortgage loan portfolios; developed credit quality programs to analyze and quantify the risk characteristics of mortgage loan acquisitions and sales; and developed underwriting guidelines for mortgage loans.

2.  I was retained by Quinn, Emanuel, Urquhart & Sullivan LLP, counsel for Plaintiff Federal Housing Finance Agency ("FHFA"), as Conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "GSEs"), to provide an expert opinion on whether samples of loans from each of the Supporting Loan Groups ("SLGs") from the seven securitizations at issue in this Action (the "Securitizations") complied with statements relating to the underwriting and credit quality of such loans in the Offering Documents for each Securitization. An SLG is a subdivision of the mortgage loans included in a securitization. Each SLG backs one or more certificates. Each certificate entitles its holder to a specified portion of the cash flows from the underlying mortgages in the SLG. The term "Offering Documents" as used in my direct testimony refers to the Prospectus and Prospectus Supplement filed as part of a Shelf Registration Statement with the Securities and Exchange Commission for each Securitization.

3.  For my work on this engagement, I was provided access to the following information: (i) certain publicly available documents; (ii) certain documents produced by FHFA

1

in this action; (iii) certain documents produced by Nomura Holding America Inc. ("Nomura Holding"), Nomura Asset Acceptance Corporation ("NAAC"), Nomura Home Equity Loan, Inc. ("NHELI"), Nomura Credit & Capital, Inc. ("Nomura Credit"), and Nomura Securities International, Inc. ("Nomura Securities") (together, "Nomura"); (iv) certain documents produced by defendants in the other related actions pending or resolved in the Southern District of New York (together with Nomura, the "Defendants"); (v) deposition transcripts of certain Nomura witnesses; (vi) deposition transcripts of certain other Defendants and third-party witnesses; (vii) certain information relating to the loans that were reviewed as part of my re-underwriting review, including loan files and underwriting guidelines; and (viii) certain appraisal-related information from FHFA's valuation expert, Dr. John Kilpatrick. In formulating my opinions regarding the Sample Loans, in addition to the documents cited in this affidavit, I also have considered the documents listed in Appendix 1 and Appendix 2 to this affidavit.

4. As part of my engagement on this case, I reviewed the representations made in the Offering Documents for the Securitizations. The Offering Documents represented, among other things, that the mortgage loans in the securitization were originated or acquired generally in accordance with the applicable underwriting guidelines.

5. I directly supervised the re-underwriting review of a sample of loans from each of the seven SLGs in the Securitizations. The sample loans consisted of approximately 100 loans from each SLG for a total of 796 loans, of which only 723 loans had sufficient information in the loan file to be able to re-underwrite the loan (the "Sample Loans"). I was assisted by a team of underwriters from Digital Risk, LLC and Opus Capital Markets Consultants, LLC. Under my management and direction, the re-underwriting team conducted a credit review, a compliance review, an appraisal review, a recalculation of loan-to-value ("LTV") and combined-loan-to-

2

value ("CLTV") ratios, and a recalculation of owner occupancy statistics. I personally reviewed, either in whole or in part, all of the loan files for the Sample Loans, the representations made in the Offering Documents for each of the Securitizations, the applicable underwriting guidelines, my re-underwriting team's factual findings, comments by the quality control teams and my senior underwriters, and the supporting documentation for the individual findings. Based on my review of these materials, I made a determination of whether the underwriting defects as a whole substantially impacted the credit risk of a particular Sample Loan. I use the phrase "underwriting defects" expansively to include credit defects, appraisal-related defects, occupancy defects, compliance defects, and/or inaccuracies in the data contained on the Sample Loan schedule or pre-closing loan tapes.

6. More specifically, I examined the Sample Loans from each SLG to determine whether the loans (i) were generally originated or acquired in accordance with the applicable underwriting guidelines; (ii) were properly evaluated to determine whether the borrower had the ability to repay the loan; (iii) had an appraisal that was performed by a qualified and licensed appraiser and that complied with the Uniform Standards of Professional Appraisal Practice ("USPAP"); (iv) were properly evaluated to determine that the mortgaged property had sufficient value to adequately support the mortgage loan obligation; (v) to the extent they failed to adhere to the originator's underwriting guidelines, had sufficient compensating factors that were properly documented and verifiable, and offset the increase in credit risk arising from the exception to guidelines; and (vi) complied with the requirements of federal and state laws. In addition, I examined the Sample Loans to determine whether the loan-level data contained in the pre-closing loan tapes and the data relating to LTV ratios, CLTV ratios, and occupancy status were accurate. For each loan that did not adhere to the representations in the Offering

3

Documents, I conducted an analysis to determine whether the underwriting defects for a given loan in the Sample Loans, when viewed collectively, substantially increased the credit risk of the loan.

7. Based on my re-underwriting review of the Sample Loans as set forth below in Plaintiff's Exhibit 1625, I determined, to a reasonable degree of professional certainty, that 482 (or 66.67 %) of the 723 loans I reviewed had substantially increased credit risk.

### Plaintiff's Exhibit 1625

**Sample Loans In Each Securitization That Had Substantially Increased Credit Risk Due To Their Failure To Comply With The Representations In The Offering Documents**

| Securitization | Number of Sample Loans Reviewed | Number of Sample Loans That Had Substantially Increased Credit Risk Due To Failure to Comply With Representations In Offering Documents | Percentage of Sample Loans That Had Substantially Increased Credit Risk Due To Failure to Comply With Representations In Offering Documents |
|---|---|---|---|
| NAA 2005-AR6 | 131 | 79 | 60.31% |
| NHELI 2006-FM1 | 100 | 70 | 70.00% |
| NHELI 2006-FM2 | 100 | 72 | 72.00% |
| NHELI 2006-HE3 | 99 | 66 | 66.67% |
| NHELI 2007-1 | 98 | 65 | 66.33% |
| NHELI 2007-2 | 98 | 68 | 69.39% |
| NHELI 2007-3 | 97 | 62 | 63.92% |
| Total | 723 | 482 | 66.67% |

### I. Qualifications and Experience

8. I have been actively engaged in residential mortgage lending and related work since 1972. I have underwritten all types of mortgage loans, including residential, multi-family, and commercial. I have worked at a variety of lending and financial institutions, including Freedom Federal Savings and Loan Association (1972-1982), Northeast Savings, F.A. (1982-1990), First Commonwealth Savings (1991-1994), Crestar Bank (1994-1998), SunTrust Bank

4

(1999-2000), and Treasury Bank/Countrywide Bank (2001-2005). I also have worked at Amherst Securities/Amherst Holdings as a credit analyst, where I was primarily responsible for residential mortgage market and housing analysis. A full summary of my employment experience is contained in my *curriculum vitae*, attached as Plaintiff's Exhibit 1326.

9. I have over five years of experience as a business consultant to institutions in the banking and mortgage industry. In 2005, after I left Treasury Bank, I provided consulting services to a community development bank, City First Bank, based in Washington, D.C. I helped the bank revise its commercial loan processing and credit monitoring systems. I also assisted the bank revamp its appraisal review process to comply with applicable regulatory guidelines. I also worked for City First Bank again from 2007 to 2008 to revise its credit and loan loss reserve methodology to comply with new commercial real estate loan guidance from the Office of the Comptroller of the Currency ("OCC"). In 2006, I served as the acting Chief Credit Officer of a $50 billion thrift institution, ING Direct, helping the bank set up a revised portfolio review process and reviewing new products and loan loss models. Beginning in 2006 and continuing through 2007, I worked with DirecTex Holdings, a Texas-based group that was applying to the Office of Thrift Supervision ("OTS") for approval to transfer the charter of a bank to a new group. I was the designated Chief Risk Manager, responsible for setting up the bank risk management infrastructure. In 2007, and starting again in 2012, I worked with Hilltop Advisors on several projects, including conducting a loan review and pricing analysis of a portfolio of distressed residential loans. With Hilltop Advisors, I also managed the review of a large mortgage company's quality control and underwriting processes.

10. I began working with Payne Advisory and Richard W. Payne III in January 2013 on litigation-related matters, including the FHFA coordinated actions. I also have been engaged

as an expert witness by RMBS investors in several other lawsuits involving potential breaches of mortgage representations and warranties.

## II. Representations in the Offering Documents

### A. Representations Regarding Compliance With Underwriting Guidelines And Criteria

*Underwriting Guidelines*

11. As reflected in the summary exhibit below, the Prospectus Supplement for each of the Securitizations represented that the mortgage loans in the securitization were originated or acquired generally in accordance with the applicable underwriting guidelines.

**Plaintiff's Exhibit 1626**

| Securitization | Representation in Prospectus Supplement |
|---|---|
| NAA 2005-AR6 | "The Mortgage Loans have been purchased by the seller from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and **were originated generally in accordance with the underwriting criteria described in this section**." PX O0059 (NAA 2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894 (emphasis added). |
| NHELI 2006-FM1 | "All of the mortgage loans were originated or acquired by Fremont, **generally in accordance with the underwriting criteria described in this section**. The following is a summary of the underwriting guidelines believed by the Depositor to have been applied, with some variation, by Fremont." PX O0049 (NHELI 2006-FM1 Prospectus Supplement) at NOM-FHFA_04729543 (emphasis added). |
| NHELI 2006-FM2 | "All of the mortgage loans were originated or acquired by Fremont, **generally in accordance with the underwriting criteria described in this section**. The following is a summary of the underwriting guidelines believed by the depositor to have been applied, with some variation, by Fremont." PX O0045 (NHELI 2006-FM2 Prospectus Supplement) at NOM-FHFA_04638395 (emphasis added). |
| NHELI 2006-HE3 | ***People's Choice***: "The Mortgage Loans were generally originated by People's Choice Home Loan, Inc., a Wyoming corporation ("PCHLI"), **in accordance with the underwriting criteria described in this section** and detailed in the print and on-line manuals that our underwriters use in making their credit decisions ('Underwriting Guidelines'); provided however that **certain of the more seasoned Mortgage Loans included in the Mortgage Pool may have been originated under underwriting** |

6

| Securitization | Representation in Prospectus Supplement |
|---|---|
| | guidelines which are **substantially similar to the Underwriting Guidelines described in this section** but may have differences with respect to pricing, FICO scores and other program attributes." PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620965 (emphasis added).<br><br>***General***: "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and **were originated generally in accordance with the underwriting criteria described in this section (with the exception of the Mortgage Loans originated by People's Choice Home Loan, Inc. which were originated in accordance with the People's Choice Home Loan, Inc. Underwriting Standards described above).**" PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620972 (emphasis added). |
| NHELI 2007-1 | ***First National Bank of Nevada***: "The mortgage loans were originated or acquired through retail, wholesale and correspondent channels or from FNBN's affiliate, First National Bank of Arizona and, in every case, **generally in accordance with FNBN's 'alternative' underwriting guidelines.**" PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142020-21.<br><br>"**All of the mortgage loans have been originated either under FNBN's 'full' or 'alternative' underwriting guidelines** (i.e., the underwriting guidelines applicable to the mortgage loans typically are less stringent than the underwriting guidelines established by Fannie Mae or Freddie Mac primarily with respect to the income and/or asset documentation which borrower is required to provide)." PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142021 (emphasis added).<br><br>***Silver State Mortgage***: "**Silver State Mortgage's underwriting guidelines are primarily intended to evaluate the prospective borrower's credit standing and ability to repay the loan, as well as the value and adequacy of the proposed Mortgage Property as collateral.**" PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142024 (emphasis added).<br><br>***General***: "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and **were originated generally in accordance with the underwriting criteria described in this section.**" |

7

| Securitization | Representation in Prospectus Supplement |
|---|---|
|  | PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142025 (emphasis added). |
| NHELI 2007-2 | **Ownit**: "Ownit provides loans to borrowers not only for the purpose of purchasing homes, but also for debt consolidation and refinancing existing mortgages **in accordance with the RightLoan Underwriting Guidelines**." PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591413 (emphasis added).<br><br>**General**: "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and **were originated generally in accordance with the underwriting criteria described in this section**." PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591415 (emphasis added). |
| NHELI 2007-3 | **ResMAE**: "The information set forth in the following paragraphs of this section **contains a brief description of the underwriting guidelines used for Mortgage Loans originated by ResMAE Mortgage Corporation ("ResMAE")**." PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732708 (emphasis added).<br><br>**General**: "All of the Mortgage Loans have been purchased by the sponsor from various banks, savings and loan associations, mortgage bankers and other mortgage loan originators and purchasers of mortgage loans in the secondary market, and **were originated generally in accordance with the underwriting criteria described in this section**." PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732712 (emphasis added). |

12. For those originators that originated at least 20% of the loans in any securitization, the Prospectus Supplements specifically represented that the mortgage loans originated by that originator were originated or acquired generally in accordance with the originator's underwriting guidelines. PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620965-72 (representing compliance with underwriting criteria of People's Choice Home Loan, which originated at least 20% of the loans in the deal, and summarizing such criteria); PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142020-25 (similar representation for First National Bank of Nevada and Silver State Mortgage); PX O0080

8

(NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591413-15 (similar representation for Ownit Mortgage Solutions); PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732707-12 (similar representation for ResMAE).

13. For those originators that originated fewer than 20% of the loans in any one securitization, the Prospectus Supplements generally summarized the underwriting guidelines of all of those originators in a section entitled "Underwriting Standards." PX O0059 (NAA 2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894-96; PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620972-75; PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142025-29; PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591415-18; PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732712-15. This section summarized the underwriting process and standards used by these originators and made clear that each lender applied its own underwriting guidelines, as applicable to different loan programs and other collateral characteristics, to the loans it originated.

14. Based on forty-plus years of experience in the mortgage industry, I understand the word "generally" in such a representation to mean that it was very often the case that the loans were originated or acquired in compliance with the originator's underwriting guidelines. Moreover, to the extent that any loans did not comply with the originator's underwriting guidelines, such loans were required to have sufficient compensating factors that were documented, verifiable, and that offset the increased credit risk resulting from the exception. A compensating factor is a particularly strong borrower credit characteristic that directly offsets a weakness or shortcoming in the borrower's credit profile so that the lender can originate a

9

mortgage loan to the borrower based on a sound conclusion that the borrower has the ability and willingness to repay the mortgage.

*Ability To Repay*

15. As reflected in the summary exhibit below, the Prospectus Supplement for each of the Securitizations represented that the originators evaluated the mortgage loans to determine that the borrower had the ability and/or willingness to repay the loan.

**Plaintiff's Exhibit 1627**

| Securitization | Representation in Prospectus Supplement |
|---|---|
| NAA 2005-AR6 | "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that **the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property** such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses." PX O0059 (NAA 2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894 (emphasis added). |
| NHELI 2006-FM1 | "Fremont's underwriting guidelines are **primarily intended to assess the ability and willingness of the borrower to repay the debt . . . .**" PX O0049 (NHELI 2006-FM1 Prospectus Supplement) at NOM-FHFA_04729544 (emphasis added). |
| NHELI 2006-FM2 | "Fremont's underwriting guidelines are **primarily intended to assess the ability and willingness of the borrower to repay the debt . . . .**" PX O0045 (NHELI 2006-FM2 Prospectus Supplement) at NOM-FHFA_04638395 (emphasis added). |
| NHELI 2006-HE3 | *People's Choice*: "Under each program, PCHLI reviews the applicant's source of income, calculates the amount of income from sources indicated on the loan application or similar documentation, reviews the credit history of the applicant, calculates the debt service-to-income ratio ("DTI") **to determine the applicant's ability to repay the loan . . . .**" PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620966 (emphasis added).<br><br>*General*: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that **the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property** such as property taxes, utility costs, standard hazard insurance and other fixed |

10

| Securitization | Representation in Prospectus Supplement |
|---|---|
|  | obligations other than housing expenses." PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620973 (emphasis added). |
| NHELI 2007-1 | ***First National Bank of Nevada***: "FNBN's underwriting guidelines are **primarily intended to evaluate the prospective borrower's credit standing and ability to repay the loan . . . ."** PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142022 (emphasis added).<br><br>***Silver State Mortgage***: "Silver State Mortgage's underwriting guidelines are **primarily intended to evaluate the prospective borrower's credit standing and ability to repay the loan . . . ."** PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142024 (emphasis added).<br><br>***General***: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that **the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property** such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses." PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142026 (emphasis added). |
| NHELI 2007-2 | ***Ownit***: "The Underwriting Guidelines and Credit Matrices of the RightLoan are designed to be used as a guide in **determining the credit worthiness of the borrower and his/her ability to repay.**" PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591413 (emphasis added).<br><br>***General***: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that **the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property** such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses." PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591416 (emphasis added). |
| NHELI 2007-3 | ***ResMAE***: "The underwriting standards of ResMAE are **primarily intended to assess the ability and willingness of the borrower to repay the debt . . . ."** PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732708 (emphasis added).<br><br>***General***: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that **the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the** property such |

| Securitization | Representation in Prospectus Supplement |
|---|---|
| | as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses." PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732713 (emphasis added). |

*Debt-to-Income ("DTI") Ratios*

16. The borrower's DTI ratio is an important factor in assessing the borrower's capacity to repay the loan. The borrower's DTI ratio demonstrates the amount of the borrower's gross monthly income required to pay monthly obligations, including the mortgage loan. To calculate the DTI ratio, the lender must determine all required monthly debt payments, including the subject loan's principal, interest, taxes and insurance/home owners association fee payments ("PITI"), installment and revolving debts, and any other required debt payments (such as child support). The lender then divides the borrower's total debt by the borrower's gross monthly income.

17. Lenders use two forms of DTI ratio calculations. First, the mortgage DTI ratio calculates only the monthly housing debt or PITI, divided by the monthly income. The second DTI ratio calculation is a total DTI ratio, which measures all monthly obligations, and is sometimes referred to as "the back-end" ratio. Based on my experience, the back-end DTI ratio was more often the primary means used to measure a borrower's capacity to repay the mortgage loan.

18. All else being equal, the higher the borrower's DTI ratio, the more difficult it is for the borrower to meet his or her monthly mortgage payments, and the greater the credit risk associated with the loan. *See* DePalma Dep., Director, Nomura Whole Loan Operations Group, 179:13-19 ("Do you know if now or at the time . . . it was your understanding that a higher DTI, all things being equal, would lead to a higher chance of delinquency or default when modeling these products?  A.  Yes."); PX 472 at NOM-FHFA_05071266 (email from Christopher

12

Scampoli dated Nov. 22, 2006 noting that there is a compliance risk for loans with DTIs ratios greater than 55%, and that any such loan "should be marked ineligible for 'Loan granted without regard for borrower's ability to repay'"). In addition, a lower DTI ratio provides a greater cushion against borrower default because the borrower has more income to overcome temporary cash flow shortages.

19. As set forth in the summary exhibit below, the Prospectus Supplement for each of the Securitizations contained representations regarding the originators' use of the DTI ratio in determining a borrower's ability to repay a loan.

**Plaintiff's Exhibit 1628**

| Securitization | Representation in Prospectus Supplement |
|---|---|
| NAA 2005-AR6 | "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses. **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and all scheduled payments on obligations that extend beyond ten months equal no more than a specified percentage not in excess of 60% of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria, including, without limitation, the loan-to-value ratio of the mortgage loan.**" PX O0059 (NAA 2005-AR6 Prospectus Supplement) at NOM-FHFA_04811894-95 (emphasis added). |
| NHELI 2006-FM1 | "Fremont's underwriting guidelines under the Scored Programs with respect to each rating category generally require . . . **debt to income ratios of 55% or less on mortgage loans with loan-to-value ratios of 90% or less, however, debt to income ratios of 50% or less are required on loan-to-value ratios greater than 90%.**" PX O0049 (NHELI 2006-FM1 Prospectus Supplement) at NOM-FHFA_04729546 (emphasis added). |
| NHELI 2006-FM2 | "Fremont's underwriting guidelines under the Scored Programs with respect to each rating category generally require . . . **debt to income ratios of 55% or less on mortgage loans with loan-to-value ratios of 90% or less, however, debt to income ratios of 50% or less are** |

13

| Securitization | Representation in Prospectus Supplement |
|---|---|
|  | required on loan-to-value ratios greater than 90%." PX O0045 (NHELI 2006-FM2 Prospectus Supplement) at NOM-FHFA_04638398 (emphasis added). |
| NHELI 2006-HE3 | *People's Choice*: "Under each program, PCHLI reviews the applicant's source of income, calculates the amount of income from sources indicated on the loan application or similar documentation, reviews the credit history of the applicant, **calculates the debt service-to-income ratio ("DTI") to determine the applicant's ability to repay the loan**, reviews the type and use of the property being financed, and reviews the property appraisal." PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620966 (emphasis added).<br><br>*General*: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses. **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and all scheduled payments on obligations that extend beyond ten months equal no more than a specified percentage not in excess of 60% of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria, including, without limitation, the loan-to-value ratio of the mortgage loan.**" PX O0041 (NHELI 2006-HE3 Prospectus Supplement) at NOM-FHFA_04620973 (emphasis added). |
| NHELI 2007-1 | *First National Bank of Nevada*: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated or verified) should be sufficient to enable the borrower to meet its monthly obligations on the mortgage loan and other expenses related to the Mortgaged Property (such as property taxes, standard hazard insurance and other fixed obligations other than housing expenses). **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and other fixed obligations equal no more than a specified percentage of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria including, but not limited to, the loan-to-value ratio of the mortgage loan or the amount of liquid assets available to the borrower after origination.**" PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142022 (emphasis added). |

14

| Securitization | Representation in Prospectus Supplement |
|---|---|
| | ***Silver State***: "Based on the data provided in the application and certain verifications (if required), a determination will have been made that the borrower's monthly income (if required to be stated or verified) should be sufficient to enable the borrower to meet its monthly obligations on the mortgage loan and other expenses related to the Mortgaged Property (such as property taxes, standard hazard insurance and other fixed obligations other than housing expenses). **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and other fixed obligations equal no more than a specified percentage of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria including, but not limited to, the loan-to-value ratio of the mortgage loan or the amount of liquid assets available to the borrower after origination.**" PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142025 (emphasis added).<br><br>***General***: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses. **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and all scheduled payments on obligations that extend beyond ten months equal no more than a specified percentage not in excess of 60% of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria, including, without limitation, the loan-to-value ratio of the mortgage loan.**" PX O0072 (NHELI 2007-1 Prospectus Supplement) at NOM-FHFA_05142026 (emphasis added). |
| NHELI 2007-2 | ***Ownit***: "Several aspects are considered in determining the borrower's capacity or ability to repay the loan. **The key facts are** employment documentation, history and **amount of income used to derive the debt to income ratios.**" PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591414 (emphasis added).<br><br>"**Base debt to income ratios are set at 45% or 50% depending on credit score, LTV, documentation type and if the borrower is a first time home buyer. In some cases the maximum debt ratio may increase to 55% based on meeting a minimum disposable income requirement.**" PX O0080 (NHELI 2007-2 Prospectus Supplement) at |

15

| Securitization | Representation in Prospectus Supplement |
|---|---|
| | NOM-FHFA_05591414 (emphasis added).<br><br>**General**: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses. **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and all scheduled payments on obligations that extend beyond ten months equal no more than a specified percentage not in excess of 60% of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria, including, without limitation, the loan-to-value ratio of the mortgage loan.**" PX O0080 (NHELI 2007-2 Prospectus Supplement) at NOM-FHFA_05591416 (emphasis added). |
| NHELI 2007-3 | **ResMAE**: "The underwriting standards of ResMAE are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan. **ResMAE considers, among other things, a mortgagor's credit history, repayment ability and debt service-to income ratio (referred to herein as the Debt Ratio)**, as well as the value, type and use of the mortgaged property." PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732708 (emphasis added).<br><br>**General**: "Based on the data provided in the application and certain verifications (if required), a determination is made by the original lender that the borrower's monthly income (if required to be stated) will be sufficient to enable the borrower to meet their monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses. **Generally, scheduled payments on a mortgage loan during the first year of its term plus taxes and insurance and all scheduled payments on obligations that extend beyond ten months equal no more than a specified percentage not in excess of 60% of the prospective borrower's gross income. The percentage applied varies on a case-by-case basis depending on a number of underwriting criteria, including, without limitation, the loan-to-value ratio of the mortgage loan.**" PX O0051 (NHELI 2007-3 Prospectus Supplement) at NOM-FHFA_04732713 (emphasis added). |

16

*Credit Information*

20.     The Prospectus Supplements contained representations about the specific types of credit information, such as a loan application, credit report/history, federal tax returns, and/or verifications of assets (or deposits), that underwriters should review to determine a borrower's ability to repay the mortgage loan. Indeed, the Prospectus Supplements for each Securitization represented that the underlying mortgage loans were supported by appropriate documentation of the borrower's credit profile, including a credit report, credit score, and documentation regarding income, employment, assets, and housing history. The Prospectus Supplements made clear that the purpose of obtaining such information was to evaluate the prospective borrower's ability to repay the loan. A loan underwriter must have these credit documents and key credit information in order to evaluate the borrower's ability and willingness to repay the loan.

21.     As set forth in the summary exhibit below, the Prospectus Supplement for each of the Securitizations contained representations about the specific types of credit information that should be reviewed by underwriters to determine a borrower's ability to repay the mortgage loan.

**Plaintiff's Exhibit 1629**

| Securitization | Representation in Prospectus Supplement |
| --- | --- |
| NAA 2005-AR6 | "**Generally, each borrower will have been required to complete an application designed to provide to the original lender pertinent credit information concerning the borrower. As part of the description of the borrower's financial condition, the borrower generally will have furnished certain information with respect to its assets, liabilities, income (except as described below), credit history, employment history and personal information, and furnished an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy.** The borrower may also have been required to authorize verifications of deposits at financial institutions where the borrower had demand or savings accounts. In the case of investment properties and two- to four-unit dwellings, income derived from the mortgaged property may have been considered for underwriting purposes, in addition to the income of the borrower from other sources." PX O0059 (NAA 2005- |

17