Defendants' Deposition Designations<br>of Certain GSE Witnesses

April 2, 2015

**V**IA **E**LECTRONIC **M**AIL

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:     *FHFA v Nomura Holding Am. Inc., et al.*, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

To streamline argument on deposition designations, FHFA respectfully requests that the Court sustain FHFA's relevance objections to the entirety of Defendants' deposition designations of nine GSE witnesses:  Eric Rosenblatt, Lin Cao, C.J. Zhao, Frank Vetrano, Francisco Gonzalez-Rey, Jonathan Veum, Ronald Feigles, Stacey Kenneweg, and John Ingram.  These witnesses were responsible for either PLS models and analytics, counterparty reviews, or had only single family responsibilities, all topics the Court ruled inadmissible under Fed. Rules of Evidence 401 and 403.

*Single Family*.  Eric Rosenblatt was Fannie Mae's Vice President Risk Policy (later called Single Family Research & Analytics and then Credit Analytics & Monitoring).  He worked exclusively in the Single Family business and never had PLS responsibility.  Ex. 1 (Rosenblatt Tr.) at 33:11-34:5; *see also id.* at 65:19-66:8.  He does not "recall any comments about the private label collateral at all, except for the one that they said we -- all I heard is that it will pass the stress test.  No worries.  That's all I remember." *Id.* at 387:3-7; *see also id.* at 46:9-47:5; 236:7-9.  Defendants claim Mr. Rosenblatt's testimony relates to loss causation, but the designations fail to establish the requisite foundation for admissible lay opinion.  When asked "Do you know why it was that, you know, in March 2007, Fannie Mae wasn't projected -- projecting losses on its bonds in the PLS book, but bonds, you know, ultimately did incur losses?," Mr. Rosenblatt testified "I have [not] analyzed those books myself.  I have only ever heard about it -- I've read about it in papers and things like that." *Id.* at 239:10-240:20 (as amended by errata).  FHFA respectfully requests that the Court sustain its Rule 401 and Rule 403 objections to the entirety of the designations in the deposition transcript of Mr. Rosenblatt.

*Models and Analytics.*  Defendants have designated the transcripts of five GSE employees whose roles concerned primarily models and analytics.  The GSEs' "idiosyncratic models and evaluation" are irrelevant to materiality.  Trial Tr. at 1274:14-19 (defense counsel describing the rulings in this case and relying on those rulings to object to the testimony of Freddie Mac credit analyst Kevin Palmer[1]); *see also* Dkt. 1271 ("Materiality is an objective standard, determined with reference to a reasonable PLS trader -- not a reasonable GSE, or a reasonable PLS trader with plaintiff's idiosyncratic regulatory restrictions and purchasing goals" (citing *FHFA v. Nomura Holding Am., Inc.*, No. 11 cv 6201 (DLC), 2014 WL 7229361, at *3 (S.D.N.Y. Dec. 18, 2014)).  Lin Cao and C.J. Zhao were Fannie Mae PLS credit analysts responsible for modeling and analysis related to PLS purchases and monitoring.  Frank Vetrano was a Freddie Mac PLS credit analyst who supervised the pre-purchase PLS credit analysis process (and Kevin Palmer,

---

[1]  Mr. Vetrano's deposition testimony is substantially similar to that of another Freddie Mac employee, Kevin Palmer. As Mr. Tulchin observed in Court on March 25, "Mr. Palmer's testimony from start to finish virtually is about the idiosyncratic models and evaluation conducted by Freddie Mac." 3/25/2015 Trial Tr. at 1274:17-19. Defendants declined to cross examine Mr. Palmer.  3/25/2015 Tr. at 1326:3-18.

the Freddie Mac witness to whom Defendants objected).  Francisco Gonzalez-Rey and Jonathan Veum testified as Rule 30(b)(6) witnesses on "the policies and procedures governing the models used by [the GSEs] in determining whether to purchase, retain, or sell private label securities; how those models were used in determining whether to purchase, retain, or sell PLS; and the inputs to and outputs from those models."  Ex. 2 (FHFA's 2/1/2013 Objections and Responses to Defendants' Notice of Rule 30(b)(6) Deposition to FHFA – Fannie Mae (Ex. 3 (FHFA's 2/1/2013 Objections and Responses to Defendants' Notice of Rule 30(b)(6) Deposition to FHFA – Freddie Mac).  Defendants claim the designated testimony of these five witnesses is relevant to the loss causation defense.  Ex. 4 (3/30/2015 E-mail from B. Harsch to A. Wade).  As the Court has stated, the "the effectiveness or ineffectiveness of the GSEs' purchasing process" is not relevant at all. 3/31/2015 Trial Tr. at 2070:19-21.  Moreover, these designations do not meet the foundational requirement for lay opinion testimony regarding loss causation as articulated by the Court.  *See FHFA v. Nomura Holding Am., Inc.*, No. 11 cv 6201 DLC, 2015 WL 685159, at *4 (S.D.N.Y. Feb. 18, 2015) ("If the witness did not perform any such investigation during the regular course of her business activities, then she may not be examined regarding her opinion on what caused any loss to the value of the seven Certificates at issue here or more broadly about losses sustained by the GSEs' PLS holdings or by others who held PLS."); Dkt. 1358, at 3 ("[T]he defendants must establish that the witness was directly involved in a particular investigation, and that that investigation included findings and conclusions regarding causation.").  FHFA respectfully requests that the Court sustain its Rule 401 and Rule 403 objections to the entirety of the designations in the deposition transcripts of Ms. Cao, Mr. Gonzalez-Rey, Mr. Vetrano, Mr. Veum, and Ms. Zhao.

*Freddie Mac Counterparty Reviews*.  Ronald Feigles was the head of Freddie Mac's Alternative Market Operations ("AMO") group and Stacey Kenneweg led the Counterparty Credit Risk Management ("CCRM") group, which assessed counterparty financial stability.  Neither were PLS traders.  The Court ruled that "the portions of AMO reviews that reflect originators' tolerance levels for the variation between an appraisal and an AVM" were admissible only to show that this data was provided to Freddie Mac PLS traders.  3/5/2015 Order, Dkt. 1370, at 2-3.  However, the Feigles designations regarding reviews of originators relate to other portions of AMO reviews, which the Court has stated were "chock full of hearsay" and for which the Court has sustained FHFA's objections.  3/10/2015 Hr'g Tr. at 28-29.  Ms. Kenneweg's testimony regarding CCRM reviews, which are even less relevant than AMO reviews, is similarly unrelated to originators' tolerance levels for variation between an appraisal and an AVM.  There is no issue in this trial to which any of Ms. Kenneweg's designations would be relevant, even if they were admissible.  FHFA respectfully requests that the Court sustain its Rule 401 and Rule 403 objections to the entirety of Defendants' designations in the deposition transcripts of Mr. Feigles and Ms. Kenneweg.

*Fannie Mae Anti-Predatory Lending Review Testimony*.  John Ingram, an in-house attorney at Fannie Mae, was responsible for reviewing the post-settlement anti-predatory lending reviews in which he requested dealers to ensure that their third party diligence firms included Fannie Mae's anti-predatory lending compliance scope in their due diligence.  *See* Ex. 5 (Ingram Tr.) at 23:24-24:12; *see also id.* at 24:13-25:9, 35:11-36:9.  Like the Fannie Mae counterparty reviews, which the Court excluded on relevance grounds, 3/18/2015 Trial Tr. at 422:12-423:1, post-settlement anti-predatory lending reviews were not provided to PLS traders.  Testimony regarding these reviews is irrelevant and is of no consequence in determining this lawsuit.  Fed. R. Evid. 401, 403.

Respectfully submitted,

*/s/ Jon Corey*

Jon Corey

2