**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

January 30, 2015

**VIA ELECTRONIC MAIL**

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   <u>FHFA v Nomura. Am. Holdings, Inc., et al.</u>, No 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

      On FHFA's strict liability securities claims, only three issues remain to be tried: the falsity of the alleged misrepresentations, the materiality of the alleged misrepresentations, and the loss causation defense (as to the Section 12 claim only).  Evidence regarding the GSEs' role in the mortgage market, corporate organization, credit risk model functionality, concentration limits, general PLS policies and procedures, PLS trader reliance upon offering materials and other information, competition among the GSEs for market share, originator or aggregator reviews, knowledge of PLS investment risks, and the like ("GSE pre-settlement documents and testimony") are not relevant to the issues to be tried.  Fed. R. Evid. 402.  Nonetheless, Defendants' submissions of expected witness testimony, exhibit lists, and deposition designations confirm that they seek to present a factual case focused on the GSEs and their employees—who they are, what they did, what they knew, why and how they bought PLS, and the GSEs' relative responsibility for PLS losses.  Defendants exercise no restraint, but anticipate offering live or deposition testimony from each GSE fact witness they deposed.  Even if the Court were to find such evidence tangentially relevant—and it is not—permitting its admission would waste the Court's resources and unduly delay a trial estimated to take approximately one week.  Fed. R. Evid. 403.  Therefore, FHFA respectfully requests that the Court preclude Defendants from offering GSE pre-settlement documents and testimony identified below and in the Appendices A and B.[1]

      *Falsity*.  Whether Defendants made "untrue statement[s]" regarding the underwriting guideline-compliance, LTV ratios, and occupancy status of the loans underlying the Certificates cannot be proven or disproven with GSE-specific evidence.  15 U.S.C. § 77*l*(a)(2); D.C. Code § 31-5606.05(a)(1)(B); Va. Code § 13.1-522(A)(ii).  The Court ruled the GSEs did not have "access to the files or data that would give them knowledge that those detailed representations

---

[1]  Appendix A to this letter identifies specific categories of documents FHFA asks the Court to exclude, which were taken from Nomura's and RBS's exhibit list.  Appendix B identifies specific witnesses whose testimony FHFA asks the Court to exclude.  *See* Williams Decl. ¶¶ 4-5.  To be clear, FHFA does not seek to exclude evidence regarding the actual GSE purchases of the Certificates, or GSE purchase requirements (*e.g.*, AAA rating), or damages.

about the Mortgage Loans in a Supporting Loan Group were false." *FHFA v. HSBC N. Am. Holdings Inc.*, --- F. Supp. 2d ---, 2014 WL 3702587, at *17 (July 25, 2014). Evidence of the "GSEs' knowledge of general practices or trends" is not relevant to prove the Certificate-specific representations were false. *Id*. Conversely, without access to the requisite "files or data" to make a determination of falsity, testimony from GSE witnesses that they relied on offering material representations, that they did not believe at the time that they were misled, and that they had not known Defendants' employees to lie, cannot negate FHFA's empirical proof based on "files and data" that the Certificate-specific misrepresentations were false.[2] *See, e.g.*, Ex. 1 at 63:11-15, 359:9-363:5; Ex. 2 at 486:23-487:20.

*Loss Causation.* For loss causation, Defendants must show the "depreciation in value of a security . . . results from events other than misrepresentations or omissions." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 n.8 (2d Cir. 2010). Such proof requires specialized and technical knowledge outside the province of lay GSE witnesses. *See* FHFA's Mot. *in Limine* No. 6 at 1-2; Fed. R. Evid. 701(c). Further, pre-settlement evidence of loss causation is nonsensical as no "depreciation in value" could occur before settlement. Abstractions, speculations, and generalities that Defendants may attempt to offer about what could lead to a possible future loss in value of a security generally should be excluded. Fed. R. Evid. 402, 403.

*Materiality*. Proof of materiality is objective; it is not plaintiff-specific. *See FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *4 (S.D.N.Y. Dec. 18, 2013). A representation or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re Brittania*, 665 F. Supp. 2d 404, 413 (S.D.N.Y. 2009) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). The test does not concern "whether the investment decision of a particular individual would have been affected." *In re Metlife Demutualization Litig.*, 229 F.R.D. 369, 380 (E.D.N.Y. 2005) (quotation marks omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) ("In no event will the *individual* circumstances of [a] particular [plaintiff] bear on the inquiry."). Courts exclude evidence of a plaintiff's particular purchase considerations because it is irrelevant and will distract from the "reasonable investor" standard. *See In re WorldCom, Inc. Sec. Litig.*, 2005 WL 408137, at *5 (S.D.N.Y. Feb. 22, 2005) (Cote, J.) (excluding evidence concerning the named plaintiffs' financial advisors on the ground that it was of "marginal relevance"); *In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *3-4 (S.D.N.Y. July 15, 1996) (finding, in class-certification context, plaintiff testimony regarding defendants' misstatements "entirely irrelevant" to the "reasonable investor" standard). The Court recognized this in its Order excluding evidence of housing goals, writing that materiality is "'an objective standard,' determined with reference to a reasonable 'PLS trader'—not a reasonable GSE, or a reasonable PLS trader with plaintiff's idiosyncratic regulatory restrictions and purchasing goals." *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (quoting *FHFA v. UBS Ams. Inc.*, 2013 WL 3284118, at *13, *23 (S.D.N.Y. June 28, 2013)).

What "a reasonable GSE, or a reasonable PLS trader with plaintiff's idiosyncratic regulatory restrictions and purchasing goals" may have considered during the purchase of the

---

[2]  Defendants have conceded post-settlement GSE evidence is irrelevant to prove falsity. *See* Opp'n to FHFA's Motion *in Limine* No. 6 to Exclude GSE Post-Settlement Evidence at 5 (Jan. 20, 2015).

2

seven Certificates at issue—or, more generally, what he or she may have considered in making a PLS purchase decision for Fannie Mae or Freddie Mac—is not relevant to whether a "reasonable investor" or the "market" would have considered accurate disclosures of the alleged misrepresentations to have altered the total mix of information available at the time of purchase. As the Court noted, "Defendants have offered no reason the GSEs' motivations in purchasing the Certificates are relevant here," and the trier of fact "need not know much about the GSEs" to determine objective materiality or falsity. *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3 (quoting *FHFA v. UBS Ams. Inc.*, 2013 WL 3284118, at *13, *23 (S.D.N.Y. June 28, 2013)). While Plaintiff has taken this guidance to heart, Defendants ignore both this Court's guidance and the applicable law. Defendants' pre-trial disclosures confirm that they intend to present testimony and documents regarding the subjective considerations and idiosyncratic position of the GSEs—yet this evidence can neither prove nor disprove the materiality of the Certificate-specific misrepresentations.

Defendants have identified the topics of testimony for the 13 GSE witnesses they intend to call at trial and the 13 whose testimony they intend to present by designation. None constitute objective evidence as to whether Defendants' misrepresentations were or were not material. The topics those listed below and other substantively identical topics:

- "[GSE entry into] and participation in the subprime [or non-traditional loan] market" (5 witnesses)
- "[R]isk of subprime loans and other 'non-traditional' loan products" (5 witnesses)
- "[L]oosening of underwriting guidelines" (3 witnesses)
- "GSE counterparty reviews and policies" (4 witnesses)
- "PLS pre purchase process" and "[P]olicies for purchasing PLS and selecting collateral backing PLS" (4 witnesses)
- "[T]he factors [GSE] PLS traders considered when making the decision to purchase PLS" (7 witnesses)
- "PLS traders['] review of offering documents" (4 witnesses)
- "Approval authority for [GSE] PLS purchases" (2 witnesses)
- "[GSE] use of models in pre purchase analysis" (5 witnesses)
- "[U]se of credit enhancement in PLS" (1 witness)

Exs. 3 & 4.[3] Defendants also intend to call former FHFA Director James Lockhart to testify regarding FHFA "oversight of Freddie Mac and Fannie Mae," "the conservatorship of Freddie Mac and Fannie Mae," and the "causes of action here asserted." Ex. 3 at 4. Both topics are irrelevant to materiality and are the subject of a separate FHFA motion *in limine*.[4]

---

[3] Defendants also identified 12 witnesses to testify regarding post-settlement topics, including "how housing prices and other economic factors affect the performance of mortgage loans and RMBS purchased and held by [the GSEs]" and "causes of losses for [GSE] PLS," and a single Fannie Mae in-house lawyer, John Ingram, to testify regarding the post-settlement "legal department's role in reviewing offering documents for PLS" and "use and review of Clayton in connection with anti-predatory lending policies." Exs. 3 &. 4. That testimony is addressed by FHFA's Motion *in Limine* No. 6, seeking to exclude post-settlement GSE evidence.
[4] *See* FHFA's Mot. *in Limine* No. 10 to Exclude Evidence on Conservatorship, Profitability, and Single-Family Relationships. Defendants intend to present testimony from former Director Lockhart and former Fannie Mae CEO Mudd to testify regarding the "causes of action here asserted," Ex. 3 at 4, which, if literal, would be privileged or impermissible legal opinion, or if factual, insufficiently specific to justify the relevance of their testimony.

Motion *in Limine* No. 8

Defendants' exhibit lists contain documents exclusively related to these topics.  Examples include:  GSE non-PLS policies and procedures (Exs. 5-7);  GSE PLS policies and procedures over time (Exs. 8-10); originator and counterparty reviews (Exs.11-14); GSE committee minutes, agendas, and related emails (Exs. 15-17); GSE organization charts and documents (Exs. 18-20); GSE Single Family senior executive emails, memos and presentations unrelated to PLS (Exs. 21-23); internal emails and memoranda regarding models and modeling unrelated to any Certificate (Exs. 24-26); non-Certificate-specific internal memos, reports, and emails (Exs. 27-31); and other irrelevant documents such as a 1990 Freddie Mac publication on the subprime industry (Ex. 32), and a GSE employee's non-Certificate specific performance review from 2003 (Ex. 33).

GSE-specific evidence regarding PLS evaluation will not inform whether a "reasonable 'PLS trader'" would consider accurate representations about the collateral supporting the Certificates to have substantially altered the total mix of available information.[5]  *FHFA v. Nomura Holding Am., Inc.*, 2014 WL 7229361, at *3.  Information known to a GSE about originators or the broader mortgage market is similarly irrelevant to the materiality of Defendants' misrepresentations about the particular collateral that is the focus of FHFA's claims.  *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (materiality must be measured against "the focus of plaintiffs' claims"); *see also N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) (holding that "sporadic news reports" about "loose underwriting standards" and "eas[ing] up on the required documentation of a borrower's income" were immaterial, because they did "not alone clarify or contextualize the alleged misstatements"); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993) (affirming holding that 10-K statement and sporadic public reports should not be regarded as "total mix of information reasonably available to shareholder" in weighing materiality of statements in proxy materials).

Defendants will argue that GSE pre-settlement documents and testimony are relevant to materiality because their respective PLS market shares make their pre-purchase processes "a reasonable proxy" for the reasonable investors.  *See* Defs.' Opp'n to Richard *Daubert* Mot. at 14-16 (Jan. 23, 2015).  This argument contravenes the applicable law set forth above, including this Court's order regarding proof of objective materiality.  The "proxy" argument, if accepted, would permit Defendants to transform an objective materiality standard into a subjective, GSE-specific standard of materiality that will improperly insert a reliance element into Plaintiff's claims.[6]  *See In re WorldCom*, 2005 WL 408137, at *4-5 (excluding testimony from individual class members offered to prove materiality due to likely confusion with reliance).

Even if the Court were to find the documents and testimony above tangentially relevant—and it should not—admission of documents or testimony regarding the GSEs' pre-

---

[5] In the case of Fannie Mae anti-predatory lending reviews, the evidence is irrelevant for the independent reason that Fannie Mae PLS personnel did not have access to the reviews due to the federal securities laws.  *FHFA v. HSBC N. Am. Holdings Inc.*, --- F. Supp. 2d ---, 2014 WL 3702587, at *5 (S.D.N.Y. July 25, 2014) ("There is no evidence that the GSEs were ever given pre-purchase access to the loan files for the Mortgage Loans.").
[6] Defendants have proffered an expert, John J. Richard, who purports to identify factors that "sophisticated non-agency RMBS investors" such as the GSEs considered when making PLS purchase decisions, *i.e.*, what factors they considered material.  Mr. Richard opines that "Freddie Mac's and Fannie Mae's pre-acquisition analyses of RMBS reflected the processes of typical sophisticated RMBS investors." Ex. 58 ¶ 18. As Plaintiff explained in its *Daubert* motion to exclude this testimony, Mr. Richard's opinions are not supported by sufficient credentials, are not the product of reliable methods, and are irrelevant.

settlement PLS, its PLS business generally, and the GSEs' role in the mortgage market will waste time and cause needless delay.  *See* Fed. R. Evid. 403.  Preservation of judicial resources is an important consideration in a bench trial.  *See United Brands Co. v. M.V. Isla Plasa*, 1994 WL 114825, at *9 n.2 (S.D.N.Y. Mar. 31, 1994) (excluding evidence from a bench trial on the ground of burden to the court); *SEC v. Morelli*, 1993 WL 603275, at *2 (S.D.N.Y. Dec. 21, 1993) (excluding evidence from a bench trial on the ground of undue delay).  FHFA respectfully requests that Defendants be precluded from offering the GSE pre-settlement testimony and documents described above and in the attached Appendices.

*Patently Irrelevant Testimony.*  Defendants, particularly the Nomura Defendants, designated GSE witness testimony from over 4500 transcript pages, Williams Decl. ¶ 6, covering not only the irrelevant topics detailed on their witness lists, but testimony barred explicitly by the Court's motion *in limine* rulings, implicitly by the Court's summary judgment orders, and testimony incontestably irrelevant to this Action generally.  Defendants designated testimony regarding housing goals barred by a December 18, 2014 Order (Dkt. No. 994), including testimony from Freddie Mac's Rule 30(b)(6) housing goals designee.  Exs. 34-39.  Defendants designated testimony regarding PLS traders' and credit analysts' reliance on offering materials and their inability to rely upon final prospectus supplements also barred by the Court's December 18, 2014 Order (Dkt. No. 995).  Exs. 40-41.  Defendants designated testimony regarding GSE Single Family due diligence prohibited by a December 18, 2014 Order (Dkt. No. 993).  Exs. 42-45.  Defendants designated testimony regarding GSE Single Family automated underwriting systems prohibited by a December 18, 2014 Order (Dkt. No. 997).  Ex. 46.  Defendants' designations also include testimony regarding certificates and documents, including offering materials, related exclusively to other, resolved Actions.  Exs. 47-48.  Defendants designated testimony regarding the GSEs' single family businesses and decisions made regarding whole loan purchases, including consideration of purchasing, and purchases of, subprime whole-loans (Exs. 49-51); testimony regarding GSE Single Family credit risk modeling (Exs. 52); testimony regarding the GSEs' political considerations, including its relationship with members of Congress (Exs. 53-54); and hundreds of pages of testimony regarding the GSEs organizational structure, departments, committees, and the role and responsibilities, over time, of GSE employees (Exs. 55-57).  These designations flatly contradict the Court's prior holdings and guidance, and burden these proceedings with irrelevant documents and testimony, all of which should be excluded.

FHFA respectfully requests that the Court exclude GSE pre-settlement documents and testimony.

**Motion** *in Limine* **No. 8**

Respectfully submitted,

/s/ Philippe Z. Selendy

Philippe Z. Selendy

cc: All Counsel of Record