October 24, 2014

**V**IA **E**LECTRONIC **M**AIL

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA v Nomura Holding Am., Inc.*, No 11 Civ. 6201 (S.D.N.Y.)

Defendants' Opposition ("Opp.") to FHFA's Motion *in Limine* No. 1 ("Mot.") concedes that:  Defendants intend to introduce evidence of Post-Claim Payments at trial; doing so risks "jury confusion" (Opp. 2); and it is for the Court, not the jury, to determine remedies for FHFA's Blue Sky claims.  Defendants' arguments for nevertheless introducing evidence of Post-Claim Payments before a jury fail.  As set forth below, (i) Section 11 damages are not reduced based on Post-Claim Payments, (ii) evidence of Post-Claim Payments is not otherwise relevant to FHFA's Section 11 claims and therefore should be precluded from presentation to the jury, and (iii) it is for the Court, not the jury, to determine FHFA's remedies under its Section 12 and Blue Sky claims.

I.   **POST-CLAIM PAYMENTS ARE IRRELEVANT SECTION 11**

**Section 11 Damages Are Not Reduced By Post-Claim Payments**.  This Court has already held that under 15 U.S.C. § 77k(e)(1), "damages are calculated as of the date of suit."  *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 517331, at *1 (S.D.N.Y. Mar. 4, 2005).  Defendants' sole authority (Opp. 3) for the proposition that such damages can be offset by post-claim payments is inapposite—*Robertson v. White*, 81 F.3d 752, 758 (8th Cir. 1996), addressed Section 10(b) of the Exchange Act.  Unlike the Exchange Act, Section 11 does not permit benefit-of-the-bargain damages—including for debt instruments—because it "prescribes the method of calculating damages, and the court must apply that method ***in every case***."  *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) (citation omitted) (emphasis added); *see also* Mot. 2-3 (citing additional authorities).  Because damages are expressly calculated "as of the time such suit was brought," (15 U.S.C. § 77k(e)(1)), not after, Defendants' argument fails.  *E.g.*, *Akerman v. Oryx Comm'cns, Inc.*, 810 F.2d 336, 341-42 (2d Cir. 1987); Mot. at 2-3 (citing additional authority showing damages are "frozen" as of the date of suit).

**Post-Claim Payments Are Otherwise Irrelevant To Section 11**.  Defendants admit (Opp. 2) that their damages expert does not calculate damages based on Post-Claim Payments—he "uses only information available as of September 2, 2011"—but nevertheless seek to introduce this admittedly unnecessary evidence as a "cross-check" on their expert's calculations.  This "cross check" is a thinly veiled attempt to "benefit from a rising market"—a result the law forbids.  Mot. 3 n.1 (quoting *Beecher v. Able*, 435 F. Supp. 397, 410 (S.D.N.Y. 1975)).  Defendants also argue (Opp. 2) that evidence "includ[ing]" Post-Claim Payments *could* show that the RMBS market was illiquid in September 2011, but do not explain how evidence of payments to bondholders after that time is relevant to whether there was an "active market[]" for the bonds as of the claim date.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 167 & n.16 (2d Cir. 2012).

Defendants also argue that Post-Claims Payments are relevant to loss causation, relying entirely on the conclusory assertion that "post-injury evidence can be relevant to show the proximate cause of an injury." Opp. 4.  Defendants conflate post-*claim* evidence with post-

*injury* evidence. FHFA proposes only that post-claim evidence be excluded, not all post-injury evidence. The market disruption Defendants cite as the cause of the GSEs' losses (or injury) occurred in 2008, three years before FHFA filed suit. Thus, Defendants may draw on three years' worth of "post-injury" evidence to prove loss causation even if post-claim evidence is excluded. Further, assuming *arguendo* that evidence in the immediate aftermath of the market disruption in 2008 is relevant to loss causation, there is no reason that such evidence would remain relevant from 2011 forward. *See McFarland v. Gregory*, 425 F.2d 443, 447 (2d Cir. 1970) (later-in-time evidence not probative of earlier-in-time cause where lapse of time is too great, or circumstances changed), *cited approvingly in Jund v. Town of Hempstead*, 941 F.2d 1271, 1288 (2d Cir. 1991); *Russell, Poling & Co. v. Conners Standard Marine Corp.*, 252 F.2d 167, 170 (2d Cir. 1958) ("[I]nferences or presumptions of fact ordinarily do not run backward."). And, lastly, even if there were some marginal relevance to such post-claim evidence, it would be amply outweighed, under Rule 403, by the undisputed fact that the presentation of post-claim evidence at trial would create a risk of "jury confusion" (Opp. 2).[1]

## II.   FHFA'S SECTION 12 CLAIM IS EQUITABLE IN NATURE

Section 12(a)(2) expressly permits a plaintiff to "sue … in equity," 15 U.S.C. § 77*l*(a)(2), and the Second Circuit has held that an action for rescission under this statute does not give rise to a jury trial right, *Royal Am. Managers, Inc.* v. *IRC Holding Corp.*, 885 F.2d 1011, 1019 n.4 (2d Cir. 1989). Defendants cannot avoid this binding authority (Opp. 5 n.4) on the basis that the PSLRA added a loss causation defense to Section 12. Section 12(a)(2) still expressly authorizes suits in "equity," and Defendants make no showing that this language has been the subject of an "implied repeal," *see Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007). Moreover, Defendants are wrong that adding a loss causation defense transforms an equitable claim into a legal one; rather, whether a suit is equitable depends on the nature of the *relief* sought, *see Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 325 (1979))—not the available defenses—and numerous Courts have held that a suit for equitable relief with a proximate cause element does not give rise to a jury trial right, *id*. at 335-36; *see also, e.g., In re Allstate Life Ins. Co. Litig.*, 2014 WL 2804004, at *3-4 (D. Ariz. June 20, 2014) (no right to a jury trial in action for rescission under Arizona Securities Act, even though plaintiff may "bear the burden of proving proximate causation").[2]

Finally, Defendants acknowledge there is no loss causation defense to FHFA's Blue Sky claims (Opp. 3 n.2), hence they have conceded that their sole argument as to why FHFA's Section 12 claim should be determined by a jury—namely, that the loss causation defense to that claim is "legal" in nature—does not apply to FHFA's Blue Sky claims. Defendants have thereby conceded that relief on FHFA's Blue Sky claims is entirely equitable in nature, and must be resolved solely by the Court.

---

[1] Defendants' suggestion that FHFA could "open the door" by referring to allegations in its complaint (Opp. 4) is irrelevant, as FHFA intends to prove its case at trial through evidence obtained in discovery, not based on post-suit events.

[2] Defendants' argument that loss causation is "legal" and triable by a jury is also a non sequitur, since, under FHFA's proposal, the jury will be deciding that issue. If this Action were bifurcated, FHFA's legal Section 11 claims would be tried before its claim for equitable relief under Section 12, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962); *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972), the jury would determine loss causation as to Section 11 (without the need for evidence of Post-Claim Payments), and the Court would use the jury's finding of loss causation (if any), to the extent appropriate, as an offset to its calculation of rescissory relief under Section 12.

2

**Motion *in Limine* No. 1**

Respectfully submitted,

/s/ Philippe Z. Selendy

Philippe Z. Selendy

cc:     All Counsel of Record