**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

October 27, 2014

**BY ELECTRONIC MAIL**

The Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re: *FHFA v. Nomura Holding America, Inc., et al.*, No. 11 Civ. 6201 (S.D.N.Y.) (DLC)

Dear Judge Cote:

FHFA respectfully submits this reply in support of its Motion *in Limine* to prohibit Defendants from offering documents or testimony related to Single Family due diligence.

**Defendants' Due Diligence Defense.** The GSEs' Single Family due diligence does not inform an RMBS diligence "industry standard" because, according to Defendants' diligence expert, no such standard exists: "There were no specific rules or industry standards creating requirements or processes for due diligence in RMBS transactions during the relevant period." Ex. 1 ¶ 48; *see* Opp. 2-3. Defendants' attempt to analogize the industry standard applicable to accountants in *Escott v. BarChris Construction Corp.* to the standard proposed for other "securities professional[s]" falls flat. The latter "is not a time-honored standard set by an authoritative source recognized and followed throughout the profession." *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 857 (9th Cir. 2001). No "time honored" diligence standards governed subprime and Alt-A RMBS; rather, this industry exemplified the serious risk of the "race to the bottom" that other courts have cited in rejecting reliance on industry standards. *Id.* Nor are these standards "set by an authoritative source" like OSHA, *see Spancrete Ne., Inc. v. OSHA*, 905 F.2d 589, 593-94 (2d Cir. 1990), or the National Propane Gas Association, *see Sears, Roebuck and Co. v. Midcap*, 893 A.2d 542, 554 (Del. 2006).

Defendants' attempt to equate Single Family due diligence with Defendants' securitization diligence likewise fails. Opp. 3. Single Family due diligence was not solely concerned with adherence to underwriting guidelines: Freddie Mac instructed Clayton to grade loans "EV3" for reasons other than non-adherence to guidelines, and Fannie Mae maintained strict loan-level "loan box" credit requirements, which set loan-level characteristics and "exclude[d] the lowest credit quality portion" of each deal, and pool-wide "deal box" credit requirements, provided concentration limits for key risk categories identified in each deal, separate from the originators' guidelines. *See* Ex. 2 (Feigles Tr.) at 487:23-488:24; Ex. 8 at FHFA00311067-68. Freddie Mac's due diligence was not, however, "securitization diligence": there is no evidence that Freddie Mac conducted diligence on whole loans it purchased to package and sell the credit risk. Finally, unlike Defendants, who subjected whole loans to diligence solely for securitization purposes, the GSEs retained the credit risk associated with the loans they purchased and had significant mechanisms for reviewing and putting back non-compliant loans after purchase. Moreover, Defendants' references to Fannie Mae's "subprime" due diligence is particularly unavailing, as the only Fannie Mae Certificate at issue is supported by Alt-A loans.[1]

---

[1] Defendants' reliance on "Fannie Mae's average kick-out' rate for its *subprime* bulk purchases" is irrelevant in this Action because the only Fannie Mae Certificate at issue is backed by Alt-A loans. Opp. 4 (citing Ex. M at FHFA01283398 (table summarizing 2006 Subprime Pre-Purchase Due Diligence)); Ex. 15.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Reply in Support of Motion *in Limine* No. 2

**FHFA's Re-underwriting.** The GSEs' Single Family due diligence does not undermine FHFA's re-underwriting expert's opinion on the falsity of Defendants' representations. *See FHFA v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 498 (S.D.N.Y. 2012) (statement about whether loans in an SLG complied with GSE guidelines "is irrelevant to the plaintiff's claims"). The Court explained that "the GSEs principally bought whole loans under different standards and constraints than those that applied to PLS collateral. Indeed, most of the SLGs at issue in this case were explicitly defined as composed of loans that did not meet the GSEs' underwriting guidelines." *UBS III*, 2013 WL 3284118, at *22.

**Statute of Limitations.** Defendants make the baseless claim that the GSEs learned "facts about originators" the GSEs "used to plead" the claims at issue. Opp. 5. GSE Single Family due diligence neither informed nor could have informed FHFA's claims that Defendants misrepresented characteristics of pools of completely different loans. Defendants' sole relevance argument remains that the GSEs had generalized knowledge that some loans were originated with defects, which the Court has repeatedly rejected as being relevant to statute of limitations. "At no point has the Court held that generalized allegations about, for instance, Originators' underwriting practices are by themselves sufficient to render a complaint adequately pled," *UBS III*, 2013 WL 3284118, at *21, because "knowledge that many of the originators supplying loans to these securitizations engaged in dubious underwriting practices" is not enough to overcome an investor's baseline confidence in Defendants' diligence, *JPMorgan Chase*, 902 F. Supp. 2d at 497. "[T]he GSEs were entitled to rely on Defendants' assertion that the loans that underlay these particular securities complied with the guidelines set out in the offering materials." *Id.*[2] What the GSEs' Single Family businesses may have learned is irrelevant to the jury's assessment of whether the GSEs discovered sufficient facts to plead a viable complaint before September 7, 2007.[3]

**Rule 403.** Admission of evidence that has no relevance, as this Court has previously concluded, "would really take us on a long hike down some very different paths than are necessary for the jury to do its work effectively." 5/7/2014 Hr'g Tr. at 20:18-21:5. Permitting GSEs' Single Family due diligence evidence will confuse the issues, mislead the jury, and cause undue delay. Fed. R. Civ. P. 403.

Respectfully submitted,

*/s/ Philippe Z. Selendy*

Philippe Z. Selendy

cc:     All Counsel of Record

---

[2] Defendants' imputation argument (Opp. 4) ignores information barriers restricting information flow from Single Family businesses to PLS businesses. *See* Restatement (Third) of Agency § 5.03 cmt. C (2006). A corporate employee's knowledge may not be imputed to an employer when "knowledge . . . is the important element in a transaction, and the agent who has the knowledge is not one acting for the [corporation] in the transaction[.]" Restatement (Second) of Agency § 275 cmt. b; *see also Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir. 1959) (To impute "an agent's knowledge to a principal in a particular transaction, it must be shown that the agent at some time had some duties to perform on behalf of the principal with respect to the transaction").

[3] Defendants assert that "*Freddie Mac's T-Deal* due diligence alerted it to recurring issues." Opp. 5 (emphasis added). For support, Defendants cite only Fannie Mae documents. *See* Defs.' Exs. J, P, Q. These Fannie Mae documents concern Single Family *subprime* loans, wholly unrelated to the *Alt-A* loans backing the only Fannie Mae Certificate at issue. *See supra* n.1.